**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,** | ) | |
| **Plaintiff,** | ) | **No. 06-305 T** |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**JOINT PRELIMINARY STATUS REPORT**

Pursuant to Appendix A of the Rules of the United States Court of Federal Claims, and in response to the Court's Order dated July 25, 2006, the parties hereby file this Joint Preliminary Status Report.

Does the court have jurisdiction over the action?

(a) Yes as to Count Two. The United States avers that to the extent that Count One of the Plaintiff's Complaint can be construed to seek relief with respect to any tax year occurring before or after Plaintiff's 1997 tax year, the relief sought violates the Anti-Injunction Act (26 U.S.C. § 7421), the Declaratory Judgment Act (28 U.S.C. § 2201), and constitutes a variance from its claim for refund and therefore, the Court lacks subject matter jurisdiction. For purposes of clarification, Consolidated Edison states that the Complaint currently before the Court is not intended to seek a refund with respect to any year other than the 1997 tax year.

Should the case be consolidated with any other case and, if so, why?

(b) The parties disagree. The United States is investigating the commonalities of this case and another pending case, *UnionBanCal Corp. and Subsidiaries v. United States*, Case No. 06-587 ("*UnionBanCal*"). Once that investigation is complete, it may be appropriate to propose

more streamlined procedures in these cases As stated in greater detail below, Consolidated Edison believes that consolidation with any other case would not be appropriate

Should trial of liability and damages be bifurcated and, if so, why?

(c) In the event of a trial in this case, the parties believe that separate trials on the questions of liability and damages are unnecessary, and all evidence necessary to resolve both questions should be presented together. We would ask the Court initially to determine the question of liability only, and afterwards, depending upon the Court's ruling on the merits of the dispute, permit the parties a reasonable period to perform and agree upon any necessary computation of the tax and interest due, so that the parties can submit a stipulation as to the amount of any judgment. This will avoid devoting unnecessary attention to computations at trial.

Should further proceedings in the case be deferred pending consideration of another case before this court or any other tribunal and, if so, why?

(d) No.

In cases other than tax refund actions, will a remand or suspension be sought and, if so, why and for how long?

(e) NA.

Will additional parties be joined? If so, the parties shall provide a statement describing such parties, their relationship to the case, the efforts to effect joinder, and the schedule proposed to effect joinder.

(f) No.

Does either party intend to file a motion pursuant to RCFC 12(b), 12(c), or 56 and, if so, what is the schedule for the intended filing?

(g) Filing of dispositive motions, including a motion addressing jurisdiction, will depend upon discovery and the parties' agreement to legal issues and facts.

What are the relevant factual and legal issues?

(h) Consolidated Edison's Statement. Consolidated Edison expects Defendant to raise the legal issues stated below. A brief summary of the relevant facts follows each issue.

Economic substance and business purpose. As part of the deregulation of electric utilities within New York State, Consolidated Edison divested itself of its electric generation facilities in the State. As part of this same deregulation process, the New York State Public Service Commission authorized Consolidated Edison to make unregulated overseas investments in response to the deregulation of its utility business. As a result of these changes in its regulatory environment, after an extensive due diligence process, Consolidated Edison invested over $43 million of its own funds in a leasing transaction involving a gas-fired combined cycle power plant located in the Netherlands. The leasing transaction at issue was part of Consolidated Edison's plan to expand its international business and redeploy its assets in response to deregulation. Consolidated Edison expected to make a significant pre-tax profit (over $60 million) from the transaction at issue, which would produce a 12% economic return for accounting and financial statement purposes.

The leasing transaction at issue has economic substance and business purpose because it was part of Consolidated Edison's plan to expand its international business and was expected to result in a significant pre-tax profit.

Present interest in the property. Consolidated Edison has a present interest in the leased property because it possesses all of the rights typically associated with a lessor of property: (1) the right to receive rental income; (2) the right to repossess the property in the event of a default by the sublessee, and (3) the right to exploit the residual value of the property after the expiration of the sublease.

Sham transaction/Substance-over-form. As stated above regarding "Present interest in the property," Consolidated Edison has all of the substantive economic rights associated with its status as a lessor of property. The terms of the transaction are in compliance with decades of settled law regarding the taxation of leasing investments. Therefore, the transaction should be respected in accordance with its form.

Defendant's Statement

The fundamental issue in a tax refund suit is whether the taxpayer can establish that it has overpaid its taxes for the periods in suit. See Lewis v. Reynolds, 284 U.S. 281 (1932); Dysart v.

United States, 169 Ct. Cl. 276, 340 F.2d 624 (1965). Plaintiff participated in a complicated lease-in/lease-out ("LILO") transaction involving a "power station" located in the Netherlands. The specific substantive issue raised in this refund suit is whether plaintiff is entitled to deductions for rent, interest, and transaction costs in connection with the LILO to reduce its 1997 federal income tax liability.

LILOs have been sold by their promoters to many large corporations on the basis of their supposed tax benefits. In a LILO, the taxpayer purports to lease property from the owner under a head lease, and simultaneously purports to lease the property back to the owner under a sublease. In a typical LILO shelter, as is the case here, the owner is a foreign entity or domestic municipality that pays no taxes in the United States, and, therefore, cannot claim the federal income tax benefits, like depreciation, associated with ownership. After the transaction, the owner continues to operate the property, and retains all of the benefits and burdens associated with the property's use and ownership, while the taxpayer claims rent and interest deductions associated with the purported head lease. The claimed deductions are substantial, because the head lease provides for a large advance rent payment. The LILO documents call for the tax exempt owner to make much smaller, periodic payments on its sublease. In fact, no significant funds actually change hands, since a foreign bank (1) makes a non-recourse loan to the taxpayer to finance the head lease payments, (2) the owner's sublease rent payments are identical in timing and amount to the taxpayer's loan payments, (3) the loan proceeds are not paid to the owner but are held by the foreign bank (or an affiliate), and used to satisfy the identical owner rent payments and taxpayer loan repayments. This circular financing arrangement among the taxpayer, property owner, and foreign bank virtually ensures that 1) neither the taxpayer nor owner will need to use their own funds to satisfy their respective obligations under the operative documents (save for the fees and other costs paid by the taxpayer in connection with the transaction); and 2) the owner will retain dominion and control over the subject property. In short, other than the execution of paper and the payment of fees, nothing happens.

Plaintiff's LILO followed this pattern. It is not entitled to a refund, because it did not acquire a genuine leasehold interest in property in 1997 when it participated in the LILO nor did Plaintiff incur a genuine debt obligation in connection with that deal. As a result, the tax deductions Plaintiff claimed on account of the purported leasing transaction are improper. Plaintiff is not entitled to the tax losses claimed because the tax shelter transaction and components

> thereof lacked economic substance and/or constitute a sham. The tax deductions at issue fail when the step transaction doctrine is applied and the steps which comprise the tax shelter are collapsed and then viewed as a single transaction. Plaintiff is not entitled to an interest expense deduction with respect to its "non-recourse loan," because such loan does not result in a use of the loan proceeds by Plaintiff nor a true forbearance by its lender. The tax shelter transaction here at issue creates, at most, a contingent future leasehold interest and Plaintiff is therefore not entitled to any present deductions on account thereof.

What is the likelihood of settlement? Is alternative dispute resolution contemplated?

(i) It is unlikely the case will be settled. Therefore, it is unlikely that alternative dispute resolution would be beneficial.

Do the parties anticipate proceeding to trial? Does either party, or do the parties jointly, request expedited trial scheduling and, if so, why? A request for expedited trial scheduling is generally appropriate when the parties anticipate that discovery, if any, can be completed within a 90-day period, the case can be tried within 3 days, no dispositive motion is anticipated, and a bench ruling is sought. The requested place of trial shall be stated. Before such a request is made, the parties shall confer specifically on this subject.

(j) The parties anticipate proceeding to trial. The parties do not request expedited trial scheduling.

Are there special issues regarding electronic case management needs?

(k) The parties do not currently anticipate any special issues regarding electronic case management.

Is there other information of which the court should be aware at this time?

For the United States: On August 14, 2006, Plaintiff's counsel filed a second LILO shelter refund action in this Court which was assigned to Judge Loren Smith. Similar to the case at bar, *UnionBanCal* involves a series of purported leases by a United States taxpayer of a foreign "power station." According to the Complaint in that case, at least one of the banks and two of the consulting firms are the same as are identified in the Complaint in this case. Since the

legal issues appear to be identical and the factual and/or discovery issues will certainly overlap, it may be appropriate to propose procedural efficiencies in these two cases.

For Consolidated Edison: The *UnionBanCal* case involves a completely different taxpayer, in a completely different industry (namely, a banking organization as opposed to a utility organization), different lessees, different transactions, different assets with different functions located in different countries, different documents, and different witnesses. To the minor extent that the cases may involve some of the same witnesses, their testimony will relate to entirely different assets, transactions, and documents. Defendant fails to state that *UnionBanCal* also involves a second asset which is not a power plant. Consolidated Edison's position is that there is no factual overlap between the two cases relevant to the discovery process.

Consolidated Edison is aware of a number of other cases involving leasing issues currently pending before the Internal Revenue Service in audits and administrative appeals in which the Internal Revenue Service is raising similar legal arguments. Consolidated Edison expects that many of these cases will result in litigation and some of these cases may be filed in the United States Court of Federal Claims.

Consolidated Edison describes these other cases solely for purposes of completeness in response to Defendant's reference to *UnionBanCal.* Consolidated Edison's position is that it would not be appropriate to consolidate any of these cases with Consolidated Edison's case.

Discovery. The Court has earlier issued an order stating that fact discovery will close on February 23, 2007, to be followed by a joint status report on March 2, 2007 indicating the status of completion of discovery. Consolidated Edison understands, however, that the Court expects initial work on expert witnesses should not be deferred until the close of fact discovery.

The parties believe it would be appropriate to set a date for disclosure of expert witness reports and discovery of experts following the close of fact discovery.

Respectfully submitted this 11th day of September, 2006.

/s/ Thomas C. Durham
Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff

/s/ David N. Geier
David N. Geier
Attorney of Record
Trial Attorney, Tax Division
Joseph A. Sergi
Trial Attorney, Tax Division
U.S. DEPARTMENT OF JUSTICE
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Tel. (202) 616-3448
Fax: (202) 307-0054
David.N.Geier@usdoj.gov

Eileen J. O'Connor
Assistant Attorney General
David Gustafson
Chief, Court of Federal Claims Section
Steven I. Frahm
Assistant Chief, Court of Federal Claim Section