# EXHIBIT 18

# United States Court of Federal Claims

Consolidated Edison Company of New York, Inc. & Subsidiaries,

vs

THE UNITED STATES

No. 06-305-T

**SUBPOENA**

**To** Credit Suisse (USA), Inc.
1 Madison Ave., 9th Floor
New York, New York 10010

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify in the above case.

PLACE OF TESTIMONY

COURTROOM

DATE AND TIME

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

PLACE OF DEPOSITION

DATE AND TIME

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Exhibit A, attached hereto.

U.S. Attorney's Office, Southern District of New York, One St. Andrews Plaza, New York, NY 10007 * — February 28, 2007 11:00 a.m.

PLACE (* Alternative arrangements can be made) — DATE AND TIME

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

PREMISES — DATE AND TIME

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. RULE 30(b)(6).

Attorney of Record for Defendant — February 6, 2007

ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) — DATE

DAVID N. GEIER, JUSTICE DEPT., TAX DIVISION, COURT OF FEDERAL CLAIMS SECTION, P. O. BOX 26, BEN FRANKLIN STATION, WASHINGTON, DC 20044, (202) 616-3448

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER



2186679.1

NOTE - If the place of travel is more than 100 miles (by the shortest usual means of travel) from the place where the subpoena is served, or if the place of deposition is more than 100 miles from the place where the deponent resides, is employed or transacts business in person, the person served may regard the command as optional unless there is attached to the subpoena an order of the court requiring his/her appearance, notwithstanding the distance of travel. In any event, response to the subpoena will entitle the person to the fees and mileage allowed by law.

**PROOF OF SERVICE**

**SERVED** DATE PLACE

SERVED ON (PRINT NAME) MANNER OF SERVICE

☐ Fees tendered for one day's attendance and mileage allowed by law.

(Fees and mileage need not be tendered when the subpoena is issued on behalf of the United States or an officer or agency thereof.)

**DECLARATION OF SERVICE**

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the proof of Service is true and correct.

Executed on ______________
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45.

(c) Protection of Persons Subject to Subpoenas.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph(d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance; or

(ii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iii) subjects a person to undue burden.

(B) if a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information; or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute an resulting from the expert's study made not at the request of any party,

the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party on whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) Duties in Responding to Subpoena.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## EXHIBIT A TO SUBPOENA DIRECTED TO CREDIT SUISSE (USA), INC.

### DEFINITIONS AND INSTRUCTIONS

1. The words "document" and "writing" are to be liberally construed to include all records or other tangible forms which are in your possession or custody or subject to your control. This includes, but is not limited to drafts or finished versions, originals, copies, nonidentical copies, (whether by reason of handwritten notations on them or otherwise), and applies regardless of however the document may have been created, produced or stored (whether manually, mechanically, electronically, or otherwise). To be clear, documents shall include any and all types of writings, drawings, graphs, charts, photographs, and data compilations, whether in written, computerized, electronically stored or other format. Defendant requests that any and all computerized and electronically stored information be produced in reasonably usable form.

2. If any document would have been responsive to these requests no longer exists, please state the following for each document: the date of destruction, the reason for destruction, and the person(s) responsible for the decision to destroy the document(s) and for the actual destruction of the documents.

3. The term "Con Ed" shall refer to Consolidated Edison Company of New York, Inc. & Subsidiaries, and affiliated companies, including, but not limited to, Consolidated Edison Development, Inc., Consolidated Edison Leasing, Inc., and Consolidated Edison, Inc.

4. The term "Banc One" shall refer to Banc One Leasing Corp. its related affiliates, subsidiaries, successors, and assigns, including, but not limited to, and any person, officer, director, accountant, lawyer, agent, or entity acting on behalf of any of the foregoing organizations.

5. The term "EZH" shall refer to N.V. Electriciteitsbedrifj Zuid-Holland, its related affiliates, subsidiaries, successors, and assigns, including, but not limited to, Preussen Elektra A.G. and E.ON Benelux Generation N.V., and any person, officer, director, accountant, lawyer, agent, or entity acting on behalf of any of the foregoing organizations.

6. The term "RoCa3" shall refer to the gas fired CHP facility located in the Netherlands on the border between Rotterdam and Capelle aan den IJessel, constituting the third unit alongside two previously built units, which was owned by EZH on or about December 15, 1997.

7. The term "Lease Transaction" shall refer to the series of transactions pertaining to the RoCa3 facility as described in paragraphs 61-77, inclusive of the complaint attached hereto as Exhibit A-1.

8. The term "you/your" shall refer to Credit Suisse (USA), Inc.

**DOCUMENTS REQUESTED**

Request No. 1: All documents within your possession, custody or control that refer to, discuss, evidence or relate to the Lease Transaction.

Request No. 2: All documents within your possession, custody or control that refer to, discuss, evidence or relate to the transaction between Banc One and EZH involving the purported lease and sublease of an undivided interest in the RoCa3 facility.

Request No. 3: All documents within your possession, custody or control that refer to, discuss, evidence or relate to any analysis, discussion or consideration of appropriate market rates for the various loans, debt defeasance deposits, and collateral purportedly used in the Lease Transaction as identified in the correspondence at Bates Nos. PF006130-31, PF006132-33,

PF006134-35, PF006136-37, and PF006138-39, and attached hereto as Exhibits A-2, A-3, A-4, A-5, and A-6 respectively.

Request No. 4: All documents within your possession, custody or control that refer to, discuss, evidence or relate to Account Number 2F4A2, which account is referred to in Bates Nos. PF002841-2843, and attached hereto as Exhibit A-7.

Request No. 5: All documents within your possession, custody or control that refer to, discuss, evidence or relate to the following US treasury strip coupons, referred to in the documents identified as Bates Nos. US01835, US01836, and US01837-US01840, attached hereto as Exhibits A-8, A-9, and A-10:

US treasury strip coupon 11/15/2011, CUSIP 912833JX9;

US treasury strip coupon 11/15/2016, CUSIP 912833KK5;

US treasury strip coupon 2/15/2017, CUSIP 912833KL3;

US treasury strip coupon 5/15/2017, CUSIP 912833KM1;

US treasury strip coupon 8/15/2017, CUSIP 912833KN9;

US treasury strip coupon 2/15/2018, CUSIP 912833KQ2;

US treasury strip coupon 5/15/2018, CUSIP 912833KRO;

US treasury strip coupon 8/15/2018, CUSIP 912833KS8; and

US treasury strip coupon 11/15/2018, CUSIP 912833KT6.

Request No. 6: All documents within your possession, custody or control that refer to, discuss, evidence or relate to the account or accounts containing the US treasury strip coupons identified in Request No. 5.

Request No. 7: All documents within your possession, custody or control that refer to, discuss, evidence or relate to any analysis of, or reason for, the decision to use US treasury strip coupons in the Lease Transaction.

Request No. 8: All documents within your possession, custody or control that refer to, discuss, evidence or relate to any other transaction substantially similar to the Lease Transaction and/or the transaction described in Revenue Ruling 2002-69, 2002-2 C.B. 760 (copy attached hereto as Exhibit A-11), from 1996 through 2001.

Request No. 9: All documents within your possession, custody or control that refer to, discuss, evidence or relate to the acquisition of EZH by Preussen Elektra AG and the effect of such acquisition on the Lease Transaction and/or the US treasury strip coupons identified in Request No. 5.

Request No. 10: A copy of all versions of your document retention policies in place at any time from 1997 through the present.

# EXHIBIT A-2

SUISSE

One Cabot Square
London E14 4QJ

Telephone 0171 888 2000
Facsimile 0171 888 1600

December 15, 1997

CONSOLIDATED EDISON LEASING, INC.
c/o Consolidated Edison Development, Inc.
111 Broadway
8th Floor
New York, NY 10006

Ladies and Gentlemen:

You have requested Credit Suisse Financial Products to indicate whether 7.10% per annum, compounded annually (equivalent to 6.98% per annum, compounded semi-annually) is the appropriate market rate for the Debt Defeasance Deposit (as described below).

Reference is made to the participation agreement dated as of December 15, 1997 (the "Participation Agreement") among n.v. Electriciteitsbedrijf Zuid-Holland, Hollandsche Bank-Unie N.V., Wilmington Trust Company, not in its individual capacity, except as otherwise expressly provided therein, but solely as trustee, and Consolidated Edison Leasing, Inc.

Please note that except as otherwise defined herein, all capitalised terms used herein shall have the meanings set forth in Appendix A to the Participation Agreement or in the other Operative Documents.

The transaction involves the lease of an Undivided Interest in certain Property Rights from EZH, as Lessor, to the Trustee, as Lessee, and a sublease of the Undivided Interest from the Trustee as Sublessor, to EZH, as Sublessee. The Trustee will issue fixed-rate U.S.-dollar-denominated limited recourse loan certificates to the Lender and will use the proceeds, together with funds obtained from the Investor to effect the payment or prepayment of a portion of Lease Basic Rent.

The Loan is recourse only to, and is secured by, (i) the Trustee's interest in the Undivided Interest (subject to German Leases) and the Trustee's rights (other than Excepted Rights and Excluded Payments) under the Operative Documents, and (ii) a repledge of the Debt Defeasance Deposit and certain other property securing Sublease Rent.

EZH, through the debt defeasance foundation will place the Debt Defeasance Deposit with the Deposit Bank. The defeasance deposit with the Defeasance Deposit Bank will be a fixed rate US $ denominated deposit with a final maturity of 20.05 years and average life of 26.74 years (the "Debt Defeasance Deposit Average Life"). The Debt Defeasance Deposit will rank pari passu with the senior, unsecured indebtedness of the Deposit Bank.

CE 007200

With respect to the Debt Defeasance Deposit in the initial amount of US$ 80,792,270.36, it is our judgement that the interest rate of 7.10% per annum, compounded annually (equivalent to 6.98% per annum, compounded semi-annually) is the appropriate commercially reasonable market rate for such deposit considering the long term unsecured credit worthiness of the Deposit Bank, the term and schedule of deposits into and withdrawals from such Debt Defeasance Deposit and the Deposit Bank's long term funding needs in conjunction with market supply and demand conditions for such source of funding at the time.

While there may be other interest rates for the deposit which we have considered and which may, in our opinion, also be commercially reasonable, we have no basis for concluding that such rates would be more appropriate for the Debt Defeasance Deposit.

It should be noted that the market for a long-term deposit is relatively illiquid and therefore there is a range of market interest rates which is dependent on market supply and demand conditions at the time. Quotes may vary daily based on a number of factors including, but not limited to, general economic and market conditions, prevailing interest rates, actions by Central Banks or other agencies or external political or societal events.

This letter is provided at your request and is intended for your internal use, use by you in connection with any tax proceeding and use by your counsel, as well as for internal use by your successors, permitted assigns, proposed assigns and their counsel, in each case only in connection with this transaction.

Very truly yours,

CREDIT SUISSE FINANCIAL PRODUCTS

By:
Name: Aarnout M. Snouck Hurgronje
Title: Director

# EXHIBIT A-3

One Cabot Square
London E14 4QJ

Telephone 0171 888 2000
Facsimile 0171 888 1600

December 15, 1997

CONSOLIDATED EDISON LEASING, INC.
c/o Consolidated Edison Development, Inc.
111 Broadway
8th Floor
New York, NY 10006

Ladies and Gentlemen:

You have requested Credit Suisse Financial Products to indicate whether 7.10% per annum, compounded annually (equivalent to 6.98% per annum, compounded semi-annually) is the appropriate market rate for the Loan (as described below).

Reference is made to the participation agreement dated as of December 15, 1997 (the "Participation Agreement") among n.v. Electriciteitsbedrijf Zuid-Holland, Hollandsche Bank-Unie N.V., Wilmington Trust Company, not in its individual capacity, except as otherwise expressly provided therein, but solely as trustee, and Consolidated Edison Leasing, Inc.

Please note that except as otherwise defined herein, all capitalised terms used herein shall have the meanings set forth in Appendix A to the Participation Agreement or in the other Operative Documents.

The transaction involves the lease of an Undivided Interest in certain Property Rights from EZH, as Lessor, to the Trustee, as Lessee, and a sublease of the Undivided Interest from the Trustee as Sublessor, to EZH, as Sublessee. The Trustee will issue fixed-rate U.S.-dollar-denominated limited recourse loan certificates to the Lender and will use the proceeds, together with funds obtained from the Investor to effect the payment or prepayment of a portion of Lease Basic Rent.

The Loan is recourse only to, and is secured by, (i) the Trustee's interest in the Undivided Interest (subject to German Leases) and the Trustee's rights (other than Excepted Rights and Excluded Payments) under the Operative Documents, and (ii) a repledge of the Debt Defeasance Deposit and certain other property securing Sublease Rent. The Loan has a final maturity to the reset date of approximately 20.05 years and an average life of 26.74 years (the "Loan Average Life").

With respect to the Loan, in the initial amount of U.S. $80,792,270.36, it is our judgement that the interest rate of 7.10% per annum, compounded annually (equivalent to 6.98% per annum, compounded semi-annually) is the appropriate commercially reasonable market rate

CE 007202



Registered office as above. Regulated by The Securities and Futures Authority.
Credit Suisse Financial Products is registered as unlimited in England under No. 2500199.

of such Loan, based on the market rates as of the Closing Date, and considering the credit of the Sublessee, the upfront fee to be paid, the security interests granted to the Lender (subject to the German Leases) and the Loan Average Life.

While there may be other interest rates for the Loan which we have considered and which may, in our opinion, also be commercially reasonable, we have no basis for concluding that any such rates would be more appropriate for the Loan. It was assumed that the Deposit securing the Loan is a cash balance that will be held at the Deposit Bank which will have a credit rating of at least AA by Standard & Poor's and Aa by Moody's Investor Service. The documents provide that the Deposit Bank can be replaced if credit quality deteriorates.

We have calculated this rate using the 10-year 6.125% U.S. Treasury Note of August 15, 2007 and the 30-year 6.125% U.S. Treasury Bond of November 15, 2027 each as of the close of business on December 9, 1997. Using these benchmarks, the interpolated U.S. Treasury Note yield with a maturity equal to the loan Average Life is 6.17% per annum, compounded annually (equivalent to 6.08% per annum, compounded semi-annually). Adding to the 6.17% per annum, compounded annually (equivalent to 6.08% per annum, compounded semi-annually) base rate a spread of approximately 90 basis points on the semi-annual base rate translates into a U.S. dollar interest rate of 7.10% per annum, compounded annually (equivalent to 6.98% per annum, compounded semi-annually).

It should be noted that the market for a long-term loan is relatively illiquid and therefore there is a range of market interest rates, which is dependent on market supply and demand conditions at the time. Quotes may vary daily based on a number of factors including, but not limited to, general economic and market conditions, prevailing interest rates, actions by Central Banks or other agencies or external political or societal events.

This letter is provided at your request and is intended for your internal use, use by you in connection with any tax proceeding and use by your counsel, as well as for internal use by your successors, permitted assigns, proposed assigns and their counsel, in each case only in connection with this transaction.

Very truly yours,

CREDIT SUISSE FINANCIAL PRODUCTS

By:
Name: Aarnout M. Snouck Hurgronje
Title: Director

CE 007203

# EXHIBIT A-4

SUISSE

One Cabot Square
London E14 4QJ

Telephone 0171 888 2000
Facsimile 0171 888 1600

December 15, 1997

CONSOLIDATED EDISON LEASING, INC.
c/o Consolidated Edison Development, Inc.
111 Broadway
8th Floor
New York, NY 10006

Ladies and Gentlemen:

You have requested Credit Suisse Financial Products to indicate whether 6.86% per annum, compounded annually (equivalent to 6.75% per annum, compounded semi-annually) is the appropriate market rate for the Lease Collateral Deposit (as described below).

Reference is made to the participation agreement dated as of December 15, 1997 (the "Participation Agreement") among n.v. Electriciteitsbedrijf Zuid-Holland, Hollandsche Bank-Unie N.V., Wilmington Trust Company, not in its individual capacity, except as otherwise expressly provided therein, but solely as trustee, and Consolidated Edison Leasing, Inc.

Please note that except as otherwise defined herein, all capitalised terms used herein shall have the meanings set forth in Appendix A to the Participation Agreement or in the other Operative Documents.

The transaction involves the lease of an Undivided Interest in certain Property Rights from EZH, as Lessor, to the Trustee, as Lessee, and a sublease of the Undivided Interest from the Trustee as Sublessor, to EZH, as Sublessee. The Trustee will issue fixed-rate U.S.-dollar-denominated limited recourse loan certificates to the Lender and will use the proceeds, together with funds obtained from the Investor to effect the payment or prepayment of a portion of Lease Basic Rent.

Lease Basic Rent not paid or prepaid on the Closing Date will be deferred, with no accrual of interest, until the Lease Termination Date. A portion of the deferred Lease Basic Rent will represent a recourse obligation of the Investor and the remainder of such Lease Basic Rent will be non-recourse. Lease Basic Rent will be secured by, among other things, the Lease Collateral Deposit.

The Trustee, as Sublessor, will enter into the Sublease for a term of 20.05 years. At the end of the Sublease Basic Term, the Sublessee, may either: (1) exercise the Sublease Purchase Option to acquire the Sublessor's Lease Interest and assume the Trustee's obligations under the Lease; or (2) return the Undivided Interest to the Trustee. If the Sublease Purchase Option is not exercised, the Trustee has the option to require the Sublessee to renew the Sublease for a 16.45 year renewal term. If the Sublessee exercises the Sublease Purchase Option, the Lease Collateral Deposit will not be established by the Trustee.

CE 007204

If the Sublessee does not exercise the Sublease Purchase Option, (i) if the Trustee exercises the Sublease Renewal Option, the Trustee will use a portion of the Sublease Renewal Rent to make serial investments in the Lease Collateral Deposit with the Lease Collateral Deposit Bank and (ii) if the Trustee does not exercise the Sublease Renewal Option, either (a) the Trustee will sublease the Undivided Interest to an entity other than EZH (the "Alternative Sublease") and will fund the Lease collateral Deposit using rent from the Alternative Sublease or (b) the Trustee will operate the Undivided Interest for its own account and will fund the Lease Collateral Deposit from operating profits or (c) the Sublessor's Lease Interest may be sold or otherwise transferred. The Lease Collateral Deposit will be pledged to the Lessor to secure Lease Basic Rent. The Lease Collateral Deposit will be a fixed-rate, U.S.-dollar-denominated deposit with a final maturity of approximately 20 years. The Lease Collateral Deposit will rank pari passu with the senior, unsecured indebtedness of the Lease Collateral Deposit Bank.

With respect to the Lease Collateral Deposit, it is our judgement that the interest rate of 6.86% per annum, compounded annually (equivalent to 6.75% per annum, compounded semi-annually) is the appropriate commercially reasonable market rate to assume you will be able to obtain in the future at the relevant time for such deposit considering the long term unsecured credit worthiness of the Lease Collateral Deposit Bank, the term and schedule of deposits into and withdrawals from such Lease Collateral Deposit and the Lease Collateral Bank's long term funding needs in conjunction with market supply and demand conditions for such source of funding at the time.

While there may be other interest rates for the Lease Collateral Deposit which we have considered and which may, in our opinion, also be commercially reasonable, we have no basis for concluding that any such rates would be more appropriate for the Lease Collateral Deposit.

It should be noted that the market for a long-term deposit is relatively illiquid and therefore there is a range of market interest rates which is dependent on market supply and demand conditions at the time. Quotes may vary daily based on a number of factors including, but not limited to, general economic and market conditions, prevailing interest rates, actions by Central Banks or other agencies or external political or societal events.

This letter is provided at your request and is intended for your internal use, use by you in connection with any tax proceeding, and use by your counsel, as well as for internal use by your successors, permitted assigns, proposed assigns and their counsel, in each case only in connection with this transaction.

Very truly yours,

CREDIT SUISSE FINANCIAL PRODUCTS

By:
Name: Aarnout M. Snouck Hurgronje
Title: Director

CE 007205

# EXHIBIT A-5

One Cabot Square
London E14 4QJ

Telephone 0171 888 2000
Facsimile 0171 888 1600

December 15, 1997

CONSOLIDATED EDISON LEASING, INC.
c/o Consolidated Edison Development, Inc.
111 Broadway
8th Floor
New York, NY 10006

Ladies and Gentlemen:

You have requested Credit Suisse Financial Products to indicate whether 7.43% per annum, compounded annually (equivalent to 7.30% per annum, compounded semi-annually) is the appropriate market rate for the Sublessee Loan (as described below).

Reference is made to the participation agreement dated as of December 15, 1997 (the "Participation Agreement") among n.v. Electriciteitsbedrijf Zuid-Holland, Hollandsche Bank-Unie N.V., Wilmington Trust Company, not in its individual capacity, except as otherwise expressly provided therein, but solely as trustee, and Consolidated Edison Leasing, Inc.

Please note that except as otherwise defined herein, all capitalised terms used herein shall have the meanings set forth in Appendix A to the Participation Agreement or in the other Operative Documents.

The transaction involves the lease of an Undivided Interest in certain Property Rights from EZH, as Lessor, to the Trustee, as Lessee, and a sublease of the Undivided Interest from the Trustee as Sublessor, to EZH, as Sublessee. The Trustee will issue fixed-rate U.S.-dollar-denominated limited recourse loan certificates to the Lender and will use the proceeds, together with funds obtained from the Investor to effect the payment or prepayment of a portion of Lease Basic Rent.

During the sublease basic term, a portion of the basic rent will be deferred and deemed lent back to EZH as the Sublessee Loan.

The Sublessee Loan is a full recourse obligation of EZH and will be secured, after the Sublease is terminated, by a letter of credit as well as by the Facility and the Common Facilities. Under certain circumstances EZH is permitted to substitute or use, in combination with the letter of credit, US Government obligations. The Sublessee Loan will be a fixed-rate US-dollar-denominated loan with a final maturity of approximately 43.19 years.

CE 007206



Registered office as above. Regulated by The Securities and Futures Authority.
Credit Suisse Financial Products is registered as unlimited in England under No. 2500199.

SUISSE

With respect to the Sublessee Loan, it is our judgment that the interest rate of 7.43% per annum, compounded annually (equivalent to 7.30% per annum, compounded semi-annually), is the appropriate commercially reasonable market rate for such loan, based on the market rates as of the Closing Date, and considering the credit of the Sublessee, the security interests granted to the Trustee and the Sublessee's option to prepay without penalty on the Sublease Basic Termination Date.

While there may be other interest rates for the Sublessee Loan which we have considered and which may, in our opinion, also be commercially reasonable, we have no basis for concluding that any such rates would be more appropriate for the Lease Collateral Deposit.

It should be noted that the market for a long-term loan is relatively illiquid and therefore there is a range of market interest rates which is dependent on market supply and demand conditions at the time. Quotes may vary daily based on a number of factors including, but not limited to, general economic and market conditions, prevailing interest rates, actions by Central Banks or other agencies or external political or societal events.

This letter is provided at your request and is intended for your internal use, use by you in connection with any tax proceeding and use by your counsel, as well as for internal use by your successors, permitted assigns, proposed assigns and their counsel, in each case only in connection with this transaction.

Very truly yours,

CREDIT SUISSE FINANCIAL PRODUCTS

By:
Name: Aarnout M. Snouck Hurgronje
Title: Director

# EXHIBIT A-6

One Cabot Square
London E14 4QJ
Telephone 0171 888 2000
Facsimile 0171 888 1600

December 15, 1997

CONSOLIDATED EDISON LEASING, INC.
c/o Consolidated Edison Development, Inc.
111 Broadway
8th Floor
New York, NY 10006

Ladies and Gentlemen:

You have requested Credit Suisse Financial Products to indicate whether 6.35% per annum, compounded annually (equivalent to 6.25% per annum, compounded semi-annually) is the appropriate market rate for the Trustee Treasury Collateral (as described below).

Reference is made to the participation agreement dated as of December 15, 1997 (the "Participation Agreement") among n.v. Electriciteitsbedrijf Zuid-Holland, Hollandsche Bank-Unie N.V., Wilmington Trust Company, not in its individual capacity, except as otherwise expressly provided therein, but solely as trustee, and Consolidated Edison Leasing Inc.

Please note that except as otherwise defined herein, all capitalised terms used herein shall have the meanings set forth in Appendix A to the Participation Agreement or in the other Operative Documents.

The transaction involves the lease of an Undivided Interest in certain Property Rights from EZH, as Lessor, to the Trustee, as Lessee, and a sublease of the Undivided Interest from the Trustee as Sublessor, to EZH, as Sublessee. The Trustee will issue fixed-rate U.S.-dollar-denominated limited recourse loan certificates to the Lender and will use the proceeds, together with funds obtained from the Investor to effect the payment or prepayment of a portion of Lease Basic Rent.

A portion of the Sublease Renewal Rent or certain other funds, if the Sublease Renewal Option is not exercised, will be used on certain specified dates by the investor to purchase US Government Obligations having a maturity on or before the Lease Termination Date (the "Trustee Treasury Collateral"). The Trustee Treasury Collateral will be pledged to the Lessor to secure the Investor's obligations under the Lease. No withdrawals will be made from the Trustee Treasury Collateral until the termination of the Lease, at which time all funds will be withdrawn. The Trustee Treasury Collateral will be a zero coupon, US dollar-denominated US Government Obligations with a full maturity of 23.2 years.

CE 007208



Registered office as above. Regulated by The Securities and Futures Authority.
Credit Suisse Financial Products is registered as unlimited in England under No. 2500199.

With respect to the Trustee Treasury Collateral, it is our judgement that the interest rate of 6.35 per annum, compounded annually (equivalent to approximately 6.25% per annum, compounded semi-annually) is the appropriate commercially reasonable market rate for such instruments, based on the market rates as of the Closing Date, and considering the creditworthiness of the US Government.

While there may be other interest rates for the Trustee Treasury Collateral, which we have considered and which may, in our opinion, also be commercially reasonable, we have no basis for concluding that any such rates would be more appropriate for the Trustee Treasury Collateral.

It should be noted that the market for a zero coupon, US dollar denominated US Government Obligations is dependent upon market supply and demand conditions at the time. Quotes may vary daily based on a number of factors such as general economic and market conditions, prevailing interest rates, actions by Central Banks or other agencies or external political or societal events.

This letter is provided at your request and is intended for your internal use in connection with any tax proceeding and use by your counsel, as well as for internal use by your successors, permitted assigns, proposed assigns and their counsel, in each case only in connection with this transaction.

Very truly yours,

CREDIT SUISSE FINANCIAL PRODUCTS

By:
Name: Aarnout M. Snouck Hurgronje
Title: Director

CE 007209

# EXHIBIT A-7

Notice of
Interests in U.S. Government Obligations

December 16, 1997

Credit Suisse First Boston
Five World Trade Center
7th Floor
New York, New York 10048
Attention: Mr. Ben Wojziehowski

Re: Account No. 2F4A2 (the "Account") of Stichting IJssel (the "Pledgor") pledged to Wilmington Trust Company, not in its individual capacity, but solely as Collateral Agent and Pledgee (the "Pledgee") for the benefit of (i) Wilmington Trust Company, not in its individual capacity but solely as Trustee, (ii) Consolidated Edison Leasing, Inc. (the "Investor") and (iii) n.v. Electriciteitsbedrijf Zuid-Holland ("EZH" or the "Sublessee" and together with the Trustee and the Investor, the "Beneficiaries") pursuant to the Sublessee Pledge and Security Agreement (Roca Facility Trust No. 2) dated as of December 15, 1997 among the Pledgor, the Pledgee, the Trustee, the Investor and the Sublessee (the "Agreement") (capitalized terms used but not otherwise defined herein have the respective meanings specified, whether or not by reference, in the Agreement)

PLEASE BE ADVISED THAT the Pledgor has purchased the securities set forth on Schedule I annexed hereto, and the Pledgee, for the benefit of the Beneficiaries, has purchased a first priority security interest in the following whether now owned or hereafter acquired (i) all U.S. Government Obligations (the "U.S. Government Obligations"), (ii) the Account, (iii) all funds, Financial Assets and

Investment Property from time to time credited thereto and all certificates and instruments from time to time representing or evidencing any funds, securities, investments, Financial Assets, Investment Property or other property credited from time to time to the Account, (iv) all notes, certificates of deposit, deposit amounts, checks and other investments from time to time hereafter delivered to or otherwise possessed by Credit Suisse First Boston on behalf of the Pledgor in substitution for any and all of the foregoing, (v) all interest, dividends, cash, instruments and other property from time to time received, receivable, or distributed in respect of any and all of the foregoing; all proceeds of any and all of the foregoing, and (vi) all Security Entitlements of the Pledgor in any and all of the foregoing and all proceeds of any such Security Entitlements (collectively, the "Collateral"). The aforesaid first priority security interest has been granted to the Pledgee to secure (i) certain obligations of EZH and, to the extent assumed by the Pledgor, the Pledgor to the Trustee under that certain Participation Agreement (Roca Facility Trust No. 2) and the other Operative Documents defined therein as such may be amended, supplemented or modified from time to time, certain of which have been assumed by the Pledgor pursuant to that certain Ijssel Agreement (Roca Facility Trust No. 2) dated as of December 15, 1997, among the Pledgor, EZH and the other parties thereto, (ii) certain obligations of EZH and, to the extent assumed by the Pledgor, the Pledgor under the Operative Documents, as such may be amended, supplemented or modified from time to time, made by EZH in favor of the Investor and (iii) certain obligations of Stichting Ijssel under that certain Ijssel Agreement (Roca Facility Trust No. 2) dated as of December 15, 1997 as such may be amended, supplemented or modified from time to time, among the Pledgor, the Sublessee and the other parties thereto. You should reflect the security interest described in this notice on your books and records accordingly.

Upon receipt of this notice, and each receipt by you of the U.S. Government Obligations, please acknowledge and confirm, among other things, that such U.S. Government Obligations are credited to the Account by you and the above-mentioned security interest in the Collateral is reflected on your books and records by delivering to the Pledgee at its address provided below a confirmation and agreement in the form annexed hereto, with a copy to our attention.

Very truly yours,

STICHTING IJSSEL

By______________________________
Name: JAN TRAPMAN
Title: Attorney-in-Fact

cc: Wilmington Trust Company
not in its individual capacity,
but solely as Collateral Agent
Rodney Square North
1100 North Market Street
Wilmington, Delaware 19890

CE 003101

# EXHIBIT A-8

SCHEDULE I
to
Notice

Schedule of U.S. Government Obligations
Pledged under the Agreement
(ROCA Facility Trust No. 2)

Designation by Name, Series, Maturity Date and CUSIP Number

Owned by the Pledgor as follows:

| Name | CUSIP No. | Amount (At Maturity) | Maturity Date |
|---|---|---|---|
| U.S. Government Obligations | 912833JX9 | $ 5,221,000.00 | 15-Nov-11 |
| U.S. Government Obligations | 912833KN9 | $ 7,363,000.00 | 15-Aug-17 |
| U.S. Government Obligations | 912833KQ2 | $22,959,000.00 | 15-Feb-18 |
| U.S. Government Obligations | 912833KR0 | $22,959,000.00 | 15-May-18 |
| U.S. Government Obligations | 912833KS8 | $22,959,000.00 | 15-Aug-18 |
| U.S. Government Obligations | 912833KT6 | $22,959,000.00 | 15-Nov-18 |



Exhibit B

NOV 03 '98 14:17
8474441100
PAGE.02

# EXHIBIT A-9

conEdison

Andrew W. Scher
Assistant General Counsel
Law Department

4 Irving Place
New York NY 10003
212 460 6209
212 677 5849 fax

May 24, 2001

VIA FAX

Jan Trapman, Treasurer
EZH
Von Geusaustratt 193
2274 RJ Voorburg

Re: Roca Facility Trust No. 2

Dear Mr. Trapman:

I am writing to follow-up on an e-mail sent to you on May 16th from Jeffrey Chu of Con Edison Development, which is the parent company of the Roca Facility Trust No. 2.

We have been requested to provide certain information regarding the US Treasury Strips purchased with respect to the equity portion of sublease rents payable for Roca Facility Trust No. 2. The information is being requested by the US Internal Revenue Service pursuant to a detailed audit of said transaction. Specifically, we are being asked to provide the following information:

A) A listing of the investments (product, CUSIP number, and amount purchased).
B) The date(s) of purchase.
C) The maturity date(s).
D) A history of the investments to date (the market value as of each L/C calculation date should be sufficient).

Although we have unofficial correspondence indicating some of this information, we have no official written communication addressing all of the listed information. Could you please provide this information to us, or authorize Credit Suisse First Boston to release such information to us, so that we may promptly respond to the US Internal Revenue Service? The account number at CSFB for this transaction is 2F4A20.

Thank you very much for your prompt attention to this request.

Very truly yours,

Andrew Scher

Exhibit C

a conEdison, inc. company

# EXHIBIT A-10

30.MAY.2001 11:29 EZH FEZ SECR. NO.026 P.1/4

e·on | Benelux

Fax

E.ON Benelux Generation n.v.
Von Geusaustraat 193
2274 RJ Voorburg
The Netherlands
T +31 70 382 00 28
F +31 70 383 39 01
www.eon-benelux.com
info@eon-benelux.com

Jan Trapman
Manager Financing & Risk Management
Financing & Risk Management
T +31 70 322 15 14
F +31 70 322 27 49
jan.trapman@eon-benelux.com

No. pages incl. cover 4

| | |
|---|---|
| To | Mr. Andrew Scher |
| Company | Consolidated Edison Co. |
| Department | |
| Fax no. | 001-212-6775850 |
| CC | |
| From | Jan Trapman |
| Date | May 30, 2001 |
| Reference | |

Dear Sir,

Re: your fax dd. May 24, 2001

I am sorry not to respond earlier, but I did not receive the e-mail your refers to of Mr. Chu.

Please find enclosed the information you requested:
- a copy of the purchase confirmation from December 17 1997
- a sheet with the most recent adjustment for the LC value, with the Strip prices of November 4, 2000.

I hope this will be sufficient for your purposes; otherwise call me or e-mail me (see my e-mail address above).
Kind regards

E.ON Benelux Generation n.v.

Jan Trapman

US01837

30.MAY.2001 11:29 EZH FEZ SECR.

CREDIT SUISSE | FIRST BOSTON

# FAX Transmittal

| | |
|---|---|
| DATE: | 17 December 1997 |
| SENT BY: | Hans Bruijn |
| TO: | Jan Trapman |
| COMPANY: | EZH<br>Den Haag<br>Nederland |
| FAX NUMBER: | 9 00 31 70 322 2749 |
| NUMBER OF PAGES (WITH COVER): | 2 |

MESSAGE:

Roca - St. Yssel

Dear Jan,

We are pleased to confirm the following trades:

Trade date 15 december 1997
Value date 17 december 1997

Credit Suisse First Boston sells $ 5,221,000
US treasury strip coupon 11/15/2011, cusip 912833JX9
Price 43.789%
Net amount $ 2,286,223.69

Con Ed

~~Credit Suisse First Boston sells $ 9,715,000
US treasury strip coupon 11/15/2016, cusip 912833KK5
Price 32.128%
Net amount $ 3,121,235.20~~

Bonbiline

~~Credit Suisse First Boston sells $ 28,201,000
US treasury strip coupon 2/15/17, cusip 912833KL3
Price 31.588%
Net amount $ 8,908,131.88~~

Barry Duo

Credit Suisse First Boston
One Cabot Square
London E14 4QJ
Telephone 0171 888 2896
Fax 0171 888 3879

US01838

~~Credit Suisse First Boston sells $ 28,201,000~~
~~US treasury strip coupon 5/15/2017, cusip 912833KM1~~
~~Price 31.119%~~
~~Net amount $ 8,775,869.19~~ Bank One

Credit Suisse First Boston sells $ 63,765,000 — B'k One $ 56,402,000.-
US treasury strip coupon 8/15/2017, cusip 912833KN9 Cov. Ed $ 7,363,000.
Price 30.623%
Net amount $ 19,526,755.95

Credit Suisse First Boston sells $ 22,959,000 Cov Ed
US treasury strip coupon 2/15/2018, cusip 912833KQ2
Price 29.744%
Net amount $ 6,828,924.96

Credit Suisse First Boston sells $ 22,959,000 Cov Ed
US treasury strip coupon 5/15/2018, cusip 912833KR0
Price 29.303%
Net amount $ 6,727,675.77

Credit Suisse First Boston sells $ 22,959,000 Cov Ed
US treasury strip coupon 8/15/2018, cusip 912833KS8
Price 28.863%
Net amount $ 6,626,656.17

Credit Suisse First Boston sells $ 22,959,000 Cov Ed
US treasury strip coupon 11/15/2018, cusip 912833KT6
Price 28.435%
Net amount $ 6,528,391.65

For the above transactions we will hold the bonds in your safekeeping accounts. Thank you for the business.

Sincerely, Hans Bruijn

cc. Maggie Morrow at Capstar partners

**EZH - Roca - Con Edison**
*Mark to Market*
Calculation Date: November 4, 2000

product ↓

| Cusip | Treasury Date | Free Cash | Treasury Strip Amount | Treasury Price as of November 4, 2000* | Fair Market Value of the Treasury |
|---|---|---|---|---|---|
| 912833 JX9 | 15-Nov-11 | $ 5,220,969.87 | 5,221,000.00 | 51.937500% ✓ | 2,711,656.88 |
| 912833 KN9 | 15-Aug-17 | $ 7,362,950.33 | 7,363,000.00 | 36.093750% ✓ | 2,657,582.81 |
| 912833 KQ2 | 15-Feb-18 | $ 22,958,869.31 | 22,959,000.00 | 35.000000% ✓ | 8,035,650.00 |
| 912833 KR0 | 15-May-18 | $ 22,958,869.31 | 22,959,000.00 | 34.468750% ✓ | 7,913,680.31 |
| 912833 KS8 | 15-Aug-18 | $ 22,958,869.31 | 22,959,000.00 | 34.031250% ✓ | 7,813,234.69 |
| 912833 KT6 | 15-Nov-18 | $ 22,958,869.31 | 22,959,000.00 | 33.437500% | 7,676,915.63 |
| | | | | Fair Market Value | 36,808,720.31 ✓ |

*As published in The Wall Street Journal November 6, 2000



US01840