**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,** | ) | |
| **Plaintiff,** | ) | **No. 06-305 T** |
| **v.** | ) | **Judge Marian Blank Horn** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**NOTICE OF**
**WITHDRAWAL OF MOTION**
**FOR PROTECTIVE ORDER**

Plaintiff, Consolidated Edison Company of New York ("Con Edison NY"), respectfully withdraws its Motion for Protective Order and Memorandum and Affidavit filed in support thereof, on March 8, 2007.

The United States has issued subpoenas to Third Parties ("Third Party Subpoenas") under Rule 45 of the Rules of the Court of Federal Claims ("RCFC"). In many cases,[1] the Third Party Subpoenas explicitly make broad requests for all information in the Third Parties' possession regarding lease-in, lease-out transactions, without regard to whether Con Edison NY participated in, reviewed, considered, or had knowledge of such transactions. For the reasons stated below, Con Edison NY believes that the Third Party Subpoenas request material not meeting the relevance standard of RCFC 26(b)(1).

[1] For example, the subpoena issued to Cornerstone Financial Advisors, L.P. requests material regarding all lease-in, lease-out transactions "considered by any client of Cornerstone, *including but not limited to Con Ed*." See request no. 5 of the Cornerstone subpoena, attached as Exhibit 21 (page 290) to Plaintiff's Motion for Protective Order (emphasis added).

As a party, Con Edison NY does not generally have standing under RCFC to object to third party subpoenas, because it is not "a person commanded" within the meaning of RCFC 45. *See, e.g.*, *Washington v. Thurgood Marshall Academy*, 230 F.R.D. 18, 22 (2005).

Con Edison NY's lack of standing under Rule 45, however, does not mean that Con Edison is without a remedy to object to the discovery of irrelevant information. The courts have indicated that a party seeking to object to the discovery of irrelevant information from third parties should file a motion for protective order under Rule 26. *Washington*, 230 F.R.D. at 22 (holding that defendant should have filed under Rule 26(c) to limit irrelevant discovery on third parties). That is exactly what Con Edison NY did; it filed a Motion for Protective Order under Rule 26(c). Since Rule 26(c) does not specify any deadline for filing Con Edison NY's motion under Rule 26(c), the Motion was timely.

Con Edison NY filed its Motion for Protective Order to limit discovery of materials never reviewed by Consolidated Edison NY or its advisors. Materials never reviewed or considered by Con Edison NY would not satisfy the relevance standard of RCFC 26(b)(1), since they would not be relevant in either determining Con Edison NY's subjective business purpose or the objective anticipated profit of the transaction at issue. Information actually reviewed by Con Edison NY, however, would be relevant in determining Con Edison's goals and objectives and thus would be relevant.

At this point in time, it is not clear whether the Third Party Subpoenas will actually result in the production of material to which Con Edison NY would object. At least two of the Third Parties have indicated an intent to limit their production to material related to Con Edison NY. Cornerstone Financial Advisors, L.P. ("Cornerstone") has indicated its intent to limit its production to items involving Con Edison NY, because "[p]roducing any information beyond

Consolidated Edison would be extremely burdensome and time consuming." (Letter from counsel for Cornerstone to Department of Justice, attached hereto). Similarly, PricewaterhouseCoopers ("PwC") has filed objections concerning the scope of the subpoena it received, but has generally agreed to produce information regarding transactions "considered or entered into by" Consolidated Edison NY.

If the productions from the other Third Party Subpoenas are limited in the same manner as the productions from Cornerstone and PwC, Con Edison NY would not object to such production.

The subpoena issued to Capstar presents a unique situation. The subpoena apparently does not present a burden to Capstar, because the material in question was already produced to the Internal Revenue Service as part of Capstar's own audit. This subpoena may result in the production of some material relevant to Con Edison NY's case, but the vast majority of the material will relate to transactions Con Edison NY never participated in, never reviewed or considered, and had no knowledge of. For these reasons, Con Edison NY continues to believe the Capstar Subpoena requests irrelevant material for purposes of RCFC 26(b)(1).

Con Edison NY believes that the issues presented by its Motion for Protective Order will be better framed for the Court if further action is deferred until the scope of production under the Third Party Subpoenas is clarified. If, for example, production is limited in a manner as proposed by Cornerstone and PwC, Con Edison NY would have no objection. If, on the other hand, the Third Parties are requested to provide material unrelated to Con Edison NY, this would impose an enormous burden on the third parties, as Cornerstone has described, and the Third Parties may object to such production.

Con Edison NY continues to be concerned over the production of material regarding leasing transactions not entered into by and never reviewed or considered by Con Edison NY. Con Edison NY believes that these transactions will be factually different in that they will, by definition, involve different parties, and will involve different assets (often located in different countries) with different physical and economic characteristics, and different contractual agreements with different terms. This material cannot provide relevant information about the single transaction Con Edison NY *did* enter into which is currently before this Court.

In addition, the production of such material has the potential to complicate this case exponentially. For example, if the United States intends to rely on transactions not entered into by Con Edison NY, it could be necessary to provide testimony from the third parties who actually entered into such transactions, plus the other parties involved in such transactions.

The discovery of evidence unrelated to Con Edison NY's leasing transaction therefore has the potential to needlessly complicate and delay the resolution of the issues actually presented by Con Edison NY's case. Con Edison is particularly concerned that the production of material unrelated to its leasing transaction could lead to a delay in the trial date, and would object to any extension of the trial date based on such evidence.

Con Edison NY will continue to object to the production of material concerning transactions not entered into or reviewed by Consolidated Edison. At the present time, however, as stated above, it is not clear whether the Third Party Subpoenas will actually result in the production of objectionable material. Since the issues presented by Con Edison NY's Motion for Protective Order may become more sharply focused if and when the United States insists on the production of such material, Con Edison NY has therefore withdrawn its Motion for Protective Order, without prejudice.

Respectfully submitted this 19th day of March, 2007.

/s/ Thomas C. Durham
Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff

CERTIFICATE OF SERVICE

I, Thomas C. Durham, hereby certify that on this 19th day of March, 2007, I electronically filed the foregoing Notice of Withdrawal of Motion for Protective Order using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF system, including counsel for the United States of America identified below:

David N. Geier
U.S. Department of Justice
Tax Division, Room 7919
555 Fourth Street, N.W.
Washington, D.C. 20001

/s/ Thomas C. Durham
Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff

**MADDEN, JIGANTI, MOORE & SINARS LLP**
ATTORNEYS AT LAW
SUITE 1700
190 SOUTH LA SALLE STREET
CHICAGO, ILLINOIS 60603

TELEPHONE
(312) 346-4101

FACSIMILE
(312) 346-4885

February 14, 2007

**VIA FACSIMILE TRANSMISSION**
(202) 307-0054

David Geier
United States Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, DC 20044

Re: *Consolidated Edison*
*Subpoena Served on Cornerstone Financial Advisors*

Dear Mr. Geier:

The purpose of this letter is to summarize our discussion with you, Joseph Sergi and Adam Smart on February 8, 2007. We appreciated your willingness to resolve some of the quite burdensome potential issues related to the literal reading of the subpoena you served on Cornerstone Financial Advisors. In light of Cornerstone's current small staff of three (3) partners, one (1) part time professional, two (2) associates and two (2) secretaries, there are relatively few available man hours to devote to the production of documents. Five professionals have left the firm during the past few years including Robert Holzman who handled the Consolidated Edison matter.

In our discussions with respect to Requests 1, 2, and 3, we agreed to give these requests priority. We will transfer any information stored on CFA computers relating to Consolidated Edison onto a CD and produce the CD. We will gather any hard copies of documents and produce them to the copying service in Chicago as you direct. We also agree to review the 1997 chronological fax cartons for any Consolidated Edison material and produce those. You will recall we advised that Cornerstone kept its faxes in chronological order and currently has over 50 cartons of faxes kept in chronological order relating to myriad faxes including business and personal matters. We agreed that Cornerstone need not produce any pricing files.

With respect to Request No. 4, we asked for additional specification what it might include. Adam Smart agreed to give us more specific information with respect to these

particular transactions. After we receive this more specific information, we will review our materials for any information which would have been forwarded to Consolidated Edison. Producing any information beyond Consolidated Edison would be extremely burdensome and time consuming and would require review of numerous files for many years. We would object to being requested to do so.

With respect to Request No. 5, we raised two (2) particular issues. The first was one of interpretation. The request is written in a manner which requires us to interpret what might fall within the particular request. The subpoena as written does not specifically set out the documents requested. Second, is the breadth of the requests and the burdensomeness in even attempting to respond to this request. In an effort to resolve this matter, you restricted the information to be provided under Requests 5, 6, 7, and 9 to any documents we might have which were forwarded to Consolidated Edison. We agreed to produce those documents.

With respect to Request 8, Adam Smart again said he would attempt to give us a specific time frame relating to the document entitled "Lease Screening Criteria" as far as it relates to Consolidated Edison. After we receive this information, we agreed to review any files relating to Consolidated Edison to see if we could locate such a document.

We further advised you that in March 2005, Cornerstone was retained by Consolidated Edison's counsel to assist counsel in their legal responses to IRS inquiries and production. Thus, at that time Cornerstone would have been subject to the attorney client and work product privileges. Should the document production be extended to third parties other than Consolidated Edison in addition to undue burden, there may be additional attorney client and work product assertions.

We agreed to extend the time for producing the documents in response to the subpoena. We set a tentative production date of March 15, 2007. We agreed to try to expedite producing documents as noted in Requests 1, 2, and 3. You advised that to the extent there were a reasonable number of hard copy documents to produce, they would be sent to a neutral third party service in Chicago where the documents could be scanned and/or copied at the government's expense.

At this time we held in abeyance any request for a protective order based on your representation that none had been entered in this case and that Consolidated Edison produced between ten thousand and fifteen thousand pages of documents without any protective order. Since our production is limited to Consolidated Edison materials, there would appear to be no need for a protective order.

Pursuant to Rule 45, we have noted our objections to the subpoena herein. We agreed to work together to seek a methodology where the materials could be produced without production issues. We thank you for your consideration in this regard.

Theodore A. Sinars

John J. Jiganti