# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-305 T<br>Judge Marian Blank Horn |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Thomas C. Durham
Attorney of Record
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Dr.
Chicago, IL 60606
Counsel for Plaintiff
Telephone: (312) 701-7216
Facsimile: (312) 706-9187

Of Counsel:
David Abbott
MAYER, BROWN, ROWE & MAW LLP
1675 Broadway
New York, NY 10019
Telephone: (212) 506-2642

Nicole Bielawski
MAYER, BROWN, ROWE & MAW LLP
1909 K Street N.W.
Washington, DC 20006
Telephone: (202) 263-3454

**Table of Contents**


SUMMARY OF ARGUMENT ..... 1
FACTUAL BACKGROUND ..... 2
1. Con Edison NY's Lease-In, Lease-Out Transaction ..... 2
2. Revenue Ruling 99-14 ..... 2
3. Revenue Ruling 2002-69 ..... 3
4. The Appeals Settlement Guidelines ..... 4
5. The United States' Current Litigating Position ..... 5
LEGAL DISCUSSION ..... 6
I. THE FINAL ASG IS RELEVANT TO CON EDISON NY'S CLAIMS ..... 7
A. The United States' Reliance Upon the Legal Analysis Contained in Revenue Ruling 2002-69 Makes the Final ASG Relevant ..... 7
B. The IRS's Position Has Been Inconsistent ..... 9
II. DISCLOSURE WOULD NOT BE PREJUDICIAL TO THE GOVERNMENT ..... 13
A. The FOIA Rules Are Not Controlling for Discovery Purposes ..... 13
B. Disclosure of the IRS's Legal Analysis Would Not Prejudice Enforcement of the Law and Is Required by the Prohibition Against "Secret Law" ..... 14
III. CONCLUSION ..... 17

# Table of Authorities

## Cases

*Alstores Realty Corp. v. Commissioner*, 46 T.C. 363 (1966) .......... 8
*Black & Decker, Corp. v. United States*, 2004 WL 500847 (D. Md. Feb. 19, 2004) .......... 14, 16
*Bridges v. Commissioner*, 39 T.C. 1064 (1963), *aff'd*, 325 F.2d 180 (4th Cir. 1963) .......... 4, 5
*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .......... 2, 16
*Comdisco, Inc. v. United States*, 756 F.2d 569 (7th Cir. 1985) .......... 9
*Flamingo Fishing Corp. v. United States*, 22 Cl. Ct. 625 (1991) .......... 9
*Friedman v. Bache Halsey Stewart Shields*, 738 F.2d 1336 (1984) .......... 13, 14
*Jade Trading, LLC v. United States*, 65 Fed. Cl. 487 (2005) .......... 7, 9
*Johnson v. United States*, 11 Ct. Cl. 17 (1986) .......... 3, 6
*Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422 (Fed. Cir. 1993) .......... 7
*Marriott International Resorts, L.P. v. United States*, 61 Fed. Cl. 411 (2004), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006) .......... 11
*Mayer, Brown, Rowe & Maw, LLP v. Internal Revenue Service*, 04-2187 (D.D.C. Nov. 28, 2006) .......... 13, 14
*Millenium Marketing Group, LLC v. United States*, 238 F.R.D. 460 (S.D. Tx. 2006) .......... 14
*Sys. Fuel, Inc. v. United States*, 73 Fed. Cl. 206 (2006) .......... 7
*Tax Analysts v. Internal Revenue Service*, 1999 U.S. Dist. LEXIS 19514 (D.D.C. November 3, 1999) .......... 14, 17
*Vons Co. v. United States*, 51 Fed. Cl. 1 (2001) .......... passim

## Other Authorities

Internal Revenue Manual Exhibit 8.7.3-3, *Procedures for Preparing and Submitting Guidelines* (Nov. 01, 2004) .......... 11
IRS News Release IR-2002-108 (Oct. 11, 2002) .......... passim
*Officials Provide Updates on LILOs and Credit Card Crackdowns*, 2003 TNT 92-2 (May 13, 2003) .......... 4
Revenue Ruling 2002-69, 2002-2 C.B. 760 .......... passim
Revenue Ruling 99-14, 1999-1 C.B. 835 .......... passim
Treas. Decision 8820, 1991-1 C.B. 1209 (June 14, 1999) .......... 12

## Rules

Federal Rule of Evidence 403 .......... 16
Rule of the Court of Federal Claims 26 .......... 7

Plaintiff, Consolidated Edison Company of New York, Inc. ("Con Edison NY") submits this response to Defendant's Motion for Protective Order filed on March 16, 2007 ("Defendant's Motion"). The Defendant's Motion seeks to protect from discovery certain redacted portions of Appeals Settlement Guidelines published by the Internal Revenue Service ("IRS") on February 23, 2004, on the basis that disclosure "would frustrate the United States' law enforcement activities." Defendant's Motion, p. 2.

In view of the representations made by the United States in Defendant's Motion, Con Edison NY no longer seeks those portions of the Appeals Settlement Guidelines which relate to law enforcement activities, such as potential settlement ranges and enforcement policies. Con Edison NY agrees to confine its request to those portions of the Appeals Settlement Guidelines which set forth the IRS's factual and legal analysis of lease-in, lease-out transactions.

## SUMMARY OF ARGUMENT

In two Revenue Rulings and the published portion of the Appeals Settlement Guidelines in question, the IRS has set forth extensive public guidance on the taxation of lease-in, lease-out transactions (often referred to as "LILOs"). The United States has made plain that it intends to rely on that published guidance in this case. Through its Motion for Protective Order, however, the United States now seeks to protect from discovery those portions of its published guidance which undercut and are contrary to the guidance it has disclosed to the public.

Since the United States intends to rely on the legal analysis set forth in Revenue Ruling 2002-69, the legal and factual analysis associated with the Revenue Ruling and its application is relevant. This is particularly true where, as here, the public guidance provided by the Internal

Revenue Service has been inconsistent and some of its positions have not been longstanding. *See Vons Co. v. United States*, 51 Fed. Cl. 1 (2001).

The government cannot be prejudiced by providing taxpayers with its interpretation of the law. Indeed, the restrictions against "secret law" require that the government provide a full analysis of the legal principles it applies in dealing with the public. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980).

## FACTUAL BACKGROUND

### 1. Con Edison NY's Lease-In, Lease-Out Transaction

In 1997, Con Edison NY entered into a lease-in, lease-out transaction with South Holland Electric (also known s "EZH"), a Dutch utility. Pursuant to the terms of their agreement, South Holland Electric leased an electric generation facility to Con Edison NY for a term of approximately 43 years. Con Edison NY then subleased the facility back to South Holland Electric for a shorter period. Con Edison NY expects to earn a significant pre-tax profit from rental income and from the residual value of the facility at the end of the sublease.

### 2. Revenue Ruling 99-14

The IRS issued Revenue Ruling 99-14, 1999-1 C.B. 835, in March of 1999. (Ex. A, p. 1).[1] Revenue Ruling 99-14 set forth the IRS's original position on the taxation of lease-in, lease-out transactions. The principal conclusion set forth in Revenue Ruling 99-14 was that the "pre-tax return" of the LILO transaction described in the Revenue Ruling was "too insignificant when compared to [the] after-tax yield, to support a finding that the transaction has significant economic consequences other than the creation of tax benefits." Revenue Ruling 99-14 thus

---

[1] All Exhibit references are to the Exhibits to the Affidavit of Thomas C. Durham attached hereto. Page numbers in the Exhibits are consecutively paginated.

concludes that the transaction described in the Ruling "lacks economic substance." Revenue Ruling 99-14 represents a straight-forward application of the economic substance doctrine, which holds that a leasing transaction will not be respected for tax purposes unless it results in an "economic gain apart from tax purposes." *Johnson v. United States*, 11 Ct. Cl. 17, 25 (1986).

**3. Revenue Ruling 2002-69**

The IRS changed its position on the taxation of lease-in, lease-out transactions three years later when it issued Revenue Ruling 2002-69, 2002-2 C.B. 760. (Ex. B, p. 6). Revenue Ruling 2002-69 "superseded" Revenue Ruling 99-14 and adopted a new legal theory for the taxation of lease-in, lease-out transactions. This theory states that the lease and sublease in lease-in, lease-out transactions represent offsetting obligations and that lease-in, lease-out transactions therefore confer only a future interest in property.

At the time Revenue Ruling 2002-69 was issued, the IRS's Chief Counsel stated the new ruling was intended to give "clear guidance" to taxpayers. IRS News Release IR-2002-108 (Oct. 11, 2002). (Ex. C, p. 12). When it issued Revenue Ruling 2002-69, the IRS stated this new position was "based on information from actual transactions." *Id.*

Revenue Ruling 2002-69, unlike Revenue Ruling 99-14, does not rely on the lack of a pre-tax profit as a reason for challenging LILO transactions. Indeed, at the time Revenue Ruling 2002-69 was issued, the IRS specifically announced it would no longer "rely on the lack of a pre-tax profit potential or business purpose" to contest lease-in, lease-out transactions."[2] I.R.S. News Release IR-2002-108 (Oct. 11, 2002). (Ex. C, p. 12). Subsequently, the IRS Chief Counsel

[2] Revenue Ruling 2002-69 does, however, reserve the right to rely on the economic substance doctrine and the lack of a "pre-tax profit potential or business purpose," claiming "[t]here may be situations where those facts exist." IRS News Release, IR-2002-108 (Oct. 11, 2002).

reportedly indicated that a pre-tax return of 2 to 4 percent would be sufficient to pass the economic substance test and that the IRS would not raise the economic substance issue with respect to transactions falling within that range. *Officials Provide Updates on LILOs and Credit Card Crackdowns*, 2003 TNT 92-2 (May 13, 2003). (Ex. F, p. 71). Con Edison NY's transaction would easily pass this threshold test for economic substance.

**4. The Appeals Settlement Guidelines**

Following the issuance of Revenue Ruling 2002-69, the IRS began the preparation of Appeals Settlement Guidelines with respect to lease-in, lease-out transactions. A draft version of these Guidelines ("Draft ASG") was apparently provided to at least two taxpayers in response to Freedom of Information Act ("FOIA") requests. (Ex. D, p. 13). The Draft ASG reflects several cautionary notes in the analysis set forth in both Revenue Ruling 99-14 and Revenue Ruling 2002-69. First, the Draft ASG recognizes that legal precedent would generally uphold a leasing transaction if the transaction displayed "some modicum" of pre-tax profit. (Ex. D, p. 30). The Draft ASG also recognized that lease-in, lease-out transactions could be found to satisfy this test. (Ex. D, pp. 25, 30).

Second, the Draft ASG recognizes that the "future interest" theory set forth in Revenue Ruling 2002-69 is "novel" and "groundbreaking." (Ex. D, p. 22). The Draft ASG also recognizes that several of the critical authorities cited in Revenue Ruling 2006-69 as support for the "future interest" theory "are not leasing cases" and therefore might not provide support for its conclusions. (Ex. D, p. 22).

The Draft ASG also recognized that much of Revenue Ruling 2002-69's logic rested on *Bridges v. Commissioner*, 39 T.C. 1064, *aff'd*, 325 F.2d 180 (4th Cir. 1963), a case which the

Draft ASG conceded "involved no profit motive and totally rigged transactions." (Ex. D, p. 25). The Draft ASG acknowledged these facts "may not be found with the LILOs" and that "[c]ourts could find that LILO transactions have valid commercial reasons for paying interest because the U.S. taxpayer received a current leasehold interest and a meaningful pre-tax profit." (Ex. D, p. 25).

On February 23, 2004, the IRS published the final version of the Appeals Settlement Guidelines. (Ex. E, p. 44). The Final ASG contains an extensive discussion of the legal precedents which the IRS claims support its position on the taxation of lease-in, lease-out transactions. These discussions, however, do not reflect any of the weaknesses or cautionary discussion set forth in the Draft ASG. For example, the Final ASG relies on the *Bridges* case, without discussing the fact that that case relied on the lack of a pre-tax profit, a fact the Draft ASG had admitted "may not be found with the LILOs." (Ex. D, p. 25). Similarly, the published portions of the Final ASG do not reflect that the future interest theory is "novel" and "groundbreaking." *Id.* at 22. Under headings entitled "Litigating Hazards," however, the Final ASG contains extensive redactions. (Ex. E, pp. 52, 55-56, 61, 68-70). Con Edison NY believes these redactions likely contain much of the cautionary language and analysis of the weaknesses of the IRS's position originally included in the Draft ASG.

### 5. <u>The United States' Current Litigating Position</u>

In the Answer filed in this case, the United States alleged that Con Edison NY's leasing transaction lacks "economic substance and/or constitutes a sham." Amended Answer, ¶ 107. (Ex. G, p. 84). In its responses to Con Edison NY's First Set of Interrogatories ("U.S.

Interrogatories Response"), dated December 1, 2006, the United States reiterated its intent to rely on the "economic substance doctrine." (Ex. H, p. 91).

**LEGAL DISCUSSION**

One of the principal issues presented by this case is the application of the economic substance doctrine to Con Edison NY's lease-in, lease-out transactions. The economic substance doctrine generally holds that the form of a leasing transaction will be respected if the transaction is expected to result in an economic profit before tax. *See Johnson*, 11 Ct. Cl. at 25. The IRS's public guidance on the application of the economic substance doctrine to lease-in, lease-out transactions has been remarkably inconsistent. In Revenue Ruling 99-14, the IRS claimed that lease-in, lease-out transactions were not sufficiently profitable to pass the economic substance test. In 2002, when the IRS issued Revenue Ruling 2002-69, the IRS reversed course and stated that it would no longer "rely on the lack of a pre-tax profit potential or business purpose" to contest lease-in, lease-out transactions. I.R.S. News Release IR-2002-108 (Oct. 11, 2002). (Ex. C, p. 12). Accordingly, the IRS withdrew Revenue Ruling 99-14 and substituted the new legal theory contained in Revenue Ruling 2002-69 in its place.

Despite the withdrawal of Revenue Ruling 99-14, the United States may continue to argue that Con Edison NY's lease-in, lease-out transaction lacks economic substance, a sufficient pre-tax profit potential, and a business purpose. In withdrawing Revenue Ruling 99-14, the IRS announced to the public that it would no longer rely on these arguments.

Furthermore, the IRS's new "future interest" theory, as set forth in Revenue Ruling 2002-69, is, according to the Draft ASG, a "novel" and "groundbreaking" theory which has little precedent in leasing law. (Ex. D, pp. 19, 22).

Thus, there is little doubt that the IRS's public statements on the taxation of lease-in, lease-out transactions have been inconsistent. In these circumstances, Con Edison NY is entitled to the IRS's complete legal and factual analysis of lease-in, lease-out transactions as set forth in the redacted portions of the Final ASG.

## I. THE FINAL ASG IS RELEVANT TO CON EDISON NY'S CLAIMS

"In general, 'parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.'" *Sys. Fuel, Inc. v. United States*, 73 Fed. Cl. 206, 215 (2006), *quoting* Rule of the Court of Federal Claims ("RCFC") 26(b)(1), "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." RCFC 26(b)(1). The IRS' analysis of lease-in, lease-out transactions, as set forth in the ASG, unquestionably falls within this "broadly construed" standard of relevance set forth under RCFC 26. *Jade Trading, LLC v. United States*, 65 Fed. Cl. 487, 492 (2005), *citing Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993).

### A. The United States' Reliance Upon the Legal Analysis Contained in Revenue Ruling 2002-69 Makes the Final ASG Relevant

The United States relies upon the legal analysis contained in Revenue Ruling 2002-69 for its position that Con Edison NY's lease-in, lease-out transaction "create[d], at most, a contingent future leasehold interest," and therefore Con Edison NY is "not entitled to any present deductions." *See* Amended Answer, ¶ 110 (Ex. G, p. 85); *see also* U.S. Interrogatories Response (repeating identical language) (Ex. H, p. 90); United States' Supplemental Responses to Plaintiff's First Set of Interrogatories ("U.S. Supplemental Response"), faxed December 18,

2006 (alleging "Con Ed did not in substance acquire a present leasehold interest") (Ex. I, p. 104). The United States' reasoning replicates that of Revenue Ruling 2002-69, which states "[b]ecause [the taxpayer] does not acquire a current leasehold interest in the property, it is not entitled to current deductions."

The United States further relies upon the report of the IRS Revenue Agent who examined the facts of Con Edison NY's case ("RAR") "for the most comprehensive recitation of facts and analysis." *See* U.S. Interrogatories Response (Ex. H, p. 91); *see also* U.S. Supplemental Response (using identical language) (Ex. I, p. 105). The RAR explicitly relies upon Revenue Ruling 2002-69 and analyzes Con Edison NY's lease transaction in accordance with Revenue Ruling 2002-69, citing 13 of the 15 cases cited therein. The only two cases not cited in the RAR, *Alstores Realty Corp. v. Commissioner*, 46 T.C. 363 (1966) and *Comdisco, Inc. v. United States*, 756 F.2d 569 (7th Cir. 1985), were both distinguished by Revenue Ruling 2002-69 as being inapplicable to lease-in, lease-out transactions. The United States has therefore clearly placed the legal analysis of Revenue Ruling 2002-69 at issue in this proceeding.

The Draft ASG, produced in response to a previous FOIA request, specifically addresses the disallowance of otherwise proper deductions based upon Revenue Ruling 2002-69's "future interest in property" analysis. The Draft ASG describes the government's theory as "novel" and "ground breaking." (Ex. D, pp. 19, 22). The Draft ASG uses the example provided in Revenue Ruling 2002-69 as the factual basis for its legal analysis and expounds upon it. (Ex. D, p. 16). (Stating "[f]or purposes of this memorandum, the general [lease-in, lease-out transaction] pattern

(both legal and financial) is derived primarily from Revenue Ruling 2002-69; the author has added *clarifications* and *definitions*.") (emphasis in the original); *compare* Revenue Ruling 2002-69 *with* Draft ASG, pp. 16-18. Additionally, the Draft ASG analyzes all 15 cases relied upon in Revenue Ruling 2002-69, with only one exception. (Ex. D, pp. 19-27).

Since the United States' position in the pending proceeding is firmly rooted in Revenue Ruling 2002-69, the applicability of and reasoning underlying Revenue Ruling 2002-69 is unquestionably relevant. The Court of Federal Claims has previously held that "[i]f [the government] relies on [a] revenue ruling, relevance of the file will be unassailable." *Jade Trading, LLC v. United States*, 65 Fed. Cl. at 492, *quoting Flamingo Fishing Corp. v. United States*, 22 Cl. Ct. 625, 630 (1991). Having placed Revenue Ruling 2002-69 at issue in this proceeding, the government is obligated to produce its *full* analysis of that Ruling and should not be allowed to redact portions which are contrary to its published guidance.

Furthermore, the redacted portions of the Final ASG will likely explain – as did the Draft ASG – that the pre-tax profit of lease-in, lease-out transactions may be consistent with prior case law in the leasing area. This fact would explain why the IRS replaced Revenue Ruling 99-14 with Revenue Ruling 2002-69 after studying "information from actual transactions." IRS News Release IR-2002-108 (Oct. 11, 2002). (Ex. C, p. 12).

**B. <u>The IRS's Position Has Been Inconsistent</u>**

The history of the IRS's pronouncements regarding lease-in, lease-out transactions plainly shows that its legal positions with respect to such transactions have been inconsistent. In Revenue Ruling 99-14, the IRS claimed that lease-in, lease-out transactions "lack[ ] economic

substance" because the "pre-tax" return on these transactions was "too significant." (Ex. A, p. 4).

Three years later, the IRS reversed its position on the economic substance issue "based on information from actual transactions." I.R.S. News Release IR-2002-108 (Oct. 11, 2002). (Ex. C, p. 12). The Draft ASG indicates that revenue agents had found that lease-in, lease-out transactions include a pre-tax profit. (Ex. D, p. 31). This level of profit was within the 2 to 4 percent range the IRS Chief Counsel subsequently stated would be sufficient to pass the economic substance test. (Ex. F, p.72). When the IRS announced its new "future interest" theory in Revenue Ruling 2002-69, IRS officials stated they would no longer "rely on the lack of a pre-tax profit potential or business purpose," which are the standard tests for economic substance. I.R.S. News Release IR-2002-108 (Oct. 11, 2002). (Ex. C, p. 12). The United States has now indicated it plans to claim that Con Edison NY's lease-in, lease-out transaction lacks economic substance, even though the IRS had indicated it would no longer pursue this argument when it issued Revenue Ruling 2002-69.

The IRS has the responsibility of providing clear guidance to the public concerning application of the tax law. Con Edison NY is entitled to a full and complete statement of the legal rules with which it is expected to comply. In particular, the IRS has not explained why, in issuing Revenue Ruling 2002-69, the IRS indicated it would no longer pursue the economic substance doctrine. Despite the contemporaneous statements made by the IRS when it issued Revenue Ruling 2002-69, the United States now has stated that it does plan to argue the economic substance doctrine.

Given the changes and inconsistencies in the IRS's position, the facts of this case fall squarely within the rule that the IRS's "conflicting interpretations of the law might constitute an important framework for the matters at issue." *Marriott International Resorts, L.P. v. United States*, 61 Fed. Cl. 411, 416 (2004), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006); *see Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1, 21 (2001). In particular, the decision to withdraw Revenue Ruling 99-14 and the IRS's contemporaneous statements that it would no longer rely on the lack of a pre-tax profit for challenging lease-in, lease-out transactions displays exactly the "note of caution" referred to in *Marriott*. *Marriott*, 61 Fed. Cl. at 416. This "note of caution" was confirmed in the Draft ASG, which explains that lease-in, lease-out transactions may "have valid commercial reasons … and a meaningful pre-tax profit." (Ex. D, p. 25).

The IRS's conflicting statements of its legal position are particularly important, where, as here, the United States intends to rely on economic substance and substance-over-form doctrines rather than statutory or regulatory provisions. These doctrine are by their nature, less clear than statutory and regulatory provisions, and therefore discovery regarding "different interpretations of the law that have been applied at different points in time" is even more appropriate in this case. *Cf. Marriott*, 61 Fed. Cl. at 416.

Finally, this is not a situation where the requested discovery relates to the "personal views" of IRS employees rather than "the official position of the agency." *Marriott*, 61 Fed. Cl. at 416. The Final ASG, like all Appeals Settlement Guidelines memoranda, was reviewed, authorized, and signed by the IRS Director, Technical Guidance. *See* Internal Revenue Manual Exhibit 8.7.3-3, *Procedures for Preparing and Submitting Guidelines* (Nov. 01, 2004). Thus, the Final ASG reflects a "high level of agency approval." *Vons,* 51 Fed. Cl. at 21.

Furthermore, the IRS's overall policies are particularly relevant in this case because the United States has made plain that it intends to rely on "pattern evidence" from other taxpayers regarding other lease-in, lease-out transactions. In fact, the United States has issued third party subpoenas under RCFC 45 requesting that various third parties[4] produce their own analysis of Revenue Ruling 2002-69. Thus, the United States is pursuing third parties' analysis of Revenue Ruling 2002-69 even as it attempts to conceal the analysis of the agency that actually created the Revenue Ruling. Since the United States is requesting that third parties produce their analysis of Revenue Ruling 2002-69, the United States' claim that the IRS's own analysis is not relevant is contrary to its own requests.

In an attempt to claim that Con Edison NY was aware of the IRS's position on lease-in, lease-out transactions, the United States relies on several documents which it claims show Con Edison NY "sped up" the closing of its transaction prior to new rules going into effect. Defendant's Motion, p. 9. This is a reference to the section 467 regulations, which were not issued in final form until June of 1999, approximately a year and a half after the transaction at issue. Treas. Decision 8820, 1991-1 C.B. 1209 (June 14, 1999). Con Edison NY's transaction was thus in compliance with the regulations in effect at the time of the transaction. In any event, the inconsistencies in the IRS's public guidance as described above involve the application of the economic substance doctrine and have nothing to do with the application of the section 467 regulations. Thus, the documents in question do not establish that Con Edison NY was aware of

---

[4] The third-party subpoenas attached to the Memorandum in Support of Plaintiff's Motion for Protective Order filed on March 8, 2007, request, in many instances, that the third parties produce their analysis of Revenue Ruling 2002-69.

the inconsistencies in the IRS's policy – especially since all of the IRS's public guidance as described above was issued after Con Edison NY's transaction.

## II. DISCLOSURE WOULD NOT BE PREJUDICIAL TO THE GOVERNMENT

Before turning to the argument the United States has raised to protect the redacted portions of the Final ASG, it is telling to consider the arguments the United States has *not* raised. The United States has not claimed that the Final ASG is protected by deliberative privilege; any such argument would be untenable since the Final ASG embodies the agency's final policy. *See Vons*, 51 Fed. Cl. at 22. Also, the United States has not claimed that the redacted portion of the Final ASG are protected by either the attorney client privilege or work product protection. Thus, the United States has not invoked any of the common law privileges commonly used to protect against discovery.

### A. The FOIA Rules Are Not Controlling for Discovery Purposes

The United States' principal argument against discovery of the redacted portions of the Draft ASG is a district court ruling in a Freedom of Information Act involving the same document. *See Mayer, Brown, Rowe & Maw, LLP v. Internal Revenue Service*, 04-2187 (D.D.C. Nov. 28, 2006). This decision is not final and is still subject to appeal. This ruling does not control for discovery purposes, however, since exemptions under FOIA do not correspond to protection from discovery under RCFC 26. Discovery under the Federal Rules of Civil Procedure, in contrast to FOIA, is broad reaching and limited only by common law privileges. In *Friedman v. Bache Halsey Stewart Shields*, 738 F.2d 1336, 1344 (1984), the D.C. Circuit Court explained that:

> If information in government documents is exempt from disclosure to the general public under FOIA, it does not automatically follow the information is

> privileged within the meaning of [Federal Rule of Civil Procedure] 26(b)(1) and thus not discoverable in civil litigation. (citation omitted) The FOIA acts as a "floor" when discovery of government documents is sought in the course of civil litigation. Though information available under the FOIA is likely to be admissible through discovery, information unavailable under the FOIA is not necessarily unavailable through discovery.

*See, e.g., Millenium Marketing Group, LLC v. United States*, 238 F.R.D. 460, 462 (S.D. Tx. 2006) (FOIA exemptions do not preclude discovery). Thus, it is "unsound" to equate the FOIA exemptions and similar discovery privileges. *Friedman*, 738 F.2d at 1444. In particular, the FOIA exemptions, unlike discovery rules, do not take into account the requesting party's need for the requested information. *Id.*

Furthermore, the decision in *Mayer, Brown* appears to be inconsistent with a similar case in the District Court for the District of Columbia which holds that the IRS's discussions of litigating hazards and settlement criteria is not protected by FOIA. *Tax Analysts v. Internal Revenue Service*, 1999 U.S. Dist. LEXIS 19514 at *9-11 (D.D.C. November 3, 1999). This case holds that "[i]t is difficult to see how knowledge of Defendant's litigation-related concerns and settlement standards could aid a taxpayer in circumventing the law." *Id.* at *10.

### B. Disclosure of the IRS's Legal Analysis Would Not Prejudice Enforcement of the Law and Is Required by the Prohibition Against "Secret Law"

The United States argues that the redacted portions of the Final ASG should be protected from discovery because their production would be "prejudicial" to the United States' interests. Significantly, the United States does not cite any precedent which would support an exemption from discovery based on the facts of this case. To the contrary, providing taxpayers with a full explanation of the facts and law applying to the taxation of lease-in, lease-out contracts would

not prejudice enforcement of the law. *See Black & Decker Corp. v. United States*, 2004 WL500847 at *4 (D. Md. Feb. 19, 2004).

As indicated above, Con Edison NY does not seek the portions of the Final ASG which relate to law enforcement activities, such as potential settlement ranges and enforcement policies. Con Edison NY seeks only a full statement of the IRS's legal and factual analysis of lease-in, lease-out transactions.

In Revenue Ruling 99-14, Revenue Ruling 2002-69, and the Final ASG, the IRS has set forth what it claims is its factual and legal analysis of lease-in, lease-out transactions. As stated in the News Release accompanying Revenue Ruling 2002-69, the IRS's revenue rulings were intended to give "clear guidance" to the public. I.R.S. News Release IR-2002-108 (Oct. 11, 2002). (Ex. C, p. 12).

The Draft ASG reveals, however, that the IRS's public pronouncements tell only half the story. In particular, the Draft ASG reveals that the IRS's new theory as set forth in Revenue Ruling 2002-69 is "novel" and "groundbreaking" and has little support in prior law. Furthermore, the Draft ASG recognizes that profitable leasing transactions – such as Con Edison NY's transaction – may satisfy the economic substance standard.

Thus, the United States' attempt to protect the redacted portions of the Final ASG represents an attempt to tell only half the story with regard to its factual and legal analysis of lease-in, lease-out transactions. The IRS claims to provide guidance to the public, but then redacts from disclosure the legal analysis which would provide the full story.

Viewed in this light, disclosure of the redacted portions of the Draft ASG would be "prejudicial" only in the sense that such disclosure would undercut the IRS's attempt to provide a one-sided legal analysis.

Providing taxpayers with "knowledge of the government's interpretation of the law would not interfere with the government's ability to present its case." *Black & Decker*, 2004 WL 500847 at *4. Furthermore, the government is not allowed to protect a "body of secret law" used in its dealings with the public. *Vons*, 51 Fed. Cl. at 22, *citing Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866-67 (D.C. Cir. 1980). The Final ASG represents "interpretation of established policy on which the agency relies in discharging its responsibilities," and also represents a "'resource' opinion about the applicability of existing policy to a certain state of facts." As such, the redacted portions of the Final ASG represent "secret law" which should not be concealed. *Coastal States*, 617 F.2d at 867.

The ASG is directly relevant to the issues presented in this case. Providing a full and complete statement of the United States' legal and factual analysis will not result in circumvention of the law, and thus, the relevance of the ASG is not outweighed by the alleged prejudice to the government, if any indeed exists.

For evidence to be excluded as prejudicial, its probative value must be substantially outweighed by the prejudice. *See* FED. R. EVID. 403. The government alleges that disclosure of the ASG would be prejudicial because it would impede the government's enforcement objectives by risking the "circumvention of the law." Defendant's Motion, at 2. The fact that the Final ASG contains legal analysis adverse to the IRS's public position is not a valid basis for withholding the document. In *Black & Decker*, 2004 WL 500847 at *4, the court stated that "[t]he

taxpayer's knowledge of the government's interpretation of the law would not interfere with the government's ability to present its case." (finding FOIA Exemption 7(A) to be inapplicable). Similarly, the disclosure of purely legal analysis would not limit the government's ability to enforce the law, and the government provides no support for its allegation to the contrary.

The United States' claim of prejudice is attenuated , and any possible prejudice is substantially outweighed by the Final ASG's probative value and the necessity of explaining the IRS's changing and inconsistent public guidance. *See Vons*, 51 Fed. Cl., at 21. The United States has not articulated how the production of the Final ASG, in the form requested by Con Edison NY, would prejudice the enforcement of the law. This is particularly true since, as the United States points out, new lease-in, lease-out transactions have been prohibited by statute since 2004. Defendant's Motion, at 4. There is no possibility of circumvention of the law since, as this case demonstrates, the United States can always proceed to litigation. *See Tax Analysts*, 1999 U.S. Dist. LEXIS 19514 *10-11.

## III. CONCLUSION

The United States has relied upon the factual and legal analysis contained in Revenue Ruling 2002-69 in the pending litigation and the legal reasoning underlying the Ruling is therefore directly relevant to this proceeding. This is particularly true because the IRS's publicly stated positions have been inconsistent and subject to change. Providing the public with a full statement of the IRS's legal analysis would not prejudice enforcement of the law. The relevance of the Final ASG thus significantly outweighs the alleged prejudice, if any, to the United States of its production. Thus, this court should compel the United States to produce an unredacted

copy of the Final ASG, subject to redactions for settlement and enforcement policies and settlement ranges.

Respectfully submitted this 2nd day of April, 2007.

/s/ Thomas C. Durham
THOMAS C. DURHAM
Attorney of Record
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Dr.
Chicago, IL 60606
Telephone: (312) 701-7216
Facsimile: (312) 706-9187
Counsel for Plaintiff

CERTIFICATE OF SERVICE

I, Thomas C. Durham, hereby certify that on this 2nd day of April, 2007, I electronically filed the foregoing Plaintiff's Response to Defendant's Motion for Protective Order using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF system, including counsel for the United States of America identified below:

David N. Geier
U.S. Department of Justice
Tax Division, Room 7919
555 Fourth Street, N.W.
Washington, D.C. 20001

/s/ Thomas C. Durham
Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,** | ) | |
| **Plaintiff,** | ) | **No. 06-305 T** |
| v. | ) | **Judge Marian Blank Horn** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**AFFIDAVIT OF THOMAS C. DURHAM IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR PROTECTIVE ORDER**

I, Thomas C. Durham, hereby declare and certify pursuant to 28 U.S.C. § 1746 as follows:

1. I am a member of the bar of the Court of Federal Claims and the Attorney of Record for Consolidated Edison Company of New York, Inc. ("Con Edison NY") in the above-captioned proceeding. I submit this Affidavit in Support of Plaintiff's Response to Defendant's Motion for Protective Order.

2. A true and correct copy of Revenue Ruling 99-14, 1999-1 C.B. 835, is attached hereto as Exhibit A. (Page 1)

3. A true and correct copy of Revenue Ruling 2002-69, 2002-2 C.B. 760, is attached hereto as Exhibit B. (Page 6)

4. A true and correct copy of IRS News Release IR-2002-108 (October 11, 2002), is attached hereto as Exhibit C. (Page 12)

5. A true and correct copy of a draft version of Appeals Settlement Guidelines, dated June 6, 2003, is attached hereto as Exhibit D. (Page 13)

6. A true and correct copy of the final version of Appeals Settlement Guidelines, dated February 24, 2004, is attached hereto as Exhibit E. (Page 44)

7. A true and correct copy of an article from Tax Notes Today, *Officials Provide Updates on LILOs and Credit Card Crackdowns*, 2003 TNT 92-2 (May 13, 2003), is attached hereto as Exhibit F. (Page 71)

8. A true and correct copy of the relevant portions of the United States' Amended Answer, filed August 2, 2006, is attached hereto as Exhibit G. (Page 74)

9. A true and correct copy of the relevant portions of the United States' Responses to Plaintiff's First Set of Interrogatories, dated December 1, 2006, is attached hereto as Exhibit H. (Page 87)

10. A true and correct copy of the United States' Supplemental Responses to Plaintiff's First Set of Interrogatories, dated December 18, 2006, is attached hereto as Exhibit I. (Page 100)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 2, 2007

/s/ Thomas C. Durham
Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff

CERTIFICATE OF SERVICE

I, Thomas C. Durham, hereby certify that on this 2nd day of April, 2007, I electronically filed the foregoing Affidavit of Thomas C. Durham in Support of Plaintiff's Response to Defendant's Motion for Protective Order using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF system, including counsel for the United States of America identified below:

David N. Geier
U.S. Department of Justice
Tax Division, Room 7919
555 Fourth Street, N.W.
Washington, D.C. 20001

/s/ Thomas C. Durham
Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff