# EXHIBIT G

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-305 T |
| | ) | Judge Marian Blank Horn |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

AMENDED ANSWER

Defendant, the United States of America, for its Answer to the Plaintiff's Complaint, admits, denies, and alleges as follows, and respectfully denies each and every allegation contained in the Complaint that is not expressly admitted below. Defendant further:

1. Admits the allegations in paragraph 1 of the Complaint.
2. Admits the allegations in paragraph 2 of the Complaint.
3. Admits that, pursuant to 28 U.S.C. § 1491, this Court has jurisdiction to hear and decide the allegations contained in Count Two of the Complaint, and otherwise denies the allegations in paragraph 3 of the Complaint.
4. Denies the allegations in paragraph 4 of the Complaint, and avers that the IRS received Plaintiff's consolidated income tax return on or about September 16, 1998, and that Plaintiff paid the income tax reflected on the return.

5. Denies the allegations in paragraph 5 of the Complaint, and avers that the address reflected on the return is not as stated.

6. Admits that the electric generation plant that is the subject of the Plaintiff's shelter transaction is referred to as the "RoCa3 Investment," that the RoCa3 facility is owned by N.V. Electriciteitsbedrijf Zuid Holland ("South Holland Electric"), and otherwise denies the allegations contained in paragraph 6 of the Complaint.

7. Admits that Con Edison reported the amounts stated in paragraph 7 of the Complaint and otherwise denies the characterization of these amounts.

8. Admits that the IRS conducted an audit of the Plaintiff's 1997 consolidated income tax return and that the IRS disallowed the Plaintiff's tax treatment of the tax shelter transaction, avers that the IRS regularly audits the income tax returns of Plaintiff and other large corporations, and otherwise denies the allegations in paragraph 8 of the Complaint.

9. Admits the allegations in paragraph 9 of the Complaint.

10. Admits the allegations in paragraph 10 of the Complaint.

11. Denies the allegations in paragraph 11 of the Complaint, and avers that the payment referred to was made on or about November 15, 2005.

12. Admits the allegations in paragraph 12 of the Complaint except denies that Plaintiff is entitled to a refund.

13. Admits the allegations in paragraph 13 of the Complaint.

14. Denies the allegations in paragraph 14 of the Complaint.

15. Admits the allegations in paragraph 15 of the Complaint, except denies that Plaintiff is entitled to a refund.

16. Denies the allegations in paragraph 16 of the Complaint.

17. Admits the allegations contained in paragraph 17 of the Complaint.

18. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19. Admits the allegations in paragraph 19 of the Complaint.

20. Admits that Plaintiff is a regulated public utility and provides electric services to customers in the state of New York, and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 20 of the Complaint.

21. Admits that, as a regulated public utility, Plaintiff was subjection to regulations promulgated by the New York Public Service Commission ("PSC"), and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21 of the Complaint.

22-27. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 22 to 27 of the Complaint.

28. Admits the allegations contained in the first and second sentences of paragraph 28, and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 28 of the Complaint.

29. Admits that Gramercy Development, Inc. became Con Edison Development, Inc., and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 29 of the Complaint.

30. Admits the allegations in the first sentence of paragraph 30, and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 30 of the Complaint.

31-44. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 31 to 44 of the Complaint.

45. Admits that Plaintiff entered into an abusive tax shelter transaction involving an electric facility referred to as RoCa3, that such facility is located in The Netherlands, and that such facility is owned by South Holland Electric, and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 45 of the Complaint.

46. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 of the Complaint.

47. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Complaint, except admits that Banc One Leasing Corp. is a participant in Plaintiff's abusive tax shelter transaction.

48. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 of the Complaint.

49. Admits that Plaintiff retained consultants in furtherance of an abusive tax shelter scheme, and otherwise denies the allegations in paragraph 49 of the Complaint.

50. Admits that Plaintiff retained Duke Engineering in furtherance of an abusive tax shelter scheme, and otherwise denies the allegations in paragraph 50 of the Complaint.

51. Admits that Duke Engineering prepared a report containing certain conclusions regarding the abusive tax shelter scheme, avers that the report should be referred to for a full expression of its terms, and further avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 of the Complaint.

52. Admits that Plaintiff retained Tauw Milieu in furtherance of an abusive tax shelter scheme, and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 52 of the Complaint.

53. Admits that Tauw Milieu prepared a report, avers that the report should be referred to for a full expression of its terms, and further avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 53 of the Complaint.

54. Admits that Plaintiff retained Deloitte & Touche in furtherance of an abusive tax shelter scheme, and that Deloitte & Touche issue a report dated December 15, 1997; avers that such report should be referred to for a full expression of its terms; and further avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 54 of the Complaint.

55. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint.

56. Admits that the report issued by Deloitte & Touche concludes that the "remaining useful life of the Facility as of the Closing Date is at least 54 years," and otherwise denies the allegations in paragraph 56 of the Complaint.

Case 1:06-cv-00305-MBH Document 10 Filed 08/02/2006 Page 7 of 13

57-60. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 57 to 60 of the Complaint.

61. Admits that Con Edison Leasing purported to execute a "lease" with South Holland Electric regarding the RoCa3 plant for approximately 43.2 years and that Con Edison leasing "subleased" the facility back to South Holland Electric for approximately 20.1 years, and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 61 of the Complaint.

62. Admits that Con Edison Leasing participated in an abusive tax shelter scheme via a trust, and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 62 of the Complaint.

63. Admits that according to the terms of the purported "lease" the allegations contained in the first and second sentences are accurate, and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 63 of the Complaint.

64. Avers that Defendant's attorneys are without knowledge or information as to the true source of the funds for the initial rent "payment" under the Headlease or that any payment actually occurred; admits that Plaintiff purported to "borrow" funds; and avers that Defendant's attorneys are

Case 1:06-cv-00305-MBH Document 10 Filed 08/02/2006 Page 8 of 13

without knowledge or information sufficient to form a belief as to the remaining allegations in paragraph 64 of the Complaint, including, but not limited to, whether Plaintiff borrowed funds and whether Plaintiff incurred transaction costs as alleged.

65. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of paragraph 65, and otherwise denies the remaining allegations in paragraph 65 of the Complaint.

66. Denies the allegations in paragraph 66 of the Complaint.

67. Denies the allegations in paragraph 67 of the Complaint, and avers that the Sublease should be referred to for a full expression of its terms.

68. Denies the allegations in paragraph 68 of the Complaint, and avers that the documents identified should be referred to for the full expression of their terms.

69. Denies the allegations in paragraph 69 of the Complaint, and avers that the documents referenced should be referred to for a complete expression of their terms.

70. Denies the allegations in paragraph 70 of the Complaint.

71. Denies the allegations in paragraph 71 of the Complaint.

72. Denies the allegations in the first sentence, and avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 72 of the Complaint.

73. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 73 of the Complaint.

74. Denies the allegations in paragraph 74 of the Complaint.

75. Denies the allegations in paragraph 75 of the Complaint.

76. Denies the allegations in paragraph 76 of the Complaint.

77. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 of the Complaint.

78. Incorporates its responses to paragraphs 1 through 77, supra, as if each were separately set forth herein.

79. Admits the allegations in paragraph 79 of the Complaint, and otherwise denies any applicability to this lawsuit.

80. Denies the allegations in paragraph 80 of the Complaint.

81. Denies the allegations in paragraph 81 of the Complaint.

82-83. Avers that Defendant's attorneys are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraphs 82 to 83 of the Complaint.

84. Denies the allegations in paragraph 84 of the Complaint.

85. Denies the allegations in paragraph 85 of the Complaint.

86. Denies the allegations in paragraph 86 of the Complaint.

87. Admits that the purported lease states that Con Edison Leasing is to make "rent payments," and otherwise denies the allegations in paragraph 87 of the Complaint.

88. Admits that the purported lease states that South Holland Electric is to make "rent payments" to Con Edison Leasing, and otherwise denies the allegations in paragraph 88 of the Complaint.

89. Denies the first sentence of paragraph 89, admits the remaining allegations in paragraph 89 of the Complaint, and avers that proposed regulations were issued on June 3, 1996.

90. Admits the allegations in paragraph 90 of the Complaint.

91. Denies the allegations in paragraph 91 of the Complaint.

92. Admits the existence of a "safe harbor," but denies Plaintiff's characterization of the "safe harbor" provision in the 467 regulations, avers that such regulations should be seen for a complete expression of its terms, and otherwise denies the allegations in paragraph 92 of the Complaint.

93. Denies the allegations in paragraph 93 of the Complaint.

94. Denies the allegations in paragraph 94 of the Complaint.

95. Denies the allegations in paragraph 95 of the Complaint.

96. Incorporates its responses to paragraphs 1 through 95, supra, as if each were separately set forth herein.

97. Denies the allegations in paragraph 97 of the Compliant.

98. Denies the allegations in paragraph 98 of the Complaint.

99. Denies the allegations in paragraph 99 of the Complaint.

100. Denies the allegations in paragraph 100 of the Complaint and avers that the IRS disallowed the deductions referred to in paragraph 100.

101. Denies the allegations in paragraph 101 and avers that the disallowance is not proposed.

102. Denies the allegations in paragraph 102 of the Complaint and avers that adjustments were not proposed.

103. Denies the allegations in paragraph 103 of the Complaint and avers that the adjustments made by the Internal Revenue Service resulted in a $937,331 in increase in taxable income.

104. Denies the allegations in paragraph 104 of the Complaint and avers that Plaintiff owed an additional $328,066 in taxes, which amount was paid.

105. Admits that the Plaintiff paid $328,066 in additional taxes.

106. Denies the allegations in paragraph 106 of the Complaint.

ADDITIONAL DEFENSES

107. Plaintiff is not entitled to the tax losses claimed because the tax shelter transaction and components thereof lacked economic substance and/or constitute a sham.

108. The tax deductions at issue fail when the step transaction doctrine is applied and the steps which comprise the tax shelter are collapsed and then viewed as a single transaction.

109. Plaintiff is not entitled to an interest expense deduction with respect to its "non-recourse loan," because such loan does not result in a use of the loan proceeds by Plaintiff nor a true forbearance by its lender.

110. The tax shelter transaction here at issue creates, at most, a contingent future leasehold interest and Plaintiff is therefore not entitled to any present deductions on account thereof.

111. To the extent that Count One of the Plaintiff's Complaint can be construed to seek relief with respect to any tax year occurring before or after Plaintiff's 1997 tax year, the relief sought violates the Anti-Injunction Act (26 U.S.C. § 7421), the Declaratory Judgment Act (28 U.S.C. § 2201), and constitutes a variance from its claim for refund,

and therefore this Court lacks jurisdiction to hear such claim.

112. The Plaintiff's participation in an illegal tax shelter transaction did not constitute an investment for federal tax purposes and any reference to the transaction as an "investment" is specifically denied.

s/ David N. Geier
DAVID N. GEIER
Attorney of Record
U.S. Department of Justice, Tax Division
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3448
Facsimile: (202) 307-0054

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section
JOSEPH A. SERGI
Trial Attorney

s/ David Gustafson
Of Counsel

August 2, 2006

# EXHIBIT H

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) | No. 06-305 T<br>Judge Marian Blank Horn |

---

**UNITED STATES' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

---

**GENERAL OBJECTIONS**

A. The United States objects to the Plaintiff's First Set of Interrogatories ("Interrogatories") to the extent that the Interrogatories seek information protected from disclosure by the attorney-client privilege.

B. The United States objects to the Interrogatories to the extent that the Interrogatories seek information protected from disclosure by the work product doctrine.

C. The United States objects to the Interrogatories to the extent that the Interrogatories seek information protected from disclosure under 26 U.S.C. § 6103.

D. The United States objects to the Interrogatories to the extent that the Interrogatories seek information protected from disclosure by the deliberative process privilege.

E. The United States objects to the Plaintiff's use of three different potential sources for the defined terms that are utilized in the Interrogatories as burdensome, vague and ambiguous. The Plaintiff defines certain terms in its discovery requests. With respect to other defined terms, the Plaintiff refers the United States to a separate, 171-page Appendix (to an Participation Agreement). Finally, notwithstanding the use of defined terms, the Plaintiff asserts that each word or term utilized (presumably including defined terms) shall have the "broadest meaning permitted under the RCFC."

F. The United States objects to the Plaintiff's instructions to the extent that they require more of the responding party than is required under the Rules of the Court of Federal Claims, and in particular, Rule 33.

G. Defendant objects to Plaintiff's interrogatories to the extent that they purport to require defendant to identify witnesses retained to give expert testimony in this case and to state the opinions to be expressed by these witnesses and the grounds therefore before the dates for the disclosures.

H. Defendant objects to Plaintiff's interrogatories to the extent that they purport to require Defendant to express, at this early stage of the litigation, its positions and the facts it relies on before it completes discovery, obtains the opinions of appropriate experts, and is called upon to express its positions in a pre-trial brief.

**Responses to Specific Interrogatories**

1. Please specify all facts and analysis supporting the United States' assertion that the Lease from South Holland Electric to Con Edison Leasing and the Sublease from Con Edison Leasing to South Holland Electric do not qualify as leases for federal income tax purposes.

United States Response to Interrogatory No. 1:

The United States objects to this interrogatory for reasons set forth in its general objections. The United States further objects to this interrogatory as vague and ambiguous because the term "analysis" is undefined and may refer to privileged analysis of counsel or analysis made by an expert. See General Objection G.

Subject to the foregoing objections, the United States contends that LILOs have been sold by their promoters to many large corporations on the basis of their supposed tax benefits. In a LILO, the taxpayer purports to lease property from the owner under a head lease, and simultaneously purports to lease the property back to the owner under a sublease. In a typical LILO shelter, as is the case here, the owner is a foreign entity or domestic municipality that pays no taxes in the United States, and, therefore, cannot claim the federal income tax benefits, like depreciation, associated with ownership. After the transaction, the owner continues to operate the property, and retains all of the benefits and burdens associated with the property's use and ownership, while the taxpayer claims rent and interest deductions associated with the purported head lease. The claimed deductions are substantial, because the head lease provides for a large advance rent payment. The LILO documents call for the tax exempt owner to make much smaller, periodic payments on its sublease. In fact, no significant funds actually change hands, since a foreign bank (1) makes a non-recourse loan to the taxpayer to finance the head lease payments, (2) the owner's sublease rent payments are identical in timing and amount to the taxpayer's loan payments, (3) the loan proceeds are not paid to the owner but are held by the foreign bank (or an affiliate), and used to satisfy the identical owner rent payments and taxpayer loan repayments. This circular financing arrangement among the taxpayer, property owner, and foreign bank virtually ensures that 1) neither the taxpayer nor owner will need to use their

own funds to satisfy their respective obligations under the operative documents (save for the fees and other costs paid by the taxpayer in connection with the transaction); and 2) the owner will retain dominion and control over the subject property. In short, other than the execution of paper and the payment of fees, nothing happens.

According to the records obtained by the IRS, Plaintiff's LILO followed this pattern. It is not entitled to a refund, because it did not acquire a genuine leasehold interest in property in 1997 when it participated in the LILO, nor did Plaintiff incur a genuine debt obligation in connection with that deal. As a result, the tax deductions Plaintiff claimed on account of the purported leasing transaction are improper. Plaintiff is not entitled to the tax losses claimed because the tax shelter transaction and components thereof lacked economic substance and/or constitute a sham. The tax deductions at issue fail when the step transaction doctrine is applied and the steps which comprise the tax shelter are collapsed and then viewed as a single transaction. Plaintiff is not entitled to an interest expense deduction with respect to its "non-recourse loan," because such loan does not result in a use of the loan proceeds by Plaintiff nor a true forbearance by its lender. The tax shelter transaction here at issue creates, at most, a contingent future leasehold interest and Plaintiff is therefore not entitled to any present deductions on account thereof.

The United States, at this nascent stage of the litigation, is not currently in a position to provide a complete recitation of facts or analysis in support of its contentions. The United States has been frustrated in its efforts to obtain discovery from Plaintiff, and, at this juncture, Plaintiff has not fully and properly responded to the United States' discovery requests. Discovery is ongoing and the United States reserves the right to supplement its

response to this interrogatory in the event further information is elicited during discovery that affects the United States' position.

The Plaintiff is referred to the report of the IRS Revenue Agent who examined the facts of this case ("RAR") for the most comprehensive recitation of facts and analysis presently available to the United States. (US005649-US005681). However, this is a *de novo* proceeding, and the United States is not bound by the administrative record or positions taken by the IRS during the course of the administrative disposition of the Plaintiff's claims for refund.

The United States intends to rely on the economic substance doctrine and the step transaction doctrine as set forth in relevant persuasive and authoritative case law.

2. Please specify all facts and analysis supporting the United States' assertions, in paragraph 109 of its Amended Answer and the Joint Preliminary Status Report, respectively, that Con Edison Leasing's "loan does not result in a use of the loan proceeds" by Con Edison Leasing and does not represent "a true forbearance" by the Lender, and as a result, Con Edison Leasing did not "incur a genuine debt obligation in connection with [the RoCa3 Investment]."

United States Response to Interrogatory No. 2:

The United States incorporates by reference its objections and response to Interrogatory No. 1 as if set forth herein.

3. Please specify all facts and analysis underlying the United States' denial that South Holland Electric is not likely to exercise its Sublease Purchase Option.

United States Response to Interrogatory No. 3:

The United States incorporates by reference its objections and response to Interrogatory No. 1 as if set forth herein. In further response, information obtained from Plaintiff reflects that there are economic and non-economic factors that make it likely that

EZH will exercise its sublease purchase option. *See, e.g.*, Bates Nos. PF005958; PF005977-PF005980; PF005650; PF005665.

4. Please specify all facts and analysis supporting the United States' assertion, in paragraph 107 of its Amended Answer, that Con Edison "is not entitled to the tax losses claimed because the tax shelter transaction and components thereof lacked economic substance and/or constitute a sham."

United States Response to Interrogatory No. 4:

The United States incorporates by reference its objections and response to Interrogatory No. 1 as if set forth herein.

5. Please specify all facts and analysis supporting the United States' assertion, in paragraph 108 of its Amended Answer, that the step transaction doctrine is applicable to Con Edison's RoCa3 Investment and that "[t]he tax deductions at issue fail when the step transaction doctrine is applied . . ."

United States Response to Interrogatory No. 5:

The United States incorporates by reference its objections and response to Interrogatory No. 1 as if set forth herein.

6. Please specify all facts and analysis supporting the United States' assertions, in the Joint Preliminary Status Report and paragraph 110 of its Amended Answer, respectively, that Con Edison Leasing "did not acquire a genuine leasehold interest in property . . .," and its RoCa3 Investment "creates, at most, a contingent future leasehold interest and [Con Edison] is therefore not entitled to any present deductions on account thereof."

United States Response to Interrogatory No. 6:

The United States objects to this interrogatory for reasons set forth in its general objections. The United States further objects to this interrogatory as vague and ambiguous because the term "analysis" is undefined and may refer to privileged analysis of counsel or analysis made by an expert. *See* General Objection G.

Subject to the foregoing objections, the Plaintiff is referred to the RAR for the most comprehensive recitation of facts and analysis presently available to the United States. (US005649-US005681). However, this is a *de novo* proceeding, and the United States is not bound by the administrative record or positions taken by the IRS during the course of the administrative disposition of the Plaintiff's claims for refund.

The United States intends to rely on the economic substance doctrine and the step transaction doctrine as set forth in relevant persuasive and authoritative case law.

The United States, at this nascent stage of the litigation, is not currently in a position to provide a complete recitation of facts or analysis in support of its contentions. The United States has been frustrated in its efforts to obtain discovery from Plaintiff, and, at this juncture, Plaintiff has not fully and properly responded to the United States' discovery requests. Discovery is ongoing and the United States reserves the right to supplement its response to this interrogatory in the event further information is elicited during discovery that affects the United States' position.

7. Please indicate whether the Lender from whom Con Edison Leasing borrowed a portion of the Prepayment Amount is at risk for non-payment and, if the United States asserts that the Lender is not at risk, specify all facts and analysis supporting the United States' position.

United States Response to Interrogatory No. 7:

The United States objects to this interrogatory for reasons set forth in its general objections. The United States further objects to this interrogatory as vague and ambiguous because the term "analysis" is undefined and may refer to privileged analysis of counsel or analysis made by an expert. *See* General Objection G. The United States also objects

to this interrogatory to the extent it implies that Con Edison undertook a genuine debt or that there was a true forbearance by the "Lender."

Subject to the foregoing objections, the Plaintiff is referred to the RAR for the most comprehensive recitation of facts and analysis presently available to the United States. (US005649-US005681). However, this is a *de novo* proceeding, and the United States is not bound by the administrative record or positions taken by the IRS during the course of the administrative disposition of the Plaintiff's claims for refund.

The United States, at this nascent stage of the litigation, is not currently in a position to provide a further response to this interrogatory. The United States is in the process of engaging in third-party discovery in an endeavor to obtain information that would enable the United States to provide a further response to this interrogatory, some of which involves discovery from international third-party entities. Further, the United States has been frustrated in its efforts to obtain discovery from Plaintiff, and, at this juncture, Plaintiff has not fully and properly responded to the United States' discovery requests. Discovery is ongoing and the United States reserves the right to supplement its response to this interrogatory in the event further information is elicited during discovery that will enable the United States to further respond to this interrogatory.

8. Please specify all facts and analysis supporting the United States' assertion that Con Edison Leasing did not acquire the benefits and burdens of ownership of a leasehold interest in the RoCa3 Facility in the context of the RoCa3 Investment and that Con Edison Leasing is not subject to residual value risk following the Sublease Term and/or the Sublease Renewal Term, if the Sublease Renewal Option is exercised.

United States Response to Interrogatory No. 8:

The United States incorporates by reference its objections and response to Interrogatory No. 1 as if set forth herein.

9. For the following individuals, identified by the United States in its Rule 26(a) disclosures, dated September 25, 2006, please identify the role of each in the United States' evaluation of the RoCa3 Investment and all information and/or opinions possessed by each which the United States may use to support its claims and/or defenses in the pending case:

(a) Joseph Yashpeh,
(b) Herbert Rosenbluth,
(c) Alan Brown,
(d) Carry [sic] Allen,
(e) Patricia Autrey,
(f) Any Liberator,
(g) Lisa Moser, and
(h) IRS Counsel referenced but not identified by name.

United States Response to Interrogatory No. 9:

The United States objects to this interrogatory for reasons set forth in its general objections. As to privileged/protected analyses requested by this interrogatory, the United States refers the Plaintiff to the privilege log produced in tandem with its initial disclosures. This log will be supplemented, if the need arises, at or near the close of discovery.

The United States further objects to this interrogatory to the extent that it implies that these individuals are necessarily, or even likely, to be witnesses at trial. The Plaintiff's claim before this Court is subject to a *de novo* review, and the administrative disposition of the claim is irrelevant.

Subject to these objections, the United States responds as follows:

(a) Joseph Yashpeh: Mr. Yashpeh was the initial IRS revenue agent who worked on the Plaintiff's claim. He worked with IRS technical advisors, contacted the taxpayer, and prepared the RAR.

(b) Herbert Rosenbluth: Mr. Rosenbluth was the IRS team coordinator for the team assigned to work on the Plaintiff's claim. He played no role in the analysis of the claim. He closed out the case after Mr. Yashpeh left the IRS.

(c) Alan Brown: Mr. Brown was the IRS case manager for the team working on the Plaintiff's claim. He signed off on the RAR.

(d) Cary Allen: Mr. Allen was an IRS technical advisor regarding LILO transactions. He has retired. Mr. Allen assisted with preparation of IDR's [translate], the RAR and cash flow schedules. Mr. Allen was the IRS contact person on LILO issues regarding the Plaintiff's claim.

(e) Patricia Autrey: Ms. Autrey was an IRS technical advisor. She spoke to Mr. Yashpeh at some point regarding the Plaintiff's claim.

(f) Any Liberator: Ms. Liberator had no direct contact with the IRS team working on the Plaintiff's claim, and her name should be removed from the United States' Initial Disclosures.

(g) Lisa Moser: Ms. Moser had no direct contact with the IRS team working on the Plaintiff's claim, and her name should be removed from the United States' Initial Disclosures.

(h) IRS Counsel referenced but not identified by name: The United States does not intend to call individuals in the IRS Counsel's office as witnesses in this case.

Dated: December 1, 2006

DAVID N. GEIER
Attorney of Record
U.S. Department of Justice,
Tax Division
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3448
Facsimile: (202) 307-0054

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

STEVEN I. FRAHM
Assistant Chief,
Court of Federal Claims Section
JOSEPH A. SERGI
Trial Attorney
JAMES E. WEAVER
Trial Attorney

# DECLARATION

In accordance with 28 U.S.C. § 1746, I, David Geier, declare as follows:

1. I am a trial attorney employed by the Department of Justice, Tax Division, in Washington, D.C. I have been assigned responsibility for representing the United States in this case.

2. The facts set forth in the Defendant's Response to Plaintiff's Interrogatories are true and correct to the best of my information and belief.

I declare under penalty of perjury this 1st day of December, 2006, that the forgoing is true and correct.

DAVID N. GEIER
Trial Attorney, Tax Division
U.S. Department of Justice

# CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2006, a copy of the foregoing Response was served by depositing a true and correct copy thereof in the United States mail, postage prepaid, addressed to:

Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606

and via email addressed to:

tdurham@mayerbrownrowe.com

DAVID N. GEIER
Trial Attorney, Tax Division
U.S. Department of Justice

# EXHIBIT I

# United States Department of Justice

Tax Division
*Civil Trial Section, Western Region*
*P.O. Box 683 - Ben Franklin Station*
*Washington, D.C. 20044*
*Fax: (202) 307-0054*

| | |
|---|---|
| **TO:** | Thomas Durham |
| **FAX NUMBER:** | 312-706-9187 |
| **SUBJECT:** | Consolidated Edison Company |
| **DATE SENT:** | December 18, 2006 |
| **PAGES: (Including this cover sheet)** | 7 |
| **FAX FROM:** | David Geier |

COMMENTS:

**WARNING:** The information contained in this facsimile is confidential and may be subject to disclosure limitations under Rule 6(e) of the Federal Rules of Criminal Procedure and Section 6103 of the Internal Revenue Code. The information is intended only for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, or the employee or agent responsible for delivering it to the recipient, you are hereby notified that any use, dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this facsimile in error, please immediately notify the sender identified above by telephone.

2084604.1

U.S. Department of Justice

Tax Division

Facsimile No. (202) 307-0054
Trial Attorney: David N. Geier
Attorney's Direct Line: (202) 616-3448

Please reply to: Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

EJO'C:DG:SF:DNGeier
154-2457
CMN 2006103503

December 18, 2006

**Also via Facsimile (312) 706 9187**

Thomas C. Durham, Esquire
Nicole M. Bielawski, Esquire
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606

Re: Consolidated Edison Company of New York, Inc. & Subsidiaries v. United States
Fed. Cl. No. 06-305 T

Dear Tom and Nicole:

This letter is in response to your letter of December 7, 2006 regarding the United States' answers to Plaintiff's discovery requests. We do not agree with your assertion that the responses contain "significant deficiencies." However, in an effort to alleviate your concerns, we will address the contentions contained in your letter.

*General Contentions*

First, contrary to Plaintiff's assertion, the United States has not refused to answer Plaintiff's discovery requests. Rather, it has given full and complete answers based upon the information available to it, consistent with its obligations under the Rules of the Court of Federal Claims. Further, given Plaintiff's continued refusal to provide complete discovery, as set forth in our correspondence of December 12, 2006, and the fact that Plaintiff again supplemented its Rule 26(a) disclosures and Responses to the United States' Interrogatories and Request for Production of Documents only a few days ago, Plaintiff's complaints are meritless. In the event the United States receives further information from Plaintiff, or other entities that informs the United States' understanding of the case, it will of course supplement its responses to Plaintiff's discovery requests if appropriate.

*Requests for Admission*

It is not clear to us why you take issue with the United States' objection to the use of the term "July 1996 Order." The term "July 1996 Order" was not defined. Indeed, we are aware of

several "July 1996 Orders" issued by the New York Public Service Commission ("NY PSC"). In an effort to answer the discovery we explained in our response that we interpreted the "July 1996 Order" to mean the Order issued on July 12, 2006 by the NY PSC in Case 95-M-0418.

Further, your characterizations of both what Requests for Admission Nos. 4-6 seek and whether the United States admitted or denied these requests are inaccurate. These requests do not, as your letter contends, "seek the United States' understanding and/or interpretation of the language contained in the July 1996 Order." Rather, the requests ask the United States to admit Plaintiff has accurately interpreted the language in a July 1996 NY PSC Order. The United States responded by denying the requests to the extent Plaintiff's interpretation of the document we defined as the "July 1996 Order" exceeds or misstates the explicit terms of that Order. For example, Request No. 4 asserts that Con Ed could both "invest or participate in international energy infrastructure projects." The specific decretal language on page 8 of the "July 1996 Order" refers only to "investing." The United States acknowledges that what we believe to be the "July 1996 Order" contains language in the discussion section of the Order referring to both investing and participation in international infrastructure projects; however, the United States was not a party to the proceedings in front of the NY PSC and is not privy to the reason for this inconsistency. Further, Plaintiff asserts that the July 1996 Order would allow unregulated subsidiaries of Con Edison to "market international technical assistance." The meaning of this phrase is unclear, and to the extent its meaning differs from the meaning of the language of what we believe to be the "July 1996 Order"–"market technical assistance in international markets"–the United States denied the request.

Plaintiff similarly asks the United States to admit in Request for Admission No. 5 that the July 1996 Order "stated an understanding that Con Edison NY' investment in unregulated subsidiaries be largely international." The United States denied Request No. 5 to the extent Plaintiff attempted to inject a meaning into the "July 1996 Order" that was not apparent from the Order's face. For example, at page four of the "July 1996 Order" the text reflects that Con Edison informed the NY PSC that it was considering largely international business opportunities in connection with the projects that were the subject of the Order. In addition, while the "July 1996 Order" refers to international projects, it also refers to domestic projects. Further, there does not appear to be any preference asserted with respect to any type of project referred to in the "July 1996 Order," except a specific limitation on investments in New York energy projects. Thus, the United States believes that its response to Request for Admission No. 5 is appropriate.

Finally in response to Request for Admission No. 6, the United States admitted that the terms "development companies, investment funds, joint ventures, or other vehicles" are used in the "July 1996 Order"; but, upon review of pertinent language of the "July 1996 Order," it is not clear whether the NY PSC is simply referring to the investments being considered by Plaintiff, or whether it is explicitly authorizing the use of these vehicles. Thus the United States believes that its response to Request for Admission No. 6 is appropriate.

In regards to your purported explanation of Request for Admission Nos. 18, 31, 33, 34 and 37, none of these requests asked the United States to "admit or deny whether certain provisions are contained within the operative documents" as you contend in your December 7,

2006 correspondence. Further, Plaintiff's contention that the Government failed to respond ignores the fact that the United States denied each request. The United States fully responded to each request and stands by its original responses thereto, with the exception that, in keeping with its good faith obligations in addressing discovery, the United States will, as more fully discussed below, consider whether supplementation of its responses to Request for Admission Nos. 31, 33, and 37 is necessary in light of your recent attempt to clarify the meaning of the terms contained in those requests.

We understand that you have attempted to clarify the meaning of the terms "parties," "aggregate disbursements," and "applicable rules." Because the term "parties" is now defined to mean Con Edison Leasing and South Holland Electric, the United States withdraws its objections to Request for Admission Nos. 20 and 21 based upon the vagueness of that term. Nevertheless, the United States' responses to those requests stand. In regards to Request for Admission No. 37, Plaintiff's attempt to clarify the meaning of the terms used in the request still does not supply a definition for the phrase "for accounting purposes." Thus, the United States maintains its objection. As for the definition supplied, it is the United States' understanding that Plaintiff intends for the "applicable rules" to mean FASB 13 and U.S. GAAP Rules as referred to in Plaintiff's Request for Admission No. 36. Based upon this understanding of the definition of "applicable rules" provided in your December 7, 2006 correspondence, the United States withdraws its objection to the definition of the term "applicable rules." In light of Plaintiff's recently provided definition, the United States will amend its response to Request for Admission No. 37 to state as follows:

> The United States objects to this request as vague and ambiguous because it is not clear what Plaintiff means by the use of the phrase "for accounting purposes." Subject to these objections, the United States denies this request for lack of information or knowledge because, after reasonable inquiry, the information known or reasonably obtainable by the United States is insufficient to enable the United States to admit or deny the request. Further, the interpretation of U.S. GAAP Rules is an area that requires specialized knowledge and often involves matters of expert opinion.

In regards to your now defining the term "aggregate disbursements" as "the sum total of the amounts Con Edison Leasing will be required to pay in connection with the RoCa3 Investment," the United States will review its responses and determine if supplementation of its responses to Request for Admission Nos. 30, 31, 32, and 33 is necessary in light of this additional information.

The United States stands by its objections to Request for Admission Nos. 38 and 39, and subject to those objections the United States properly answered these requests.

*Interrogatories*

The United States has provided Plaintiff with responses to Plaintiff's interrogatories based upon the facts as the United States understands them to be at this point in the case.

ls

We have reviewed the United States' responses to Interrogatory Nos. 1 through 5 in light of your letter. The United States has sufficiently responded to those Interrogatories. Nevertheless, in an effort to try and avoid a discovery dispute on this point, the United States supplements its response to Interrogatory No. 1 as follows:

> The United States objects to this interrogatory for reasons set forth in its general objections. The United States further objects to this interrogatory as vague and ambiguous because the term "analysis" is undefined and may refer to privileged analysis of counsel or analysis made by an expert. *See* General Objection G.
>
> Subject to the foregoing objections, and the General Objections, the United States contends that LILOs have been sold by their promoters to many large corporations on the basis of their supposed tax benefits. In this case Plaintiff, through a subsidiary Con Edison Leasing ("Con Ed"), and by way of a trust, purported to lease property, in this case the RoCa3 power facility in the Netherlands, from its owner, N.V. Electriciteitsbedrifj Zuid-Holland ("EZH"), under a head lease, and simultaneously purported to lease the property back to the EZH under a sublease. The owner, EZH, is a foreign entity that pays no taxes in the United States, and, therefore, cannot claim the federal income tax benefits, like depreciation, associated with ownership. After the close of the transaction, EZH will and does continue to operate the property, and retained all of the benefits and burdens associated with the property's use and ownership, while Plaintiff claims substantial deductions associated with the transaction. The United States contends that the tax deductions claimed by Con Ed are improper for several reasons. First, an examination of the LILO Transaction as a whole reveals that Con Ed did not in substance acquire a present leasehold interest in EZH's property, nor did it incur a genuine debt in connection with the deal. During 1997, the taxable year in issue, Con Ed did not enjoy the benefits or shoulder the burdens of a property interest in the RoCa3 Facility, did not engage in any purposeful borrowing in connection with the LILO Transaction, and had no debt or equity committed to the Roca3 Facility or otherwise at risk. As a result, Con Ed did not possess a meaningful stake in EZH's property. *See TIFD III-E, Inc. v. United States*, ___ F. 3d ___, 2006 WL 2171519 (2d Cir. August 3, 2006) (banks with a secure guaranty of reimbursement, and capped return on their investment lacked an equity investment in a partnership).
>
> In addition, the LILO Transaction should be disregarded under the economic substance doctrine as set forth in relevant persuasive and authoritative case law. Under the economic substance doctrine a transaction that is invented solely to create tax deductions will not be recognized for federal tax purposes if it has no economic substance, even though it may formally comply with the letter of the Internal Revenue Code. *Knetsch v. United States*, 364 U.S. 361 (1960); *Coltec Indus. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006). In the Federal Circuit, Plaintiff bears the burden of proving that the LILO Transaction has economic substance. The doctrine requires the Court to examine either Plaintiff's motivation for engaging in the Transaction, or the potential for Plaintiff to earn a pretax profit from its purported

ls

leasehold interest in the Roca3 Facility. The relevant inquiry in this regard is whether the LILO Transaction has economic substance aside from tax benefits it was designed to generate. Plaintiff does not expect any pre-tax return on its investment in the LILO Transaction for at least 15 years. Nor can Plaintiff reasonably expect to earn a profit from the residual value of the facility after the lease to EZH expires. Indeed, taxes and transaction fees aside, Plaintiff's economic position remains virtually unchanged by the LILO Transaction. Accordingly, the Transaction lacks economic substance and should be disregarded for federal income tax purposes.

Moreover, Plaintiff is not entitled to a refund, because it did not acquire a genuine leasehold interest in the Roca3 Facility in 1997 when it participated in the LILO, nor did Plaintiff incur a genuine debt obligation in connection with that deal. As a result, the tax deductions Plaintiff claimed on account of the purported leasing transaction are improper. Plaintiff is not entitled to an interest expense deduction with respect to its "non-recourse loan," because such loan does not result in a use of the loan proceeds by Plaintiff nor a true forbearance by its lender. The tax shelter transaction here at issue creates, at most, a contingent future leasehold interest and Plaintiff is therefore not entitled to any present deductions on account thereof.

Finally, the tax deductions at issue fail when the step transaction doctrine is applied and the steps which comprise the tax shelter are collapsed and then viewed as a single transaction. Under the relevant persuasive and authoritative case law, the doctrine recharacterizes formally separate transactions as a single transaction for tax purposes if such characterization more accurately reflects the underlying substance. Applying this doctrine to the LILO Transaction, the head-lease and sublease would collapse.

The United States has been frustrated in its efforts to obtain discovery from Plaintiff, and, at this juncture, Plaintiff has not fully and properly responded to the United States' discovery requests, and only this past week supplemented its Rule 26(a) disclosures for a second time. Discovery is ongoing and the United States reserves the right to supplement its response to this interrogatory in the event further information is elicited during discovery that affects the United States' position.

The Plaintiff is referred to the report of the IRS Revenue Agent who examined the facts of this case ("RAR") for the most comprehensive recitation of facts and analysis presently available to the United States. (US005649-US005681). However, this is a *de novo* proceeding, and the United States is not bound by the administrative record or positions taken by the IRS during the course of the administrative disposition of the Plaintiff's claims for refund.

Plaintiff's claim that the United States has not sufficiently detailed its legal theories or the facts it intends to rely upon is particularly troubling. The United States was not a party to the LILO transactions at issue. All of the facts relevant to this transaction are held by Plaintiff and those entities with whom Plaintiff has a contractual relationship. As discovery progresses the United

ls

States will learn more about the transaction and will, if necessary, supplement its responses to Plaintiff's Interrogatories upon further investigation and analysis of the case.

*Request for Production of Documents*

We understand from your December 7, 2006 correspondence that you have agreed to limit Request No. 4 solely to the *final* version of the Appeals Settlement Guidelines. However, the United States cannot agree to produce the document because it is irrelevant, immaterial, not calculated to lead to admissible evidence, and disclosure of the document would be unduly prejudicial and burdensome to the United States, as was thoroughly explained in the case *Mayer, Brown, Rowe & Maw LLP v. Internal Revenue Service* that your law firm filed. Your argument that a general guidance document, which does not take into account any of the specific facts of the instant case, could "demonstrate the LILO at issue in the instant case is not an abusive tax shelter" shows the fallacy of your relevance argument. In fact, you recognized this when you stated previously that "the specific facts of Con Edison's transactions are at issue in this proceeding **and not** LILO transactions in general." (emphasis added) Further, even if it were true as you posit, that "the final version of the Appeals Settlement Guidelines is inconsistent with the United States' litigating position in this case," the document is still irrelevant in a *de novo* proceeding. *See e.g., Flamingo Fishing Corp. v. United States*, 31 Fed. Cl. 655, 658 (1994). Since the previous positions taken by the IRS in this specific case are irrelevant, then surely any positions taken generally, especially with an eye towards settlement, are without consequence. As such, the United States does not intend to produce the requested unredacted verison of the Appeals Settlement Guidelines.

*Privilege Log*

The United States is in the process of reviewing its privilege log and in order to avoid a discovery dispute regarding the ability of Plaintiff to assess the privileges asserted by the United States will supplement its log where it deems appropriate to do. We anticipate that our review of the privilege log will be completed by the end of this week. The United States intends to produce a supplemental privilege log by December 22, 2006.

Sincerely yours,

DAVID N. GEIER
Trial Attorney, Tax Division

cc: Carmen Baerga, Esq.