**No. 06-305 T**
**(Judge Marian Blank Horn)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CONSOLIDATED EDISON COMPANY**
**OF NEW YORK, INC. & SUBSIDIARIES**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

# DEFENDANT'S MOTION TO COMPEL

**EILEEN J. O'CONNOR**
***Assistant Attorney General***

**DAVID GUSTAFSON**
**STEVEN I. FRAHM**
**DAVID N. GEIER**
**JOSEPH A. SERGI**
**JAMES E. WEAVER**
**ADAM R. SMART**
***Attorneys***
***Tax Division***
***Department of Justice***
***Washington, D.C. 20044***
**(202) 616-3448 (telephone)**
**(202) 307-0054 (facsimile)**

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . iii

QUESTIONS PRESENTED . . . . . 1

INTRODUCTION . . . . . 2

STATEMENT OF FACTS . . . . . 5

A. Background – The LILO Transaction . . . . . 5

B. Plaintiff's Production of Documents . . . . . 6

1. *Documents Produced to the Internal Revenue Service During Audit* . . . . . 6

2. *Documents Produced to Defendant During Discovery* . . . . . 7

3. *Shearman & Sterling Opinion* . . . . . 11

ARGUMENT . . . . . 12

A. Legal Opinions Disclosed to Pricewaterhouse are Not Privileged . . . . . 13

B. The Privilege Asserted Does Not Attach or Has Been Waived With Respect to 29 Documents Identified on Plaintiff's Privilege Log . . . . . 15

1. *Documents Disclosed to the IRS* . . . . . 17

2. *Documents Disclosed in Discovery* . . . . . 18

a. *General Objections Do Not Preserve a Privilege Claim as to Documents Produced* . . . . . 18

b. *Plaintiff's Disclosures Can Not Be Considered Inadvertent* . . . . 19

(i) Plaintiff Waived the Attorney-Client Privilege as to the Leasing White Paper . . . . . 20

(ii) Plaintiff Waived the Privilege as to 13 Documents Produced on December 13, 2006 . . . . . 22

C. Plaintiff Waived any Privilege With Respect to the Subject Matter of Information Contained in Documents it Produced . . . . . . . . . . . . . . . . 24

1. *Subject Matter Waiver as to the Documents Produced to the Government* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

2. *Subject Matter Waiver Related to the Shearman & Sterling Opinion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alaska Pulp Corp., Inc. v. United States*, 44 Fed. Cl. 734 (1999) . . . . . . . . . . . . . . . 21-23

*Cabot v. United States*, 35 Fed. Cl. 442 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Carter v. Gibbs*, 909 F.2d 1450 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Duplan Corp. v. Deering Milliken. Inc.*, 397 F. Supp. 1146 (D.S.C. 1974) . . . . . . . . . 14

*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481 (2000) . . . . . . . . . . . . . . . . . . 12

*Eureka Finance Corp. v. Hartford Accident & Indemnity Co.*, 136 F.R.D. 179 (E.D. Cal. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*First Federal Sav. Bank of Hegewisch v. United States*, 55 Fed. Cl. 263 (2003) . . . . . 12

*First Heights Bank, F.S.B. v. United States*, 46 Fed. Cl. 312 (2000) . . . . . . . . . . . . . . 27

*Fisher v. United States*, 425 U.S. 391 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . 24-25

*In re G-I Holdings Inc.*, 218 F.R.D. 428 (D. N.J. 2003) . . . . . . . . . . . . . . . . . . . . . 19, 28

*In re Grand Jury Proceedings*, 33 F.3d 342 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . 14-15

*In re Grand Jury Proceedings*, 727 F.2d 1352 (4th Cir. 1984) . . . . . . . . . . . . . . . . 13, 15

*International Bus. Machine Corp. v. United States*, 37 Fed. Cl. 599 (1997) . . . . . . . . 13

*National Helium Corp. v. United States*, 219 Ct. Cl. 612, 614 (1979) . . . . . . . . 13, 20-21

*N.C. Electric Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511 (M.D.N.C. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Pacific Gas & Electric Co. v. United States*, 69 Fed. Cl. 784 (Ct. Cl. 2006) . . . . . . 28-29

*Pavlik v. Cargill, Inc.*, 9 F.3d 710 (8th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Permian Corp. v. United States*, 665 F.2d 1214 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . 12

*In re Pioneer Hi-Bred International, Inc.*, 238 F.3d 1370 (Fed. Cir. 2001) . . . . . . 24, 26

*Precision Pine & Timber, Inc. v. United States*, No. 98-720, 2001 WL 1819224 (Fed. Cl. Mar. 1, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Republican Party of N.C. v. Martin*, 136 F.R.D. 421 (E.D.N.C. 1991) . . . . . . . . . . . . . 14

*United States v. Exxon Corp.*, 94 F.R.D. 246 (D.D.C. 1981) . . . . . . . . . . . . . . . . . . . . 27

*United States v. Kelsey-Hayes Wheel Co.*, 15 F.R.D. 461 (E.D. Mich. 1954) . . . . . . . 22

*United States v. Under Seal*, 748 F.2d 871 (4th Cir. 1984), *cert. granted sub nom, United States v. Doe*, 469 U.S. 1188 (1985) . . . . . . . . . . . . . . . . . . . . 13-14

*Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.*, 230 F.R.D. 688 (M.D. Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Upjohn Co. v. United States*, 449 U.S. 383 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Westinghouse Electric Corp. v. Republic of the Philippines*, 951 F.2d 1414 (3d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Yankee Atomic Electric Co. v. United States*, 54 Fed. Cl. 306 (2002) . . . . . . . . . . . . 25-27

**MISCELLANEOUS**

8 Wigmore, *Evidence* §§ 2192, 2292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13, 24

**No. 06-305 T**
**(Judge Marian Blank Horn)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**CONSOLIDATED EDISON COMPANY**
**OF NEW YORK, INC. & SUBSIDIARIES**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

---

**DEFENDANT'S MOTION TO COMPEL**

---

Pursuant to RCFC 37(a)(2)(B), the United States moves this Court to compel Plaintiff to produce the documents withheld from Plaintiff's response to the United States' Requests for Production of Documents. The parties dispute whether the attorney-client privilege applies or has been waived. Counsel for the United States discussed the issues with Plaintiff's counsel in correspondence and by telephone in a good faith effort to resolve the matter, but was unsuccessful. The Court's assistance is essential, and Defendant submits the following in support of its motion:

**QUESTIONS PRESENTED**

1. Whether Defendant is entitled to the final opinion letters of Plaintiff's outside counsel and supporting and related documents concerning the LILO Transaction because the documents lack the requisite confidentiality for the attorney-client

privilege to apply, because Plaintiff intended to provide and did provide the final opinion letters to a third-party.

2. Whether Plaintiff waived the attorney-client privilege with respect to twenty-nine documents identified on its privilege log (and any objection to defendant's present use of the documents) by producing them to the IRS in unredacted form during audit and to Defendant in the course of discovery.

3. Whether there has been a subject matter waiver of the attorney-client privilege with respect to legal advice by Plaintiff's outside and in-house counsel concerning the LILO Transaction, because Plaintiff produced documents on audit and during discovery that contain information similar to or on the same subject matter.

## INTRODUCTION

As to some of the documents or information defendant is seeking, Plaintiff previously disclosed earlier drafts or similar information to Defendant and other third parties. Therefore either the privilege does not attach to the withheld documents or information, or the privilege has been waived by Plaintiff's conduct.

As to other information, Plaintiff actually produced it at some point in this litigation, but now claims that it is privileged. While Defendant obviously already has this information, it is included in this motion, because Defendant wishes to use it in upcoming depositions; but, Plaintiff has indicated it will continue to assert a privilege, and Defendant's discovery will be frustrated without relief.

On its Revised December 13, 2006 Privilege Log (attached as Exhibit A-2[1]), Plaintiff

[1]All exhibits referred to in this motion are attached to the Declaration of David N. Geier, filed concurrently. Where Plaintiff has produced multiple copies or versions of a document it claims as privileged, Defendant has not attached each copy or version as an exhibit. Instead, Defendant cites an exhibit that is an instance of the document to discuss its substance and, for completeness, simply references the bates numbers for each additional version or copy. Of course, if the Court so desires, Defendant will be happy to provide all copies and versions of documents produced by Plaintiff during discovery.

claimed a privilege with respect to thirty-one documents.[2] A summary of Plaintiff's productions relevant to Plaintiff's claims of privilege is included in the following chart[3]:

| Document | Description | Dates Unredacted Copies Produced | When Privilege First Claimed |
|---|---|---|---|
| EZH White Paper (Ex. C-4) | Contains a review of the LILO Transaction, including the risks benefits, legal impediments and lease terms, all in summary fashion, for presentation to Plaintiff's board. The document also contains a discussion of the expected opinion Plaintiff's counsel would render regarding the tax merits of the transaction. | 1. 9/25/06 (CE012018-23) | 12/13/06 |
| | | 2. 10/31/06 (PF004350-55) | |
| | | 3. 12/13/06 (PF008275-80) (various drafts: PF008614-20, PF008621-28, PF008629-36, PF008637-44, PF008645-51, PF008652-58, PF008790-96, PF009307-14, PF009316-20) | |

[2]Two of the thirty-one documents are not at issue in this motion. CE003029-44 and CE0030358-67, identified on page four of the log.

[3]As reflected in the chart, many of the documents were produced multiple times.

| | | | |
|---|---|---|---|
| ENECO White Paper (Exs. C-5 & C-7) | Same as EZH White Paper, except it is for another LILO transaction considered by Plaintiff | 1. 11/3/06 (PF007327-33) | 11/3/06 with respect to certain redactions |
| | | 2. 12/13/06 (PF008258-64) (PF008265-72) | 12/13/06 with respect to further redactions |
| DePlautt Email1 (Ex. C-6) | Discussion of the proposed Treasury Regulation on the LILO Transaction | 1. IRS Audit (US US7047-48) | Never |
| | | 2. 9/25/06 (CE006516-17) | |
| | | 3. 10/31/06 (PF005936-37) | |
| Con Ed Memo 1 (Ex. C-1) | Discusses status of work being performed by Plaintiff's Counsel with respect to the impact of the soon to be implemented Treasury regulations and the tax risks associated with the LILO Transaction | 1. IRS Audit (US03450-51) | 11/3/06 |
| | | 2. 11/3/06 (PF005618-19) | |
| | | 3. 12/13/06 (PF007852-53) | |
| Con Ed Memo 2 (Ex. C-2) | Discusses status of work being performed by Plaintiff's Counsel with respect to the impact of the soon to be implemented Treasury Regulation and the tax risks associated with the LILO Transaction | 1. IRS Audit (US03452-53) | 11/3/06 |
| | | 2. 11/3/06 (PF005647-48) | |
| | | 3. 12/13/06 (PF007854-55) | |
| Risk Analysis (Ex. C-3) | Incorporated expected conclusions to be reached by Shearman & Sterling regarding the bona fides of the transaction and a discussion of the risks concerning the impact of the Treasury Regulation | 1. IRS Audit (US01594-97) | Never |

| | | | |
|---|---|---|---|
| DePlautt Email 2 (Ex. C-8) | Internal email discussing legal advice from Shearman & Sterling | 1. 12/13/06 (PF008570-72) | 12/13/06 |
| LILO Opinion (Ex. C-9) | Legal opinion letter pertaining to LILO Transaction | 1. 12/97 draft to PWC (Accountant) | Never as to draft |
| | | 2. 12/97-1/98 final to PWC (Accountant) | 11/3/06 as to final |
| | | 3. 11/3/06 (draft: PF 006115-19 | |
| Equipment Opinion (Ex. C-10) | Legal opinion concerning preexisting equipment lease and its impact on the lease transaction | 1. 11/3/06 (PF007258-59) | Never as to draft |
| | | | 11/3/06 as to final |

## STATEMENT OF FACTS

A. Background – The LILO Transaction

This case involves the proper tax treatment to be accorded Plaintiff's LILO shelter transaction. Consolidated Edison Company of New York, Inc. & Subsidiaries ("Con Ed" or "Plaintiff") participated in a lease-in/lease-out ("LILO") shelter transaction involving a power station (the "RoCa3" facility owned by South Holland Electric (N.V. Electriciteitsbedrifj Zuid-Holland) (hereinafter "EZH")) located in the Netherlands (hereinafter the "LILO Transaction"). Plaintiff, a United States taxpayer, through a subsidiary, purported to lease property from its owner, EZH, under a head lease and simultaneously purported to lease the property back to EZH under a sublease. As is typical in a LILO transaction, the counter-party, EZH, is an entity, in this case a foreign corporation, that is not subject to federal income taxation, and therefore is unable

to claim federal income tax benefits, like depreciation, associated with ownership of the RoCa3 facility. Plaintiff claimed very substantial rent and interest deductions associated with the purported head lease, very little lease income, and therefore large amounts of income from other sources were sheltered from tax. Despite the execution of paperwork, EZH or its successors continued to operate the property as before and retained all of the benefits and burdens associated with the property's use and ownership. The general issue raised in this refund suit is whether Plaintiff is entitled in 1997 to deduct rent, interest, and transaction costs in connection with the LILO Transaction.

Defendant contends that the tax deductions Plaintiff claimed are improper for several reasons. Plaintiff did not acquire a genuine leasehold interest in property in 1997 when it participated in the LILO Transaction. Plaintiff also did not incur a genuine debt obligation for which it is entitled to claim tax deductions. Perhaps most important for the purposes of this motion to compel, Defendant contends that the LILO Transaction should be disregarded under the economic substance doctrine, which requires, among other inquiries, that the Court examine Plaintiff's motivation for engaging in the LILO Transaction.

B. Plaintiff's Production of Documents

1. *Documents Produced to the Internal Revenue Service During Audit*

Plaintiff produced information to the IRS in connection with the audit of its 1997 tax year. This material, which was included in the IRS's administrative files, was then delivered to the Department of Justice to help defend this case. The same material was then produced to Plaintiff in electronic format on or about September 25, 2006, as part of Defendant's initial disclosures.

Two of the documents Plaintiff produced during the audit discussed, *inter alia*, the status of work being performed by Plaintiff's lawyers (Shearman & Sterling LLP and in-house counsel) and its accountants (Arthur Andersen and Pricewaterhouse). ("Con Ed Memos 1 & 2" attached as Exhibits C-1 & C-2 respectively). According to the memoranda, Plaintiff's lawyers were working for Plaintiff on an analysis of the impact of soon to be implemented Treasury Regulation and the tax risks associated with the LILO Transaction. (*Id.*).

Plaintiff also produced during audit several versions of its "Risk Analysis" of the transaction (a section of Volume 1 of Plaintiff's "EZH Briefing Memo"). The Risk Analysis incorporated the expected conclusions to be reached by Shearman & Sterling regarding the bona fides of the LILO Transaction, and a discussion of the risks concerning the impact of the Treasury Regulation identified above. (*See*, *e.g.*, US01594-97, attached as Exhibit C-3). Plaintiff also produced an email from Brian DePlautt, vice-president at Consolidated Edison Development ("CED"), the subsidiary of Consolidated Edison, Inc. through whom the LILO transaction was effectuated, containing a discussion of the proposed Treasury Regulation and its impact on the LILO Transaction.[4] (US7047-48, hereinafter "DePlautt Email 1" attached as Exhibit C-6).

2. *Documents Produced to Defendant During Discovery*

On or about September 25, 2006, Plaintiff produced documents to Defendant in electronic format as part of its initial disclosures. As part of this production, Plaintiff produced

---

[4]Even though this email does not indicate that the discussion originated with counsel, a review of the information contained in the redacted version of the EZH White Paper indicates that the substance of the communication contained in DePlautt Email 1 came from Shearman & Sterling.

an *unredacted* copy of a "Leasing White Paper" (CE012018-23, hereinafter "EZH White Paper", redacted version attached as Exhibit C-4[5]). The document contains a review of the LILO Transaction, including the risks, benefits, legal impediments and lease terms, all in summary form, written for presentation to Plaintiff's board of trustees or directors. The EZH White Paper also includes a discussion of the expected legal opinion Plaintiff's private counsel would render regarding the merits of the LILO Transaction. Plaintiff produced this same White Paper to Defendant a second time, also without redactions, on October 31, 2006, but with a new bates number (PF004350-55, *see* Exhibit C-4).[6] The October 31, 2006 production was the result of a change in the bates numbering Plaintiff used for the documents it produced.

Plaintiff also produced, in unredacted form, DePlautt Email 1 (discussing proposed Treasury Regulation and its impact on the LILO Transaction) for a second and third time in the September 25 (CE006516-17) and October 31 (PF005936-37) productions. DePlautt Email 1 appears to contain information similar to the information redacted in the EZH White Paper. (*Compare* Exhibit C-6 *with*, Exhibit C-4).

[5]Although this document and others were produced to Defendant during discovery without redactions, Defendant has attached only redacted versions in connection with this motion, so as to preserve the status quo while this motion is pending. However, should the Court request it, unredacted versions can be submitted for *in camera* review.

[6]On or about November 3, 2006, in response to Defendant's Request for Production, Plaintiff produced a partially redacted copy of yet another White Paper, describing another LILO shelter that Plaintiff was evaluating, identified as ENECO. (PF007327-33 also labeled CE011957-63, hereinafter "ENECO White Paper", redacted version attached as Exhibit C-5). Although this document was produced with a single redaction for privilege, Plaintiff did not redact information about its counsel's expected opinion on tax risk. As discussed above, this same opinion on risk was produced to Defendant on September 25 and October 31, 2006.

Plaintiff did not assert a privilege with respect to the EZH White Paper (Exhibit C-4) or DePlautt Email 1 (Exhibit C-6) when it later produced subsequent first privilege log on November 3,2006. (Attached as Exhibit A-1).

On November 16, 2006, Defendant challenged Plaintiff's privilege claims, advising Plaintiff of the inconsistency in claiming privilege as to documents it had produced. (Nov. 16, 2006 correspondence, attached as Exhibit B-1). Plaintiff responded on December 1, 2006, claiming that some of its prior disclosures, including the EZH White Paper, were inadvertent and that Defendant should destroy the documents. (Dec. 1, 2006 correspondence, attached as Exhibit B-2).

When Defendant expressed concern regarding Plaintiff's basis for requesting the destruction of documents (Dec. 12, 2006 correspondence, attached as Exhibit B-3), Plaintiff responded that it had produced over seven thousand pages of documents,[7] that counsel had reviewed and re-reviewed the documents prior to their production, that the disclosure of the information was inadvertent and that Plaintiff wished to retain its privilege as to the disclosed documents (Dec. 14, 2006 correspondence, attached as Exhibit B-4). Plaintiff also continued to argue that its General Objections to defendant's discovery are sufficient to preserve Plaintiff's privilege. (*Id.*).

While the parties were discussing whether Plaintiff's productions a month earlier were privileged and inadvertent, on or about December 13, 2006, Plaintiff made its second supplemental production in responses to Defendant's Request for Production of Documents.

---

[7]The actual number was 5,520 pages when Plaintiff first produced the EZH White Paper in unredacted form as part of its initial disclosures.

Plaintiff's second supplemental production again included such purportedly "privileged" and inadvertently produced documents and information. The production included a third unredacted copy of the EZH White Paper and a second unredacted copy of the ENECO White Paper, this time with different bates numbers (PF008275-80 and PF008258-64, respectively). (*See* Exhibits C-4 and C-5). Plaintiff also produced additional unredacted drafts of the EZH White Paper (PF008614-20, PF008621-28, PF008629-36, PF008637-44, PF008645-51, PF008652-58, PF008790-96, PF009307-14, and PF009316-20) (*see* Exhibit C-4), another unredacted version of the ENECO White Paper (PF008265-72, redacted version attached as Exhibit C-7), an unredacted copy of Con Ed Memo 2 (PF007854-55) (*see* Exhibit C-2), and an unredacted internal email discussing legal advice from Shearman & Sterling (PF008570-72, hereinafter "DePlautt Email 2", a redacted version attached as Exhibit C-8).

Each document was produced in *unredacted* form, notwithstanding that nearly all were identified on Plaintiff's December 13, 2006, supplemental privilege log. (Exhibit A-2). With this latest production, some of the "inadvertently" disclosed information had been now been turned over to Defendant multiple times. Defendant once again notified Plaintiff that its privilege claims were inconsistent with its production. (*See* December 19 & 20 correspondence, attached as Exhibits B-5 & B-6).

On December 21, 2006, and in a follow-up conversation with Defendant's counsel, Plaintiff's counsel blamed the December 13, 2006 production of "privileged" information on an error in the production of the CD ROM containing the information, and that counsel had not reviewed the CD ROM produced to the United States. (*See* Dec. 21, 2006 correspondence, attached as Exhibit B-7).

3. *Shearman & Sterling Opinion*

On or about November 3, 2006, in response to the United States' First Set of Requests for Production, Plaintiff produced unredacted copies of draft legal opinions issued by its counsel, Shearman and Sterling. The draft opinions relate to (1) the LILO Transaction at issue here (PF 006115-19, hereinafter the "LILO Opinion", attached as Exhibit C-9) and (2) a preexisting equipment lease and its impact on the lease transaction (PF007258-59, hereinafter the "Equipment Opinion", attached as Exhibit C-10).[8] Based on Plaintiff's November 3, 2006, disclosure of the draft LILO and Equipment Opinions, Defendant requested the final opinion and related material. (Exhibit B-1).

In response, Plaintiff stated that draft opinions produced to Defendant had previously been shared with its accountants, Pricewaterhouse, and were therefore discoverable and not privileged. (Exhibit B-2). Plaintiff explained that Pricewaterhouse did not receive the final legal opinion or any other related communications, and that these materials are privileged. (*Id.*). Plaintiff argues that there was no waiver of privilege as to the final legal opinions or related communications about those opinions. Plaintiff also claims there was no subject matter waiver with regard to its disclosures to Pricewaterhouse, because the disclosures were not made in the context of a judicial proceeding, and the disclosures did not provide Plaintiff with any "tactical advantage." (*Id.*). Plaintiff offered that it has "not relied upon, and does not intend to rely upon, the legal advice received from Shearman & Sterling or any other counsel in the context of this litigation." as further justification for withholding this information. (*Id.*). Finally, Plaintiff

[8]The date and description on the privilege log do not make it clear whether the document listed as CE011543-44 is a copy of the Equipment Opinion. (*See* Exhibit A-2).

contended that the information constitutes attorney work product.[9] (*Id.*). As set forth below, these reasons are factually inaccurate and therefore do not support Plaintiff's position.

**ARGUMENT**

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law" and its purpose is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The classic test for application of the attorney-client privilege is:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court [and] . . . (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (I) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding [and] . . . (4) the privilege has been (a) claimed and (b) not waived by the client.

*First Fed. Sav. Bank of Hegewisch v. United States*, 55 Fed. Cl. 263, 266 (2003) (citing *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 484- 485 (2000)); *see, e.g.*, 8 Wigmore, *Evidence* § 2292 at 554.

Like all privileges and immunities, "[i]t ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." J. Wigmore, *Evidence* §§ 2192 at 70 and 2291 at 554 (McNaughton rev. 1961); *Permian Corp. v. United* States, 665 F.2d 1214, 1221 (D.C. Cir. 1981). Therefore, courts, including this one, strictly construe the scope of the

---

[9] Inconsistent with its claim of work product in anticipation of litigation, Plaintiff had expressed its belief that there existed virtually no risk with respect to this transaction. (*See* Exhibit C-3).

privilege. *See Cabot v. United States*, 35 Fed. Cl. 442, 444 (1996) (citing *Eureka Fin. Corp. v. Hartford Accident & Indem. Co.*, 136 F.R.D. 179, 183 (E.D. Cal. 1991)).

As with all evidentiary privileges, the party asserting the attorney-client privilege has the burden of proving all essential elements including the element of non-waiver. *Fisher v. United States*, 425 U.S. 391 (1976); *Cabot*, 35 Fed. Cl. at 444. The privilege is waived by the client or prospective client if the communication is later disclosed to a third party, and the client either did not wish to keep the materials confidential, or "did not take adequate steps in the circumstances to prevent disclosure" of the privileged communication. *National Helium Corp. v. United States*, 219 Ct. Cl. 612, 614 (1979); *International Bus. Mach. Corp. v. United States*, 37 Fed. Cl. 599, 603 (1997).

A. Legal Opinions Disclosed to Pricewaterhouse are Not Privileged

The attorney-client privilege has no application where the communications are not private and confidential between the client and the attorney. *See Cabot*, 35 Fed. Cl. at 444. Documents sent to third-parties, including accountants, cannot be privileged, since they are not "private and confidential" as between the attorney and her client. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1357 (4th Cir. 1984). Even documents intended to be, but never actually, produced to third-parties, are not privileged, because a privileged communication is only a communication that was *intended* to be private and confidential. *Id.* at 1357-58.

Likewise, preliminary drafts of letters or documents which are intended to be published to others also lack the necessary intended confidentiality to constitute privileged communications. *N.C. E1ectric Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 517 (M.D.N.C. 1986) (citing *United States v. Under Seal*, 748 F.2d 871 (4th Cir. 1984),

*cert. granted sub nom*, *United States v. Doe*, 469 U.S. 1188 (1985), *appeal after remand*, 757 F.2d 600 (vacated on other grounds); *Duplan Corp. v. Deering Milliken. Inc.*, 397 F. Supp. 1146, 1168 (D.S.C. 1974)). Not only are the drafts themselves not privileged, but the communications and details underlying the drafts to be published to third parties are not subject to the privilege. *See In re Grand Jury Proceedings*, 33 F.3d 342, 354 (holding that not only must the party produce final audit letters and SEC filings, but also the underlying drafts, notes, and memoranda reflecting client communications on the subject). Such underlying details include all preliminary drafts, any communications, including information to be published or from which the published information is derived, and any attorney's notes containing material necessary to the preparation of the document. *Under Seal*, 748 F.2d at 875 n.7; *Republican Party of N.C. v. Martin*, 136 F.R.D. 421, 427 (E.D.N.C. 1991).

As described above, Plaintiff produced the draft Shearman & Sterling LILO Opinion (Exhibit C-9) and the Equipment Opinion (Exhibit C-10) in response to Defendant's discovery requests. The draft LILO Opinion also was provided to Plaintiff's accountant, Pricewaterhouse, on December 10, 1997 (*See* PF6113, attached hereto as Exhibit C-11), in response to Plaintiff circulating a draft tax opinion by Pricewaterhouse on December 9, 1997. (*See* PF005602-5605, attached as Exhibit C-12).

While Defendant does not have a copy of the final Shearman & Sterling opinion, it does have a document Plaintiff has produced, stating that Plaintiff intended to produce Shearman & Sterling's LILO Opinion to Pricewaterhouse. (*See* PF006324-26, see row 33, attached as Exhibit C-14). Contrary to this clear indication in its own documents, Plaintiff asserted in its December 1, 2006, correspondence to defendant that "[t]o Con Edison's knowledge, neither the final legal

opinion nor any other related communications were provided to Pricewaterhouse." (Exhibit B-2).

Since Plaintiff at least intended to disclose the final Shearman & Sterling opinion letters to Pricewaterhouse, and also may have disclosed them,[10] the attorney-client privilege does not attach to the final opinion letters or the communications and details underlying the final opinions. *In re Grand Jury Proceedings*, 727 F.2d at 1357; *In re Grand Jury Proceedings*, 33 F.3d at 354.

B. The Privilege Asserted Does Not Attach or Has Been Waived With Respect to 29 Documents Identified on Plaintiff's Privilege Log

As a result of its repeated disclosures to the United States, Plaintiff has waived any potential privilege as to twenty-nine (29) of the thirty-one (31) documents listed as privileged in Plaintiffs' December 31, 2006 privilege log.[11] (Exhibit A-2). The reasons for waiver are several.

First, Plaintiff provided the Con Ed Memos 1 and 2 (Exhibits C-1 & C-2) to the IRS, but now seeks to prevent Defendant from using them in this case. (*See* Exhibit A-2, pages 1 & 2: PF005618-19, PF005647-48, and PF007852-53). Second, although Plaintiff claims privilege on

[10] Due to the uncertainty, Defendant has issued third party discovery to Pricewaterhouse to determine exactly what they reviewed.

[11] Defendant has identified other, redacted documents produced by Plaintiff that are not listed on its privilege log. (*See, e.g.*, PF003022-003038, attached as Exhibit C-16). Although Defendant alerted Plaintiff to its production of redacted materials without listing them on its privilege log (*see* Exhibit B-1), Plaintiff never amended its privilege log to include this document, and therefore has not made a valid claim of privilege with respect to the redacted information. Plaintiff therefore is obligated to produce this document in unredacted form. It should also be recognized that Plaintiff has redacted information from documents produced to Defendant for reasons other than privilege. (*See* Exhibit B-2 and Exhibit A-2, at page 4). Plaintiff's practice in doing so belies any claim that its redaction of information in Exhibit C-16 should be treated as a claim of privilege.

the White Papers and other memoranda reflecting advice of counsel, it produced documents containing substantially similar information to the IRS during audit and to Defendant during discovery.[12] (*Compare* Exhibits C-3 & C-6 *with* Exhibit C-4). Third, on several occasions during discovery, Plaintiff produced documents it now claims are either privileged or contain privileged information. (*See* Exhibits C-4, C-5, C-7 & C-8). In fact, some of this production occurred well after Defendant first notified Plaintiff of the inconsistencies between its production and its privilege log. The produced documents include unredacted versions of the EZH and ENECO White Papers that Plaintiff had earlier produced and then asked Defendant to destroy. (PF008275-80 and PF008258-64, other drafts of the EZH White Paper,[13] the ENECO White Paper (Exhibit C-6), Con Ed Memo 2 (Exhibit C-2), and DePlautt Email 2, discussing the legal advice provided by counsel (Exhibit C-8)).

Plaintiff attempts in various ways to explain away the significance of its repeated productions; explanations range from inadvertently not identifying a document as privileged despite what Plaintiff says was a "thorough" review, to unreviewed errors in the production of CD ROMs. Plaintiff's claims of inadvertence also should be evaluated in light of its having provided to the United States and its accountants, Pricewaterhouse, information about certain legal opinions it obtained from Shearman & Sterling in connection with this transaction,

---

[12]For example, based on the descriptions of documents set forth in Plaintiff's privilege log, Con Ed Memos 1 and 2 appear to discuss the substance of documents for which Plaintiff asserts a privilege (CE005825 and CE008028). (*See* Exhibit A-2, pages 1- 2).

[13] Identified at bates numbers PF008614-20; PF008621-28; PF008629-36; PF008637-44; PF008645-51; PF008652-58; PF008790-96; PF009307-14; and PF009316-20.

including both draft opinions (Exhibits C-9 & C-10) and final conclusions, while refusing to provide other drafts as well as a final version of the opinion to Defendant.

1. *Documents Disclosed to the IRS*

During Plaintiff's audit, it produced numerous documents to the IRS, pertaining to the LILO transaction at issue in this case, thereby waiving any privilege that otherwise might have applied to any of the documents or information they contain. *Carter v. Gibbs*, 909 F.2d 1450, 1451 (Fed. Cir. 1990) (the privilege "evaporates upon any voluntary disclosure of confidential information to a third party . . . ."), *superseded in non-relevant part*, Pub. L. No. 103-424, § 9(c), 108 Stat. 4361 (1994); *see Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991) ("[I]t is well-settled that when a client voluntarily discloses privileged communications to a third party, the privilege is waived.").

Among these documents were the Con Ed Memos 1 and 2 (Exhibits C-1 & C-2), the Risk Analysis document (Exhibit C-3), and DePlautt Email 1 (Exhibit C-6). These documents discussed, among other matters, the status of Plaintiff's counsel's work with respect to an analysis of the impact of the soon to be implemented Treasury Regulation and the tax risks associated with the LILO Transaction, as well as the expected conclusions and final conclusions of counsel with respect to these issues. (Exhibits C-1, C-2, C-3 & C-6). Consequently, Plaintiff waived the attorney-client privilege as to the legal advice from Shearman & Sterling identified on Plaintiff's privilege log, including that contained in the LILO Opinion, White Papers and other memoranda. *Carter*, 909 F.2d at 1451. Further, since the documents disclosed to the IRS are the same as other documents produced in discovery to which Plaintiff asserts the privilege still attaches (PF005618-19, PF005647-48, and PF007852-53), these privilege claims should be

denied. Because this information was disclosed to the IRS during audit, Plaintiff is not entitled to assert a privilege with respect to (1) the same documents produced during discovery and (2) information contained within those documents. Further, as described more fully below, Plaintiff's disclosure of these documents constitutes a subject matter waiver of the subjects addressed in those documents.

2. *Documents Disclosed in Discovery*

During initial disclosures and in response to the United States' Request for Production, Plaintiff produced several unredacted documents, including numerous drafts of the EZH and ENECO White Papers (*see* Exhibits C-4, C-5 & C-7), and memoranda and email communications discussing the legal advice provided by its private and in-house counsel which it now claims are privileged (*see* Exhibits C-1, C-2 & C-8). Plaintiff also produced DePlautt Email 1 (Exhibit C-6), which appears to contain legal advice similar to the information set forth in the White Papers and other communications that Plaintiff now seeks to shield. Plaintiff has not asserted a claim of privilege with respect to DePlautt Email 1.

Plaintiff has made a variety of arguments to Defendant that its productions do not result in a waiver of privilege. None has merit.

a. *General Objections Do Not Preserve a Privilege Claim as to Documents Produced*

Plaintiff argues that its General Objections to defendant's discovery requests preserves the privileged nature of produced documents. (*See* Exhibit A-6). Plaintiff's General Objection states "(t)he inadvertent disclosure by Con Edison of any information protected by the attorney-client privilege, the work-product protection or any other privilege shall not constitute a waiver of the applicable privilege or protection as to that information or any other related

information." (*Id.*). Plaintiff's General Objection neither validly asserts a claim of privilege, nor establishes that prior production actually was inadvertent and does not waive privilege.

To begin with, even if documents are not disclosed, a general objection is insufficient to validly assert a claim of privilege. *See Universal City Development Partners, Ltd. v. Ride & Show Engineering, Inc.*, 230 F.R.D. 688, 695 (M.D. Fla. 2005) (noting that a generalized claim of privilege is insufficient in part because it does not enable the opposing party to assess the validity of the privilege); *Precision Pine & Timber, Inc. v. United States,* No. 98-720, 2001 WL 1819224, at *2 (Fed. Cl. Mar. 1, 2001) (finding blanket assertions of privilege improper and insufficient to preserve a privilege and noting the party's refusal to withdraw generalized claims of privilege in assessing sanctions) (a copy is attached hereto); *see generally In re G-I Holdings Inc.*, 218 F.R.D. 428, 431-32 (D. N.J. 2003) (a general objection on the basis of privilege is insufficient to maintain that privilege in the face of production of privileged documents).[14]

b. *Plaintiff's Disclosures Can Not Be Considered Inadvertent*

Plaintiff next claims that documents containing "certain privileged and protected information was inadvertently not redacted" and produced to Defendant during discovery. As discussed above, however, some of the information that Plaintiff claims was produced inadvertently was disclosed previously to the IRS on audit in Con Ed Memos 1 and 2, the Risk Analysis documents, and DePlautt Email 1 (s*ee* Exhibits C-1, C-2, C-3 & C-6), and during discovery in the form of DePlautt Email 1 (*see* Exhibit C-6). Despite Plaintiff's claims, such repeated disclosures cannot be considered "inadvertent."

---

[14] Plaintiff's reliance on its General Objection, made only in response to Defendant's Request for Production has no application to the EZH White Paper produced as part of Plaintiff's Initial Disclosures. (Exhibit C-4).

And even if they had been inadvertent, it does not follow necessarily that there has been no waiver of privilege. Courts generally have followed one of three distinct approaches to attorney-client privilege waiver when there has been an inadvertent disclosure: (1) the "lenient" position that holds that an inadvertent disclosure is not "voluntary" and not a waiver; (2) the "strict" approach provides that an inadvertent disclosure waives the privilege; and (3) the "middle of the road" approach employing a multi-factored balancing test to determine whether there has been a waiver. *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 713 (8th Cir.1993). The Court of Federal Claims follows the "middle of the road" approach, holding that the circumstances surrounding an inadvertent disclosure must be considered when determining if there has been a waiver. *National Helium Corp. v. United States*, 219 Ct. Cl. 612, 616 (1979) ("The fundamental questions always are: did the client wish to keep back the privileged materials, and did he take adequate steps in the circumstances to prevent disclosure of such documents.").

(i) Plaintiff Waived the Attorney-Client Privilege as to the Leasing White Paper[15]

On December 14, 2006, in response to Defendant's concerns about Plaintiff's privilege claims, Plaintiff sent a letter to Defendant, requesting that it destroy an unredacted copy of the EZH White Paper (Exhibit C-4) that it previously produced to Defendant during discovery on September 25, 2006. That document had been produced a second time, on October 31, 2006, albeit with a different bates number (PF004350-55).

[15]While the discussion in this section is limited to the EZH White Paper, the same analysis applies to the ENECO White Paper (Exhibit C-5) Plaintiff initially produced on November 3, 2006.

In its letter, Plaintiff relied upon *National Helium Corp. v. United State*s, 219 Ct. Cl. 612 (1979) and *Alaska Pulp Corp., Inc. v. United States*, 44 Fed. Cl. 734, 735 (1999), to argue that its repeated disclosure of this document was inadvertent. (Exhibit B-2). Neither case supports Plaintiff's claim that its disclosures were inadvertent.

In *National Helium*, the plaintiff disclosed 10 pages out of approximately 150 cartons of responsive documents. Based on the large number of documents and the short time for production, the court found no waiver after the plaintiff undertook a "good faith, sufficiently careful, effort to winnow a relatively small number of privileged materials from a very large volume of documents to be produced. . . ." *National Helium Corp.*, 219 Ct. Cl. at 615. Similarly, in *Alaska Pulp*, the plaintiff sought to recover one privileged document provided to the defendant by a third party. The plaintiff claimed that the production of the privileged material was inadvertent, and that the document had not lost its privileged status. The Court held that given the clear labeling of the document (the documents were clearly labeled "Attorney Work Product -- Attorney/Client Communication" in bold), the extraordinary large number of documents (70,000 pages), the short production time (the plaintiff did not ask for an extension) and plaintiff's reasonable steps to protect the privilege (including a screening process requiring the efforts of a team of several lawyers and approximately ten to fifteen paralegals and secretaries with a spot check at the end) that the privilege had not been waived as to the privileged material. 44 Fed. Cl. at 736.

Plaintiff's disclosures fall far short of the standards for inadvertence expressed in *National Helium* and *Alaska Pulp*. The EZH White Paper produced by Plaintiff contained no

designation that Plaintiff intended to keep it privileged.[16] The Court, in *United States v. Kelsey-Hayes Wheel Co.*, 15 F.R.D. 461, 465 (E.D. Mich. 1954), held "[i]t is difficult to be persuaded that the documents were intended to remain confidential in light of the fact that they were indiscriminately mingled with other routine documents of the corporation and that no special effort to preserve them in segregated files with special protections was made." Indeed, the EZH White Paper, did not appear on Plaintiff's original privilege log and was mingled with the other documents produced by Plaintiff in its Rule 26 disclosures. (*See* Exhibit A-1). Plaintiff did not raise a privilege claim until after it received Defendant's letter dated November 16, 2007. And while in *National Helium* the litigants had to sift through 150 cartons, and *Alaska Pulp* involved a production of 70,000 pages, Plaintiff production was much smaller, was made in two stages, and contained largely duplicative information. Plaintiff produced 5,520 pages in the Initial Disclosures, and 1,813 pages in response to discovery. Moreover, unlike the two cases Plaintiff relies on, it faced no burdensome time constraints on production, as it controlled the timing of the filing of the suit and received an extension of time to respond to the United States' discovery requests. Moreover, it appears that Plaintiff relied on information in these documents to support its Complaint and responses to interrogatories. *See infra* section C.2.

(ii) Plaintiff Waived the Privilege as to 13 Documents Produced on December 13, 2006

Even if Plaintiff's production of the EZH and ENECO White Papers were inadvertent in its Rule 26 initial disclosures and inadvertent again in its initial response to Defendant's

---

[16]While the ENECO White Paper (Exhibit C-4) originally produced to Defendant did contain one redaction, there was no other indication that Plaintiff intended to keep the rest of the document privileged.

Requests for Production, it in any event waived any privilege on December 13, 2006 when it again produced these documents, as well as various drafts and other documents referring to the information. Ironically, at the same time Plaintiff was producing these documents, its counsel was drafting a letter to Defendant describing its thorough screening procedures. (*See* Exhibit B-4).

Plaintiff's production on December 13, 2006, plaintiff consisted of only 1,781 pages, labeled PF007843-PF009624, which included eleven documents (and only 68 pages) that it claimed were privileged. (Exhibit A-2). Plaintiff can hardly claim that it was rushed into inadvertently producing this small number of documents, as the production occurred 75 days after Defendant's initial request for production. Unlike the plaintiffs in *National Helium* and *Alaska Pulp*, Plaintiff had adequate time to perform its review. Nevertheless, each document appeared *unredacted* on a CD Rom produced by Plaintiff on December 13, 2006.[17] Plaintiff claims that it, "clearly did not intend to produce the documents in unredacted form, as it included them on a privilege log. The documents were reviewed and redacted for attorney-client privilege and work product protection. . . . The error in producing the documents in unredacted form resulted solely from an error in the production of the CD Rom." (Exhibit B-7). However, if Plaintiff had examined even one of the eleven documents on the CD Rom, it easily would have discovered that they did not contain any redactions.[18] Obviously, Plaintiff failed to take adequate

[17]To confuse matters further, Plaintiff produced additional unredacted copies of Con Ed Memo 2 (Exhibit C-2) and the ENECO White Paper (Exhibit C-7), with new bates numbers, PF007854-55 and PF008265-72, which did not appear on Plaintiff's December 13, 2006 privilege log. (*See* Exhibit A-2).

[18] The Court in *Alaska Pulp* discussed the importance of random spot checks as a final measure to protect privilege. *Alaska Pulp Corp.*, 44 Fed. Cl. at 736.

steps to protect these documents – especially since Plaintiff already was on notice from Defendant of its previous disclosure of such information. Plaintiff therefore waived any privilege with respect to these documents.

C. Plaintiff Waived any Privilege With Respect to the Subject Matter of Information Contained in Documents it Produced

Once a court determines there has been a waiver of the attorney-client privilege, the question of the scope of the waiver arises. In *GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1275 (Fed. Cir. 2001), the Federal Circuit determined that generally, a disclosure of a privileged communication waives the privilege with respect to the same subject matter in other communications. *Accord* 8 Wigmore, *Evidence,* § 2328, at 638 ("The client's offer of his own or the attorney's testimony as to a *specific communication* to the attorney is a waiver as to all."). In *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370 (Fed. Cir. 2001), the Federal Circuit held that disclosure of legal advice waives the attorney-client privilege "with respect to all documents which formed the basis for the advice, all documents considered by counsel in rendering that advice, and all reasonably contemporaneous documents reflecting discussions by counsel or others concerning that advice." *Id.* at 1374-75. The rationale for waiving the attorney-client privilege as to documents with the same subject matter as the disclosed documents is predicated on fairness and consistency. 8 Wigmore, *Evidence,* § 2327.

1. *Subject Matter Waiver as to the Documents Produced to the Government*

For the reasons stated above, Plaintiff has voluntarily waived its privilege on the documents produced to the IRS during audit, specifically (1) the Con Ed Memos 1 and 2 (Exhibits C-1 & C-2), which describe the work being performed by in-house counsel with respect to the LILO Transaction and describe the analysis being performed by Shearman &

Sterling relating to the tax risks of the LILO Transaction, (2) the Risk Analysis documents (Exhibit C-3), which opine on the expected opinions to be issued by Shearman & Sterling with respect to the LILO Transaction, and (3) DePlautt Email 1 (Exhibit C-6), which discusses, among other things, the substance of the advice of Shearman & Sterling pertaining to the impact of the proposed Treasury Regulation. Defendant also is entitled to all documents related to these same subject matters. *GFI, Inc.*, 265 F.3d at 1275.

Further, since Plaintiff has, on numerous occasions during the course of discovery, produced unredacted documents that resulted in a waiver of Plaintiff's attorney client privilege (e.g., the various versions of the EZH and ENECO White Papers, the LILO Opinion, the Con Ed Memos 1 & 2, and DePlautt Emails 1 & 2), Defendant is entitled to all documents relating to the subject matter of these documents, including the advice of Shearman & Sterling and in-house counsel with respect to the LILO Transaction. This waiver covers twenty-nine of the thirty-one documents identified on Plaintiff's December 13, 2006 privilege log (Exhibit A-2).

2. *Subject Matter Waiver Related to the Shearman & Sterling Opinion*

In addition to our discussion above, showing that the Shearman & Sterling opinions and underlying materials are not confidential communications and therefore are not privileged in the first place, Plaintiff's production of the draft (and apparently the final) version of those opinions waives the subject matters they discuss. Production of a legal opinion waives the attorney-client privilege "with respect to all documents which formed the basis for the advice, all documents considered by counsel in rendering that advice, and all reasonably contemporaneous documents reflecting discussions by counsel or others concerning that advice." *Yankee Atomic Elec. Co. v.*

*United States*, 54 Fed. Cl. 306, 315 (2002) (quoting *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d at 1374-75).

In its letter dated December 1, 2006, Plaintiff presents multiple arguments against a finding of subject matter waiver. Each argument lacks merit

Plaintiff first argues that a disclosure outside of a judicial proceeding that does not provide a litigant with a tactical advantage is not a waiver:

> "The disclosure of this draft to Pricewaterhouse did not result in a subject-matter waiver of the attorney-client privilege, because the disclosure was not made in the context of a judicial proceeding and did not provide Con Edison with any tactical advantage. *See Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306, 315 (2002) ("subject matter waiver [of the attorney-client privilege] is inapplicable where the disclosure is not made in the context of a judicial proceeding and did not afford the client an adversarial gain").

(Exhibit B-2).

In *Yankee Atomic Elec. Co.*, 54 Fed. Cl. at 315, the United States asserted a privilege as to the discovery of various documents under the deliberative process privilege, the attorney-client privilege, and attorney work product protection. The Court determined that two documents requesting legal advice were not protected because the advice voluntarily was disclosed by the Department of Energy ("DOE") in a September 1994 draft report unrelated to any litigation. The court then concluded that "because plaintiffs have failed to demonstrate any prejudice or tactical disadvantage resulting from DOE's disclosure of two memoranda in a non-judicial setting over eight years ago, related confidential documents, if privileged, may be protected from disclosure." *Id.* at 315.

Plaintiff's facts do not resemble those in *Yankee Atomic*. Unlike the opinion in *Yankee Atomic* that was unrelated to any litigation, the tax opinion that Plaintiff provided to

Pricewaterhouse was for *the transaction at issue*. And despite Plaintiff's claim, in its December 1, 2006, letter that it "has not relied upon, and does not intend to rely upon, the legal advice received from Shearman & Sterling or any other counsel in the context of this litigation," it clearly has. (Exhibit B-2). In response to Defendant's Interrogatory No. 4, which asked for the risks related to the transaction and actions taken by Plaintiff to mitigate such risks, Plaintiff stated that, "Con Edison mitigated [its legal risks, including tax risks] by seeking opinions from qualified and reputable legal counsel." (Exhibit A-3). In its Complaint, Plaintiff also acknowledges that, "ConEdison Development retained a number of consultants to assist in its review" of the transaction. (Compl. ¶ 49). This included legal counsel (*see* Plaintiff's Response to Interrogatory Number 1 (Exhibit A-3)). Plaintiff cannot first inject the existence of the opinion into the case and then avoid its disclosure.[19] *First Heights Bank, F.S.B. v. United States,* 46 Fed. Cl. 312, 316 (2000) ("Courts need not allow a claim of privilege when the party claiming the privilege seeks to use it in a way that is not consistent with the purpose of the privilege . . . voluntary breach of confidence or selective disclosure for tactical purposes waives the privilege. Disclosure is inconsistent with confidentiality, and courts need not permit hide-and-seek manipulation of confidences in order to foster candor."), *clarified in part by*, 46 Fed. Cl. 827 (2000). *See United States v. Exxon Corp*., 94 F.R.D. 246 (D.D.C. 1981) ("Exxon's injection of

[19] In addition to affirmatively asserting reliance, during the audit, Plaintiff relied on the Pricewaterhouse tax opinion, which in turn relied on the Shearman & Sterling legal opinion, in an effort to avoid the imposition of tax penalties. Plaintiff referred to its position as being supported by the Pricewaterhouse tax opinion. (US00709, attached as Exhibit C-13). In addition, Plaintiff advised the IRS, in connection with its effort to avoid penalties, that it "sought the advice of both inside and outside advisors, who performed exhaustive research in order to render this advice." (US06048-49, attached as Exhibit C-15). These advisors included Plaintiff's counsel.

the issue of its state of mind into the suit acted as a waiver of the attorney-client privilege as to all documents bearing on that issue").

A waiver has occurred because Plaintiff has represented in this case that it relied on the advice of its attorneys. *See In re G-I Holdings Inc.*, 218 F.R.D. 428, 431-32 (D. N.J. 2003) ("Had Debtors sought to preserve the attorney-client privilege, they should have refrained from raising the advice of counsel altogether."). Where the "(1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party information vital to his defense," a party has waived any applicable privilege. *Id.* Since Plaintiff states that it has relied upon opinions of counsel, it has placed their advice at issue in the case and cannot now claim privilege to deny Defendant access to this information.

Plaintiff also argues that "the draft legal opinion was prepared in anticipation of litigation and constitutes work-product." (Exhibit B-2). Clearly this is not so. "The threshold determination in a case involving a claim of work product privilege is whether the material sought to be protected from discovery was prepared in anticipation of litigation" or was prepared in the ordinary course of business or for other purposes. *Pacific Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784, 790 (Ct. Cl. 2006). The issues discussed in the LILO Opinion Letter were to assuage Plaintiff's board to obtain its approval of the transaction. In addition, Plaintiff intended to produce the final version of the Opinion Letter to its independent auditor, Pricewaterhouse (Exhibit C-14, line 33), presumably to be able to meet its financial reporting requirements. This is the type of non-litigation, ordinary course of business purpose this Court

in *Pacific Gas* indicated would result in work product protection not applying, regardless of the test applied to a purported "dual purpose" document. *See Pacific Gas & Elec. Co.*, 69 Fed. Cl. at 790. It is Plaintiff's burden to meet this threshold, and any doubts, ambiguities, uncertainties, or silences as to the scope of the work product rule should be resolved in favor of the overall policy of liberal discovery under the Rules of the Court of Federal Claims.[20] *Id*.

## CONCLUSION

For the reasons expressed above, this court should enter an Order as follows (as well as any other relief it deems appropriate):

1. The draft and Final Legal Opinions by Shearman & Sterling are not privileged, or, alternatively, Plaintiff waived any privilege with respect to the Opinions;

2. Plaintiff waived the attorney-client privilege as to Con Ed Memos 1 and 2;

3. Plaintiff waived the attorney-client privilege as to the EZH and ENECO White Papers;

4. Plaintiff waived the attorney-client privilege as to the thirteen Documents Produced on December 13, 2006; and

5. Plaintiff's production of documents constitutes a subject matter waiver with respect to the following topics: the legal advice of Shearman & Sterling pertaining to the LILO Transaction and the ENECO Transaction and the in-house counsel communications pertaining to the LILO Transaction;

[20] In the assessment of risks at the time, Plaintiff concluded that there was almost no litigation risk associated with the transaction. (*See*, *e.g.*, Exhibit C-3). Thus, any claim by Plaintiff that it was prepared with a "reasonable anticipation of litigation," *Pacific Gas & Elec. Co.*, 69 Fed. Cl. at 790, should be rejected as contrary to Plaintiff's own documents.

Respectfully submitted,

s/ David N. Geier
DAVID N. GEIER
Attorney of Record
U.S. Department of Justice, Tax Division
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3448
Facsimile: (202) 307-0054

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section
JOSEPH A. SERGI
JAMES E. WEAVER
ADAM R. SMART
Trial Attorneys

s/ Steven I. Frahm
Of Counsel

April 3, 2007