# EXHIBIT B-1

U.S. Departm[...]nt of Justice

Tax Division

Please reply to: Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

Facsimile No. (202) 307-0054
Trial Attorney: David N. Geier
Attorney's Direct Line: (202) 616-3448

EJO'C:DG:SF:DNGeier
154-2457
CMN 2006103503

November 16, 2006

**Also via Facsimile (312) 706-9187**

Thomas C. Durham, Esquire
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606

Re: Consolidated Edison Company of New York, Inc. & Subsidiaries
v. United States
Fed. Cl. No. 06-305 T

Dear Mr. Durham:

We have reviewed plaintiff's responses and objections to our request for production. While we are still reviewing the documents and objections made to our request, we have several initial concerns regarding the privilege log. In many cases, in the context of the communications, we were not able to discern the basis of the privilege claim because the redactions appear broader than necessary to protect truly privileged material. We would appreciate any further clarification regarding the specific nature of the language redacted from the identified documents. To the extent any of the redactions could be narrowed to provide further context to plaintiff's privilege claims, without revealing the claimed privileged material itself, of course, such narrowing would be of the utmost help in discerning the basis for the privilege.

Business Communications with Non-Lawyers

In several instances, plaintiff has withheld documents, although the communications appear to be internal business communications and not communications with counsel. (CE003786-87, CE004706-07, CE012094, CE007915, CE011957-63, CE011952-53, CE011965-72). As I am sure you are aware, if these communications do not actually reflect privileged communications with counsel, they may not be entitled to protection. From the context of these documents we cannot confirm whether all of the redactions meet this criteria and would appreciate any assistance you could provide in making such a determination.

For example, the November 20, 1997 memorandum written by Con Ed's vice-president Brian DePlautt (CE 003786-87) appears on its face to provide a factual update "regarding certain accounting and tax aspects of the transaction." In fact, the description of the document on the

privilege log indicates that it does not discuss substantive legal advice, but rather the status of Shearman & Sterling's work. Similarly, another DePlautt memorandum, dated November 21, 1997 (CE004706-07), purports only to provide a status "on some issues of the EZH Lease" as well as certain timing issues. The unredacted portion of the memorandum does not indicate that any legal advice is discussed in the memorandum, and does not provide sufficient context for the redacted portion of the memo to evaluate the claim of privilege.

Additionally, a February 11, 1998 memoranda from Mr. DePlautt (CE 011954-56), contains both a summary and a detailed response; however redactions are made only to the section containing the detailed response. Again, we are not able to discern the basis for the privilege claim. The same is true for the memoranda dated February 9, 1998 (CE011957-63) and February 13, 1998 (CE011952-53), which again do not provide the context for assessing the privilege.

Any further information regarding these internal Con Ed communications that would further illuminate the basis for Con Ed's assertion of privilege would be appreciated.

Legal Opinions

We understand from the privilege log that plaintiff has withheld the entirety of certain legal opinions (dated November 20, 1997, November 21, 1997, December 15, 1997, and February 28, 1998). From the documents we have received, it appears that a draft opinion was disclosed. *See* CE 006789. Given the disclosure of the subject matter of the opinion, albeit in draft form, we request that Con Ed disclose the remaining opinions on the same subject matter, all communications regarding the subject matter and any drafts. To the extent any other identified opinions have been shared with third parties, such as the financial institutions involved in the transaction, we request that those opinions and any underlying drafts and communications be produced.

Identification of Documents

Upon review of the bates numbers for the last document listed on your privilege log (CE011965-72/PF004525-58), it does not appear that the numbers accurately reflect the document in question. We would appreciate a clarification of the specific location of the internal Con Edison memorandum so that we may appropriately evaluate the privilege asserted.

Redactions in Non-Identified Documents

Finally, our initial review of the documents produced by Con Ed reveals several instances of redactions without any assertion of privilege. *See, e.g.*, CE003532, CE003726, CE004015, CE004755, CE007887, CE007888, and CE007941. If Con Ed is asserting a privilege to any documents we would request that they be added to the privilege log with a description of the basis for such assertion or that unredacted versions of the documents be produced.

ls

We would appreciate your responding to permit us to understand why the privilege lines have been drawn where they have, and whether Con Ed will release additional documents or portions thereof to us to further such understanding. Please also let us know whether you will be updating your privilege log to address the other issues raised herein.

Sincerely yours,

DAVID N. GEIER
JOSEPH A. SERGI
JAMES E. WEAVER
Trial Attorneys, Tax Division

Enclosure

cc: Carmen Baerga, Esq.

ls

# EXHIBIT B-2

MAYER BROWN ROWE & MAW

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**Thomas C. Durham**
Direct Tel (312) 701-7216
Direct Fax (312) 706-9187
tdurham@mayerbrownrowe.com

December 1, 2006

VIA COURIER

David N. Geier
U.S. Department of Justice
Tax Division
555 Fourth Street, N.W.
Room 7919
Washington, D.C. 20001

Re: Consolidated Edison Co. v. United States, Docket No. 06-305 T

Dear Mr. Geier:

We are in receipt of your correspondence dated November 16, 2006, requesting further information regarding certain redacted documents and documents identified on the privilege log provided in connection with the Plaintiff's Response to the United States' First Request for Production. This letter follows the structure of your correspondence.

Con Edison is fully cognizant of its obligation to provide all responsive documents with the exception of privileged communications. Con Edison intends to comply with this obligation and will supplement its production as necessary.

*Business Communications with Non-Lawyers:*

The documents identified by the United States as business communications with non-lawyers discussed requests for legal advice from counsel and/or legal advice received from counsel. These communications are protected by the attorney-client privilege. *See Shriver v. Baskin-Robbins Ice Cream Co., Inc., et al.*, 145 F.R.D. 112 (D. Col. 1992) ("An otherwise privileged communication by a lawyer to a corporate agent does not lose its protected status simply because the agent then conveys the attorney's opinion to a corporate committee charged with acting on such issues."). Con Edison's privilege log will be revised to clarify that withheld or redacted communications with non-lawyers convey confidential requests for legal advice or legal advice.

The memorandum from Brian DePlautt to Robert Stelben and Hyman Schoenblum, dated November 20, 1997 (CE003786-87), conveys communications with Shearman & Sterling regarding the anticipated substance of their legal advice. In particular, the memorandum discusses the legal advice included in the Tax Risk Letter and the Tax Change Letter. A revised redacted copy of this memorandum (CE004704-05) disclosing the portions discussing the status

of the letters, but not the portions discussing the information to be included in the letters, is attached. Electronic copies of all documents attached to this letter will be included in the Plaintiff's Second Supplement to its Response to the United States' First Request for Production.

The memorandum from Brian DePlautt to Mary Jane McCartney, dated November 21, 1997 (CE004706-07), describes a request for legal advice made to Con Edison's in-house counsel, including the information provided to counsel in connection with such request, and summarizes legal advice received from Shearman & Sterling. A revised redacted copy of this letter is attached.

The memorandum from Brian DePlautt to Mary Jane McCartney, dated November 21, 1997 (CE012094), is being produced. This memorandum transmits a copy of the Shearman & Sterling Tax Change Letter but does not discuss the legal advice provided in the letter.

The email correspondence dated December 11 and 12, 1997 (CE007915) is not responsive to the United States' First Set of Interrogatories or its First Request for Production. The email correspondence discusses legal advice regarding an unrelated issue. These communications were inadvertently included on the privilege log and are being removed.

The redacted portion of the email from Brian DePlautt to Mary Jane McCartney, dated February 9, 1998 (CE011957-63), transmits legal advice received.

The redacted portion of the memorandum from Charles Muoio to Mary Jane McCartney, et al., dated February 13, 1998 (CE011952-53), describes legal advice received.

The redacted portion of the memorandum entitled Leasing White Paper (ENECO 4) (CE011965 -72) transmits legal advice received.

*Legal Opinions*:

A draft of the Shearman & Sterling legal opinion was shared with Pricewaterhouse on December 10, 1997. To Con Edison's knowledge, neither the final legal opinion nor any other related communications were provided to Pricewaterhouse. The draft version was dated December 1, 1997, approximately two weeks before the final opinion was provided, and was not complete.

The disclosure of this draft to Pricewaterhouse did not result in a subject-matter waiver of the attorney-client privilege, because the disclosure was not made in the context of a judicial proceeding and did not provide Con Edison with any tactical advantage. *See Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306, 315 (2002) ("subject matter waiver [of the attorney-client privilege] is inapplicable where the disclosure is not made in the context of a judicial proceeding and did not afford the client an adversarial gain"). The disclosure occurred before

Con Edison entered into the transaction. Con Edison has not relied upon, and does not intend to rely upon, the legal advice received from Shearman & Sterling or any other counsel in the context of this litigation. There is, as a result, no unfairness to the government. *See In re: Commercial Fin. Svcs., Inc. & CF/SPC NGU, Inc.*, 247 B.R. 828, 848 (Bankr. N.D. Okla. 2000) ("The doctrine of subject matter waiver is narrowly construed and should only be employed when unfairness (*i.e.*, a tactical or strategic advantage) is implicated – otherwise, the doctrine of subject matter waiver serves no useful purpose.").

In addition, the draft legal opinion was prepared in anticipation of litigation and constitutes work-product. Pricewaterhouse was not an adversary to Con Edison, and thus, the production of the opinion to Pricewaterhouse did not waive the work-product protection. Regardless, there is no subject matter waiver for work-product protection. Any waiver is limited in scope to the document disclosed. *See In re: United Mine Workers of Am. Employee Benefit Plans Litig.*, 159 F.R.D. 307, 311 (D.D.C. 1994) ("The subject matter waiver doctrine applies only to attorney-client privilege claim and not to work product immunity claims…."). Thus, any waiver of the work-product protection for the draft legal opinion did not constitute a subject matter waiver of other documents protected by the work-product protection.

To Con Edison's knowledge, none of the legal opinions identified on the privilege log were shared with any third parties.

Con Edison has identified two additional privileged documents which have been added to the privilege log.

*Identification of Documents*

The document identified as CE011965-72 was inadvertently not produced and is attached to this letter.

*Redactions in Non-Identified Documents*

Certain documents, not identified on the privilege log, were originally redacted for relevance when produced to the Internal Revenue Service during the audit. These redactions were completed by Con Edison's legal counsel prior to Mayer Brown's receipt of the documents. Mayer Brown requested unredacted versions of these documents which were not received until after Con Edison provided its responses to the United States' First Set of Interrogatories and First Request for Production. We have reviewed all documents for responsiveness, and unredacted versions of responsive documents will be produced in the Plaintiff's Second Supplement to its Response to the United States' First Request for Production and Plaintiff's Second Supplement to its Rule 26(a) Disclosures. Many of these documents have already been produced to the United States in unredacted form.

The Gramercy Development, Inc. agenda, dated September 25, 1997 (CE003532), is produced at CE017779.

The board minutes of October 29, 1997 are produced at CE014323-24. The portion of the minutes on CE003726 are from the meeting of September 25, 1997, which were produced to the United States in unredacted form at PF005514-17.

The February 1998 report to the Board of Directors (CE004015-16) was produced in unredacted form at PF006293-94.

CE004755 and CE007887-88 are excerpts from a draft of the Leasing White Paper which is produced at CE016913-20. Other versions of the White Paper, previously produced, include PF004350-55 and 7327-33. In producing these drafts, certain privileged and protected information was inadvertently not redacted. In particular, on page PF0004354 (CE012022), the second paragraph under number 3, "Pending U.S. Tax Regulations," and portions of the first paragraph under number 4, "U.S. Tax Audits," should have been redacted as confidential attorney-client communications and work product. On page PF007332 (CE011962), portions of the first paragraph under number 4, "U.S. Tax Audits," also should have been redacted as a confidential attorney-client communication and work product. Revised redacted copies of these documents are attached. Con Edison notes that, pursuant to its General Objections to the United States' First Set of Interrogatories, "[t]he inadvertent disclosure by Con Edison of any information protected by the attorney-client privilege, the work-product protection or any other privilege shall not constitute a waiver of the applicable privilege or protection as to that information or any other related information." Con Edison requests that the United States destroy all paper and electronic copies of the previously provided documents.

We have not been able to obtain an unredacted copy of the December 10, 1997 agenda (CE007941). We have produced resolutions from the December 10, 1997 meeting at PF003011-3018 and a summary of the meeting at PF005671. Legal counsel for Con Edison is continuing to search for the agenda, and we will provide an unredacted copy if it is located.

Very truly yours,

Nicole Bielawski

Thomas C. Durham
Nicole M. Bielawski

cc: A. Scher
Con Edison

# EXHIBIT B-3

U.S. Department of Justice

Tax Division

Facsimile No. (202) 307-0054
Trial Attorney: David N. Geier
Attorney's Direct Line: (202) 616-3448

Please reply to: Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

EJO'C:DG:SF:DNGeier
154-2457
CMN 2006103503

December 12, 2006

**Also via Facsimile (312) 706-9187**

Thomas C. Durham, Esquire
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606

Re: Consolidated Edison Company of New York, Inc. & Subsidiaries v. United States
Fed. Cl. No. 06-305 T

Dear Mr. Durham:

I am writing in furtherance of our effort to resolve certain outstanding issues arising from Plaintiff's responses to written discovery which remain prior to seeking assistance from the Court. Despite the exchange of correspondence, your most recent response,

**Interrogatories**

*(i) Interrogatory No. 1 - identify individuals with knowledge*

In the final paragraph of Plaintiff's response to Interrogatory No. 1 Plaintiff indicates that the individuals listed in our letter of October 13, 2006 constitutes a list of the individuals that Plaintiff would expect to have information pertaining to the RoCa3 shelter transaction, but then declines to provide any further information with respect to these individuals, citing the fact that Plaintiff does not have "complete information regarding their knowledge of the facts." Plaintiff has an obligation to respond with whatever information it may have regarding the knowledge these identified individuals may have pertaining to the facts of the RoCa3 shelter transaction. This is true whether or not such a response may be a complete recitation of all of the facts known by these individuals. Plaintiff cannot hide behind an assertion that it does not have "complete information" regarding these respective individuals' knowledge and simply refuse to provide any information.

*(ii) Interrogatory No. 2 - listed transactions*

With respect to Plaintiff's response to Interrogatory No. 2, following our voluntary narrowing of the Interrogatory by provision of specific listed transactions, you first indicated in your November

13, 2006 correspondence that you anticipated Plaintiff would supplement its response to indicate that Plaintiff did not enter into or consider any such listed transactions except those already identified in response to Interrogatory No. 2. However, by your November 17, 2006 correspondence, Plaintiff supplemented its response to indicate that Plaintiff did not enter into any listed transactions during the years 1996 through 1998, and that Plaintiff could not respond as to whether any of the listed transactions were considered because it could not locate anyone that would commit to such a statement under oath. Such a position is particularly troubling given the Plaintiff's representation in the final paragraph of its response to Interrogatory No.2, that the Plaintiff's documents identify other LILO transactions considered by Plaintiff. Please let us know whether Plaintiff intends to respond to this portion of Interrogatory No. 2, or whether Plaintiff intends to rely on the statement in your November 17, 2006 correspondence as the reason for failing to respond to this portion of the interrogatory.

*(iii) Interrogatory No. 3 - pricing information*

In regards to Plaintiff's response to Interrogatory No. 3, in which the Government requested information about how the rent and option prices were negotiated, calculated and allocated, while the recent citation to PF003241-PF003246 does provide some information regarding assumptions Con Ed purportedly relied upon in submitting the "proposal" included in cited documents, it does not indicate how the specific amounts were negotiated or allocated between the parties. Because the reference to PF003241-PF003246 does not provide a sufficient response to Interrogatory No. 3, we request that Plaintiff supplement the information contained in that document to provide a complete response to this interrogatory. Finally, your recent attempt to object that the interrogatory is vague and unclear ignores the fact that no such objection was asserted in Plaintiff's initial response to the interrogatory. Your claim that we must now ask Plaintiff more specific questions concerning how the various rent obligations and option prices were negotiated, calculated, and allocated is specious at best. If Plaintiff has more specific information regarding the requested negotiations, calculations, and allocations, it is Plaintiff's obligation to provide such information where responsive to the request. For example, an oblique reference to "computer software" is insufficient to describe the negotiation process. We request that Plaintiff supplement its response to identify the specific software and to describe how the software was utilized the instant case. Please let us know whether or not Plaintiff intends to supplement its response to Interrogatory No. 3 to provide a complete response thereto.

*(iv) Interrogatory No. 12 - tax indemnity agreement*

In your December 1, 2006 correspondence, you have represented that there are no documents detailing Plaintiff's reasons for entering into the tax indemnity agreement. While Plaintiff may desire to reference documents in lieu of providing a written response, the apparent absence of a document does not alleviate Plaintiff of its obligation to answer the interrogatory. Therefore, Plaintiff must state its reasons for entering into the tax indemnity agreement.

*(v) Interrogatory No. 14 - identity of outside consultants*

In your explanation of Plaintiff's response to Interrogatory No. 14, in which we asked

Plaintiff to identify the outside consultants it communicated with to locate potential international energy infrastructure investment opportunities as it had pled in its Complaint, it appears that Plaintiff has improperly and unilaterally limited its response to identifying only what it deems to be "key" advisors for the RoCa3 shelter transaction, namely Cornerstone Financial Advisors, LP. Further, Plaintiff has indicated that all "relevant" documents relating to that advisory relationship have been produced. This explanation indicates that Plaintiff has failed to identify "all" advisors and consultants with respect to potential international energy infrastructure investment opportunities, including all advisors consulted with respect to the RoCa3 shelter transaction. The stated objections of relevance and immateriality are particularly inappropriate in response to this interrogatory given the allegations in Plaintiff's Complaint. Further, because the "over breadth" objection, which we do not believe to be applicable in any event, only relates to the production of documents, Plaintiff has not articulated a valid objection to the identification of the requested consultants and advisors. Therefore, we request that Plaintiff immediately supplement its response to identify all such consultants and to identify and produce all responsive documents, not simply those Plaintiff and its counsel deems relevant.

*(vi) Interrogatory No. 15 - communications re Lease Transaction*

Plaintiff's response to Interrogatory No. 15, in which the Government requested that Plaintiff identify all individuals and entities, including employees, board members and third parties, that it communicated with about the Lease Transaction prior to entering the transaction, including the contents of such communications, is also troubling. Plaintiff takes a position directly contrary to the law by asserting that Plaintiff cannot be required to ask its own employees for responsive information. In fact, Rule 33 requires that Plaintiff conduct an investigation, and inquire of the employees and representatives likely to have relevant information in order to respond to the interrogatory. Plaintiff's objection that a response would improperly require it to depose its own employees to ascertain the requested information has no basis in the law. Further, a review of pertinent documents previously produced by Plaintiff indicates that the number of Plaintiff's employees that purportedly participated in the RoCa3 shelter transaction is not so great a number that inquiring of them would be burdensome, much less unduly burdensome.

Further, to the extent that Plaintiff's response relies on documents produced in discovery, such reliance is faulty for several reasons. First, the reliance ignores that oral communications as well as written communications have been requested. Second, the document production is far from complete given that the United States is aware of additional documents responsive to this interrogatory that have yet to be produced by Plaintiff. For example the United States is aware of several emails between officers and directors of Con Ed discussing or referring to the Roca3 transaction which have not been produced or identified by Plaintiff.

In addition, your December 1, 2006 correspondence purports to belatedly assert an attorney-client privilege when heretofore none had been timely or properly raised. Failure to raise the privilege constitutes a waiver.

As a final note, while I am sure you are aware the scope of discoverable information goes well beyond the simple notions of relevancy, Plaintiff's continued insistence to claim that much of

the information sought from Plaintiff is not relevant to the tax treatment of the RoCa3 shelter transaction is misplaced. For example, Plaintiff ignores the fact that it made numerous allegations in its Complaint pertaining to the purpose of the RoCa3 transaction as it related to Con Ed's purported overall business plan, thus entitling the United States to discover information pertaining to Con Ed's participation and consideration of other transactions. Further, the "routine business communications" of Con Ed employees regarding the RoCa3 shelter transaction are highly relevant to Con Ed's subjective view of the transaction, an important consideration in the instant matter. Therefore, Plaintiff's continued insistence to rely on relevancy objections lacks a valid basis here where the requested information goes directly to the allegations in the Complaint and the elements of the claims at issue.

**Privilege Log**

Several issues remain with respect to the updated privilege log and the documents produced in conjunction with your December 1, 2006 correspondence. First, while you stated in your correspondence of November 17, 2006 and again on December 1, 2006, that Plaintiff will produce non-redacted copies of documents not included on the privilege log, we have not yet received any such production and there has been no indication when we can expect to receive additional documents. Because you did not assert a privilege pertaining to any of these documents originally, I see no reason for the delay in producing the unredacted documents.

In light of your explanation of the substance of the communications contained in the November 20, 1997 memo found at PF005618-19 and CE004704-05, even if a privilege were applicable, that privilege has been waived by production of other documents to the United States regarding the "anticipated substance" of the legal advice of Shearman & Sterling. Similarly, to the extent any of the other identified documents contain or discuss the advice of Shearman & Sterling, it appears that any privilege that may have applied to those documents has been waived by the production of documents actually containing or referring to such advice.

In addition, to the extent that you are asserting a work product to shield documents from production, please state the basis for that assertion, including a specific identification of the basis for your claim that these documents were prepared "in anticipation of litigation," as you have claimed with respect to the draft legal opinion of Shearman & Sterling produced in discovery.

Please confirm whether or not Plaintiff is withdrawing its claim of privilege with respect to Interrogatory No. 12.

**Rule 26(a) Disclosures**

You have represented for some time that Plaintiff intends to further supplement its Rule 26(a) disclosures. If this is still your intention, and given the press of deadlines, please let us know if you will be making any additional disclosures, and if so, when.

ls

We would appreciate a prompt response to the issues raised herein.

Sincerely yours,

DAVID N. GEIER
Trial Attorney, Tax Division

Enclosure

cc: Carmen Baerga, Esq.

# EXHIBIT B-4

Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

Main phone: (202) 263-3000
Main fax: (202) 263-3300

MAYER BROWN ROWE & MAW

# FACSIMILE COVER SHEET

| | | | |
|---|---|---|---|
| FROM: | Nicole M. Bielawski | Date/time: | 12/14/2006 - 02:00 PM |
| Direct Tel: | (202) 263-3452 | Pages: | 4 ALL PAGES MUST BE NUMBERED |
| Direct Fax: | (202) 762-4242 | | |

TO THE FOLLOWING:

| Name | Company | Fax # | Telephone # |
|---|---|---|---|
| David N. Geier | U.S. Department of Justice | (202) 307-0054 | |

MESSAGE:

Please see attached.

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS BY MAIL. THANK YOU.

IF YOU HAVE ANY TRANSMISSION DIFFICULTY,
PLEASE CONTACT THE FACSIMILE DEPARTMENT AT (202) 263-3000

Berlin Brussels Charlotte Chicago Cologne Frankfurt Houston London Los Angeles New York Palo Alto Paris Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

MAYER BROWN ROWE & MAW

December 14, 2006

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

Thomas C. Durham
Direct Tel (312) 701-7216
Direct Fax (312) 706-9187
tdurham@mayerbrownrowe.com

VIA FACSIMILE
(202) 307-0054

David N. Geier
Joseph A. Sergi
U.S. Department of Justice
Tax Division
555 Fourth Street, N.W.
Room 7919
Washington, D.C. 20001

Re: Consolidated Edison Co. v. United States, Docket No. 06-305 T

Dear David and Joe:

This letter responds to the United States' correspondence of December 11, 2006, requesting additional information regarding two documents which Con Edison identified as containing inadvertent disclosures of communications protected by both the attorney-client privilege and the work product production.

On December 1, 2006. Con Edison notified the United States that excerpts of two drafts of the Leasing White Paper produced to the United States contained communications which were inadvertently not redacted in full. The first document, PF004350-55, was produced on September 25, 2006, as part of Con Edison's Rule 26(a) Disclosures. The second document, PF007327-33, was produced on November 3, 2006, in response to the United States' First Request for Production of Documents. The latter document (PF997327-33) was redacted in part. However, as explained in Con Edison's correspondence of December 1, 2006, certain privileged and protected information was inadvertently not redacted in both documents. In particular, on page PF0004354 (CE012022), the second paragraph under number 3, "Pending U.S. Tax Regulations," and portions of the first paragraph under number 4, "U.S. Tax Audits," should have been redacted as confidential attorney-client communications and work product. On page PF007332 (CE011962), portions of the first paragraph under number 4, "U.S. Tax Audits," also should have been redacted as a confidential attorney-client communication and work product.

Con Edison provided revised redacted copies of these documents on December 1, 2006, and requested that the United States destroy all paper and electronic copies of the documents previously provided. The facts and circumstances establish that the production of the protected portions of the documents was inadvertent and did not constitute a waiver of either the attorney-client privilege or the work product protection.

In the event of an inadvertent waiver, the document does not lose its protected status. *See Alaska Pulp Corp., Inc. v. United States*, 44 Fed. Cl. 734, 735 (1999) (finding that because "plaintiff's production of the ... documents was inadvertent ... it has not lost its privileged character"); *see also Telephonics Corp. v. United* States, 32 Fed. Cl. 360, 361 (1994) ("There are many factual circumstances in which the privilege can be kept despite inadvertent disclosure."). In *Alaska Pulp*, the Court of Federal Claims, in upholding privilege, characterized the production of the privileged document as "an oversight" and noted that "the screening procedures employed to protect privileged materials were not so lax as to deem plaintiff indifferent to disclosure of the documents." *Id.* at 736. The same conclusions should be reached with respect to Con Edison's disclosure of discrete portions of two drafts of the Leasing White Paper.

The Court of Federal Claims applies a two-part test to determine whether an inadvertent disclosure results in waiver. *See National Helium Corp. v. United States*, 219 Ct. Cl. 612 (1979); *see also International Business Machines Corp. v. United* States, 37 Fed. Cl. 599, 603 (1997) (finding that the two prong test outlined in *National Helium* remains the applicable standard in the Court of Federal Claims). Pursuant to *National Helium*, Con Edison need only demonstrate that "it did not intend to disclose the privileged documents and that, despite the inadvertent disclosure, plaintiff took adequate steps, given the circumstances, to prevent the disclosure." *IBM*, 37 Fed. Cl. at 603; *see also National Helium*, 37 Fed. Cl. 612, at *2.

Con Edison produced 7,842 pages of documents in its Rule 26(a) Disclosures and First Supplement thereof and its response to the United States' First Request for Production and its First Supplement thereof. The Rule 26(a) Disclosures were carefully reviewed for privilege, several times, by Thomas C. Durham, a partner at Mayer, Brown, Rowe & Maw LLP. The response to the United States' First Request for Production and First Supplement thereto and the First Supplement to the Rule 26(a) Disclosures were first reviewed for privilege by Nicole M. Bielawski, a senior associate at Mayer, Brown, Rowe & Maw LLP. Ms. Bielawski reviewed all documents electronically for privilege on two separate occasions. The documents were subsequently reviewed by Mr. Durham for privilege. Ms. Bielawski conducted a final review of all documents produced, in hard copy, before the production. The presence of this procedure establishes that Con Edison "wished to retain its privilege as to *all* attorney-client documents." *National Helium*, 219 Ct. Cl. 612, at *2 (emphasis in original) (finding procedure for review of privileged material demonstrated plaintiff's intent to retain privilege). Further, Con Edison's General Objection No. 1 to the United States' First Request for Production on the basis of attorney-client privilege and work product protection reinforces that Con Edison did not intend to produce any privileged materials.

The procedure employed by Mayer, Brown, Rowe & Maw LLP constituted a "good faith, sufficiently careful, effort." *National Helium*, 219 Ct. Cl. 612, at *2. The numerous redactions of information protected by the attorney-client privilege, the work product protection and/or both demonstrates the careful review undertaken. The inadvertent disclosure of three paragraphs is small in the context of a production of 7,842 pages.

Con Edison identified the inadvertent disclosure in the process of re-reviewing documents in response to the United States' correspondence of November 16, 2006, requesting additional information regarding documents identified on Con Edison's privilege log. Con Edison promptly notified the United States of the inadvertent disclosure in its response to this request for additional information on December 1, 2006.

Regardless of whether the previously produced documents are destroyed, the inadvertent production of these documents did not effect a waiver of either the attorney-client privilege or the work product protection. Con Edison clearly stated in General Objection No. 1 to the United States' First Set of Interrogatories that "[t]he inadvertent disclosure by Con Edison of any information protected by the attorney-client privilege, the work product protection or any other privilege shall not constitute a waiver of the applicable privilege or protection as to that information or any other related information."

Based upon the factual information and legal analysis set forth in this letter, Con Edison's request that the United States destroy the previously produced copies of the draft Leasing White Paper is appropriate.

Very truly yours,

Nicole Bielawski

Thomas C. Durham
Nicole M. Bielawski

cc: A. Scher
Con Edison

# EXHIBIT B-5

**U.S. Department of Justice**

**Tax Division**

*Facsimile No. (202) 307-0054*
*Trial Attorney: David N. Geier*
*Attorney's Direct Line: (202) 616-3448*

*Please reply to: Court of Federal Claims Section*
*P.O. Box 26*
*Ben Franklin Station*
*Washington, D.C. 20044*

EJO'C:DG:SF:DNGeier
154-2457
CMN 2006103503

December 19, 2006

**Also via Facsimile (312) 706 9187**

Thomas C. Durham, Esquire
Nicole M. Bielawski, Esquire
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606

Re: Consolidated Edison Company of New York, Inc. & Subsidiaries v. United States
Fed. Cl. No. 06-305 T

Dear Tom and Nicole:

This letter is in response to your letter of December 14, 2006. That letter set forth Plaintiff's explanation why its production of certain relevant information was "inadvertent." For the reasons set forth herein, as well as for those reasons in our prior correspondence, we do not agree and our position remains as set forth in our letter of December 11, 2006.

Because we did not find support for Plaintiff's position in our review of controlling law, we asked Plaintiff to provide its authority for its position in its December 1, 2006 letter regarding documents PF004354 and PF007332 and the subject matter of those documents. To date, Plaintiff has either failed or refused to identify support for its position that the destruction of records is required prior to such a determination by the Court, or that there has not been a subject matter waiver of any privilege that may have attached to the material contained in those two documents.

More significantly, Plaintiff has failed to address the fact that it had already produced similar information to the IRS, as we pointed out in our letter dated December 7, 2006. What is more, on December 13, 2006, a mere twelve days after first contending it had "inadvertently produced" material, Plaintiff provided documents containing information substantially similar to the items you request we destroy. For example, Plaintiff produced unredacted copies of the Leasing White Paper or drafts thereof, at PF008614-8620; PF008645-8651; PF008652-8658; PF009316-9320; PF008621-8628; PF008629-8636; PF008637-8644; PF009307-9314; PF008790-8794. Plaintiff has also produced an unredacted memorandum at PF007852-7853 discussing legal advice from Shearman & Sterling, as well as an unredacted email from Mr.

DePlautt to Ms. McCartney and Mr. Muoio discussing further legal advice from Shearman & Sterling at PF008570-8572. Although Plaintiff identified these documents on its most recent privilege log, each document was produced in unredacted form. This production, especially following the previous disclosure discussed in our December 11, 2006 letter, indicates that any applicable privilege has been waived.

Plaintiff's approach to the turning over of information is, at a minimum, inconsistent with the positions taken in your letters of December 1 and 14, and raises serious concerns about whether the Plaintiff is fulfilling its obligation to turn over discoverable information about its tax shelter scheme. Not only is the Government entitled to discover relevant information, but the repeated production of the information contained in the leasing white paper in unredacted form constitutes a subject matter waiver for which the Government is entitled to obtain the opinions, correspondence and drafts of the documents pertaining to the matters discussed therein that have yet to be produced.

Please promptly advise us whether additional related documents regarding the legal advice requested from Shearman & Sterling and the substance of that advice will be produced.

Sincerely yours,

DAVID N. GEIER
JOSEPH A. SERGI
Trial Attorneys, Tax Division

cc: Carmen Baerga, Esq.

ls

# EXHIBIT B-6

U.S. Department of Justice

**Tax Division**

Facsimile No. (202) 307-0054
Trial Attorney: David N. Geier
Attorney's Direct Line: (202) 616-3448

*Please reply to:* Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

EJO'C:DG:SF:DNGeier
154-2457
CMN 2006103503

December 20, 2006

**Also via Facsimile (312) 706 9187**

Thomas C. Durham, Esquire
Nicole M. Bielawski, Esquire
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606

Re: Consolidated Edison Company of New York, Inc. & Subsidiaries v. United States
Fed. Cl. No. 06-305 T

Dear Tom and Nicole:

In keeping with the spirit of the discovery rules governing this case, and in furtherance of yesterday's correspondence, we wanted to inform you of additional problems with your most recent production of documents. Our continuing review of the materials produced with your December 13, 2006 transmittal, demonstrates that Plaintiff continues to assert positions inconsistent with its claim that it has not waived any privileges and request that we destroy the documents you have produced.

First, with regard to the two documents that your December 1, 2006 letter requests be destroyed, the documents have once again been produced to us in unredacted form on December 13. *See* CE011957-63 (PF007327-33) and CE012018-23 (PF004350-55) produced as PF008258-64 and PF008275-80, respectively.

Second, we are aware of two additional documents listed on the most recent version of your privilege log that also have new identifying numbers that do not appear on the privilege log and which were produced to us in unredacted form. Thus, CE004706-7 (PF005647-8) and CE011965-72 (erroneously listed as PF004525-58) have now been produced as PF007854-5 and PF008265-72, respectively.

We are continuing to review the information provided.

Sincerely yours,

DAVID N. GEIER
JOSEPH A. SERGI
Trial Attorneys, Tax Division

cc: Carmen Baerga, Esq.

ls

# EXHIBIT B-7

MAYER BROWN ROWE & MAW

December 21, 2006

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**Thomas C. Durham**
Direct Tel (312) 701-7216
Direct Fax (312) 706-9187
tdurham@mayerbrownrowe.com

**VIA COURIER**

Joseph A. Sergi, Esq.
U.S. Department of Justice
Tax Division
555 Fourth Street, N.W.
Washington, D.C. 20001

Re: Consolidated Edison Company of New York, Inc. & Subsidiaries v. United States, Fed. Cl. No. 06-305 T

Dear Joe:

As a result of your letter of December 19, 2006, it has come to our attention that there was an error in the production of the CD Rom associated with Plaintiff's Second Supplement to Responses to United States' First Request for Production (December 13, 2006) ("Second Supplement"). As a result of this error, material marked for redaction in our electronic database was inadvertently not redacted in the CD Rom provided to the United States.

In connection with this production, counsel for Plaintiff, using the Concordance database, carefully reviewed the documents and marked a number of documents for redaction on the basis of attorney-client privilege and work product protection. These redactions were noted on the privilege log produced to the United States, as you have acknowledged. Furthermore, in our letter dated December 1, 2006, Con Edison produced hard copies of several documents in redacted form. As noted in our December 1, 2006, letter, electronic copies of these documents were included in the Second Supplement.

As a result of your letter of December 19, 2006, it has now come to our attention that the passages marked for redaction in the Concordance database were inadvertently not redacted as the result of an error in producing the CD Rom provided on December 13, 2006.

For the reasons stated above, and applying the legal standards described in our letter of December 14, 2006, it is clear that the error in production of the CD Rom constituted an inadvertent waiver. Plaintiff clearly did not intend to produce the documents in unredacted form, as it included them on a privilege log. The documents were reviewed and redacted for attorney-client privilege and work product protection. Hard copies of some of the documents were

produced in a redacted form. The error in producing the documents in unredacted form resulted solely from an error in the production of the CD Rom.

We have enclosed a new CD Rom, which contain the redactions as originally marked for the December 13, 2006 production.

Our letter of December 14, 2006 explains the applicable law in the Court of Federal Claims with respect to an inadvertent waiver. Your letter of December 19, 2006 did not set forth any contrary authority. Accordingly, it is our position that the erroneous production of the material included in the CD Roms for the Second Supplement constituted an inadvertent waiver, as Plaintiff inspected this material for privilege and work product, redacted relevant materials, produced redacted hard copies, and noted its redactions in the privilege logs. Thus, the documents remain protected by the applicable privilege and/or protection identified on the privilege log. In addition, as described in our December 1, 2006 letter, the material in question was, as is evident from the material itself, prepared in anticipation of litigation and therefore does not result in a subject matter waiver.

Finally, as stated in General Objection No. 1 of the response to United States First Request for Production of Documents and incorporated by reference into the Second Supplement, any inadvertent disclosure of privileged or protected material does not result in a subject matter waiver.

Very truly yours,

Nicole Bielawski

Thomas C. Durham
Nicole M. Bielawski