# EXHIBIT D-1

H
Precision Pine & Timber, Inc. v. U.S.Fed.Cl.,2001.Only the Westlaw citation is currently available.

United States Court of Federal Claims.
PRECISION PINE & TIMBER, INC., Plaintiff,
v.
THE UNITED STATES, Defendant.
**No. 98-720 C.**

March 6, 2001.

*OPINION*

DAMICH, J.

***1** On July 21, 2000, the Plaintiff filed a motion for sanctions, pursuant to the inherent authority of the Court and the Rules of the Court of Federal Claims ("RCFC") 26(g), 37(a), and 37(b), against the Defendant for engaging in a pattern of abuse of the discovery process. The sanctions that the Plaintiff seeks are not punitive in nature. Instead, the Plaintiff seeks reimbursement of fees and expenses that can be broadly categorized in three groups. First, the Plaintiff seeks reimbursement for attempting, but failing, to secure the Defendant's full compliance with its discovery requests. Second, the Plaintiff seeks reimbursement for preparing and prosecuting its motion to compel the Defendant to respond to the Plaintiff's discovery requests. Third, the Plaintiff seeks reimbursement for preparing and prosecuting its motion for sanctions. For the reasons discussed below, the Plaintiff's motion is GRANTED in part.[FN1]

FN1. Due process mandates that sanctions cannot be imposed without notice and an opportunity for the sanctioned party to be heard. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 467 and n. 14 (1980). The Defendant stipulated that oral argument on the motion need not be heard. (December 19, 2000, Tr. at 3.)

I. Background

The saga of the Defendant's conduct that has given rise to this motion is amply documented in the Plaintiff's motion for sanctions. (Pl.'s Mot. for Sanctions at 8-33). However, highlights of the Defendant's dilatory conduct in this case's discovery proceedings will be summarized here.

A. The Defendant's Initial Failure to Comply with Discovery Requests

On December 30, 1998, the Plaintiff served the Defendant with its First Set of Interrogatories and Requests for the Production of Documents. The Defendant filed its response on April 1, 1999. The responses consisted mostly of improper general objections and blanket assertions of privilege. (March 28, 2000, Hear. Tr. at 6-7.) The Defendant also did not identify a single document, by means of a log or otherwise, that it withheld pursuant to any claim of privilege. In addition, rather than submitting a request for enlargement of time to respond to the discovery requests, the Defendant merely made future promises to submit non-privileged documents, e.g., "... [D]efendant is presently engaged in a search within the applicable agencies for the information requested, and will supplement this response with non-privileged information, in accordance with the Rules of this Court." Pl.'s Mot. at Ex. F at § 18(b) (all citations to exhibits refer to the Pl.'s motion for sanctions). *See also* Ex. F *passim*. The Defendant provided no documents from offices that were likely to possess responsive documents, including the Washington Office of the Forest Service (including the Land and Resource Planning Office and the Forest Management Office), the Department of Agriculture (specifically the Office of the Under Secretary for Natural Resources), and the U.S. Fish and Wildlife Service. Ex. G at ¶ 3. Instead, the Defendant produced documents that included boilerplate documents and wildlife studies that appeared to be gathered from only the offices of Region 3 of the Forest Service. *Id.* Significantly, the Defendant failed to specifically identify the offices it had searched

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

within the Forest Service for responsive material or provide any detail of where the documents were sought as required by Plaintiff's Interrogatory 19. Ex. F. at 19.

***2** On July 22, 1999, the Plaintiff wrote a letter to the Defendant which elaborated on the deficiencies of the Defendant's response and requested that its general claims of privilege and generalized objections be withdrawn. Ex. H. On August 3, 1999, the Plaintiff memorialized in a letter a conversation between opposing counsel in which the Defendant had agreed to submit additional responsive documents by August 9, 1999. Ex. J. However, the Defendant failed to produce the documents as promised. Ex. K.

Pursuant to the Court's direction to resolve outstanding discovery issues, counsel for both parties met to discuss the deficiencies in the Defendant's discovery requests on September 9, 1999. Ex. G at ¶ 6. On October 7, 1999, the Defendant submitted some additional documents, revised answers to interrogatories, and a privilege log. However, the Defendant failed, accidently so it appears, to include certain responsive documents in its submission. Ex. N. During the course of discussions between counsel, the Plaintiff claims that the Defendant gave assurances that it would complete its responses by December 30, 1999. Ex. N at 8. The Defendant disputes this, but instead recalls that it only promised that it would make its best effort to complete its discovery responses by January 31, 2000. *Id.*

At no time during this process, however, did the Defendant substitute specific claims of privilege for its general claims of privilege and general objections to discovery requests or otherwise withdraw the general claims of privilege.

B. Motion to Compel

On January 28, 2000, the Plaintiff filed a motion to compel. The Defendant failed to respond to the motion. Instead, it requested, on the day before the status conference, a 30-day enlargement of time to respond. The Court granted the request, but in an Order on February 10, 2000, set a deadline of March 15, 2000, for all supplementation of discovery responses, including revised responses to interrogatories. Ex. Q. However, the only submission from the Defendant consisted of books, law review articles, and Federal Register notices, and a privilege log produced on March 10, 2000. Ex. T. The Defendant also failed to revise its interrogatories in a meaningful manner, but instead reiterated general claims of privilege and objections, and also issued conflicting interrogatory responses.[FN2] (Pl.'s Mot. at 22-23, n. 12.) The Defendant also identified documents which it inappropriately withheld under either the deliberative process privilege (a privilege which generally is not recognized in the U.S. Court of Federal Claims) or under the executive process privilege.

FN2. The lack of care displayed by the Defendant in its responses to the Plaintiff's discovery requests is exemplified by the following series of responses to Interrogatory 9(b).
This inadequate response (among others) led the Court to characterize the quality of the Defendant's discovery responses as “pretty shocking.” March 28, 2000, Tr. at 47.

After the Defendant failed to fix the deficiencies in its responses, the Court granted the Plaintiff's motion to compel on March 29, 2000. In its Order, the Court deemed all general objections and general assertions of privilege by the Defendant to be waived. It also deemed certain specific claims of attorney-client privilege and work product immunity to be waived for a lack of factual foundation. Finally, it ordered the Defendant to produce the following things by April 21, 2000:(i) justification for the deliberative process privilege, (ii) production of all electronic mail requested by the Plaintiff, and (iii) answers to all interrogatories. Ex. L.

***3** On April 12, 2000, the Court extended its deadline to turn over all documents as they became available and to provide justification for the deliberative process privilege by May 22, 2000. It also extended the deadline to respond to the Plaintiff's interrogatories by May 12, 2000. Ex. W.

On April 26, 2000, the Defendant turned over a small

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

number of documents to the Plaintiff. Ex. G at ¶ 9. On May 22, 2000, the Defendant turned over another large box of documents despite the fact that the Court had ordered that such documents be turned over at an earlier date if they were available. On that same date, the Defendant also filed a motion for protective order which, if granted, would permit it not to respond to interrogatory requests 9, 15, 17, and 18 on the grounds that such discovery was not relevant to the issue of contract interpretation. (The Defendant failed to submit a statement that the Defendant made a good-faith attempt to resolve a discovery dispute through a meeting of counsel as required by Appendix G.) On July 11, 2000, the Court granted the motion for protective order, except with respect to interrogatory request 9.

II. Discussion

The Court of Federal Claims possesses the inherent authority to impose sanctions for abuses of the discovery process in some cases. *In re Greg Bailey v. United States*, 182 F.3d 860, 864 (Fed.Cir.1999) (Courts established under Article I of the U.S. Constitution possess the inherent power to discipline attorneys). *See also Chambers v. NASCO*, 501 U.S. 32, 43, 115 L.Ed.2d 747, 96 S.Ct. 2778 (1976); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1545 (11th Cir.1993).[FN3] The decision on whether to impose discovery sanctions, either pursuant to its inherent authority or under existing Rules of the Court of Federal Claims rests within the sound discretion of the Court. *Adkins v. United States*, 816 F.2d 1580, 1581-82 (Fed.Cir.1987); *see also Heat & Control, Inc. v. Hester Indus., Inc.*, 785 F.2d 1017, 1022 (Fed.Cir.1986).

> FN3. The court stated:
> Deeply rooted in the common law tradition is the power of any court to manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it. A court may appropriately sanction a party or attorney who shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order. (internal quotation and citation omitted).
> *Malautea*, 987 F.2d at 1545.

In addition to its inherent ability to impose sanctions, the Rules of the Court provide for the imposition of sanctions whenever a party abuses the discovery process or violates an order of the Court. There are three Rules that the Plaintiff believes should apply in this case. First, RCFC 26(g) provides that an attorney who signs a response or objection must certify that the "... response or objection [is] to the best of the attorney's or party's knowledge, information, and belief formed after a reasonable inquiry ... warranted by existing law ... [and] not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation...." RCFC 26(g). However, if the attorney makes a certification in violation of the rules, "... the court ... shall impose upon ... the party on whose behalf the request, response, or objection is made ... an appropriate sanction, which may include an order to pay the amount of the reasonable expenses incurred because of the violation, including a reasonable attorney's fee." RCFC 26(g). Specifically, the Plaintiff claims that the Court should sanction the Defendant pursuant to RCFC 26(g) and award the Plaintiff the costs and fees it incurred in dealing with the Defendant's deficient responses to its discovery requests over a protracted period of time, particularly the Defendant's general claims of privilege and general objections, and the Defendant's repeated failure to live up to its own promises to adequately turn over responsive documents and revise interrogatory responses.

***4** Second, RCFC 37(a) provides for reimbursement of reasonable expenses, including attorney's fees, upon the granting of a motion to compel unless the Court finds that the opposition was substantially justified.[FN4] In this specific case, the Defendant never filed an opposition to the motion to compel and provided no justification for its lack of diligence.

> FN4. Rule 37. Failure to Make or Cooperate in Discovery; Sanctions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> (a) Motion for Order Compelling Discovery. A party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling discovery as follows:
> (4) *Award of Expenses of Motion.* If the motion is granted, the court shall, after opportunity for hearing, require the party ... whose conduct necessitated the motion ... to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorneys' fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.
> RCFC 37(a)(4).

Third, RCFC 37(b) provides that if a party fails to obey a discovery order, the Court has the power to impose sanctions, including the awarding of reasonable expenses and attorney's fees.[FN5] The Plaintiff claims that the Defendant consistently violated the terms of five orders of the Court, repeatedly missed deadlines set by the Court for discovery, and wrongfully filed a motion for protective order that could have been filed 18 months previously.

> FN5. Rule 37. Failure to Make or Cooperate in Discovery; Sanctions
> (b) Failure to Comply with Order
> (2) *Sanctions Against a Party.* If a party ... fails to obey an order to provide or permit discovery ... the court may make such orders in regard to the failure as are just and among others the following:
> the court shall require the party failing to obey the order ... to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.
> RCFC 37(b)(2).

The Defendant, however, makes several arguments why sanctions should not be imposed. First, the Defendant argues that sanctions cannot be imposed upon the inherent authority of the Court apart from a finding of fraud or bad faith. *Amsted Industries, Inc. v. Buckeye Steel Castings Company* 23 F.3d 374, 378 (Fed.Cir.1994). The Defendant argues that bad faith is defined as a specific intent to injure the Plaintiff. *McFadden v. United States*, 215 Ct. Cl. 918 (1977); *Kalvar v. United States*, 211 Ct. Cl. 192 (1976). Because the Plaintiff can neither show that the Defendant intended to injure the Plaintiff nor engaged in fraud, so the argument goes, the Court cannot impose sanctions upon its inherent authority in this case. Second, the Defendant argues that sanctions cannot be imposed pursuant to RCFC 37(b)(2) on the grounds that it did not violate any court orders. Third, the Defendant argues that sanctions should not be awarded under RCFC 26(g) on the grounds that it made a reasonable inquiry into the adequacy of the discovery responses at the time they were provided. Fourth, it argues that the Plaintiff is not entitled to expenses under RCFC 37(a) for its motion to compel because the award under the circumstances would be unjust. Finally, the Defendant claims that the Plaintiff seeks to have the Defendant pay for its entire discovery effort, and that the expenses that the Plaintiff seeks are excessive. To the extent that any costs or fees should be awarded, only the expenses related to the motion to compel should be granted. The Court shall elaborate upon each of the Defendant's arguments in turn.

## A. The Inherent Authority of the Court to Impose Sanctions

The Defendant claims, as stated above, that the inherent power of the Court cannot be used to sanction a party unless its actions were designed to specifically harm the opposing party. It is true that a finding of bad faith is normally a prerequisite to the imposition of sanctions upon the inherent authority of the Court. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765-66 (1980); *Alyeska Pipelines Serv. v. Wilderness Soc'y*, 421 U.S. 258-59 (1975). *But see Chambers*, 501 U.S. at 59 (Scalia J. dissenting) (noting that while fee-shifting statutes may require a finding of bad faith, “that in no way means that all sanctions imposed under the courts'

inherent authority require a finding of bad faith. They do not.") Simple negligence is not in of itself a ground for the imposition of sanctions upon the inherent authority of the Court. *ViON Corp. v. United States,* 906 F.2d 1564, 1566-67 (Fed.Cir.1990). However, the Defendant reads the law too narrowly when it defines bad faith to constitute only acts that are specifically intended to harm a party. The Court does not merely have the inherent authority to sanction conduct designed to harm a party, but also to sanction conduct that delays and disrupts the judicial process.

***5** In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorneys fees against the responsible party [citations omitted] as it may when a party "shows bad faith by delaying or disrupting the litigation or by hampering the enforcement of a court order." [citation omitted]

*Chambers,* 501 U.S. at 46 (1991). In particular "bad faith" is further described as follows:In this regard, the bad faith exception resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper warrant that the paper "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needlessly increase the cost of litigation.

*Chambers,* 501 U.S. at 46, n. 10. *See also Lipsig v. National Student Mktg. Corp.* 663 F.2d 178, 181-82 (bad faith inferred in part from dilatory tactics used during discovery). Thus, clearly, there is no reason why the Court is constrained from using its inherent power to impose sanctions against a party for a pattern of conduct consisting of unreasonable delays in responding to discovery requests or causing unjustifiable increases in the costs of litigation.[FN6] Because the Defendant engaged in a pattern of unreasonable delays in fully responding to the Plaintiff's discovery requests by consistently failing to meet deadlines in a reasonable manner and by maintaining patently unjustifiable objections and claims of privilege against the Plaintiff's requests, the Court can exercise its inherent powers to sanction the Defendant's conduct to the extent necessary.[FN7]

FN6. The Defendant's reliance on *McFadden* and *Kalvar* for the proposition that only malice supports a finding of bad faith is misplaced because the context of these cases concerns the conduct of government contracting officers, and not the conduct of government counsel during the course of litigation.

FN7. A federal court is permitted to sanction bad-faith conduct by means of its inherent power even though the same conduct can be sanctioned under other rules. *Chambers,* 501 U.S. at 50. However, the Court must exercise caution in sanctioning a party by means of its inherent power when the Rules of the Court may be available. The Supreme Court has noted that "(b)ecause inherent powers (to levy attorneys' fees for bad faith) are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Roadway Express, Inc.* 447 U.S. at 766. Therefore, it is more appropriate in this case for the Court to sanction the Defendant first by means of the fine scalpel of the Rules of the Court before availing itself the bludgeon of its inherent powers. The Court imposes sanctions, upon its own inherent authority, on the Defendant for its pattern of non-cooperation with the Defendant from April 1, 1999, to May 22, 2000, and the prosecution of this motion for sanctions only to the extent that the Defendant would otherwise escape sanctions because of lacunae in the coverage of sanctions imposed by other Rules of the Court.

B. Sanctions are warranted under RCFC 26(g) for the Defendant's improper discovery responses

RCFC 26(g) requires that an attorney or party certify that a response or objection to a discovery request is "not unreasonably burdensome or expensive, given the factual and legal context of the case." RCFC 26(g). The requirements closely mirror the oft-quoted RCFC 11 requirement that a pleading or motion be certified by the attorney and the party that "after a reasonable

inquiry [the pleading, motion or other paper] is well grounded in fact and is warranted by existing law." RCFC 11. The standard for imposing sanctions under RCFC 26(g), as well as RCFC 11, is whether an attorney or a party who signs a certification failed to make a reasonable inquiry into the facts supporting the discovery document. *Thorton-Trump v. United States,* 12 Cl.Ct. 127, 130 (1987). Proof of subjective bad faith is not required for the imposition of sanctions against a party pursuant to RCFC 26(g). *Id.* Whether a "reasonable inquiry" has been made is judged under a standard of objective reasonableness. *Oregon RSA No. 6 v. Castle Rock Cellular,* 76 F.3d 784, 790 (9th Cir.1996). *See also* Adv. Com. Note to Fed.R.Civ.P. 26(g) (1983) ("Ultimately what is reasonable is a matter for the court to decide on the totality of the circumstances"). While it is true, as the Defendant says, that if a party supplements discovery responses with newly discovered evidence, RCFC 26(g) is not violated; [FN8] nevertheless, if a party fails to make an reasonable inquiry into the facts supporting the representations contained within the discovery document, RCFC 26(g) mandates the imposition of sanctions. However, the form of sanction to be imposed pursuant to RCFC 26(g) is within the discretion of the Court. *See Jankins v. TDC Management Corp., Inc.* 131 F.R.D. 629, 634 (D.D.C.1989).

FN8. *See Dixon v. Certainteed Corp.,* 164 F.R.D. 685, 691 (D.Kan.1996).

***6** The Plaintiff claims that under RCFC 26(g), the Defendant is required to pay its expenses, including attorney's fees, because it raised improper general objections and improper general assertions of privilege, failed to provide a factual basis for its assertion of attorney-client privilege and work-product doctrine, and improperly conflated the deliberative process privilege and executive process privilege. The Defendant, however, claims sanctions should not be imposed pursuant to RCFC 26(g) because it made a reasonable inquiry into the adequacy of its responses at the time they were provided. Specifically, the Defendant states that it is common practice to respond to overbroad interrogatories with general objections for the purpose of preserving objections. It also argues that it was reasonable to turn over documents at a later date because discovery requests of the Plaintiff were overly broad. Finally, it argues that the Plaintiff was not prejudiced by the general assertions of privilege because no document was ever withheld from the Plaintiff.

The Defendant's arguments are without merit. It is well established in federal practice that broad and sweeping objections to interrogatory and document requests are improper. *See In Re Folding Carton Antitrust Litigation,* 83 F.R.D. 260, 263 (N.D. Ill 1979). The Court, in granting the Plaintiff's motion to compel on March 29, 2000, determined that these objections and claims of privilege were deemed waived along with other specific claims of privilege. Furthermore, in the March 28, 2000, status conference, the Court stated for the record that "[i]nterrogatories were not answered completely. Electronic mail has not been produced. The privilege log is inadequate. Documents were identified in answers to interrogatories, but not produced." (March 28, 2000, Tr. at 4.) The Court later in the same hearing characterized conflicting discovery responses by the Defendant as a "mess." (March 28, 2000, Tr. at 69 .) The Court further expressed its overall displeasure with the Defendant's conduct by stating that "the defense has sins as scarlet." March 28, 2000, Tr. at 83. Importantly, it appears that the Defendant only uncovered relevant documents that were readily obtainable one year after the first production of documents which itself was the product of several motions for time extensions. (March 28, 2000, Tr. at 5.) The record clearly shows that the Defendant did not make a reasonable inquiry into the adequacy of its responses under the circumstances. The explanation that is most consistent with the Defendant's repeated delays in responding to discovery and meaningless discovery responses is not that the Plaintiff's discovery requests were overly broad, but that there was a serious breakdown in Defendant's conduct of discovery in this case. The Defendant's argument that the Plaintiff was not prejudiced since no document was ever withheld pursuant to a claim of privilege likewise fails, as the unwarranted objections and claims of privilege prevented discovery from being completed in a timely fashion. The Plaintiff was unable to know what documents were being withheld by the Defendant until

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

9 months after the discovery requests were issued, resulting in additional expenses that it otherwise would not have incurred. Because the Defendant's discovery responses were neither warranted by existing law nor interposed for a proper purpose, the Court is mandated under RCFC 26(g) to impose sanctions. Accordingly, the Court determines that the Defendant should pay for the reasonable expenses, including attorneys' fees, incurred by the Plaintiff for securing the Defendant's adequate response to its discovery requests from April 1, 1999, to May 22, 2000.

C. Sanctions are appropriate because the Plaintiff largely prevailed on its motion to compel under RCFC 37(a)

***7** RCFC 37(a)(4) provides that if a motion to compel is granted in part and denied in part, "the court may apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." The Plaintiff argues that it is entitled to sanctions because it mostly prevailed on its motion to compel filed on January 28, 2000. The Defendant claims that sanctions should not be awarded for the motion to compel because Precision Pine's discovery and motion to compel were overbroad, all responsive documents were eventually produced, and that the Defendant at all times acted in good faith. The Defendant's arguments are essentially the same arguments that it proffered as to why sanctions should not be imposed pursuant to RCFC 26(g). Because the Court has already determined that the Defendant's responses were unwarranted and that the objections were interposed for an improper purpose, the Defendant's opposition cannot be said to be substantially justified. It is entirely just, therefore, for the Plaintiff to be awarded the fees and expenses incurred for prosecuting its motion to compel.[FN9]

FN9. It is particularly significant that the Defendant never filed a response to the Plaintiff's motion to compel and never attempted to justify its failure to adequately respond to the Plaintiff's substantive arguments.

D. Because the Defendant did not disobey any Court Orders, sanctions are not warranted under RCFC 37(b)

The Plaintiff argues that the Defendant failed to obey five Orders of the Court. First, the Defendant failed to obey the Court's February 10, 2000, Order which required it to update its production of documents and to revise its answers to interrogatories by March 15, 2000, and required it to file a brief by March 22, 2000. Second, it failed to obey the Court's March 29, 2000, Order by failing to uphold the deadline imposed by the Court to complete discovery (a deadline that the Court later extended). Third, the Defendant failed to obey the Court's April 12, 2000, Order by failing to complete discovery responses and provide a factual basis for its assertions of privilege by May 22, 2000, as required, but instead filed a motion for protective order. Fourth, the Plaintiff alleges that the Defendant failed to obey the Court's May 25, 2000, Order. However, because the Plaintiff failed to provide a substantive explanation as to how the Defendant failed to abide by the Order, the Court need not consider its allegation further. Fifth, the Plaintiff alleges that the Defendant failed to abide by the Court's Modified Standard Special Procedures Order of May 20, 1999.[FN10]

FN10.
*Abuse of the Discovery Process.* Counsel are warned not to abuse the discovery process. If, after this cautionary order by the court, either counsel makes excessive demands or provides insufficient responses, appropriate sanctions (including, but not limited to, more stringent controls over discovery, restrictions on the use of evidence, and imposition of attorney's fees and costs) may be ordered. *See* RCFC 37(b). Modified Standard Special Procedures Order at 10. The Court, however, does not intend to impose any sanctions based on its May 20, 1999, Order because the Rules of the Court and the inherent authority of the Court sufficiently address the Defendant's wrongful course of conduct.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

There are two explicit limitations to the imposition of sanctions pursuant to RCFC 37(b)(2). "The rule expressly requires that the sanctions must be 'just'; and the sanction must relate to the particular claims to which the discovery order was addressed." *Morris v. United States,* 37 Fed. Cl. 207, 213 (1997) (citing *Insurance Corp. Of Ireland v. Compagnie des Bauxites,* 456 U.S. 694, 707, 102 S.Ct. 2099, 2106, 72 L.2d. 492 (1982)). However, the Court finds that sanctions are not warranted in this instance because the Defendant did not, strictly speaking, violate the terms of any Order of the Court.

1. The Defendant did not violate the Court's February 10, 2000, Order

***8** The Plaintiff seeks the imposition of sanctions against the Defendant for failure to comply with the Court's March 15, 2000, deadline to update its discovery responses,[FN11] and March 22, 2000, deadline to provide a brief on outstanding issues. The Defendant missed the March 15 deadline, but instead, on the afternoon of March 27, 2000, 12 days after the deadline had passed, submitted a privilege log that was little different from earlier privilege logs that needed updating and made one change to its interrogatory responses. The Defendant, rather than revising its interrogatory response, merely replaced it with an earlier generalized response. The Defendant claims that sanctions should not be imposed because it did not violate the terms of the Order; or, in the alternative, it was confused as to the terms of the February 10, 2000, Order. The Defendant states that, as of March 15, 2000, it believed that it was not necessary to update its responses. There can be little doubt that, in light of the Court's March 29, 2000, Order which waived its generalized objections and claims of privilege, the Defendant's responses were objectively deficient. However, the phrase "as necessary" in the Court's February 10, 2000, Order gave the Defendant some discretion in the manner in which it was to comply with the Plaintiff's discovery requests. However unreasonable the Court finds the Defendant's lack of diligence in complying with the Plaintiff's discovery requests to be, the Defendant did not, strictly speaking, violate the February 10, 2000, Order.

FN11.
On or before March 15, 2000, the Defendant will update, *as necessary,* its production of documents and revise its answers to interrogatories. The Defendant has represented that it will produce information as soon as possible; all updates will not be provided on March 15, 2000. (emphasis added).
March 15, 2000, Order at 1.

2. The Defendant did not violate the terms of the March 29, 2000, Order

The Plaintiff states that the Defendant failed to comply with the terms of the March 29, 2000, Order because it failed to respond to the remaining discovery matters by the deadline of April 21, 2000. However, on April 12, 2000, the Court extended the deadline to respond to discovery by May 22, 2000. While the Defendant's delays in responding to the Plaintiff's discovery requests in this instance were less than admirable in light of the Defendant's ongoing pattern of delays, the Defendant did not, strictly speaking, violate the terms of the March 29, 2000, Order.

3. The Defendant did not violate the terms of the April 12, 2000, Order

The Plaintiff claims that the Defendant should be sanctioned for violating the terms of the April 12, 2000, Order on two grounds. First, the Defendant served responsive documents to the Plaintiff's discovery requests on the deadline of May 22, 2000, despite the fact that the April 12, 2000, Order mandated that the documents shall be produced "as they become available." Second, the Defendant filed a motion for protective order on May 22, 2000, requesting the Court rule that it need not respond to some discovery requests on grounds that could have easily been ascertained a year earlier. However, the Defendant points out, correctly, that the Court largely granted its motion for protective order on July 11, 2000. While the Defendant undoubtedly should have filed its motion for protective order shortly after the discovery requests were first propounded, the Defendant's motion proved to be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

meritorious. Hence, it would be unjust to impose sanctions for expenses related to the Plaintiff's opposition to the motion for protective order.

***9** With respect to the serving of responsive documents at the time of the deadline of May 22, 2000, the Court is unable to ascertain for certain whether in fact the Defendant could have delivered the documents to the Plaintiff at an earlier date, or whether the Defendant's counsel received the documents from government agencies at a late date. Because it is reasonably possible that the Defendant was unable to comply with that provision of the Order, the Court declines to find any violation of the April 12, 2000, Order.

E. Summary of Sanctions Imposed

To recap, the Court is imposing sanctions against the Defendant for its abuse of the discovery process from April 1, 1999, to May 22, 2000. The sanctions break down as follows.
• Sanctions are imposed against the Defendant pursuant to RCFC 26(g) to compensate the Plaintiff for securing the Defendant's compliance with discovery responses in that the Defendant:
1. Interposed improper general objections to the Plaintiff's discovery requests;
2. Interposed improper general assertions of privilege;
3. Failed to provide a factual basis for its assertion of privilege and work product immunity; and
4. Improperly asserted the deliberative process privilege and conflated it with the executive process privilege.
• Sanctions are imposed against the Defendant pursuant to RCFC 37(a) to reimburse the Plaintiff for its successful prosecution of its motion to compel.
• Sanctions are imposed against the Defendant pursuant to RCFC 37(a) to reimburse the Plaintiff for its successful prosecution of its motion for sanctions.
• Sanctions are imposed against the Defendant pursuant to the inherent authority of the Court to the extent that the Court's Rules do not cover the Defendant's pattern of delaying discovery from April 1, 1999, to May 22, 2000.

As a final note, the Court wishes to emphasize that the sanctionable conduct of the Defendant is not the responsibility of only one person. The conduct that the Court sanctions today has occurred over an extended period of time on the watch of more than one counsel. Additionally, because agency offices that likely contained responsive documents were never searched for over a year, the Court believes that the Forest Service and the Department of Agriculture did not fully cooperate or communicate with the Department of Justice during the course of discovery. Miscommunication between Department of Justice counsel and the agencies that they defend does, unhappily, occur from time to time. Rarely, however, are the problems that the Court encountered in this case so acute. The year-long delay in rectifying its patently deficient discovery responses inexcusably prejudiced the Plaintiff by causing it to waste valuable resources in prosecuting its case.

F. Calculation of Reasonable Fees and Expenses of the Plaintiff

1. Standard of Calculation of Fees and Expenses

When sanctions are imposed under RCFC 26(g) and 37(a), as well as the inherent authority of the Court, the sanction imposed shall relate only to the moving party's wasted expenses that were "incurred only because of the inexcusable or dilatory conduct of the other party." *M.A. Mortenson v. United States*, 15 Cl.Ct. 362, 364 (1988). The Court has two goals in imposing sanctions: (1) to deter the Defendant from engaging in dilatory conduct in responding to discovery requests in the future, and (2) to compensate the Plaintiff for the additional expenses that it incurred in securing the Defendant's full response to its discovery requests.

***10** The Court, in calculating the amount of sanctions to be awarded must determine whether the attorneys' fees requested by the Plaintiff are reasonable. To this end, the Court will be guided by the "lodestar" approach established by the Supreme Court in *Hensley v. Eckerhart*.[FN12] The Court will take the number of hours reasonably expended as a result of the sanctioned conduct multiplied by a reasonable hourly rate as the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

starting point.[FN13]

FN12. 461 U.S. 424, 103 S.Ct.1933, 76 L.Ed.2d 40 (1983).

FN13. *Hensley*, 461 U.S. at 433. *See also Persyn v. United States*, 36 Fed. Cl. 708, 715 (1996).

2. Calculation of Precision Pine's Fees and Expenses

The Plaintiff, in its motion for sanctions and its reply, claims $88,990.38 in fees and expenses for which it requests reimbursement. The Defendant argues that the amount of fees and expenses requested by the Plaintiff is outrageous and that the Plaintiff is simply seeking to shift almost the entire cost of discovery to the Defendant. In particular, the Defendant objects to awarding fees and expenses incurred for filing the motion for sanctions which the Court grants today, and for the Plaintiff's opposition to the Defendant's motion for protective order. The Court agrees that the Defendant should not have to pay for any fees or expenses related to the motion for protective order which the Court largely granted. However, the Plaintiff is entitled to be reimbursed for reasonable fees expended on the motion for sanctions. The Plaintiff filed its motion for sanctions because the Court, in its March 29, 2000, Order, deferred any decision on the Plaintiff's request for sanctions in its motion to compel. Because the Plaintiff has largely prevailed on both the motion to compel and the motion for sanctions, it is right and just for the Defendant to pay for the fees and expenses of the motion for sanctions which likely never would have been filed had the Defendant conducted discovery in a responsible manner.

a) Whether the Hours Expended by the Plaintiff Were Reasonable.

As an initial matter, the moving party must submit records that are sufficiently itemized and specific for the Court to make a determination of the reasonableness of the hours. *Naprano Iron and Metal Co. v. United States*, 825 F.2d 403 (Fed.Cir.1987). The Plaintiff has included a billing record for its discovery matters from April 2, 1999, to August 18, 2000, in its motion for sanctions. Ex. X. It has also included within its reply brief a billing record for services in connection with drafting the same. Pl.'s Reply at Ex. 2. Unhelpfully, the Plaintiff provides only a chronology of fees expended and does not sort the fees by the expense to which the fee refers. Nevertheless, the Court is satisfied that the records are sufficiently precise and itemized for some sanctions to be awarded However, the Court finds that some of the hours expended by the Plaintiff are not reasonable, and that some of the hours were expended on matters that do not appear to be the result of sanctioned conduct. Such fees and expenses are not recoverable. For instance, the Plaintiff requests fees for time expended reviewing documents initially served by the Defendant from April 2, 1999, until July 16, 1999. These fees would have been incurred even if the Defendant had made a complete response to the Plaintiff's discovery requests. Such fees cannot be recovered at all. A further problem is that some of the time entries are vague.[FN14] The Court cannot in some instances determine whether time was expended on dealing with the Defendant's defective responses or some other aspect of this litigation. The Plaintiff cannot recover such expenses. Nevertheless, whenever the Court determines that the Plaintiff's counsel billed for time related to obtaining complete discovery responses from April 1, 1999, until May 22, 2000, the Defendant will be required to reimburse the Plaintiff's fees.

FN14. An example of a vague time entry include one dated June 6, 2000, in which the attorney "continue[d] to work on discovery issues." Ex. X at 19.

i. Motion for Sanctions

***11** The Defendant argues that the amount of time spent for drafting the motion for sanctions is too high because the length of the motion for sanctions is approximately the same length as the motion to compel, that it cited fewer cases than the motion to compel, and that it cited the same facts. The Court finds this particular argument to be somewhat unconvincing because the legal theories and the arguments of the

motion for sanctions and the motion to compel are in fact different even though they are substantively based on the same underlying course of events. However, the amount of time researching and drafting the motion for sanctions is in excess of 186 hours, most of which was performed by Mr. Somech. The Court is cognizant of the fact that there is little case law on the imposition of discovery sanctions in this Circuit which makes legal research difficult, particularly for a junior associate. Nevertheless, the Court based on its own experience finds that the amount of time expended on researching and drafting the motion for sanctions is unreasonably high.[FN15] The problems with the time description of the Plaintiff's responses are exacerbated by the lack of detailed descriptions in some instances which would permit the Court to ascertain exactly which portion of the Plaintiff's time expended was unreasonable and which was not.[FN16] Therefore, the Court shall reduce the amount of fees expended in preparing and drafting the sanctions by 55 hours. Accordingly, the amount of reasonable time expended on the motion for sanctions is found to be in excess of 129 hours, a lower amount of time expended than on the motion to compel. The reasonable amount of hours expended by Mr. Somech will be reduced accordingly.

FN15. For example, on July 13, 2000, Plaintiff's counsel spent 5.8 hours "preparing exhibits for motion for sanctions." Ex. X at 10. The amount of time spent compiling exhibits is very unreasonable given the fact that most of the exhibits are very much the same as the motion to compel.

FN16. A representative time entry submitted by the Plaintiff is that of July 3, 2000. "Continue preparing motion for fees." Had the total amount of time expended on the motion for sanctions been reasonable, this and other similar time entries might have been satisfactory. However, under the circumstances, the time entry and ones similar to it lack the specificity necessary for the Court to effectively determine whether the time expended was reasonable.

ii. Expenses

The Plaintiff has requested $2,662.55 in expenses. These expenses include $967.52 in computer research, $71.25 for courier, $933.95 for court reporters, $168.80 for facsimile, $4.40 for long distance phone calls, $421.20 for photocopying, $19.93 for postage, $67.50 for secretarial overtime, and $8.00 for travel. Undoubtedly, the Plaintiff has incurred expenses in preparing and researching the motion to compel and the motion for sanctions. Regrettably, however, the Plaintiff does not relate any of the expenses to specific expenditures. Because the Court is unable to ascertain what most of the expenses were expended for, the Court will not require the Defendant to pay any expenses except for the expenses of procuring a court reporter. However, the Court will only allow the recovery of court reporter expenses for the following transcripts:

• $155.80 for the transcript of the February 9, 2000, status conference on discovery
• $320.75 for the transcript of the March 28, 2000, oral argument on the motion to compel

Expenses are denied for the May 25, 2000, status conference and oral argument on the Defendant's motion for protective order because it largely prevailed on its motion. Expenses are also denied for the June 28, 2000, status conference because the status conference does not sufficiently relate to the Defendant's RCFC 26(g) violations to warrant sanctions. The Plaintiff is entitled to recover $476.55 in expenses.

b) Whether the Plaintiff's Billing Rates Are Reasonable.

***12** The determination of a reasonable rate in calculating a reasonable fee is made by reference to the marketplace. *Missouri v.. Jenkins*, 491 U.S. 274, 285 (1989). Courts generally find that the starting point for calculating fees is the attorney's customary billing rate. *See St. Paul Fire & Marine Insurance Co. v. United States*, 4 Cl.Ct. 762, 772 (1984).

The Court finds that the billing rates for the Plaintiff's counsel are reasonable. The counsel that predominately worked on this case were Alan Saltman, the attorney of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

record, Richard Goeken, Paul Ebert, and Dennis Somech. Mr. Saltman has a billing rate of $280-$290 per hour. Given his 27 years of experience of legal practice and specialized knowledge in Federal timber contract matters, his billing rate is very reasonable for the Washington, DC, market. Likewise, Mr. Goeken's billing rate of $155-$170 per hour through July 21, 2000, is reasonable given his 9 years of experience in legal practice and his specialized knowledge in Federal timber contract matters. Mr. Ebert's and Mr. Somech's billing rates of $130 per hour each are also quite reasonable for associates with one or two years of experience in the Washington, DC, market. Because Mr. Goeken's and Mr. Saltman's billable rates increased between 1999 and 2000, the Court will calculate the reasonable billable rate by setting it at the mean of the rates charged. Mr. Goekin's reasonable billable rate shall be set at $162 per hour. Mr. Saltman's reasonable billable rate shall be set at $285 per hour.[FN17]

FN17. Mr. Saltman's billing rate increased to $300.00 per hour and Mr. Goeken's billing rate increased in the month of November 2000. Because the time expended in November is minuscule in comparison with the time expended from April 1, 1999, to July 19, 2000, in the interest of economy, the reasonable fee shall not be adjusted upwards.

The Court has determined that the Plaintiff is entitled to recover $53,335.33 in attorney's fees and $476.55 in expenses, for a total of $53,811.88 to be payable to the Plaintiff upon a final adjudication on the merits of this case.

## Conclusion

The Plaintiff's July 21, 2000, motion for sanctions is GRANTED, in part. The Defendant is ORDERED to pay the Plaintiff's reasonable fees and expenses in the amount of $53,811.88 upon a final adjudication on the merits of this case. A chart describing the calculation of fees allowed is found in Appendix A of this Opinion. A chart describing the hours claimed and reasonable hours allowed by general category of expenses is found in Appendix B.

IT IS SO ORDERED.

## Appendix A

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | *Hours Claimed* | *Hours Allowed* | *Reasonable Rate* | *Total Fees* |
|---|---|---|---|---|
| Alan Saltman | 58.09 | 42.45 | $285 per hour | $12,098.25 |
| Gary Stevens | .40 | .40 | $270 per hour | $108.00 |
| Ruth Tiger | .50 | 0.00 | N/A | 0.00 |
| Richard Goekin | 283.93 | 184.59 | $162 per hour | $29,903.58 |
| Paul Ebert | 12.40 | 12.40 | $130 per hour | $1,612.00 |
| Dennis Somech | 133.75 | 73.95 | $130 per hour | $9,613.50 |
| Joanne Vella | 11.40 | 0.00 | N/A | 0.00 |
| Totals | 510.49 | 313.79 | N/A | $53,335.33 |

Appendix B

| | *Hours Requested* | *Hours Granted* |
|---|---|---|
| Review of Discovery Documents | 45.30 | 0.00 |
| Expenses Incurred in Securing Compliance with Discovery Responses, Including the Preparation and Prosecution of Motion to Compel | 185.04 | 183.84 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | |
|---|---|---|
| Expenses Incurred for the Preparation and Prosecution of Motion for Protective Order | 74.50 | 0.00 |
| Expenses Incurred for the Preparation and Prosecution of Motion for Sanctions | 186.45 | 129.95 |
| Expenses Incurred on Miscellaneous or Unascertainable Issues | 19.20 | 4.90 |
| Total | 510.49 | 313.79 |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | |
|---|---|
| April 1, 1999: | "Defendant objects to this interrogatory as overbroad, burdensome and oppressive. Defendant further objects on the grounds that this interrogatory seeks privileged information protected by the attorney-client privilege and the attorney work-product privilege." |
| October 17, 1999: | "?" |

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | |
|---|---|
| March 27, 2000: | "Defendant objects to this interrogatory as overbroad, burdensome and oppressive. Defendant further objects on the grounds that this interrogatory seeks privileged information protected by the attorney-client privilege and the attorney work-product privilege." |

Fed.Cl.,2001.
Precision Pine & Timber, Inc. v. U.S.
Not Reported in Fed.Cl., 2001 WL 1819224 (Fed.Cl.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.