# EXHIBIT A-3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No.: 06-305 T<br><br>Hon. Marian Blank Horn |

**PLAINTIFF'S SECOND SUPPLEMENT TO RESPONSES TO**
**<u>UNITED STATES' FIRST SET OF INTERROGATORIES</u>**

Pursuant to Rule of Court of Federal Claims ("RCFC") 33, Plaintiff, Consolidated Edison Company of New York, Inc. & Subsidiaries ("Con Edison"), provides the following supplement to its Responses to the United States' First Set of Interrogatories. This supplement is provided subject to the general objections and limitations set forth in Plaintiff's Responses to United States' First Set of Interrogatories.

Plaintiff is continuing to review the matters subject to this proceeding and reserves the right to supplement and/or amend its responses as necessary.

**<u>SECOND SUPPLEMENTAL RESPONSE</u>**

**<u>INTERROGATORY NO. 1:</u>** Identify all individuals who have knowledge of the Lease Transaction, including each person's involvement in the promotion, recommendation, planning, approval, or implementation of any of the leases, and the nature and substance of the facts known (or believed to be known) by each person.

**<u>RESPONSE:</u>** Con Edison objects to Interrogatory No. 1 as overbroad and unduly burdensome. Con Edison is not aware of all individuals that had knowledge of the Lease Transaction. The Lease Transaction involved multiple entities, and Con Edison cannot determine all individuals at each entity who had knowledge regarding the Lease

Transaction. Further, the Lease Transaction was widely known at Con Edison and Con Edison cannot, even after a diligent review, represent under oath all of its current and former employees who had any knowledge of the Lease Transaction.

In addition, Interrogatory No. 1 is not limited to a single discrete subject as required by RCFC 33(a). Rather, Interrogatory No. 1 impermissibly attempts to elicit information concerning several distinct subject matters, including the promotion (if any), the recommendation, the planning, the approval, and the implementation of the Lease Transaction. Con Edison is not compelled to respond to a compound request, such as Interrogatory No. 1 Moreover, when the implicit subparts of Interrogatory No. 1 are considered, the United States' request likely exceeds the limit of 25 interrogatories set forth in RCFC 33(a).

Interrogatory No. 1 further requires Con Edison to set forth a detailed narrative, and thus, the Interrogatory is overly broad and unduly burdensome. The inclusion of the word "all" renders Interrogatory No. 1 vague and ambiguous, as well. The legal basis supporting Con Edison's objection is set forth in more detail in response to Interrogatory No. 15.

Con Edison also objects to the Interrogatory as immaterial and irrelevant. The fact that an individual has knowledge of the Lease Transaction does not mean that the individual has discoverable information regarding the transaction.

Subject to and without waiving its objections, Con Edison identified five current employees of Con Edison whom it may rely upon to support its claims and/or defenses in the instant proceeding in its Rule 26(a) Disclosures and First Supplement thereto. Con Edison further identified the nature of each individual's involvement in the Lease

Transaction and the general substance of the facts believed to be known by each in its Response to the United States' First Set of Interrogatories. In such Response, Con Edison also identified four additional former and current Con Edison employees and sixteen additional individuals associated with third-party entities and the nature of each individual's involvement in the Lease Transaction and the general substance of the facts believed to be known by each.

On October 13, 2006, the United States produced a list of individuals it claimed were identified in documents regarding the Lease Transaction. The United States, however, did not identify the "subject of the information" possessed by these individuals. It appears that some of the individuals identified in the list attached to the United States' October 13, 2006 correspondence were included solely because their names were on a Distribution List ("the Distribution List"). In its initial Response to Interrogatory No. 1, Con Edison stated its belief that the individuals identified in the list attached to the United States' correspondence of October 13, 2006 "*may* have information regarding their respective institution's role in the Lease Transaction." (emphasis added). Con Edison has undertaken its own review of the individuals listed in the United States' October 13, 2006 correspondence. As noted below, Con Edison, after a review of the relevant documents, believes that some of the individuals identified on the United States' list had no significant connection with the Lease Transaction.

Con Edison's information regarding the nature of each of these individual's involvement in the Lease Transaction and the general substance of the facts believed to be known by each is contained in Con Edison's business records regarding the Lease Transaction. Con Edison produced such records in accordance with RCFC 33(d).

Although Con Edison does not believe that it has an obligation to summarize the information contained in those business records, Con Edison will provide a summary of the nature of each individual's involvement in the Lease Transaction and the general substance of the facts believed to be known by each, in an effort to assist the United States and facilitate the discovery process.

Many of the individuals identified on the list attached to the United States' correspondence of October 13, 2006 are referenced briefly in the documents regarding the Lease Transaction; some were only identified on the Distribution List regarding the Lease Transaction. Con Edison has limited information regarding what, if any, involvement these individuals had. Con Edison, in an attempt at full disclosure, referenced these individuals in response to Interrogatory No. 1 and now provides further information regarding the identified individuals. This reference and information should not be construed as a representation by Con Edison that each of these individuals has discoverable information, but rather that they *may* have discoverable information.

This response supplements, but does not replace, Con Edison's initial response to United States' Interrogatory No. 1. Con Edison cautions the United States that the information provided in its Response to United States' Interrogatory No. 1 and this supplement hereto represents Con Edison's belief regarding each individual's involvement in the Lease Transaction and the general substance of the facts known by each. Con Edison is not in a position to certify under oath as to each individual's involvement in the Lease Transaction or the general substance of the facts known by each individual.

J. A. Hoyte de Jong
Jan Trapman
N. V. Electriciteitsbedrijf Zuid-Holland (EZH)
Von Geusaustraat 193
2270 AX Voorsburg
The Netherlands
Phone: 011-31-70-3820028

Con Edison believes that Masters de Jong and Trapman were involved, through their advisors and counsel, in negotiating the terms of the Lease Transaction on behalf of South Holland Electric. The initial proposal letters were addressed directly to Mr. de Jong, and he accepted the proposal letter and provided representations on behalf of South Holland Electric. Con Edison further believes that Mr. de Jong was also involved in due diligence regarding the RoCa3 Facility and negotiations regarding the letter of credit. Con Edison believes that Masters de Jong and Trapman may have had information regarding South Holland Electric and its business and the RoCa3 Facility.

Anton Zauner
Gregory Fulljames
Roger Liberman
Phillip Mintun
Margaret Morrow
Anna E. Endres
Louis DeCarlo
Capstar Partners, Inc.
40 East 52nd Street, 12th Floor
New York, NY 10021
Phone: (212) 339-4200

Con Edison believes that Masters Zauner, Fulljames, Liberman, Mintun and DeCarlo and Ms. Morrow and Endres were associated with Capstar Partners, which reviewed and advised South Holland Electric on the terms and economics of the Lease Transaction. Con Edison believes that these individuals may have been familiar with due

diligence performed by South Holland Electric and the letter of credit it obtained in connection with the Lease Transaction.

Edwin Noomen
Credit Suisse Financial Products
1 Cabot Square, 4th Floor
London, E14, 4QJ
Phone: 44-171-888-1724

Con Edison believes that Mr. Noomen, like Mr. Snouck Hurgronje who was previously identified, was associated with Credit Suisse, which provided opinions regarding the commercially reasonable interest rate for certain of the interest bearing instruments in the Operative Documents. Con Edison believe that Mr. Noomen is not listed on any document other than the Distribution List and is not aware of his specific role, if any, in connection with the Lease Transaction.

Ben Wojciehowski
Credit Suisse First Boston
Five World Trade Center
7th Floor
New York, New York 10048

Con Edison believes that Mr. Wojciehowski was associated with Credit Suisse First Boston, which was a custodian pursuant to the Custody Agreement.

Marianne Rosenberg
Robert Thorton Smith
Philip McCarthy
Francois Bardonnet
Paul Alfaks
Marc Mangum
Kimberly Delfino
White & Case
1155 Avenue of the Americas
New York, NY 10036
Phone: (212) 819-8380

Con Edison believes that Masters Smith, McCarthy, Bardonnet, Alfaks, Mangum, and Ms. Rosenberg and Delfino, were associated with White & Case, which provided legal advice to South Holland Electric regarding United States legal issues in connection with the Lease Transaction. Con Edison believes that these individuals may have reviewed and negotiated certain terms of the Lease Transaction on behalf of South Holland Electric.

Jim Donahue
Mike Mattasits
Banc One Leasing Corporation
111 Monument Center
Bank One Center
Suite 1931
Indianapolis, IN 46204
Phone: (317) 321-8044

Con Edison believes that Masters Donahue and Mattasits were associated with Banc One Leasing Corporation ("Banc One"), which negotiated and entered into a transaction with South Holland Electric in which it acquired an undivided leasehold interest in the RoCa3 Facility at or around the time of the Lease Transaction. Con Edison believes that certain aspects of Banc One's transaction and the Lease Transaction were negotiated with South Holland Electric at or around the same time. Con Edison believes that Masters Donahue and Mattasits may have had knowledge regarding the negotiation

and terms of the transaction entered into between Banc One and South Holland Electric and the negotiation and certain terms of the Lease Transaction. Con Edison also believes that Mr. Mattasits may have had information regarding due diligence conducted on the RoCa3 Facility.

John M. Sykes
Joonmoo Lee
Andrew Levy
John Kramer
Patricia Iandoli
Jerome Mounier
Colin Chang
Michael Apelt
Dan Kiely
Shearman & Sterling
599 Lexington Avenue
New York, NY 10022-6069
Phone: (202) 848-4000

Con Edison believes that Masters Sykes, Lee, Levy, Kramer, Mounier, Chang, Apelt, and Kiely and Ms. Iandoli, like Masters Flowers and Stevenson who were previously identified, were associated with Shearman & Sterling, which provided legal advice to Con Edison with respect to the Lease Transaction, including the terms of and proper Federal income tax treatment for the Lease Transaction.

David Strupp
Roger Wise
Kim Werderman
Siri Thomas
Davis Polk & Wardell
450 Lexington Avenue
New York, NY 10016
Phone: (212) 450-4800

Con Edison believes that Masters Strupp, Wise, and Thomas and Ms. Werderman were associated with Davis Polk & Wardell, which provided legal advice to Bayerische Landesbank Girozentrale, Luxembourg Branch, in connection with a letter of credit

obtained by South Holland Electric in favor of Con Edison and Wilmington Trust Company and also provided legal advice to Hollandsche Bank-Unie N.V. regarding United States law in connection with the Lease Transaction.

A. Rene Citroen
Tjepco van Voorst Vader
Louis Bouchez
Daphne Brinkhuis
Ken Breken
Nanette Rutgers
Clifford Chance
Apollolaan 171
1077 AS Amsterdam
The Netherlands
Phone: 011-31-20-577-7222

Con Edison believes that Masters Citroen, van Voorst Vader, Bouchez, and Breken and Ms. Brinkhuis and Rutgers were associated with Clifford Chance, which provided legal advice to South Holland Electric regarding Dutch legal issues in connection with the Lease Transaction.

Dr. Michael Weller
Clifford Chance
Oberlindau 54-56
D-60323
Frankfurt AM-Main
Germany

Con Edison believes that Dr. Weller was associated with Clifford Chance, and may have provided legal advice to South Holland Electric regarding the letter of credit it obtained in connection with the Lease Transaction. Dr. Weller also provided a legal opinion to Con Edison and Wilmington Trust Company.

Paul Stenrink
Gerald Wentink
Loyens & Volkmaars
Tripolis 300
P.O. Box 71170
1008 BD Amsterdam
Phone: 011-31-20-578-5785

Con Edison believes that Masters Stenrink and Wentink were associated with Loyens & Volkmaars, which provided legal advice to South Holland Electric regarding the proper tax treatment of the Lease Transaction under Dutch law.

Femke Bierman
Loeff Clayes Verbeke
Apollolaan 15, P.O. Box 75088
1070 AB Amsterdam
The Netherlands
Phone: 011-31-20-574-1507

Con Edison believes that Mr. Bierman, like Masters Meesters and Magnin who were previously identified, were associated with Loeff Clayes Verbeke, which provided legal advice to Con Edison regarding Dutch law in connection with the Lease Transaction.

Michael Ledyard
Morris James Hitchens & Williams
222 Delaware Ave.
P.O. Box 2306
Wilmington, DE 19899

Con Edison believes that Mr. Ledyard may have provided legal advice to the Trustee, Wilmington Trust Company, regarding the Lease Transaction. Con Edison believes that Mr. Ledyard may have had information regarding the formation of the Trust and its role in the Lease Transaction.

Don MacKelcan
Wilmington Trust Company
Rodney Square
1100 N. Market Street, Suite 2201
Wilmington, DE 19890
Phone: (302) 651-1118

Con Edison believes that Mr. MacKelcan was an employee of Wilmington Trust Company, which facilitated the Trust that participated in the Lease Transaction on behalf of Con Edison Development. Con Edison believes that Mr. MacKelcan may have had information on the formation of the Trust and its involvement in the Lease Transaction.

Mark J. DeTrempe
Tom Malia
Jay Sill
Donald Roback
Cornerstone Financial Advisors L.P.
Three Parkway North
Deerfield, IL 60015
Phone: (847) 444-1000

Con Edison believes that Masters DeTrempe, Malia, Sill, and Roback of Cornerstone Financial Advisors L.P. ("Cornerstone"), like Robert Holzman who was previously identified, may have provided advice regarding the economics and the implementation of the Lease Transaction. Mr. Holzman was Con Edison's primary contact at Cornerstone.

Austin Godfrey
Marlene Motyka
Deloitte Financial Advisory Services
2 World Financial Center
New York, NY 10281
Phone: (212) 436-2000

Con Edison believes that Mr. Godfrey and Ms. Motyka, like Masters Ellsworth, Renock and Liu who were previously identified, were associated with Deloitte Financial Advisory Services, which prepared a valuation of the RoCa3 Facility. Neither

Mr. Godfrey nor Ms. Motyka, however, are identified on any documents, other than the Distribution List, regarding the Lease Transaction. Con Edison is not familiar with any involvement of Mr. Godfrey and Ms. Motyka in the preparation and/or review of the appraisal for the Lease Transaction.

K. I. Schoppink
Moret Ernst & Young
Wassenaarseweg 80
2596 CZ The Hague
Phone: 31-70-328-6666

Con Edison believes that Moret Ernst & Young may have provided accounting services for South Holland Electric. Con Edison is not familiar with the specific involvement, if any, of Mr. Schoppink in connection with the Lease Transaction.

Sheldon Mittler
Duke Engineering & Services
One Huntington Quadrangle, Suite 1S01
Melville, NY 11747

Con Edison believes that Mr. Mittler, like Masters Radini, Foley, Gonzalez, and DeCristofaro who were previously identified, was associated with Duke Engineering & Services, which prepared an engineering valuation of the RoCa3 Facility. Con Edison is not familiar with the involvement, if any, of Mr. Mittler in the preparation and/or review of the report.

Richard Norbruis
Elizabeth van Schilfgaarde
Nauta Dutilh
1 Rockefeller Plaza
New York, NY 10020

Con Edison believes that Mr. Norbruis and Ms. van Schilfgaarde were associated with Nauta Dutilh, which provided legal advice to the Lender and the Deposit Bank,

including legal advice regarding due diligence associated with real property and mortgages, in connection with the Lease Transaction.

Nancy Dahl
First Security Bank, N.A.
79 South Main Street, 3rd Floor
Salt Lake City, UT 84111
Phone: (801) 246-5208

Con Edison is uncertain of the nature of the involvement of Ms. Dahl and/or First Security Bank, N.A. in or the general substance of the facts known by either regarding the Lease Transaction. First Security Bank is listed as a permitted successor trustee in the Participation Agreement.

Dr. Peter Hein
Alan & Overy
Taunustor 2
60311 Frankfurt AM-Main
Germany

Con Edison is uncertain of the nature of involvement of Dr. Hein and/or Alan & Overy in or the general substance of the facts known by either regarding the Lease Transaction. Con Edison believes Dr. Hein and/or Alan & Overy are not named on any document other than the Distribution List.

Warren Wegener
Marsh & McLennan
500 West Monroe, 22nd Floor
Chicago, IL 60661
Phone: (312) 627-6628

Con Edison believes that Mr. Wegener, like Mr. Harding who was previously identified, was associated with Marsh & McLennan, which performed insurance due diligence with respect to the RoCa3 Facility. Con Edison is not familiar with the involvement, if any, that Mr. Wegener had in connection with the Lease Transaction.

Hans Nieuwenhuis
Tauw Mileu
P.O. Box 133
7400 AC Deventer
The Netherlands
Phone: 011-31-570-699-829

Con Edison believes that Mr. Nieuwenhuis was associated with Tauw Mileu, which performed environmental due diligence of the RoCa3 Facility and prepared a report of such due diligence. Con Edison believes Mr. Nieuwenhuis was involved in the preparation of the report.

J. D. Dykstra
M. ten Cate
ABN AMRO Bank N.V.
Foreign Credit Services
Foppingadreef 22
P. O. Box 283
1000 EA Amsterdam
The Netherlands
Phone: (31) (20) 628743

Masters Dykstra and/or ten Cate signed various documents as attorneys-in-fact for ABN AMRO Bank. Con Edison believes they may have had information regarding ABN AMRO's participation in the Lease Transaction.

J.D. Dykstra
M. ten cate
Hollandsche Bank-Unie N. V.
Coolsingel 104
P.O. Box 249
3000 AE Rotterdam
The Netherlands

Masters Dykstra and ten Cate signed various documents as attorneys-in-fact for Hollandsche Bank-Unie N. V. Con Edison believes they may have had information regarding Hollandsche's participation in the Lease Transaction.

Alexander Kohnot
Bayerische Landesbank Girozentrale, Luxembourg Branch
3, rue Jeanne Monnet
L2180
Luxembourg
Phone: 352.42.434.3399

Con Edison believes that Mr. Kohnot may have had information regarding Bayerische Landesbank Girozentrale's furnishing of a letter of credit in connection with the Lease Transaction.

Additional individuals at Con Edison who had peripheral involvement in the Lease Transaction are referenced in response to Interrogatory No. 15.

**INTERROGATORY NO. 15:** Identify all individuals and entities, including third parties and employees, officers and members of the Board of Directors of Plaintiff, with whom you communicated about the Lease Transaction prior to entering into the transaction, setting forth the contents of the communications and identifying the documents mentioning, discussing, referring to or constituting the communications.

**RESPONSE:**

In its Response to the United States' First Set of Interrogatories, served on November 2, 2006, Con Edison objected to Interrogatory No. 15 as overbroad and burdensome. In particular, Con Edison explained that it is not possible for Con Edison to identify all individuals with whom it communicated or to set forth the contents of all such communications, many of which were of a routine administrative nature. The Lease Transaction was a business transaction and, as such, subject to normal business review procedures. Employees of unrelated entities were also involved in reviewing the Lease Transaction.

There are several discrete bases supporting Con Edison's objection on this ground. First, Interrogatory No. 15 is a multi-part request, requiring Con Edison to identify all individuals at Con Edison involved with the Lease Transaction and "all individuals," whether associated with Con Edison or third-party entities, with whom such individuals communicated about the Lease Transaction, as well as the contents of all communications by and between such individuals on any subject associated with the Lease Transaction and every document relating to such communications. Interrogatory 15 is not limited to a single discrete subject as required by RCFC 33(a). *See also* Fed. R. Civ. P. 33(a) (containing identical language) and *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 443 (C.D. Cal. 1998) (interrogatories often contain subparts that "are implicit and not separately numbered or lettered"). Rather, Interrogatory No. 15 impermissibly attempts to elicit information concerning several distinct subject matters. Con Edison is not compelled to answer an interrogatory in compound form, such as Interrogatory No. 15. *See Pogue v. Diabetes Treatment Ctr. of Am., Inc.*, 235 F.R.D. 521, 525 (D. D.C. 2006) (a party "will not be compelled to provide an answer" to an interrogatory in the "compound form"). Moreover, when each implicit subpart is considered, Interrogatory No. 15 evades the limit of 25 interrogatories set forth in RCFC 33(a). *See, e.g., Johnson v. Kraft Foods N. Am.*, 2006 WL 3143930 (D. Kan. Oct. 31, 2006) (stating that the "extensive use of subparts, whether explicit or implicit" may render the numerical limit in Rule 33 "meaningless") and *Bujnicki v. Am. Paving and Excavating, Inc.*, 2004 WL 1071736, *9 (finding a blanket request for the interrogated party to set forth the facts supporting each defense to be an "attempt[] to evade the presumptive limitation set forth in" Rule 33(a)).

Second, Interrogatory 15 requires Con Edison to provide a detailed narrative outlining the contents of communications between individuals associated with Con Edison and third-party entities and thus, is both overly broad and burdensome. *See, e.g., Smith v. City of New York*, 2006 WL 2516479, *1 (E.D.N.Y. Aug. 29, 2006) (where "interrogatories are improperly worded and seek long narratives," the party "need not engage in long narratives in response"); *Turner v. Moen Steel Erection, Inc.*, 2006 WL 3392206 (D. Neb.) (an interrogatory is overly broad and unduly burdensome "if it seeks 'all facts' supporting a claim or defense, such that the answering party is required to provide a narrative account of its case"); *Hilt v. SFC Inc.*, 170 F.R.D. 182, 188 (D. Kan. 1997) (an interrogatory requesting "a running narrative or description of the entire case, together with identifications of all knowledgeable persons and supporting documents" is overly broad and burdensome); *Pilling v. Gen. Motors Corp.*, 45 F.R.D. 366, 370 (D. Utah 1968) (stating that although "the listing of details concerning every [responsive] publication could be unreasonable, the specification of representative publications, if any, and the general descriptions of such other publications, if any, would not be"); *City of Witchita, Kansas v. Aero Holdings, Inc.*, 2000 WL 33170895 (D. Kan.) (finding interrogatories asking the interrogated party to "list all facts" and "identify all persons having knowledge" about a transaction were overbroad).

Third, the use of the word "all" in Interrogatory No. 15 also renders the request vague and ambiguous, as well as overbroad; the request does not adequately advise Con Edison of the specific information sought. *See, e.g., Stovall v. Gulf and S. Am. Steamship Co.*, 30 F.R.D. 152, 154 (S.D. Tx. 1961) ("[h]ow can the court make enforceable orders with reference to 'all' of anything?"); *Sheffield Corp. v. George F. Alger Co.*, 16 F.R.D.

27, 29 (S.D. Ohio 1954) (condemning interrogatories which use the word "all"); *Aero Holdings*, 2000 WL 33170895.

Interrogatory No 15. requires Con Edison to identify (i) all persons associated with Con Edison involved in the Lease Transaction, (ii) the individuals with whom they discussed the Lease Transaction, whether associated with Con Edison or a third-party entity, (iii) the contents of all discussions regarding *any* subject matter associated with the Lease Transaction, and (iv) all documents relating to such communications. Con Edison's effort in evaluating lease transactions in general and entering into the Lease Transaction consumed almost a year, and, as a result, Interrogatory No. 15 requests that Con Edison create a "running narrative" of events which occurred over this extended period. Further, the request that Con Edison identify "all" communications renders the interrogatory ambiguous as well as overly broad. Interrogatory No. 15 is clearly objectionable, as established by the authorities set forth above, and Con Edison is not obligated to respond.

Con Edison has produced extensive documentation setting forth its communications regarding the Lease Transaction. For the reasons described below, this documentation provides a more comprehensive description of the communications regarding the Lease Transaction than is possible in the context of an Interrogatory response.

Depositions would be a more effective tool for gathering the type of detailed information requested by Interrogatory No. 15, especially information regarding oral communications. As the Ninth Circuit has stated, "[w]ritten interrogatories are not designed" to "plumb the depths of a witness' recollection," rather "a deposition" should

be used "when the goal [of] discovery" is to extract "a witness' recollection of conversations." *Shoen v. Shoen*, 5 F.3d 1289, 1297 (1993); *see also Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 435 (M.D.N.C. 2001) (stating that when conversations were not recorded, depositions are "clearly a superior" tool for gathering the "full details of the conversations"); *Hilt v. SFC Inc.*, 170 F.R.D. at 187 (stating "in many instances depositions, rather than interrogatories, will better serve the purpose of obtaining detailed facts); *Bryers Theaters, Inc. v. Murphy*, 1 F.R.D. 286, 288-89 (W.D. Va. 1940) (concluding that depositions provide "for a more comprehensive examination" than interrogatories, and interrogatories are not "suited for a 'thorough inquiry into the vital and highly controversial phases of the case").

Con Edison further objects to the Interrogatory as immaterial and irrelevant. The routine business communications of Con Edison employees and the communications of third-parties of which Con Edison was not aware are not relevant to a determination of the proper tax treatment of the Lease Transaction.

Con Edison is neither able, nor obligated, to respond to Interrogatory No. 15. In order to assist the United States and facilitate the discovery process, however, Con Edison has provided: (i) a list of the individuals associated with Con Edison who were involved in the Lease Transaction, (ii) a list of the individuals, whether associated with Con Edison or third-party entities, with whom they communicated regarding the Lease Transaction, and (iii) a summary of the general subject matter of such communications based upon interviews with the relevant individuals at Con Edison. Con Edison has further provided all documents concerning such communications in its Response to the

United States' First Request for Production and Supplements thereto. This response is provided by Con Edison subject to and without waving its objections.

Con Edison expects that the recollection of the individuals listed below may be refreshed as the case moves forward and Con Edison conducts trial preparation.

**A. <u>Brian DePlautt</u>**

Mr. DePlautt is no longer employed at Con Edison, and therefore Con Edison no longer exercises "control" over Mr. DePlautt. *See Gen. Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1210 (8th Cir. 1973). In the spirit of cooperation, however, Con Edison interviewed Mr. DePlautt, by telephone on December 22, 2006, for purposes of responding to Interrogatory No. 15.

The information contained in this response is based on this conversation. Since Mr. DePlautt is no longer employed by Con Edison, Con Edison has limited access to Mr. DePlautt. In view of Con Edison's limited access to Mr. DePlautt and the number of documents associated with this case, Con Edison has not attempted to refresh Mr. DePlaut's recollection through the use of such documents. Con Edison expects that Mr. DePlautt may be able to provide additional detail if and when his recollection is refreshed by viewing relevant documents.

Mr. DePlautt originally contacted Mr. Holzman to obtain more information concerning lease transactions, including the risks and benefits of such transactions. Their discussions related to these subjects, including discussions of the profit associated with lease transactions and the accounting treatment of the profit. Mr. DePlautt initiated these discussions because he believed that leases involving power projects might be consistent with Gramercy Development, Inc.'s business objectives. These discussions began in

early 1997, during the formation of Gramercy Development, Inc. After several months of such discussions, Mr. Holzman alerted Mr. DePlautt to the possibility of entering into a leasing transaction with South Holland Electric. Prior to Con Edison Development's decision to enter into the transaction with South Holland Electric, Mr. DePlautt had extensive discussions with Mr. Holzman concerning the details of the South Holland Electric transaction. Many of these discussions related to the rules for leveraged lease accounting as they would relate to the Lease Transaction.

Mr. DePlautt had discussions with individuals at Con Edison, including Charles Muoio, Joan Freilich, Mary Jane McCartney, Kevin Burke, Peter Irwin, and Andrew Scher, related to the Lease Transaction. In these discussions, the individuals reviewed the details of the Lease Transaction and the pros and cons of Con Edison entering into the Lease Transaction. These discussions included the potential profit associated with the Lease Transaction and how the profit would be accounted for under the rules applicable to leveraged lease accounting. Mr. DePlautt and these individuals also discussed whether the Lease Transaction was consistent with Con Edison Development's business plans, the legal and tax aspects of the Transaction, and the ancillary benefits of entering into the Lease Transaction, such as learning more about European energy markets. These communications would have taken place at Board of Trustee meetings, other meetings, in written memoranda, and in phone calls. Mr. DePlautt also kept Paul Kinkel informed of issues associated with the Lease Transaction, but Mr. Kinkel played a less active role in reviewing the Lease Transaction.

Mr. DePlautt provided Harry Morrison with an overview of the Lease Transaction in connection with Mr. Morrison's review of the RoCa3 Facility. Mr. DePlautt discussed

the technical aspects of the RoCa3 Facility with Mr. Morrison. These discussions would have taken place, in part, during a site visit to the RoCa3 Facility.

Mr. DePlautt communicated with the accounting, treasury, tax, and corporate planning departments at Con Edison in order to provide them with an overview of the transaction. Mr. DePlautt does not currently recall the individuals with whom he had such discussions.

Mr. DePlautt communicated with Rick Ellsworth and George Renock at Deloitte & Touche regarding the appraisal of the RoCa3 Facility

Mr. DePlautt communicated with Richard Radini at Duke Engineering regarding engineering issues related to the RoCa3 Facility.

Mr. DePlautt believes he may have communicated with Aidan O'Mahony regarding Standard and Poor's review of South Holland Electric's credit risk.

Mr. DePlautt believes he may have communicated with individuals at Tauw Milieu concerning the environmental review of the RoCa3 facility.

Mr. DePlautt communicated with Karen Kubiak at Arthur Andersen regarding the accounting treatment of the Lease Transaction. He does not currently recall whether he also communicated with Ben Neuhuasen.

Mr. DePlautt communicated with Jim Dewey at Price Waterhouse regarding the accounting treatment of the Lease Transaction.

Mr. DePlautt communicated with J. A. Hoyte de Jong and Jan Trapman at South Holland Electric regarding South Holland Electric, its business activities, the RoCa3 Facility, and Netherlands energy markets. Mr. DePlautt also communicated with the

plant manager of the RoCa3 Facility concerning the quality of the RoCa3 equipment during a site visit to the RoCa3 Facility.

Mr. DePlautt communicated with Anton Zauner, Gregory Fulljames, and Phillip Mintun of Capstar Partners, Inc. regarding South Holland Electric.

Mr. DePlautt communicated with Jim Donahue of Banc One Leasing Corporation regarding Banc One's participation in a separate lease of an undivided interest in the RoCa3 Facility.

Mr. DePlautt communicated with Mr. Flowers and Mr. Stevenson at Shearman & Sterling regarding legal advice they provided in connection with the Lease Transaction, including the possibility of litigation or other disputes with the Internal Revenue Service as a result of entering into the Lease Transaction.

Mr. DePlautt communicated with Bart Meesters and Femke Bierman at Loeff Claeys Verbeke regarding Dutch legal issues associated with the Lease Transaction.

The individuals identified by Mr. DePlautt were those at each entity with whom he had the majority and most significant conversations. It is possible that Mr. DePlautt had conversations with others or that others participated in the conversations he identified, which he may recall, upon further review of the Lease Transaction. The response to this Interrogatory is based upon Mr. DePlautt's current recollection, and Mr. DePlautt will likely review the transaction in more detail during discovery, and such review may refresh his recollection on further details.

**B. Joan Freilich**

Ms. Freilich was the Chief Financial Officer of Con Edison and a member of the Board of Directors of Consolidated Edison Development ("Con Edison Development")

during the consideration and implementation of the Lease Transaction. She communicated with Brian DePlautt, Kevin Burke, Mary Jane McCartney and Charles Muoio concerning the Lease Transaction. She may have also communicated with Eugene McGrath, the chairman of Con Edison. Much of these communications would have taken place at Con Edison Development Board of Director meetings and Consolidated Edison Company of New York, Inc. Board of Trustee meetings. These discussions related to the advantages and disadvantages of the Lease Transaction, including its impact upon Con Edison's financial statements and its relationship to Con Edison Development's business plan. Ms. Freilich believes that the discussions at Board of Trustee and Board of Director meetings also included risks associated with the Lease Transaction, including the risks associated with Con Edison's interest in the RoCa3 property, and Con Edison's ability to operate the RoCa3 property. Ms. Freilich further believes that the discussions included the legal and tax aspects of the Lease Transaction.

Ms. Freilich believes she spoke with employees in Con Edison's corporate planning department and/or accounting department in order to understand the financial accounting for the Lease Transaction. She does not currently recall the individuals with whom she had such discussions.

**C. <u>Mary Jane McCartney</u>**

Ms. McCartney had discussions with Mr. DePlautt concerning the details of the Lease Transaction, including the amount of Con Edison's investment and the economic return from the Lease Transaction. She also had discussions with Mr. DePlautt concerning the business and regulatory environment in the Netherlands, the qualifications of Con Edison's advisors, the role of the Lease Transaction in Con Edison

Development's portfolio, and the legal and tax aspects of the Lease Transaction. She also had discussions with Ms. Freilich and Mr. Muoio concerning some of these subjects, primarily at Con Edison Development Board of Trustee meetings. Ms. McCarthy may have provided updates on the Lease Transaction to Mr. Souter and/or Mr. McGrath.

Ms. McCartney also met with Robert Schwartz, the chairman of Consolidated Edison Company of New York, Inc.'s Finance Committee. The purpose of this meeting was to review with Mr. Schwartz the White Paper prepared with respect to the Lease Transaction. Ms. McCartney also believes she reviewed the Lease Transaction with Mr. McGrath.

### D. Kevin Burke

Mr. Burke was Con Edison's vice-president for corporate planning at the time of the Lease Transaction. He communicated with Mr. DePlautt concerning the economics of the Lease Transaction, including the rental payments and other payments to be made pertaining to the lease agreements. He also communicated with Ms. Freilich and Ms. McCartney on these subjects.

Mr. Burke communicated with Mr. Muoio concerning the Lease Transaction and its fit within Con Edison Development's overall strategy. He also communicated with Ms. Freilich and Ms. McCartney on this subject.

The discussions related to the Lease Transaction also related to the advantages of learning about the energy business in foreign countries and also related to the quality of the RoCa3 Facility and the risks associated with an interest in the Facility.

**E. Andrew Scher**

Mr. Scher, a member of Con Edison's law department, was assigned as in-house legal counsel to review documents and provide legal advice with respect to the Lease Transaction. He communicated with Mr. DePlautt in this capacity. Mr. Scher communicated with Mr. Holzman and potentially Mr. Culp of Cornerstone regarding the economics of the Transaction.

Mr. Scher also communicated with Brian Cray, who assisted in the review of documents. Mr. Scher also communicated with Shearman & Sterling, which was primarily responsible for the drafting of the documents from Con Edison's point of view. Mr. Scher communicated with Mr. O'Shea (the General Counsel of Con Edison) and Mr. Irwin regarding his review.

Mr. Scher communicated with Marianne Rosenberg of White & Case concerning the in-house counsel opinion Con Edison delivered to South Holland Electric, Hollandsche, and Wilmington Trust Company at the closing.

Mr. Scher also communicated with Mr. Strupp of David Polk & Wardwell concerning comments to the transaction documents.

Mr. Scher also communicated with representatives of Clifford Chance concerning the opinions prepared by them to be delivered to Con Edison.

Mr. Scher also communicated with representatives of Loeff Clayes Verbeke concerning their legal advice provided to Con Edison.

Mr. Scher also may have communicated with Michael Ledyard, counsel for Wilmington Trust Company. He also may have responded to questions posed by Mr. Dewey of Pricewaterhouse.

**F. Peter Irwin**

Mr. Irwin was a member of Con Edison's law department. His principal role with respect to the Lease Transaction was to carry out the process of obtaining necessary corporate approvals for the Transaction. He communicated with Mr. DePlautt in order to obtain an overview of the Transaction for this purpose. He also attended Board of Trustee meetings at which the Lease Transaction was discussed. He also communicated with Mr. Scher and Mr. O'Shea regarding the Transaction.

Mr. Irwin also participated in the interview of Shearman & Sterling which led to their retention as legal counsel in connection with the Lease Transaction.

Dated: January 5, 2007

Respectfully submitted by:

Thomas C. Durham

THOMAS C. DURHAM
Attorney of Record
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7216

NICOLE M. BIELAWSKI
1909 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3452

DAVID F. ABBOTT
Mayer, Brown, Rowe & Maw LLP
1675 Broadway
New York, New York 10019-5820
Telephone: (212) 506-2642

**DECLARATION**

I, hereby declare, under penalties of perjury, that Plaintiff's foregoing Second Supplement to Responses to the United States' First Set of Interrogatories is true and complete to the best of my knowledge.

Andrew Scher
Assistant General Counsel
Consolidated Edison Company of New York, Inc.