# EXHIBIT B-1

U.S. Departı )t of Justice

**Tax Division**

*Please reply to: Court of Federal Claims Section*
*P.O. Box 26*
*Ben Franklin Station*
*Washington, D.C. 20044*

*Facsimile No. (202) 307-0054*
*Trial Attorney: David N. Geier*
*Attorney's Direct Line: (202) 616-3448*

EJO'C:DG:SF:DNGeier
154-2457
CMN 2006103503

November 8, 2006

**Also via Facsimile (312) 706-9187**

Thomas C. Durham, Esquire
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606

Re: Consolidated Edison Company of New York, Inc. & Subsidiaries v. United States
Fed. Cl. No. 06-305 T

Dear Mr. Durham:

We have reviewed plaintiff's responses and objections to interrogatories (served on November 2, 2006). The responses and objections fall far short of what is required under the rules. This is particularly troublesome given the short time period allowed for discovery and the fact that plaintiff requested, and obtained, an extension of time to respond. While reserving our right to raise further concerns, this letter constitutes our initial effort to address the deficiencies in plaintiff's responses and to learn if plaintiff will promptly supplement, amend and/or clarify its responses.

For your ease of reference, we have grouped our concerns into categories.

*Rule 26(a) Disclosures*

Please clarify whether plaintiff's response to Interrogatory No. 1 (seeking the identification of individuals with knowledge of the Lease Transaction) is intended as a supplement to its Rule 26(a) disclosures. Absent hearing back from you, we will continue to rely upon the representations made in your Rule 26(a) disclosures as constituting an exhaustive list of those individuals whom you intend to rely upon to support your case-in-chief.

*Privilege Log*

We have not received a privilege log in connection with plaintiff's interrogatory responses. As you are aware, a privilege log must be provided and must contain descriptions sufficient "to assess the applicability of the privilege or protection." Rule 26(b)(5), RCFC. Therefore, to the extent that information is being withheld on a claim of privilege (Response Nos. 7 and 12), please provide a detailed log describing what information is being withheld and why.

*Withholding Information Other than For a Privilege*

It appears that plaintiff has withheld information other than on the basis of a privilege. By way of example, in response to our inquiry for information about communications with outside consultants (Interrogatory No. 14), mentioned in the complaint, plaintiff has objected and declined to respond. The interrogatory requests information that could support or refute a factual contention made by plaintiff in its complaint. It was our expectation, given the representations made in this case, that responsive information exists and is available.

By way of additional example, in response to Interrogatory No. 1, plaintiff indicates that because it does not have "complete information," no information will be provided. This position not only falls far short of plaintiff's legal obligations to answer discovery, but is particularly troublesome here, where plaintiff has complete access to the facts in support of its tax shelter scheme.

In many other instances plaintiff has raised a myriad of objections that render it difficult, if not impossible, to determine whether responsive information is being withheld. Therefore we ask that you inform us of each instance in which plaintiff has responsive information but will continue to rely upon its stated objections to withhold or refuse to provide information.

*Internal Communications*

In several instances (Interrogatory Nos. 14 and 15) the United States sought to learn of communications, including internal communications, which address the subject matter of the lawsuit. These inquiries are reasonably calculated to lead to the discovery of admissible evidence in this case. In each instance, plaintiff has declined to answer citing generalized objections. We requested the information so that it might shed light on the merits of the plaintiff's claims. The objections, which include immateriality and relevance, do not provide a legal basis to withhold responsive information.

To the extent that plaintiff deems the Government's requests to be overly broad and/or unduly burdensome, it has not articulated any "burden," nor has it explained how the requests might be narrowed instead of ignored.

ls

*Interrogatory No. 13*

In response to our inquiry about a factual contention made by plaintiff (Complaint at ¶¶ 22-24) regarding the actions of New York's Public Service Commission, plaintiff has refused to respond directly. Instead, plaintiff has represented that its response may be found in the public records of the PSC and generally refers the United States to plaintiff's Rule 26(a) disclosures. The response neither answers the question posed nor does it specifically identify any documents that do. Such a tactic is improper and ignores plaintiff's obligation to answer discovery.

*Reference to Documents*

Many of the plaintiff's discovery responses (Response Nos. 1, 2, 5, 7, 12 and 13) incorporate the contents of other documents which plaintiff then fails to either annex or otherwise specifically identify. The responses are in contravention of Rule 33 of the Court of Federal Claims.

*Plaintiff's Review of Other Shelter Transactions*

The United States requested information about other shelter transactions reviewed or considered by plaintiff at or about the time of the shelter transaction at issue (Interrogatory No. 2). The discovery was directed, in part, to the subjective component of the economic substance doctrine.

Plaintiff's response challenges the Government's definition of "shelter transaction" and argues that it is overly broad. While we certainly do not agree that the interrogatory is over broad, in an effort to avoid further disagreement on this point, we have identified certain listed transactions (see accompanying sheet) that you may deem to constitute a "shelter transaction" for purposes of responding to this interrogatory.

*Negotiation of Rent and Option Prices*

The United States requested information about rent and various option prices in connection with the Lease Transaction (Interrogatory No. 3). Plaintiff's response contains no factual support and instead relies upon conclusory contentions. For example, plaintiffs do not state what negotiations took place, if any, when, with whom, and over what issues the parties agreed or disagreed. Rather, in a self-serving fashion and conclusory, plaintiff indicates only that amounts were ultimately determined consistent with plaintiff's "objective" to maximize economic returns. In light of the number of parties and documents employed to carry out the transaction, the response is devoid of factual information and is inconsistent with plaintiff's obligation to provide complete discovery responses.

While we are available to discuss these matters with you, please formally advise us by close of business on Monday, November 13, 2006, whether you intend to supplement, amend or clarify your responses as requested herein, and if so, when we can expect to obtain the revised answers.

Sincerely yours,

DAVID N. GEIER
JOSEPH A. SERGI
JAMES E. WEAVER
Trial Attorneys, Tax Division

Enclosure

cc: Carmen Baerga, Esq.

ls

# EXHIBIT B-2

**Mayer, Brown, Rowe & Maw LLP**
1909 K Street, N.W.
Washington, D.C. 20006-1101

Main phone: (202) 263-3000
Main fax: (202) 263-3300

MAYER BROWN ROWE & MAW

# FACSIMILE COVER SHEET

| | | | |
|---|---|---|---|
| FROM: | Nicole M. Bielawski | Date/time: | 11/13/2006 - 12:58 PM |
| Direct Tel: | (202) 263-3452 | Pages: | 8 ALL PAGES MUST BE NUMBERED |
| Direct Fax: | (202) 762-4242 | | |

TO THE FOLLOWING:

| Name | Company | Fax # | Telephone # |
|---|---|---|---|
| David N. Geier | U.S. Department of Justice | (202) 307-0054 | |

MESSAGE:

Please see attached.

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ABOVE ADDRESS BY MAIL. THANK YOU.

IF YOU HAVE ANY TRANSMISSION DIFFICULTY,
PLEASE CONTACT THE FACSIMILE DEPARTMENT AT (202) 263-3000

Berlin Brussels Charlotte Chicago Cologne Frankfurt Houston London Los Angeles New York Palo Alto Paris Washington, D.C.
Independent Mexico City Correspondent: Jauregui, Navarrete y Nader S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

MAYER BROWN ROWE & MAW

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

Thomas C. Durham
Direct Tel (312) 701-7216
Direct Fax (312) 706-9187
tdurham@mayerbrownrowe.com

November 13, 2006

**VIA FACSIMILE**
(202) 307-0054

David N. Geier
U.S. Department of Justice
Tax Division
555 Fourth Street, N.W.
Room 7919
Washington, D.C. 20001

Re: Consolidated Edison Co. v. United States,
Docket No. 06-305 T

Dear Mr. Geier:

We are in receipt of your correspondence of November 8, 2006, concerning alleged deficiencies in Con Edison's responses to the United States' First Set of Interrogatories and First Request for Production.

Con Edison intends to fully comply with its discovery obligations under the Rules of the Court of Federal Claims ("RCFC") and will supplement its responses as necessary. The structure of this response follows your correspondence.

Con Edison obtained a one-day extension and served its responses to the United States' First Set of Interrogatories on November 2, 2006, by electronic mail and overnight delivery. Con Edison received a two-day extension and served its responses to the United States' First Request for Production on November 3, 2006, by hand. In response to these requests, Con Edison produced 1,812 pages of documents. Con Edison provided the United States with a CD ROM containing TIFF images of the documents and the beginning and ending bates ranges, as requested by the United States. The two-day delay was attributable, in part, to the United States' request that Con Edison provide its documents in electronic form. While Con Edison appreciated the United States' courtesy in granting the requested extensions, the net result of these extensions was that the United States received Con Edison's responses to both its First Set of Interrogatories and First Request for Production earlier than it would have if Con Edison had served them by U.S. mail, on November 1, 2006.

Your letter seriously mischaracterizes Con Edison's responses by repeatedly alleging that Con Edison failed to provide responsive information or ignored the United States' requests, when, as you are aware, Con Edison provided a detailed response to each Interrogatory and produced over 1,800 pages of documents in response to the Requests to Produce. We believe

that accurately characterizing Con Edison's responses would provide a better framework for moving forward with this case.

**Rule 26(a) Disclosures**

Con Edison is in the process of reviewing its current disclosures under Rule 26(a)(1), served on September 25, 2006, and intends to supplement its disclosures on or before November 17, 2006. Con Edison's First Supplement to its Rule 26(a) Disclosures will notify the United States that Con Edison may use any document produced in discovery in support of its claims or defenses. Con Edison also will identify additional documents and individuals that it may use to support its case. Con Edison does not intend to use all individuals identified in its response to United States' Interrogatory No. 1 to support its case.

**Privilege Log**

As explicitly permitted by RCFC 33, Con Edison responded to several Interrogatories by producing responsive documents. These documents were included in Con Edison's responses to the United States' First Request for Production. To the extent that responsive documents were privileged, Con Edison provided a privilege log in connection with its response to the United States' First Request for Production, as requested in the Instructions thereto. The United States did not request that Con Edison provide a privilege log in the Instructions to its First Set of Interrogatories.

In response to Interrogatory No. 7, Con Edison indicated that it was withholding legal opinions protected by the attorney-client privilege. These legal opinions and documents referencing them are identified and described with particularity on the privilege log produced in connection with Con Edison's response to the United States' First Request for Production. The individuals who provided each legal opinion also are identified on the privilege log.

In response to Interrogatory No. 12, Con Edison provided a copy of the Tax Indemnity Agreement entered into in connection with the Lease Transaction and indicated that the Agreement was entered into for the purpose of addressing the matters set forth therein. Con Edison is not in possession of any documents setting forth its reasons for entering into the Tax Indemnity Agreement.

Con Edison objected to the United States' request for an explanation of its reasons for entering into the Agreement, to the extent that the request sought legal advice. That being said, Con Edison is not aware of any privileged communications regarding its reasons for entering into the Tax Indemnity Agreement and has not withheld any explanation of its reasons for entering into the Agreement on the basis of privilege.

**Withholding Information Other than for a Privilege**

Con Edison has not withheld any responsive information other than on the basis of privilege. The one exception is documents regarding the NUON transaction, identified in Interrogatory Response No. 2. These documents, as noted in the response, would be voluminous to produce and are not relevant, as they concern a transaction entered into two taxable years after the Lease Transaction.

Con Edison objected to certain Interrogatories and set forth the grounds for such objections, including privilege. As clearly stated in its responses, notwithstanding its objections, Con Edison answered all Interrogatories as fully as possible and withheld information only on the basis of privilege.

Con Edison noted instances in which it did not have certain information or the information it had was limited in scope. In doing so, Con Edison followed the United States' instruction that "[i]f, for any reason, the information cannot be furnished as requested, Plaintiff should respond to the extent possible and specify the reason for its inability to reply in full."

For example, in response to Interrogatory No. 1, Con Edison identified all individuals who, to its knowledge, may have discoverable information regarding the Lease Transaction. The United States' allegation that "no information" was provided in response to Interrogatory No. 1 is inaccurate. Con Edison's response to Interrogatory No. 1 is six pages long and identifies 28 individuals associated with 11 entities other than Con Edison.

The United States' allegation that "plaintiff has complete access to the facts in support of its tax shelter scheme" is also inaccurate. Con Edison does not have "complete information" with respect to third-party individuals or documents. The Lease Transaction was a business transaction which, like most business transactions, involved third parties with whom Con Edison dealt at arm's length. The interests of these parties were not aligned with those of Con Edison. The role played by these third parties is evident from the Operative Documents produced. Furthermore, Con Edison, as described below, has provided all responsive information from third parties in its possession.

In response to Interrogatory No. 2, Con Edison limited its response, as stated, to LILO and other leasing transactions which it entered into or considered. In response to Interrogatory No. 14, Con Edison limited the scope of its response, as stated, but did not "decline[] to respond" as the United States erroneously alleges. Con Edison identified its key advisors, including Cornerstone Financial Advisors, and produced all relevant documents referencing Cornerstone Financial Advisors' assistance in reviewing the Lease Transaction (*see* Internal Communications below). Based upon the broad nature of these Interrogatories, Con Edison believes that such limitations were reasonable. The United States has narrowed the scope of Interrogatory No. 2, and Con Edison will respond to the revised Interrogatory.

**Internal Communications**

Con Edison adequately responded to Interrogatories No. 14 and No. 15. The United States' allegation that Con Edison "declined to answer" ignores the fact that Con Edison produces over 1,800 pages of responsive documents, most of which are responsive to either Interrogatory No. 14 or 15.

Interrogatory No. 14 requests that Con Edison "[i]dentify all outside consultants [it] communicated with ..., including ... the opportunities that were presented ... and all documents...." Con Edison identified its key advisor with respect to the Lease Transaction and provided all documents referencing such advisor's assistance in reviewing the Lease Transaction. International Energy Partner, the other advisor identified, did not provide any advice in connection with any LILO or other leasing transaction which Con Edison entered into or considered, and thus Con Edison did not produce any documents referencing International Energy Partners other than Bates #PF004426-44 which was included in Con Edison's Rule 26(a) Disclosures. Interrogatory No. 14 does not call for Con Edison to disclose the contents of oral communications. Even if Interrogatory No. 14 did request the content of oral communications, Con Edison would not be able to respond for the reasons discussed in connection with Interrogatory No. 15 below.

Interrogatory No. 15 requests that Con Edison set forth "the contents of communications" and "identify the documents ... constituting the communications" with relevant parties before entering into the Lease Transaction. Con Edison produced all responsive documents, as permitted under Rule 33(d) and as requested by Interrogatory No. 15. The majority of the over 1,800 pages of documents produced are responsive to Interrogatory 15. These documents include minutes of relevant Board of Director meetings, as well as all non-privileged material considered by the Board of Directors, which includes numerous detailed presentations concerning the Lease Transaction. Con Edison has not withheld any material responsive to Interrogatory No. 15 except as set forth in the privilege log provided in connection with its response to the First Request for Production. Therefore, as required by Interrogatory No. 15, Con Edison has identified the "documents mentioning, discussing, referring to or constituting the communications."

It is not clear whether the United States intended to include oral communications in Interrogatory No. 15. To the extent that Interrogatory No. 15 could be construed as applying to oral communications not reflected in any document, Con Edison is not in a position to certify, under oath, the content of all oral communications with employees, former employees, or third parties. The Lease Transaction was a business transaction which involved multiple parties and spanned several months. In order to identify and certify all such oral communications, Con Edison would have to conduct depositions, under oath, of all relevant individuals. This would constitute a tremendous burden and would extend beyond Con Edison's discovery obligations. Con Edison is not required to conduct discovery for the United States, at its own expense. Con Edison, however, has summarized, in its Rule 26(a) Disclosures and its response to Interrogatory

No. 1, the general nature of the factual information believed to be known by each person identified.

**Interrogatory No. 13**

Interrogatory No. 13 requests information that is not unique to Con Edison. The steps taken by the New York Public Service Commission ("PSC") to develop a competitive electric industry in New York are a matter of public record. The United States' claim that Con Edison has "refused to respond" is, once again, inaccurate as Con Edison provided the citation for a published case which provides a detailed summary of the deregulation process in New York. Con Edison also produced PSC documents, all of which are a matter of public record, that are in its possession under RCFC 26(a)(1) and 33(d). PSC documents were included at beginning Bates ## PF004645, 004999, 005000, 005001, 005002, 005039, 005061, 005125, 005135, 005146, and 005308.

Con Edison is not obligated to summarize these documents for the United States. RCFC 33(d) states that "[w]here the answer to an interrogatory may be derived or ascertained from the business records of the party ... and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory or the party served, it is a sufficient answer to such an interrogatory to specify the records from which the answer may be derived or ascertained...." The burden of summarizing these documents would be substantially the same for Con Edison as it would be for the United States.

Con Edison has recently identified several additional documents related to the New York Public Service Commission and will include these documents in its First Supplement to its Rule 26(a) Disclosures.

**Reference to Documents**

The documents referenced were all included either in Con Edison's Rule 26(a) Disclosures or its response to the United States First Request for the Production as permitted under Rule 33(d). These documents were provided, as requested by the United States, on a CD ROM with TIFF files. Beginning and ending bates ranges were also provided. In its response to the First Request for Production, Con Edison specifically referenced documents provided in response to Interrogatory No. 2. Con Edison also identified a list of infrastructure projects responsive to Interrogatory No. 14. Con Edison further identified the Deloitte & Touche work papers.

Most of the documents provided were responsive to both Document Request No. 1 and Request No. 2, and thus, it was not possible to organize the documents by request. Furthermore, the requests to identify documents made in Interrogatories No. 7 and No. 15 were broad and overlapping, and most of the produced documents relate to both Requests. Similarly, documents responsive to Interrogatory No. 14 overlap with those responsive to Interrogatory Nos. 7 and 15. The process of organizing the documents provided by reference to each Interrogatory would be substantially the same for Con Edison as it would be for the United States.

**Plaintiff's Review of Other Shelter Transactions**

Con Edison will supplement its answer to Interrogatory No. 2 to respond to the revised interrogatory set forth in the United States' correspondence of November 8.

In its Supplement to Interrogatory No. 2, Con Edison will inform the United States that it did not enter into or consider any listed transactions, as identified on the attachment to your November 8 letter, with the exception of the leasing transactions identified in its response to Interrogatory No. 2.

**Negotiation of Rent and Option Prices**

Interrogatory No. 3 is vague and unclear. In its response to Interrogatory No. 3, Con Edison explained how the amounts of rent and the purchase option prices were negotiated. To further assist the United States, Con Edison directs your attention to Bates #PF003241-46 which was included as part of Con Edison's Rule 26(a) Disclosures. The investment in the Lease Transaction was subject to a competitive bidding process. Bates #PF003241-46 sets forth the terms of Con Edison's bid and the assumptions on which that bid were based, as accepted by South Holland Electric. As set forth in Con Edison's response to Interrogatory No. 3, computer software was used to set forth rental schedules which "optimize" the yield to Con Edison while maintaining the net present value benefit offered to South Holland Electric. The net present value benefit bargained for by South Holland Electric is the amount of the benefit retained by South Holland Electric after taking into account the net present value of its obligations under the lease, including the potential exercise of the purchase option should South Holland Electric choose that option. As explained in response to Interrogatory No. 3, the allocations of rental income and deductions with respect to the Lease Transaction for federal tax purposes were designed to comply with section 467.

As noted above, Interrogatory No. 3 is extremely general and vague. Con Edison will respond to further Interrogatories which request more specific information in light of Con Edison's response to Interrogatory No. 3

In conclusion, Con Edison fully intends to comply with its discovery obligations. We will serve Con Edison's First Supplement to both its Rule 26(a) Disclosures and Responses to United States' First Set of Interrogatories by November 17, 2006. If you have further concerns, please let us know. We will be glad to work with you to resolving any remaining concerns regarding Con Edison's responses.

Very truly yours,

Nicole Bielawski

Thomas C. Durham
Nicole M. Bielawski

cc: A. Scher

# EXHIBIT B-3

November 17, 2006

MAYER BROWN ROWE & MAW

Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101

Main Tel (202) 263-3000
Main Fax (202) 263-3300
www.mayerbrownrowe.com

**Nicole M. Bielawski**
Direct Tel (202) 263-3452
Direct Fax (202) 762-4242
nbielawski@mayerbrownrowe.com

VIA COURIER

David N. Geier
U.S. Department of Justice
Tax Division, Room 7919
555 Fourth Street, N.W.
Washington, DC 20001

Re: Consolidated Edison Company of New York, Inc. & Subsidiaries v. The United States, Docket No. 06-305 T

Dear Mr. Geier:

I have enclosed the following:

(1) Con Edison's First Supplement to its Rule 26(a) Disclosures;
(2) Con Edison's First Supplement to its Responses to the United States' First Request for Production;
(3) a CD ROM containing CE# beginning and ending bates numbers for the documents PF#005521 through 7333, previously produced on November 3, 2006; and
(4) a CD ROM containing images and CE# and PF# beginning and ending bates numbers for documents PF#007334 through 7842, produced in connection with the supplements referenced in paragraphs 1 through 2 above.

It was not possible for us to segregate the documents PF#007334 through 7842 between the Rule 26(a) Disclosures, the various Interrogatories and the Document Request. The majority of the documents fall into more than one category. As a result, we are producing the CE# beginning and ending bates numbers which, when organized sequentially, reflect the organization as provided to Mayer, Brown, Rowe & Maw LLP from Con Edison's files.

Con Edison, however, notes that documents PF#007494 through 7511 and 7708 through 7842 are responsive to Interrogatory No. 13 regarding the Public Service Commission, and the activities of the Public Service Commission also are discussed in some of the board minutes provided.

Con Edison has conducted additional due diligence in response to the United States' revised Interrogatory No. 2. Con Edison, despite such due diligence, is not prepared to respond at this time. As we are sure you can appreciate, the responsible individuals at Con Edison are

cautious about making a representation under oath as to whether other current or former employees ever considered or reviewed transactions, other than those previously identified, that may constitute listed transactions. It is difficult for a corporation to make a negative representation, *i.e.*, a representation that something did not occur, approximately ten years ago.

The response to revised Interrogatory No. 2 will represent that Con Edison did not participate in any other shelter transaction, as defined by the United States' correspondence of November 8, 2006, during 1996 through 1998, other than the NUON transaction previously identified in its response to Interrogatory No. 2.

We are in receipt of your correspondence of November 15, 2006, and we will provide a detailed response to you. We have recently received additional documents from Con Edison in non-redacted form and will supplement Con Edison's responses with non-redacted documents, as appropriate.

Sincerely,

Nicole Bielawski

Nicole M. Bielawski

Enclosures:

cc: (via electronic delivery)
Thomas C. Durham
David F. Abbott
Andrew W. Scher

# EXHIBIT B-4

U.S. Departı. .t of Justice

Tax Division

Please reply to: Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, D.C. 20044

Facsimile No. (202) 307-0054
Trial Attorney: David N. Geier
Attorney's Direct Line: (202) 616-3448

EJO'C:DG:SF:DNGeier
154-2457
CMN 2006103503

December 12, 2006

**Also via Facsimile (312) 706-9187**

Thomas C. Durham, Esquire
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606

Re: Consolidated Edison Company of New York, Inc. & Subsidiaries v. United States
Fed. Cl. No. 06-305 T

Dear Mr. Durham:

I am writing in furtherance of our effort to resolve certain outstanding issues arising from Plaintiff's responses to written discovery which remain prior to seeking assistance from the Court. Despite the exchange of correspondence, your most recent response,

**Interrogatories**

*(i) Interrogatory No. 1 - identify individuals with knowledge*

In the final paragraph of Plaintiff's response to Interrogatory No. 1 Plaintiff indicates that the individuals listed in our letter of October 13, 2006 constitutes a list of the individuals that Plaintiff would expect to have information pertaining to the RoCa3 shelter transaction, but then declines to provide any further information with respect to these individuals, citing the fact that Plaintiff does not have "complete information regarding their knowledge of the facts." Plaintiff has an obligation to respond with whatever information it may have regarding the knowledge these identified individuals may have pertaining to the facts of the RoCa3 shelter transaction. This is true whether or not such a response may be a complete recitation of all of the facts known by these individuals. Plaintiff cannot hide behind an assertion that it does not have "complete information" regarding these respective individuals' knowledge and simply refuse to provide any information.

*(ii) Interrogatory No. 2 - listed transactions*

With respect to Plaintiff's response to Interrogatory No. 2, following our voluntary narrowing of the Interrogatory by provision of specific listed transactions, you first indicated in your November

13, 2006 correspondence that you anticipated Plaintiff would supplement its response to indicate that Plaintiff did not enter into or consider any such listed transactions except those already identified in response to Interrogatory No. 2. However, by your November 17, 2006 correspondence, Plaintiff supplemented its response to indicate that Plaintiff did not enter into any listed transactions during the years 1996 through 1998, and that Plaintiff could not respond as to whether any of the listed transactions were considered because it could not locate anyone that would commit to such a statement under oath. Such a position is particularly troubling given the Plaintiff's representation in the final paragraph of its response to Interrogatory No.2, that the Plaintiff's documents identify other LILO transactions considered by Plaintiff. Please let us know whether Plaintiff intends to respond to this portion of Interrogatory No. 2, or whether Plaintiff intends to rely on the statement in your November 17, 2006 correspondence as the reason for failing to respond to this portion of the interrogatory.

*(iii) Interrogatory No. 3 - pricing information*

In regards to Plaintiff's response to Interrogatory No. 3, in which the Government requested information about how the rent and option prices were negotiated, calculated and allocated, while the recent citation to PF003241-PF003246 does provide some information regarding assumptions Con Ed purportedly relied upon in submitting the "proposal" included in cited documents, it does not indicate how the specific amounts were negotiated or allocated between the parties. Because the reference to PF003241-PF003246 does not provide a sufficient response to Interrogatory No. 3, we request that Plaintiff supplement the information contained in that document to provide a complete response to this interrogatory. Finally, your recent attempt to object that the interrogatory is vague and unclear ignores the fact that no such objection was asserted in Plaintiff's initial response to the interrogatory. Your claim that we must now ask Plaintiff more specific questions concerning how the various rent obligations and option prices were negotiated, calculated, and allocated is specious at best. If Plaintiff has more specific information regarding the requested negotiations, calculations, and allocations, it is Plaintiff's obligation to provide such information where responsive to the request. For example, an oblique reference to "computer software" is insufficient to describe the negotiation process. We request that Plaintiff supplement its response to identify the specific software and to describe how the software was utilized the instant case. Please let us know whether or not Plaintiff intends to supplement its response to Interrogatory No. 3 to provide a complete response thereto.

*(iv) Interrogatory No. 12 - tax indemnity agreement*

In your December 1, 2006 correspondence, you have represented that there are no documents detailing Plaintiff's reasons for entering into the tax indemnity agreement. While Plaintiff may desire to reference documents in lieu of providing a written response, the apparent absence of a document does not alleviate Plaintiff of its obligation to answer the interrogatory. Therefore, Plaintiff must state its reasons for entering into the tax indemnity agreement.

*(v) Interrogatory No. 14 - identity of outside consultants*

In your explanation of Plaintiff's response to Interrogatory No. 14, in which we asked

Plaintiff to identify the outside consultants it communicated with to locate potential international energy infrastructure investment opportunities as it had pled in its Complaint, it appears that Plaintiff has improperly and unilaterally limited its response to identifying only what it deems to be "key" advisors for the RoCa3 shelter transaction, namely Cornerstone Financial Advisors, LP. Further, Plaintiff has indicated that all "relevant" documents relating to that advisory relationship have been produced. This explanation indicates that Plaintiff has failed to identify "all" advisors and consultants with respect to potential international energy infrastructure investment opportunities, including all advisors consulted with respect to the RoCa3 shelter transaction. The stated objections of relevance and immateriality are particularly inappropriate in response to this interrogatory given the allegations in Plaintiff's Complaint. Further, because the "over breadth" objection, which we do not believe to be applicable in any event, only relates to the production of documents, Plaintiff has not articulated a valid objection to the identification of the requested consultants and advisors. Therefore, we request that Plaintiff immediately supplement its response to identify all such consultants and to identify and produce <u>all</u> responsive documents, not simply those Plaintiff and its counsel deems relevant.

*(vi) Interrogatory No. 15 - communications re Lease Transaction*

Plaintiff's response to Interrogatory No. 15, in which the Government requested that Plaintiff identify all individuals and entities, including employees, board members and third parties, that it communicated with about the Lease Transaction prior to entering the transaction, including the contents of such communications, is also troubling. Plaintiff takes a position directly contrary to the law by asserting that Plaintiff cannot be required to ask its own employees for responsive information. In fact, Rule 33 requires that Plaintiff conduct an investigation, and inquire of the employees and representatives likely to have relevant information in order to respond to the interrogatory. Plaintiff's objection that a response would improperly require it to depose its own employees to ascertain the requested information has no basis in the law. Further, a review of pertinent documents previously produced by Plaintiff indicates that the number of Plaintiff's employees that purportedly participated in the RoCa3 shelter transaction is not so great a number that inquiring of them would be burdensome, much less unduly burdensome.

Further, to the extent that Plaintiff's response relies on documents produced in discovery, such reliance is faulty for several reasons. First, the reliance ignores that oral communications as well as written communications have been requested. Second, the document production is far from complete given that the United States is aware of addit ional documents responsive to this interrogatory that have yet to be produced by Plaintiff. For example the United States is aware of several emails between officers and directors of Con Ed discussing or referring to the Roca3 transaction which have not been produced or identified by Plaintiff.

In addition, your December 1, 2006 correspondence purports to belatedly assert an attorney-client privilege when heretofore none had been timely or properly raised. Failure to raise the privilege constitutes a waiver.

As a final note, while I am sure you are aware the scope of discoverable information goes well beyond the simple notions of relevancy, Plaintiff's continued insistence to claim that much of

the information sought from Plaintiff is not relevant to the tax treatment of the RoCa3 shelter transaction is misplaced. For example, Plaintiff ignores the fact that it made numerous allegations in its Complaint pertaining to the purpose of the RoCa3 transaction as it related to Con Ed's purported overall business plan, thus entitling the United States to discover information pertaining to Con Ed's participation and consideration of other transactions. Further, the "routine business communications" of Con Ed employees regarding the RoCa3 shelter transaction are highly relevant to Con Ed's subjective view of the transaction, an important consideration in the instant matter. Therefore, Plaintiff's continued insistence to rely on relevancy objections lacks a valid basis here where the requested information goes directly to the allegations in the Complaint and the elements of the claims at issue.

**Privilege Log**

Several issues remain with respect to the updated privilege log and the documents produced in conjunction with your December 1, 2006 correspondence. First, while you stated in your correspondence of November 17, 2006 and again on December 1, 2006, that Plaintiff will produce non-redacted copies of documents not included on the privilege log, we have not yet received any such production and there has been no indication when we can expect to receive additional documents. Because you did not assert a privilege pertaining to any of these documents originally, I see no reason for the delay in producing the unredacted documents.

In light of your explanation of the substance of the communications contained in the November 20, 1997 memo found at PF005618-19 and CE004704-05, even if a privilege were applicable, that privilege has been waived by production of other documents to the United States regarding the "anticipated substance" of the legal advice of Shearman & Sterling. Similarly, to the extent any of the other identified documents contain or discuss the advice of Shearman & Sterling, it appears that any privilege that may have applied to those documents has been waived by the production of documents actually containing or referring to such advice.

In addition, to the extent that you are asserting a work product to shield documents from production, please state the basis for that assertion, including a specific identification of the basis for your claim that these documents were prepared "in anticipation of litigation," as you have claimed with respect to the draft legal opinion of Shearman & Sterling produced in discovery.

Please confirm whether or not Plaintiff is withdrawing its claim of privilege with respect to Interrogatory No. 12.

**Rule 26(a) Disclosures**

You have represented for some time that Plaintiff intends to further supplement its Rule 26(a) disclosures. If this is still your intention, and given the press of deadlines, please let us know if you will be making any additional disclosures, and if so, when.

ls

We would appreciate a prompt response to the issues raised herein.

Sincerely yours,

DAVID N. GEIER
Trial Attorney, Tax Division

Enclosure

cc: Carmen Baerga, Esq.

# EXHIBIT B-5

MAYER BROWN ROWE & MAW

December 21, 2006

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**Thomas C. Durham**
Direct Tel (312) 701-7216
Direct Fax (312) 706-9187
tdurham@mayerbrownrowe.com

VIA UPS

David N. Geier
Joseph A. Sergi
U.S. Department of Justice
Tax Division
555 Fourth Street, N.W.
Room 7919
Washington, D.C. 20001

Re: Consolidated Edison Co. v. United States,
Docket No. 06-305 T

Dear David and Joe:

This letter responds to the United States' correspondence of December 12, 2006, identifying additional concerns with respect to Con Edison's responses to the United States' First Set of Interrogatories and First Request for Production of Documents. This letter follows the structure of the United States' correspondence.

As explained in this letter, Con Edison has complied with its discovery obligations, and the United States' allegations to the contrary lack merit. Con Edison submits that the United States' current tactic of demanding on-going follow-up to its Interrogatories based upon overly broad interpretations of such Interrogatories is not effective. It would be more useful for both parties if the United States served directed Interrogatories.

Con Edison, as it has repeatedly stated, fully intends to satisfy its discovery obligations under the Rules of the Court of Federal Claims ("RCFC"). Con Edison, although it does not believe its responses are deficient, will provide additional information in an effort to address the United States' concerns.

**Interrogatories**

*(i) Interrogatory No. 1: Individuals with Knowledge*

The United States mischaracterizes Con Edison's response to Interrogatory No. 1. In its response to Interrogatory No. 1, Con Edison identified individuals who Con Edison believes may have discoverable information regarding the Lease Transaction, including nine current and

former employees of Con Edison and sixteen additional individuals associated with unrelated entities which were retained by Con Edison as advisors. Con Edison further described the nature of each individual's involvement in the Lease Transaction and the general substance of the facts Con Edison believes to be known by each. Con Edison's response to Interrogatory No. 1 is six pages in length.

In the last paragraph of its response to Interrogatory No. 1, Con Edison stated, in regards to Defendant's letter of October 13, 2006, "[w]e expect that the persons named in the letter *may have* information regarding their respective institution's role in the Lease Transaction...." (emphasis added). Contrary to the United States' allegation, Con Edison has not "decline[d] to provide any further information."

Con Edison has produced extensive documentation regarding the Lease Transaction. Many of the individuals identified in the Defendant's letter of October 13, 2006, are referenced in these documents. Pursuant to RCFC 33(d), it is acceptable for Con Edison to produce business records in response to an interrogatory. The burden of culling through these documents and summarizing the information that *may* be known by individuals identified would be "substantially the same" for Con Edison as it would be for the United States.

Con Edison initiated a telephone conference yesterday afternoon in an attempt to discuss some of the concerns raised in the parties' correspondence and work towards the resolution of such concerns. During the conference, counsel for the United States clarified their expectations with respect to Interrogatory No. 1. In particular, Joe Sergi articulated the United States' position that Con Edison has an obligation to summarize information contained in the business records produced. Con Edison does not agree with this position, but in an effort to assist the United States, Con Edison will supplement its response to Interrogatory No. 1 to provide such information.

Finally, Con Edison notes that in the United States' Rule 26(a) Disclosures, the United States identified all "individuals identified in the documents produced herewith" as individuals it may use to support its claims or defenses. The United States, despite our requests, has not provided any further information concerning these individuals it has indicated an intent to rely upon or the subject matter of the information possessed by them. Since the United States has identified these individuals as persons upon whom it intends to rely, we would expect the United States to describe the subject matter of their information, which it has not done. Con Edison, in contrast, has supplied information concerning the "subjects of the information" possessed by those individuals it intends to rely upon. Thus, Con Edison has been considerably more forthcoming than the United States in this regard.

*(ii) Interrogatory No. 2: Listed Transactions*

Con Edison, after further discussions with Con Edison employees, supplemented its response to Interrogatory No. 2 on December 13, 2006.

*(iii) Interrogatory No. 3: Pricing Information*

Con Edison's initial response to Interrogatory No. 3 was adequate. The fact that the United States may have follow-up questions as a result of that response does not indicate that Con Edison's response was deficient. Con Edison provided a supplemental response to Interrogatory No. 3, which the United States admits was helpful.

Con Edison's objection to Interrogatory No. 3 as vague and unclear was based upon the United States' attempt to expand the scope of the Interrogatory in its correspondence of November 8, 2006, thereby causing the Interrogatory to become vague and unclear.

As explained previously, Con Edison and South Holland Electric negotiated the rent and option prices in order to maximize their respective economic returns from the transaction, should the option be exercised. Also, as explained previously, the rental amounts were allocated in accordance with section 467 of the Internal Revenue Code for tax purposes. Rental amounts were calculated by reference to the fair market rental value of the property. As explained in the supplemental information provided, which the United States agreed was helpful, the parties' negotiations on these points were constrained by factors such as the fair market value of the property and its useful life. If, by its request, the United States intended a different meaning for "negotiated," "calculated," and "allocated" other than the meanings of those words as we understand them, Con Edison requests that the United States clarify its request.

In response to the United States' follow-up question in its correspondence of December 12, 2006, the computer program used was called "ABC." This computer program is identified on the top of each of the pricing runs which Con Edison previously produced. The program was created by Warren & Selbert, Incorporated. *See* www.warren-selbert.com. Robert Holzman, identified in Con Edison's First Supplement to its Rule 26(a) Disclosures, ran this software program on behalf of Con Edison. Con Edison has already provided information on "how" the software was used. The ABC program is standard software which is widely used in the leasing industry in order to perform the calculations required in connection with leasing transactions. As previously indicated, one of the functions of this software is to calculate rental amounts in a manner which will optimize the economic returns to each party. It is also capable of performing the calculations required by section 467 in order to ensure compliance with those provisions.

*(iv) Interrogatory No. 12: Tax Indemnity Agreement*

Tax indemnity agreements are commonly used in leveraged leasing transactions. Since such agreements are normally used in leveraged leasing transactions, both parties (through their counsel) would likely have expected the closing documents to include a tax indemnity agreement. The Tax Indemnity Agreement is a contract between two unrelated, adverse parties. As is the case with all contracts, the purpose of the contract is to set forth the terms of the parties' agreement with respect to the matters described in the contract. Thus, the "reasons for entering the agreement" can best be understood by examining the terms of the Agreement. The Agreement is a thirty-page document. Since Con Edison has produced a copy of the Tax Indemnity Agreement, and the burden of summarizing the terms of this agreement would be "substantially the same" for Con Edison as it would be for the United States, Con Edison has provided a complete response to this Interrogatory. *See* RCFC 33(d).

*(v) Interrogatory No. 14: Identify Outside Consultants*

The United States' claim that Con Edison has failed to identify "all advisors consulted with respect to the RoCa3" transaction is not correct. Con Edison wishes to make clear that it has identified *all* of its consultants with respect to the RoCa3 investment. Furthermore, in response to Interrogatory No. 7, Con Edison has provided all non-privileged correspondence with such consultants in its possession regarding the due diligence review of the transaction.

In response to Interrogatory No. 14, Con Edison identified Cornerstone as "the outside consultant" who helped Con Edison "locate" the RoCa3 investment. Con Edison did not retain any other consultants with respect to locating the RoCa3 investment. Cornerstone also located the other leasing investments identified in response to Interrogatory No. 2. No other consultants were retained in the process of locating those investments.

As for non-leasing investments, Con Edison previously identified International Energy Partners as an outside consultant which helped to locate infrastructure investments. International Energy Partners was responsible for locating the Genor investment, which was Con Edison Development's first non-leasing infrastructure investment. We have previously provided you with extensive material regarding International Energy Partners. *See* PF004426-44. This material identified potential infrastructure investments, including the Genor project, and described the merits of those projects.

In addition, Con Edison has provided extensive information regarding its plans for other non-leasing investments. This material includes, but is not limited to:

- all Minutes of Board of Trustee meetings in 1996 through 1998, *see*, *e.g.*, PF005950-53;

- extensive and detailed business plans, highlighting potential investments, *see, e.g.*, PF6438-89;

- reports to the Board of Trustees and other status reports, *see, e.g.*, PF6295-300; and

- numerous presentations to the Board of Trustees, *see, e.g.*, PF4223-43.

Two other early infrastructure investments highlighted in these materials were the Ada and Carson projects. *See, e.g.*, PF6295-300. Both of these investments were located by Delta Power Company, LLC.

In view of the extensive information provided, the United States' claim that Con Edison has not provided responsive information is clearly incorrect.

Con Edison continues to believe that Interrogatory No. 14 is overbroad. Con Edison is—to state the obvious—an energy company. Its entire business involves investment in energy infrastructure, and thus Interrogatory No. 14 in effect requests information regarding virtually all of Con Edison's business operations over an unlimited time span. The United States has not narrowed the Interrogatory either by reference to a specific time span or a specific entity, such as Consolidated Edison Development. In response to this overbroad interrogatory, Con Edison has provided, as described above, extensive information regarding the other infrastructure investments considered by Con Edison Development. As described in its Complaint, this material provides information regarding Con Edison's plans to operate in a deregulated environment.

Con Edison is willing to work with the United States in order to narrow the scope of Interrogatory No. 14. Absent the United States' cooperation in this matter, however, it is difficult for Con Edison to know how to proceed, as the United States' request that Con Edison provide all material regarding all infrastructure investments over an unlimited time span is clearly overbroad.

Con Edison would like to avoid the United States' current practice (*see, e.g.*, Interrogatory Nos. 2, 3, and 14) of serving Interrogatories which are overbroad or which the United States interprets in an overbroad manner and then unfairly alleging a lack of cooperation by Con Edison. Con Edison, as it has repeatedly stated, is committed to complying with its discovery obligations. Con Edison believes, however, that this process would be aided if the United States asked more specific questions.

(vi) *Interrogatory No. 15: Communications regarding Lease Transactions*

Con Edison, as permitted under RCFC 33(d), provided business records which set forth the communications of its current and former employees regarding the Lease Transaction. These documents provide extensive detail regarding Con Edison's review of the Lease Transaction. We have communicated with Con Edison's employees and they have confirmed to us that the documents previously provided set forth the substance of the communications of Con Edison with regard to the Lease Transaction. In response to Interrogatory No. 15, Con Edison has provided all responsive non-privileged documents in its possession. These documents identify the individuals who were parties to the communications regarding the Lease Transaction.

The United States indicates that it is aware of additional documents responsive to Interrogatory No. 15 that have not been produced. Con Edison requests that the United States provide copies of such documents so that Con Edison can evaluate the matter.

The United States clarified its interpretation of Interrogatory No. 15 in yesterday afternoon's telephone conference. Specifically, the United States informed Con Edison that it interprets Interrogatory No. 15 as calling for a written response summarizing communications, regardless of whether such communications are included in the documents produced. Con Edison does not agree with the United States' interpretation or the validity of that interpretation under the RCFC, but will supplement its response to provide such information in the spirit of cooperation.

Con Edison, in its General Objection No. 1, objected to all Interrogatories to "the extent that the Interrogatories call for the disclosure of information that is subject to any claim of privilege or protection or that was prepared in anticipation of litigation. This includes without limitation, the attorney-client privilege or the work product protection." Thus, Con Edison reserved its right to object to any Interrogatory on the basis of attorney-client privilege.

Finally, Con Edison wishes to emphasize that it has not withheld any responsive, non-privileged information in its possession with respect to Interrogatory No. 15.

**<u>Privilege Log</u>**

Con Edison believes it has produced unredacted copies of all responsive documents currently in its possession. It would be helpful if the United States could specifically identify any redacted document which it believes should have, but has not been, produced in unredacted form.

Con Edison disagrees with the United States' position regarding a waiver of the attorney-client privilege for the reasons set forth in our correspondence of December 1, 14, and 21, 2006, and does not intend to produce further documents protected by either the attorney-client privilege

or work product protection at this time. The United States has not explained why it disagrees with the legal analysis and authorities set forth in Con Edison's correspondence of December 1 and 14, 2006, or cited any legal authority to the contrary. In order for the parties to engage in a meaningful dialogue regarding the alleged waiver, it would be helpful for the United States to explain its legal analysis and identify the legal authority upon which it is relying.

Con Edison, although not waiving any objection to the United States' Interrogatories on the basis of privilege, states that it has not withheld any information in response to Interrogatory No. 12 on the basis of privilege.

**Rule 26(a) Disclosures**

Con Edison supplemented its Rule 26(a) Disclosures on November 17, 2006 and on December 13, 2006. Both supplementations have been timely. Con Edison will continue to supplement its responses as necessary.

The United States' response to Plaintiff's Interrogatory No. 1 indicates that the United States plans to contend that the transactions at issue were part of a pattern in which so-called "promoters" "sold" LILO transactions to "large corporations." In view of the United States' claims in this regard, Con Edison believes it is necessary to produce additional evidence which indicates that the United States government, through the Federal Transit Administration, played a crucial role in "promoting," reviewing, and approving LILO transactions. Con Edison, as a result of the United States' claims in this regard, will further supplement its Rule 26(a) Disclosures with material substantiating the Unites States' role in this regard. Furthermore, Con Edison will serve additional discovery with respect to this point. Depending upon the level of the United States' compliance with respect to the discovery requests, Con Edison may be required to identify additional witnesses who have knowledge of the United States' extensive role in promoting LILO transactions.

* * *

Con Edison has fully complied with its discovery obligations. The United States' allegations to the contrary are unsubstantiated and unwarranted and do not serve both parties' mutual interest in furthering the discovery process. Con Edison has, in no way, limited the United States' ability to conduct full and complete discovery in this matter.

Many of the United States' criticisms of Con Edison's discovery responses may relate to the United States' pre-conceived notion that a "promoter" "sold" the EZH transaction to Con Edison. *See* United States' response to Con Edison's Interrogatory No. 1. Con Edison is not aware of any information which would support this claim. It is not Con Edison's responsibility if the facts do not conform to the United States' pre-conceived notions.

Mayer, Brown, Rowe & Maw LLP



Notwithstanding the United States' repeated correspondence to Con Edison, the United States has failed to respond to the Con Edison's correspondence of November 21, 2006 regarding a timeline for the exchange of expert witness reports, expert witness rebuttal reports. and expert witness depositions. Con Edison would appreciate it if the United States would respond to the issues raised in this correspondence at its earliest opportunity.

Sincerely,

Tom Durham

Thomas C. Durham
Nicole M. Bielawski

cc: A. Scher
Con Edison

# EXHIBIT B-6

MAYER
BROWN
ROWE
& MAW

Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**Thomas C. Durham**
Direct Tel (312) 701-7216
Direct Fax (312) 706-9187
tdurham@mayerbrownrowe.com

February 16, 2007

VIA UPS

David N. Geier
Joseph A. Sergi
U.S. Department of Justice
Tax Division, Room 7919
555 Fourth Street, N.W.
Washington, D.C. 20001

Re: Consolidated Edison Co. v. United States, Docket No. 06-305 T

Dear Dave and Joe:

In anticipation of the requested Rule 30(b)(6) deposition, we are enclosing additional items which provide information with respect to the topics outlined in the Rule 30(b)(6) subpoena. We have also located additional items with respect to the proposed MEGA transaction. Pursuant to Rule 26(a), Con Edison may rely on these materials to support its claims and/or defenses.

Very truly yours,

Tom Durham/sb

Thomas C. Durham

TCD:sjb
Enclosures