**No. 06-305 T**
**(Judge Marian Blank Horn)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**CONSOLIDATED EDISON COMPANY**
**OF NEW YORK, INC. & SUBSIDIARIES**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

---

**DEFENDANT'S MOTION FOR ISSUANCE OF LETTERS OF REQUEST**

---

Pursuant to Rule 28(b) of the Rules of the United States Court of Federal Claims Court (RCFC), the defendant, the United States, hereby moves for the issuance of Letters of Request. This motion is made in accordance with the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters. Three proposed Letters of Request, each directed to competent authorities in the Netherlands, England and Germany, are annexed hereto as Exhibits 1, 2, and 3, respectively.

In support of its Motion for Issuance of Letters of Request, the United States states as follows:

## Overview

In this case, Consolidated Edison Company of New York, Inc. & Subsidiaries' ("Con Ed") participated in a lease-in/lease-out ("LILO") shelter transaction involving a power station (the "RoCa3" facility owned by South Holland Electric (N.V. Electriciteitsbedrifj Zuid-Holland) (hereinafter "EZH")) located in the Netherlands. Con Ed, a United States taxpayer, through a subsidiary, purported to lease property from its owner, EZH, under a head lease and simultaneously purported to lease the property back to EZH under a sublease. This case involves the proper tax treatment to be accorded Con Ed's LILO shelter transaction. The specific substantive issue raised in this refund suit is whether Con Ed is entitled to deductions for rent, interest, and transaction costs its asserts were incurred in 1997 in connection with this transaction.

Because the counter-party to the LILO shelter, as well as third party consultants and banks involved are located in foreign countries, the United States has requested the assistance of this Court to obtain discovery from foreign entities.

## The Transaction

Con Ed, a United States taxpayer, through a subsidiary, purported to lease property from its owner, EZH, under a head lease and simultaneously purported to lease the property back to EZH under a sublease. As is typical in a LILO transaction, the counter-party, EZH, is a foreign entity that pays no taxes in the United States. EZH is unable to claim federal income tax benefits, like depreciation, associated with its ownership of the RoCa3 facility. Immediately after the transaction was entered into, and continuing to date, EZH or its successors (including E.On Benelux Generation N.V., a subsidiary of E.On Energie A.G.) have continued to operate the facility and have retained

all of the benefits and burdens associated with its use and ownership. For its part, Con Ed claimed rent and interest deductions associated with the purported head lease.

According to the LILO documents provided by Con Ed, (1) a foreign bank, Hollandsche Bank-Unie N.V. ("HBU") purported to make a non-recourse loan to Con Ed to finance the head lease payments, (2) EZH's sublease rent payments are essentially identical in timing and amount to Con Ed's loan payments, (3) the loan proceeds were not paid to EZH but rather were held by ABN AMRO Bank N.V. ("ABN AMRO"), the parent bank of HBU, and used to satisfy the identical owner rent payments from EZH and Con Ed's purported loan repayments to HBU. Further, other financial entities, such as Credit Suisse Financial Products, Credit Suisse First Boston (collectively "Credit Suisse") and Bayerische Landesbank A.G., were also involved in the financing aspects of the LILO shelter. The circular financing arrangement among Con Ed, EZH and the foreign banks virtually ensured that (1) neither Con Ed nor EZH will need to use their own funds to satisfy their respective obligations under the operative documents (save for the fees and other costs paid by the taxpayer in connection with the transaction); and (2) EZH will retain dominion and control over the subject property.

It is the Government's position that the tax deductions and losses claimed by Con Ed in connection with the LILO shelter transaction are improper and that Con Ed will not be able to prove it is entitled to a refund because:

- Con Ed did not acquire a genuine leasehold interest in property in 1997 when it participated in the LILO;
- Con Ed did not incur a genuine debt obligation in connection with the LILO;
- The LILO tax shelter transaction and components thereof lacked economic substance and/or constitute a sham;

- The tax deductions fail when the step transaction doctrine is applied and the steps which comprise the tax shelter are collapsed and then viewed as a single transaction;

- Con Ed is not entitled to an interest expense deduction with respect to its "non-recourse loan," because such loan does not result in a use of the loan proceeds by Con Ed nor does it constitute a true forbearance by the lender; and

- The LILO shelter here at issue creates, at most, a contingent future leasehold interest not entitling Con Ed to any present deductions on account thereof.

In short, other than the execution of paper and the payment of fees, nothing happens.

The Letters of Request

Given the structure of the transaction described herein, much discoverable information is held by entities found outside the United States. The Letters of Request (Exhibits 1-3) each request that certain foreign entities involved in Con Ed's LILO transaction, or their respective successors and assigns, appear for oral examination and produce documents for inspection and copying, in the country where they are located.

The Letter of Request addressed to the competent authority in the Netherlands (Exhibit 1) requests the authority in the Netherlands to summon representatives of E.On Benelux Generation N.V. (formerly EZH) (hereinafter "EZH"); Tauw N.V. (formerly Tauw Milieu B.V.) (hereinafter "Tauw"); HBU; ABN AMRO; Credit Suisse First Boston (Nederland) N.V. and Ernst & Young (formerly Moret, Ernst & Young). EZH is a counter-party to the Plaintiff's LILO transaction. Tauw is an environmental consultant retained by the Plaintiff to effectuate the LILO transaction. HBU and ABN AMRO are commercial banks who purportedly provided the financing for the transaction and hold the funds for making the purported payments under the transaction. Moret Ernst & Young was the accountant for EZH at the time of the LILO transaction.

The Letter of Request addressed to the competent authority in England (Exhibit 2) requests the English authority to request documents from Credit Suisse and Standard & Poor's. Credit Suisse is a financial company that provided advice on interest rates and secured credit strips in conjunction with the transaction. Standard & Poor's is an entity retained by or on behalf of Con Ed to provide credit information on EZH.

The Letter of Request addressed to the competent authority in Munich, Germany (Exhibit 3)[1] requests the German authority to request documents from representatives of Bayerische Landesbank A.G. ("BL") and E.ON Energie A.G. ("E.ON"). BL is a financial institution headquartered in Germany that issued a Letter of Credit in connection with the transaction. E.ON is a German energy company that acquired EZH as a subsidiary subsequent to the instant LILO transaction.

<u>The Need for Foreign Discovery</u>

One of the issues in this case is whether Con Ed can meet its burden to establish that its LILO shelter transaction has economic substance. Under the economic substance doctrine, transactions that are invented solely to create tax deductions and otherwise have no economic substance, even though formally complying with the letter of the Internal Revenue Code, will not be recognized. *Knetsch v. United States*, 364 U.S. 361 (1960); *see also BB&T Corporation v. United States*, No. 1:04-cv-00941, 2007 WL 37798, at *11-*12 (M.D.N.C. Jan. 1, 2007) (slip opinion) (a copy of which is attached hereto as Exhibit 1). That is "whether the transaction had any practicable economic effect other than the creation of income tax losses." *Rose v. Commissioner*,

[1] Pursuant to the German reservations to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, the United States has had the version of the Letter of Request addressed to the competent authority in Germany translated into German, and has submitted it in conjunction with the version written in English.

868 F.2d 851, 853 (6th Cir. 1989). The first prong of this test requires an analysis as to whether the transaction had economic substance beyond the generation of tax benefits. *Coltec Industries, Inc. v. United States*, 454 F.3d 1340, 1356 (Fed. Cir. 2006). This determination is exclusively an objective analysis. *Id.* The second prong looks to whether the taxpayer possessed a non-tax business purpose in entering the transaction, which is a subjective analysis. *Sochin v. Commissioner*, 843 F.2d 351, 354 (9th Cir.), *cert. denied*, 488 U.S. 824 (1988); *accord*, *ACM Partnership v. Commissioner*, 157 F.3d 231, 248 (3d Cir. 1998), *cert. denied*, 526 U.S. 1017 (1999); *Muhich v. Commissioner*, 238 F.3d 860, 864 (7th Cir. 2001); *Transpac Drilling Venture, 1983-2 by Dobbins v. United States*, 32 Fed. Cl. 810, 820 (1995); *American Elec. Power. Co., Inc. v. United States*, 326 F.3d 737, 741 (6th Cir. 2003).

The information sought by the United States through the issuance of Letters of Request is needed to make the determinations discussed above. Specifically, the United States seeks (1) documents and information held by EZH and its successors in interest, the foreign owner of the RoCa3 facility, pertaining to the LILO transaction and its actual structure; (2) documents and information held by advisors and accountants for EZH; (3) pre-closing due diligence purportedly performed by foreign entities for the purpose of the LILO transaction; and (4) the information held by the foreign financial entities involved in the LILO transaction as it relates to the financial arrangement incorporated into the present LILO. Such information is necessary to properly prepare a defense to the claims asserted by plaintiff.

The United States has attempted to obtain information sought in the Letters of Request from plaintiff, through the issuance of document requests and interrogatories. However, plaintiff has taken the position that (1) it cannot produce information held by unrelated third parties to the LILO

transaction such as those identified in the Letters of Request, (2) that plaintiff cannot know what responsive information or knowledge concerning the transaction other parties to the LILO transaction may possess, and (3) that these third parties may have discoverable information pertaining to the claims asserted in the instant matter. (*See, e.g.*, Plaintiff's Inter. Resp. Nos. 1 and 2, and supplemental Inter. Resp. Nos 1 and 2, attached hereto as Exhibits 5 and 6 respectively.) Further, these third parties may have retained information or generated relevant information that is or was unavailable to Con Ed. Therefore, it is necessary for the United States to seek such information directly from those parties.

Further, there is a substantial risk that the foreign documents will not otherwise be available at the trial of this case absent the letters of request sought in this motion. Because the documents of the foreign entities that are the subject of this motion are located in the Netherlands, Germany, and the United Kingdom, the foreign entities may contend that the documents are not subject to a subpoena issued by this Court under RCFC 45. Indeed, Defendant has issued subpoenas to the United States branches of several of the entities from whom information is sought, and the entities have taken the position that the United States must seek a letter of request to obtain the information from their foreign counterparts. Thus, to ensure that the United States can obtain the documents from the entities identified in the Letters of Request, the United States is following the procedure authorized under RCFC Rule 28(b)(1), in accordance with the Hague Evidence Convention, and respectfully requests that the Court issue the attached Letters of Request.

The Netherlands, Germany, the United Kingdom and the United States are signatories to the Hague Evidence Convention. The submission of Letters of Request would minimize intrusion into the laws of the respective countries, while promoting comity and the search for facts.

Under the Hague Evidence Convention, this Court may submit a letter of request to the respective authorities of the Netherlands, Germany, and the United Kingdom. Defendant requests that after this Court has executed the respective Letters of Request, the Letters of Request be transmitted to defendant's trial attorney who will make application directly to the appropriate authority in the respective countries. The United States believes that using this procedure will reduce the time required to obtain the foreign documents.

The United States will be responsible for all fees and costs associated with execution of the attached Letters of Request and production of the requested documents.

Respectfully submitted,

s/ David N. Geier
DAVID N. GEIER
Attorney of Record
U.S. Department of Justice, Tax Division
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3448
Facsimile: (202) 307-0054

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section
JOSEPH A. SERGI
JAMES E. WEAVER
ADAM R. SMART
Trial Attorneys

s/ Steven I. Frahm
Of Counsel

April 6, 2007