# EXHIBIT A-5

EXECUTION COPY

# LEASE AGREEMENT

(ROCA FACILITY TRUST NO. 2)

dated as of December 15, 1997

Between

N.V. ELECTRICITEITSBEDRIJF ZUID-HOLLAND

as Lessor,

and

WILMINGTON TRUST COMPANY,

not in its individual capacity,
except as otherwise expressly provided herein,
but solely as Trustee,

as Lessee

0000HYVC.W51

TABLE OF CONTENTS


| | | | Page |
|---|---|---|---|
| Section 1. | | Definitions; References | 2 |
| | (a) | Definitions | 2 |
| | (b) | References | 2 |
| | (c) | Headings | 2 |
| | (d) | Appendices, Schedules and Exhibits | 2 |
| Section 2. | | Lease of Undivided Interest; Delivery and Acceptance | 2 |
| Section 3. | | Term and Rent | 2 |
| | (a) | Lease Term | 2 |
| | (b) | Lease Basic Rent | 2 |
| | (c) | Lease Supplemental Rent | 3 |
| | (d) | Payments of Lease Rent | 3 |
| | (e) | Security for Unpaid Lease Rent | 3 |
| | (f) | Substitution of Lease Collateral | 6 |
| | (g) | Permitted Investments | 7 |
| | (h) | Withholding Taxes | 8 |
| | (i) | [Reserved] | 8 |
| Section 4. | | Disclaimer; Warranties; Quiet Enjoyment. | 8 |
| | (a) | Disclaimer | 8 |
| | (b) | Warranties | 9 |
| | (c) | Quiet Enjoyment | 9 |
| | (d) | Power of Attorney | 9 |
| Section 5. | | Return of Undivided Interest | 10 |
| Section 6. | | Liens | 10 |
| Section 7. | | Lessee Maintenance Obligations; Possession; Subleasing | 10 |
| | (a) | Lessee Maintenance Obligations | 10 |
| | (b) | Lessor Maintenance Obligations | 11 |
| | (c) | [Reserved] | 11 |
| | (d) | [Reserved] | 11 |
| | (e) | Operation and Use; Possession and Subleasing | 11 |
| Section 8. | | Modifications | 11 |
| Section 9. | | [Reserved] | 12 |

Page


| | | | |
|---|---|---|---|
| Section 10. | | [Reserved] | 12 |
| Section 11. | | Insurance. | 12 |
| Section 12. | | Inspection | 12 |
| Section 13. | | Assignment, Etc. | 13 |
| Section 14. | | Events of Default | 13 |
| | (a) | Lessor Events of Default | 13 |
| | (b) | Lessee Events of Default | 16 |
| Section 15. | | Sublessor's Lease Interest Transfer, Etc | 18 |
| Section 16. | | Further Assurances | 19 |
| Section 17. | | Notices | 19 |
| Section 18. | | Absolute Obligation To Pay Lease Rent | 19 |
| Section 19. | | True Lease, Etc | 20 |
| Section 20. | | Security for Lessee's Obligation to Lender | 20 |
| Section 21. | | Concerning Trustee | 21 |
| Section 22. | | Covenants of Lessee | 21 |
| Section 23. | | Severability | 22 |
| Section 24. | | Miscellaneous | 22 |
| | (a) | Deemed Compliance. | 22 |
| | (b) | [Reserved] | 22 |
| | (c) | Counterparts. | 22 |
| | (d) | Amendments and Waivers | 23 |
| | (e) | CHOICE OF LAW | 23 |
| Section 25. | | End of Sublease; Lessee Purchase Option | 23 |
| | (a) | End of Sublease. | 23 |
| | (b) | Lessee Purchase Option. | 23 |


0000HYVC.W51

Page

Section 26. Assumption by Sublessee of Lease Rent . . . . . . . . . . . . . . . . 24

Section 27. Registered Instrument . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Exhibit A - Lease Basic Rent
Exhibit B - Excluded Portion Amounts
Exhibit C - Lease Collateral Deposit and Payment Amounts
Exhibit D - Settlement Amounts
Exhibit E - Operations Maintenance Program

Appendix A - Form of Lease Certificate of Acceptance

LEASE AGREEMENT
(ROCA FACILITY TRUST NO. 2)

This LEASE AGREEMENT, dated as of December 15, 1997 (as from time to time amended, restated, supplemented or otherwise modified, this "Lease" or this "Agreement"), between N.V. ELECTRICITEITSBEDRIJF ZUID-HOLLAND, a public limited liability company organized under the laws of The Netherlands, as lessor (together with its successors and permitted assigns, the "Lessor"), and WILMINGTON TRUST COMPANY, a Delaware banking corporation, not in its individual capacity but solely as Trustee under the Trust Agreement, as lessee (together with its successors and permitted assigns, the "Lessee");

W I T N E S S E T H:

WHEREAS, prior to the execution and delivery hereof, the Investor and the Bank entered into the Trust Agreement whereby the Bank is to acquire and hold the Trust Estate for the benefit of the Investor;

WHEREAS, concurrently herewith, EZH, the Investor, the Trustee, the Bank and the Lender are entering into the Participation Agreement, dated as of the date hereof (as from time to time amended, restated, supplemented or otherwise modified, the "Participation Agreement"); and

WHEREAS, the Lessor desires to undertake herein to lease to the Lessee, and the Lessee desires to undertake herein to lease from the Lessor, the Undivided Interest, as more fully hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual agreements herein contained, and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

Section 1. Definitions; References.

(a) Definitions. Capitalized terms used herein shall, unless defined herein, have the respective meanings set forth in Appendix A to the Participation Agreement.

(b) References. References in this Lease to sections, paragraphs, clauses, appendices, schedules and exhibits are to sections, paragraphs, clauses, appendices, schedules and exhibits in and to this Lease unless otherwise specified.

(c) Headings. The headings of the various sections, paragraphs and clauses of this Lease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

(d) Appendices, Schedules and Exhibits. Any appendices, schedules and exhibits are part of this Lease.

Section 2. Lease of Undivided Interest; Delivery and Acceptance.

The Lessor hereby agrees (subject to satisfaction or waiver of the conditions set forth in Section 5 of the Participation Agreement) to lease the Undivided Interest to the Lessee and the Lessee hereby agrees (subject to satisfaction or waiver of the conditions set forth in Section 3 of the Participation Agreement) to lease the Undivided Interest from the Lessor hereunder, commencement of the term of such lease to be evidenced by, and effective from, the execution and delivery by the Lessee of a Lease Certificate of Acceptance in the form of Appendix A.

Section 3. Term and Rent.

(a) Lease Term. The Lease Term for the leasing of the Undivided Interest shall commence on the Closing Date and shall terminate on the Lease Termination Date unless earlier terminated in accordance with the express provisions hereof.

(b) Lease Basic Rent. The Lessee and the Lessor agree to allocations of Lease Basic Rent for the Undivided Interest in respect of the Lease Term for each lease rent period, beginning with the commencement of the Lease Term, as set forth opposite such lease rent period on Exhibit A. The Lessee agrees to pay the Lessor any and all Lease Basic Rent in accordance with Section 3(d).

(c) Lease Supplemental Rent. The Lessee agrees to pay to the Lessor any and all Lease Supplemental Rent when and as the same shall become due and owing. The Lessee shall pay, as Lease Supplemental Rent, on demand, an amount equal to interest at the Overdue Rate on any part of any installment of Lease Rent not paid when due, in accordance with Section 3(d)(i) hereof, for the period until the same shall be paid in full.

(d) Payments of Lease Rent. (i) All Lease Rent shall be paid in Dollars in immediately available funds by not later than 11:00 AM, New York City time, on the due date therefor; provided, however, that, to the extent the Lease Basic Rent is payable on the Closing Date in accordance with clause (ii) below, any assignment of an account containing any portion of Lease Basic Rent by the Lessee to the Lessor or as directed by the Lessor as set forth in the Closing Funding Memorandum shall be treated as a payment of such Lease Basic Rent by the Lessee on the date of such assignment and as timely paid. Except as set forth in the preceding sentence, all Lease Rent payable to the Lessor hereunder shall be paid by the Lessee to the Lessor to an account designated by the Lessor ten (10) Business Days prior to such payment of Lease Rent becoming due, or to such other account as the Lessor shall have specified in a notice to the Lessee at least ten (10) Business Days prior to the date on which such Lease Rent shall be due. If any payment hereunder is due on a date that is not a Business Day, then payment is to be made on the next following Business Day, and the amount to be paid on such next Business Day shall be the amount that would have been payable on the date that is not a Business Day.

(ii) On the Closing Date, the Lessee shall pay an amount of Lease Basic Rent equal to the Prepayment Amount as set forth on Exhibit A. The Prepayment Amount shall be allocated as set forth on Exhibit A. All remaining Lease Basic Rent shall be paid on the Lease Termination Date in an amount equal to the sum of all allocated Lease Basic Rent minus the Prepayment Amount (the "Final Basic Rent Payment"). Such Final Basic Rent Payment shall be allocated as set forth on Exhibit A.

(e) Security for Unpaid Lease Rent. On the date (the "Collateral Date") that is the Sublease Basic Termination Date (or, if the Sublease is earlier terminated pursuant to Section 9(b) thereof, the later of (x) the Sublease Obsolescence Termination Date and (y) the Crossover Date), the Lessee shall take, or cause the Investor to take, the following actions and provide, or cause the Investor to provide, to the Lessor the following collateral as security for its obligations to pay Lease Rent:

(i) The Lessee shall cause the Investor to perform its obligations under Section 11(a)(ix) of the Participation Agreement.

(ii) The Lessee shall cause the Investor to perform its obligations under Section 11(a)(x) of the Participation Agreement with respect to the Trustee Treasury Collateral. All costs and expenses incurred in connection with the preparation, negotiation, execution and delivery of the relevant pledge agreement (including the reasonable legal fees and expenses of the Investor and

the Lessee) shall be paid by the Lessor, on an After-Tax basis to the Lessee and the Investor.

(iii) If either (i) the Collateral Date is any date other than the Sublease Basic Termination Date or (ii) the Collateral Date is the Sublease Basic Termination Date and the Sublessor elects any option other than the Sublease Renewal Option on such date, the Lessee shall, on the Collateral Date, at the request of the Lessor:

(A) enter into a custody agreement with a custodian bank selected by the Investor and acceptable to the Lessor, pursuant to which, among other things, the custodian bank will establish an account to hold on behalf of the Lessee subject to a security interest in favor of the Lessor U.S. Government Obligations or obligations of other issuers which obligations shall be rated at least Aa2 by Moody's and AA by S&P. Such custody agreement shall be in substantially the form of the Custody Agreement, with such changes as may be necessary to reflect the differing parties to the custody agreement, the different character of the pledged securities and the differing security interests created by the pledge agreement described in clause (B) below and any changes in law between the Closing Date and the Collateral Date. All costs and expenses incurred in connection with locating and retaining a custodian bank (including the reasonable legal fees and expenses of the Investor and the Lessee in connection with the preparation, negotiation, execution and delivery of the custody agreement) and establishing and maintaining an account at such bank shall be paid by the Lessor on an After-Tax basis to the Lessee and the Investor; and

(B) enter into a pledge agreement contemplating the purchase of U.S. Government Obligations or obligations of other issuers which obligations shall be rated at least Aa2 by Moody's and AA by S&P having a maturity as close as possible to, but not later than, the Lease Termination Date and having a scheduled amount payable at maturity of not less than the excess of the Final Basic Rent Payment over the sum of (a) the Maturity Amount of the Trustee Treasury Collateral, (b) the projected value as of the Lease Termination Date of the Lease Collateral Deposit and any Acceptable Substitute Collateral, and (c) the aggregate amount of the principal of and accrued interest on the Sublessee Loan scheduled to be outstanding at the Lease Termination Date, pursuant to which it shall (1) deposit such U.S. Government Obligations or other obligations, as the case may be, in the account established pursuant to

the custody agreement described in clause (A), above, and (2) grant to the Lessor a first priority security interest in such U.S. Government Obligations or other obligations, as the case may be, to secure the Lessee's obligations to pay Lease Rent (the "Incremental Collateral Pledge"). Such pledge agreement shall be in substantially the form of the Sublessee Pledge and Security Agreement, with such changes as may be necessary to reflect the differing parties to the pledge agreement, the differing character of the pledged obligations, the differing security interests created in the U.S. Government Obligations or other obligations, as the case may be, and any changes in law between the Closing Date and the Collateral Date. The Lessee shall, upon the request of the Lessor and at the Lessor's cost and expense, take all actions necessary to maintain the first priority security interest created by the pledge agreement until the earlier of (x) the time the Lessee has fulfilled its obligations with respect to Lease Rent or (y) such time as the Lessee provides to the Lessor Acceptable Substitute Collateral therefor in accordance with Section 3(f). All costs and expenses incurred in connection with the preparation, negotiation, execution and delivery of the pledge agreement (including the reasonable legal fees and expenses of the Investor and the Lessee) shall be paid by the Lessor, on an After-Tax basis to the Lessee and the Investor.

(iv) If the Collateral Date is the Sublease Basic Termination Date and the Sublessor elects the Sublease Renewal Option, the Lessee will enter into a fixed rate deposit and pledge agreement that has been arranged by the Lessor in accordance with Section 20A(a)(i) of the Sublease pursuant to which (A) the Lessee will agree to make deposits (collectively or as replaced by Acceptable Substitute Collateral, the "Lease Collateral Deposit") at the times and in the amounts set forth on Exhibit C hereto with a financial institution unrelated to the Lessor or any Affiliate thereof, selected by the Lessor, the long-term Dollar denominated senior unsecured debt obligations of which are rated at least AA by S&P and Aa2 by Moody's and is otherwise acceptable to the Lessee, (B) such financial institution will agree to accept the Lease Collateral Deposit, which deposit will accrue interest at a fixed rate (the "Actual Lease Collateral Rate"), and to make scheduled payments to the Lessee in the amounts set forth on Exhibit C hereto, as such amounts in clauses (A) and (B) are adjusted pursuant to Section 3(e) of the Sublease and (C) the Lessee will grant to the Lessor a first priority pledge of its rights against the financial institution with respect to the Lease Collateral Deposit. Such deposit and pledge agreement shall be in a form reasonably satisfactory to the Lessee, the Lessor and such financial institution as deposit taker and shall provide for the Lessee to create

in favor of the Lessor a first priority pledge of the Lessee's rights against such financial institution to the Lessee Collateral Deposit. The Lessee shall, upon the request of the Lessor and at the Lessor's cost and expense, take all actions necessary to maintain such first priority pledge until the earlier of (x) the payment in full of all Lease Rent, or (y) such time as the Lessee provides to the Lessor Acceptable Substitute Collateral therefor in accordance with Section 3(f). All costs and expenses incurred in connection with locating and retaining a financial institution to act as the deposit bank (including the reasonable legal fees and expenses of the Investor and the Lessee in connection with the preparation, negotiation, execution and delivery of the deposit and pledge agreement and legal opinions in respect of enforceability thereof) and establishing and maintaining an account at such bank shall be paid by the Lessor, on an After-Tax basis to the Lessee and the Investor (the collateral described in clauses (e)(ii), (e)(iii) and (e)(iv) of this Section 3 or, if applicable, any Acceptable Substitute Collateral therefor shall constitute the "Lease Collateral").

(f) Substitution of Lease Collateral. (i) At any time during the Lease Term, the Lessee or the Investor may replace (or establish initially, as the case may be) any or all of the Lease Collateral with (1) a letter of credit or a payment agreement for the benefit of the Lessor opened for the account of the Lessee by a bank, the Dollar-denominated long-term senior unsecured debt of which is, as of the date of issuance of such letter of credit or such payment agreement, rated at least Aa2 by Moody's or AA by S&P; provided, however, that if at any time the rating of the issuing bank's obligations of the character described above shall cease to meet the rating criteria described above and 45 days shall have elapsed from the earlier of (x) the date on which the Lessee or the Investor shall have Actual Knowledge of such fact and (y) the date on which the Lessor shall so state in a notice to the Lessee, such letter of credit shall cease to be Acceptable Substitute Collateral hereunder; and, (2) a first priority perfected security interest pursuant to an instrument satisfactory in form and substance to the Lessor in (A) cash, (B) direct obligations of the United States and agencies thereof for which the full faith and credit of the United States is pledged or, (C) obligations fully guaranteed by the United States or (3) any other collateral acceptable to the Lessor in its sole discretion or any combination of the collateral described in clauses (1) and (2) above; provided, further, however, that, in each case described above, the property comprising the collateral provides for scheduled payments (whether pursuant to a withdrawal under a deposit agreement, a drawing under a letter of credit or a payment at maturity of a bond or other security) on the dates and in amounts at least equal to the amount of the payments scheduled to be made from the collateral being replaced (any and all collateral described in clauses (1), (2) and (3) shall constitute "Acceptable Substitute Collateral").

(ii) In connection with the replacement of any collateral in accordance with clause (2) of Section 3(f)(i), (A) the Lessee shall, as applicable, pledge or assign such collateral to the Lessor pursuant to a pledge or assignment in form and substance reasonably satisfactory to the Lessor and (B) the Lessor shall release or cause the release of any security interest (including any repledge) that it has or that it has granted with respect to the collateral that has been substituted and shall execute such forms and documents reasonably requested by the Lessee to evidence such release.

(g) Permitted Investments. The Lessee covenants that, unless the Lessee has provided the Lessor with Acceptable Substitute Collateral in accordance with Section 3(f) hereof for amounts (other than amounts that constitute or would constitute a Lease Excluded Payment) equivalent to those payable under the Sublessee Loan Agreement, the Lessee (A) shall not, without the prior written consent of the Lessor (1) exercise any remedies under the Sublessee Loan Agreement (other than pursuant to Section 11(c) thereof and other than to the extent of any Lease Excluded Payment) unless the Lessee shall invest all proceeds (other than any proceeds constituting Lease Excluded Payments) received in connection with such exercise in Permitted Investments and shall grant a first priority perfected security interest in such Permitted Investments to the Lessor or (2) amend, modify or supplement the Sublessee Loan Agreement and (B) shall, in the event the Lessee is making the Permitted Investments referred to in clause (A)(1), follow the Lessor's directions regarding which Permitted Investments to make for any period during which Permitted Investments are earning a return less than the Lessee would have earned had the full Sublessee Loan remained in effect. For purposes of this Lease, any reference to the Sublessee Loan shall be deemed to include any Acceptable Substitute Collateral for the Sublessee Loan as well as any Permitted Investments referred to in this paragraph.

(h) Withholding Taxes. Notwithstanding anything herein to the contrary, any payment of Lease Rent hereunder shall be reduced by the amount of any withholding taxes required to be withheld on any such payment under Applicable Law. The payment of any Lease Rent due hereunder net of such withholding taxes shall be deemed payment in full of such Lease Rent. Neither the Lessee nor the Investor shall have any liability to the Lessor with respect to any such withholding taxes; provided, however, that the Lessee shall, at the time of payment, be required to pay and indemnify the Lessor, on an After-Tax basis, for any taxes referred to in this paragraph payable as a result of (i) the Lessee not being organized under the laws of the United States, (ii) if the Lessee is a trust or partnership, the Lessee having any beneficiary or partner (as the case may be) that is not a U.S. corporation, (iii) the Investor not being either (a) a United States corporation or (b) a United States trust or a United States partnership all of whose beneficiaries or partners are United States corporations or (iv) the Lessee or the Trustee not reflecting the transaction contemplated by this Lease in

its books and records in the United States as an asset of a United States office of such Person.

(i) [Reserved].

Section 4. Disclaimer; Warranties; Quiet Enjoyment.

(a) Disclaimer. As between the Lessor and the Lessee, the Lessee acknowledges and agrees that (A) THE LESSOR IS NOT A MANUFACTURER OR A DEALER IN PROPERTY OF THE KIND OF THE UNDIVIDED INTEREST AND (B) THE UNDIVIDED INTEREST IS LEASED HEREUNDER IN THE STATE AND CONDITION OF EVERY PART THEREOF WHEN THE SAME FIRST BECAME OR BECOMES SUBJECT TO THIS LEASE, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND BY THE LESSOR, EXPRESS OR IMPLIED, AS TO THE TITLE, MERCHANTABILITY, COMPLIANCE WITH SPECIFICATIONS, CONDITION, DESIGN, OPERATION, FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT, ABSENCE OF LATENT DEFECTS OR FITNESS FOR USE OF THE FACILITY (OR ANY PART THEREOF), OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, WITH RESPECT TO THE FACILITY (OR ANY PART THEREOF) OR THE UNDIVIDED INTEREST. The provisions of this Section 4(a) have been negotiated, and, except to the extent otherwise expressly stated, the foregoing provisions are intended to be a complete exclusion and negation of any representations or warranties by the Lessor, express or implied, with respect to the Facility that may arise pursuant to any Applicable Law now or hereafter in effect, or otherwise. Nothing in this Section 4(a) shall derogate from any representation or warranty made by the Lessor or Sublessee in any Operative Document.

(b) Warranties. The Lessor does hereby constitute the Lessee, its successors and assigns, the Lessor's true and lawful attorney irrevocably, with full power (in the name of the Lessor or otherwise) to ask, require, demand, receive, compound and give acquittance for any and all monies and claims for monies due and to become due under or arising out of any and all Warranties and for such period as the Lessee may exercise rights with respect thereto under this Section 4(b), to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute (or, if previously commenced, assume control of) any proceedings and to obtain any recovery in connection therewith the Lessee may deem to be necessary or advisable with respect to such monies and claims for monies.

During the Lease Term, the Lessee, to the exclusion of the Lessor, shall have the benefit of and shall be entitled to enforce, in its own name, and, to the extent

necessary, in the name of the Lessor, any and all of the Warranties, including all claims for damages arising from the Warranties. The Lessor agrees that at any time and from time to time upon the written request of the Lessee, the Lessor will promptly and duly execute and deliver any and all such further instruments and documents and take such further action as the Lessee may reasonably request in order to obtain the full benefits of the warranties and of the rights and powers granted under this Section 4.

(c) Quiet Enjoyment. The Lessor covenants that, neither the Lessor nor any Affiliate or any other Person claiming by, through or under it shall (except when, if the Sublease is not in effect, a Lease Event of Default shall have occurred and be continuing and the Lessee shall have received notice thereof from the Lessor) take or cause to be taken any action contrary to the Lessee's rights under this Lease to possession, use and quiet enjoyment of the Undivided Interest during the Lease Term.

(d) Power of Attorney. The Lessor hereby grants to the Lessee an irrevocable power of attorney for the duration of this Lease to exercise the rights of EZH under the Location Permits, the Network Deeds and Channel Building Right Deed in order to afford the Lessee access to the Network and the Cooling Water Channel and EZH shall provide the Lessee such assistance as is reasonably necessary to exercise its rights under such Location Permits, the Network Deeds and the Channel Building Right Deed.

Section 5. Return of Undivided Interest.

The Lessee shall redeliver the Undivided Interest to the Lessor at the end of the Lease Term. Upon such redelivery, the Undivided Interest shall be free and clear of all Liens (other than Permitted Liens) and the Facility shall be in the condition required by Section 7(a) hereof; provided, however, that, if the Lessor shall fail to perform any Operations Maintenance for any reason, the Lessee shall not be required to perform such Operations Maintenance even if such Operations Maintenance would otherwise be necessary to restore the Facility to the condition described in Section 7(a).

Section 6. Liens.

The Lessee shall not directly or indirectly create, incur, assume, permit or suffer to exist any Trustee Lien on or with respect to the Undivided Interest, the Facility, the Property Rights, the Building Right, the Turbine Building Right, the Network Building Rights or the Channel Building Right or this Lease other than Permitted Liens. The Lessee shall promptly, at its own expense, take such action as may be necessary to duly discharge any Trustee's Lien on or with respect to the Undivided Interest, the Facility, the Building Right, the Turbine Building Right, the

Network Building Rights or the Channel Building Right, other than a Permitted Lien arising at any time during the Lease Term.

Section 7. Lessee Maintenance Obligations; Possession; Subleasing

(a) Lessee Maintenance Obligations. Prior to the Sublease Termination Date, the Lessee, at its own expense, will maintain, repair and preserve the Facility, or cause the same to be maintained, repaired and preserved, in accordance with the provisions of Section 7(a) of the Sublease which are incorporated herein for such purpose, mutatis, mutandis as if such provisions applied to the Lessee; provided, however, that, by entering into the Sublease with the Sublessee, Lessee shall be deemed to have complied with the first sentence of this Section 7(a) whether or not Sublessee actually complies with Section 7 of the Sublease. On and after the Sublease Termination Date, the Lessee, at its own expense, will maintain, repair and service, or cause to be maintained, repaired and serviced, the Facility in accordance with Prudent Industry Practice in The Netherlands for Base Load, gas-fired power plants; provided, however, that so long as the Facility Operating Agreement shall be in effect, the Lessee shall be deemed to have complied with this second sentence of this Section 7(a). It shall be solely the Lessor's responsibility to carry out all Operations Maintenance, and the Lessee shall have no obligation at any time to perform such Operations Maintenance.

(b) Lessor Maintenance Obligations. The Lessor, shall perform, on a reasonably timely basis, all Operations Maintenance with respect to the Facility as set forth in the current Operations Maintenance Program, as modified by the Lessor; provided, however, that the Operations Maintenance Program shall not be modified in a manner that would result in the useful life, value, residual value, utility, operating efficiency or capacity of the Facility being less than what the useful life, value, residual value, utility, operating efficiency or capacity would have been if the original Operations Maintenance Program had been carried out. The Lessor shall furnish to the Lessee a report (the "Operations Maintenance Report") stating the total cost of all Operations Maintenance and describing separately and in reasonable detail all Operations Maintenance having a value in excess of 700,000 Dutch Guilders made during the period from the date hereof to the first Report Delivery Date in the case of the first such Operations Maintenance Report, and during the period from the end of the period covered by the previous report to the date one year from the end of such previous period, in the case of subsequent Operations Maintenance Reports.

(c) [Reserved].

(d) [Reserved].

(e) Operation and Use; Possession and Subleasing. (1) Operation and Use. The Lessee shall not (i) operate or use the Facility in violation of any Applicable Law, the requirements of any applicable insurance policies required to be maintained pursuant to Section 11 or licenses in effect from time to time necessary for the continued operation of the Facility, or (ii) use the Cooling Water Station other than in accordance with its designated use as specified in the Transfer Deed; provided, however, that the Lessee shall not be responsible under this Section 7(e) for any use by the Sublessee, the Operator under the Facility Operating Agreement or any Person claiming through either of them.

(2) Possession and Subleasing. The Lessee may, without the prior written consent of the Lessor, during the Lease Term sublease the Undivided Interest or in any manner, deliver, transfer or relinquish possession of its interest in the Facility.

Section 8. Modifications.

The Lessee, at its own cost and expense, may from time to time make or cause to be made such other modifications and improvements to the Facility as the Lessee shall consider desirable in the proper conduct of its business ("Lease Modifications"); provided, however, that this right shall be granted exclusively to the Sublessee during the term of the Sublease. Title to all Sublease Nonseverable Modifications shall, without further act, vest in EZH free and clear of all Liens, except Permitted Liens. Title to all modifications or improvements made as part of the Operations Maintenance Program with respect to the Facility and the Network shall vest in EZH. All such modifications or improvements shall be deemed to constitute part of the Facility, and an undivided interest equal to the Undivided Interest Percentage in respect thereof shall become part of the Undivided Interest and subject to this Lease.

Section 9. [Reserved].

Section 10. [Reserved].

Section 11. Insurance.

Each of the Lessor and the Lessee shall have the right to carry insurance on the Facility for their own benefit. Upon the termination of the Sublease, at the request of the Lessee, the Lessor shall, at the Lessee's sole cost and expense, carry insurance for the benefit of the Lessee in the same amounts and with the same coverage as Sublessee is required to carry pursuant to the terms of the Sublease as at the last day of the Sublease Term.

Section 12. Inspection.

The Lessor or its authorized representatives may, subsequent to the last day of the Sublease Term, (i) once during each calendar year upon 15 Business Days' prior notice in writing to the Lessee and (ii) without limitation as to intervals between inspections and as often as such Person may deem necessary upon 5 days' prior notice in writing to the Lessee from and during such time as (A) a Lessee Event of Default shall have occurred and be continuing or (B) the Undivided Interest is being returned pursuant to Section 25 and at their own risk and expense, inspect the Facility or any Part thereof, and the records of the Lessee relating thereto, which inspections shall be conducted at reasonable times and at the Station Site or where such records are then located; provided, however, that, at each inspection, the representatives of the Lessor may be accompanied by, and must follow the reasonable directions of, representatives of the Lessee or any sublessee. No inspection pursuant to this Section 12 shall significantly interfere with the normal use, commercial operation or maintenance of the Facility or the normal conduct of the Lessee's or sublessee's business. Each inspection shall be conducted in accordance with the Sublessee's safety and insurance programs or those of any Operator of the Facility. In connection with such inspection rights of the Lessor, in no event shall (i) the Lessor have any duty or obligation to make any such inspection or (ii) the Lessee or any sublessee have any duty or obligation to disclose any confidential information or trade secret to any Person except as specifically required by the terms of the Operative Documents.

Section 13. Assignment, Etc.

The Lessor may not, without prior written consent of the Lessee, assign any of its rights hereunder or in the Undivided Interest or the Facility, except to the extent provided in the Participation Agreement. Except as expressly permitted in the Operative Documents, the Lessee may not, without the consent of the Lessor, assign or convey its right, title and interest in and to this Lease or the Undivided Interest. The Lessor hereby consents to the entry by the Lessee into, and performance by the Lessee of, the Operative Documents (including the Sublease), including any assignment pursuant thereto. The terms and provisions of this Lease shall be binding upon and inure to the benefit of the Lessor and the Lessee and their respective successors and permitted assigns.

Section 14. Events of Default.

(a) Lessor Events of Default. Each of the following events shall constitute a "Lessor Event of Default":

(i) a breach of the covenant of quiet enjoyment as provided in Section 4(c) hereof after the last day of the Sublease Term that, if capable of remedy, remains unremedied for ten (10) Business Days after written notice or, if the Lessor is diligently attempting to cure such breach and there is no material risk of loss, sale or forfeiture of the Facility and there is no material interference with the use, operation or possession of the Facility, remains unremedied for 30 days after notice from the Lessee to the Lessor; or

(ii) the Lessor shall fail to perform or observe in any material respect any covenant, obligation or agreement to be performed by it hereunder or under Section 11(d) or (e) of the Participation Agreement (other than as referred to in clause (i) above or (vi) below), and such failure shall continue unremedied as of the 30th day (or, if such default is capable of cure, the 180th day, if the Lessor has notified the Lessee in writing prior to such 30th day that it is (and it actually is) diligently attempting to cure such breach by appropriate action or proceedings) after the earlier of (x) the date on which notice of such breach shall have been given by the Lessee to the Lessor and (y) the date on which a Responsible Officer of the Lessor shall have Actual Knowledge (A) of such breach and (B) that such breach will constitute a Lessor Event of Default if not cured; or

(iii) the Lessor (i) is declared bankrupt by a Dutch court and (A) the Lessor shall have failed to institute an appeal within the maximum time allowed therefor by Applicable Dutch Law (which as of the Closing Date is 8 days), or, in the case of a default judgment, the Lessor shall have failed to file an opposition request within the maximum time allowed therefor by Applicable Dutch Law (which as of the Closing Date is 14 days after such default judgment) and if the default judgment is subsequently upheld, the Lessor shall have failed to institute an appeal within the maximum time allowed therefor by Applicable Dutch Law (which as of the Closing Date is 8 days) or (B) if the Lessor has instituted a timely appeal, such bankruptcy has not been lifted within 90 days after such bankruptcy has first been declared or (C) the trustee in bankruptcy of the Lessor has not declared in writing to the Lessee or the Investor within 30 days of the bankruptcy of the Lessor that there will not be a "temporary stay" (*afkoelingsperiode*) under Section 63a of The Netherlands Bankruptcy Act, (ii) files for a provisional suspension of payments or requests to be declared bankrupt or (iii) commences a voluntary case under any other bankruptcy law now or hereafter in effect or a judicial proceeding seeking the appointment of a trustee, receiver, liquidator, custodian or other similar official of it or any substantial part of its property, or consents to any such relief or to the appointment of or taking possession by any such official in any voluntary

case or other proceeding commenced against it, or files for a provisional suspension of payments, or takes any corporate action to authorize, or in furtherance of, any of the foregoing; or

(iv) the Lessor is dissolved (other than by reason of a statutory merger permitted by the Operative Documents) and/or enters into liquidation, whether voluntarily or involuntarily, under any Applicable Law or United States law to which the Lessor is subject if, as a result of the application of such law, the rights of the Lessee or the Investor under the Operative Documents would be adversely affected; or

(v) the Lessor shall propose or enter into any arrangement or composition with or for the benefit of its creditors generally or shall propose an out of court settlement of indebtedness with its creditors generally, or propose or enter into any liquidation or dissolution of itself or its assets generally (other than as provided for under clause (iii) hereof) or a petition or proceeding under any Dutch bankruptcy or moratorium law (or United States bankruptcy or moratorium law or other applicable bankruptcy or moratorium law to which the Lessor is subject if, as a result of the application of such law, the rights of the Lessee or the Investor under the Operative Documents would be adversely affected) shall be filed or commenced against the Lessor and shall not be dismissed within 120 days; or

(vi) (A) the Sublessee shall fail to maintain, replace, renew or ensure the maintenance of the Letter of Credit in accordance with Section 11(d)(vii) of the Participation Agreement (including failure to renew or replace an existing Letter of Credit at least 30 days prior to the scheduled expiration thereof) or (B) the Letter of Credit shall become unenforceable, illegal, void or otherwise fail to comply with the requirements of Section 11(d)(vii) of the Participation Agreement; or

(vii) (A) the German Lessor shall have declared any German Lease to be in default, and shall be exercising remedies as a result of a default under the German Lease pursuant to Section 14.2 thereof or shall have given notice that it will, subject to any purchase option in favor of the Sublessee under the German Lease as a result of such default, exercise remedies as a result of such default pursuant to Section 14.2 thereof, and (B) any Sublessee Person under any German Lease shall have failed (1) to pay to the German Lessor all of the amounts due and payable by it under Section 14 of any German Lease within one day (excluding Saturdays and Sundays and any other day on which commercial banking institutions (with respect to any material commercial

banking services) are closed or authorized or required by law, regulation or executive order to be closed in each jurisdiction in which collateral securing the payment obligations of any Sublessee Person under any German Lease is located) after receipt of such declaration; provided, however, that, if any Sublessee Person is precluded from making such payment to the German Lessor on such day because it is a day on which commercial banking institutions (with respect to any material commercial banking services) are closed in Germany, the Sublessee shall not be in default under this clause (vii) if any Sublessee Person makes such payment on the next day on which it is not so precluded or (2) to cure any other default under any German Lease that has a cure period of at least 5 days within 5 days prior to the expiration of the cure period applicable with respect thereto; provided further, however, that notwithstanding the foregoing, the Sublessee shall not be in default under this clause (vii) from and after such time as title to all German Equipment shall have been transferred to the Lessor free and clear of any rights of, or claims by, the German Lessor; or

(viii) termination of the German Lease without the Lessor obtaining title to the German Equipment subject to Section 7(h) of the Sublease; or

(ix) there shall be a payment default under the Sublessee Loan Agreement as of the last day of the Sublease Basic Term unless the Sublessee has purchased the Sublessor's Lease Interest; or

(x) the Lessor shall fail to pay the Settlement Amount on the date such payment shall be due and such failure shall be continuing on the 10th day after notice of such failure shall have been given to the Lessor.

(b) Lessee Events of Default. Each of the following events shall constitute a "Lessee Event of Default":

(i) the Lessee shall (i) fail to pay Lease Basic Rent and such failure shall be continuing on the fifth Business Day after such payment shall be due, or (ii) fail to pay any payment of Lease Supplemental Rent and such failure shall continue for ten days after receipt of notice of such failure by the Lessee from the Lessor; or

(ii) at any time after the Collateral Date, the Lessee shall fail to maintain the Lease Collateral required under Section 3(e), and shall not cure such failure within 20 Business Days after notice of such failure shall have been given by the Lessor to the Lessee, unless such failure is a result of any act, failure to act or breach by the Lessor or any Affiliate thereof; or

(iii) the Lessee, the Investor or a Transferee's Guarantor (if any) shall file a voluntary petition in bankruptcy or a voluntary petition seeking reorganization in a case or proceeding under any applicable bankruptcy or insolvency law (as now or hereafter in effect) or the Lessee, the Investor or a Transferee's Guarantor (if any) shall by voluntary petition seek relief under the provisions of any now existing or future bankruptcy, insolvency or other similar law providing for the liquidation, reorganization or winding-up of corporations, or providing for an agreement, composition, extension or adjustment with its creditors unless, in the case of a Transferee's Guarantor, such Transferee's Guarantor has been substituted by a non-defaulting Transferee's Guarantor; or

(iv) a receiver, trustee liquidator or custodian of the Lessee, the Investor or a Transferee's Guarantor (if any) or of a substantial part of its property shall be appointed by court order and such order shall remain in effect for more than 90 days; or the Lessee, the Investor or a Transferee's Guarantor (if any) shall be adjudicated bankrupt or insolvent or any of its properties shall be sequestered by court order and such order shall remain in effect for more than 90 days; or a petition shall be filed against the Lessee, the Investor or a Transferee's Guarantor (if any) under any bankruptcy, reorganization, arrangement, insolvency, readjustment of debt, dissolution or liquidation law of any jurisdiction, whether now or hereafter in effect, and shall not be dismissed within 90 days after such filing; or an order for relief shall be entered against the Lessee, the Investor or a Transferee's Guarantor (if any); or the Lessee, the Investor or a Transferee's Guarantor (if any) shall make a general assignment for the benefit of its creditors; or the Lessee, the Investor or a Transferee's Guarantor (if any) shall admit in writing its inability to pay its debts generally as they become due, or shall be unable to pay or shall be generally not paying its debts as they become due.

Section 15. Sublessor's Lease Interest Transfer, Etc. Notwithstanding any other provision hereof or of any other Operative Document, if a Lessee Event of Default, a Lessor Event of Default or a Lease Facility Event of Loss shall have occurred and be continuing and:

(a) the Sublease is not in effect, the sole remedy which the Lessor or the Lessee, as the case may be, shall be entitled to exercise (in the case of a Lessee Event of Default or a Lessor Event of Default), and the sole action that the parties may take (and shall take, on the first SADD that is neither less than 30 days nor more than 180 days after the Lease Facility Event of Loss) (in the case of a Lease Facility Event of Loss), is to cause a "Sublessor's Lease Interest Transfer" by giving notice thereof

to the Lessee or the Lessor, as the case may be, and the Designated Successor Lessee, in which case:

(i) the Settlement Amount determined as at such SADD shall be due and payable as at such SADD, and the Lessor hereby agrees to make such payment to the Investor (the payment of the Settlement Amount in connection with a Sublessor's Lease Interest Transfer being in consideration of the overcollateralization theretofore of accrued but unpaid Lease Rent);

(ii) the Sublessor's Lease Interest shall, automatically and without the requirement of any action on the part of any Person, be assigned, effective as at such SADD, to the Designated Successor Lessee which shall, automatically and without the requirement of any action on the part of any Person, assume and become obligated to pay and perform all of the Lessee's obligations under the Lease (including the obligation to pay Lease Rent) and each of the Investor and the Lessee shall, automatically and without the requirement of any action on the part of any Person, be released from all obligations under or in respect of the Lease; and

(iii) all rights of the Lessee in respect of Lease Collateral, if any, shall, subject to the prior payment of the Settlement Amount as provided for in clause (i) above, automatically and without the requirement of any action on the part of any Person, be transferred as at such SADD to the Designated Successor Lessee, provided, however, that rights to any Lease Collateral having, as at such SADD, an aggregate fair market value that is in excess of the aggregate of (x) the present value of the Final Basic Rent Payment, calculated as at such SADD using 8.16 percent as the annually compounded discount rate and (y) any unpaid reimbursement obligation payable in respect of any drawing under any Letter of Credit shall be released to or retained by, as the case may be, the Lessee; or

(b) the Sublease is in effect, the sole remedy upon a Lessee Event of Default or a Lessor Event of Default, and the sole action either party may take upon a Lease Facility Event of Loss, is to exercise remedies or take other appropriate action under the Sublease.

Section 16. Further Assurances.

The Lessee and the Lessor will promptly and duly execute and deliver at the Lessor's cost such further documents and assurances, and take all actions necessary to perfect or protect and to maintain the perfection and protection of the

interests of the Lessor in the Undivided Interest and this Lease (except in respect of Liens attributable to the Lessor) and take such further actions as are necessary or desirable in order effectively to carry out the intent and purpose of this Lease and the Operative Documents to which the Lessor is a party (including to confirm the Designated Successor Lessee's rights in respect of Lease Collateral upon any Sublessor's Lease Interest Transfer pursuant to Section 15(a) hereof, it being agreed that the Lessee shall be entitled to select the Lease Collateral in respect of which, if any, it is entitled to retain rights).

Section 17. Notices.

All notices required or permitted by the terms of this Lease shall be given and shall become effective in the manner specified in Section 22(a) of the Participation Agreement.

Section 18. Absolute Obligation To Pay Lease Rent.

The Lessee's obligation to pay all Lease Rent payable hereunder shall be absolute and unconditional under any and all circumstances and shall not be affected by any circumstance of any character, including, without limitation, (i) any setoff, counterclaim, recoupment, defense or other right which the Lessee may have against the Lessor or any other Person under any Operative Document or otherwise, (ii) any defect in the condition, design, operation, merchantability or fitness for use of the Facility, any unavailability of the Facility after the delivery and acceptance of the Facility by the Lessee hereunder for any reason, (iii) any loss or destruction of, or damage to, the Facility or interruption or cessation in the use or possession thereof by the Lessee for any reason whatsoever and of whatever duration, (iv) the requisitioning, seizure or other taking of title to or use of the Facility by any government or governmental authority or otherwise, (v) the invalidity or unenforceability or lack of due authorization or other infirmity of this Lease, (vi) the lack of right, power or authority of the Lessor to enter into this Lease, (vii) any ineligibility of the Facility for any particular use, whether or not due to any failure of the Lessee to comply with any Applicable Law, (viii) force majeure or any frustration, (ix) any legal requirement similar or dissimilar to the foregoing, any present or future law to the contrary notwithstanding, (x) any insolvency, bankruptcy, reorganization or similar proceeding by or against the Lessee or any other Person, (xi) the Lessee or any other Person at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, and (xii) any Lien of any Person with respect to the Facility. The Lessee hereby waives, to the extent permitted by Applicable Law, any and all rights which it may now have or which at any time hereafter may be conferred on it, by statute or otherwise, to terminate, cancel, quit or

surrender this Lease or to abate rent except in accordance with the express terms of this Lease and the other Operative Documents. Notwithstanding anything to the contrary in this Section 18, nothing in this Section 18 shall be construed to limit or otherwise affect the application of Sections 10, 15, 20 or 25.

Section 19. True Lease, Etc.

(a) It is the intent of the parties to this Lease that the Lease will be a true lease and not a "finance lease" as defined in Section 168(f) of the Internal Revenue Code of 1954, as amended and in effect prior to the Tax Reform Act of 1986 (P.L. 99-514), and that the Lessor shall at all times be considered to be the Lessor of the Undivided Interest which is the subject of this Lease for all purposes under Applicable Law, including but not limited to Federal, state, city and local income taxes or for franchise taxes measured by net income, and that this Lease conveys to the Lessee no right, title or interest in the Undivided Interest except as a lessee under Applicable Law.

(b) The Lessor covenants that it will file such returns, take such actions and execute such documents as requested by the Lessee that may be reasonably necessary to facilitate accomplishment of the intent hereof. Within a reasonable time after written request therefor, the Lessor shall provide, at its sole expense, such information and copies of records that are within the control of and reasonably accessible to the Lessor as the Investor may reasonably require to enable the Investor to fulfill its United States Federal income tax return filing, audit and litigation obligations and any other filing or reporting requirement.

Section 20. Security for Lessee's Obligation to Lender.

In order to secure all amounts payable by and all obligations to be performed by the Lessee under the Loan Agreement, the Lessee has agreed in the Loan Agreement, among other things, to assign to the Lender certain rights under this Lease and to pledge to the Lender, and to grant a security interest in favor of the Lender, in this Lease, subject to the reservations and conditions therein set forth. The Lessor hereby consents to such assignment and to the creation of such pledge and security interests and the pledges and security interests in the other Collateral created thereunder and acknowledges receipt of copies of the Trust Agreement and the Loan Agreement, it being understood that such consent shall not affect any requirements or the absence of any requirement for any consent under any other circumstances.

The Lessor hereby acknowledges receipt of due notice that the Lessee's interest in this Lease has been assigned to the Lender as security pursuant to the Loan

Agreement to the extent provided in the Loan Agreement, so long as the obligations of the Trustee under the Loan Agreement have not been discharged pursuant to the terms thereof. Unless and until the Lessor shall have received written notice from the Lender that the Loan Agreement has been discharged pursuant to the terms thereof, the Lender shall have the right to exercise the rights of the Lessee under this Lease to the extent set forth in and subject in each case to the provisions of such Loan Agreement.

Section 21. Concerning Trustee.

The Bank is entering into this Lease solely in its capacity as Trustee under the Trust Agreement and not in its individual capacity and, except as otherwise provided in the Operative Documents, in no case shall the Bank (or any entity acting as successor or additional Trustee under the Trust Agreement) be personally liable for or on account of any of the statements, representations, warranties, covenants or obligations of the Lessee hereunder, or any such liabilities being hereby waived by the Lessee; provided, however, that the Bank (or any successor or additional Trustee) shall be personally liable to the Lessor hereunder for its own gross negligence or willful misconduct or for its failure to exercise ordinary care in the handling of money or for its breach of any representation or warranty or covenant expressly made in its individual capacity under the Operative Documents. If a successor Trustee is appointed in accordance with the terms of the Trust Agreement and the Participation Agreement, such successor Trustee shall, without any further act, succeed to all the rights, duties, immunities and obligations of the Lessee hereunder and the predecessor Trustee shall be released from all further duties and obligations hereunder arising after such successor Trustee has accepted such appointment.

Section 22. Covenants of Lessee.

The Lessee agrees that it shall not take any action with respect to the Station Site, the Common Facilities Site, the Facility Site or the Facility that EZH specifically requests that Lessee not to take if taking such action would cause EZH to default under the Notarial Deed of Establishment, the Building Right Deed, the Network Deeds, the Channel Building Right Deeds and the Location Permits; provided, however, that the Lessee shall not be required to take any action in connection with the foregoing; provided further that notwithstanding the foregoing, the Lessee shall not be required to refrain from taking any action if (i) the action is otherwise required or permitted by any other provision of this Lease or any other Operative Document or (ii) the action by the Lessee is not prohibited under this Lease or any other Operative Documents and the failure to take such action may adversely affect the Lessee or the Investor.

The Trustee agrees that, so long as the Trustee has any payment obligation under this Lease, the Trustee shall not distribute to the Investor any amount (other than Lease Excluded Payments) after the Sublease Basic Termination Date unless it shall have received written instructions from the Investor to distribute such amounts and the Lessee shall be in compliance with Section 3(e).

Section 23. Severability.

Any provision of this Lease which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

Section 24. Miscellaneous.

(a) Deemed Compliance. Notwithstanding any other provision of this Lease, by entering into the Sublease, the Lessee shall be deemed to have complied with the obligations of the Lessee contained in Sections 5, 7(a), 7(e), and 12 during the Sublease Term without any action on the part of Lessee and regardless of any failure of Sublessee or its successors and permitted assigns to perform its corresponding obligations under Sublease.

(b) [Reserved].

(c) Counterparts. This Lease may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

(d) Amendments and Waivers. No term or provision of this Lease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought. This Lease shall constitute an agreement of lease, and nothing herein shall be construed as conveying to Lessee any right, title or interest in the Undivided Interest except as a lessee only. The termination of this Lease shall not affect the rights of the Lessee or the Lessor to recover damages for any antecedent breach of this Lease or to recover any sum otherwise due to such Person under the terms of this Lease and will be without prejudice to any right or action of such Person.

(e) CHOICE OF LAW. THIS LEASE SHALL IN ALL RESPECTS BE GOVERNED BY THE LAW OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. THIS AGREEMENT HAS BEEN DELIVERED IN THE STATE OF NEW YORK.

Section 25. End of Sublease; Lessee Purchase Option.

(a) End of Sublease. After the last day of the Sublease Term, the Lessee may cancel this Lease and surrender to the Lessor its interest in any sublease of the Facility upon 10 days prior written notice to the Lessor; provided, however, that such cancellation and surrender shall (a) not excuse the Lessee from any obligation hereunder to pay Lease Rent and (b) excuse the Lessee from all obligations hereunder other than any obligation to pay Lease Rent.

(b) Lessee Purchase Option. Lessee shall have the option to purchase the Lessor's interest in the Undivided Interest for an amount equal to the then estimated Fair Market Value of such interest determined (except in the case of any purchase on the Lease Termination Date, taking into account the fact that the Undivided Interest is encumbered by this Lease) at the time of the exercise of such option, upon the occurrence of any of the following events (and provided that Sublessee does not exercise the Sublease Purchase Option under Section 19 of the Sublease or its options under Section 9 of the Sublease):

(i) the Sublease Basic Termination Date or the Lease Termination Date;

(ii) the Sublease Renewal Termination Date, if this Lease is still in effect;

(iii) a Sublessee Event of Default occurs and is continuing; or

(iv) Lessee, as Sublessor, gives a notice pursuant to Section 9(b) of the Sublease indicating its election to retain the Sublessor's Lease Interest.

Lessee shall notify Lessor in writing whether it will purchase such interest in the Undivided Interest pursuant to this Section 25(b): (a) not less than 90 days prior to the Sublease Basic Termination Date, the Sublease Renewal Termination Date or the Lease Termination Date; and (b) at any time within one year of the declaration of a Sublessee Event of Default if such Sublessee Event of Default is continuing. If Lessee elects to purchase such interest in the Undivided Interest pursuant to this Section 25(b) upon payment to Lessor of an amount equal to the applicable purchase price, plus all other

amounts owing by Lessee to Lessor pursuant hereto (whether as Lease Rent or Lease Supplemental Rent), all of Lessor's right, title and interest in the Undivided Interest shall be deemed automatically to have been transferred by Lessor to Lessee or its designee, "as-is, where-is" without recourse or warranty of any kind, except with respect to the absence of Liens (other than Permitted Liens). Lessee shall prepare and Lessor shall execute, a termination of this Lease and a bill of sale or other instrument providing for the transfer of the Lessor's interest in the Undivided Interest as Lessee may reasonably request, all at the expense of Lessee. Upon compliance by Lessee with the provisions of this Section 25(b), this Lease shall terminate except in respect of liabilities and obligations of Lessee which have accrued but not been paid or which are in dispute as of the date of such transfer.

Section 26. Assumption by Sublessee of Lease Rent.

Upon Sublessee's or any Appropriate Purchaser's or any Designated Successor Lessee's assumption or deemed assumption pursuant to any Operative Document of all or any portion of unpaid Lease Rent and any other obligations of the Lessee hereunder, (a) the Trustee and the Investor shall be released from any and all such payments and other obligations and (b) the Lessor shall, at its own cost and expense, execute such documents as shall be necessary or reasonably requested by the Lessee to evidence such assumption and release, including a division of all obligations hereunder. Upon the assumption or deemed assumption of all the Lessee's obligations hereunder and the release of the Trustee from all such obligations, all references to the Investor in this Lease shall, with respect to all periods after such assumption, become inapplicable.

Section 27. Registered Instrument.

This Lease is a registered instrument. The Lessee will keep a record of Interest (the "Record of Interest"), in a form and using materials furnished by the Investor and reasonably acceptable to the Lessor, in which it will register, and will register any transfer of, the Lessor's interest in this Lease and in the rights to receive any payments hereunder.

No transfer by the Lessor (whether or not with the Lessee's consent) of any interest in this Lease or in the rights to receive any payments hereunder shall be permitted or effective unless such transfer is made upon the Lessee's Record of Interest. Unless a transfer is otherwise permitted under the Operative Documents, the Lessor shall not transfer its interest in the Undivided Interest, this Lease or the rights to receive any payments hereunder except by written application to the Lessee, stating the name of the proposed transferee and otherwise complying with the terms of the

Operative Documents. Unless a transfer is otherwise permitted under the Operative Documents, no such transfer by any Lessor shall be effective until, and such transferee shall succeed to the rights of such Lessor only upon, final acceptance and entry by the Lessee into the Lessee's Record of Interest of the transfer.

Prior to the entry by the Lessee into the Lessee's Record of Interest of any transfer by the Lessor as provided in the immediately preceding paragraph, the Lessee shall deem and treat the Lessor as the owner of this Lease for all purposes.

IN WITNESS WHEREOF, the Lessor and the Lessee have each caused this Lease Agreement to be duly executed as of the day and year first above written.

N.V. ELECTRICITEITSBEDRIJF
ZUID-HOLLAND,

By____________________________
Name: J. A. HOYTE de JONG
Title: Attorney-in-Fact

WILMINGTON TRUST COMPANY,
not in its individual capacity, but
solely as Trustee

By____________________________
Name: JAMES P. LAWLER
Title: Vice President

# EXHIBIT A-6

EXECUTION COPY

---

# SUBLEASE AGREEMENT

(ROCA FACILITY TRUST NO. 2)

Dated as of December 15, 1997

between

WILMINGTON TRUST COMPANY,
not in its individual capacity
but solely, as Trustee,

Sublessor,

and

N.V. ELECTRICITEITSBEDRIJF ZUID-HOLLAND,

Sublessee

---

As further described in Section 22 hereof, the Sublessor's interest in this Sublease has been assigned to and is subject to a security interest in favor of Hollandsche Bank-Unie N.V., as Lender, under and to the extent set forth in the Loan and Security Agreement dated as of the date hereof, among the Sublessor, and Hollandsche Bank-Unie N.V., as Lender, as such Loan Agreement may be amended, supplemented or otherwise modified in accordance with the terms thereof. To the extent, if any, that this Sublease Agreement constitutes chattel paper (as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction), no security interest in this Sublease Agreement may be created through the transfer or possession of any counterpart other than the original executed counterpart, which shall be identified as the counterpart containing the receipt therefor executed by Hollandsche Bank-Unie N.V., as Lender, on the signature page thereof.

TABLE OF CONTENTS

Page

Section 1. Definitions; References ..... 2

Section 2. Sublease of Undivided Interest ..... 2

Section 3. Term and Sublease Rent ..... 3

(a) Sublease Basic Term and Sublease Renewal Term ..... 3
(b) Sublease Rent ..... 3
(c) Sublease Supplemental Rent ..... 3
(d) Payments of Rent ..... 3
(e) Adjustments ..... 4

Section 4. Disclaimer; Warranties; Quiet Enjoyment; German Rights ..... 7

(a) Disclaimer ..... 7
(b) Warranties; Power of Attorney; Claims Against Warrantor ..... 8
(c) Quiet Enjoyment ..... 9
(d) German Rights ..... 9
(e) Certain Property Rights ..... 10

Section 5. Return of Undivided Interest; Environmental Report ..... 10

(a) Return of Undivided Interest ..... 10
(b) Environmental Report ..... 11

Section 6. Liens ..... 12

Section 7. Maintenance; Sublease Modifications; Replacement Parts ..... 13

(a) Maintenance ..... 13
(b) Sublease Required and Optional Modifications ..... 13
(c) Replacement of Parts ..... 13
(d) Title to Sublease Nonseverable Modifications, Sublease Severable Modifications and Replacement Parts ..... 14
(e) Financing Sublease Modifications ..... 15
(f) Operating Logs; Plans and Specifications; Common Facilities Book ..... 18
(g) Reports ..... 19
(h) Substitution of German Equipment ..... 19

Section 8. Operation and Use; Possession; Sub-Subleasing ..... 20

(a) Operation and Use ..... 20

Page

(b) Possession; Sub-Subleasing ... 20

Section 9 Burdensome Buyout Event; Voluntary Termination; Sublease Early Purchase Option ... 21

(a) Burdensome Buyout Event ... 21
(b) Voluntary Termination for Economic Obsolescence ... 23
(c) Early Purchase Option ... 25

Section 10 Loss, Destruction, Requisition, Etc ... 26

(a) Sublease Facility Event of Loss ... 26
(b) Sublease Facility Partial Event of Loss ... 27
(c) [Intentionally omitted] ... 29
(d) [Intentionally omitted] ... 29
(e) Application of Payments Upon an Event of Loss ... 29
(f) Application of Payments During Existence of Sublessee Event of Default ... 30
(g) Repair of Facility ... 30
(h) Adjustments to Value of the Facility Upon a Sublease Facility Partial Event of Loss ... 31

Section 11. Insurance ... 31

(a) Insurance Coverage ... 31
(b) Limitation on Self-Insured Deductibles ... 32
(c) Required Terms ... 32
(d) Annual Reports ... 34
(e) Additional Coverages ... 35

Section 12 Inspection ... 35

Section 13. Assignment, Etc ... 36

Section 14. Sublessee Events of Default ... 36

Section 15. Remedies ... 40

(a) Sublessor Remedies ... 40
(b) Remedies Cumulative ... 45
(c) Notice of German Lease Default; German Lease Event of Default; Sublessee Default and Sublessee Event of Default ... 45

Page

Section 16 Further Assurances ..... 45

Section 17. Notices ..... 46

0Section 18 Net Sublease, Etc ..... 46

Section 19. Sublease Purchase Option; Exercise of Sublease Purchase Option ..... 47

Section 20. The Sublessor's End of Term Options ..... 48

(a) The Sublessor's Election ..... 48
(b) Sublease Renewal Option ..... 48
(c) Retention Option ..... 49

Section 20A Actions Required on Sublease Basic Termination Date ..... 49

(a) Sublessee Actions Required Upon Expiration of the Sublease Basic Term ..... 49
(b) Sublessor and Investor Actions Required Upon the Expiration of the Sublease Basic Term ..... 49
(c) Costs and Expenses ..... 50

Section 21. True Sublease ..... 50

Section 22. Security for Sublessor's Obligation to Lenders ..... 50

Section 23. Investment of Security Funds ..... 51

Section 24. Sublessor's Right to Perform for Sublessee ..... 51

Section 25. Concerning Sublessor ..... 51

Section 26. Severability ..... 51

Section 27. Counterparts ..... 51

Section 28. Amendments and Waivers ..... 52

Section 29. Section and Paragraph Headings ..... 52

Section 30. Choice of Law ..... 52

Section 31. Survival ..... 52

Section 32. Third-Party Beneficiary ..... 52

SUBLEASE AGREEMENT
(ROCA FACILITY TRUST NO. 2)

This SUBLEASE AGREEMENT (ROCA FACILITY TRUST NO. 2), dated as of December 15, 1997 (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof, this "Sublease" or this "Agreement"), is between WILMINGTON TRUST COMPANY, a Delaware banking corporation, not in its individual capacity but solely as Trustee under a Trust Agreement, as Sublessor (together with its successors and permitted assigns, the "Sublessor"), and N.V. ELECTRICITEITSBEDRIJF ZUID-HOLLAND, a public limited liability company organized under the laws of The Netherlands and having its registered seat in The Hague, The Netherlands, as Sublessee (together with its successors and permitted assigns, the "Sublessee").

WITNESSETH:

WHEREAS, prior to the execution and delivery hereof, the Investor and Wilmington Trust Company entered into the Trust Agreement, dated as of December 12, 1997 whereby Wilmington Trust Company is constituted, as Trustee, to acquire and hold the Trust Estate in trust for the benefit of the Investor;

WHEREAS, concurrently herewith, the Lessor, the Sublessee, the Investor, the Trustee and the Lender entered into the Participation Agreement, dated as of December 15, 1997; and

WHEREAS, the Sublessor desires to undertake herein to sublease to the Sublessee and the Sublessee desires to undertake herein to sublease from the Sublessor, the Undivided Interest as more fully hereinafter set forth;

NOW, THEREFORE, in consideration of the mutual agreements herein contained, and other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

Section 1. Definitions; References. (a) All capitalized terms used herein (including those in the recitals hereto) shall, unless defined herein, have the respective meanings set forth in Appendix A to the Participation Agreement.

(b) All references in this Sublease to Sections, Appendices, Schedules and Exhibits refer, unless otherwise specified, to Sections of, and Appendices, Schedules and Exhibits to, this Sublease.

Section 2. Sublease of Undivided Interest. The Sublessor hereby agrees (subject to satisfaction or waiver of the conditions set forth in Section 3 of the Participation Agreement) to sublease to the Sublessee the Undivided Interest, upon the terms and conditions set forth herein, and the Sublessee hereby agrees (subject to satisfaction or waiver of the conditions set forth in Section 5 of the Participation Agreement) to sublease, upon the terms and conditions set forth herein, the Undivided Interest from the Sublessor hereunder, such sublease and satisfaction or

waiver of the conditions set forth in Sections 3 and 5 of the Participation Agreement to be evidenced by, and this Sublease effective from, the execution and delivery by the Sublessor and the Sublessee of a Sublease Certificate of Acceptance in the form of Exhibit A.

Section 3. Term and Sublease Rent. (a) Sublease Basic Term and Sublease Renewal Term. The Sublease Basic Term for the Undivided Interest shall commence on the Closing Date and shall expire on the Sublease Basic Termination Date, unless earlier terminated in accordance with the express provisions hereof, and the Sublease Renewal Term, if any, for the Undivided Interest shall commence at 12:01 A.M. on the day following the Sublease Basic Termination Date and shall expire at the end of the day on the Sublease Renewal Termination Date, unless earlier terminated in accordance with the express provisions hereof.

(b) Sublease Rent. The Sublessee agrees to pay on each Sublease Rent Payment Date to the Sublessor, Sublease Basic Rent for the Undivided Interest in respect of the Sublease Basic Term and Sublease Renewal Rent for the Undivided Interest in respect of the Sublease Renewal Term (unless, in each case, this Sublease shall have been terminated prior to such Sublease Rent Payment Date in accordance with the express provisions hereof) in installments in advance or in arrears for each period specified on Exhibit B in an amount equal in each such case to the product of (i) the Value of the Undivided Interest multiplied by (ii) the applicable percentage set forth opposite such Sublease Rent Payment Date under the caption "Arrears Rent" and "Advance Rent" on Exhibit B, as such Sublease Rent may be adjusted in accordance with Section 3(e) hereof.

(c) Sublease Supplemental Rent. The Sublessee agrees to pay to such Person as shall be entitled thereto as expressly provided herein or in any other Operative Document, as appropriate, any and all Sublease Supplemental Rent when and as the same shall become due and owing. Without limiting the Sublessee's obligation to pay amounts of Sublease Supplemental Rent in accordance with the Operative Documents, the Sublessee shall pay, as Sublease Supplemental Rent on demand, an amount equal to interest at the Overdue Rate on any part of any Sublease Rent not paid when due for the period from the due date thereof until the same shall be paid in full.

(d) Payments of Rent. All Sublease Rent (whether Sublease Basic Rent, Sublease Renewal Rent or Sublease Supplemental Rent) shall be paid in Dollars in immediately available funds by not later than 11:00 A.M., New York City time, on the due date therefor; provided however, that to the extent the Sublessee Loan Agreement provides for a loan to be made on a Sublease Rent Payment Date, the Sublessee shall be deemed to have paid a portion of Sublease Basic Rent and Sublease Renewal Rent, as applicable, in an amount equal to the borrowed amount provided for in Section 2 of the Sublessee Loan Agreement for such date. All Sublease Rent payable to the Sublessor hereunder shall be paid by the Sublessee to the Sublessor to its account at Wilmington Trust Company, ATTN: Corporate Trust Administration: (Ref: EZH ROCA FACILITY TRUST NO. 2), or to such other account in the United States as the Sublessor shall have specified in a notice to the Sublessee at least ten (10) Business Days prior to the date on which such Sublease Rent shall be due; provided, however, that, notwithstanding anything to the contrary contained herein, so long as the Lien of the Loan Agreement shall not have been discharged pursuant to the terms thereof, the Sublessor hereby directs, and the Sublessee agrees,

that all Sublease Rent (other than (i) Excluded Payments (and Excluded Portion)), including the Equity Portion of any Sublease Rent and (ii) Sublease Rent of the type referred to in the proviso to the first sentence of this Section 3(d), including, without limitation, Sublease Rent payable in connection with a termination of, or purchase of the Sublessor's Lease Interest, shall (whether or not specific reference is made herein or in any other Operative Document) be paid by FedWire transfer or in other immediately available funds directly to the Lender at the Lender's Account. Payments constituting Excluded Payments or Excluded Portion shall be made to the Sublessor or the Person entitled thereto, as the case may be, at the Sublessor's aforementioned account, if applicable, or at the account for such Person as specified in a notice by such Person to the Sublessee at least ten (10) Business Days prior to the date upon which such payment is due. If any payment hereunder is due on a date which is not a Business Day, then payment is to be made on the next following Business Day, and the amount thereof to be paid on such next Business Day shall be the amount which would have been payable on the date which is not a Business Day (unless calculation of such amount is based on actual days elapsed).

(e) Adjustments. In the event that:

(i) a refinancing pursuant to Section 13 of the Participation Agreement or a Supplemental Debt Financing shall have occurred or the Applicable Rate shall be reset in connection with the provision of Acceptable Substitute Credit Protection;

(ii) on any date on which Trustee Treasury Collateral is required to be purchased pursuant to Section 11(a)(x) of the Participation Agreement, the Sublessee has not exercised the Sublease Purchase Option and the Actual Treasury Price is other than the Expected Treasury Price pursuant to Schedule 2A of the Participation Agreement, in the case of Trustee Treasury Collateral; or

(iii) on the Sublease Basic Termination Date, the Sublessee has not exercised the Sublease Purchase Option and the Actual Lease Collateral Rate is other than the Expected Lease Collateral Rate;

then all amounts of Sublease Basic Rent (and the corresponding Equity Portion of Sublease Basic Rent), Sublease Renewal Rent (and the corresponding Equity Portion of Sublease Renewal Rent), Sublease Termination Value (and the corresponding Equity Portion of Sublease Termination Value), Sublease Special Termination Value (and the corresponding Equity Portion of Sublease Special Termination Value), Sublease Special Special Termination Value (and the corresponding Equity Portion of Sublease Special Special Termination Value), Settlement Amounts, the amounts set forth on Schedule A to the Sublessee Loan Agreement, L/C Termination Value, the amounts reflected on Schedule 2A to the Participation Agreement and the Sublease Purchase Option Price (and the corresponding Equity Portion of the Sublease Purchase Option Price) shall, in each case to the extent necessary, be adjusted to preserve the Net Economic Return; provided, however, that (A) the Sublease Purchase Option Price shall not be adjusted to an amount which is lower (taking into account the provisions of Section 19 hereof) than the expected Fair Market Sales Value of the Sublessor's Lease Interest as of the Sublease Purchase Option Date as set forth in the Appraisal, or, if the adjustment is more than one year after the Closing Date, the expected Fair Market Sales Value of the Sublessor's Lease Interest as set forth in an appraisal (satisfactory in

form and substance to the Sublessor and the Investor) obtained by the Sublessor, at the Sublessee's sole expense, and performed by a qualified independent appraiser mutually acceptable to the Sublessor and the Sublessee (a "Supplemental Appraisal"), (B) at the time made, each adjustment of Sublease Basic Rent, Sublease Renewal Rent and Sublease Purchase Option Price shall satisfy the requirements of Rev. Proc. 75-21, 1975-1 C B. 715 and Rev. Proc. 75-28, 1975-1 C.B. 752, as modified and as in effect at the time of such adjustment, and Section 467 of the Code and (to the extent applicable or, if adopted, would be applicable) any then existing proposed, temporary and final regulations promulgated thereunder, and shall not cause the Lease or the Sublease to be a "disqualified leaseback or long term agreement" within the meaning of Section 467 of the Code and (to the extent applicable or, if adopted, would be applicable) any then existing, proposed, temporary or final regulations promulgated thereunder, in each case to the extent such requirements were satisfied prior to any such adjustment, provided that if there are any changes relating to the requirements of Rev. Proc. 75-21, Rev. Proc. 75-28 or Section 467 of the Code and any proposed, temporary or final regulations thereunder, such adjustments shall comply with any such changed requirements whether or not the original rent structure complied with such requirements, if by reason of such adjustment the transaction would become, as of the time of the adjustment or thereafter, subject to such requirements which would not have been applicable in the absence of such adjustment (it being understood that proposed regulations becoming effective or a change in the proposed effective date of any proposed regulations constitutes such a change); (C) to the extent consistent with preserving Net Economic Return, all adjustments shall maximize the NPV Benefit; (D) in the case of any adjustments made prior to the Sublease Basic Termination Date, unless the Sublessor and the Investor agree otherwise, in their sole discretion, Sublease Renewal Rent shall not be adjusted in any manner that would cause the Sublease Renewal Term to be added to the Sublease Basic Term for tax purposes; and (E) any adjustment pursuant to Section 3(e)(iii) shall be calculated to provide the Trustee with sufficient funds to distribute to the Investor to permit the Investor to purchase U.S. Government Obligations in accordance with Section 11(a)(ix) of the Participation Agreement. In connection with any adjustment hereunder, the Sublessee shall comply with Section 11(d)(xiv) of the Participation Agreement. In addition, conforming adjustments shall be made to the Assumed Maximum Exposure Amount, the Minimum Cash Amount, the Required Amount, the Ussel Agreement, Exhibits B and C to the Lease (relating to the Excluded Portion and Lease Collateral Deposit) and as specified in Section 11(d)(xiv) of the Participation Agreement. Unless specifically set forth in this Section 3(e) or otherwise expressly set forth in the Operative Documents, no other amounts or schedules shall change as a result of an adjustment under this Section 3(e) without the consent of the Investor.

Anything contained in the Participation Agreement or this Sublease to the contrary notwithstanding, (i) each installment of Sublease Rent payable hereunder whether or not adjusted in accordance with Section 3(e), as the case may be, shall be in an amount at least sufficient to pay in full any payments required to be made of principal and interest in respect of the Loan Certificates then outstanding on the due date of such installment of Sublease Rent, other than any such payment due as a result of an acceleration of the Loan Certificates by reason of a Loan Event of Default, and (ii) each payment of Sublease Termination Value, Sublease Special Termination Value or Sublease Special Special Termination Value and the Sublease Purchase Option Price (or any payment made by reference to or in lieu of any thereof), whether or not a related adjustment

shall have been made in accordance with Section 3(e), shall, together with all Sublease Basic Rent payable and Sublease Renewal Rent simultaneously by the Sublessee pursuant to this Sublease, in each case on the date on which such payment is due, be in an amount at least sufficient to pay in full as of the date of payment thereof, the aggregate, unpaid principal of the outstanding Loan Certificates, together with all unpaid interest thereon accrued to the date on which such amount is paid in accordance with the terms hereof.

Any adjustment pursuant to this Section 3(e) shall be computed as provided for above, including the first proviso to the first paragraph of this Section 3(e), initially by the Investor in good faith and the Investor shall by notice confirm to the Sublessee that the constraints, assumptions and methods of calculation employed in the original calculation were used consistently in the adjustment, except to the extent any such constraints, assumptions or methods shall have been adjusted as provided above. Such adjustments shall be effective from and including the date the Investor shall have furnished to the Sublessee a certificate signed on behalf of the Investor by a Responsible Officer stating the event giving rise to such adjustment and confirming that such adjustments have been properly computed in accordance with the provisions hereof, and shall remain effective until changed in consequence of any inaccuracy discovered in the course of any verification procedure conducted pursuant to this paragraph or in consequence of any event occurring thereafter requiring further adjustment pursuant to this Section 3(e). Within 30 days after the delivery of such notice, the Sublessee may request that an Intermediary Firm verify, after consultation with the Investor and the Sublessee, the accuracy of such computation in accordance with this Section 3(e), and the Investor and the Sublessee hereby agree to provide the Intermediary Firm (subject to the execution by such firm of a confidentiality agreement in form and substance reasonably acceptable to the Investor) with all such information and materials as shall be reasonably necessary in connection therewith; provided, however, that in no event shall the Sublessee have any right to review the Investor's methodology, assumptions or tax returns; provided, further, however that the Sublessee, Sublessor and the Investor agree that the Intermediary Firm's sole responsibility shall be to verify the amount of any payment and that matters of interpretation are not within the scope of such firm's responsibilities. If the Sublessee does not request verification within 30 days after receipt of a notice of a proposed adjustment then such adjustment shall be deemed to be appropriate and shall be final, binding and conclusive on the Sublessee, the Investor and the Sublessor. If the Intermediary Firm confirms that such adjustment is in accordance with this Section 3(e), it shall so certify to the Sublessee, the Sublessor and the Investor, and such certification shall to the extent so verified (but not as to matters of interpretation) be final, binding and conclusive on the Sublessee, the Investor and the Sublessor. If the Intermediary Firm concludes that such adjustment is not in accordance with this Section 3(e), it shall so certify to the Sublessee and the Investor, and the Investor shall again compute the required adjustment. Such further adjustment shall again be subject to the provisions of this Section 3(e) and shall take into account any payments made by the Sublessee prior to such further adjustments. The final determination of any adjustment hereunder shall be set forth in amendments to this Sublease and all other applicable Operative Documents (in the case of any adjustment to Sublease Basic Rent, such adjustment may be effected by a separate supplemental schedule without altering the original schedule of Sublease Basic Rent applicable immediately prior to such adjustment), executed and delivered by the Sublessor, the Sublessee and all other applicable parties; provided, however, that the omission to execute and deliver such amendments

shall not affect the validity and effectiveness of any such adjustment. The reasonable and documented fees, costs and expenses of the Intermediary Firm in verifying an adjustment pursuant to this Section 3(e) shall be paid by the Sublessee; provided, however, that in the event such Intermediary Firm determines that the difference between the present value of the adjusted Sublease Basic Rent, and Sublease Purchase Option Price to be paid under this Sublease as originally calculated by the Investor in connection with such adjustment and the present value of the adjusted Sublease Basic Rent, and Sublease Purchase Option Price as finally determined in accordance with this Section 3(e), in both cases as discounted at the Discount Rate, is greater than 0.10% of the Value of the Undivided Interest, then such expenses of the Intermediary Firm shall be paid by the Sublessor (without right of indemnification by the Sublessee under the Operative Documents).

Section 4. Disclaimer; Warranties; Quiet Enjoyment; German Rights. (a) Disclaimer. AS BETWEEN THE SUBLESSEE AND THE SUBLESSOR, THE SUBLESSEE ACKNOWLEDGES AND AGREES THAT (A) THE FACILITY, IS OF THE SIZE, DESIGN, CAPACITY AND MANUFACTURE SELECTED BY THE SUBLESSEE, (B) THE SUBLESSEE IS SATISFIED THAT THE FACILITY, IS SUITABLE FOR ITS PURPOSES, (C) THE SUBLESSOR IS NOT A MANUFACTURER OR A DEALER IN PROPERTY OF SUCH KIND, (D) THE UNDIVIDED INTEREST IN THE FACILITY IS SUBLEASED HEREUNDER SUBJECT TO THE RIGHTS OF ANY PARTY IN POSSESSION OF THE FACILITY, (E) THE UNDIVIDED INTEREST IN THE FACILITY IS SUBLEASED HEREUNDER IN THE STATE AND CONDITION OF EVERY PART THEREOF WHEN THE SAME FIRST BECAME OR BECOMES SUBJECT TO THIS SUBLEASE, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND BY THE SUBLESSOR OR THE LENDER, (F) THE UNDIVIDED INTEREST IN RESPECT OF THE FACILITY IS SUBLEASED HEREUNDER SUBJECT TO ALL APPLICABLE LAWS, INCLUDING WITHOUT LIMITATION, (1) ZONING REGULATIONS, (2) ENVIRONMENTAL LAWS, (3) BUILDING RESTRICTIONS AND (4) OTHER LAWS NOW IN EFFECT OR HEREAFTER ADOPTED, WITHOUT REPRESENTATION OR WARRANTY OF ANY KIND BY THE SUBLESSOR OR THE LENDER AND (G) THE UNDIVIDED INTEREST IN RESPECT OF THE FACILITY IS SUBLEASED HEREUNDER AS-IS, WHERE-IS, WITH ALL FAULTS AND WITHOUT REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED BY THE SUBLESSOR OR THE LENDER, AS TO THE TITLE, MERCHANTABILITY, QUALITY, COMPLIANCE WITH SPECIFICATIONS, CONDITION, DESIGN, OPERATION, FREEDOM FROM PATENT OR TRADEMARK INFRINGEMENT, ABSENCE OF LATENT DEFECTS, ABSENCE OF DEFECTS THAT AN EXAMINATION OF THE FACILITY OUGHT TO HAVE REVEALED OR DESCRIPTION OF THE FACILITY OR ANY PROPERTY IN RESPECT OF THE PROPERTY RIGHTS OR FITNESS FOR USE OF THE FACILITY (OR ANY PART THEREOF FOR ANY PARTICULAR PURPOSE), OR ANY OTHER MATTER WHATSOEVER WITH RESPECT TO THE FACILITY (OR ANY PART THEREOF) OR THE UNDIVIDED INTEREST, except that the Sublessor represents and warrants that on the Closing Date it shall have received such rights and interests in the Undivided Interest being conveyed to it on the Closing Date and each of the Bank and the Sublessor represents and warrants that on the Closing Date there will be no Trustee's Lien on such rights or interests or on the Trust Estate attributable to it. The provisions

of this Section 4(a) have been negotiated, and, except to the extent otherwise expressly stated, the foregoing provisions are intended to be a complete exclusion and negation of any representations or warranties by the Sublessor, express or implied, with respect to the Facility or any Parts of either thereof or the Undivided Interest that may arise pursuant to any Applicable Law now or hereafter in effect, or otherwise

(b) Warranties; Power of Attorney; Claims Against Warrantor. The Sublessor hereby constitutes the Sublessee, its successors and assigns, the Sublessor's true and lawful attorney, irrevocably (subject to the third sentence of this Section 4(b)) at the Sublessee's sole cost and expense, with full power (in the name of the Sublessor or otherwise) to exercise all rights with respect to the Warranties, including the right to ask, require, demand, receive and give acquittance for any and all monies and claims for money due or to become due under, or arising out of, the Warranties, and, for such period as the Sublessee may exercise rights with respect to the Warranties under this Sublease, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute or take control of any proceedings, and to obtain any recovery in connection therewith, which the Sublessee may deem necessary or advisable. The Sublessee, to the exclusion of the Sublessor, shall have the benefit of and shall be entitled to enforce, in its own name, any and all of the Warranties, including all claims for damages arising from the Warranties. Notwithstanding the foregoing, none of the powers or rights conferred upon the Sublessee in this Section 4(b) may be exercised by the Sublessee if at such time a Sublessee Event of Default shall have occurred and be continuing and the Sublessee shall have been deprived of possession of the Facility pursuant to the Sublessor's exercise of its remedies under Section 15. Further notwithstanding the foregoing, any amount that is payable under a Warranty shall not be payable to or retained by the Sublessee if at the time of such payment a Sublessee Major Default or a Sublessee Event of Default shall have occurred and be continuing, but shall be paid to and held by the Sublessor as security for the obligations of the Sublessee under this Sublease (or, if the Lien of the Loan Agreement shall not have been discharged pursuant to the terms thereof, such amounts shall be paid to and held by the Lender in accordance with the terms of the Loan Agreement) in accordance with Section 23 hereof as security for the obligations of the Sublessee under this Sublease and the other Operative Documents or shall be applied as Sublease Supplemental Rent towards payment of the Sublessee's obligations under the Operative Documents at the Sublessor's option during such time as any such Sublessee Major Default or Sublessee Event of Default shall have occurred and be continuing. At such time thereafter as no Sublessee Major Default or Sublessee Event of Default shall be continuing, all amounts at the time held by the Sublessor, or, if applicable, the Lender, in excess of the amounts applied as Sublease Supplemental Rent in accordance with the preceding sentence, shall be paid to the Sublessee. The Sublessor agrees to execute and deliver such further documents and take such further action, at the Sublessee's expense, as may be reasonably requested by the Sublessee in order to obtain such warranty service as may be furnished for the Facility or any Part thereof by any of the Warrantor. So long as no Sublessee Major Default or Sublessee Event of Default shall have occurred and be continuing, any payment received under any Warranty with respect to an event not constituting a Sublease Facility Partial Event of Loss or Sublease Facility Event of Loss shall be applied in the manner provided in the final sentence of Section 10(e), anything in this Section 4(b) above to the contrary notwithstanding.

(c) Quiet Enjoyment. The Sublessor covenants that, unless a Sublessee Event of Default shall have occurred and be continuing and the Sublessee shall have received notice thereof (other than in the case of a Sublessee Event of Default set forth in Section 14(d), (e) or (f)) from the Sublessor (or, so long as the Lien of the Loan Agreement shall not have been discharged in accordance with the terms thereof, from the Lender), the Sublessor shall not take or cause to be taken any action contrary to the Sublessee's or any permitted sub-sublessee's rights under this Sublease or any permitted sub-sublease to possession, use and quiet enjoyment of the Facility or any Part thereof.

(d) German Rights. (i) Power of Attorney; Claims Against German Lessor. The Sublessor hereby constitutes the Sublessee, its successors and assigns, the Sublessor's true and lawful attorney, irrevocably (subject to the third sentence of this Section 4(d)(i)), with full power (in the name of the Sublessor or otherwise) to exercise all rights with respect to the German Rights, including the right to ask, require, demand, receive and give acquittance for any and all monies and claims for monies and claims for money due or to become due under, or arising out of, the German Rights, and, for such period as the Sublessee may exercise rights with respect to the German Rights under this Sublease, to endorse any checks or other instruments or orders in connection therewith and to file any claims or take any action or institute or take control of any proceedings, and to obtain any recovery in connection therewith, which the Sublessee may deem necessary or advisable. The Sublessee, to the exclusion of the Sublessor, shall have the benefit of and shall be entitled to enforce, in its own name, any and all of the German rights, including all claims for damages arising from the German Rights. Notwithstanding the foregoing, none of the powers or rights conferred upon the Sublessee in this Section 4(d) may be exercised by the Sublessee but may instead be exercised by the Sublessor if at such time a Sublessee Event of Default or Sublessee Major Default shall have occurred and be continuing, except that in such event the Sublessee shall have the non-exclusive right (together with the Sublessor) to exercise any right or take any action to preserve its rights in the German Equipment or under the German Documents, including, without limitation, the exercise of any purchase right or option contained therein. Further, notwithstanding the foregoing, any amount that is payable to the lessee under the German Lease shall not be payable to or retained by the Sublessee if at the time of such payment a Sublessee Major Default or Sublessee Event of Default shall have occurred and be continuing, but shall be paid to and held by the Sublessor (or, if the Lien of the Loan Agreement shall not have been discharged pursuant to the terms thereof, the Lender in accordance with the terms of the Loan Agreement) in accordance with Section 23 hereof as security for the obligations of the Sublessee under this Sublease and the other Operative Documents or shall be applied towards payment of the Sublessee's obligations at the Sublessor's option during such time as any such Sublessee Major Default or Sublessee Event of Default shall have occurred and be continuing. At such time thereafter as no Sublessee Major Default or Sublessee Event of Default shall be continuing, all amounts at the time held by the Sublessor, or if applicable, the Lender, in excess of the amounts, applied in accordance with the preceding sentence shall be paid to the Sublessee. The Sublessor agrees to execute and deliver such further documents and take such further action, at the Sublessee's expense, as may be reasonably requested by the Sublessee in order for the Sublessee to enforce the German rights. So long as no German Lease Default, German Lease Event of Default, Sublessee Major Default or Sublessee Event of Default shall

have occurred and be continuing, any amount recovered by the Sublessee under the German Lease shall be applied in accordance with the final sentence of Section 10(e) hereof.

(ii) Sublessor Cure Rights. Notwithstanding the provisions of clause (i), in the event a German Lease Default shall have occurred and be continuing, the Sublessor shall have the right to cure such German Lease Default on not less than 5 Business Days' notice to the Sublessee (or such shorter period as may be required to permit the Sublessor sufficient time to cure such German Lease Default prior to the expiration of the applicable cure period), provided however, if the Sublessor shall exercise such cure right the Sublessee shall reimburse the Sublessor for the amount of any payment made to effect such cure and the amount of the Sublessor's reasonable and documented costs and expenses incurred in connection with such cure, together with interest thereon, to the extent permitted by Applicable Law, at the Overdue Rate, all of which shall be deemed Sublease Supplemental Rent, due and payable by the Sublessee upon demand.

(e) Certain Property Rights. The Sublessor hereby grants to the Sublessee an irrevocable power of attorney for the duration of this Sublease to exercise the rights of the Sublessor under the Location Permits, the Network Deeds and the Channel Building Right Deed to have access to the Network and the Cooling Water Channel and the Sublessor shall provide, at the Sublessee's sole cost and expense, the Sublessee such assistance as is reasonably necessary to exercise the rights under such Location Permits, the Network Deeds and the Channel Building Right Deed. The Sublessee, to the exclusion of the Sublessor, shall have the benefit of and shall be entitled to enforce any and all of the aforementioned rights under the Location Permits, the Network Deeds and the Channel Building Right Deed. Notwithstanding the foregoing, none of the powers or rights conferred upon the Sublessee in this Section 4 (e) may be exercised by the Sublessee if at such time a Sublessee Event of Default shall have occurred and be continuing and the Sublessee shall have been deprived of possession of the Facility pursuant to the Sublessor's exercise of its remedies under Section 15.

Section 5. Return of Undivided Interest; Environmental Report. (a) Return of Undivided Interest. Upon the termination of this Sublease unless the Sublessee or an Appropriate Purchaser has purchased all of the Sublessor's Lease Interest, the Sublessee shall promptly redeliver the Undivided Interest to the Sublessor. Upon such redelivery, (i) the Undivided Interest shall be free and clear of all Liens (other than Trustee's Liens, Bank Liens, the Lien of the Loan Agreement, the Lien of the Lease, the Lien of the Notarial Deed of Establishment, the Lien of the Notarial Deed of Easement, the Building Right, the Turbine Building Right, the Network Building Rights, the Channel Building Right, the Liens of the First Priority Mortgage and the Second Priority Mortgage and the Permitted Liens described in clause (vii) of the definition thereof, (ii) the Facility shall be in the condition required pursuant to Section 7(a) hereof (provided that if any Applicable Dutch Law is being contested, the Sublessee shall provide notice to the Sublessor, which shall describe the contest in reasonable detail and the status thereof), (iii) the Facility shall have (ordinary wear and tear excepted) at least the capability and functional ability to perform substantially at the ratings for which it was designed, on a continuing basis in normal commercial operation, all functions for which they were designed in accordance with the Plans and Specifications, (iv) the Facility shall be in compliance with all requirements of manufacturers required for the maintenance in full force and effect of any material warranty then

in effect with respect to the Facility, (v) no Part shall be a temporary Part and any replacement Part shall satisfy the standards of Section 7(c) and (vi) the Facility shall be in condition at least as good as it would have been in had it been operated in a Base Load manner whenever possible during the Sublease Term. Prior to such redelivery of the Undivided Interest to the Sublessor, the Sublessee will ensure that nothing would preclude the Trustee, upon or promptly after such redelivery, from entering into contractual arrangements for the wheeling, directly or indirectly, of the Entitlement Share to which it will be entitled pursuant to the Control Documents (x) over the high voltage grid throughout The Netherlands to any large customer (*bijzondere groot verbuiker*) within the meaning of Section 1, paragraph 1 of the Electricity Act located within The Netherlands or to a point of interconnection for export to any of its neighboring countries and (y) at commercially reasonable wheeling rates or tariffs. Prior to redelivery of the Undivided Interest under this Section 5, upon not less than 45 days' prior request of the Sublessor, the Sublessee shall perform such maintenance on the Facility which is in addition to that otherwise required to be performed by the Sublessee hereunder as the Sublessor may reasonably specify, in the same manner and with the same care as used by the Sublessee with similar facilities of its own (using its best efforts on a time-available basis for such work) and in accordance with Prudent Industry Practice. If the Sublessee is unable to perform such requested maintenance, it will use its best efforts to arrange to have such maintenance performed by another Person acceptable to the Sublessor at rates comparable to those the Sublessee obtains for such maintenance performed on its own facilities. The Sublessor shall either promptly reimburse the Sublessee for the Sublessee's costs or pay such rates charged by any such Person acceptable to the Sublessor in connection with such requested maintenance. The Sublessee shall also surrender to the Sublessor originals or copies of all documents, instruments, plans, maps, specifications, manuals, drawings and other documentary materials relating to the installation, operation, maintenance, construction, design, modification and repair of the Facility as shall be in the Sublessee's or any Affiliate of the Sublessee's possession and as shall be reasonably appropriate or necessary for the continued operation of the Facility. The Sublessee shall effect delivery of the Undivided Interest at its own cost and expense by executing and delivering to the Sublessor an instrument or instruments in form and substance reasonably satisfactory to the Sublessor evidencing surrender by the Sublessee of all the Sublessee's rights to the Undivided Interest under this Sublease and to the possession thereof. At least 60 but not more than 120 days prior to redelivery of the Undivided Interest pursuant to this Section 5(a), the Sublessee shall perform the Return Acceptance Tests and shall promptly provide the results to the Sublessor. If the Unit shall not pass such tests, the Sublessee shall, at its own expense, take such actions as may be necessary to enable the Unit to pass such tests prior to such redelivery. At the Sublessor's request, if possible, the Sublessee shall provide insurance in accordance with Section 11 hereof for six months following the date of return of the Undivided Interest at the Sublessor's sole cost and expense which cost and expense shall equal the Sublessee's actual cost and expense for such insurance.

(b) Environmental Report. At least 60 days but not more than 180 days prior to return of the Undivided Interest pursuant to this Section 5, the Sublessee will at its own cost and expense provide to the Sublessor an environmental and safety report as described by the succeeding sentence. The environmental and safety report shall (i) be in conformity with common industry practice of environmental and safety consultants in The Netherlands and the EU, (ii) be reasonably satisfactory in form and substance to the Sublessor with respect to the environmental

condition and safety of the Facility, the Facility Personal Property, and the Station Site, (iii) be prepared by an environmental and safety consultant reasonably acceptable to the Sublessor and the Investor, (iv) estimate the current liabilities under Applicable Dutch Law including, without limitation, Environmental Law in connection with the Facility, the Facility Personal Property, and the Station Site, (v) assess the potential sources of future liabilities under Applicable Dutch Law in connection with the Facility, Facility Personal Property, and the Station Site, (vi) contain a final assessment of the environmental and safety conditions of the Facility, and the Station Site and (vii) provide the information as of a date no more than 180 days prior to the date of return, provided that the Sublessee shall represent to the Sublessor in writing on the date of return that no adverse changes in the environmental and safety conditions of the Facility, and the Station Site has occurred in the period between the date of such report and the date of return. The investigation connected with the environmental and safety report shall include, without limitation, of the foregoing, information concerning (i) any areas of the Facility, and the Station Site which contain or are reasonably likely to contain or emit Hazardous Substances or conditions representing a risk to human health and life or the environment or which violates Applicable Dutch Law or permit requirements (including, without limitation, permitted exhaust levels) by any Governmental Authority ("Environmental and Safety Standards") and (ii) any violations of or non-compliance with Environmental Laws. Upon completion of the investigation, the Sublessee shall, at its sole cost and expense, diligently and in good faith: (i) conduct any additional investigations and provide to the Sublessor reports thereof that may be recommended by the environmental and safety consultant as necessary to identify and determine the extent of any Hazardous Substances and conditions representing a risk to human health and environment that may be present in excess of Environmental and Safety Standards and any violation of, or non-compliance with, Applicable Dutch Law and (ii) develop and execute a plan to correct and remedy such contamination, emission, violation or non-compliance in compliance with Applicable Dutch Law. The Sublessor and the Sublessee shall consult with one another concerning the appropriate scope of all reports and investigations subsequent to the environmental and safety report, and the Sublessee shall keep the Sublessor informed with respect to any discussions and negotiations with any applicable Governmental Authority concerning potential plans to correct any violation or non-compliance or to conduct remedial activities. Any remediation plan shall include, but shall not be limited to, plans for full response, remediation, removal, or other corrective action, and the protection, or mitigative action associated with the protection, of natural resources including wildlife, aquatic species, vegetation and Persons associated with, or employed at, the Facility, and the Station Site or any modification thereto, as required by any Applicable Dutch Law.

Section 6. Liens. The Sublessee shall not directly or indirectly create, incur, assume, permit or suffer to exist any Lien on or with respect to the Undivided Interest (or any part thereof), the Facility, the Property Rights, the Building Right, the Turbine Building Right, the Network Building Rights or the Channel Building Right or this Sublease other than Permitted Liens. The Sublessee shall promptly, at the Sublessee's own expense, take such action as may be necessary to duly discharge any Lien on or with respect to the Undivided Interest (or any part thereof), the Facility, the Building Right, the Turbine Building Right, the Network Building Rights or the Channel Building Right other than a Permitted Lien arising at any time during the Sublease Term.