# EXHIBIT A-6 pt. 2

Section 7 Maintenance; Sublease Modifications; Replacement Parts (a) Maintenance. The Sublessee, at its own expense, will maintain, overhaul, inspect, test, repair and service, or cause to be maintained, overhauled, inspected, tested, repaired and serviced by any sub-sublessee to whom any such duty is delegated (provided that any such sub- sublessee is permitted to operate the Facility, under Applicable Dutch Law), or by other appropriate persons (it being agreed that notwithstanding any such delegation, the Sublessee shall remain primarily liable for the performance of its obligations under this Section 7), the Facility, on a basis no less favorable than the Sublessee's maintenance and repair program from time to time for similar facilities owned, leased or operated by the Sublessee or its Affiliates and in accordance with Prudent Industry Practice. In addition, the Sublessee shall at all times maintain, overhaul, inspect, test, repair and service or cause the Facility, to be maintained, overhauled, inspected, tested, repaired and serviced (i) in good operating order, repair and condition (reasonable wear and tear excepted), (ii) in compliance with Applicable Dutch Law (provided, however, that the Sublessee shall not be required to comply with Applicable Dutch Law to the extent that it is contesting the application thereof in good faith and through appropriate proceedings and there is no material risk of the imposition of any sanction on the Lessor, the Sublessor, the Investor, or the Lender as a result of such non-compliance and there is no material risk that such non-compliance would subject the Lessor, the Sublessor, the Investor or the Lender to criminal or material civil liability and there is no material risk that such non-compliance would materially adversely affect the right, title and interest of the Lessor, the Sublessor, the Investor or the Lender in or to the Facility, or any Part thereof or the Undivided Interest), (iii) in compliance with (A) the requirements of any applicable insurance policies required pursuant to Section 11 hereof and (B) the requirements of the German Documents, and (iv) at a level and in a manner that will maintain any existing manufacturer's Warranties.

(b) Sublease Required and Optional Modifications. The Sublessee, at its own cost and expense, shall from time to time make or cause to be made such modifications and improvements to the Facility, as shall be required to comply with Applicable Dutch Law, the provisions of any insurance policy required to be carried hereunder and the German Documents and to maintain the Warranties as necessary for compliance with Section 7(a) hereof ("Sublease Required Modifications"), and may from time to time make or cause to be made such other modifications and improvements to the Facility, as the Sublessee shall consider desirable in the proper conduct of its business ("Sublease Optional Modifications" and together with Sublease Required Modifications, "Sublease Modifications"); provided, however, that no such Sublease Optional Modification shall (i) impair the operation of the Facility, as measured immediately prior to such Sublease Modification, assuming that the Facility, shall then be in the condition required to have been maintained by the terms of this Sublease, (ii) decrease the value, residual value, remaining useful life or utility of the Facility, or the value or residual value of the Sublessor's Undivided Interest, as measured immediately prior to such Sublease Modification, assuming that the Facility, shall then be in the condition required to have been maintained by the terms of this Sublease, (iii) cause the Facility, to become commercially unusable by any Person other than the Sublessee or an Affiliate of the Sublessee or (iv) alter the primary function of the Facility.

(c) Replacement of Parts. Except after the occurrence of a Sublease Facility Event of Loss or a Sublease Facility Partial Event of Loss, the Sublessee, at its own expense, shall promptly replace all Parts that were incorporated or installed in or attached to the Facility, as of

the Closing Date or that may be incorporated or installed in or attached to the Facility, in order to comply with Sections 7(a) and 7(b) hereof, and that from time to time fail to function or become worn out, permanently rendered unfit for use, destroyed, damaged beyond repair, lost, condemned, confiscated, stolen or seized for any reason whatsoever. All replacement Parts shall be free and clear of all Liens except Permitted Liens and shall be in at least as good operating condition as the Parts replaced (assuming that such replaced Parts are in the condition required by the Sublease), and shall have at least the same value (measured by such Part's contribution to the Facility's earning power as opposed to the original cost of the Part), utility and useful life as the Part replaced (assuming such replaced Parts were in the condition and repair required to be maintained by the terms hereof), except that a temporary replacement Part may be used which does not satisfy these standards, provided that such temporary replacement Part is replaced with a Part that does satisfy these standards as soon as commercially practicable and in any case before the return of the Facility pursuant to Section 5. In addition, any replacement Part (either permanent or temporary) shall not diminish the value, utility and useful life of the Undivided Interest.

(d) Title to Sublease Nonseverable Modifications, Sublease Severable Modifications and Replacement Parts.

(i) Sublease Nonseverable Modifications and Sublease Severable Modifications. Title to all Parts and Sublease Modifications that (i) are Sublease Required Modifications or (ii) may not be removed without material damage to the Facility, ("Sublease Nonseverable Modifications") shall, without further act, vest in EZH (subject, in the case of Modifications constituting part of the German Equipment to the rights of the owner of the German Equipment), free and clear of any Liens except Permitted Liens. All such Parts or Sublease Modifications shall be deemed to constitute part of the Facility, and an undivided interest equal to the Undivided Interest Percentage in respect thereof shall become part of the Undivided Interest and subject to this Sublease. Title to all Sublease Optional Modifications that are not Sublease Nonseverable Modifications ("Sublease Severable Modifications") shall remain in the EZH, any such Sublease Severable Modifications shall be deemed not to be part of the Facility, or the Undivided Interest and shall not be subject to this Sublease except as expressly provided for herein. On or prior to the 60th day preceding the date of redelivery of the Undivided Interest to the Sublessor pursuant to Section 5 hereof, the Sublessee shall deliver to the Sublessor a notice specifying each Sublease Severable Modification which the Sublessee intends to remove on or prior to the date set for return and the estimated fair market value thereof. The Sublessor shall have the right to purchase an undivided interest in any Sublease Severable Modification identified in such notice for the Fair Market Sales Value determined by the Independent Appraisal of such undivided interest in such Sublease Severable Modification.

(ii) Replacement Parts. All Parts (except Sublease Severable Modifications to which EZH has title) that are at any time removed from the Facility, shall remain the property of the owner (subject to Permitted Liens) and shall remain subject to the Lease and this Sublease until such time as such Parts shall be replaced by Parts that have been incorporated or installed in or attached to the Facility. Immediately upon any replacement Part becoming incorporated or installed in or attached to the Facility, without further act, (A) ownership of the replaced part shall thereupon vest in EZH, or its designees, free and clear of all rights of the Sublessor and shall no

longer be deemed a Part hereunder, (B) ownership of such replacement Part shall thereupon vest in EZH (subject to Permitted Liens), and (C) such replacement Part shall become part of the Facility, and an undivided interest equal to the Undivided Interest Percentage in such Part shall become part of the Undivided Interest and subject to this Sublease.

(e) Financing Sublease Modifications. The Sublessee shall have the right to pay for or finance the cost of any Sublease Modification, without involving the Sublessor, the Lender or the Investor, on terms and conditions acceptable to the Sublessee. If the Sublessee does not elect to pay for or finance the cost of such Sublease Modification, the Sublessee may arrange (x) for one or more other Persons (the "Supplemental Lender") to provide the Sublessor with one or more non-recourse loans on terms and conditions acceptable to the Sublessee for all or part of the Undivided Interest Percentage of the cost of the Sublease Modification (such financing being referred to as a "Supplemental Debt Financing") or (y) for the Investor to provide the Sublessor with equity financing on terms and conditions acceptable to the Sublessee for all or part of the Undivided Interest Percentage of the cost of such Sublease Modification; provided, however, with respect to clause (y), neither shall the Investor be obligated to provide such equity financing nor shall the Sublessee be obligated to accept such equity financing from the Investor. At the request of the Sublessee, the Sublessor shall negotiate in good faith to finance the Undivided Interest Percentage of the cost of the Sublease Modifications through a Supplemental Debt Financing; provided, however, that the Lender shall not be obligated to finance such Supplemental Debt Financing and provided further, that the Sublessor's obligations to negotiate in connection with such Supplemental Debt Financing shall be subject to the satisfaction or waiver by the Sublessor of the following conditions precedent:

(i) such Supplemental Debt Financing shall not be the fifth or more Supplemental Debt Financing;

(ii) any additional loan certificates (the "Additional Loan Certificates") issued in such Supplemental Debt Financing shall be in the form of non-recourse loans denominated in Dollars having a final maturity date no later than the final maturity date of the existing Loan Certificates;

(iii) on the closing date of the Supplemental Debt Financing, there shall be adjustments, if necessary, pursuant to Section 3(e) hereof;

(iv) (A) the Sublessee shall have paid, or made arrangements acceptable to the Sublessor to pay to, the Sublessor on an After-Tax basis all of the documented out- of-pocket costs and expenses (including the fees and expenses of counsel to the Investor and the reasonable expenses of the Investor's financial advisor, if any) incurred by the Investor in connection with such Supplemental Debt Financing and the Administrative Fee and (B) the Sublessee shall have paid, or made arrangements acceptable to the Lender to pay to, the Lender on an After-Tax basis all of the documented out-of-pocket costs and expenses (including the fees and expenses of counsel to the Lender) incurred by the Lender in connection with such Supplemental Debt Financing;

(v) on the closing date of the Supplemental Debt Financing, no Sublessee Event of Default, Sublessee Major Default, German Lease Major Default or German Lease Event of Default shall have occurred and be continuing or be caused by such Supplemental Debt Financing,

(vi) such Supplemental Debt Financing shall be for an amount not less than the Minimum Supplemental Debt Financing Amount and shall not be for an amount greater than the Maximum Supplemental Debt Financing Amount; provided, however, in connection with such Sublease Modification and such Supplemental Debt Financing, the Sublessor and the Investor shall have each received a certificate executed on behalf of the Sublessee by an officer thereof (a copy of which shall be given to the Lender if the requirement for such certificate shall not have been waived by the Sublessor and the Investor) stating that (A) the ratio of the aggregate principal amount of the outstanding Loan Certificates, after giving effect to the issuance of the Additional Loan Certificates, to the Fair Market Sales Value (determined in good faith by a Responsible Officer of the Sublessee) of the Sublessor's Lease Interest, determined immediately after and taking into account the Sublease Modification and the issuance of the Additional Loan Certificates, shall not be greater than the ratio of the aggregate principal amount of the outstanding Loan Certificates prior to the issuance of the Additional Loan Certificates to the Fair Market Sales Value (determined in good faith by a Responsible Officer of the Sublessee) of the Sublessor's Lease Interest, determined immediately prior to the Sublease Modification and the issuance of the Additional Loan Certificates, and (B) the amount of such Supplemental Debt Financing shall not exceed the lesser of (1) the Undivided Interest Percentage of the cost of the Sublease Modification and (2) the increase in the Fair Market Sales Value of the Sublessor's Lease Interest, and in any case not more than the Maximum Supplemental Debt Financing Amount;

(vii) the Investor shall have received a favorable tax opinion from its tax counsel satisfactory to the Investor, including with respect to the Lease and the Sublease regarding Code Section 467 matters;

(viii) there shall be no unindemnified adverse effect to the Investor in connection with such Supplemental Debt Financing and the Net Economic Return shall not be adversely affected by the consummation of such Supplemental Debt Financing;

(ix) such Supplemental Debt Financing shall be for Sublease Modifications only to the extent not previously financed in any other Supplemental Debt Financing;

(x) there shall be no material amendments to the Operative Documents except for the inclusion, if any, of additional covenants upon and indemnities from the Sublessee, which must be acceptable to the Sublessee in its sole discretion; provided, however, no amendment shall be made to any Operative Document if, in the Investor's reasonable judgment, such revision shall have an adverse effect on the Investor;

(xi) all necessary authorizations, approvals and consents in connection with such Supplemental Debt Financing shall have been obtained from each Person whose

authorization, approval or consent is necessary to consummate the proposed Sublease Modification and such Supplemental Debt Financing with respect to the Sublessee, the Investor, the Sublessor and the Lender, and such authorizations, approvals and consents shall be in full force and effect on the closing date of such Supplemental Debt Financing;

(xii) the consummation of the transactions contemplated by the Supplemental Debt Financing shall not cause the Investor to account for the transactions contemplated by the Operative Documents as other than a "leveraged lease" under Financial Accounting Standards Board Statement No. 13 (the Sublessor hereby agrees that it shall provide the Sublessee with an Officer's Certificate from a Responsible Officer of the Investor to such effect if this condition (xii) is or will be satisfied);

(xiii) all payment dates for principal and interest payments on the Additional Loan Certificates shall be Sublease Rent Payment Dates;

(xiv) on the closing date of such Supplemental Debt Financing, each of the Sublessee, the Investor, the Sublessor, and the Lender shall have executed and delivered all appropriate supplements to the Operative Documents that are necessary to consummate such Supplemental Debt Financing, in form and substance reasonably satisfactory to the Sublessor and the Lender;

(xv) each of the Investor, the Sublessor, and the Lender shall have received an opinion of counsel for the Sublessee, in form and substance satisfactory to the Investor, the Sublessor and the Lender, dated the date of the issuance of such Additional Loan Certificates, to the effect that: (A) all requirements of the Participation Agreement and the Sublease in respect of the Additional Loan Certificates and the Sublease Modifications have been satisfied, (B) each of the supplements to the Operative Documents referred to in Section 7(e)(xiv) hereof has been duly authorized, executed and delivered by the parties thereto and each of the Operative Documents as supplemented constitutes the legal, valid and binding obligation of each such party, enforceable in accordance with its terms, (C) the supplements to the Operative Documents referred to in Section 7(e)(xiv) hereof (together with any appropriate financing statements or similar notices) that are required by Applicable Law to be filed or recorded in order to establish, preserve and protect the Lien of the Loan Agreement and the Lien of the First Priority Mortgage have been or will be filed on the closing date of such Supplemental Debt Financing and recorded in the manner and place required by Applicable Law in order to establish, preserve and protect the Lien of the Loan Agreement and the Lien of the First Priority Mortgage and (D) no approval, consent or withholding of objection on the part of, or filing, registration or qualification with, any Governmental Authority other than those that have been or will be obtained is necessary in connection with the execution and delivery of such supplements to the Operative Documents referred to in Section 7(e)(xiv) hereof or the performance by the Sublessee of any of the transactions contemplated by such Supplemental Debt Financing; and such opinion shall cover other matters incident to such Supplemental Debt Financing as the Sublessor or the Lender may reasonably request;

(xvi) each of the Investor, the Sublessor and the Lender shall have received from the Sublessee a certificate dated the date of the issuance of the Additional Loan Certificates executed on behalf of the Sublessee by an officer thereof stating that all conditions precedent to the issuance of such Additional Loan Certificates have been satisfied;

(xvii) with respect to such Supplemental Debt Financing, the weighted average life-to-maturity applicable to all outstanding Loan Certificates after the issuance of the Additional Loan Certificates shall not vary from the weighted average life-to-maturity reflected in the amortization schedules for all outstanding Loan Certificates immediately prior to the issuance of the Additional Loan Certificates;

(xviii) each of the Investor and the Lender shall have received at least 90 days' prior written notice in sufficient detail of such Supplemental Debt Financing and such other information and copies of such other documents as the Investor or the Lender may reasonably request in connection with such Supplemental Debt Financing;

(xix) consummation of any transaction contemplated by such Supplemental Debt Financing shall not violate any Applicable Law, including, without limitation, the Act on EEC Regulations of Award Procedures (Raamwet EEC Voorschriften Aanbestedingen (Staatsblad 93 212)) or any decrees issued thereunder, if applicable; and

(xx) the security interests of the Sublessor and the Lender shall not be adversely affected by such Supplemental Debt Financing which shall otherwise be in full compliance with all provisions of the Loan Agreement.

(f) Operating Logs; Plans and Specifications; Common Facilities Book. The Sublessee shall (a) maintain daily operating logs, showing the output of the Facility, (b) keep maintenance and repair reports in sufficient detail to indicate the name, character and date of major work done, including, without limitation, the cost of maintenance and repair to the extent that records of the cost of maintenance and repair are normally maintained by the Sublessee as part of its management information systems, (c) maintain a current operating manual and the complete set of Plans and Specifications (which Plans and Specifications shall reflect each Sublease Modification having a cost in excess of $500,000), (d) maintain a current Common Facilities Book which is adequate to enable an engineer not otherwise familiar with the Facility to identify and locate the various components of the Common Facilities and (e) maintain records of the fuel costs and other costs of the Facility to the extent that Sublessee normally maintains records of such costs as part of its management information systems. Such logs, reports, manual, Plans and Specifications, records and Common Facilities Book (which logs, reports, manual, Plans and Specifications, records and Common Facilities Book, shall as between the Sublessor and the Sublessee, be deemed the property of the Sublessor upon the expiration or the earlier termination of this Sublease under circumstances in which the Sublessee does not purchase the Sublessor's Lease Interest in connection with such expiration or earlier termination) shall be kept on file by the Sublessee at the Sublessee's offices at the Station Site or such other location as the Sublessee may designate from time to time by notice to the Sublessor and shall there be made available to the Sublessor in connection with any inspection pursuant to Section 12 hereof;

provided, however, that so long as no Sublessee Event of Default shall have occurred and be continuing, such logs, records and reports (but not such manual, Plans and Specifications or Common Facilities Book) may be destroyed in accordance with the Sublessee's normal document retention program applicable to the Facility, and the Common Facilities of the Sublessee but in no event prior to two (2) years after the date of such logs, records and reports

(g) Reports. To the extent permissible under Applicable Dutch Law, the Sublessee shall prepare (or cause to be prepared) and file in a timely fashion, or if the Sublessor shall be required to file, the Sublessee shall furnish to the Sublessor within a reasonable time prior to the date for filing, all reports with respect to the Undivided Interest or the Facility, or the condition or operation thereof, that shall be required to be filed with any Governmental Authority.

Beginning in the year 1998, concurrently with the delivery of an Officer's Certificate pursuant to Section 11(d)(iv)(E) of the Participation Agreement (a "Report Delivery Date"), the Sublessee shall furnish to the Sublessor a report stating the total cost of all Sublease Modifications and describing separately and in reasonable detail each Sublease Modification (or related group of Sublease Modifications) having a value in excess of 700,000 Dutch Guilders made during the period from the date hereof to the first Report Delivery Date in 1998, in the case of the first such report, and during the period from the end of the period covered by the last previous report to the date one year from the end of such previous period, in the case of subsequent reports.

The Sublessee shall make available to the Sublessor for reasonable inspection and review the results of all KEMA thermal efficiency audits (or any successor to such audits). The Sublessee shall furnish to the Sublessor a copy of each of (i) the portions of any Annual Operating Review pertaining to the Facility, (ii) the E-Plan, (iii) SEP's annual report, (iv) "Electricity in The Netherlands" published by SEP, (v) annual environmental and safety reports, if any, filed with the province of Zuid-Holland or any other Governmental Authority, including, without limitation, the Environmental Annual Report and (vi) any other report reasonably requested by the Sublessor to the extent such report relates to the Facility, and provided that such report is prepared by the Sublessee or available to the Sublessee without unreasonable expense or effort and provided further, that the Sublessee shall not be required to furnish reports or portions thereof containing confidential or proprietary information. To the extent that any such reports are available in the English language, the Sublessee shall furnish such English language versions. The Sublessee will package such reports as are to be furnished hereunder and furnish such packages of reports on a semiannual basis, commencing with the first Report Delivery Date.

(h) Substitution of German Equipment. If the German Lessor shall not have exercised the put option under the applicable German Lease in respect of the "Expiry Date" thereunder and if none of the Sublessee nor any other Person entitled to do so shall have exercised the right of first refusal provided for in Section 15.3 thereof (the "Right of First Refusal"), the Sublessee shall have the right to replace the relevant German Equipment (the "Subject German Equipment") with Substitute German Equipment. As a precondition to such substitution, the Sublessee shall give written notice to the Sublessor of failure by the German Lessor to have exercised its put option under the German Lease and whether the Sublessee or any Person entitled to do so shall have exercised its Right of First Refusal. Such notice shall be given to the

Sublessor and the Investor at least 150 days prior to the Expiry Date together with (x) an Officer's Certificate of the Sublessee to the effect that the Sublessee is in compliance with Section 7 and Section 11 hereof and (y) (i) an engineer's report to the effect that the Substitute German Equipment qualifies as "Substitute German Equipment" within the meaning of the definition thereof and (ii) an appraisal, each in form satisfactory to the Investor. The Sublessee shall also furnish to the Sublessor all other information regarding the Substitute German Equipment which it may reasonably require. If the Sublessor refuses, in its discretion, to accept such Substitute German Equipment, then EZH will not have the right to effect any substitution of German Equipment hereunder. Failure by the Sublessee to comply with the provisions of this Section 7(h), including the furnishing by the required date, of the notice, certificate, engineer's report and appraisal referred to above, shall void ab initio the Sublessee's right to effect such substitution, unless otherwise agreed by the Sublessor. All costs and expenses incurred with respect to the exercise of the Sublessee's right of substitution under this Section 7(h) shall be borne by the Sublessee.

Section 8. Operation and Use; Possession; Sub-Subleasing. (a) Operation and Use. The Sublessee shall not operate or use the Facility, or any Part thereof or suffer or permit the Facility, or any Part thereof to be operated or used in violation of (i) any Applicable Dutch Law, (ii) the requirements of any applicable insurance policies required to be maintained pursuant to Section 11 hereof, (iii) the requirements of the German Lease, or (iv) licenses in effect from time to time necessary for the continued operation of the Facility.

(b) Possession; Sub-Subleasing. The Sublessee will not sub-sublease the Undivided Interest or in any manner deliver, transfer or relinquish possession of any Part of the Facility, or any Part thereof that is part of the Undivided Interest except that:

(i) the Sublessee may deliver or relinquish possession of the Facility, or any Part thereof to any contractor, subcontractor, manufacturer, materialman, supplier, vendor of such Part or to any other organization for testing, service, repair, maintenance work or other similar purposes or for alterations or modifications or additions not prohibited by the terms of this Sublease; and

(ii) the Sublessee may, upon 30 days' prior written notice to the Investor, the Sublessor and the Lender, without the prior consent of the Investor, the Investor Guarantor, the Sublessor and the Lender, sub-sublease the Undivided Interest, provided, however, that (A) the Sublessee shall remain primarily liable (and shall not be released from any obligation) hereunder and under each of the other Operative Documents to which it is a party for the performance of all the terms of this Sublease and each of the other Operative Documents to which it is a party as if such sub-sublease had not occurred and all the terms and conditions of this Sublease and the other applicable Operative Documents shall remain in full force and effect, (B) each of the Investor, the Sublessor and the Lender shall have received such opinions (other than the opinion regarding United States Federal income taxes and any other noncustomary opinion received by such party at the Closing but not disclosed to the Sublessee at the Closing) of counsel (which shall be no more extensive than the comparable opinions of counsel received by the Investor, the Sublessor and the Lender at the Closing taking into consideration the identity of the

proposed sub-sublessee and any change in Applicable Law after the Closing Date) as the Investor, the Sublessor or the Lender shall reasonably request, (C) such sub-sublessee shall not be subject to any bankruptcy, insolvency or other similar proceedings affecting creditors' rights on the commencement date of the sub-sublease and shall have such authorizations and approvals under Applicable Laws as may be necessary in order for such sub-sublessee to perform its obligations under the sub-sublease, (D) such sub-sublease shall be expressly subject and subordinate to all the terms and conditions of this Sublease and shall have a term which shall not extend beyond the Sublease Basic Termination Date or, the Renewal Sublease Termination Date, if the Sublease Renewal Option is exercised, (E) each of the Investor, the Sublessor and the Lender shall bear no unindemnified tax risk associated with such sub-sublease, (F) such sub-sublease shall not permit further subleasing except to an Affiliate of EZH, (G) such sub-sublease, to the extent that the sub-sublessee assumes subject to clause (A) of this Subsection 8(b)(ii) responsibility for maintenance and insurance obligations of the Sublessee, shall have terms with respect to such maintenance and insurance obligations no less stringent than those contained in Section 7 and Section 11 hereof, (H) as of the date of commencement of the sub-sublease no Sublessee Event of Default, Sublessee Major Default or German Lease Event of Default shall have occurred and be continuing, (I) the sub-sublessee shall not be a governmental entity unless such governmental entity shall have effectively waived its right of sovereign immunity, if any, pursuant to a provision substantially similar to Section 22(g) of the Participation Agreement, (J) such sub-sublease shall have substantially the same terms with respect to use and operation as contained in Section 8(a) hereof, (K) any such sub-sublease shall not impair any right or remedy of the Trustee under the Sublease or any other Operative Document or, if applicable, any Transaction Document or the Lender under any Transaction Document, if applicable, (L) the Sublessee shall have obtained all consents as may be required under the Applicable Dutch Law or as may be required under any contract or agreement binding on the Sublessee or the sub- sublessee or any of their respective properties, (M) all terms and conditions of the Sublease and the other Transaction Documents, if applicable, (including, without limitation, the Trustee's and the Lender's security interests) shall remain in full force and effect and the sub-sublease shall not contain any provisions compliance with which would result in a violation of the terms of any Transaction Documents, if applicable, and (N) the Sublessee shall deliver to the Sublessor a copy of such sub-sublease as executed and delivered by the Sublessee and the sub-sublessee within 10 days after such execution and delivery.

Section 9. <u>Burdensome Buyout Event; Voluntary Termination; Sublease Early Purchase Option</u>. (a) <u>Burdensome Buyout Event</u>. After the occurrence and during the continuance of a Burdensome Buyout Event, the Sublessee shall have the right (the "<u>Burdensome Buyout Right</u>"), at its option, on 15 Business Days' notice (or such shorter period as may be necessary to avoid illegality or to avoid any risk of an indemnity in connection with a Merger Event) to the Sublessor, the Lender and the Investor, to terminate this Sublease and purchase all of the Sublessor's Lease Interest on the date specified in such notice which date shall be an STV Date or an SSTV Date, as the case may be (or such earlier date as may be necessary to avoid illegality or to avoid any risk of an indemnity in connection with a Merger Event) (the "<u>Sublease Burdensome Termination Date</u>"). The Burdensome Buyout Right shall be the Sublessee's sole



newyork 2960941 v2 [0sz*402!.DOC]

US09408

remedy for a Sublessor Event of Default except that the Sublessee shall be entitled to make a claim against (a) the Investor, either directly or through the Sublessor and (b) the Bank, in each case for actual damages resulting from a Sublessor Event of Default to the extent attributable to such Person; provided, however, that in no event shall the Sublessee be entitled to make any claim for the Sublessee's loss of NPV Benefit. On such Sublease Burdensome Termination Date (i) the Sublessee shall assume, and shall be deemed to have assumed, the Sublessor's obligations, including the obligation to pay any remaining Lease Basic Rent payable, under the Lease and shall pay to the Sublessor the sum of (A) the Burdensome Buyout Value on such Sublease Burdensome Termination Date (provided, however, that if such Sublease Burdensome Termination Date is other than an STV Date or an SSTV Date, as the case may be, then the Sublessee shall assume, and shall be deemed to have assumed, the Sublessor's obligations, including the obligation to pay any remaining Lease Basic Rent payable, under the Lease and shall pay to the Sublessor the Burdensome Buyout Value determined as of the STV Date or as of the SSTV Date, as the case may be, next preceding such Sublease Burdensome Termination Date, together with (x) an amount equal to all accrued and unpaid interest on the Loan Certificates and (y) interest at the Prime Rate plus 1% on that portion of such Burdensome Buyout Value which exceeds the principal amount of the Loan Certificates, in each case for a period from and including such STV Date or SSTV Date, as the case may be, to but excluding the date of payment, which date shall be not later than the Sublease Burdensome Termination Date), plus (B) any unpaid Accrued Sublease Supplemental Rent (including Sublease Supplemental Rent attributable to the Sublessee's exercise of its rights under this Section 9) as of such Sublease Burdensome Termination Date, plus (C) any unpaid Sublease Basic Rent and Sublease Renewal Rent due and payable on or before such Sublease Termination Date, other than Sublease Renewal Rent and Sublease Basic Rent to the extent specified on Exhibit B to be payable on such date in advance for the period commencing on such date, and (ii) concurrently therewith all of the Sublessor's Lease Interest shall transfer from the Sublessor to the Sublessee or its designee, without recourse or warranty (except as to the absence of Trustee's Lien), the Sublease shall terminate, the Sublessee shall be deemed to have assumed the Sublessor's obligations under the Lease, including the obligation to pay Lease Basic Rent, and the Sublessor shall request of the Lender that, upon discharge of the Lien of the Loan Agreement in accordance with the terms thereof, the Lender, at the cost and expense of the Sublessee, shall execute and deliver appropriate releases of the Liens created by the Loan Agreement and the Repledge and all other documents or instruments necessary or desirable to effect the foregoing. The Sublessee shall at its own cost and expense execute and deliver all documents that are reasonably requested by the Sublessor or that are necessary to assume the Sublessor's obligations under the Lease. Upon payment in full of the amounts payable pursuant to clause (i) of this paragraph and the assumption of the Sublessor's obligations under the Lease, (1) Sublease Basic Rent and Sublease Renewal Rent shall cease to accrue with respect to periods after such date, (2) the Sublessee's insurance and maintenance obligations with respect to the Facility shall terminate, (3) the Sublessee shall cease to have any other liability under this Sublease, (4) the Sublessor shall transfer or cause to be transferred to the Sublessee (i) the Lease Collateral Deposit, if any (subject to any security interest therein in favor of the Lessor), (ii) the Trustee Treasury Collateral, if any (subject to any security interest therein in favor of the Lessor), and (iii) the Sublessee Loan (in accordance with the terms thereof).

(b) Voluntary Termination for Economic Obsolescence. (i) The Sublessee shall have the right at its option at any time on or after the fifth anniversary of the Closing Date, on at least 120 days' (but not more than 360 days') prior irrevocable (except as provided in Section 9(b)(iii) hereof) notice (the "Sublease Obsolescence Notice") to the Sublessor, the Lender, the Investor and the Deposit Bank specifying a proposed date of termination which shall be a Sublease Rent Payment Date (such Sublease Rent Payment Date as provided for below being the "Sublease Obsolescence Termination Date"), to terminate this Sublease with respect to the Undivided Interest, which notice shall be accompanied by a certificate executed on behalf of the Sublessee by an officer thereof to the effect that the Board of Managing Directors of the Sublessee has determined that the Facility, is technologically or economically obsolete or is surplus to the needs of the Sublessee ("Sublease Obsolescence Certificate") and such termination shall be effective upon payment of all amounts due under this Section 9(b) on the Sublease Obsolescence Termination Date and, if applicable, under this Section 9(b), the assumption of the Sublessor's obligations under the Lease; provided, however, if a termination does not become effective for any reason, this Sublease shall continue in full force and effect, and provided further, however, that the Sublessee shall simultaneously give notice of exercise of any similar rights it may have with respect to other sublease agreements under which the Sublessee subleases other undivided interests in the Facility. During the period following the giving of such notice of termination until the Sublease Obsolescence Termination Date, the Sublessee, as agent for the Sublessor but at its own cost and expense, shall use its commercially reasonable efforts to sell, so long as the Sublessor does not exercise its irrevocable right to take possession of the Undivided Interest pursuant to Section 9(b)(iii) and the Sublessor or its agents may endeavor to sell, to an Appropriate Purchaser, the Sublessor's Lease Interest without any warranty by the Sublessor except as to the absence of any Trustee's Lien. In the event that the Sublessee receives a cash offer from an Appropriate Purchaser to assume the Sublessor's obligations under the Lease and purchase the Sublessor's Lease Interest (together with all rights of the Sublessor to operate the Facility, under the Control Documents provided that the Investor and its Affiliates and Related Indemnitee Group shall retain their rights under (A) the Operative Documents to the extent that such rights or claims relating thereto or arising thereunder relate to periods prior to any sale pursuant to this Section 9(b) and (B) the Tax Indemnity Agreement), the Sublessee shall immediately certify in writing to the Sublessor and the Investor the amount and terms of such offer, the proposed date of such purchase and the name and address of the Appropriate Purchaser. Unless the Sublessor shall have previously elected to take possession of the Undivided Interest as provided in Section 9(b)(iii) below, on the Sublease Obsolescence Termination Date, the Sublessor shall upon delivery to the Sublessor of (x) the net cash proceeds realized at such sale, together with all other amounts required under Section 9(b)(ii) below and (y) the Appropriate Purchaser's assumption of the Sublessor's obligations under the Lease, including the obligation to pay any remaining Lease Basic Rent, deliver the Sublessor's Lease Interest, or cause the Sublessor's Lease Interest to be delivered, to the applicable Appropriate Purchaser having submitted the highest cash bid certified by the Sublessee to the Sublessor which shall have prior to such date agreed to purchase the Sublessor's Lease Interest and assume such obligations of the Sublessor. The Sublessee shall at its own cost and expense cause the Appropriate Purchaser to execute and deliver all documents that are reasonably requested by the Sublessor or that are necessary to assume the Sublessor's obligations under the Lease. Upon such assumption by the Appropriate Purchaser and receipt by the Sublessor of the purchase price and all amounts

required to be paid hereunder, the Sublessor shall transfer or cause to be transferred to the Appropriate Purchaser, if any, (i) the Lease Collateral Deposit, if any (subject to any security interest therein in favor of the Lessor), (ii) the Trustee Treasury Collateral, if any (subject to any security interest therein in favor of the Lessor), and (iii) the Sublessee Loan (in accordance with the terms thereof) The Sublessor shall be under no duty to solicit bids, to inquire into the efforts of the Sublessee to obtain bids or otherwise take any action in connection with any such sale other than to transfer to the Appropriate Purchaser submitting the highest bid certified by the Sublessee to the Sublessor without recourse or warranty (except as to the absence of any Trustee's Lien) the Sublessor's Lease Interest against receipt of the payments and assumption provided for herein. The Sublessee shall give the Sublessor and the Lender not less than 10 days' notice of its intent to arrange any contract of sale and shall not require the Sublessor to enter into a contract of sale before the date which is 60 days prior to the Sublease Obsolescence Termination Date.

(ii) Payments Due upon Sale. The net cash proceeds realized at any sale, if any, pursuant to Section 9(b)(i) hereof shall be paid over to the Sublessor and, in addition, on the Sublease Obsolescence Termination Date, the Sublessee shall pay in immediately available funds, (A) to the Sublessor an amount equal to the excess, if any, of (1) the Sublease Termination Value as of the Sublease Obsolescence Termination Date over (2) such net proceeds, if any, plus (B) to the Sublessor or to the Person entitled thereto any unpaid Accrued Sublease Supplemental Rent (including Sublease Supplemental Rent attributable to the Sublessee's exercise of its rights under this Section 9(b)(ii)) as of such Sublease Obsolescence Termination Date, plus (C) to the Sublessor and/or any other Person entitled thereto any unpaid Sublease Basic Rent and Sublease Renewal Rent due and payable on or before such Sublease Obsolescence Termination Date, other than Sublease Basic Rent and Sublease Renewal Rent to the extent specified on Exhibit B to be payable on such date in advance for the period commencing on such date plus (D) to the Sublessor and/or any other Person entitled thereto any overdue Sublease Rent as of such Sublease Obsolescence Termination Date.

(iii) Preemptive Election by Sublessor; Revocation by Sublessee. Notwithstanding the foregoing provisions of this Section 9(b), and provided that the Sublessee has not previously revoked the Sublease Obsolescence Notice in accordance with this Section 9(b)(iii), the Sublessor may, not less than 60 days before the Sublease Obsolescence Termination Date, notify the Sublessee in writing of its preemptive election to take possession of the Undivided Interest. Upon receipt of any notice from the Sublessor pursuant to the foregoing sentence of this Section 9(b)(iii), the Sublessee shall cease efforts to sell such Undivided Interest and shall reject all bids theretofore or thereafter received, if any. The Sublessee shall deliver, or cause to be delivered, such Undivided Interest to the Sublessor on the applicable Sublease Obsolescence Termination Date in accordance with the terms of Section 5 hereof and shall pay to the Sublessor on the applicable Sublease Obsolescence Termination Date (X) any unpaid Sublease Basic Rent and Sublease Renewal Rent due and payable on or before such Sublease Obsolescence Termination Date, other than Sublease Basic Rent and Sublease Renewal Rent to the extent specified on Exhibit B to be payable on such date in advance for the period commencing on such date and (Y) any unpaid Accrued Sublease Supplemental Rent as of such Sublease Obsolescence Termination Date. It shall be a condition precedent to the Sublessor's right under this Section 9(b)(iii) that the Sublessor (A) make security arrangements for the payment of Lease Basic Rent and (B) pay to the Lender sufficient funds to repay the aggregate unpaid principal amount of the

Loan Certificates together with all unpaid interest accrued thereon and all other amounts secured by the Lien of the Loan Agreement due to the Lender pursuant to the Operative Documents, provided, however, that funds sufficient to repay the aggregate unpaid principal amount of the Loan Certificates (other than that portion of the unpaid principal amount of the Loan Certificates that is repaid with the proceeds of any Sublease Basic Rent and Sublease Renewal Rent payment made on or before such Sublease Obsolescence Termination Date) shall be provided by the Sublessor and funds sufficient to pay all unpaid interest accrued thereon and all other amounts secured by the Lien of the Loan Agreement due to the Lender pursuant to the Operative Documents shall be provided by the Sublessee through payments of Sublease Basic Rent, Sublease Renewal Rent and Sublease Supplemental Rent. If the conditions to the exercise by the Sublessor of its rights under this Section 9(b)(iii) have been satisfied and upon delivery by the Sublessee or its designee of the Undivided Interest and payment by the Sublessee of all amounts payable by the Sublessee under either Section 9(b)(ii) hereof or this Section 9(b)(iii), as the case may be, the obligations of the Sublessee to pay Sublease Basic Rent and Sublease Renewal Rent shall cease for any period commencing on or after the applicable Sublease Obsolescence Termination Date and the Sublease shall terminate. The Sublessee shall have the right at any time 15 days prior to the Sublease Obsolescence Termination Date to revoke the Sublease Obsolescence Notice by giving written notice of such revocation to the Sublessor and the Lender within 15 days of the Sublease Obsolescence Termination Date; provided, however, that such right to revoke the Sublease Obsolescence Notice may only be exercised by the Sublessee up to two times during the Sublease Term and may only be exercised by the Sublessee if at such time no sale of the Sublessor's Lease Interest shall have occurred and the Sublessor shall not have (A) exercised its preemptive election under this Section 9(b)(iii) and (B) paid all amounts due from it under the Operative Documents in connection with such preemptive election. Upon the delivery of such notice and the satisfaction of the conditions in the proviso above, the Sublease Obsolescence Certificate shall be deemed to be withdrawn as of such date and this Sublease shall continue in full force and effect.

(iv) Expenses of Sublease Termination. Whether or not any sale occurs, the Sublessee shall reimburse the Sublessor, the Lender, the Investor, and any Affiliate of any of them, on an After-Tax basis, for all costs (other than a cost that is a Tax, unless such Tax is payable pursuant to Section 17 of the Participation Agreement or the Tax Indemnity Agreement) reasonably incurred by them relating to the Sublease Obsolescence Certificate and the matters and the transactions contemplated thereby and to the extent related thereto, hereby.

(c) Early Purchase Option. The Sublessee shall have the right at its option at any time within 210 days after the Sublessee learns of the occurrence of a Sublease Early Purchase Option Event, on at least 30 Business Days' prior written notice (the "Sublease Early Purchase Option Notice"), to the Investor, the Sublessor and the Lender to purchase the Sublessor's Lease Interest (the "Sublease Early Purchase Option"). The Sublease Early Purchase Option Notice shall specify a proposed date of termination of this Sublease and purchase of the Sublessor's Lease Interest, which date shall be a Sublease Facility Loss Payment Date (the "Sublease Early Purchase Option Date"). The Sublessee shall, on the Sublease Early Purchase Option Date assume, and shall be deemed to have assumed, the Sublessor's obligations under the Lease, including the obligation to pay any remaining Lease Basic Rent, and shall purchase the Sublessor's Lease Interest by paying to the Sublessor on the Sublease Early Purchase Option Date



newyork [illegible]

US09412

(i) an amount equal to the greater of (A) the Sublease Termination Value computed as of the Sublease Early Purchase Option Date or (B) the Fair Market Sales Value (as determined by Independent Appraisal) of the Sublessor's Lease Interest, together with (ii) any unpaid Sublease Basic Rent and Sublease Renewal Rent due and payable on or before the Sublease Early Purchase Option Date, other than Sublease Basic Rent and Sublease Renewal Rent to the extent specified on Exhibit B to be payable on such date in advance for the period commencing on such date, plus (iii) any unpaid Accrued Sublease Supplemental Rent as of the Sublease Early Purchase Option Date, and upon payment of all such amounts this Sublease shall terminate effective as of the Sublease Early Purchase Option Date, the Sublessor shall transfer to the Sublessee the Sublessor's Lease Interest, on an "as is, where is," basis, without any recourse or warranty (except as to the absence of any Trustee's Lien), the Sublessee shall be deemed to have assumed the Sublessor's obligations under the Lease, including the obligation to pay any remaining Lease Basic Rent, and the Sublessor shall request the Lender, upon discharge of the Lien of the Loan Agreement in accordance with the terms thereof, to execute and deliver (at the cost and expense of the Sublessee) appropriate releases of the Liens on the Sublessor's Lease Interest created by the Loan Agreement and the Repledge. Upon the assumption by the Sublessee of the Sublessor's obligations under the Lease and receipt by the Sublessor of the purchase price and all amounts required to be paid hereunder, the Sublease shall terminate and the Sublessor shall transfer or cause to be transferred to the Sublessee: (i) the Lease Collateral Deposit, if any (subject to any security interest therein in favor of the Lessor), (ii) the Trustee Treasury Collateral, if any (subject to any security interest therein in favor of the Lessor), and (iii) the Sublessee Loan (in accordance with the terms thereof. The Sublessor shall (at the cost and expense of the Sublessee) execute and deliver to the Sublessee appropriate instruments and such other documents as the Sublessee may request to convey the Sublessor's Lease Interest to the Sublessee. The Sublessee shall at its own cost and expense execute and deliver all documents that are reasonably requested by the Sublessor or that are necessary to assume the Sublessor's obligations under the Lease. If the Sublessee shall fail to make any payment due or execute any document required under this Section 9(c), then the Sublease shall continue as if the Sublessee had not exercised its right to purchase the Sublessor's Lease Interest under this Section 9(c).

Section 10. Loss, Destruction, Requisition, Etc. (a) Sublease Facility Event of Loss. Upon the occurrence of a Sublease Facility Event of Loss, the Sublessee shall give the Sublessor, the Investor and, if at such time the Lien of the Loan Agreement shall not have been discharged in accordance with the terms thereof, the Lender, prompt notice specifying the date of such occurrence and describing the nature of such loss of or damage to the Facility after a Responsible Officer of the Sublessee shall have Actual Knowledge of such occurrence or event (and in any event, on or before the 10th day following the occurrence of a Sublease Facility Event of Loss). From the date of a Sublease Facility Event of Loss to and including the date of payment of Sublease Termination Value, all Sublease Rent shall continue to be paid when due. On the first STV Date which is not less than 180 days after the occurrence of such Sublease Facility Event of Loss or, if earlier, not less than 30 days following receipt of at least 70% of all insurance proceeds with respect to such Sublease Facility Event of Loss (the "Sublease Facility Loss Payment Date"), the Sublessee shall assume, and shall be deemed to have assumed, the Sublessor's obligations under the Lease, including the obligation to pay any remaining Lease Basic Rent, under the Lease and shall purchase the Sublessor's Lease Interest by paying or causing to be paid, subject to the

terms of Section 3(d), to the Sublessor (A) the Sublease Termination Value computed as of the applicable Sublease Facility Loss Payment Date (or, in the case of a Sublease Facility Event of Loss under clause (iii) of the definition of "Sublease Facility Event of Loss" as a result of an action of a Sublessee Person, the higher of such Sublease Termination Value and the Fair Market Sales Value of the Sublessor's Lease Interest as of such Sublease Facility Loss Payment Date), plus (B) any unpaid Accrued Sublease Supplemental Rent (including any other Sublease Supplemental Rent attributable to the Sublessee's exercise of its rights under this Section 10) as of such date, plus (C) any unpaid Sublease Basic Rent and Sublease Renewal Rent due and payable on or before such Sublease Facility Loss Payment Date, other than, Sublease Basic Rent and Sublease Renewal Rent to the extent specified on Exhibit B to be payable on such date in advance for the period commencing on such date, plus (D) any overdue Sublease Basic Rent and the Sublessee shall assume, and shall be deemed to have assumed, the Sublessor's obligations under the Lease, including the obligation to pay any remaining Lease Basic Rent, payable under the Lease. Notwithstanding the foregoing, if a Sublease Facility Event of Loss of the type described in clause (ix) of the definition thereof occurs, the Sublessee shall assume, and shall be deemed to have assumed, the Sublessor's obligations under the Lease, including the obligation to pay any remaining Lease Basic Rent payable, under the Lease and shall purchase the Sublessor's Lease Interest by paying, subject to the terms of Section 3(d), the amounts specified in (A) through (D) above on the first Business Day following the earlier of (x) the date on which notice of such Sublease Facility Event of Loss shall have been given by the Sublessor or the Lender to the Sublessee and (y) the date on which a Responsible Officer of the Sublessee shall have Actual Knowledge of such Sublease Facility Event of Loss and if such purchase date is other than an STV Date, the Sublease Termination Value for purposes of (A) above shall be an amount equal to the Sublease Termination Value determined as of the STV Date next preceding such date of purchase together with (i) an amount equal to all accrued and unpaid interest on the Loan Certificates and (ii) interest at the Prime Rate plus 1% on that portion of the Sublease Termination Value which exceeds the principal amount of the Loan Certificates, in each case for a period from and including such STV Date to but excluding the date of payment, which date shall not be later than the date of purchase. The Sublessee shall at its own cost and expense execute and deliver all documents that are reasonably requested by the Sublessor or that are necessary to assume the Sublessor's obligations under the Lease. Upon receipt by the Sublessor of all amounts required to be paid hereunder and the assumption of the Lease obligations, the Sublease shall terminate and the Sublessor shall transfer to the Sublessee: (i) the Lease Collateral Deposit, if any (subject to any security interest therein in favor of the Lessor), (ii) the Trustee Treasury Collateral, if any (subject to any security interest therein in favor of the Lessor), and (iii) the Sublessee Loan (in accordance with the terms thereof).

(b) Sublease Facility Partial Event of Loss. (i) If at any time after the 12th anniversary of the Closing Date and prior to the Sublease Basic Termination Date an event occurs, or the Facility is maintained in a manner, which results in a significant reduction in the output capacity and/or efficiency of the Facility (unless such reduction is the result of the Sublessee's failure to maintain the Facility in compliance with its obligations under the Operative Documents), the Sublessee shall give the Sublessor, the Investor and, if at such time the Lien of the Loan Agreement shall not have been discharged in accordance with the terms thereof, the Lender, prompt notice specifying the date of such occurrence or circumstance after a Responsible

Officer of the Sublessee shall have Actual Knowledge of such event or circumstance (and in any event on or before the 10th day following the date of such event or circumstance). Not later than 60 days after the date of such event or circumstance and, provided that no Sublessee Loan Event of Default (in accordance with the terms thereof), Sublessee Major Default, Sublessee Event of Default or German Lease Event of Default shall have occurred and be continuing, the Sublessee may give notice to the Sublessor, the Investor and, if at such time the Lien of the Loan Agreement shall not have been discharged in accordance with the terms thereof, the Lender, of its election, subject to the conditions and other provisions of this Section 10(b), (x) not to restore the Facility to the output capacity and/or efficiency, as the case may be, that existed immediately prior to such event or circumstance and (y) to declare that a Sublease Facility Partial Event of Loss has occurred.

(ii) In the event that the Sublessee declares in accordance with the provisions of Section 10(b)(i) that a Sublease Facility Partial Event of Loss has occurred, the Sublessor and the Sublessee shall take the following respective actions:

(A) the Sublessee will arrange to have KEMA or any successor thereto (or if it is no longer in existence an organization having similar qualifications and expertise) prepare an analysis and report which measures the output capacity and efficiency of the Unit and confirms the Unit's compliance with applicable Environmental Laws;

(B) the Sublessor shall retain, at the Sublessee's expense, an engineer, reasonably acceptable to the Sublessor, to prepare an analysis and report with respect to (1) the remaining useful life of the Facility, (both immediately prior to, and subsequent to, the occurrence of such Sublease Facility Partial Event of Loss), (2) the ability of the Facility to operate at such reduced output capacity and/or efficiency and (3) such other matters as the Sublessor or the Sublessee deem necessary or reasonably desirable in order to determine the value of the Undivided Interest;

(C) an Independent Appraisal will be conducted to determine (1) the Fair Market Sales Value of the Facility immediately prior to the occurrence of such Sublease Facility Partial Event of Loss and (2) the Fair Market Sales Value of the Facility subsequent to the Sublease Facility Partial Event of Loss, utilizing the analyses and reports described in Sections 10(b)(ii)(A) and (B) and the most recent KEMA report completed prior to the occurrence of such Sublease Facility Partial Event of Loss; the Fair Market Sales Value of the Facility subsequent to the occurrence of such Sublease Facility Partial Event of Loss will be based on the new, reduced level of output capacity and/or efficiency of the Facility, and shall not take into account the ability to restore, or the cost of restoring, the Facility to its output capacity and/or efficiency immediately prior to the occurrence of such Sublease Facility Partial Event of Loss;

(D) on the first STV Date which is not less than 180 days after the occurrence of such Sublease Facility Partial Event of Loss (the "Sublease Facility Partial Loss Payment Date"), the Sublessee shall assume, and shall be deemed to have assumed, a portion of the Sublessor's obligations under the Lease, including the obligation to pay any remaining Lease Basic Rent, equal to the Partial Loss Percentage of such obligations and

shall pay or cause to be paid subject to the terms of Section 3(d) to the Sublessor (1) the product of (x) the Sublease Termination Value computed as of the applicable Sublease Facility Partial Loss Payment Date and (y) the Partial Loss Percentage, plus (2) any unpaid Accrued Sublease Supplemental Rent (including any other Sublease Supplemental Rent attributable to the Sublessee's exercise of its rights pursuant to this Section 10) as of such Sublease Facility Partial Loss Payment Date, plus (3) any unpaid Sublease Basic Rent and Sublease Renewal Rent due and payable on or before such Sublease Facility Partial Loss Payment Date, other than Sublease Basic Rent and Sublease Renewal Rent to the extent specified on Exhibit B to be payable on such date in advance for the period commencing on such date, plus (4) any overdue Sublease Basic Rent and Sublease Renewal Rent, and the Sublessee shall be deemed to have assumed those obligations of the Sublessor referred to above. The Sublessee shall at its own cost and expense execute and deliver all documents that are reasonably requested by the Sublessor or that are necessary to assume such obligations of the Sublessor under the Lease. Upon receipt of the amounts in this paragraph (D) and the assumption of the Sublessor's obligations under the Lease, the Sublessor shall transfer or cause to be transferred to the Sublessee a pro rata portion equal to the Partial Loss Percentage of each of the following: (i) the Lease Collateral Deposit, if any (subject to any security interest therein in favor of the Lessor), (ii) the Trustee Treasury Collateral, if any (subject to any security interest therein in favor of the Lessor), and (iii) the Sublessee Loan (in accordance with the terms thereof).

Notwithstanding anything in this Section 10(b) to the contrary, if the Facility Value (as adjusted pursuant to Section 10(h) hereof) immediately after such Sublease Facility Partial Event of Loss is less than 50% of the Facility Value as of the Closing Date, then the Sublessee shall restore, as soon as commercially practicable, the output capacity and/or efficiency of the Facility to the level that would cause the reduction in the Facility Value resulting from such Sublease Facility Partial Event of Loss (together with any reduction in the Facility Value resulting from any prior Sublease Facility Partial Event of Loss) not to exceed such percentage, in which event, for purposes of the calculations in Section 10(b)(ii)(C) and in determining the Partial Loss Percentage, the Fair Market Sales Value of the Facility subsequent to the Sublease Facility Partial Event of Loss shall be the Fair Market Sales Value of the Facility after such restoration, provided, that if the Sublessee fails to comply with this sentence, then a Sublease Facility Event of Loss shall be deemed to have occurred.

(c) [Intentionally omitted].

(d) [Intentionally omitted].

(e) Application of Payments Upon an Event of Loss. Any payments (including proceeds of any property damage insurance policy maintained by the Sublessee, but excluding proceeds of any policy maintained by the Investor or the Sublessor and excluding proceeds of any public liability insurance) received at any time by the Sublessor or by the Sublessee from any Governmental Authority or other Person with respect to a Sublease Facility Event of Loss or a Sublease Facility Partial Event of Loss shall be applied in reduction of the Sublessee's obligation to pay Sublease Termination Value and the other amounts payable by the Sublessee under paragraph (a), paragraph (b) or paragraph (c)(i) of this Section 10, if not already paid by the

Sublessee (and pending such application on the due date, be invested in Permitted Investments pursuant to the terms of Section 23 of this Sublease and Section 14 of the Participation Agreement), or, if already paid by the Sublessee, be applied to reimburse the Sublessee for such payment of Sublease Termination Value and such other amounts, and the balance, if any, of such payments remaining thereafter shall in the case of proceeds of insurance maintained by the Sublessee, be paid over to the Sublessee, or retained by, the Sublessor or the Lender, as the case may be, and the Sublessee as their respective interests may appear; provided, however, that if the Sublessee shall have elected or shall be required to restore the Facility's output capacity and/or efficiency as the result of an event or circumstance described in Section 10(b) and any related repairs, in accordance with the provisions and requirements of the penultimate paragraph of Section 11(c). Any payments received at any time during or with respect to the Sublease Term by the Sublessor or by the Sublessee from any Governmental Authority or other Person with respect to damage to or interference with the use or operation of any of the Facility, or any Part thereof not constituting a Sublease Facility Event of Loss or a Sublease Facility Partial Event of Loss and not utilized or required by the Sublessee for the repair or restoration of damage to the Facility shall be divided among the Sublessee, the Sublessor, and each "Sublessor" (as defined in the Other Operative Documents) under the Other Operative Documents, as their respective interests may appear.

(f) Application of Payments During Existence of Sublessee Event of Default. Notwithstanding the foregoing provisions of this Section 10 or the provisions of Section 11, any amount referred to in this Section 10 or Section 11 hereof that is payable to or that would otherwise be retained by the Sublessee shall not be paid to or retained by the Sublessee if at the time of such payment a Sublessee Event of Default or Sublessee Major Default shall have occurred and be continuing, but shall be paid to and held by the Sublessor (or, if the Lien of the Loan Agreement shall not have been discharged pursuant to the terms thereof, the Lender in accordance with the terms of the Loan Agreement) in accordance with Section 23 of this Sublease and Section 14 of the Participation Agreement as security for the obligations of the Sublessee under this Sublease and the other Operative Documents or shall be applied towards payment of the Sublessee's obligations under the Operative Documents at the Sublessor's option during such time as any such Sublessee Event of Default or Sublessee Major Default shall have occurred and be continuing. At such time as there shall not be continuing any Sublessee Event of Default or Sublessee Major Default, all such amounts at the time held by the Sublessor, or, if applicable, the Lender in excess of the amounts applied in accordance with the preceding sentence shall be paid to, and retained by, the Sublessee.

(g) Repair of Facility. In the event of any damage to (i) the Facility, or any portion of any thereof, which damage does not constitute a Sublease Facility Event of Loss, a Sublease Facility Partial Event of Loss which if not repaired or replaced would result in a Sublease Facility Event of Loss, the Sublessee shall, at its own expense, as soon as commercially practicable, repair, restore or rebuild the damaged or destroyed property so that upon the completion of such repair, restoration or rebuilding, the value of such property as repaired, restored or rebuilt (measured by such property's contribution to the Facility's earning power as opposed to the original cost of the property) and the utility and remaining useful life of such property shall be at least equal to the value, utility and remaining useful life of such property immediately prior to such damage or destruction, assuming such property was maintained in

accordance with the terms hereof and the property as repaired, restored or rebuilt shall not diminish the value, utility and remaining useful life of the Undivided Interest; provided, however, that the Sublessee shall be excused from its obligation under this Section 10(g) if and to the extent that the Sublessor, in the Sublessor's reasonable opinion, shall have received full compensation for any detriment to its interest arising from such damage or destruction pursuant to the last sentence of Section 10(e), but this proviso shall not excuse the Sublessee from performing its obligation to repair under this Section 10(g) to the extent that such repair is required to permit the Facility to continue to operate on substantially the same economic basis as it did prior to such damage or destruction (assuming that the Facility was being operated and maintained in compliance with the terms of this Sublease).

(h) Adjustments to Value of the Facility Upon a Sublease Facility Partial Event of Loss. If a Sublease Facility Partial Event of Loss occurs and the Sublessee shall have made the assumption and paid in full all amounts required to be paid pursuant to Section 10(b)(ii)(D), the Facility Value shall be reduced by an amount equal to the product of (i) the Facility Value immediately prior to such Sublease Facility Partial Event of Loss multiplied by (ii) the Partial Loss Percentage.

Section 11. Insurance. (a) Insurance Coverage. During the Sublease Term, so long as the Sublessee shall have the Sublessee Minimum Rating, the Sublessee shall, at its own expense, carry and maintain, or cause to be carried and maintained, property and liability insurance coverage (including self-insurance) in respect of the Unit, the Common Facilities, the Cooling Water Station, the Cooling Water Channel and the Network that is not less favorable, and in amounts at least equal to, property and liability insurance coverage carried and maintained for similar properties owned or operated by the Sublessee and used in the business of the Sublessee (without discrimination between such properties provided, however, if at any time during the Sublease Term, the Sublessee shall not meet the Sublease Minimum Rating it shall carry property and liability insurance coverage in accordance with Prudent Insurance Practice; provided further, at all times during the Sublease Term the Sublessee shall carry and maintain, or cause to be carried and maintained, at least the following liability insurance coverage: bodily injury and property damage liability insurance (including product liability, completed operations and personal injury insurance) covering claims arising out of the ownership, operation, maintenance, condition or use of the Unit, the Common Facilities, the Cooling Water Station, the Cooling Water Channel, the Network, the Station and the Station Site in such amounts and with such other terms as are in accordance with Prudent Insurance Practice and are comparable to the bodily injury and property damage liability insurance which is currently carried with respect to similar facilities owned, leased or operated by the Sublessee or its Affiliates, but in no event less than 50,000,000 Guilders per occurrence and 100,000,000 Guilders in the aggregate for any policy year, as adjusted every three years following the Closing Date for inflation based on the compounded change in the Index over such three year period and endorsed as provided in Section 11(c) below; provided further, the Sublessee shall also carry and maintain, or cause to be carried and maintained site specific bodily injury and property damage liability insurance coverage which shall apply only to the ownership, operation, maintenance, condition or use of the Unit, the Network, the Cooling Water Station, the Common Facilities, the Station or the Station Site in accordance with Prudent Insurance Practice. The Insurance provided under this Section 11(a) may consist of a primary general liability policy and excess (or umbrella) liability policies, but the

combined "package" of liability insurance shall otherwise comply. The standards for insurers in Section 11(a) shall be, in any case, that such insurers (i) shall be of recognized responsibility with a rating of at least "A" from Insurance Solvency International (or a comparable rating by a nationally recognized rating group of comparable stature) and have a minimum of $25 million unencumbered policyholders' surplus, or (ii) be insurers of substantially equivalent quality as the Sublessee's insurers as of the date hereof, or (iii) other insurers approved in writing by the Sublessor that have substantial financial capacity.

(b) Limitation on Self-Insured Deductibles. The Sublessee may self-insure, in respect of physical damage and liability insurance coverage, the Unit, the Common Facilities, the Cooling Water Station, the Cooling Water Channel and the Network by means of a first-loss deductible in an aggregate amount not to exceed the Self-Insurance Deductible Limit per occurrence; provided, however, that such self-insurance amount shall not be in excess of self-insurance amounts with respect to similar properties owned and operated by the Sublessee and used in the business of the Sublessee (without discrimination between such and the Unit, the Common Facilities, the Cooling Water Station, the Cooling Water Channel and the Network), provided further, however, that in the event of any merger or consolidation involving EZH that results in an increase in the surviving entity's total assets, the amount of self-insurance by means of first-loss deductible that may be maintained by the Sublessee immediately after such merger or consolidation shall be equal to the product obtained by multiplying the amount of self-insurance that EZH was able to maintain at the time of such merger or consolidation by the quotient (which, if it is less than 1, shall be deemed to be 1, and if it is greater than 2, shall be deemed to be 2) obtained by dividing the total value of the assets of the Sublessee measured immediately after such merger or consolidation by the total value of the assets of EZH measured immediately prior to such merger or consolidation; provided further, however, that, notwithstanding anything in this paragraph (b) to the contrary, the Sublessee may not self-insure the Unit, the Common Facilities, the Cooling Water Station, the Cooling Water Channel and the Network by means of a first-loss deductible in an aggregate amount in excess of the lesser of (x) the Maximum Self Insurance Deductible Limit and (y) two times the limitation provided in this clause (b) that would have applied had no such merger or consolidation occurred. Notwithstanding the foregoing sentence of this Subsection 11(b), if the first proviso in Section 11(a) applies, the Sublessee may not self-insure the Unit, the Common Facilities, the Cooling Water Station, the Cooling Water Channel and the Network by means of a first-loss deductible for an amount greater than 10 million Guilders per occurrence as adjusted every three years following the Closing Date for inflation based on the compounded change in the Index over such three year period; provided further, however, that none of the above implies any obligations to obtain property insurance in respect of the Network and the Cooling Water Channel.

(c) Required Terms. All insurance policies required to be maintained hereunder, and any excess insurance purchased by the Sublessee with respect to the Facility and the Common Facilities from time to time, shall be endorsed to: (i) name the Sublessor (both in its individual capacity and as trustee), the Investor and (until the Lien of the Loan Agreement shall have been discharged in accordance with the terms thereof) and the Lender as additional insureds, (ii) provide for at least 30 days' prior written notice by the insurance carrier or the Sublessee's independent insurance broker (or, if the 30-day notice endorsement is not available on commercially reasonable terms, such shorter period as shall be consistent with Prudent Insurance

Practice in respect of insurance coverage of similar properties owned and operated by power plant operators) to the Sublessor, the Investor and (until the Lien of the Loan Agreement shall have been discharged in accordance with the terms thereof) the Lender of any cancellation, non-renewal, expiration or amendment and such cancellation, non-renewal, expiration or amendment shall not be effective with respect to an additional insured unless it is notified 30 days prior to such event (except as specified in the parenthetical above), (iii) include waivers by the insurer of all claims for premiums against the Sublessor, the Investor, the Lender, (iv) state that such insurance shall be primary without right of contribution of any other insurance carried by or on behalf of the Trustee, the Investor, the Lender with respect to their respective interests in the Facility, (v) contain a waiver by the insurer thereunder of all rights to subrogation against the Sublessor, the Investor, and the Lender with respect to their respective interests in the Facility, (vi) provide that the coverage afforded by such parties shall not be affected by the performance of any work in or about any Modification, (vii) provide that the coverage will not be invalidated by any foreclosure or other proceeding or notice of sale relating to the Facility or the Station or any change in title or ownership of the Facility or the Station and (viii) provide that, inasmuch as the policies are written to cover more than one insured, all terms, conditions, insuring agreements and endorsements, with the exception of limits of liability, retentions and deductibles, shall operate in the same manner as if there were a separate policy covering each insured. In addition, if at any time during the Sublease Term the Sublessee falls below the Sublessee Minimum Rating and to the extent available on commercially reasonable terms from time to time, such policies shall also be endorsed to provide that the respective interests of the Trustee, the Investor and the Lender shall not be invalidated by any act or neglect of the Sublessee, or any breach or violation by the Sublessee of any warranties, declarations or conditions contained in such policies, or by the use of the Facility for purposes more hazardous than permitted by such policies.

Whenever third party physical damage insurance is carried such policies shall also be endorsed to provide that any payment under any policy of property insurance for total loss or for partial loss or damage shall be made to the Lender so long as the Lien of the Loan Agreement shall not have been discharged, and otherwise to the Sublessor as their respective interests may appear and to each other "Lender" and "Sublessor" (as defined in the Other Operative Documents) under the Other Operative Documents, as their respective interests may appear, in each case to a separate Guilder account located in The Netherlands (to be applied as provided in Section 10(e)), except that the first $25,000,000 (or, if insurance payments are made in Guilders or some other currency other than Dollars, the amount of Guilders or such other currency that the party receiving such payment would be able to purchase in accordance with normal banking procedures at the spot rate of exchange in the money market in Amsterdam, The Netherlands, with $25,000,000 on the date or dates of such payment or payments) of payments made in respect of any single casualty or other occurrence in any policy year with respect to the Facility shall be paid solely to the Sublessor.

All proceeds of insurance paid to the Lender or the Sublessor, other than in connection with a Sublease Facility Event of Loss or Sublease Facility Partial Event of Loss shall be paid over to the Sublessee or as the Sublessee may direct to pay for, or reimburse the Sublessee for its payment of the cost of repairing or restoring the Facility; <u>provided</u>, <u>however</u>, that such payments to the Sublessee shall be made only upon (i) the delivery by a Responsible Officer of the Sublessee to the Sublessor and the Lender, if applicable, of a certificate (A) describing in

reasonable detail the nature and cost of such repair or restoration and the actual expenditures theretofore made in connection therewith (and accompanied by copies of the related invoices or other documents from persons involved or to be involved in such repair or restoration showing the assessed expenditures of their involvement) and (B) certifying that the sum requested is a proper item of such cost, has not been the subject of any previous such request which has been paid to the Sublessee and has been paid, or is then due and payable by the Sublessee and (ii) receipt by the Sublessor, and the Lender if applicable, of evidence satisfactory to each of them, in their reasonable judgment that such proceeds, together with proceeds held by each "Sublessor" and "Lender" (as defined in the Other Operative Documents) under the Other Operative Documents, further anticipated insurance proceeds and funds of the Sublessor available for the purpose will be sufficient to complete such repair and restoration of the Facility.

The Sublessee shall, at its own expense, make all proofs of loss and take all other steps necessary to collect the proceeds of such insurance. The Sublessee shall, as soon as possible but in any event prior to the expiration of any insurance policy required hereunder, furnish to the Sublessor, the Lender and the Lender a certificate of a reputable insurance broker in The Netherlands evidencing the maintenance or renewal on substantially equal terms of any insurance required hereunder.

Any amounts paid or payable to the Sublessor, the Investor, or the Lender under insurance required to be carried pursuant to this Section 11 shall not be reduced on account of any amount which may be paid or payable to the Sublessor, the Investor, or the Lender by reason of claims made under any other policies of insurance under which the Sublessor, the Investor, or the Lender is a beneficiary claimant. Notwithstanding the foregoing, none of the Sublessor, the Investor, or the Lender shall be obligated to participate in the funding of any self-insurance program of the Sublessee. Each of the Sublessor, the Investor, and the Lender shall have the right to carry insurance on the Unit, the Common Facilities, the Cooling Water Station, the Cooling Water Channel and the Network for its own benefit and, unless required to be maintained by the Sublessee hereunder but not so maintained, at its expense (such expense in respect of insurance not required to be maintained by the Sublessee not being subject to indemnification pursuant to Section 16 of the Participation Agreement); <u>provided</u>, <u>however</u>, that no such insurance shall be maintained if its maintenance would prevent the Sublessee from maintaining insurance as to the Facility and the Common Facilities with third party insurers when required to do so hereby or would adversely affect the cost to the Sublessee of obtaining or maintaining such insurance unless the Sublessee is indemnified for any such increased costs.

(d) <u>Annual Reports</u>. Beginning with the year 1998, concurrently with the delivery of an Officer's Certificate pursuant to Section 11(d)(iv)(E) of the Participation Agreement, the Sublessee shall furnish the Sublessor, the Investor and, if at such time the Lien of the Loan Agreement shall not have been discharged in accordance with the terms thereof, the Lender, a report signed by the Sublessee's insurance broker or insurer, as the case may be, that includes a copy of the certificate of insurance (which certificate shall indicate that all endorsements required under Section 11(c) are applicable), describing in detail the insurance then maintained pursuant to this Section 11 and stating that no premiums are then delinquent and that, in the opinion of such broker or insurer, as the case may be, such insurance is in accordance with this Section 11.

(e) Additional Coverages. The Sublessee shall, to the extent available on commercially reasonable terms, at the request of the Trustee, obtain coverage for punitive and exemplary damages (such coverage to be otherwise in compliance with Section 11 of this Sublease) incurred in the United States and Canada, if at any time during the Sublease Term the Sublessee or any Affiliate shall engage in sufficient investments (excluding securities, which constitute less than 5% of the equity of the entity issuing such securities, certificates of deposit, treasury bonds, stocks which constitute less than 5% of the equity of the entity issuing such stocks and other similar negotiable instruments), business operations or ownership of property in the United States or Canada which shall cause the Sublessee to have a substantial enough nexus or contacts with the United States, any state thereof or Canada to render the Sublessee subject to the jurisdiction of the courts of any of the foregoing; provided, always, that the Sublessee shall not be obligated to obtain such coverage if such would result in a significant increase in the overall insurance premiums of the Sublessee.

Section 12. Inspection. The Investor, the Sublessor, and the Lender or their respective authorized representatives (which, in the case of the Sublessor, may be officers or employees or agents of the Investor or the Investor Guarantor) may, during the Sublease Term, (i) once during each calendar year upon 15 Business Days' prior notice in writing to the Sublessee and (ii) without limitation as to intervals between inspections and as often as such Person may deem necessary upon 5 days' prior notice in writing to the Sublessee from and during such time as (A) a Sublessee Event of Default shall have occurred and be continuing or (B) the Undivided Interest is being returned pursuant to Section 9(b)(iii) and at their own risk and expense (such expense not being subject to indemnification pursuant to Section 16 of the Participation Agreement except that (i) the Sublessee will always be liable for its own gross negligence and willful misconduct and (ii) the Sublessee shall bear the risk and expense of any inspection if a Sublessee Event of Default shall have occurred and be continuing), inspect the Facility, or any Part thereof, and the records of the Sublessee relating thereto, which inspections shall be conducted at reasonable times and at the Station Site or where such records are then located and may at their expense, make copies and extracts therefrom (other than copies of proprietary information unless disclosure thereof is, in the reasonable opinion of the Investor, the Sublessor, the Lender, necessary for the performance of obligations or the exercise of rights and remedies under the Operative Documents by the Investor, the Sublessor or the Lender or unless a Sublessee Event of Default shall have occurred and be continuing, provided that information required to be disclosed or maintained under Sections 7(f) and 7(g) shall not be disclosed to the Sublessor or Investor except as such disclosure is, in the reasonable opinion of the Investor, the Sublessor or the Lender, necessary, and provided further, that any information obtained by the Investor in the course of such inspection shall be treated as confidential by the Investor except as otherwise required by law, rule or regulation or in connection with the transfer, sale, lease or the exercise of rights under the Operative Documents by such Investor of its Undivided Interest (and, in such case, the Transferee, purchaser, sublessee (other than the Sublessee) or other user will also agree to treat such information as confidential)). Upon request of the Investor, the Sublessor or the Lender, the Sublessee shall make available a Responsible Officer to discuss the business, financial condition or accounts of the Sublessee; provided, however, that at each inspection, the representatives of such Persons must be accompanied by, and must follow the reasonable directions of, representatives of the Sublessee or any sub-sublessee. No inspection pursuant to

this Section 12 shall significantly interfere with the normal use, commercial operation or maintenance of the Facility, or any Part thereof or the normal conduct of the Sublessee's or sub-sublessee's business. Each inspection shall be conducted in accordance with the Sublessee's safety and insurance programs. In connection with such inspection rights of the Sublessor, the Investor and the Lender, in no event shall (i) the Sublessor, the Investor or the Lender have any duty or obligation to make any such inspection and shall not incur any liability, or obligation by reason of not making any such inspection or (ii) the Sublessee have any duty or obligation to disclose any confidential information or trade secret to any Person except as may be required by the terms of the Control Documents or unless a Sublessee Event of Default shall have occurred and be continuing, provided, that information required to be disclosed or maintained under Sections 7(f) and 7(g) shall not be considered confidential or to be a trade secret.

Section 13. Assignment, Etc. The Sublessee may not, without prior written consent of the Sublessor and, if at such time the Lien of the Loan Agreement shall not have been discharged in accordance with the terms thereof, the Lender, assign any of its rights hereunder or under any other Operative Document or in the Undivided Interest; provided, however, that the Sublessee may enter into a sub-sublease pursuant to the terms and conditions of Section 8(b). Except as expressly permitted in the Operative Documents (including Section 15 of the Participation Agreement), the Sublessor may not, without the consent of the Sublessee, assign or convey its right, title and interest in and to this Sublease, any of the other Operative Documents or the Undivided Interest. Any assignment by either Sublessee or Sublessor in violation of this Section 13 shall, to the fullest extent permitted by Applicable Law, be null and void. The terms and provisions of this Sublease shall be binding upon and inure to the benefit of the Sublessor and the Sublessee and their respective successors and permitted assigns.

Section 14. Sublessee Events of Default. Each of the following events shall constitute a "Sublessee Event of Default":

(a) Sublessee shall fail (i) to make any payment of Sublease Basic Rent, Sublease Renewal Rent, Sublease Termination Value, Sublease Special Termination Value, Sublease Special Special Termination Value, Fair Market Sales Value of the Sublessor's Lease Interest, Sublease Purchase Option Price or any Sublease Supplemental Rent required to be paid pursuant to the Sublessee Loan Agreement on the date such payment shall be due and such failure shall be continuing on the 5th Business Day after such payment shall be due or (ii) to make any payment of any other amount of Sublease Rent not described in clause (i) hereof due under the Operative Documents on the date such payment shall be due and such failure shall be continuing on the 10th day after notice of such failure shall have been given by the Sublessor or other Person entitled to receive such payment to the Sublessee (or, if the giving of notice shall have been stayed as to the Sublessee, the end of the 10th day after such payment shall be due);

(b) any representation or warranty made by any Sublessee Person in any Operative Document (other than the Tax Indemnity Agreement) or in any written certificate furnished by the Sublessee or any Sublessee Person to the Sublessor, the Investor, the Investor Guarantor or the Lender pursuant to any Operative Document (other than pursuant to the Tax Indemnity Agreement) shall be discovered at any time to be untrue,

inaccurate or misleading in any material respect (or the Sublessee or any such Sublessee Person shall make an admission in writing to such effect) as of the date made and shall remain untrue or inaccurate in any material respect as of the 30th day (or, if such default is capable of cure, the 180th day, if the Sublessee or such Sublessee Person has notified the Sublessor in writing prior to such 30th day that it is (and it actually is) diligently attempting to cure such Sublessee Default) after the earlier of (x) the date on which notice of such untrue, inaccurate or misleading representation or warranty stating that the same is a Sublessee Default shall have been given by the Sublessor or the Lender to the Sublessee and (y) the date on which a Responsible Officer of the Sublessee shall have Actual Knowledge (i) of the inaccuracy or misleading character of such representation or warranty and (ii) that such inaccuracy will constitute a Sublessee Event of Default if not cured;

(c) any Sublessee Person shall fail to perform or observe in any material respect any covenant, obligation or agreement to be performed or observed by it hereunder (other than as referred to above in clause (a) and below in clauses (g), (h) (i), (j), (l) and (s)) or under any other Operative Document (other than the Tax Indemnity Agreement), and such failure shall continue unremedied as of the 30th day (or, if such default is capable of cure, the 180th day, if the Sublessee has notified the Sublessor in writing prior to such 30th day that it or such Sublessee Person, is (and it actually is) diligently attempting to cure such breach by appropriate action or proceedings) after the earlier of (x) the date on which notice of such breach shall have been given by the Sublessor, or the Lender to the Sublessee and (y) the date on which a Responsible Officer of the Sublessee shall have Actual Knowledge (i) of such breach and (ii) that such breach will constitute a Sublessee Event of Default if not cured; provided, however, that the Sublessee shall not be in default for failure to comply with its obligations under Section 7(a)(other than clause (ii) thereof) to the extent that compliance therewith is impossible or impracticable as a consequence of Force Majeure during a period not in excess of 180 days from the occurrence of circumstances constituting Force Majeure;

(d) the Sublessee (i) is declared bankrupt by a Dutch court and (A) the Sublessee shall have failed to institute an appeal within the maximum time allowed therefor by Applicable Dutch Law (which as of the Closing Date is 8 days) or, in the case of a default judgment, the Sublessee shall have failed to file an opposition request within the maximum time allowed therefor by Applicable Dutch Law (which as of the Closing Date is 14 days after such default judgment) and if the default judgment is subsequently upheld, the Sublessee shall have failed to institute an appeal within the maximum time allowed therefor by Applicable Dutch Law (which as of the Closing Date is 8 days) or (B) if the Sublessee has instituted a timely appeal, such bankruptcy has not been lifted within 90 days after such bankruptcy has first been declared or (C) the trustee in bankruptcy of the Sublessee has not declared in writing to the Sublessor, the Lender or the Investor within 30 days of the bankruptcy of the Sublessee that there will not be a "temporary stay" (afkoelingsperiode) under Section 63a of The Netherlands Bankruptcy Act, (ii) files for a provisional suspension of payments or requests to be declared bankrupt or (iii) commences a voluntary case under any other bankruptcy law now or hereafter in effect or a judicial proceeding seeking the appointment of a trustee, receiver, liquidator, custodian or other

similar official of it or any substantial part of its property, or consents to any such relief or to the appointment of or taking possession by any such official in any voluntary case or other proceeding commenced against it, or files for a provisional suspension of payments, or takes any corporate action to authorize, or in furtherance of, any of the foregoing;

(e) the Sublessee is dissolved (other than by reason of a statutory merger permitted by the Operative Documents) and/or enters into liquidation, whether voluntarily or involuntarily, under any Applicable Law or United States law to which the Sublessee is subject if, as a result of the application of such law, the rights of the Sublessor, the Lender or the Investor under the Operative Documents would be adversely affected;

(f) the Sublessee shall propose or enter into any arrangement or composition with or for the benefit of its creditors generally or shall propose an out of court settlement of indebtedness with its creditors generally, or propose or enter into any liquidation or dissolution of itself or its assets generally (other than as provided for under clause (d) hereof) or a petition or proceeding under any Dutch bankruptcy or moratorium law (or United States bankruptcy or moratorium law or other applicable bankruptcy or moratorium law to which the Sublessee is subject if, as a result of the application of such law, the rights of the Sublessor, the Lender or the Investor under the Operative Documents would be adversely affected) shall be filed or commenced against the Sublessee and shall not be dismissed within 120 days;

(g) the Sublessee shall fail to maintain or cause to be maintained the insurance required to be maintained pursuant to Section 11 hereof and such failure shall continue unremedied on the 5th Business Day after the earlier of (x) notice of such breach shall have been given by the Sublessor or the Lender to the Sublessee and (y) the date on which a Responsible Officer of the Sublessee shall have Actual Knowledge (i) of such failure and (ii) that such failure will constitute a Sublessee Event of Default if not cured; provided, however, if the insurance required to be maintained under Section 11 hereof shall cease to be effective with respect to the Sublessor, the Investor or the Lender or any Affiliate of the foregoing with respect to which the insurance required by Section 11 is required to be maintained, such grace period shall not be applicable and a Sublessee Default under this Section 14(g) shall immediately become a Sublessee Event of Default;

(h) the Sublessee shall fail to maintain, replace, renew or ensure the maintenance of the Letter of Credit in accordance with Section 11(d)(vii) of the Participation Agreement (including failure to renew or replace an existing Letter of Credit at least 30 days prior to the scheduled expiration thereof) or (B) the Letter of Credit shall become unenforceable, illegal, void or otherwise fail to comply with the requirements of Section 11(d)(vii) of the Participation Agreement.

(i) the Sublessee shall fail to comply with its obligations under Section 16 of the Sublease with respect to the security interests assigned to the Lender and such failure shall continue unremedied as of the 5th day after the earlier of (x) the date on which notice of the action required to be taken under Section 16 shall have been given by the Lender to the Sublessee and (y) the date on which a Responsible Officer of the Sublessee shall have Actual Knowledge (i)

of the action required to be taken and (ii) that failure to take such action will constitute a Sublessee Event of Default;

(j) the Sublessor shall fail to have a first priority perfected security interest in the IJssel Deposit unless such failure is due to the gross negligence of the Sublessor or the Investor or unless and for so long as the Sublessor or the Investor shall have waived the effect of such failure;

(k) [intentionally omitted];

(l) unless the Sublessee has purchased the Sublessor's Lease Interest, the Sublessee shall fail to arrange for the Lease Collateral Deposit in accordance with Section 20A of this Sublease as of the last day of the Sublease Basic Term;

(m) the Sublessee shall fail to comply (i) with Section 11(d)(xiii) and (ii) after five days, with Section 11(l) of the Participation Agreement, if notice has been given of the intent to exercise the Sublessee Renewal Option, prior to and as of the last day of the Sublease Basic Term;

(n) a payment default under the Sublessee Loan Agreement as of the last day of the Sublease Basic Term unless the Sublessee has purchased the Sublessor's Lease Interest.

(o) termination of the Leasehold Right, the Building Right or the Turbine Building Right;

(p) if at any time any holder of a Lien, including but not limited to each Other Trustee and the mortgagee under any mortgage, on (any of) the Facility, the Building Right, the Turbine Building Right, the Network Building Right, the Channel Building Right or the Cooling Water Station commences any foreclosure proceeding ("uitwinning") in accordance with Section 3:268 of the Dutch Civil Code or Sections 449 or 514 of the Dutch Procedural Code ("Burgerlijke Rechtsvordering") with respect to (A) any portion of the Facility, the Building Right, the Turbine Building Right, the Network Building Right, the Channel Building Right or the Cooling Water Station having a value in excess of $1 million or (B) any portion of the Facility, the Building Right, the Turbine Building Right, the Network Building Right, the Channel Building Right or the Cooling Water Station having a value which, together with the value of any other portion of the Facility, the Building Right, the Turbine Building Right, the Network Building Right, the Channel Building right or the Cooling Water Station subject to pending foreclosure proceeding or to foreclosure attachment ("executorial beslag") (and such attachment has not been removed or released within two months from it being made) or sold pursuant to prior foreclosure proceedings, is in excess of $1 million;

(q) (A) the German Lessor shall have declared any German Lease to be in default, and shall be exercising remedies as a result of a default under the German Lease pursuant to Section 14.2 thereof or shall have given notice that it will, subject to any purchase option in favor of the Sublessee under the German Lease as a result of such default, exercise remedies as a result of such default pursuant to Section 14.2 thereof, and (B) any Sublessee Person under any German Lease shall have failed (1) to pay to the German Lessor all of the amounts due and payable by it

under Section 14 of any German Lease within one day (excluding Saturdays and Sundays and any other day on which commercial banking institutions (with respect to any material commercial banking services) are closed or authorized or required by law, regulation or executive order to be closed in each jurisdiction in which collateral securing the payment obligations of any Sublessee Person under any German Lease is located) after receipt of such declaration; provided, however, that if any Sublessee Person is precluded from making such payment to the German Lessor on such day because it is a day on which commercial banking institutions (with respect to any material commercial banking services) are closed in Germany, the Sublessee shall not be in default under this Section 14(q) if any Sublessee Person makes such payment on the next day on which it is not so precluded or (2) to cure any other default under any German Lease that has a cure period of at least 5 days within 5 days prior to the expiration of the cure period applicable with respect thereto; provided further, however, that notwithstanding the foregoing, the Sublessee shall not be in default under this Section 14(q) from and after such time as title to all German Equipment shall have been transferred to the Lessor free and clear of any rights of, or claims by, the German Lessor;

(r) termination of the German Lease without the Lessor obtaining title to the German Equipment subject to Section 7(h) hereof;

(s) at any time after the Closing Date and until January 1, 2042, the Sublessee shall fail to pay, when due and payable, any installment of ground rent under the Notarial Deed of Establishment;

(t) Stichting Roca shall have failed to pay the Sale Remedy Purchase Price (as defined in the Change of Law Agreement) as required by the Change of Law Agreement or EZH shall have failed to comply with its obligations and undertakings in the Confirmations (as defined in the Change of Law Agreement);

(u) the Pledge shall fail to constitute a first priority security interest in the Euroclear Securities (as defined therein) and such failure shall continue in excess of 30 days; and

(v) the Sublessee shall have exercised the Sublease Purchase Option and shall have failed to comply with its obligations under Section 19 hereof as of the last day of the Sublease Basic Term.

Section 15. Remedies. (a) Sublessor Remedies. Upon the occurrence of any Sublessee Event of Default and at any time thereafter so long as the same shall be continuing, the Sublessor may, at its option, by a written notice to the Sublessee (except that, upon the occurrence of a Sublessee Event of Default described in Section 14(d), (e) and (f) hereof, no action or notice of any kind shall be required (all of which are hereby waived to the fullest extent permitted by Applicable Law) by or on behalf of the Sublessor, the Investor, or the Lender) and at any time thereafter, so long as all outstanding Sublessee Events of Default shall not have been remedied or unless such notice shall have been rescinded, do, and the Sublessee will comply with, one or more of the following as the Sublessor in its sole discretion shall elect, to the extent permitted by, and subject to compliance with, any Applicable Law then in effect, provided that with respect to such Sublessee Event of Default if the Sublessor elects one or more remedies set

forth in clauses (i) through (vi) below, the Sublessor shall not be entitled to realize more than the maximum benefit available under the most favorable of any one of such remedies set forth in clauses (i) through (vi) below:

(i) the Sublessor, by notice to the Sublessee specifying a payment date not earlier than 10 days, or more than 40 days, from the date of such notice, may require the Sublessee to assume, and the Sublessee shall be deemed to have assumed, the Sublessor's obligations, including the obligation to pay any remaining Lease Basic Rent under the Lease, to purchase the Sublessor's Lease Interest by paying to the Sublessor, and the Sublessee hereby agrees that it will assume such obligations and will pay to the Sublessor, on the payment date specified in such notice which payment date shall be an STV Date and in lieu of any further payments of Sublease Basic Rent and Sublease Renewal Rent hereunder, an amount equal to the sum of (A) any unpaid Sublease Basic Rent and Sublease Renewal Rent due and payable on or before the payment date specified in such notice, other than Sublease Basic Rent and Sublease Renewal Rent to the extent specified in Exhibit B to be payable on such date in advance for the period commencing on such date plus (B) an amount equal to the higher of Fair Market Sales Value and the Sublease Termination Value calculated as of the payment date specified in such notice; and upon the assumption referred to above and payment of such amounts and all other amounts then owing by the Sublessee under the Operative Documents, including any unpaid Accrued Sublease Supplemental Rent as of the payment date specified in such notice and interest at the Overdue Rate from the date specified for payment of the Sublease Termination Value to the date of actual payment of Sublease Termination Value and all other amounts payable pursuant to this Section 15(a)(i), the Sublessor shall sell, assign and transfer to the Sublessee or its designee all of the Sublessor's right, title and interest in and to the Sublessor's Lease Interest, without recourse or warranty (except as to the absence of any Trustee's Lien), the Sublessor shall request the Lender, upon discharge of the Lien of the Loan Agreement in accordance with the terms thereof, to execute and deliver appropriate releases of the Liens on the Sublessor's Lease Interest created by the Loan Agreement, the Sublessee shall be deemed to have assumed the obligation to pay any remaining Lease Basic Rent under the Lease, the Sublessor shall, at the Sublessee's cost and expense, execute and deliver such documents evidencing its assignment and transfer as the Sublessee shall reasonably request, and the Sublessee shall, at its own cost and expense, execute and deliver such documents evidencing its assumption as the Sublessor shall reasonably request or that shall be necessary in connection therewith and the Sublessor shall transfer or cause to be transferred to the Sublessee on an "as is, where is" basis and without any recourse or warranty (except as to the absence of any Trustee's Liens): (i) the Lease Collateral Deposit, if any (subject to any security interest therein in favor of the Lessor), (ii) the Trustee Treasury Collateral, if any (subject to any security interest therein in favor of the Lessor), and (iii) the Sublessee Loan (in accordance with the terms thereof);

(ii) the Sublessor, by written notice to the Sublessee specifying a payment date which shall be not earlier than 10, nor more than 40, days from the date of such notice which shall be an STV Date, may demand that the Sublessee pay to the Sublessor, and the Sublessee shall pay the Sublessor, on the payment date specified in such notice, as

liquidated damages for loss of a bargain and not as a penalty (in lieu of the Sublease Basic Rent and Sublease Renewal Rent payable after such payment date), any unpaid Sublease Basic Rent and Sublease Renewal Rent due and payable on or before such payment date, other than Sublease Basic Rent and Sublease Renewal Rent to the extent specified in Exhibit B to be payable on such date in advance for the period commencing on such date, plus all other amounts owing, including any unpaid Accrued Sublease Supplemental Rent as of such payment date, plus, whichever one of the following amounts the Sublessor, in its sole discretion, shall specify in such notice: (A) an amount equal to the excess, if any of the Sublease Termination Value computed as of such payment date, over the Fair Market Rental Value of the Undivided Interest for the remaining useful life of the Undivided Interest (discounted at the Interest Rate) or (B) an amount equal to the excess, if any, of the Sublease Termination Value for the Sublessor's Lease Interest, computed as of such payment date; over the Fair Market Sales Value of the Sublessor's Lease Interest as of such payment date, plus, in the case of either clause (A) or (B) above, to the extent permitted by Applicable Law, interest at the Overdue Rate on the amount of such excess, if any, and other amounts payable pursuant to this Section 15(a)(ii) from the payment date specified pursuant to this Section 15(a)(ii) to the date of actual payment of all such amounts and all other amounts then owing by the Sublessee under the Operative Documents, including any unpaid Accrued Sublease Supplemental Rent; provided, however, that, if the Sublessor's Lease Interest cannot practicably be leased or sold, the Fair Market Rental Value or the Fair Market Sales Value, as the case may be, for purposes of this Section 15(a)(ii) shall be deemed to be zero; provided, however, in the case of such a zero amount, the Sublessor shall require the Sublessee to assume, and the Sublessee shall be deemed to have assumed, the Sublessor's obligations under the Lease, including the obligation to pay any remaining Lease Basic Rent under the Lease (and the Sublessee shall, at its own cost and expense, execute and deliver such documents as the Sublessor may reasonably request or that shall be necessary in connection therewith to effectuate the assumption), and upon the assumption and the payment of all amounts provided herein, such right, title and interest as the Sublessor may have in and to the Sublessor's Lease Interest shall pass from the Sublessor, without recourse or warranty (except as to the absence of any Trustee's Lien), and vest in the Sublessee or its designee upon the payment of all amounts specified in this Section 15(a)(ii) and the Sublessee shall be deemed to have assumed the obligation to pay any remaining Lease Basic Rent under the Lease, and upon the assumption by the Sublessee of the Sublessor's obligations under the Lease and receipt by the Sublessor of all amounts required to be paid hereunder, the Sublessor shall transfer or cause to be transferred to the Sublessee on an "as is, where is" basis and without any recourse or warranty (except as to the absence of any Trustee's Liens): (i) the Lease Collateral Deposit, if any (subject to any security interest therein in favor of the Lessor), (ii) the Trustee Treasury Collateral, if any (subject to any security interest therein in favor of the Lessor), and the Sublessee Loan (in accordance with the terms thereof);

(iii) the Sublessor may, without terminating this Sublease, cause the Sublessee, upon the written demand of the Sublessor and at the Sublessee's sole expense, to return promptly, and the Sublessee shall return promptly, the Undivided Interest and its interest under the Operative Documents or any part thereof to the Sublessor or its order in the

manner and condition required by, and otherwise in accordance with all the provisions of, Section 5 hereof, as if the Undivided Interest were being returned pursuant to Section 5 hereof, and the Sublessee shall comply with all the obligations stated therein and shall promptly execute and deliver to the Sublessor such instruments or other documents as the Sublessor may deem necessary or advisable to enable the Sublessor to obtain possession of the Undivided Interest; provided, however, that if the Sublessee shall for any reason fail to execute and deliver such instruments and documents after such request, the Sublessor shall be entitled to the remedy of specific performance, conferring the right to immediate possession of the Undivided Interest upon the Sublessor and requiring the Sublessee to execute and deliver such instruments and documents to the Sublessor and the Sublessee agrees to make available (on a reasonable basis) to the Sublessor, in order to accomplish such delivery of possession;

(iv) Sublessor may, with 20 days' prior written notice (but only 5 days' prior written notice with respect to the Rotte Deposit) to the Sublessee, sell the Sublessor's Lease Interest, any property pledged to secure the Sublessee's obligations under the Sublease or the Sublessee's interest as Sublessee under the Operative Documents or any part thereof at public or (to the extent permitted by Applicable Law) private sale, as the Sublessor in its sole discretion, may determine, in any such case free and clear of any rights of the Sublessee and all other Persons and in accordance with Applicable Law, it being understood that the Sublessor shall have no duty to account to the Sublessee for any profits resulting therefrom (except in the computation of liquidated damages pursuant to clause (ii) to the extent the Sublessor elects to exercise remedies under these Sections); provided, however, that the Sublessor shall be required to account to the Sublessee with respect to the sale of any property pledged to secure the Sublessee's obligations under the Sublease or the Sublessee's interest as Sublessee under the Operative Documents including, without limitation, the IJssel Deposit, the Rotte Deposit, any Acceptable Substitute Credit Protection, and any insurance proceeds, Warranty proceeds, letter of credit proceeds, German Lease proceeds and any other collateral held under the terms of this Sublease as security for the Sublessee's obligations; provided further, that no Sublessee Person may purchase any interest in property at any private sale unless the purchase price at such private sale is not less than an amount equal to the aggregate of all Sublease Basic Rent and Sublease Renewal Rent due on or before the date of such sale, all unpaid Accrued Supplemental Rent and all other amounts then due by the Sublessee under all of the Operative Documents;

(v) [intentionally omitted];

(vi) subject to the Operating Agreement and without terminating this Sublease, the Sublessor may hold, use, operate, sublease to others or keep idle the Undivided Interest or any part thereof or interest therein, as the Sublessor, in its sole discretion may determine, free and clear of any rights of the Sublessee and all other Persons claiming by or through the Sublessee and without any duty to account to the Sublessee with respect to such action or inaction or for any proceeds with respect thereto, except that the Sublessee's obligation to pay, Sublease Basic Rent and Sublease Renewal Rent, as the case may be, for the period commencing when the Sublessee or any such other Person

shall have been deprived of possession pursuant to this Section shall be reduced by the net proceeds, if any, received by the Sublessor from subleasing the Undivided Interest or such part thereof or interest therein to any Person other than the Sublessee for any period during the Sublease Basic Term or Sublease Renewal Term, as the case may be,

(vii) the Sublessor may demand that the Sublessee assume, and the Sublessee shall be deemed to have assumed, the Sublessor's obligations under the Lease, including the obligation to pay any remaining Lease Basic Rent under the Lease (and the Sublessee shall, at its own cost and expense, execute and deliver such documents as the Sublessor may reasonably request to effectuate the assumption or that shall be necessary in connection therewith) and the Sublessor and/or the Investor may demand that the Sublessee pay, in consideration thereof, the Equity Portion of Sublease Termination Value and unpaid Accrued Supplemental Rent constituting Excluded Payments payable under the Operative Documents and any other unpaid Sublease Rent; provided, that upon the assumption by the Sublessee of the Sublessor's obligations under the Lease and the receipt by the Sublessor of all amounts required to be paid hereunder, the Sublessor shall transfer or cause to be transferred to the Sublessee on an "as is, where is" basis and without any recourse or warranty (except as to the absence of any Trustee's Liens): (i) the Lease Collateral Deposit, if any (subject to any security interest therein in favor of the Lessor), (ii) the Trustee Treasury Collateral, if any (subject to any security interest therein in favor of the Lessor), and (iii) the Sublessee Loan (in accordance with the terms thereof); provided, however, that the Sublessor's and the Investor's rights with respect to the IJssel Deposit and any Letter of Credit shall not be limited in any way if the Sublessor was prevented from exercising its right to demand any payment or action by the Sublessee for any reason; and

(viii) the Sublessor may exercise any other right or remedy which may be available to it under Applicable Law or proceed by appropriate court action or actions to enforce the terms hereof or to recover damages for the breach hereof.

Except as otherwise provided herein, no rescission or termination of this Sublease, in whole or in part, or return of the Facility or exercise of any remedy under this Section 15 shall relieve the Sublessee of any of its obligations under this Sublease, all of which shall survive such termination or exercise of remedy. In addition, the Sublessee shall be liable for any and all Sublease Rent payable hereunder before, during or after the exercise of any of the foregoing remedies and, for all reasonable and documented legal fees and other reasonable costs and expenses, on an After-Tax basis, incurred by reason of the occurrence of any Sublessee Event of Default or the exercise of the Sublessor's remedies with respect thereto, including all reasonable costs and expenses incurred in connection with the return of the Undivided Interest in accordance with the terms of Section 5 hereof, including, without limitation, any reasonable costs and expenses (other than any Tax unless payable or indemnifiable by the Sublessee pursuant to Section 17 of the Participation Agreement or the Tax Indemnity Agreement) incurred by the Investor or the Sublessor in connection with any retaking of the Undivided Interest or in placing the Facility in the condition required by Section 5 hereof or maintaining or any appraisal of the Facilities.

To the extent permitted by Applicable Law the Sublessee hereby waives any rights now or hereafter conferred by statute or otherwise that may require the Sublessor to sell, sublease or otherwise use the Undivided Interest in mitigation of the Sublessee's damages as set forth in this Section 15 or that may otherwise limit or modify any of the Sublessor's rights and remedies in this Section 15.

Notwithstanding any other provision of this Section 15 to the contrary, the Sublessor may not exercise any remedies under Section 15(a)(iii), (iv), (vi), or (viii) to the extent such exercise dispossesses the German Lessor of the German Equipment if and to the extent that the German Lessor has title to such German Equipment unless the Sublessor first pays or causes to be paid all amounts payable to the German Lessor for such German Equipment pursuant to the German Documents.

(b) Remedies Cumulative. Except as otherwise expressly provided above, no remedy, right or power referred to in this Section 15 is intended to be exclusive, but each shall be cumulative and in addition to any other right, power and remedy referred to above or otherwise available to the Sublessor now or hereafter existing at law or in equity; and the exercise or beginning of exercise by the Sublessor of any one or more of such remedies shall not preclude the simultaneous or later exercise by the Sublessor of any or all of such other remedies, and the exercise or the beginning of the exercise of any right, power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy. No express or implied waiver by the Sublessor of any Sublessee Event of Default shall in any way be, or be construed to be, a waiver of any future or subsequent Sublessee Event of Default or a modification of any term hereof. No delay or omission by the Sublessor in the exercise of any right, power or remedy or in the pursuit of any right, remedy or power shall impair any such right, power or remedy or be construed to be a waiver of any default on the part of the Sublessee or to be an acquiescence therein.

(c) Notice of German Lease Default; German Lease Event of Default; Sublessee Default and Sublessee Event of Default. The Sublessee agrees to furnish to the Sublessor, the Investor and the Lender, promptly upon any Responsible Officer of the Sublessee having Actual Knowledge of any condition that constitutes a German Lease Default, a German Lease Event of Default, a Sublessee Default or a Sublessee Event of Default and that such condition constitutes a German Lease Default, a German Lease Event of Default, a Sublessee Default or a Sublessee Event of Default, written notice specifying such condition and the nature and status thereof.

Section 16. Further Assurances. The Sublessee will, at its sole cost and expense, promptly and duly execute and deliver to the Sublessor and the Lender such further documents and assurances, and take all actions necessary or appropriate to perfect or protect and to establish and maintain the perfection, priority and protection of the interests of the Sublessor and the Lender in the Undivided Interest and this Sublease and the security provided therefor (including the rights in and to the Rotte Deposit) (except in respect of any Trustee's Lien) and take such further actions as are necessary or appropriate in order effectively to carry out the intent and purpose of this Sublease and the Operative Documents.

Section 17. Notices. All notices required or permitted by the terms of this Sublease shall be given and shall become effective in the manner specified in Section 22(a) of the Participation Agreement.

0Section 18. Net Sublease, Etc. This is a net sublease, and, notwithstanding any other provision of this Sublease or of any other Operative Document except for Section 11(a)(i) of the Participation Agreement, the Sublessee's obligation to pay all Sublease Rent payable hereunder shall be absolute and unconditional under any and all circumstances and shall not be affected by any circumstance of any character, including, without limitation, any setoff, counterclaim, recoupment, abatement, suspension, deduction, deferment, reduction, defense or other right which the Sublessee may have against the Sublessor, including, without limitation, any rights of the Lessor under the Lease, the Lender or the Investor or any other Person. Until such time as all Sublease Rent required to be paid under this Sublease has been paid and the Sublease has terminated in accordance with the terms hereof, the obligations and liabilities of the Sublessee hereunder shall in no way be released, discharged or otherwise affected by any circumstance whatsoever, except as otherwise expressly provided in the Operative Documents, including, without limitation, (i) any defect in the condition, design, operation, merchantability or fitness for use of the Facility, any unavailability of the Facility, after the delivery and acceptance of the Undivided Interest by the Sublessee hereunder, for any reason, or (ii) any loss or destruction of, or damage to, the Facility, or interruption or cessation in the use or possession thereof by the Sublessee for any reason whatsoever and of whatever duration, (iii) the condemnation, confiscation, eminent domain, requisitioning, seizure or other taking of title to or use of the Facility, by any government or governmental authority or otherwise, (iv) the invalidity or unenforceability or lack of due authorization or other infirmity of this Sublease, (v) the lack of right, power or authority of the Sublessor to enter into this Sublease, (vi) any ineligibility of the Facility, for any particular use, whether or not due to any failure of the Sublessee to comply with any Applicable Law, (vii) Force Majeure or any frustration or impossibility, (viii) any legal requirement similar or dissimilar to the foregoing, any present or future law to the contrary notwithstanding, (ix) any insolvency, bankruptcy, reorganization or similar proceeding by or against the Sublessee or any other Person, (x) the Sublessee or any other Person at any time having immunity from suit, prejudgment attachment, attachment in aid of execution or execution on the grounds of sovereignty or otherwise, (xi) any Lien of any Person with respect to the Facility, the Property Rights, the Building Right, the Turbine Building Right, the Network Building Rights or the Channel Building Right, (xii) any prohibition, limitation or restriction of the Sublessee's use of all or any part of the Facility, or the Property Rights or any portion thereof or any interest therein or the interference with such use by any Person or any eviction by paramount title or otherwise, (xiii) the termination or loss of the Sublessor's Lease Interest, any other lease, sublease, right-of-way, easement, or other interest in personal or real property upon or to which any portion of the Undivided Interest is located, attached or appurtenant or in connection with which any portion of the Undivided Interest is used or otherwise affects or may affect the Sublessor's Lease Interest or right to the Undivided Interest, (xiv) any defect in the title to, or the existence of any Liens or rights of others whatsoever with respect to the Facility, or any of the Property Rights, or any acts or circumstances that may constitute an eviction or constructive eviction, failure of consideration or commercial frustration of purpose, (xv) any breach, default or misrepresentation by the Sublessor, the Lender, the Deposit Bank, or any other Person under this

Sublease or any of the other Operative Documents, (xvi) any provision, term, remedy or right contained in the German documents, or (xvii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing, regardless of whether the Sublessee shall have notice or knowledge of the same, it being the intention of the parties hereto that the obligations of the Sublessee shall be absolute and unconditional, shall be separate and independent covenants and agreements and shall continue unaffected unless and until the covenants have been terminated pursuant to an express provision of this Sublease. This Sublease shall be non-cancelable by the Sublessee, except as otherwise expressly provided in the Operative Documents, and the Sublessee hereby waives, to the extent permitted by Applicable Law, any and all rights which it may now have or which at any time hereafter may be conferred on it, by statute or otherwise, to terminate, cancel, quit or surrender this Sublease or to abate rent except in accordance with the express terms of the Operative Documents. Each payment of Sublease Rent shall be final and, absent manifest error, the Sublessee shall not seek, or claim any right, to recover all or any part of such payment from the Sublessor, the Lender or any other Person for any reason whatsoever. If for any reason whatsoever this Sublease or any other Operative Document shall be terminated, in whole or in part, by operation of law or otherwise, except as otherwise expressly provided herein or therein, the Sublessee nonetheless agrees to pay to the Sublessor (or such other Person entitled to receive such payment under this Sublease or other Operative Document), except to the extent already paid by the Sublessee in connection with such termination, an amount equal to each installment of Sublease Basic Rent and Sublease Renewal Rent and all Sublease Supplemental Rent at the time such payment would have become due and payable had this Sublease or such other Operative Document not been terminated in whole or in part

Section 19. Sublease Purchase Option; Exercise of Sublease Purchase Option. The Sublessee shall have the option, on the Sublease Basic Termination Date, to purchase the Sublessor's Lease Interest (the "Sublease Purchase Option") by making the assumption set forth below and by delivering to the Sublessor irrevocable written notice during the 360-day period ending 360 days prior to the Sublease Basic Termination Date (provided, however, that the Sublessee hereby agrees to notify the Sublessor within the same period of any intention on the Sublessee's part not to exercise the Sublease Purchase Option) and payment on the Sublease Basic Termination Date of (i) an amount equal to the Sublease Purchase Option Price (payment of which the Sublessor will accept either (A) in immediately available funds or (B) in a combination of immediately available funds in an amount equal to the Minimum Cash Amount) and delivery of the U.S. Government Obligations from the Ussel Deposit free and clear of all Liens (other than the lien of the Sublessor or the Investor), it being agreed that such U.S. Government Obligations shall be valued as of their respective maturity dates for purposes of calculating payment of the Sublease Purchase Option Price), together with (ii) any unpaid Sublease Basic Rent due and payable on or before the Sublease Basic Termination Date, plus (iii) any unpaid Accrued Sublease Supplemental Rent as of such date. Upon assumption by the Sublessee of the Sublessor's obligations under the Lease, including the Sublessor's obligation to pay any remaining Lease Basic Rent payable under the Lease and the payment of the amount (and, if applicable, delivery of the U.S. Government Obligations) set forth in the preceding sentence, the Sublessor shall transfer to the Sublessee the Sublessor's Lease Interest on an "as is, where is" basis and without any recourse or warranty (except as to the absence of any Trustee's Lien) and shall request the Lender, upon discharge of the Lien of the Loan Agreement in accordance with

the terms thereof, to execute and deliver, at the Sublessee's cost and expense, appropriate releases of the Liens on the Sublessor's Lease Interest created by the Loan Agreement and the Repledge, and the Sublessee shall be deemed to have assumed the Sublessor's obligations under the Lease, including the obligations to pay any remaining Lease Basic Rent payable under the Lease. The Sublessee shall, at its own cost and expense, execute and deliver such documents as the Sublessor may reasonably request or that shall be necessary to effectuate the assumption described above and the Sublessor shall transfer to the Sublessee (i) the Lease Collateral Deposit, if any (subject to any security interest therein in favor of the Lessor), (ii) the Trustee Treasury Collateral, if any (subject to any security interest therein in favor of the Lessor), and the Sublessee Loan (in accordance with the terms thereof).

Section 20. The Sublessor's End of Term Options. (a) The Sublessor's Election. In the event that the Sublessee shall not have elected the Sublease Purchase Option, the Sublessor, by delivering irrevocable written notice to the Sublessee not earlier than 180 days or later than 60 days prior to the Sublease Basic Termination Date, shall exercise one of the following Sublessor End of Term Options:

(i) to cause the Sublessee to renew this Sublease for the Sublease Renewal Term pursuant to Section 20(b) hereof (the "Sublease Renewal Option"); or

(ii) to cause the Sublessee to redeliver in place the Sublessor's Lease Interest pursuant to Section 20(c) hereof (the "Retention Option").

If the Sublessor fails to elect one of such options by the date therefor specified above, it shall be deemed to have elected the Sublease Renewal Option.

(b) Sublease Renewal Option. If the Sublessor shall have elected the Sublease Renewal Option:

(i) the Sublessee shall arrange for the reset of the interest rate on the Loan Certificate or its purchase by another lender or by the Sublessee as provided for in Section 2.17(f) of the Loan Agreement;

(ii) the term of this Sublease shall automatically be extended for the Sublease Renewal Term without further action by the Sublessor or the Sublessee; provided, however, that if, on or before the Business Day immediately preceding the Sublease Basic Termination Date, the Sublessee is unable to arrange for the reset of the interest rate on the Loan Certificate or its purchase by another lender, or by the Sublessee as provided for in Section 2.17(f) of the Loan Agreement, the Sublessee shall exercise the Sublessee Purchase Option in accordance with Section 19 (and the Sublessee's purchase of the Sublessor's Lease Interest in the Undivided Interest shall be consummated on the Sublease Basic Termination Date);

(iii) except as otherwise expressly provided herein, the terms of this Sublease shall remain in full force and effect during the Sublease Renewal Term, if any. The Sublessee shall pay to the Sublessor Sublease Renewal Rent in accordance with Section 3

hereof Such Sublease Renewal Rent and other amounts shall be adjusted on the commencement of the Sublease Renewal Term as provided for in Section 3(e) hereof.

(c) Retention Option. If the Sublessor shall have elected the Retention Option:

(i) the Sublessor shall make arrangements, in a manner acceptable to the Lender, in its reasonable discretion, for the payment in full of the principal amount of all Loan Certificates on the Sublease Basic Termination Date;

(ii) in the event Sublessor has failed to make arrangements reasonably acceptable to the Lender for the payment in full of the principal amount of all Loan Certificates on the Sublease Basic Termination Date in accordance with Section 20(c)(i) and the Lender has so notified the Sublessor and the Sublessee on the 45th day prior to the Sublease Basic Termination Date, the Sublessor shall be deemed to have elected the Sublease Renewal Option; and

(iii) unless Section 20(c)(ii) is applicable, the Sublessee shall return the Sublessor's Lease Interest to the Sublessor on the Sublease Basic Termination Date in accordance with Section 5 of this Sublease and shall pay all unpaid Sublease Basic Rent and all amounts of Sublease Supplemental Rent then due and owing.

Section 20A Actions Required on Sublease Basic Termination Date. (a) Sublessee Actions Required Upon Expiration of the Sublease Basic Term. Unless the Sublessee shall have irrevocably elected to purchase the Sublessor's Lease Interest, at least 30 days prior to the Sublease Basic Termination Date (or in the case of clause (iii) below, on the Sublease Basic Termination Date), the Sublessee shall take or cause to be taken the following actions, in each case whether or not the Sublessor has exercised the Sublease Renewal Option:

(i) the Sublessee shall arrange for an account with respect to the Lease Collateral Deposit in accordance with Section 3(e)(iv) of the Lease;

(ii) the Sublessee shall provide a Letter of Credit that meets the requirements set forth in Section 11(d)(vii) of the Participation Agreement; and

(iii) the Sublessee shall make the payment required to be made on the Sublease Basic Termination Date pursuant to the Sublessee Loan Agreement.

(b) Sublessor and Investor Actions Required Upon the Expiration of the Sublease Basic Term. Unless the Sublessee shall have irrevocably elected to purchase the Sublessor's Lease Interest, on the Sublease Basic Termination Date, the Sublessor shall take or cause to be taken the following actions, in each case whether or not the Sublessor has exercised the Sublease Renewal Option:

(i) if the Sublessee has provided the Letter of Credit in accordance with Section 20A(a)(ii), to the extent required thereby, and no Sublessee Default or Sublessee Event of Default has occurred and is continuing, the Sublessor shall release its security interest in the U.S. Government Obligations comprising the Ussel Deposit; and (ii) if the



newyork 296041 v2 [oxp!02! DOC]

US09436

Sublessee has made the payment required to be made on the Sublease Basic Termination Date under the Sublessee Loan Agreement, the Sublessor shall distribute such payment to the Investor and shall cause the Investor to purchase U.S. Government Obligations and pledge all of its right, title and interest in such U.S. Government Obligations to the Lessor pursuant to Section 11(a)(x) of the Participation Agreement as security for the Sublessor's obligation to pay Lease Basic Rent and the Investor's obligations under Section 11(a)(viii) of the Participation Agreement.

(c) Costs and Expenses. The Sublessee agrees to pay all reasonable and documented costs and expenses on an After-Tax Basis (including reasonable legal fees and expenses) incurred by any party to the Operative Documents in connection with the actions required by Sections 20 and 20A.

Section 21. True Sublease. It is the intent of the parties to this Sublease that the Sublease will be a true lease and not a "finance lease" as defined in Section 168(f) of the Internal Revenue Code of 1954, as amended and in effect prior to the Tax Reform Act of 1986 (P.L. 99-514), and that the Sublessor shall at all times be considered to be the sublessor of the Undivided Interest which is the subject of this Sublease for all Federal, state, city and local income taxes or for franchise taxes measured by net income and that this Sublease conveys to the Sublessee no right, title or interest in the Undivided Interest except as a sublessee. It is the further intention of the parties that this Sublease is a "finance lease" within the meaning of such term under Article 2A of the Uniform Commercial Code.

Section 22. Security for Sublessor's Obligation to Lenders. In order to secure all amounts payable by and all obligations to be performed by the Sublessor under the Loan Agreement, the Sublessor has agreed in the Loan Agreement, among other things, to assign to the Lender certain rights under this Sublease and to pledge to the Lender, and to grant a security interest in favor of the Lender, in the Sublease, subject to the reservations and conditions therein set forth. The Sublessee hereby consents to such assignment and to the creation of such pledge and security interests and the pledges and security interests in the other Collateral created thereunder and acknowledges receipt of copies of the Trust Agreement and the Loan Agreement, it being understood that such consent shall not affect any requirement or the absence of any requirement for any consent under any other circumstances. To the extent, if any, that this Sublease constitutes chattel paper (as such term is defined in the Uniform Commercial Code as in effect in any applicable jurisdiction), no security interest in this Sublease may be created through the transfer or possession of any counterpart hereof other than the original counterpart, which shall be identified as the counterpart containing the receipt therefor executed by the Lender on the signature page hereof.

The Sublessee hereby acknowledges receipt of due notice that the Sublessor's interest in this Sublease (including the Sublease Certificate of Acceptance delivered on the Closing Date (but excluding Excluded Payments and Excepted Rights)) has been assigned to the Lender as security pursuant to the Loan Agreement to the extent provided in the Loan Agreement, so long as the obligations of the Sublessor under the Loan Agreement have not been discharged pursuant to the terms thereof. Unless and until the Sublessee shall have received written notice from the Lender that the Loan Agreement has been discharged pursuant to the terms thereof, the

Lender shall have the right to exercise the rights of the Sublessor under this Sublease to the extent set forth in and subject in each case to the provisions of such Loan Agreement.

Section 23. Investment of Security Funds. Any monies held by the Sublessor or (until the Lien of the Loan Agreement shall have been discharged pursuant to the terms thereof) the Lender, which are not required to be paid to the Sublessee pursuant to the terms of this Sublease or any other Operative Document, shall, until paid to the Sublessee as provided in Section 10 or 11 hereof or applied as provided herein, be held as provided for in Section 14 of the Participation Agreement. On the Sublease Termination Date or date of earlier termination of the Sublease Term, if no Sublease Rent is due and payable and is unpaid and no Accrued Sublease Supplemental Rent is unpaid, or on such later date when no Sublease Rent is due and payable and is unpaid and no Accrued Sublease Supplemental Rent is unpaid, the Sublessor shall deliver to the Sublessee all funds and securities held or invested by it which are in excess of amounts, if any, which the Sublessor shall have elected to apply pursuant to the terms of and in accordance with this Section 23 and Section 14 of the Participation Agreement.

Section 24. Sublessor's Right to Perform for Sublessee. During (x) the existence and continuance of a Sublessee Event of Default or (y) the existence and continuance of a Sublessee Default which shall not have been cured within ten (10) Business Days after notice thereof from the Sublessor to the Sublessee, the Sublessor may, but shall not be obligated to, (i) subject to the terms of any Operative Document, enter the Facility to perform any and all acts required by the Sublessee's covenants herein contained and to take all such action thereon as in the Sublessor's opinion may be reasonable necessary or appropriate therefor and (ii) make advances to perform the same. The Sublessee shall reimburse the Sublessor for the amount of any such payment or advance.

Section 25. Concerning Sublessor. The Bank is entering into this Sublease solely in its capacity as Trustee under the Trust Agreement and not in its individual capacity and in no case shall the Bank (or any entity acting as successor or additional Trustee under the Trust Agreement) be personally liable for or on account of any of the statements, representations, warranties, covenants or obligations of the Sublessor hereunder, any such liabilities being hereby waived by the Sublessee; provided, however, that the Bank (or any successor or additional Bank) shall be personally liable to the Sublessee hereunder for its own gross negligence or willful misconduct or for its negligence in handling money or for its breach of any representation or warranty or covenant made in its individual capacity under the Operative Documents.

Section 26. Severability. Any provision of this Sublease which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by Applicable Law, the Sublessee and the Sublessor hereby waive any provision of law that renders any provision hereof invalid, prohibited or unenforceable in any respect.

Section 27. Counterparts. This Sublease may be executed by the parties hereto in separate counterparts, each of which, subject to Section 22 hereof, when so executed and

delivered shall be an original, but all such counterparts shall together constitute but one and the same instruments.

Section 28. Amendments and Waivers. No term or provision of this Sublease may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party against which the enforcement of the change, waiver, discharge or termination is sought.

Section 29. Section and Paragraph Headings. The section and paragraph headings in this Sublease and the table of contents are for convenience of reference only and shall not modify, define, expand or limit any of the terms or provisions hereof.

Section 30. Choice of Law. This Sublease shall be governed by the laws of the State of New York excluding (to the greatest extent permissible by law) any rule of law that would cause the application of the laws of any other jurisdiction other than the State of New York. This Agreement has been delivered in the State of New York.

Section 31. Survival. Notwithstanding any provision hereof, any indemnity contained in Sections 16, 17 and 18 of the Participation Agreement shall survive the expiration or early termination of this Sublease regardless of the cause therefor. The Sublessee's obligation, if any, to pay unpaid installments of the Sublease Purchase Option Price pursuant to Section 19 shall survive the termination of this Sublease.

Section 32. Third-Party Beneficiary. The Investor is a third-party beneficiary of all provisions herein that make reference to the Investor.

IN WITNESS WHEREOF, the Sublessor and the Sublessee have each caused this Sublease Agreement to be duly executed on the day and year first above written.

WILMINGTON TRUST COMPANY,
not in its individual capacity,
but solely as Trustee

By______________________________
Name: JAMES P. LAWLER
Title: Vice President

N.V. ELECTRICITEITSBEDRIJF
ZUID-HOLLAND

By______________________________
Name: J. A. HOYTE de JONG
Title: Attorney-in-Fact

# EXHIBIT A-7

SCHEDULE I
to
Notice

Schedule of U.S. Government Obligations
Pledged under the Agreement
(ROCA Facility Trust No. 2)

Designation by Name, Series, Maturity Date and CUSIP Number

Owned by the Pledgor as follows:

| Name | CUSIP No. | Amount (At Maturity) | Maturity Date |
|---|---|---|---|
| U.S. Government Obligations | 912833JX9 | $ 5,221,000.00 | 15-Nov-11 |
| U.S. Government Obligations | 912833KN9 | $ 7,363,000.00 | 15-Aug-17 |
| U.S. Government Obligations | 912833KQ2 | $22,959,000.00 | 15-Feb-18 |
| U.S. Government Obligations | 912833KR0 | $22,959,000.00 | 15-May-18 |
| U.S. Government Obligations | 912833KS8 | $22,959,000.00 | 15-Aug-18 |
| U.S. Government Obligations | 912833KT6 | $22,959,000.00 | 15-Nov-18 |



Exhibit B

(WED)12.17'97 20:07/ST.15:41/NO.3500312122 P 14/29
M M&C NY FAX DEPT
NOV 03 '98 14:17
FROM M&C NY FAX DEPT
8474441100
PAGE.02

US01835

# EXHIBIT A-8

conEdison

Andrew W. Scher
Assistant General Counsel
Law Department

4 Irving Place
New York NY 10003
212 460 6209
212 677 5849 fax

May 24, 2001

VIA FAX

Jan Trapman, Treasurer
EZH
Von Geusaustratt 193
2274 RJ Voorburg

Re: Roca Facility Trust No. 2

Dear Mr. Trapman:

I am writing to follow-up on an e-mail sent to you on May 16th from Jeffrey Chu of Con Edison Development, which is the parent company of the Roca Facility Trust No. 2.

We have been requested to provide certain information regarding the US Treasury Strips purchased with respect to the equity portion of sublease rents payable for Roca Facility Trust No. 2. The information is being requested by the US Internal Revenue Service pursuant to a detailed audit of said transaction. Specifically, we are being asked to provide the following information:

A) A listing of the investments (product, CUSIP number, and amount purchased).
B) The date(s) of purchase.
C) The maturity date(s).
D) A history of the investments to date (the market value as of each L/C calculation date should be sufficient).

Although we have unofficial correspondence indicating some of this information, we have no official written communication addressing all of the listed information. Could you please provide this information to us, or authorize Credit Suisse First Boston to release such information to us, so that we may promptly respond to the US Internal Revenue Service? The account number at CSFB for this transaction is 2F4A20.

Thank you very much for your prompt attention to this request.

Very truly yours,

Andrew Scher

Exhibit C

a conEdison, inc. company

# EXHIBIT A-9

e·on | Benelux

Fax

E.ON Benelux Generation n.v.
Von Geusaustraat 193
2274 RJ Voorburg
The Netherlands
T +31 70 382 00 28
F +31 70 383 39 01
www.eon-benelux.com
info@eon-benelux.com

Jan Trapman
Manager Financing & Risk Management
Financing & Risk Management
T +31 70 322 15 14
F +31 70 322 27 49
jan.trapman@eon-benelux.com

No. pages incl. cover 4

| | |
|---|---|
| To | Mr. Andrew Scher |
| Company | Consolidated Edison Co. |
| Department | |
| Fax no. | 001-212-6775850 |
| CC | |
| From | Jan Trapman |
| Date | May 30, 2001 |
| Reference | |

Dear Sir,

Re: your fax dd. May 24, 2001

I am sorry not to respond earlier, but I did not receive the e-mail your refers to of Mr. Chu.

Please find enclosed the information you requested:
- a copy of the purchase confirmation from December 17 1997
- a sheet with the most recent adjustment for the LC value, with the Strip prices of November 4, 2000.

I hope this will be sufficient for your purposes; otherwise call me or e-mail me (see my e-mail address above).
Kind regards

E.ON Benelux Generation n.v.

Jan Trapman

30. MAY. 2001 11:29 EZH FEZ SECR.

CREDIT SUISSE | FIRST BOSTON

# FAX Transmittal

| | |
|---|---|
| DATE: | 17 December 1997 |
| SENT BY: | Hans Bruijn |
| TO: | Jan Trapman |
| COMPANY: | EZH<br>Den Haag<br>Nederland |
| FAX NUMBER: | 9 00 31 70 322 2749 |
| NUMBER OF PAGES (WITH COVER): | 2 |

MESSAGE:

Roca - St. Yssel

Dear Jan,

We are pleased to confirm the following trades:

Trade date 15 december 1997
Value date 17 december 1997

Credit Suisse First Boston sells $ 5,221,000
US treasury strip coupon 11/15/2011, cusip 912833JX9
Price 43.789%
Net amount $ 2,286,223.69

Con Ed

~~Credit Suisse First Boston sells $ 9,715,000~~
~~US treasury strip coupon 11/15/2016, cusip 912833KK5~~
~~Price 32.128%~~
~~Net amount $ 3,121,235.20~~

Bank One

~~Credit Suisse First Boston sells $ 28,201,000~~
~~US treasury strip coupon 2/15/17, cusip 912833KL3~~
~~Price 31.588%~~
~~Net amount $ 8,908,131.88~~

Bank One

Credit Suisse First Boston
One Cabot Square
London E14 4QJ
Telephone 0171 888 2898
Fax 0171 888 3879

~~Credit Suisse First Boston sells $ 28,201,000~~
~~US treasury strip coupon 5/15/2017, cusip 912833KM1~~
~~Price 31.119%~~
~~Net amount $ 8,775,869.19~~

Bank One

Credit Suisse First Boston sells $ 63,765,000
US treasury strip coupon 8/15/2017, cusip 912833KN9
Price 30.623%
Net amount $ 19,526,755.95

— Bk One $ 56,402,000.-
Con Ed $ 7,363,000.

Credit Suisse First Boston sells $ 22,959,000
US treasury strip coupon 2/15/2018, cusip 912833KQ2
Price 29.744%
Net amount $ 6,828,924.96

Con Ed

Credit Suisse First Boston sells $ 22,959,000
US treasury strip coupon 5/15/2018, cusip 912833KR0
Price 29.303%
Net amount $ 6,727,675.77

Con Ed

Credit Suisse First Boston sells $ 22,959,000
US treasury strip coupon 8/15/2018, cusip 912833KS8
Price 28.863%
Net amount $ 6,626,656.17

Con Ed

Credit Suisse First Boston sells $ 22,959,000
US treasury strip coupon 11/15/2018, cusip 912833KT6
Price 28.435%
Net amount $ 6,528,391.65

Con Ed

For the above transactions we will hold the bonds in your safekeeping accounts. Thank you for the business.

Sincerely, Hans Bruijn

cc, Maggie Morrow at Capstar partners

**EZH - Roca - Con Edison**

*Mark to Market*

Calculation Date: November 4, 2000

product

| Cusip | Treasury Date | Free Cash | Treasury Strip Amount | Treasury Price as of November 4, 2000* | Fair Market Value of the Treasury |
|---|---|---|---|---|---|
| 912833 JX9 | 15-Nov-11 | $ 5,220,969.87 | 5,221,000.00 | 51.93750% ✓ | 2,711,656.88 |
| 912833 KN9 | 15-Aug-17 | $ 7,362,950.33 | 7,363,000.00 | 36.09375% ✓ | 2,657,582.81 |
| 912833 KQ2 | 15-Feb-18 | $ 22,958,869.31 | 22,959,000.00 | 35.00000% ✓ | 8,035,650.00 |
| 912833 KR0 | 15-May-18 | $ 22,958,869.31 | 22,959,000.00 | 34.46875% ✓ | 7,913,680.31 |
| 912833 KS8 | 15-Aug-18 | $ 22,958,869.31 | 22,959,000.00 | 34.03125% ✓ | 7,813,234.69 |
| 912833 KT6 | 15-Nov-18 | $ 22,958,869.31 | 22,959,000.00 | 33.43750% | 7,676,915.63 |
| | | | | Fair Market Value | 36,808,720.31 ✓ |

*As published in The Wall Street Journal November 6, 2000