**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,** | ) | |
| **Plaintiff,** | ) | **No. 06-305 T** |
| | ) | **Judge Marian Blank Horn** |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO COMPEL**

Thomas C. Durham
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

*Attorney of Record for Plaintiff*

David F. Abbott
Mayer, Brown, Rowe & Maw LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2500
Fax: (212) 262-1910
dabbott@mayerbrownrowe.com

*Of Counsel for Plaintiff*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

I. INTRODUCTION ........ 1

II. QUESTIONS PRESENTED ........ 2

III. STATEMENT OF FACTS ........ 2

A. The EZH Investment ........ 2
B. Disclosures Prior to and During the IRS Audit ........ 3
C. Discovery in this Litigation ........ 5
1. Rule 26(a) Disclosures ........ 5
2. Responses to Request for Production ........ 5
D. Summary of Documents in Dispute ........ 7

IV. LEGAL DISCUSSION ........ 8

A. The Tax Risk Letter, the Tax Change Letter, and the In-House Memorandum are Protected from Disclosure as Opinion Work Product ........ 9
1. The "In Anticipation of Litigation" Requirement ........ 9
2. The Documents At Issue Were Prepared in Anticipation of Litigation ........ 10
B. Con Edison NY Has Not Placed Attorney Work Product at Issue ........ 16
1. The Documents at Issue Constitute Work Product ........ 17
2. Subject Matter Waiver Does Not Apply to Fact or Opinion Work Product That Has Not Been Placed "at Issue" in the Litigation ........ 18
C. Requiring Diclosure of Protected Work Product Would Prejudice Con Edison NY ........ 21

V. CONCLUSION ........ 21

# TABLE OF AUTHORITIES

**Page**

## Cases

*Deseret Mgmt. Corp. v. United States*, No. 06-86 T, 2007 WL 968136 (Ct. Fed. Cl. Mar 29, 2007) ........ 12
*Electro Med. Sys., S.A. v. Cooper Life Scis.*, 34 F.3d 1048 (Fed. Cir. 1994) ........ 13
*Energy Capital Corp. v. United States*, 45 Fed. Cl. 481 (2000) ........ 10, 12, 18
*Frank Lyon Co. v. United States*, 435 U.S. 561 (1978) ........ 16
*In Re First Commodity Corp. of Boston Customer Accounts Litig.*, No. 713, 1987 WL 11621 (D. Mass. May 15, 1987) ........ 10
*In re G-I Holdings Inc.*, 218 F.R.D. 428 (D.N.J. 2003) ........ 20
*In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459 (S.D.N.Y. 1996) ........ 18
*In re Martin Marietta*, 856 F.2d 619 (4th Cir. 1988) ........ 18
*In re Murphy*, 560 F.2d 326 (8th Cir. 1977) ........ 9
*In re: Echostar Commc'n Corp.*, 448 F.3d 1294 (Fed. Cir. 2006) ........ passim
*In re: JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW, 2006 WL 2850049 (N.D. Cal. Oct. 5, 2006) ........ 14
*Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176 (N.D. Ill. 2006) ........ 17
*Osage Nation v. United States*, 66 Fed. Cl. 244 (2005) ........ 17
*Pac. Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784(2006) ........ 9, 10, 12
*Samsung Electronics Co. v. Rambus Inc.*, 439 F. Supp. 2d 524 (E.D. Va. 2006) ........ 12
*Transamerica Corp. v. United States*, 15 Cl. Ct. 420 (1988) ........ 16
*United States v. Adlman,* 134 F.3d 1194 (2d Cir. 1998) ........ 9, 11, 12
*United States v. Adlman*, 68 F.3d 1495 (2d Cir. 1995) ........ passim
*United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285 (D.C. Cir. 1980) ........ 9
*United States v. Exxon Corp.* 94 F.R.D. 246 (D.D.C. 1981) ........ 20
*United States v. Gulf Oil Corp.*, 760 F.2d 292 (Temp. Emer. Ct. App. 1985) ........ 9
*United States v. Nobles*, 422 U.S. 225 (1975) ........ 9, 13, 18
*United States v. Roxworthy*, 457 F.3d 5909 (6th Cir. 2006) ........ 10, 12, 15

## Rules of the Court of Federal Claims

Rule 26(a) ........ 5, 6, 7
Rule 26(b)(3) ........ 2, 21

## Internal Revenue Code

Section 467 ........ 3, 4, 8, 11, 16

## Other

Restatement (Third) of the Law Governing Lawyers § 87 cmt. h (2000) ........ 10

# I. INTRODUCTION

Plaintiff, Consolidated Edison Company of New York, Inc. and Subsidiaries (hereinafter "Con Edison NY"), respectfully submits this Memorandum in Opposition to the Defendant's Motion to Compel. Although the Defendant's Motion paints a complicated picture of the situation, the current discovery dispute is really quite simple: The Defendant claims that Con Edison NY has waived attorney-client privilege and work product protection with respect to all legal advice received from Shearman & Sterling LLP ("Shearman & Sterling") and in-house counsel regarding the leasing transaction at issue in this case.[1]

In an effort to facilitate the discovery process and narrow the dispute regarding protected documents, Con Edison NY concedes that the disclosure of certain documents prior to and during the Internal Revenue Service ("IRS") audit waived the attorney-client privilege over all documents concerning the same subject matter.[2] Con Edison NY has removed such documents from its Privilege Log.[3] The subject matter waiver encompasses all documents currently in the United States' possession, and Con Edison NY does not object to the United States retaining such documents in unredacted form. The subject matter waiver also encompasses other documents that were not disclosed to either the IRS or the Department of Justice and that Con Edison NY will produce in unredacted form.

---

[1] The Defendant implies that Con Edison NY was unwilling to settle this discovery dispute in good faith. To the contrary, Con Edison NY repeatedly informed the Defendant of its willingness to negotiate the terms of the alleged waiver. The Defendant chose, instead, to discontinue discussions and to file the Motion to Compel currently before this Court.

[2] Defendant did not seek discovery of two documents, specifically an opinion provided by B. Meesters and E. Magnin dated December 15, 1997 (CE003029-44) and an opinion provided by T. Verhoeven dated December 15, 1997 (CE003058-67), in its Motion to Compel, presumably because it concedes that such documents concern a different subject matter.

[3] *See* Annotated Privilege Log, attached as Exhibit A to the Declaration of Thomas C. Durham, dated April 27, 2007 ("Durham Declaration").

The subject matter waiver of attorney-client privilege, however, does not affect valid claims of work product protection with respect to two Shearman & Sterling communications and one internal Con Edison NY memorandum. There is no subject matter waiver for opinion work product which Con Edison NY has not placed at issue or used in a testimonial manner.

## II. QUESTIONS PRESENTED

1. Whether certain documents are attorney work product protected from disclosure under Rule of Court of Federal Claims 26(b)(3) ("Rule 26(b)(3)").

2. Whether the waiver of attorney work product protection as to a Shearman & Sterling legal opinion effects a subject matter waiver as to other opinion work product, even though the United States has made no showing of substantial need and even though Con Edison NY has not placed the disclosed information "at issue" or used such information in a testimonial manner in the course of the litigation.

## III. STATEMENT OF FACTS

### A. The EZH Investment

In the face of New York's decision to deregulate its energy market, Con Edison NY developed a strategy to diversify its energy business into key domestic and international energy markets and identify new investment strategies to ensure growth through the initial post-deregulation years. It explored varied investments in energy, infrastructure, and leasing suitable to these goals. The leasing transaction at issue, which Con Edison NY entered into with N.V. Electriciteitsbedrijf Zuid-Holland ("EZH") in 1997 (the "EZH Investment"), is one of many international transactions Con Edison considered and one of several that it pursued. In what is often described as a lease-leaseback or lease-in, lease-out ("LILO") transaction, a subsidiary of Con Edison NY leased from EZH an interest in a gas-fired combined cycle power plant located in the Netherlands for a term of approximately 43 years. EZH then subleased from Con Edison

NY its interest in the power plant for a term of approximately 20 years. At the end of the sublease, EZH had the option to purchase Con Edison NY's leasehold interest in the plant; if it elects not to, Con Edison NY could require EZH to lease the plant for an additional 16.5 years, lease the plant to a third party, or operate the plant itself.

Although Con Edison NY recognized the tax benefits associated with the EZH Investment, it entered into the transaction primarily for business reasons. Among other benefits, the EZH Investment offered an attractive rate of return with front-loaded earnings and a unique position from which to observe the legal and commercial environment in the Netherlands' energy market.

The IRS disallowed deductions claimed by Con Edison NY for rent, interest, and amortization of transaction costs associated with the EZH investment for the 1997 tax year. Con Edison NY paid the amounts at issue and commenced this tax refund proceeding.

**B. Disclosures Prior to and During the IRS Audit**

Prior to and during the course of the IRS audit, Con Edison NY produced four documents otherwise protected as attorney-client communications and, in doing so, effected a subject matter waiver of the attorney-client privilege with respect to the legal advice disclosed in such communications.

The first document was a draft legal opinion prepared by Con Edison NY's outside legal counsel, Shearman & Sterling, discussing the status of the leases as "true leases" and the application of section 467 to the EZH Investment ("Draft LILO Opinion").[4] This draft opinion had been produced to PricewaterhouseCoopers, Con Edison NY's auditors, and Mitchell & Titus, Con Edison NY's accountants, prior to the EZH Investment. These productions waived the attorney-client privilege but arguably not work product protection. Con Edison NY

[4] *See* Exhibit C-9 to the Declaration of David Geier ("Geier Declaration").

subsequently waived work product protection when it produced the draft opinion to the IRS. The final version of Shearman & Sterling's opinion ("Final LILO Opinion" or together with the Draft LILO Opinion, "LILO Opinion") was disclosed to Mitchell & Titus in the course of its tax return preparation and may have been disclosed to PricewaterhouseCoopers.[5] As set forth on Con Edison NY's privilege log, the Final LILO Opinion constitutes opinion work product and, notwithstanding disclosure to Con Edison NY's auditors and accountants, arguably remains protected. Con Edison NY, however, recognizes the unsettled nature of this legal issue and, in an effort to facilitate discovery, herein produces the Final LILO Opinion.[6]

During the IRS audit, Con Edison NY also produced two internal memoranda and a risk analysis chart that included brief references – most less than a sentence in length – to Shearman & Sterling's advice.[7] Con Edison NY does not dispute that attorney-client privilege and work product protection were waived with respect to each of the documents produced.

The risk analysis chart contains references to Shearman & Sterling's legal advice regarding the status of the leases as "true leases" and the application of section 467 to the EZH Investment, advice that was later formalized in the Final LILO Opinion.[8] The internal memoranda contain brief references to two Shearman & Sterling communications, referred to as the Tax Risk Letter and the Tax Change Letter, which set forth Shearman & Sterling's preliminary research on tax risks associated with the lease-leaseback structure, including the status of the leases as "true leases" and the application of section 467, and the legislative history

---

[5] Counsel for Con Edison NY recently learned of the disclosure of the Final LILO Opinion to Mitchell & Titus.

[6] *See* Final LILO Opinion attached as Exhibit B to Durham Declaration.

[7] *See* Exhibits C-1, C-2, and C-3 to Geier Declaration.

[8] Several additional issues are addressed in the LILO Opinion, and the subject matter waiver of the attorney client privilege also extends to these issues. *See* Exhibit B to Durham Declaration.

of applicable Code provisions. All three documents produced during the IRS audit are encompassed within the subject matter waiver of attorney-client privilege.

### C. Discovery in this Litigation

#### 1. Rule 26(a) Disclosures

Con Edison NY provided Initial Disclosures, pursuant to Rule of Court Federal Claims 26(a) ("Rule 26(a)"), to the Defendant on September 25, 2006; it produced 5,520 pages electronically on a CD-Rom with nonconsecutive Bates numbers with a CE prefix. It provided a duplicate set of its Initial Disclosures, also electronically on a CD-Rom, containing consecutive Bates numbers with a PF prefix on October 31, 2006. These productions were identical with the exception of the additional Bates number.

#### 2. Responses to Request for Production

On November 3, 2006, Con Edison NY produced an additional 1,813 pages of documents in response to the United States' First Request for Production of Documents. Con Edison NY supplemented its response to the United States' Request with: (i) an electronic production on November 17, 2006; (ii) a hard copy production on December 1, 2006; (iii) an electronic production on December 13, 2006; (iv) an electronic production on February 16, 2007; and (v) an electronic production on April 25, 2007.

On November 17, 2006, Con Edison NY produced an additional 509 pages of documents. Shortly thereafter, on December 1, 2006, Con Edison NY provided a supplemental privilege log and a limited number of hard-copy documents with attorney-client communications and/or protected work product redacted.[9] All redacted documents were identified on the privilege log. In its correspondence of December 1, 2006, Con Edison NY also notified the United States that it

---

[9] *See* Exhibit B-2 to Geier Declaration.

had inadvertently failed to redact two paragraphs of a document entitled "Leasing White Paper" produced on September 25, 2006[10] and one paragraph of a similar document also entitled "Leasing White Paper" produced on November 3, 2006.[11] Con Edison NY provided properly redacted copies of both documents at that time. In other words, in production that at that time totaled 7,842 pages, counsel for Con Edison NY had inadvertently failed to redact a total of only three paragraphs, an error that was promptly addressed and corrected.

In the electronic production on December 13, 2006, Con Edison NY provided 1,782 additional pages of documents to supplement its Rule 26(a) Disclosures and Response to the United States' First Request for Production of Documents. This production included electronic copies of the hard-copy documents provided on December 1, 2006. Due to a technological error in the production of the CD-Rom, all documents were produced in unredacted form. All documents that should have been redacted were, however, identified on the privilege log accompanying the production. Con Edison NY received notice of this error on December 19, 2006[12] and promptly provided a corrected CD-Rom on December 21, 2006.[13]

---

[10] *See* Exhibit C-4 to Geier Declaration (redacted copy) and Exhibit C to Durham Declaration (unredacted copy).

[11] *See* Exhibits C-5 and C-7 to Geier Declaration (redacted copies) and Exhibits D and E to Durham Declaration (unredacted copies). Exhibits D and E are versions of the Leasing White Paper for a transaction referred to as ENECO, whereas Exhibit C is the Leasing White Paper for the EZH Transaction.

[12] *See* Exhibit B-5 to Geier Declaration.

[13] The production of documents prior to and during the IRS audit effected a subject matter waiver of the attorney-client privilege, and thus, the effect of the inadvertent disclosures in discovery is moot. Notwithstanding, counsel for Con Edison emphasizes that it exercised great care in reviewing all documents produced and redacting portions of such documents containing attorney-client communications and/or protected work product. Counsel employed a multi-step review process. The documents produced in the Initial Disclosures on September 25, 2006 were carefully reviewed several times by Thomas Durham, a partner with Mayer, Brown, Rowe & Maw LLP, and all subsequent documents produced were reviewed by both Mr. Durham and Nicole Bielawski, a senior associate at Mayer, Brown, Rowe & Maw LLP. Both Mr. Durham and Ms. Bielawski reviewed the productions of November 3, 2006 and December 13, 2006

In the electronic productions of February 13, 2007 and April 25, 2007, Con Edison NY produced a total of 5,878 additional pages of documents to supplement its Rule 26(a) Disclosures and Response to the United States' First Request for Production of Documents. In total, Con Edison NY has produced a total of 15,502 pages of documents.

**D. Summary of Documents in Dispute**

Con Edison NY has waived the attorney-client privilege with respect to legal advice contained in the communications disclosed during the IRS audit, including the LILO Opinion as well as associated communications regarding and references to that advice. All references to attorney client communications which were inadvertently disclosed during discovery fall within that subject matter waiver, and thus the impact of the inadvertent disclosures is moot.

Following this waiver, only three documents remain at issue, specifically two letters from Shearman & Sterling regarding the structure of lease-leaseback transactions and one internal memorandum from Con Edison NY's in-house counsel. All three documents remain protected as opinion work product.

The first communication is a letter prepared by Shearman & Sterling at the behest of Con Edison NY's management, discussing the principal tax risks associated with a lease-leaseback transaction and identifying potential arguments and counter-arguments for each risk ("Tax Risk Letter"). The second communication is another letter prepared by Shearman & Sterling, also at the behest of Con Edison NY's management which summarizes certain congressional and

---

several times in electronic form, and Ms. Bielawski reviewed both productions in hard copy. Ms. Bielawski was assured that the hard-copy documents she reviewed were identical to the CD-Roms. The CD-Rom of December 13, 2006 included unredacted versions of the documents as a result of the technology department's inadvertent failure to "check the box" necessary to preserve the electronic redactions. The redacted versions of the documents continued to appear on the computer database. *See* Letters of December 14, 2006 and December 21, 2006, attached as Exhibits B-4 and B-7, respectively, to Geier Declaration.

administrative conventions relevant to Con Edison NY's decision whether to enter into a lease-leaseback transaction ("Tax Change Letter"). Both the Tax Risk Letter and the Tax Change Letter were provided to Con Edison NY on November 20, 1997, during which time Con Edison NY was negotiating the terms of the EZH Investment. Shearman & Sterling provided the Draft LILO Opinion, formalizing their advice regarding the EZH Investment on December 1, 1997, approximately ten days later.

The third communication at issue is an internal memorandum from Andrew Scher, an in-house attorney advising on the EZH Investment, to Peter O'Shea, Jr., the General Counsel ("In-House Memorandum"). In the memorandum, Mr. Scher provides his preliminary opinion regarding the application of section 467.

## IV. LEGAL DISCUSSION

Con Edison NY concedes, as discussed above, that its disclosures of certain documents prior to and during the IRS audit effected a subject matter waiver of the attorney-client privilege as to the legal advice contained therein. To facilitate the discovery process, Con Edison also waives the attorney-client privilege with respect to legal advice it received on related issues from Shearman & Sterling and in-house counsel with respect to other lease-leaseback transactions it considered but did not enter into from 1996 through 1998.[14]

Notwithstanding any subject matter waiver of the attorney-client privilege, the Tax Risk Letter, the Tax Change Letter, and the In-House Memorandum remain protected as opinion work product. *See In re: Echostar Commc'n Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006) (waiver of attorney-client privilege does not waive work product protection). Con Edison NY never placed

---

[14] The years 1996 through 1998 are those identified in the United States' Interrogatories. Con Edison NY does not admit any express or implied waiver as to documents related to a separate lease-leaseback transaction that Con Edison NY undertook in 1999 ("NUON Transaction"). The NUON Transaction and the tax treatment thereof are not at issue in this litigation.

attorney work product at issue or attempted to use such work product in a testimonial manner, and thus, there was no subject matter waiver of work product. Furthermore, the United States has not asserted a substantial need to overcome the work product protection.

The work product doctrine is distinct from and broader than the attorney-client privilege. *See United States v. Nobles*, 422 U.S. 225, 238 (1975). It does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's litigation preparations from the discovery attempts of an opponent. *See United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C. Cir. 1980). For this reason, Federal courts afford greater protection to protected attorney work product than to attorney-client communications. Indeed, "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977).

**A. <u>The Tax Risk Letter, the Tax Change Letter, and the In-House Memorandum are Protected From Disclosure as Opinion Work Product</u>**

**1. The "In Anticipation of Litigation" Requirement**

As embodied in Rule 26(b)(3), the work product protection extends to all tangible things created in anticipation of litigation. "Because the phrase 'in anticipation of litigation' eludes precise definition, there are a variety of approaches and conflicting decisions in the case law." *Pac. Gas & Elec. Co. v. United States*, 69 Fed. Cl. 784, 790 (2006) (internal quotation marks omitted). Under the most popular approach, work product is protected if it "was created *because of* anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation." *United States v. Adlman,* 134 F.3d 1194, 1195 (2d Cir. 1998) (emphasis added). Under the second approach, work product is protected if the "primary motivating purpose" of its creation is to assist in impending litigation. *See, e.g.*, *United States v. Gulf Oil Corp.*, 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985). The standard applicable in this

Court is uncertain. Just last year, the Court in *Pacific Gas and Electric* cited both definitions when addressing a claim of work product protection. *See* 69 Fed. Cl. at 790–92; *see also Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000) (citing both tests as if they were interchangeable).

Litigation includes "adversarial proceedings before an administrative agency." Restatement (Third) of the Law Governing Lawyers § 87 cmt. h (2000). Therefore, under either of the competing definitions of "anticipation of litigation," the documents prepared for a prospective IRS audit or subsequent tax litigation are protected work product. *See, e.g., United States v. Roxworthy*, 457 F.3d 590, 592, 593, 599 (6th Cir. 2006) ("memoranda … analyzing the tax consequences of certain transactions entered by Yum … , including possible arguments that the IRS could mount against Yum's chosen tax treatment of the transactions and possible counter-arguments" were created "because of" litigation); *In Re First Commodity Corp. of Boston Customer Accounts Litig.*, No. 713, 1987 WL 11621, at *2 (D. Mass. May 15, 1987) (unpublished) (applying the primary motivating purpose test and finding documents "prepared as part of a defense to an IRS audit of the . . . tax returns and in anticipation of possible litigation concerning those returns" were protected).[15]

**2. The Documents At Issue Were Prepared In Anticipation of Litigation**

The Tax Risk Letter, the Tax Change Letter, and the In-House Memorandum were all created in anticipation of litigation. Con Edison NY recognized that any contemplated lease-leaseback transaction that it entered into, including the EZH Investment, was certain to lead to an IRS audit and extremely likely to result in litigation. Although each of the three documents at issue addresses a different legal issue, each document was created to prepare for the anticipated IRS audit and subsequent tax refund litigation.

[15] A copy of this decision is attached as Exhibit F to Durham Declaration.

The circumstances surrounding the EZH Investment demonstrate the reasonableness of Con Edison NY's expectation of litigation. Con Edison NY had been under continuous audit by the IRS. The EZH Investment was projected to provide large tax deductions which Con Edison NY believed the IRS would inevitably question during its audit. Moreover, the application of certain Code provisions to lease-leaseback transactions was an unsettled legal question. Con Edison NY, although confident in its tax treatment of the EZH Investment, understood that the combination of these factors ensured an IRS audit and a significant possibility of subsequent litigation.

Under very similar factual circumstances, the Second Circuit in *United States v. Adlman*, 68 F.3d 1495 (2d Cir. 1995), rejected the District Court's holding that a tax opinion letter was not protected work product. *See id.* at 1501. In *Adlman*, the documents in question were created to assess the likely outcome of litigation prior to the company's undertaking a tax-advantaged restructuring; the taxpayer in that case was audited yearly and anticipated large losses. *See id.* at 1498. Con Edison NY's expectation of an audit and subsequent litigation is arguably even greater than the taxpayer's in *Aldman*, because the unsettled legal question here at issue was under discussion in connection with proposed Treasury Regulations for section 467. This forthcoming change in the law only increased the likelihood that Con Edison NY's lease-leaseback transaction would be the subject of an IRS audit and subsequent litigation. Con Edison NY noted the risk of an IRS audit and litigation in the Leasing White Papers regarding both the EZH Investment and ENECO Investment (another lease-leaseback transaction Con Edison NY considered).[16]

---

[16] *See* Exhibits C-4 and C-7 to Geier Declaration ("It is anticipated that the transactions will be structured in ways that will make any challenges to the structure by the IRS under current regulations difficult to support or litigate by the IRS.").

The fact that the documents at issue were created prior to the date of the EZH Investment is of no consequence. Courts have extended work product protection to documents created before a transaction's closing. *See, e.g., United States v. Roxworthy*, 457 F.3d 590 (6th Cir. 2006) (protecting a tax opinion letter created prior to the transaction's closing); *Adlman*, 68 F.3d at 1497; *cf. Samsung Electronics Co. v. Rambus Inc.*, 439 F. Supp. 2d 524, 568 (E.D. Va. 2006) (finding that the company anticipated litigation regarding a patent even though the infringing product had not yet been developed and Rambus' patent over the technology in question had not yet issued, and reasoning that holding otherwise would "ignore the reality that Rambus actually expected and anticipated that all of these contingencies would come to pass and lead Rambus into litigation"). As the Second Circuit observed in *Adlman*:

> There is no rule that bars application of work product protection to documents [created] prior to the event giving rise to litigation. Nor do we see any reason for such a limitation. In many instances, the expected litigation is quite concrete, notwithstanding that the events giving rise to it have not yet occurred.

*Id.* at 1501.[17]

Federal Circuit case law recognizes this point. The Court in *Echostar*, addressing the types of attorney work product which are discoverable after the client has invoked an advice of counsel defense in a patent infringement case, held that work product that was not communicated to the client remained protected. *See* 448 F.3d at 1303. Nowhere did the Court limit its holding to work product created after the allegedly infringing course of conduct had been undertaken.

---

[17] *Adlman* was decided under the "because of" definition of "anticipation of litigation." *See* 134 F.3d at 1202–03. That standard is applicable in this Court. *See Deseret Mgmt. Corp. v. United States*, No. 06-86 T, 2007 WL 968136, at *6 (Ct. Fed. Cl. Mar 29, 2007) (unpublished) (quoting the above language from *Adlman* and finding "the guidance" in that opinion "applicable" in determining whether documents in dispute were created in anticipation of litigation); *see also Pac. Gas & Elec.*, 69 Fed. Cl. at 790–92 (citing both the "because of" and "primary motivating purpose" tests in addressing a claim of work product protection); *Energy Cap. Corp.*, 45 Fed. Cl. at 485 (same). A copy of the *Deseret* decision is attached hereto as Exhibit G to Durham Declaration.

*See id.* This detail is important because, as the Federal Circuit has previously held, the duty to avoid infringing patents "includes seeking and obtaining competent legal advice *before* engaging in activity that may result in infringement." *Electro Med. Sys., S.A. v. Cooper Life Scis.*, 34 F.3d 1048, 1056 (Fed. Cir. 1994) (emphasis added). Presumably, some of the documents at issue in *Echostar* were prepared in advance of the company's decision to manufacture the allegedly infringing product. And even if they were not, there is no indication in *Echostar* that its holding would not extend to such documents.

The reality is that litigation preparation, particularly preparation for complex transactions, often takes place in advance of a transaction's execution. *See United States v. Nobles*, 422 U.S. 225, 238 (1975) ("[T]he [work product] doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system."). The relevant question is not whether some specific event giving rise to litigation has occurred, but whether litigation was reasonably anticipated at the time.

The Defendant argues that even if the documents were created at a time that Con Edison NY anticipated litigation, some of the documents over which Con Edison NY has claimed work product were not created for this purpose. The Defendant's arguments in this regard, however, focus solely on the LILO Opinion and do not address attorney work product claims asserted with respect to the three documents actually at issue. The substance of these documents undercuts the Defendant's argument.

The Tax Risk Letter and the Tax Change Letter clearly focus on identifying potential tax risks that needed to be resolved prior to Con Edison NY's entering into any lease-leaseback transaction, including the EZH Investment. For example, the Tax Risk Letter discusses "a line of attack for the Service" and notes arguments that "the Service may at the same time assert … ."

In preparing his internal memorandum, Mr. Scher, likewise, discussed the anticipated tax treatment of the lease-leaseback transaction and the likelihood that it would be scrutinized by both the IRS and a court.

The fact that Con Edison NY management, as well as legal counsel, reviewed the documents at issue is of no consequence. *See United States v. Adlman*, 68 F.3d 1495 (2d Cir. 1995); *see also In re: JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW, 2006 WL 2850049, at *13 (N.D. Cal. Oct. 5, 2006) (unpublished) (finding board minutes to contain protected work product). The Second Circuit in *Adlman* held that tax opinions were protected work product notwithstanding the fact they were created to advise management regarding a contemplated restructuring transaction that was likely to lead to litigation with the IRS. *See* 68 F.3d at 1497.[18]

Furthermore, there is no merit to the Defendant's claims that the documents were created "to assuage Plaintiff's board to obtain its approval of the transaction."[19] The In-House Memorandum sets forth preliminary advice regarding the EZH Investment but recommends that Con Edison NY seek additional advice on the issues raised prior to entering into the transaction. There is no evidence that this legal memorandum from an in-house attorney to the General Counsel was ever shared with the Board of Directors and, even if it had been, the memorandum does not offer any assurances upon which the Board could have relied. The same can be said of the Tax Risk Letter and the Tax Change Letter. Both letters were reviewed by management at Con Edison NY responsible for implementing lease-leaseback transactions, but there is no indication that either was shared with the Board of Directors. Regardless of whether the Board of Directors was privy to such communications, the communications, contrary to the United States' allegations, do not provide any assurances. The Tax Risk Letter identifies potential

---

[18] A copy of this decision is attached as Exhibit H to Durham Declaration.
[19] *See* Defendant's Motion to Compel at 28.

arguments and counterarguments to anticipated challenges that the IRS is likely to raise regarding the lease-leaseback structure utilized in the EZH Investment but does not quantify Con Edison NY's likelihood of success in such challenges. The Tax Change Letter summarizes certain congressional and administrative conventions relevant to Con Edison NY's decision to enter into lease-leaseback transactions but again did not provide any assurances or predictions regarding the impact of the conventions discussed for the EZH Investment. All three communications set forth the legal issues that Con Edison NY expected to encounter in a subsequent IRS audit or litigation regarding the EZH Investment, but none of them provided any assurance upon which the Board of Directors could rely in entering into such transactions.

When the substance of each document is examined, there can be little argument that these documents were drafted for the primary purpose of tax and litigation planning.[20] The documents are analogous to those in *Roxworthy*, in which the Court stated:

> Yum argues that the documents themselves are the best evidence that they were created in anticipation of litigation. Indeed, apart from eleven pages of background ... , the memoranda contain dense legal analysis of current tax law, including arguments and counter-arguments in certain areas of law that the memoranda argue are unsettled. .... We are persuaded by Yum's argument that even if the ... memoranda were prepared in part to assist Yum in avoiding underpayment penalties during an audit, the documents do not lose their work product privilege 'merely because [they were] created in order to assist with a business decision,' unless the documents 'would have been created in essentially similar form irrespective of the litigation.'

*Roxworthy*, 457 F.3d at 594, 598–99.

Each of the three documents in question was created in anticipation of an IRS audit and subsequent litigation concerning the proper tax treatment of lease-leaseback transactions, and specifically the EZH Investment. Con Edison NY, like the taxpayer in *Adlman*, recognized that

[20] The United States also contends that the Final LILO Opinion is not protected because Con Edison "intended to produce [it] to its independent auditor ... presumably to be able to meet its financial reporting requirements." *Id.* It makes no such claims regarding the three documents here at issue.

the IRS was almost certain to challenge any lease-leaseback transaction as a result of the tax losses generated, the complex legal issues, and the attention directed at such issues due in part to the proposed Treasury Regulations on section 467. Even setting the proposed Treasury Regulations aside, the IRS has a long history of challenging taxpayers' treatment of leveraged leasing transactions, even when, as is the case here, the transaction is expected to produce a significant profit. *See, e.g.*, *Frank Lyon Co. v. United States*, 435 U.S. 561 (1978); *Transamerica Corp. v. United States*, 15 Cl. Ct. 420 (1988).

The Tax Risk Letter, the Tax Change Letter, and the In-House Memorandum have not been disclosed, inadvertently or otherwise, to third parties, the IRS, or the Department of Justice. These documents remain protected, and the Court should deny the Defendant's Motion to Compel with respect to such documents. The Motion to Compel is moot in all other respects.

**B. <u>Con Edison NY Has Not Placed Attorney Work Product at Issue</u>**

The protected information in the Tax Risk Letter, the Tax Change Letter, and the In-House Memorandum constitutes opinion work product or "commingled" fact and opinion work product. Con Edison NY has not cited the work product of either Shearman & Sterling or in-house counsel in this proceeding and has not used any work product in a testimonial manner, and thus the required disclosure of these documents on principles of subject matter waiver is not appropriate. Subject matter waiver is justified "out of concern for fairness," *Fort James*, 412 F.3d at 1359, to prevent parties from using protection "as both a sword and a shield," *Echostar*, 448 F.3d at 1301. Con Edison NY, to the contrary, has affirmatively represented that it has no intention of using any attorney work product disclosed as a "sword" in this tax refund litigation.

Under Federal Circuit precedent, "work product waiver is not a broad waiver of all work product related to the same subject matter like the attorney-client privilege. Instead, work-

product waiver only extends to 'factual' or 'non-opinion' work product concerning the same subject matter as the disclosed work product." *Echostar*, 448 F.3d at 1302 (citations omitted).

**1. The Documents at Issue Constitute Opinion Work Product**

The Shearman & Sterling letters and internal memorandum at issue constitute opinion work product. Each document reflects the respective counsel's determined advice regarding potential issues to be evaluated in connection with a lease-leaseback transaction. To the extent that facts are referenced in the three communications, those facts are commingled with the opinion work product. *See Jaffe Pension Plan v. Household Int'l, Inc.*, 237 F.R.D. 176, 183 (N.D. Ill. 2006) (finding that two opinion letters were opinion work product because "the attorney clearly exercised judgment in assessing the potential liability for each case and in determining which matters and information to include in the report"); *see also Osage Nation v. United States*, 66 Fed. Cl. 244, 251 (2005) (finding that "a memorandum evaluating potential property claims … constitutes core opinion work product, reflecting the mental impressions, conclusions, opinions, or legal theories of the attorney" (internal quotation marks omitted)).

The Federal Circuit has held that opinion letters are "fact" work product discoverable under principles of subject matter waiver *only* when the attorneys' opinions "become evidence of a non-privileged, relevant fact" regarding the liability at issue in the case. *Echostar*, 448 F.3d at 1303. In *Echostar*, for example, the attorneys' opinions were relevant only to the extent that Echostar's reliance upon them for the proposition that its product was noninfringing protected it from liability for willful infringement. The legal opinions expressed in the three documents at issue in this case play absolutely no substantive role in this litigation: Con Edison NY's tax liability related to the EZH Investment is not dependent upon the advice it received from either its in-house counsel or Shearman & Sterling. Therefore, the portions of these documents that contain legal analysis remain protected.

### 2. Subject Matter Waiver Does Not Apply to Fact or Opinion Work Product That Has Not Been Placed "at Issue" in the Litigation

Because Con Edison NY has not placed its legal advice "at issue" in this litigation, subject matter waiver of protected fact and opinion work product is inappropriate. "A party … waive[s] the protections of the work product privilege by *placing the subject of the work product in issue*." *Energy Cap. Corp.*, 45 Fed. Cl. at 486 (emphasis added). As discussed above, Con Edison NY has never cited its attorneys' opinion work product in support of its tax treatment, to avoid tax liability, or for any other purpose, and it does not intend to do so in the future. In this circumstance, there is no basis for a broad waiver of opinion work product.

Con Edison NY also has never relied on its counsels' fact determinations for the truth of any fact here in dispute. Courts have held that subject matter waiver is appropriate as to fact work product only when a party has used the information in a "testimonial" manner. *See, e.g.*, *United States v. Nobles*, 422 U.S. 225, 239 n.14 (1975) (holding that subject matter waiver of fact work product applied "where … counsel attempts to make a testimonial use of materials" by using an investigator's notes to impeach witnesses); *In re Martin Marietta*, 856 F.2d 619, 625–26 (4th Cir. 1988) (finding that Martin Marietta made "testimonial use" of facts contained in documents it created during an internal investigation); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 471 (S.D.N.Y. 1996) (finding subject matter waiver of work product where party repeatedly invoked the work of its attorneys during an internal investigation "as an independent and reliable account of the facts").

The United States contends that Con Edison NY placed the advice of counsel at issue by (i) relying in the IRS audit on an opinion prepared by its accountants at PricewaterhouseCoopers, who received a copy of the Draft LILO Opinion; and (ii) acknowledging, in response to

Interrogatories, that Con Edison NY received legal advice from Shearman & Sterling regarding the tax treatment of the EZH Investment.[21] These contentions are without merit.

Any reference by Con Edison NY to the PricewaterhouseCoopers opinion during the IRS audit is inapposite. The PricewaterhouseCoopers opinion addresses the proper accounting treatment of the EZH Investment, not the tax issues which were the subject of the IRS audit.[22] PricewaterhouseCoopers received the Draft LILO Opinion on December 10, 1997, several weeks *after* it issued its opinion dated November 26, 1997. There is no evidence that PricewaterhouseCoopers ever considered, much less relied upon, the legal analysis contained in the Shearman & Sterling analysis when providing its accounting recommendations to Con Edison NY.

Con Edison NY referenced the PricewaterhouseCoopers opinion in the IRS audit as an example of the due diligence it performed in connection with the EZH Investment, in support of its claim that it entered into the EZH Investment for valid, non-tax business purposes and in doing so conducted appropriate due diligence. Con Edison NY's reference to the PricewaterhouseCoopers opinion in this manner did not place the substance of the advice provided by either PricewaterhouseCoopers or Shearman & Sterling at issue.

Further, to the extent Con Edison NY has mentioned its legal consultations at all, it has done so in connection with its obligation to respond fully to the United States' Interrogatories. Con Edison did not reference legal advisors in its Complaint.[23] In response to the United States' Interrogatory No. 1 requesting the names of "all individuals who have knowledge of the [EZH Investment], including each person's involvement....," Con Edison NY named Andrew Scher,

---

[21] *See* Defendant's Motion to Compel at 27 & n.19.
[22] *See* PricewaterhouseCoopers' opinion, attached as Exhibit I to Durham Declaration.
[23] *See* Complaint at ¶ 49. The reference to legal advisors in connection with the complaint was added in a parenthetical by United States.

in-house counsel, and outside counsel, including William Flowers and J.J. Stevenson of Shearman & Sterling; Bart Meesters and Ebel Magnin of Loeff Clayes Verbeke; and Thomas Verhoeven of Oppenhoff & Radler.[24] In response to the United States' Interrogatory No. 4 requesting information on how Con Edison NY mitigated risks related to the EZH Investment, Con Edison NY responded that it had mitigated "[l]egal [r]isk, [i]ncluding [t]ax [r]isk, … by seeking opinions from qualified and reputable legal counsel."[25] Neither of these interrogatory responses can be construed to say that Con Edison NY has relied, or intends to rely, upon the advice of counsel to substantiate its tax treatment of the EZH Investment.

The cases cited by Defendant in support of its argument that Con Edison NY placed its attorneys' advice at issue in this litigation are readily distinguishable. In the cases cited, the parties opposing subject matter waiver of the attorney-client privilege had invoked the content of their attorneys' advice as an affirmative defense or claim. In *In re G-I Holdings Inc.*, 218 F.R.D. 428 (D.N.J. 2003), for example, the district court held that the taxpayer effected a subject matter waiver when it relied upon the advice of its counsel to support its claim that it was "not liable for [tax penalties] because they … had reasonable cause for any underpayment of tax and acted in good faith with respect to any such underpayment." *Id.* at 433; *see also United States v. Exxon Corp.* 94 F.R.D. 246, 248-49 (D.D.C. 1981) (finding waiver where litigant "rais[ed] the defense of good faith reliance on DOE's representations"). The actions of these litigants in affirmatively placing attorneys' advice "at issue" simply cannot be equated with Con Edison NY's mere

---

[24] *See* Exhibit A-3, at 5, 7 to Geier Declaration. Although Con Edison NY identified attorneys at Loeff Claeys Verbeke and Oppenhoff & Radler in its response to Interrogatory No. 1, the United States has not claimed any waiver over the opinions provided by these firms. *See* Motion to Compel, p. 3, n.2.

[25] Exhibit A-3, at 12 to Geier Affidavit.

mention — in response to Interrogatories — that attorneys were involved in structuring the transaction and preparing for related litigation.

### C. <u>Requiring Disclosure of Protected Work Product Would Prejudice Con Edison NY</u>

The Defendant has not even attempted to show, much less has it established, that justice or equity requires waiver of work product protection as to opinion or commingled fact and opinion work product in this case. The subject matter waiver doctrine is intended to serve the ameliorative purpose of removing any advantage a party has gained through partial disclosure of its communications with its attorneys. Requiring disclosure of this internal memorandum would not serve that function. Instead, required disclosure would *create* an undeserved and unnecessary litigation advantage for the Defendant. The doctrine of subject matter waiver does not require or direct this Court to effectuate such a result by ordering disclosure of the three documents here at issue. The very limited factual information commingled with the opinion work product is readily available in other documents, and thus, the United States could not establish a need for the information contained the documents at issue. Furthermore, protecting Con Edison NY's work product does not create any undue hardship for the Defendant. *Cf.* Fed. R. Civ. P. 26(b)(3). For these reasons, this Court should deny Defendant's Motion to Compel the currently undisclosed work product in the Tax Risk Letter, the Tax Change Letter, and the In-House Memorandum.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Compel insofar as it seeks disclosure of (i) the Tax Risk Letter prepared by Shearman & Sterling, (ii) the Tax Change Letter prepared by Shearman & Sterling, and (iii) the In-House

Memorandum prepared by Andrew Scher. Each document is protected as opinion or commingled fact and opinion attorney work product.

Respectfully submitted this 27th day of April, 2007,

/s/ Thomas C. Durham
THOMAS C. DURHAM
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com
*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of April, 2007, I filed a copy of the foregoing Plaintiff's Memorandum in Response to Defendant's Motion to Compel using the Court's ECF/CM filing system. A notice of such filing will be automatically provided via the ECF/CM to counsel for the United States:

David N. Geier
U.S. Department of Justice, Tax Division
P.O. Box 26, Ben Franklin Station
Washington, D.C. 20044

/s/ Thomas C. Durham

THOMAS C. DURHAM
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,** | ) | |
| **Plaintiff,** | ) | **No. 06-305 T** |
| | ) | **Judge Marian Blank Horn** |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DECLARATION OF THOMAS C. DURHAM IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN RESPONSE TO DEFENDANT'S MOTION TO COMPEL**

I, Thomas C. Durham, pursuant to 28 U.S.C. § 1746, declare and state to the best of my knowledge as follows:

1. I am a partner with the law firm of Mayer, Brown, Rowe & Maw LLP and lead trial counsel for the Plaintiff, Consolidated Edison of New York, Inc. & Subsidiaries ("Con Edison"), in the above-captioned case.

2. I am familiar with the documents produced by the Plaintiff in the above-captioned case, as well as the documents produced by the Plaintiff to the Internal Revenue Service ("IRS") during the IRS's audit of the Plaintiff's lease investment with N.V. Electriciteitsbedrijf Zuid-Holland ("EZH") in 1997, the proper tax treatment of which is at issue in this proceeding.

3. Attached hereto as Exhibit A is a revised version of Plaintiffs' Privilege Log setting forth a true and correct description of each document remaining in dispute, and a summary of Plaintiff's position with respect to each document.

4. Attached hereto as Exhibit B is a true and correct copy of the legal opinion provided by Shearman & Sterling, dated February 18, 1998, bates numbered CE003005-15.

5. Attached hereto as Exhibit C is a true and correct unredacted copy of the Leasing White Paper for the EZH Investment (bates numbered CE012018-23, PF004350-55), attached as Exhibit C-4 to the Declaration of David N. Geier ("Geier Declaration")

6. Attached hereto as Exhibit D is a true and correct unredacted copy of the e-mail communication from Brian DePlautt to Mary Jane McCartney, dated February 9, 1998, including a copy of the Leasing White Paper for the ENECO Investment (bates numbered CE011957-63, PF007327-333), attached as Exhibit C-5 to the Geier Declaration.

7. Attached hereto as Exhibit E is a true and correct unredacted copy of the Leasing White Paper for the ENECO Investment (bates numbered CE011965-72, PF008265-272), attached as Exhibit C-7 to the Geier Declaration.

8. Attached hereto as Exhibit F is a true and accurate copy of the Opinion issued by the District Court of the District of Massachusetts on May 15, 1987, in *In Re: First Commodity Corp. of Boston Customer Accounts Litig.*, No. 713, 1987 WL 11621.

9. Attached hereto as Exhibit G is a true and correct copy of the Opinion issued by the Court of Federal Claims on March 29, 2007, in *Deseret Management Corp. v. United States*, No. 06-86 T, 2007 WL 968136.

10. Attached hereto as Exhibit H is a true and accurate copy of the Opinion issued by the District Court of the Northern District of California on October 5, 2006, in *In re: JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW, 2006 WL 2850049.

11. Attached hereto as Exhibit I is a true and accurate copy of the accounting opinion from PricewaterhouseCoopers, dated November 26, 1997 (bates numbered CE004724-27, PF005664-67).

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 27th Day of April, 2007,

/s/ Thomas C. Durham

Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com