# Exhibit F

In re First Commodity Corp. of Boston Customer Accounts Litigation
D.Mass., 1987.
Only the Westlaw citation is currently available.
United States District Court, D. Massachusetts.
IN RE FIRST COMMODITY CORPORATION OF BOSTON CUSTOMER ACCOUNTS LITIGATION.
**No. 713.**

May 15, 1987.

MEMORANDUM AND ORDER

WOLF, District Judge.

***1** Plaintiffs in the above actions have moved that this court compel Defendants, First Commodity Corporation of Boston ('First Commodity') and Don and Richard Schleicher (the 'Schleichers'), to produce certain documents in the possession of First Commodity relating to the financial condition of the Schleichers. First Commodity has asserted its corporate attorney-client privilege in withholding one group of the documents and, on behalf of the Schleichers, their attorney-client and work-product privileges in withholding a second group. In reaching its decision, the court has relied upon an in camera examination of the documents in dispute, as well as on the affidavits of John Cornish, Esq. and Lawrence Fletcher-Hill, Esq.

The motion to compel documents with regard to which First Commodity has asserted its corporate attorney-client privilege is denied. Most of the documents represent communications between attorney Stephen E. Moore and officers of his client, First Commodity, regarding matters on which First Commodity sought Mr. Moore's legal advice. One document is a communication between attorney Jeffrey V. Boxer and an officer of First Commodity, also regarding legal advice. The documents are, therefore, protected from disclosure by the attorney-client privilege. Upjohn Co. v. United States, 449 U.S. 383 (1981).

The motion to compel documents to which First Commodity has asserted attorney-client and work product privileges on behalf of the Schleichers is denied in part and granted in part. The motion is denied with respect to all documents except item 1 of document 10 and items 3, 4, 5, and 6 of document 12, with respect to which it is granted.

Those documents that represent communications between the Schleichers and their counsel are protected by the attorney-client privilege, which does not appear to have been waived.

The work product privilege stems from Federal Rule of Civil Procedure 26(b)(3), which protects from discovery those documents 'prepared in anticipation of litigation or for trial . . ..' Fed.R.Civ.P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495 (1947). A court must look to the specific factual situation surrounding a document to determine whether it was actually prepared 'in anticipation of litigation.' See Hercules Inc. v. Exxon Corp., 434 F. Supp. 136, 151 (D.Del. 1977). The most important inquiry for a court is 'to determine 'the primary motivating purpose behind the creation of the document.'' United States v. Gulf Oil Corp., 760 F.2d 292, 296 (Temp. Emer. Ct. App. 1985) (quoting United States v. Davis, 636 F.2d 1028, 1040 (5th Cir.), cert. denied, 454 U.S. 862 (1981)).

If a document is created as part of regular business activity, such as the preparation of tax returns, it is not protected from discovery by the work product privilege. Davis, 636 F.2d at 1040; United States v. El Paso Co., 682 F.2d 530, 543 (5th Cir. 1982), cert. denied, 466 U.S. 944 (1984). Once the government has begun an audit, however, preparation of documents in connection with the audit may be in anticipation of litigation and therefore be protected by the work product privilege. In re International Systems and Controls Corp. Sec. Litig., 91 F.R.D. 552, 557 (S.D.Tex. 1981), vacated on other grounds, 693 F.2d 1235 (5th Cir. 1982) (where corporation was under investigation by Securities Exchange Commission, documents of corporation's special audit committee were work product in anticipation of litigation). A claim of work product privilege is not defeated where the prospect of litigation is only a contingency, as long as 'the prospect of litigation is identifiable because of specific claims that have already arisen . . ..' Stix Products, Inc. v. United Merchants & Mfrs., Inc., 47 F.R.D. 334, 337 (S.D.N.Y. 1969), quoted in American Optical Corp. v. Medtronic, Inc., 56 F.R.D. 426, 431 (D.Mass. 1972).

***2** The documents withheld on the basis of the work

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

product privilege were prepared or collected by John Cornish, the Schleichers' personal tax attorney, or by Bruce Warwick, an accountant working under the direction of Mr. Cornish in connection with Mr. Cornish's representation of the Schleichers.[FN1] Based on an in camera examination of the documents at issue and on the affidavit of John Cornish, Esq., this court finds that the documents withheld on the basis of the work product privilege, except for item 1 of document 10 and items 3, 4, 5, and 6 of document 12, were prepared as part of a defense to an IRS audit of the Schleichers' tax returns and in anticipation of possible litigation concerning those returns. The documents are thus protected from discovery by the work product privilege.

Item 1 of document 10 and items 3, 4, 5, and 6 of document 12 show projections of the Schleichers' 1986 tax liability. At the time those documents were created, the 1986 tax returns had not been prepared or filed. The documents appear to relate to preparation of the returns. In any event, when the projections were prepared, there could have been no audit or dispute regarding the 1986 tax returns. The documents cannot, therefore, be said to have been prepared in anticipation of litigation. United States v. Davis, 636 F.2d at 1040; United States v. Gulf Oil, 760 F.2d at 297. Thus, item 1 of document 10 and items 3, 4, 5, and 6 of document 12 are not protected from discovery.

For the reasons stated above, the motion to compel production of documents to which First Commodity has asserted its corporate attorney-client privilege is hereby denied. The motion to compel production of documents to which the Schleichers have asserted the attorney-client privilege is also hereby denied. The motion to compel production of documents to which the Schleichers have asserted a work product privilege is denied with respect to all documents except item 1 of document 10 and items 3, 4, 5, and 6 of document 12, with respect to which it is granted. Item 1 of document 10 and items 3, 4, 5, and 6 of document 12 shall be produced forthwith.

FN1 Documents collected by an attorney or his agent are entitled to the same protection as documents prepared by the attorney, where production of documents assembled would reveal an attorney's mental impressions or legal theories. Sporck v. Peil, 759 F.2d 312, 315-16 (3d Cir.), cert. denied, 106 S.Ct. 232 (1985).

D.Mass., 1987.

In Re First Commodity Corp. of Boston Customer Accounts Litigation
Not Reported in F.Supp., 1987 WL 11621 (D.Mass.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit G

**H**

Deseret Management Corp. v. U.S.
Fed.Cl.,2007.
Only the Westlaw citation is currently available.
United States Court of Federal Claims.
DESERET MANAGEMENT CORPORATION, Plaintiff,
v.
The UNITED STATES, Defendant.
**No. 06-86 T.**

March 29, 2007.

**Background:** Taxpayer brought suit against the United States alleging that the Internal Revenue Service (IRS) erroneously assessed and illegally collected income taxes. Plaintiff moved to compel production of documents.

**Holdings:** The United States Court of Federal Claims, Hewitt, J., held that:

(1) communications between IRS employees and IRS attorneys were protected by attorney-client privilege;

(2) documents prepared in tax auditing process by the IRS were protected by the work product doctrine; and

(3) deliberative process privilege was applicable to protect documents prepared by IRS employees in connection with tax audit.

Motion denied.

**[1] Witnesses 410 ⚷198(1)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k197 Communications to or Advice by Attorney or Counsel
410k198 In General
410k198(1) k. In General. Most Cited Cases

The attorney-client privilege is properly invoked where: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court and in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client without the presence of strangers for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding and (4) the privilege has been claimed and not waived by the client.

**[2] Witnesses 410 ⚷199(2)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k197 Communications to or Advice by Attorney or Counsel
410k199 Relation of Attorney and Client
410k199(2) k. Parties and Interests Represented by Attorney. Most Cited Cases

The attorney-client privilege applies not only to private individuals, but also to government employees.

**[3] Witnesses 410 ⚷199(2)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k197 Communications to or Advice by Attorney or Counsel
410k199 Relation of Attorney and Client
410k199(2) k. Parties and Interests Represented by Attorney. Most Cited Cases

Communications by the Department of Justice to a client agency and by that agency's own attorneys to non-attorney personnel seeking or being provided with legal advice are entitled to protection under the attorney-client privilege.

**[4] Witnesses 410 ⚷222**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k222 k. Evidence as to Nature and Circumstances of Communication or Other Subject-Matter. Most Cited Cases

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

When a party invokes the attorney-client privilege by providing a privilege log, the description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements of attorney-client privilege have been established. RCFC, Rule 26(b)(5), 28 U.S.C.A.

**[5] Witnesses 410 ⚷199(2)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k197 Communications to or Advice by Attorney or Counsel
410k199 Relation of Attorney and Client
410k199(2) k. Parties and Interests Represented by Attorney. Most Cited Cases

Communications between employees of the Internal Revenue Service (IRS) and IRS attorneys were protected by attorney-client privilege.

**[6] Federal Courts 170B ⚷1112**

170B Federal Courts
170BXII Claims Court (Formerly Court of Claims)
170BXII(B) Procedure
170Bk1112 k. Discovery, Subpoenas, and Compelling Production of Evidence. Most Cited Cases

The work product doctrine provides for the qualified protection of documents and tangible things prepared by, or for, a party or that party's representative "in anticipation of litigation or for trial." RCFC, Rule 26(b)(3), 28 U.S.C.A.

**[7] Federal Courts 170B ⚷1112**

170B Federal Courts
170BXII Claims Court (Formerly Court of Claims)
170BXII(B) Procedure
170Bk1112 k. Discovery, Subpoenas, and Compelling Production of Evidence. Most Cited Cases

Documents prepared in tax auditing process by the Internal Revenue Service (IRS) were protected by the work product doctrine, as the IRS reasonably could have anticipated that the auditing process could lead to litigation, given size of corporate taxpayer and significance of business transaction which lay at heart of tax dispute. RCFC, Rule 26(b)(3), 28 U.S.C.A.

**[8] Witnesses 410 ⚷216(1)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k216 Communications to or Information Acquired by Public Officers
410k216(1) k. In General; Official or Governmental Privilege. Most Cited Cases

The "deliberative process privilege" covers documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.

**[9] Witnesses 410 ⚷216(1)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k216 Communications to or Information Acquired by Public Officers
410k216(1) k. In General; Official or Governmental Privilege. Most Cited Cases

In order for a document to be protected from discovery by the deliberative process privilege, it must be both "pre-decisional" and "deliberative."

**[10] Witnesses 410 ⚷217**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k217 k. Persons Entitled to Assert Privilege. Most Cited Cases

To invoke the deliberative process privilege, the head of the agency that has control over the requested document must assert the privilege after personal consideration; alternatively, the head of an agency can, when carefully undertaken, delegate authority to invoke the deliberative process privilege on the agency's behalf.

**[11] Witnesses 410 ⚷216(1)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k216 Communications to or Information Acquired by Public Officers

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

410k216(1) k. In General; Official or Governmental Privilege. Most Cited Cases
The party seeking protection under the deliberative process privilege must state with particularity what information is subject to the privilege.

**[12] Witnesses 410 216(1)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k216 Communications to or Information Acquired by Public Officers
410k216(1) k. In General; Official or Governmental Privilege. Most Cited Cases
To invoke the deliberative process privilege, an agency must supply the court with precise and certain reasons for maintaining the confidentiality of the requested document.

**[13] Witnesses 410 216(1)**

410 Witnesses
410II Competency
410II(D) Confidential Relations and Privileged Communications
410k216 Communications to or Information Acquired by Public Officers
410k216(1) k. In General; Official or Governmental Privilege. Most Cited Cases
Deliberative process privilege was applicable to protect documents prepared by employees of the Internal Revenue Service (IRS) in connection with tax audit, as the documents were "pre-decisional" and "deliberative."

Eric C. Olson, Salt Lake City, UT, for plaintiff.
W.C. Rapp, with whom were Eileen J. O'Connor, Assistant Attorney General, and David Gustafson, Chief, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, Washington, DC, for defendant. Steven I. Frahm, Assistant Chief, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, of counsel.

*ORDER*

EMILY C. HEWITT, Judge.
***1** Before the court are Plaintiff's Renewed Motion to Compel (Pl.'s Mot. or motion), defendant's Response of the United States to Plaintiff's Renewed Motion to Compel Discovery (Def.'s Resp. or response), and defendant's Motion for Leave to File Additional Response to Plaintiff's Renewed Motion to Compel Discovery. Plaintiff moves the court "for an order compelling [defendant] ... to produce certain documents responsive to [d]efendant's First Request for Production of Documents to Defendant as to which [defendant] has asserted claims of privilege." Motion 1. Plaintiff requested that the court conduct an in camera review of all documents subject to the motion, *id.*, and the court has conducted that review.

I. Background

Plaintiff Deseret Management Corporation (DMC) alleges that the United States, acting through the Internal Revenue Service (IRS or government), erroneously assessed and illegally collected income taxes. Plaintiff's Complaint (Compl.) 1. Plaintiff filed its complaint against defendant on February 3, 2006, *id.*, and the parties have been engaged in the discovery process since then.

On December 20, 2006, plaintiff filed Plaintiff's Motion to Compel Production of Certain Documents Claimed as Privileged and Request for In Camera Inspection By the Court (Pl.'s Orig. Mot. or original motion). Defendant responded on January 8, 2007 by filing its Motion of the United States to Strike Plaintiff's Motion to Compel. After a telephonic status conference held by the court on January 19, 2007, in which the parties agreed to attempt to settle the dispute, the court delivered an order finding moot both the original motion and defendant's responsive motion. Order of Jan. 19, 2007.

On January 31, 2007, plaintiff filed its Renewed Motion to Compel which, inter alia, requested the court to conduct an in camera review of certain documents as to which defendant had asserted claims of privilege. Pl.'s Mot. 1. Defendant filed its response on February 2, 2007. Def.'s Resp. 1. Plaintiff argued that defendant's "claims of privilege with respect to the documents ... cannot stand either because of procedural deficiencies in [defendant's] assertion of the privilege or because of the apparent fact that the documents do not qualify for privilege protection." Pl.'s Mot. 10. Defendant argued that plaintiff was not entitled to the requested documents because they were irrelevant to the case and because they were protected by attorney-client privilege, attorney work product privilege, and deliberative process privilege. Def.'s Resp. 14. The court granted-in-part plaintiff's motion and agreed to conduct an in camera review of the documents that defendant claimed were privileged. Order of Feb. 6, 2007. In connection with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

its review, the court has also considered arguments made in plaintiff's original motion.

Pursuant to the court's order, defendant caused to be delivered to the court, unfiled, two sets of the documents sought by plaintiff's motion. Defendant's privilege logs accompanied the documents, which were marked with the document number and arranged in the order discussed in the privilege logs. The court then reviewed each document together with the related assertion of privilege in the privilege logs.

II. Discussion

A. Attorney-Client Privilege

***2** [1] The attorney-client privilege is properly invoked where:
(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court [and] ... (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding [and] ... (4) the privilege has been (a) claimed and (b) not waived by the client.

*Pac. Gas & Elec. Co. v. United States,* 69 Fed.Cl. 784, 810 (2006) (*PG & E I* ) (alterations in original) (citing *First Fed. Sav. Bank of Hegewisch v. United States,* 55 Fed.Cl. 263, 266 (2003) (*First Federal* ) (citation omitted)). The privilege "encourages complete disclosure of information in the nature of confidential communications by a client to the attorney during the attorney-client relationship." *CIT Group/Equip. Fin., Inc. v. United States,* 24 Cl.Ct. 540, 542 (1991) (citation omitted). Moreover, "the attorney-client privilege does not shield all information that a client divulges to an attorney, or vice versa, but rather is limited to instances where legal advice is sought or rendered." *PG & E I,* 69 Fed.Cl. at 810 (citing *First Federal,* 55 Fed.Cl. at 266 (citing *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1037 (2d Cir.1984))). The privilege "evaporates upon any voluntary disclosure of confidential information to a third party." *Carter v. Gibbs,* 909 F.2d 1450, 1451 (Fed.Cir.1990), *superceded in non-relevant part by statute,* Pub.L. No. 103-424 § 9(c), 108 Stat. 4361 (1994), as stated in *In re EchoStart Commc'n Corp.,* 448 F.3d 1294, 1300 (Fed.Cir.2006). Furthermore, "the privilege impedes the search for truth and is therefore to be strictly construed." *PG & E I,* 69 Fed.Cl. at 811 (citing *First Federal,* 55 Fed.Cl. at 266 (citing *Energy Capital Corp. v. United States,* 45 Fed.Cl. 481, 484 (2000))).

[2][3] The attorney-client privilege applies not only to private individuals, but also to government employees. Communications by the Department of Justice to a client agency and by that agency's own attorneys to non-attorney personnel seeking or being provided with legal advice are entitled to protection under the attorney-client privilege. *See Cities Serv. Helex, Inc. v. United States,* 216 Ct.Cl. 470 (1978) (*en banc* ); *Renda Marine, Inc. v. United States,* 62 Fed.Cl. 371 (2004); *Paalan v. United States,* 51 Fed Cl. 738, 753 (2002).

[4] When a party invokes the attorney-client privilege by providing a privilege log, "the description of each document and its contents must be sufficiently detailed to allow the court to determine whether the elements of attorney-client privilege ... have been established." *SmithKline Beecham Corp. v. Apotex Corp.,* 232 F.R.D. 467, 475 (E.D.Pa.2005) (*SmithKline* ) (alteration in original) (citation omitted). Rule 26(b)(5) of the Rules of the United States Court of Federal Claims (RCFC) provides the appropriate standard:
***3** When a party withholds information ... by claiming that it is privileged ... the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

RCFC 26(b)(5).[FN1] "The rule does not attempt to define for each case what information must be provided.... Details concerning time, persons, general subject matter, etc. may be appropriate." Fed.R.Civ.P. 26(b)(5) advisory committee notes (1993 Amendments). "Where descriptions in the privilege log fail to meet this standard, 'then disclosure is an appropriate sanction.' " *SmithKline,* 232 F.R.D. at 475 (quoting *SmithKline Beecham Corp. v. Apotex Corp.,* 193 F.R.D. 530, 534 (N.D.Ill.2000)).

Plaintiff argues that defendant's "claims of attorney-client privilege exceed the scope of that privilege." Pl.'s Orig. Mot. 17 (capitalized in original). More

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

specifically, plaintiff states that the privilege " 'affords protection to confidential communications seeking or rendering legal, rather than business, advice,' " *id.* (citing *PG & E I*, 69 Fed.Cl. at 811 (citation omitted)), and that the documents for which defendant claims the privilege "may contain substantial amounts of merely 'business' rather than 'legal' advice," *id.* Defendant agrees with plaintiff that the "attorney-client privilege extends only to the solicitation and rendering of legal advice, and does not extend ... to 'business' advice." Def.'s Resp. 16. Defendant asserts that the documents for which it claims this privilege are documents from IRS attorneys that contain "legal advice to their client, and accordingly is protected." *Id.*

Defendant delivered to the court "all responsive documents defendant has not produced" that plaintiff has requested. Letter from Eileen J. O'Connor, Assistant Attorney General, Tax Division, U .S. Dep't of Justice, to Judge Emily C. Hewitt, United States Court of Federal Claims (Feb. 9, 2007) (letter) 1.[FN2] Each document is marked with Bates numbers that correspond to the descriptions in defendant's privilege logs. The documents are separated into three sets, each of which has its own privilege log. The first set contains documents marked 0001-0511; the second set contains documents marked SUPP00001-SUPP02661; the third set contains documents marked 2SUPP00001-2SUPP01719.

The privilege log for the first set of documents is the Declaration of Margo L. Stevens, the Assistant Chief Counsel (Disclosure and Privacy Law) in the Office of the Associate Chief Counsel of the IRS. This log asserts all claimed privileges, the bulk of which are claims of deliberative process privilege, for the first set of documents. The privilege log for the second set of documents consists of two documents. The first is the First Supplemental Declaration of Margo L. Stevens, and it asserts deliberative process privilege with respect to the documents it describes. All other privileges are made in the second document, Privilege Log for November 22, 2006 Production (As Revised). This document asserts privileges other than deliberative process privilege for the second set of documents and lists the documents as to which the Stevens affidavit raised the deliberative process privilege. The third set of documents also are addressed in two documents: first, the Second Supplemental Declaration of Margo L. Stevens asserts deliberative process privilege with regard to the documents it describes. Second, Revised Privileged Log for December 7, 2006 Production asserts all other privileges and lists the documents with respect to which the Stevens affidavit raised the deliberative process privilege.

***4** [5] The court has reviewed each of the documents for which defendant claims the attorney-client privilege. Defendant's claims of the attorney-client privilege with respect to those documents appear to be properly invoked. In particular, the court determines that defendant has met the requirements of RCFC 26(b)(5) by adequately describing the communications and circumstances surrounding the occurrence of the communications between employees of the IRS and the IRS's attorneys. Those communications qualify as attorney-client communications as required by *PG & E I*. Therefore, the documents for which defendant claims the attorney-client privilege are protected and are not required to be produced.

B. Work Product Privilege

[6] The work product doctrine, codified for the United States Court of Federal Claims in RCFC 26(b)(3),[FN3] is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal strategy "with an eye toward litigation," free from unnecessary intrusion by adversaries. *Hickman v. Taylor*, 329 U.S. 495, 510-11, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work product doctrine provides for the qualified protection of documents and tangible things prepared by or for a party or that party's representative "in anticipation of litigation or for trial." RCFC 26(b)(3). The Restatement (Third) of the Law Governing Lawyers defines "litigation," as it applies within the work product doctrine, as the following:

Litigation includes civil and criminal trial proceedings, as well as adversarial proceedings before an administrative agency, an arbitration panel or a claims commission, and alternative-dispute-resolution proceedings such as mediation or mini-trial. It also includes a proceeding such as a grand jury or a coroner's inquiry or an investigative legislative hearing. In general, a proceeding is adversarial when evidence or legal argument is presented by parties contending against each other with respect to legally significant factual issues.

Restatement (Third) of the Law Governing Lawyers (Restatement) § 87 cmt. h (2000) (quotation marks omitted).

The work product doctrine is not an absolute bar to discovery of materials prepared in anticipation of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

litigation. Work product can be produced
upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering the discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

RCFC 26(b)(3).Thus, Rule 26(b)(3) provides that, even if the party seeking discovery of information otherwise protected by the work product doctrine has made the requisite showing of need and undue hardship, courts must still protect against the disclosure of mental impressions, conclusions, opinions, or legal theories of an attorney and his agents. Stated differently, Rule 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, "core" or "opinion" work product that encompasses the "mental impressions, conclusions, opinion or legal theories of an attorney or other representative of a party concerning the litigation" is "generally afforded near absolute protection from discovery." Thus, core or opinion work product receives greater protection than ordinary work product and is discoverable only upon a showing of rare and exceptional circumstances.

***5** *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir.2003) (citations omitted).

Plaintiff's original motion to compel argued that defendant "seeks to protect as work product documents that were clearly *not* prepared in anticipation of litigation." Pl.'s Orig. Mot. 20 (emphasis in original). Plaintiff asserts that documents prepared in the auditing process comprise "work product [that was] prepared in the ordinary course of the IRS's business rather than in anticipation of litigation." *Id.* Defendant argues that "[t]he government reasonably anticipated litigation on this issue almost from the inception of the audit," Def.'s Resp. 27, because "[o]nce the audit has begun, the likelihood of litigation increases," *id.* at 26. Defendant also states "[t]hat the work product could assist both during the audit phase and during future litigation does not lessen its status as work product, since [RCFC] 26(b)(3) does not limit work product protection when an item can have a dual purpose." *Id.*

Both plaintiff and defendant cite persuasive case law in support of their viewpoints. Plaintiff points to the Tax Court ruling in *Bennett v. Commissioner of Internal Revenue*, 74 T.C.M. 1144 (1997) that " 'the audit or examination process is not conducted in anticipation of litigation' unless a matter has been 'singled out for litigation.' " Pl.'s Orig. Mot. 20 (quoting *Bennett*, 74 T.C.M. 1144). In *Bennett*, the court held that neither party appeared to anticipate litigation prior to the issuance of the notice of deficiency, so it granted plaintiff's motion to compel an expert report that had been generated for the IRS prior to the deficiency notice. *Bennett*, 74 T.C.M. 1144. Defendant counters by citing *United States v. Roxworthy*, 457 F.3d 590 (6th Cir.2006) (*Roxworthy* ), which held that the parties did anticipate litigation "because a yearly IRS audit of [plaintiff] was a certainty due to the company's size, the transaction at issue," and the accountants having advised plaintiff that the IRS targeted the type of transaction. *Roxworthy*, 457 F.3d at 600. The *Roxworthy* court presents a summary of case law on whether documents produced during an audit may be protected by the work product doctrine. "The Fourth Circuit has stated that the protection only applies when 'the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation.' " *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir.1992)). The Fifth Circuit offers a somewhat more expansive view of the protection afforded by the work product doctrine, holding that a document prepared by plaintiff "in anticipation of 'dealing with the IRS' ... may well have been prepared in anticipation of an administrative dispute and this may constitute 'litigation.' " *Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 719-22 (5th Cir.1985). In *United States v. Adlman*, 68 F.3d 1495 (2d Cir.1995), the "Second Circuit held that the district court erred in concluding that the prospect of litigation was too remote for work-product privilege to apply, observing that '[i]n many instances, the expected litigation is quite concrete, notwithstanding that the events giving rise to it have not yet occurred.' " *Roxworthy*, 457 F.3d at 600 (alteration in original) (quoting *Adlman*, 68 F.3d at 1501).

***6** [7] Plaintiff is a corporation that serves as a holding company for various subsidiaries, including companies that own and operate radio and television stations and provide financial services and life insurance. Plaintiff's Complaint 1 (Compl. or complaint). The sale of the KIRO television station,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

which lies at the heart of this dispute, is a significant business transaction involving tens of millions of dollars. *See generally* Compl. The court believes that, due to the size of the corporation and the significance of the KIRO business transaction, both plaintiff and defendant knew or should have known that the auditing process could lead to litigation. This conclusion is supported by defendant's contention that "the [IRS] and taxpayer identified early in the audit the KIRO valuation issue as one with respect to which the parties strongly disagreed" and "that[,] in the absence of agreement, the [IRS] would issue a Notice of Deficiency." Def.'s Resp. 27. Nothing in plaintiff's filings contradict the foregoing contention.

The court has reviewed each of the documents that defendant claims are privileged under the work product doctrine. Defendant's claims of the work product doctrine with respect to those documents appear to be properly invoked. In particular, the court determines that defendant has met the requirements of RCFC 26(b)(3) that the documents were produced "in anticipation of litigation." The guidance of the Second, Fourth, and Fifth Circuits that document production during the IRS's appeals process may be conducted "in anticipation of litigation" because of the size of the company and the business significance of the transaction appears applicable to the circumstances of this case. The court determines that the documents defendant seeks to protect were prepared in anticipation of litigation and do contain mental impressions, conclusions, opinions, and legal theories of defendant and defendant's attorneys. Therefore, the documents for which defendant claims privilege under the work product doctrine are protected and are not required to be produced.

C. Deliberative Process Privilege

[8] The deliberative process privilege "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' " *Dep't of Interior and Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) (*Klamath* ) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)).FN4 As the Supreme Court has stated, "[t]he deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance 'the quality of agency decisions,' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8-9 (quoting *Sears, Roebuck & Co.*, 421 U.S. at 151); *see also Scott Paper Co. v. United States*, 943 F.Supp. 489, 496 (E.D.Pa.1996) (*Scott Paper* ) ("Th[e deliberative process] privilege recognizes 'that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.' " (citations omitted)); *Greenpeace v. Nat'l Marine Fisheries Serv.*, 198 F.R.D. 540, 543 (W.D.Wash.2000) ("The accepted rationale [of the deliberative process privilege] is that frank and open discussions within governmental agencies would be 'chilled' if the personal opinions and ideas of government personnel involved in the decision-making process were subject to public scrutiny.").

*7 "The burden of justifying the application of the governmental deliberative process privilege rests with the party seeking to invoke it." *Kaufman v. City of New York*, No. 98 Civ. 2648(MJL)(KNF), 1999 U.S. Dist. LEXIS 5779, at *10-11 (S.D.N.Y. Apr. 22, 1999). "Like all evidentiary privileges that derogate a court's inherent power to compel the production of relevant evidence, the deliberative process privilege is narrowly construed." *Nat'l Marine Fisheries Serv.*, 198 F.R.D. at 543 (citations omitted); *see also Kaufman*, 1999 U.S. Dist. LEXIS 5779, at *11 ("The [deliberative process] privilege, as it is in derogation of the search for truth, is not to be expansively construed.").

[9] In order for a document to be protected from discovery by the deliberative process privilege, it must be both "pre-decisional" and "deliberative." *Jade Trading, LLC v. United States*, 65 Fed.Cl. 487, 493 (2005). "To qualify as pre-decisional, the material sought to be protected 'must address activities "[a]ntecedent to the adoption of an agency policy." ' " *Pac. Gas & Elec. Co. v. United States*, 70 Fed.Cl. 128, 133 (2006) (*PG & E II* ) (alteration in original) (citing *Walsky Constr. Co. v. United States*, 20 Cl.Ct. 317, 320 (1990) (*Walsky* ) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C.Cir.1978))).FN5 "Subjective documents 'which reflect the personal opinion of the writer, rather than the policy of the agency' are considered privileged information because they are predecisional." *LNC Invs., Inc. v. Republic of Nicar.*, No. 96 Civ. 6360(JFK)(RLE), 1997 U.S. Dist. LEXIS 18607, at *2 (S.D.N.Y. Nov. 21, 1997) (*LNC Invs.*) (citing *Lee v. Fed. Deposit Ins. Corp.*, 923 F.Supp. 451, 456 (S.D.N.Y.1996) (quoting *Coastal States Gas Corp. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dep't of Energy, 617 F.2d 854, 866 (D.C.Cir.1980)). "To qualify as deliberative, the material sought to be protected 'must address "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." ' " PG & E II, 70 Fed.Cl. at 133 (quoting Walsky, 20 Cl.Ct. at 320 (quoting Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C.Cir.1975))); *see also* Kaiser Aluminum & Chem. Corp. v. United States, 141 Ct.Cl. 38, 157 F.Supp. 939, 946 (Ct.Cl.1958) (*Kaiser* ) ("So far as the disclosure of confidential intra-agency advisory opinions is concerned, we conclude that they belong to that class of governmental documents that are privileged from inspection as against public interest but not absolutely."); Jade Trading, 65 Fed.Cl. at 493-94 ("[T]o be deliberative, a document must reflect 'the give-and-take of the consultative process,' rather than constituting a 'body of secret law.' " (quoting Vons Cos. v. United States, 51 Fed.Cl. 1, 22 (2001))). "The privilege does not protect factual or investigative material, except as necessary to avoid indirect revelation of the decision-making process." Scott Paper, 943 F.Supp. at 496 (citations omitted). "Thus, 'factual findings and conclusions, as opposed to opinions and recommendations' are not protected." *Reino de Espana v. Am. Bureau of Shipping,* No. 03 Civ. 3573(LTS)(RLE), 2005 U.S. Dist. LEXIS 15685, at *34 (S.D.N.Y. Aug. 1, 2005) (quoting Resolution Trust Corp. v. Diamond, 137 F.R.D. 634, 641 (S.D.N.Y.1991), *rev'd in part on other grounds,* 18 F.3d 111 (2d Cir.1994)). FN6

***8** The deliberative process privilege is not absolute; rather, the privilege is qualified and "subject to judicial oversight." Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302, 1307 (Fed.Cir.2006) (*Marriott* ); PG & E II, 70 Fed.Cl. at 134; Walsky, 20 Cl.Ct. at 320; Scott Paper, 943 F.Supp. at 496. "After the government makes a sufficient showing of entitlement to the privilege, the court should balance the competing interests of the parties." Scott Paper, 943 F.Supp. at 496 (citing Redland Soccer Club v. Dep't of the Army, 55 F.3d 827, 854 (3d Cir.1995)). The plaintiff may overcome the privilege by making "a showing of evidentiary need ... that outweighs the harm that disclosure of such information may cause to the defendant." Alaska v. United States, 16 Cl.Ct. 5, 11 (1988) (citing CACI Field Servs., Inc. v. United States, 12 Cl.Ct. 680, 687 (1987)); *see also* Marriott, 437 F.3d at 1307 ("[A] showing of compelling need can overcome the qualified deliberative process privilege.").

[10] To invoke the deliberative process privilege, "the party resisting discovery must meet several procedural requirements." *Reino De Espana,* 2005 U.S. Dist. LEXIS 15685, at *36. "First, the head of the agency that has control over the requested document must assert the privilege after personal consideration." PG & E II, 70 Fed.Cl. at 134 (quoting Walsky, 20 Cl.Ct. at 320). Alternatively, and recently confirmed as an appropriate practice by the Federal Circuit, "the head of an Agency can, when carefully undertaken, delegate authority to invoke the deliberative process privilege on the Agency's behalf." Marriott, 437 F.3d at 1308. FN7

While some courts have found that the deliberative process privilege may not be asserted by government counsel, *Kaufman,* 1999 U.S. Dist. LEXIS 5779, at *10, * 13 ("[S]ince defendants have merely asserted the privilege through counsel, the Court finds that defendants have failed to establish that the governmental deliberative process privilege exists with respect to the withheld documents."); *see also O'Neill,* 619 F.2d at 226 ("It has been suggested that it is inappropriate for the privilege to be invoked by attorneys instead of by the department head."), in the Federal Circuit, invocation of the privilege by government counsel has been found to be appropriate where the counsel holds "a senior position within the Agency and is responsible for planning, administering and evaluating the Agency's disclosure policies and procedures." Marriott, 437 F.3d at 1308. Notably, the counsel in *Marriott* was "not directly responsible for or involved in substantive tax litigation, including th[at] case," and was a "high ranking Agency official with expertise in the nature of the privilege claim and documents at issue." *Id.* The Federal Circuit's approach in *Marriott* is consistent with the rationale in other cases holding that counsel are not permitted to invoke the privilege, that is, to ensure that the privilege is invoked as a result of an executive decision about the exigencies of executive management, rather than as a result of trial counsel's decision about a desirable litigation strategy. The invocation of the privilege in this case appears to the court to fall squarely within the *Marriott* ruling.

***9** [11][12] Second, the party seeking protection "must state with particularity what information is subject to the privilege." Walsky, 20 Cl.Ct. at 320 (citation omitted); *see also* PG & E II, 70 Fed.Cl. at 135 (citation omitted). In other words, "the information or documents sought to be shielded must be identified and described." *Reino de Espana,* 2005 U.S. Dist. LEXIS 15685, at *37 (quotation omitted). Third, "the agency must supply the court with

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

'precise and certain reasons' for maintaining the confidentiality of the requested document." Walsky, 20 Cl.Ct. at 320 (citation omitted); *see also* PG & E II, 70 Fed.Cl. at 135 (citations omitted).FN8 "Blanket assertions of the privilege are insufficient." *Nat'l Marine Fisheries Serv.*, 198 F.R.D. at 543; *see also Kaufman,* 1999 U.S. Dist. LEXIS 5779, at *12 ("[A] blanket approach to asserting the privilege is unacceptable and is itself grounds for denying invocation of the privilege.").

[13] The text of RCFC 26(b)(5) also supports the view that assertions of the privilege must provide sufficient information to allow an assessment of the applicability of the privilege to specific documents. The rule provides, in pertinent part:

When a party withholds information otherwise discoverable under these rules by claiming that it is privileged ..., the party shall make the claim expressly and shall describe the nature of the documents ... not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties *to assess the applicability of the privilege* ....

RCFC 26(b)(5) (emphasis added). After quoting the language of identical Rule 26(b)(5) of the Federal Rules of Civil Procedure as applied to the deliberative process privilege, the United States District Court for the Southern District of Indiana stated thatthe time to make the showing that certain information is privileged is [therefore] at the time the privilege is asserted, not months later when the matter is before the Court on a motion to compel. This requirement is to allow parties to try and resolve discovery disputes prior to Court intervention.

*Anderson v. Marion County Sheriff's Dep't,* 220 F.R.D. 555, 562 n. 5 (S.D.Ind.2004); *cf. Miller v. Pancucci,* 141 F.R.D. 292, 300 (C.D.Cal.1992) (examining the similar "official information" government privilege and stating that "the party must submit, *at the time it files and serves its response to the discovery request,* a declaration or affidavit, under oath or subject to the penalty of perjury, from the head of the department which has control over the matter") (emphasis added). Similarly, after citing the same language, the United States District Court for the Eastern District of Pennsylvania stated that "a broad assertion of harm is [therefore] clearly not enough. In fact, the Third Circuit has held that an 'indiscriminate claim of privilege may in itself be sufficient reason to deny it.' " *Revelle v. Trigg,* No. 95-5885, 1999 U.S. Dist. LEXIS 890, at *6 (E.D.Pa. Feb. 2, 1999) (quoting *O'Neill,* 619 F.2d at 227); FN9 *cf. Miller,* 141 F.R.D. at 300 (examining the similar "official information" government privilege and stating that " '[a] general claim of harm to the public interest would not be sufficient to overcome the burden placed on the party seeking to shield material from disclosure.' " (quoting *Kelly v. City of San Jose,* 114 F.R.D. 653, 672 (N.D.Cal.1987))).

***10** Adherence to the foregoing procedural requirements ensures that the documents sought to be protected are in fact "(1) part of the deliberative process by which policies or decisions are formulated; and (2) truly of a predecisional, or advisory or recommendatory nature, or expresses [sic] an opinion on a legal or policy matter, or otherwise were reflective of a deliberative process." *LNC Invs.,* 1997 U.S. Dist. LEXIS 18607, at *2.

Plaintiff argues that defendant does not meet the procedural or substantive requirements for the deliberative process privilege. Pl .'s Orig. Mot. 8-16. Plaintiff acknowledges that Margo L. Stevens, the Assistant Chief Counsel in the Office of the Associate Chief Counsel of the IRS, Pl.'s Orig. Mot., Ex. A 1 (Priv. Log 1 or privilege log 1), "is the individual authorized to invoke the deliberative process privilege on behalf of the IRS," Pl.'s Orig. Mot. 9. However, plaintiff believes that defendant did not timely submit Ms. Steven's declaration, claiming that it was executed on December 5, 2006, "nearly two weeks after the First Supplemental Log was served." *Id.* Plaintiff asserts that the delay in executing the declaration "implies that those claims of privilege are also driven by litigation strategy," *id.* at 9, n. 9, "rather than the mandated executive review and determination," *id.* at 9. Plaintiff also argues that defendant's privilege logs do not suffice because they allegedly "offer[ ] no explanation for why production of these documents would detract from the quality of its decisions or threaten the ability of those making such decisions to engage in open and frank discussions." *Id.* at 11. Plaintiff also claims that defendant's documents do not meet the "pre-decisional" and "deliberative" requirements for assertion of the privilege because, plaintiff argues, defendant's valuation of plaintiff's asset is a factual matter, not a policy or legal issue. *Id.* 13-14. Plaintiff further argues that it has a compelling evidentiary need to review defendant's documents in order to "demonstrat[e] that the IRS's original determination was incorrect." *Id.* at 15.

With regard to plaintiff's allegation that the Ms. Steven's declaration was delivered untimely and, therefore, defeats defendant's claim of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

deliberative process privilege, defendant responds that "[s]uch minor and technical delays are not the sort of thing found objectionable in cases." Def.'s Resp. 19. Defendant cites a number of cases in support of this view. *Id.* (citing, inter alia, *Pac. Gas & Elec. Co. v. United States,* 71 Fed.Cl. 205, 208-210 (*PG & E III* ) (holding that the privilege was supported by an affidavit executed after the documents had been identified and withheld); *Huntleigh USA Corp. v. United States,* 71 Fed.Cl. 726, 727 (2006) (holding that a declaration not executed contemporaneously with the privilege log did not render the privilege claim procedurally defective)). In response to plaintiff's allegation that the privilege log is deficient, defendant points to plaintiff's counsel's statement during an oral argument held shortly after the delivery of the deliberative process privilege log that the log is "the best privilege log I've ever seen." Transcript of Oral Argument on Nov. 29, 2006 (Trans.) 34:13-14. The court also praised defendant's privilege logs at that oral argument, stating that "what the government has done is something that is of great benefit and assistance to the court." *Id.* at 34:7-9. Defendant states that it is "at a loss to know what plaintiff finds wanting" because "plaintiff provides no examples of what 'precise and certain reasons' might look like so as to meet whatever standard plaintiff imagines is to be required." Def.'s Resp. 20. Defendant asserts that plaintiff's arguments place defendant in a bind

***11** with the [g]overnment as loser whatever we do: [t]o the extent that the affidavit sets out reasons and rationales found proper in decided cases, they are merely a paraphrase thereof, and (according to plaintiff) for that reason invalid. But to the extent that the affidavit fails to set out reasons and rationales found proper in the decided cases, they fail to comport with the law, as expounded in the decided cases.

*Id.*

Defendant responds to plaintiff's allegations regarding the substance of the logs by stating that "disclosure of any document in which a[g]overnment employee suggests or recommends that one course be taken, rather than another, or that this evaluation of the facts is more compelling than some other, will cause such employees-and all other [g]overnment agents, officials and employees-to obscure their views and recommendations, and be less than frank in discussing pending cases." *Id.* at 21. Defendant asserts that the IRS's process of determining the amount owed by taxpayers "will be eroded and discouraged by the disclosure of the documents by which it occurs" if defendant's documents are revealed to plaintiff. *Id.* Defendant further argues that the privilege is meant to protect frank and open discussion of government decisions and policies, not only "high policy" as it alleges that plaintiff claims. *Id.* at 22. Defendant supports this view by citing to *Klamath,* 532 U.S. at 2 and *Kaiser,* 157 F.Supp. at 939. *Id.*

Finally, defendant argues against plaintiff's assertions that plaintiff has "a particularized need" for the documents by applying a five-factor paradigm from *Ferrell v. United States Department of Housing and Urban Development,* 177 F.R.D. 425, 429 (N.D.Ill.1998), which this court cited in *PG & E III,* 71 Fed.Cl. at 210 n. 6. *Id.* at 23. Defendant states that "*not even one* of these factors favors disclosure in the teeth of the deliberative process privilege" because, it alleges, none of the documents is relevant to any evidentiary issue in the case; all admissible evidence is available from other sources; the government was not a party to the event or transactions relevant to resolving the case; this is a "garden-variety tax refund suit," not a policy issue; and disclosure of the documents "would chill deliberations ... and hinder frank and independent discussion of policies and decisions." *Id.* at 23-24 (emphasis in original).

The court has reviewed each of the documents for which defendant claims deliberative process privilege. Defendant's claims of the deliberative process privilege with respect to those documents appear to be properly invoked. In particular, the court determines that defendant has met the requirements that the documents were "pre-decisional" and "deliberative," and that Ms. Stevens executed her affidavit at an appropriate time. The documents for which defendant claims deliberative process privilege are protected and are not required to be produced.

### III. "Personal Privacy Privilege"

***12** Defendant claims that a "personal privacy privilege" protects three documents contained within the third set of documents and described in the privilege log titled "Revised Privilege Log for December 7, 2006, Production" (Priv. Log 3) 4, 7. Defendant has not offered any legal authority that defines or sets the standards for such a privilege. If defendant is aware of such legal authority and wishes to advance these assertions of privilege, it may file a motion requesting the court to accept its briefing on the subject. If briefing shall be submitted, plaintiff may respond and defendant may then file a reply. If

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

defendant chooses to file a motion, it shall do so on or before April 9, 2007. If defendant has no authority to advance on this point, and any of the documents covered by the claimed "personal privacy privilege" are responsive to plaintiff's request, defendant is directed to deliver the responsive documents to plaintiff immediately.

IV. Missing Descriptions

Defendant's privilege logs appear to be missing descriptions of and claims of privilege for documents numbered SUPP01701-08 and SUPP02007-22. The court assumes that the omission is an oversight. On or before April 9, 2007, defendant shall deliver to the court descriptions of those documents and the privileges asserted for them. The format shall follow that of the other entries in the privilege logs. If, however, defendant asserts no privilege as to such documents, and any of the documents are responsive to plaintiff's request, defendant is directed to deliver the responsive documents to plaintiff immediately.

V. Conclusion

For the foregoing reasons, and except as stated in parts III and IV above, defendant's assertions of privilege are SUSTAINED. A set of the documents that defendant submitted to the court upon the court's request in its order dated February 6, 2007 and the letter of transmittal that accompanied the documents are being delivered to the Clerk of the Court with a copy of this Order. The documents shall be MAINTAINED UNDER SEAL by the Clerk of the Court as part of the record in this case and shall be available to be included in the record of the case in any appeal.

IT IS SO ORDERED.

FN1. Rule 26(b)(5) of the Rules of the United States Court of Federal Claims (RCFC) and Rule 26(b)(5) of the Federal Rules of Civil Procedure (FRCP) are identical. *Compare* RCFC 26(b)(5) *with* Fed.R.Civ.P. 26(b)(5). The court therefore uses other federal courts' interpretations of the FRCP as persuasive authority. *Adams v. United States,* 391 F.3d 1212, 1218 n. 3 (Fed.Cir.2004) (relying on precedents under the FRCP where, as here, the text of the RCFC "mirrors" the text of an FRCP); *see also* RCFC, 2002 Rules Committee Note.

FN2. A copy of the letter, as defined in the text, is being transmitted to the Clerk of the Court to be stored with a set of the documents. *See infra* part V.

FN3. RCFC 26(b)(3) provides that:

a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

RCFC 26(b)(3). Because RCFC 26(b)(3) and FRCP 26(b)(3) are identical, the court relies on interpretation of the latter by other federal courts as persuasive authority. *See infra* note 1.

FN4. The Court of Claims in *Kaiser Aluminum & Chemical Corporation v. United States,* 141 Ct.Cl. 38, 157 F.Supp. 939 (Ct.Cl.1958), is sometimes credited as the first federal case to recognize a deliberative process privilege. *Marriott Int'l Resorts, L.P. v. United States,* 437 F.3d 1302, 1304 (Fed.Cir.2006) (citing Michael N. Kennedy, *Escaping the Fishbowl: A Proposal to Fortify the Deliberative Process,* 99 Nw. U.L.Rev. 1769, 1779 (2005)); *see also Jade Trading, LLC v. United States,* 65 Fed.Cl. 487, 493 (2005) ("The deliberative category of the executive privilege was first articulated and adopted by the Court of Claims in *Kaiser Aluminum* ...."); *CACI Field Servs., Inc. v. United States,* 12 Cl.Ct. 680, 687 n. 7 (1987) ("According to commentators, the creation of the executive deliberation privilege can

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

be traced to *Kaiser.*").

FN5. *Walsky* and other cases cited in this discussion refer to the deliberative process privilege more generally as the "executive privilege." *See* Walsky Constr. Co. v. United States, 20 Cl.Ct. 317, 319 (1990). As the Federal Circuit recently explained, "[t]he deliberative process privilege is but one of several privileges that generally fall within the scope of the more general 'executive privilege.' " Marriott, 437 F.3d at 1305 n. 3. Therefore, where it appears to the court that a case is specifically referring to the deliberative process privilege even while using the more general phrase "executive privilege," the court uses the phrase "deliberative process privilege" in order to be more specific as to the privilege to which a case appears to refer.

FN6. "Whenever possible, facts that are separable from the privileged portion of a document should be disclosed." *LNC Invs., Inc. v. Republic of Nicar.,* No. 96 Civ. 6360(JFK)(RLE), 1997 U.S. Dist. LEXIS 18607, at *3 (S.D.N.Y. Nov. 21, 1997) (*LNC Invs.*) (citations omitted).

FN7. The agency head who asserts the deliberative process privilege or, alternatively, the agency official to whom the authority to assert the deliberative process privilege has been properly delegated, asserts the privilege in the form of a declaration or affidavit. Walsky, 20 Cl.Ct. at 320 n. 3 (citations omitted); *see also* United States v. O'Neill, 619 F.2d 222, 226 (3d Cir.1980) ("Usually such claims [of the deliberative process privilege] must be raised by affidavit." (citation omitted)); Pac. Gas & Elec. Co. v. United States, 70 Fed.Cl. 128, 134 (2006) (*PG & E II* ); *Kaufman v. New York,* No. 98 Civ. 2648(MJL)(KNF), 1999 U.S. Dist. LEXIS 5779, at *9 (S.D.N.Y. Apr. 22, 1999) ("The agency head or his or her authorized designee must invoke the privilege through an affidavit which states, inter alia, that he or she has reviewed each of the relevant documents and provides the reason(s) why preserving confidentiality-rather than the agency's interest in the particular action-outweighs the public interest in disclosure.").

FN8. Although "[n]one of the decisions binding on this court ... recognizes th[e 'precise and certain reasons' requirement] as an independent condition for invoking the deliberative process privilege," Yankee Atomic Elec. Co. v. United States, 54 Fed.Cl. 306, 312 n. 7 (2002) (citations omitted), this requirement is well-established in persuasive federal case law. *See, e.g.,* O'Neill, 619 F.2d at 226; New York ex rel. Boardman v. Nat'l R.R. Passenger Corp., 233 F.R.D. 259, 269 (N.D.N.Y.2006) (quoting *LNC Invs.,* 1997 U.S. Dist. LEXIS, at *2; *Reino de Espana v. Am. Bureau of Shipping,* No. 03 Civ. 3573(LTS)(RLE), 2005 U.S. Dist. LEXIS 15685, at *37 (S.D.N.Y. Aug. 1, 2005)); Greenpeace v. Nat'l Marine Fisheries Serv., 198 F.R.D. 540, 543 (W.D.Wash.2000); Anderson v. Marion County Sheriff's Dep't, 220 F.R.D. 555, 562 (S.D.Ind.2004); *Revelle v. Trigg,* No. 95-5885, 1999 U.S. Dist. LEXIS 890, at *5 (E.D.Pa. Feb. 2, 1999); Scott Paper Co. v. United States, 943 F.Supp. 489, 497 (E.D.Pa.1996); Resolution Trust Corp. v. Diamond, 773 F.Supp. 597, 604 n. 5 (S.D.N.Y.1991)).

FN9. After observing in *O'Neill* that "[t]he indiscriminate claim of privilege may in itself be sufficient reason to deny it," O'Neill, 619 F.2d at 227, the Court of Appeals for the Third Circuit continued:

The court when faced with [an indiscriminate claim of deliberative process privilege] cannot make a just or reasonable determination of its validity. Even when the privilege has been asserted by the President of the United States, the Supreme Court has rejected it when it depended "solely on the broad, undifferentiated claim of public interest in the confidentiality of ... conversations" and has refused to extend deference to a President's "generalized interest in confidentiality."

O'Neill, 619 F.2d at 227 (alteration in original) (quoting United States v. Nixon, 418 U.S. 683, 706, 711, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974)).

Fed.Cl.,2007.
Deseret Management Corp. v. U.S.
--- Fed.Cl. ----, 2007 WL 968136 (Fed.Cl.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit H

**H**

In re JDS Uniphase Corporation Securities Litigation
N.D.Cal.,2006.
Only the Westlaw citation is currently available.

United States District Court,N.D. California.
In re JDS UNIPHASE CORPORATION SECURITIES LITIGATION.
This document relates to All Actions.
**No. C-02-1486 CW (EDL).**

Oct. 5, 2006.

Darren J. Robbins, James Albert Caputo, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Betsy C. Manifold, Francis A. Bottini, Jr., Francis M. Gregorek, Wolf Haldenstein Adler Freeman & Herz, San Diego, CA, John Frith Stewart, Segal,Stewart,Cutler,Lindsay,Janes & Ber, Louisville, KY, Jon R. Adams, Anthony J. Harwood, Barbara J. Hart, Mark S. Arisohn, Conor R. Crowley, Jonathan M. Plasse, Louis J. Gottlieb, Labaton Sucharow & Rudoff LLP, Gregory M. Egleston, Mel E. Lifshitz, Bernstein Liebhard & Lifshitz LLP, Jacqueline Sailer, Murray, Frank & Sailer LLP, Jules Brody, Stull Stull & Brody, Joseph P. Garland, Klein & Solomon LLP, Kenneth A. Elan, Law Offices of Kenneth A. Elan, Christopher J. Gray, Lovell & Stewart, LLP, New York, NY, Reed R. Kathrein, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, Raymond M. Hasu, Morrison & Foerster LLP, Michael Walter Stocker, Berman Devalerio Pease Tabacco Burt & Pucillo, Christopher T. Heffelfinger, Joseph J. Tabacco, Jr., Berman Devalerio Pease & Tabacco, P.C., Laurence D. King, Kaplan Fox & Kilsheimer LLP, Joseph M. Barton, Solomon B. Cera, Gold Bennett Cera & Sidener LLP, Aaron H. Darsky, Robert C. Schubert, Willem F. Jonckheer, Schubert & Reed LLP, San Francisco, CA, Laura S. Killian, Paul J. Scarlato, Goldman Scarlato & Karon, PC, Conshohocken, PA, Timothy J. Burke, Stull Stull & Brody, Kevin J. Yourman, Weiss & Yourman, Michael David Braun, Braun Law Group, P.C., Los Angeles, CA, Behram V. Parekh, Yourman Alexander & Parekh LLP, Manhattan Beach, CA, Paul J. Geller, Cauley Geller Bowman & Coates LLP, Boca Raton, FL, Alfred Glenn Yates, Jr., Law Office of Alfred G. Yates Jr, P.C., Pittsburgh, PA, Marc S. Henzel, Law Offices of Marc S. Henzel, Bala Cynwyd, PA, Lionel Z. Glancy, Michael M. Goldberg, Glancy & Binkow LLP, Jordan L. Lurie, Kevin J. Yourman, Weiss & Lurie, Michael David Braun, Braun Law Group, P.C., Los Angeles, CA, Steven J. Toll, Cohen Milstein Hausfeld & Toll, P.L.L.C., Andrew J. Morganti, Donald J. Enright, Finkelstein Thompson and Loughran, Washington, DC, Andrew M. Schatz, Patrick A. Klingman, Schatz & Nobel, Hartford, CT, Michael Donovan, Donovan Searles, LLC, Barbara A. Podell, Savett Frutkin Podell & Ryan, P.C., Sherrie R. Savett, Berger & Montague, P.C., Philadelphia, PA, Jeffrey Neiman, The Neiman Law Firm, Brooklyn, NY, Mel Urbach, Law Offices of Mel Urbach, Jersey City, NJ, Charles J. Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD, Bruce D. Oakes, Law Office of Bruce D. Oakes, St. Louis, MO, Matthew J. Ide, Cohen Milstein Hausfeld & Toll, P.L.L.C., Seattle, WA, Carol Valerie Gilden, Michael E. Moskovitz, Much Shelist Freed Denenberg Ament & Rub, Chicago, IL, for Plaintiffs.

Christopher A. Patz, Jordan David Eth, Philip T. Besirof, Holly H. Tambling, Raymond M. Hasu, Terri Garland, Morrison & Foerster LLP, David Michael Chaiken, Michael J. Shepard, Heller Ehrman LLP, Angela N. O'Rourke, Joseph A. Meckes, Mark C. Dosker, Squire Sanders & Dempsey LLP, San Francisco, CA, Howard S. Caro, J. Christopher Mitchell, Michael L. Charlson, Heller Ehrman LLP, Menlo Park, CA, Daniel L. Brockett, Squire Sanders & Dempsey LLP, Cleveland, OH, for Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**

ELIZABETH D. LAPORTE, Magistrate Judge.

*1 In February 2005, Lead Plaintiff propounded requests for production of documents seeking, *inter alia,* production of minutes from the meetings of Defendant JDSU's Board of Directors. Declaration of Anthony Harwood Ex. 1. In response, Defendant produced redacted minutes, and a rivilege log listing the redacted minutes as protected by the attorney-client privilege and the work product doctrine. On August 22, 2006, Lead Plaintiff filed a motion to compel production of unredacted Board minutes, arguing that the minutes are not entitled to work product protection and even if they are, the protection was waived by disclosure of the minutes to Defendants' auditing firm, Ernst & Young. Subsequently, Defendant produced materials withheld on the basis of attorney-client privilege, so only the work product issue remains with respect to eight sets of minutes. In response to the Court's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

request, Defendant lodged the eight disputed Board minutes for *in camera* review prior to the September 26, 2006 hearing. The motion was fully briefed and the Court held a hearing on September 26, 2006.

The work product protection may be waived by disclosures to third parties "in a manner which substantially increases the opportunity for potential adversaries to obtain the information." Samuels v. Mitchell, 155 F.R.D. 195, 200 (N.D.Cal.1994). Courts are split as to whether disclosure to an outside auditor constitutes a waiver. *Compare, e.g.,* Medinol v. Boston Scientific Corp., 214 F.R.D. 113, 116 (S.D.N.Y.2002) (determining that the work product protection was waived with respect to litigation committee minutes that were disclosed to outside auditor because the auditor's interests were not aligned with the company; "in order for auditors to properly do their job, they *must* not share common interests with the company they audit. 'Good auditing requires adversarial tension between the auditor and the client.' ") (emphasis in original), *with, e.g.,* Merrill Lynch & Co. v. Allegheny, 229 F.R.D. 441 (S.D.N.Y.2004) (determining that the work product protection was not waived with respect to internal investigative reports of circumstances surrounding executive theft which were disclosed to an independent auditor; the relationship between an auditor and client was not the kind of adversarial relationship contemplated by the work product doctrine); *see also* Samuels, 155 F.R.D. 195 (determining that the work product protection was not waived with respect to documents disclosed to outside auditor acting as a consultant where there was not a substantial danger that the documents would be disclosed to an adversary, and the company kept all communications with the auditor confidential and took steps to guarantee that the documents would not be given to an adversary).

While there are good arguments on both sides of the issue, at this time, the Court is more persuaded by the latter view. At least under the circumstances of this case, the disclosure did not constitute an automatic waiver of the work product protection.

***2** The Court nonetheless reviewed the unredacted minutes *in camera* to see if the material withheld came within the privilege. The Ninth Circuit has adopted the "because of" litigation test, rather than the "primary motivation" test, to determine whether a dual purpose document is protected by the work product doctrine. *See* In re Grand Jury Subpoena, 357 F.3d 900, 907 (9th Cir.2004) (adopting "because of" litigation standard for determining whether "dual purpose" documents are protected by the work product doctrine; "[t]his formulation states that a document should be deemed prepared 'in anticipation of litigation' and thus eligible for work product protection under Rule 26(b)(3) if 'in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation.' ") (quoting 8 Wright & Miller, *Federal Practice and Procedure,* § 2024 (2d ed.1994)). This standard does not consider whether litigation was a primary or secondary motive for creation of a document, but instead considers the totality of the circumstances and affords protection "when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation.' " Grand Jury Subpoena, 357 F.3d at 908 (quoting United States v. Aldman, 134 F.3d 1194, 1195 (2d Cir.1998)).

Having reviewed the disputed Board minutes *in camera,* the Court has determined that, under the "because of" test, the redactions for the work product doctrine in the January 24, 2000, February 4, 2000, March 24, 2000, March 5, 2001, May 1, 2001 and August 22, 2001 minutes, and of the first paragraph on page one of the April 28, 2000 minutes and of the first paragraph on page three of the April 3, 2001 minutes are well-taken.

In a letter dated October 3, 2006, Defendant informed the Court that it withdrew its assertion of work product protection for paragraph two on page three of the April 3, 2001 minutes as well as for portions of other minutes relating to the same issue: page one of the March 5, 2001 minutes; page three of the April 3, 2001 minutes; page two of the May 1, 2001 minutes; and the first two paragraphs of page five of the August 22, 2001 minutes. Defendant maintains that the second redacted paragraph on page one and continuing on to page two of the April 28, 2000 minutes reflects work product. *See* Supp. Decl. of Michael Phillips at ¶ 2 (stating that the paragraph "relates to the same potential litigation discussed in the immediately preceding paragraph. Outside litigation counsel were retained to assist the board with this matter, and those counsel were present at the April 28, 2000 meeting specifically to advise the board...."). The Court is not convinced that this paragraph constitutes work product. The minutes themselves are carefully drafted by an attorney and vetted before being finalized. The paragraph immediately preceding this paragraph specifically refers to counsel providing legal advice to the board,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and that language is conspicuously absent from this second paragraph. Moreover, the Court declines to open the door to consideration of post hoc explanations of the work product assertion such as the Phillips declaration.

*3 Accordingly, Lead Plaintiff's motion to compel is granted in part and denied in part. In addition to the redactions for which Defendant has withdrawn its work product designation, Defendant shall also unredact the second redacted paragraph on page one and continuing on to page two of the April 28, 2000 minutes. The remaining redactions are sustained.

IT IS SO ORDERED.

N.D.Cal.,2006.
In re JDS Uniphase Corporation Securities Litigation
Slip Copy, 2006 WL 2850049 (N.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit I

**Memorandum**

| | |
|---|---|
| To | Consolidated Edison Development Files |
| From\Location | James M. Dewey, Syracuse |
| Date | November 26, 1997 |
| Re | **Consolidated Edison Development Leveraged Lease** |

Consolidated Edison Development (CED) proposes to enter into a leasing transaction that will use the leveraged lease accounting model of FAS 13. Brian DePlautt, Vice President, and I have had several discussions regarding this proposed transaction and he has provided the following information which we have relied upon in reaching our conclusions regarding the proposed accounting:

- A memorandum—*Transaction Structure Description*. This memorandum, written by representatives of Cornerstone Financial Advisors LP, CED's financial advisor in this transaction, was provided to Ben Neuhausen of Arthur Andersen LLP (AA). AA was requested by Cornerstone to provide their opinion regarding the appropriate accounting for this hypothetical transaction.

- Letter dated November 21, 1997 of AA. This letter describes AA's conclusions regarding the transactions described in the Transaction Structure Description.

- Responses to questions. During the course of discussions regarding the transactions, a number of questions were developed and responses were provided by CED and/or Cornerstone.

These documents are attached.

The fundamental structure is a "lease-in" by a Trust established by CED of an electric utility asset from a Dutch municipal electric utility (EZH). The Trust is a lessee in this transaction. Simultaneously, the Trust "leases out" the leased asset to a subsidiary of EZH. In this transaction the Trust is a sublessor.

**Accounting for the "Head Lease"**

The head lease in is a 44-year lease requiring one payment at closing and one payment at the end of the term of the lease. FAS 13 requires that a lease be accounted for as a capital lease if it meets any one of the following criteria:

- The lease transfers the asset to the lessee at the end of the lease term;

CE 004724

- The lease contains a bargain purchase option;
- The lease term is 75% or greater of the economic useful life of the property; and
- The present value of the minimum lease payments is 90% or more of the fair value of the lease property at the inception of the lease.

We have been advised that Deloitte & Touche Valuation Services ("D&T") will provide an appraisal of the fair value of the property at the inception of the lease and an opinion as to the economic useful life of the property. We have also been advised that Cornerstone will provide a calculation of the present value of the minimum lease payments (both for the Head Lease and the sublease).

For purposes of this memo, we have assumed that the economic life of the property is less than 58-2/3 years and that the present value of the minimum lease payments (MLP's) exceeds 90% of the fair value of the property. Therefore, the proposed Head Lease transaction meets at least two requirements for classification by the Trust as a capital lease asset and obligation in the amount equal to the present value of the MLP's, provided such value does not exceed the fair value of the property.

**Accounting for the Sublease**

The sublease has an initial term of 20 years with a purchase option at the end of that term. Should the purchase option not be exercised, the Trust as sublessor has a put renewal option under which the sublessee would pay rent for 17 years.

To determine the accounting for the sublease, the Trust is required to consider the same four criteria as described above. The Transaction Structure Description, page 4, indicates that "it is reasonable to assume, based on non-economic factors mentioned above, that the credit and collateral requirements outlined below that the sublessee will exercise the purchase option." If, as of the inception of the lessee, the exercise of its purchase option is "reasonably assured," then the sublease meets the second criteria—bargain purchase option. Also, we have been advised that the MLP's under the sublease will equal or exceed 90% of the fair value of the leased property. As a result, the sublease meets both the second and fourth criteria of FAS 13. However, FAS 13, paragraphs 35 through 39, specify additional tests for accounting and reporting for subleases and similar transactions. We have considered in particular the requirements of paragraph 39.b. Paragraph 39.b requires "if the original (Head Lease) met either criteria c or d but not criteria a or b of paragraph 7, the original lessee shall, with one exception, classify the new lease in accordance with the criteria of paragraph 7.c and 8 only." The Head Lease meets both criteria c and d. Paragraph 39.b further provides "the one exception arises when the timing and other circumstances surrounding the sublease are such as to suggest that the sublease was entered as an integral part of the overall transaction in which the original lessee serves only as an intermediary. In that case, the sublease shall be classified according to the criteria of paragraph 7.c and d, as well as the criteria of paragraph

8. In applying the criteria of 7.d the fair value of the lease property shall be the fair value to the original lessor at the inception of the original lease." We have considered whether the Trust formed by CED meets the definition of a "intermediary" and have concluded that it does. Therefore, the sublease can be classified either according to paragraph 7.c or d, that is, the 75% of economic life test or the 90% of fair value of the leased property test. If the sublease meets three further conditions of FAS 13 it will meet the requirements for direct financing lease treatment. These conditions are:

- The fair value of the leased asset is equal to the Trust's cost
- The trust has no significant future costs with respect to the leased property or the transaction that are unknown
- Collectibility is reasonably assured

D&T will provide an opinion regarding the fair value of the property which will indicate that the fair value will equal the cost to the Trust. The Head Lease is triple net, therefore there are no future unknown costs. EZH is a municipal entity with an "A" credit rating. Accordingly, the sublease may be accounted for as a direct financing lease under FAS 13.

In order for the direct financing lease to be accounted for as "leveraged lease," FAS 13 provides three further conditions:

- The transaction involves at least three parties—a lessor, a lessee and a long-term creditor;
- The financing provided by the long-term creditor is non recourse to the general credit of the lessor and is "substantial;" and
- The lessor's net investment declines in the early years of the lease and rises in subsequent years.

The first condition is met. The lessor is EZH, the lessee is the CED Trust and the long-term creditor is proposed to be ABN Bank. The third condition is also met. The Transaction Structure Description contains a schedule which reflects the required pattern of declining net investment in the early years of the lease and increasing investment in subsequent years. With respect to the second condition described above, the AA letter and the Transaction Structure Description describe the "recourse provisions of the proposed transaction." The last three paragraphs of the AA letter, page 4, describe how, from an accounting perspective, the proposed transactions meet the recourse provisions of the second criteria to be accounted for as a leveraged lease. We agree with these conclusions, assuming that the proposed structure is put in place in the final transaction. The financing is also substantial as, according to the Transaction Structure Description, it exceeds 50% of the fair value of the property.

As a result, the sublease qualifies first as a direct financing lease and furthermore meets the criteria classified as a leveraged lease under FAS 13.

**Definition of a Lease**

We also considered the question of whether or not this proposed transaction is in fact a lease covered by FAS 13. Under FAS 13, "a lease is defined as an agreement conveying the right to use property, plant or equipment (land and/or depreciable assets) usually for a stated period of time." We have been advised that the lessee, the Trust, has the right to use the property. If the put renewal option is exercised by the Trust at the end of the put renewal period (i.e., year 37 of the sublease), there will remain seven years under the term of the original head lease. During that period, the Trust has the right to use the property and derive rents or other revenues from such use. Also, at the end of the initial term of the sublease (year 20) if neither the purchase option nor the put renewal option is exercised, then the Trust has the right under the Head Lease to use the property and derive rents or other revenues therefrom. As a result, we believe the proposed transaction meets the definition of a "lease."

**Qualifications**

The above conclusions are subject to the transactions being executed in form and substance substantially as described above and receipt of the documents prepared by D&T and Cornerstone regarding fair market value and economic useful life, and the present value of MLP's, respectively. Also, the management representation letter will contain representations consistent with the information provided above including the following:

- Fair value of the property
- Economic useful life of the property
- Present value of minimum lease payments
- The ability of the trust to "use" the property and, therefore, treat the Head Lease and the sublease as leases under FAS 13

on-ed\memos\levlease\to the file