IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES, | ) | |
| Plaintiff, | ) | No. 06-305 T |
| v. | ) | Judge Marian Blank Horn |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

# PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S SECOND MOTION TO COMPEL

Thomas C. Durham
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney of Record for Plaintiff

David F. Abbott
Mayer, Brown, Rose & Maw LLP
1675 Broadway
New York, New York 10019
Tel: (212) 506-2500
Fax: (212) 262-1910
dabbott@mayerbrownrowe.com

Of Counsel for Plaintiff

# TABLE OF CONTENTS

**Page**


QUESTION PRESENTED ..... 1

BACKGROUND ..... 1

SUMMARY OF ARGUMENT ..... 2

I. CON EDISON NY HAS PROVIDED ALL RESPONSIVE DOCUMENTS RELEVANT TO THE TAXATION OF THE EZH TRANSACTION ..... 3

A. Interrogatory No. 2 – Con Edison NY's Other LILO Transactions ..... 6

B. Interrogatory No. 3 – Information Underlying Plaintiff's Allegations Regarding the LILO Transaction at Issue ..... 8

C. Interrogatory No. 7 – Plaintiff's Investigation of the LILO Transaction at Issue ..... 12

D. Interrogatory No. 12 – Tax Indemnity Agreement ..... 13

E. Interrogatory No. 14 – Outside Consultants Regarding the LILO Transaction ..... 13

F. Interrogatory No. 16 – Reasons for a Trust ..... 17

II. CON EDISON NY HAS NOT IMPROPERLY RELIED ON RCFC 33(d) ..... 18

CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page**

**Cases**

*City of Wichita, Kansas v. Aero Holdings, Inc.*, 2000 WL 33170895, *3 (D. Kan.) .................... 17
*Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006) .................................. 3, 4
*Frank Lyon Co. v. United States*, 435 U.S. 561 (1978) ............................................................. 4
*Hilt v. SFC, Inc.*, 170 F.R.D. 182 (D. Kan. 1997) ............................................................... 11, 12
*S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574 (M.D. N.C. 2002) ............................ 18, 19, 21, 22, 23
*United States v. Rachel*, 289 F. Supp. 688 (D. Md. 2003) .......................................................... 21

**Rules of the Court of Federal Claims**

Rule 26(a) ................................................................................................. 5, 10, 19, 22
Rule 33(d) ............................................................................................ 18, 19, 20, 21, 22

**Internal Revenue Code**

Section 467 ................................................................................................................ 9, 10

**Other**

P. Nevitt and F. Fabazzi, *Project Financing*, p. 149 (7th ed.) ..................................................... 17

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,** | ) | |
| **Plaintiff,** | ) | **No. 06-305 T** |
| **v.** | ) | **Judge Marian Blank Horn** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S SECOND MOTION TO COMPEL**

The Plaintiff, Consolidated Edison Company of New York, Inc. ("Con Edison NY") hereby files its Memorandum in Response to Defendant's Second Motion to Compel.

## QUESTION PRESENTED

Whether Con Edison NY has complied with the United States' discovery requests as described below.

## BACKGROUND

In the early 1990s, Con Edison NY expected that the state of New York was likely to deregulate its electric generation business. Beginning in 1994, Con Edison NY began to evaluate business strategies to compete successfully in a deregulated environment.

As part of the deregulation process, the New York Public Service Commission authorized Con Edison NY to create a new unregulated subsidiary which would be allowed to make international investments. This subsidiary was originally named Gramercy Development, Inc., but subsequently changed its name to Consolidated Edison Development, Inc. ("CED").

One of CED's first investments was a leasing transaction with N.V. Electriciteitsbedrijf Zuid-Holland, also known as "EZH," a Netherlands utility. The lease involved an electric generation facility known as RoCa3. This is the transaction currently before the Court.

The lease with EZH was structured as a "lease-in, lease-out," or "LILO," in which EZH leased an undivided interest in the RoCa3 facility to CED for a period of approximately 43 years. CED then subleased the RoCa3 facility back to EZH for a period of approximately 20 years. At the end of this sublease, EZH has an option to purchase CED's remaining interest in the lease, and CED has an option to renew the sublease to EZH if EZH does not exercise its purchase option. CED expected to earn a significant profit from the sublease to EZH and from the residual value of the RoCa3 facility. CED also viewed the EZH lease as an important step in its expansion into international energy markets.

The Internal Revenue Service disallowed deductions claimed by Con Edison NY for rent and interest and amortization of transaction costs associated with the EZH investment for the 1997 tax year. Con Edison NY paid the amounts at issue and commenced this tax refund proceeding.

## SUMMARY OF ARGUMENT

Con Edison NY has provided the United States with all responsive documents relating to the EZH transaction, other than documents which Con Edison NY has identified as privileged on privilege logs produced to the United States. The dispute between the parties over the production of documents relates to transactions other than the EZH transaction, such as non-leasing investments, leasing transactions which Con Edison NY did not enter into, and the NUON transaction, a lease entered into two tax years after the EZH transaction.

Con Edison NY has also provided complete responses to each of the United States' Interrogatories. The details of Con Edison NY's responses are addressed below.

## I. CON EDISON NY HAS PROVIDED ALL RESPONSIVE DOCUMENTS RELEVANT TO THE TAXATION OF THE EZH TRANSACTION

The United States relies on *Coltec Industries, Inc. v. United States*, 454 F.3d 1340 (Fed. Cir. 2006) in support of its claims for the relevance of requested documents. The United States correctly states that *Coltec* applies a two-part test for determining whether a transaction has economic substance. The first part of the test is an "objective analysis" which determines whether "*the transaction* had economic substance." (Second Motion to Compel, p. 18) (emphasis supplied). The "second prong" looks to the "non-tax business purpose *in entering the transaction*." (Second Motion to Compel, p. 18) (emphasis supplied).

Thus, the United States' own motion reflects that the relevant tests must be applied by looking at the facts of the transaction at issue, *i.e.*, Con Edison NY's lease with EZH. The *Coltec* decision itself focused upon the transaction at issue, not the taxpayer's other transactions, in examining whether the *Coltec* transaction had economic substance. Thus, *Coltec* does not support the proposition that documents from other transactions are necessary to determine the economic substance of the EZH transaction.

Con Edison NY has produced extensive documentation which sets forth its business purpose for entering into the lease with EZH. This material includes briefing memoranda, investment recommendations, and other presentations setting forth the reasons for entering into the EZH lease, as well as material regarding the due diligence review of the lease. Con Edison NY has also produced the contractual terms and other financial information relating to the EZH lease which will determine whether the lease will produce an objective profit. Thus, contrary to

the United States' claims, Con Edison NY has provided all information relating to the EZH lease and to Con Edison NY's subjective intent in entering into the lease.[1]

The United States does not explain how Con Edison NY's other transactions are relevant to the tests applied in *Coltec*. For example, one of CED's other principal investments in 1997 was a *non-leasing* investment in an electric generation plant in Guatemala. The United States has not challenged the taxation of this non-leasing investment. Con Edison NY does not believe that the details of this investment will provide relevant information regarding the objective profit and subjective business purpose of the EZH lease. This is even more true of non-leasing investments Con Edison NY may have reviewed but did not enter.

The United States claims, however, that the economic substance test requires a comparison of the EZH lease transaction "with other similar transactions Plaintiff considered," citing *Coltec* and *Frank Lyon Co. v. United States*, 435 U.S. 561 (1978) (Second Motion to Compel, p. 18). *Coltec* and *Frank Lyon*, however, do not support this argument. In both of those cases, the court applied the economic substance test by reference to the transaction at issue, and did not base its decision on other transactions the taxpayer had considered. Thus, these cases do not support the United States' claim that information from all other transactions, whether actually completed or not, is relevant.

The United States alleges (Second Motion to Compel, p. 17) that CED's October 27, 1997 Board minutes indicate Con Edison NY has withheld materials submitted to the Board of Trustees of Consolidated Edison, Inc. regarding leasing issues. This allegation is simply not true; the material in question was produced to the United States as part of the initial discovery on

---

[1] Con Edison NY's Fourth Supplement to the United States' First Request for Production, dated April 25, 2007, contains a small amount of material related to the EZH transaction which was located in the search for additional documents responsive to Interrogatory No. 2.

September 25, 2006. Exhibit C-6 attached to the Second Motion to Compel shows that at an October 29, 1997[2] CED Board of Directors meeting, the Board of Directors of CED discussed material related to leasing. This material (attached as Exhibit A)[3] was produced to the United States as part of the initial Rule 26 disclosures in September of 2006. Actually, multiple copies of this material have been produced to the United States. This material was not attached to Con Edison NY's permanent minutes of the meeting, possibly because it was distributed prior to the meeting.

If the United States had inquired of Con Edison NY concerning this material, Con Edison NY could have clarified the United States' misunderstanding in a matter of minutes.

The second example cited by the United States is a document entitled "Lease Screening Criteria," dated July 21, 1997, which was distributed to the Board of Directors of CED at a meeting on July 23, 1997. This document also was not attached to the official minutes of the meeting.

The United States never made a direct inquiry to Con Edison NY concerning the existence of the "Lease Screening Criteria." The United States did, however, send summonses to third parties inquiring into the existence of this document. In response to these third party summonses, counsel for Con Edison NY undertook a specific search for a copy of the Lease Screening Criteria and was able to locate a copy, which was recently provided to the United States. The Lease Screening Criteria consists of a single page and is attached hereto as Exhibit B.

---

[2] The United States erroneously states that the date of this meeting was October 27, 1997. (Second Motion to Compel, p. 17). This mistake may explain why the United States does not realize the material has already been produced.

[3] All references to Exhibits are to the Exhibits attached to the Declaration of Thomas C. Durham attached hereto.

**A. Interrogatory No. 2 – Con Edison NY's Other LILO Transactions**

Interrogatory No. 2 provides as follows:

> **2. Identify all other LILO transactions or shelter transactions presented to, considered, reviewed or analyzed by the Plaintiff in 1996, 1997 or 1998, and identify all documents in connection with your consideration, review or analysis.**

Con Edison NY has undertaken a search for all documents relating to other LILO transactions considered by Con Edison NY. With the exception of the NUON transaction (described below), Con Edison NY has, to the best of its information and belief, produced all documents with respect to other LILO transactions reviewed by Con Edison NY.

The amount of the material relating to the other LILO transactions is small. This is true for several reasons. First, Con Edison NY only gave serious attention to five transactions, which are commonly referred to as EZH, NUON, MEGA, ENECO, and EPON.[4] The EZH transaction is the subject of this refund case. The NUON transaction was completed in 1999, two tax years after the transaction at issue. Con Edison NY withdrew from the ENECO transaction, and Con Edison NY's proposal to participate in the MEGA transaction was rejected. Since the ENECO and MEGA transactions were not completed, Con Edison NY obviously has less information on these transactions.

From time to time, Con Edison NY became aware of other parties seeking lease financing for their assets. The names of such parties were included in reports to management, including board of director reports, as potential opportunities. Counsel for Con Edison NY has inquired of Con Edison NY's current and former employees and its consultant retained for purposes of evaluating leases regarding the consideration of these other leases. These individuals have indicated that Con Edison NY never pursued any of these other opportunities, other than EZH,

[4] Based on Con Edison NY's records and discussions with its employees and leasing consultant, it is not clear why Con Edison NY did not go forward with the EPON transaction.

NUON, MEGA, ENECO, and possibly EPON. Thus, Con Edison NY's information with respect to these other potential transactions is generally limited to the identity of the potential party. While the United States complains that the information provided regarding these other potential leases is "cursory," this is simply attributable to the fact that Con Edison NY's review of most of these transactions was "cursory." Con Edison NY believes it has produced all documents identifying and relating to these other potential parties.

The United States' claim that Con Edison NY is withholding information regarding other leasing transaction is puzzling given the United States' repeated acknowledgement that Con Edison NY *has* provided information on these other transactions. The Second Motion to Compel (pp. 20-21) refers to a number of documents concerning other leasing transactions, and acknowledges that, based upon the documents provided by Con Edison NY, the United States "was able to identify at least 22 other international lease transactions considered by Plaintiff." (Motion to Compel, p. 21)

The transactions for which the United States has requested information are, by definition, transactions Con Edison NY did not complete. These transactions also date back 8-10 years. For obvious reasons, Con Edison NY may not have retained complete information on transactions from 8-10 years ago which it did not complete. The search for all such information has been difficult, in part because this information was not consolidated in a single location.[5] Counsel for Con Edison NY has completed a diligent search of Con Edison NY's records and believes it has produced all records relating to such transactions. The Fourth Supplement to the United States' First Request for Production, dated April 25, 2007, contains the remaining items responsive to Interrogatory No. 2.

---

[5] Also, the CED employee responsible for reviewing leases is no longer employed at CED or Con Edison NY.

In responding to the United States' Interrogatories, Con Edison NY has pointed out that it is "impossible to certify under oath what transactions were 'considered' or 'reviewed' by an employee of the company approximately ten years ago." The United States' request is overbroad in this respect, since "considered" or "reviewed" could be interpreted to mean something which received only momentary attention. After a span of 8-10 years, Con Edison NY cannot be required to specify, under oath, transactions which might have received only a moment's consideration and for which Con Edison NY did not retain any documents. Thus, Con Edison NY has limited its responses to potential transactions identified in the company's records. *Con Edison NY, however, has not withheld any information based on this limitation.* In other words, Con Edison NY has no information in its files regarding other potential LILO transactions which is not reflected in the records produced to the United States.

With respect to the NUON transaction, this transaction was completed in 1999. The NUON transaction was therefore not responsive to Interrogatory No. 2, which was limited to 1996-1998. Con Edison NY nonetheless identified the NUON transaction in response to Interrogatory No. 2 in the interest of full disclosure.

Con Edison NY continues to believe that the NUON transaction, which was completed in 1999, has no relevance to the case before the Court, which involves the EZH transaction, which was completed in 1997. Introduction of facts, documents, and witnesses concerning the NUON transaction would significantly complicate this case, without shedding significant light on the EZH transaction itself. For these reasons, Con Edison NY believes production of the NUON documents should not be required.

### B. Interrogatory No. 3 – Information Underlying Plaintiff's Allegations Regarding the LILO Transaction at Issue

Interrogatory No. 3 provides as follows:

**3. Describe how the rent obligation and various option prices described in paragraphs 63, 64, 68 and 69 of the Complaint were negotiated, calculated and allocated.**

Interrogatory No. 3 asks Con Edison NY how the rent obligations and option prices in the LILO transaction were negotiated, calculated, and allocated. This is a broad, open-ended questions which calls for narrative responses and, as discussed below, is objectionable on that basis. Nonetheless, Con Edison NY provided a response as set forth below:

> The terms of the Lease Transaction were negotiated to optimize the economic returns to each party. In particular, Con Edison negotiated the terms of the transaction to provide a yield for financial accounting purposes consistent with its investment objectives.
>
> The parties' negotiations were constrained by factors such as the useful life of the property in question and the fair market value of the leasehold interest acquired by Con Edison. In negotiating the specific terms of the transaction, the parties utilized computer software which optimizes the economic return to each party, taking such constraints into account.
>
> The terms of the Lease Transaction were also constrained by the requirements of section 467 of the Internal Revenue Code. The allocations of rental income and deductions for tax purposes were designed to comply with section 467.

(Ex. C)

Following Con Edison NY's response to Interrogatory No. 3, the United States asked for additional detail. Con Edison NY directed the United States to PF003241-46, (attached as Exhibit G) which represents Con Edison NY's proposal to enter into a lease with EZH. This proposal was "based on the Pricing Assumptions" attached. The attached Pricing Assumptions contained detailed information concerning Con Edison NY's proposal and the assumptions on which Con Edison NY's proposal was based.

The United States agreed that the citation to PF003241-46 provides responsive information regarding the assumptions on which Con Edison NY's proposal to EZH was based.

The United States, however, requested additional detail. Con Edison NY responded to these inquiries on December 21, 2006:

> As explained previously, Con Edison and South Holland Electric negotiated the rent and option prices in order to maximize their respective economic returns from the transaction, should the option be exercised. Also, as explained previously, the rental amounts were allocated in accordance with section 467 of the Internal Revenue Code for tax purposes. Rental amounts were calculated by reference to the fair market rental value of the property. As explained in the supplemental information provided, which the United States agreed was helpful, the parties' negotiations on these points were constrained by factors such as the fair market value of the property and its useful life. If, by its request, the United States intended a different meaning for "negotiated," "calculated," and "allocated" other than the meanings of those words as we understand them, Con Edison requests that the United States clarify its request.
>
> In response to the United States' follow-up question in its correspondence of December 12, 2006, the computer program used was called "ABC." This computer program is identified on the top of each of the pricing runs which Con Edison previously produced. The program was created by Warren & Selbert, Incorporated. *See* www.warren-selbert.com. Robert Holzman, identified in Con Edison's First Supplement to its Rule 26(a) Disclosures, ran this software program on behalf of Con Edison. Con Edison has already provided information on "how" the software was used. The ABC program is standard software which is widely used in the leasing industry in order to perform the calculations required in connection with leasing transactions. As previously indicated, one of the functions of this software is to calculate rental amounts in a manner which will optimize the economic returns to each party. It is also capable of performing the calculations required by section 467 in order to ensure compliance with those provisions.

(Ex. H)

In short, Con Edison NY has:

- identified the pricing assumptions on which the transaction was negotiated;
- explained that a computer program was used to calculate the amounts of rent, subject to the identified constraints and pricing assumptions, including section 467 of the Internal Revenue Code;
- identified the specific computer program utilized; and
- identified the person who operated the software program.

As explained above, the specific calculations of rent are performed by a computer, in accordance with the constraints and pricing assumptions as described above, to maximize the economic return to each party. Since these calculations are performed by a computer program, and Con Edison NY has explained how the program was utilized, Con Edison NY has fully responded to this question.

Con Edison has invited the United States to further clarify its request, but it has not done so.

The United States has complained that Con Edison NY has been inconsistent in describing the transaction as both "bid" and "negotiated." (Motion to Compel, p. 18). There is nothing inconsistent in those two terms. On October 21, 1997, Con Edison NY submitted a "proposal," *i.e.*, a "bid," to EZH regarding the lease of its facilities. This proposal made clear that adjustments would be necessary "if any of the Pricing Assumptions change." (Ex. G). The proposal also stated that it was "subject to review by the appraiser" and also indicated that the letter set forth a "proposal only" and was subject to numerous contingencies, including "*negotiation and execution of documentation mutually acceptable to CED and EZH*." (emphasis added). Thus, the "proposal" or "bid" which Con Edison NY made to EZH explicitly anticipated additional negotiations, and there is nothing inconsistent in stating the transaction was both "bid" and "negotiated."

Interrogatory No. 3 provides a clear example of why interrogatories that seek long narrative responses are improper. *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 186 (D. Kan. 1997). Interrogatory No. 3 is not limited to a single discrete subject and does not pose a simple, direct question. *Hilt*, 170 F.R.D. at 186. Depositions are better suited for the discovery of detailed facts and narratives such as requested by Interrogatory No. 3. *Id.* at *187.*

In Interrogatory No. 3, the United States has asked a broad, general, and open-ended question. Con Edison NY has responded by identifying the relevant document which underlies the parties' negotiations and the assumptions on which the these negotiations were based, and has responded to the United States' specific requests for more detail. Without more specific requests, which the United States has not provided, Con Edison NY should not be required to provide an additional response.

### C. Interrogatory No. 7 – Plaintiff's Investigation of the LILO Transaction at Issue

Interrogatory No. 7 provides as follows:

> **7. Identify any studies, analyses, forecasts, projections or other due diligence performed or prepared by any individual or entity in connection with the Lease Transaction, including the individuals or entities that performed such study or analysis, and all documents that mentions, describes or evidences such study or analysis.**

Interrogatory No. 7 does not ask a specific question, but instead requests all documents reflecting "any studies, analysis, forecasts, projections, or other due diligence" with respect to the EZH transaction. In response to Interrogatory No. 1, Con Edison NY has identified its consultants and advisors who were responsible for preparing the referenced "studies, analysis, forecasts, projections, or other due diligence" and has explained the role of each consultant and advisor. (Ex. C). Con Edison NY has produced all studies, forecasts, etc., and other due diligence material relating to the EZH transaction, except as noted on its privilege log, and Con Edison NY has not withheld any material responsive to Interrogatory No. 7 except as noted on the privilege log. The United States is therefore incorrect in stating that Con Edison NY "has not provided" a description of withheld material, since the privilege log identifies the only material which has been withheld.

D. **Interrogatory No. 12 – Tax Indemnity Agreement**

Interrogatory No. 12 provides as follows:

> **12. If Plaintiff executed a tax indemnity agreement, set forth the terms of each such agreement, explaining the reasons for entering the agreement.**

Con Edison NY has provided a full and complete response to this Interrogatory. It has provided a copy of the tax indemnity agreement and thus has provided the terms of the agreement.

Interrogatory No. 12 requests an explanation for entering into the tax indemnity agreement. The clearest and most complete response to this Interrogatory is reflected in the terms of the tax indemnity agreement itself. The tax indemnity agreement is a contract between two unrelated parties. As such, the terms of the contract will reflect the parties' agreement and will provide the best possible explanation of the nature of and reasons for the parties' agreement.

The tax indemnity agreement in this case is 27 pages long and has 17 separate sections and numerous subsections. Any attempt to "explain" the reasons for entering the agreement would require the preparation of an extensive narrative, which would be little more than a paraphrase of the terms of the document itself.

E. **Interrogatory No. 14 – Outside Consultants Regarding the LILO Transaction**

Interrogatory No. 14 provides as follows:

> **14. Identify all outside consultants you communicated with to locate potential international energy infrastructure investment opportunities (including energy facilities), including in your response the opportunities that were presented to you and all documents that you reviewed or were provided in connection therewith.**

Con Edison NY has identified the consultant it communicated with to locate potential LILO investments. This consultant was Cornerstone Financial Advisors, which Con Edison NY

identified on November 2, 2006, in response to Interrogatory No. 14. (Ex. C). In response to Interrogatory No. 2, Con Edison NY has provided all documents in its possession in connection with Cornerstone's presentation of other LILO investments (save for the NUON transaction, as described above with respect to Interrogatory No. 2).

To the extent that Interrogatory No. 14 seeks the identity of consultants other than those employed to locate potential LILO investments, Interrogatory No. 14 is ambiguous and overbroad. This ambiguity is obvious from the United States' own description of Interrogatory No. 14, which it describes as "outside consultants regarding the LILO transaction." (Second Motion to Compel, p. 10). Similarly, the United States describes Con Edison NY's complaint as "alleg[ing] that it entered into the LILO transaction at issue after communications with outside consultants, *so Interrogatory No. 14 inquired about those consultants*." (Second Motion to Compel, p. 10) (emphasis added). Finally, the United States refers to ¶ 49 of Con Edison NY's complaint (Second Motion to Compel, p. 10), which referred to "consultants" engaged in connection with the EZH transaction.

Thus, the United States' own description of Interrogatory No. 14 describes it as being limited to consultants in connection with LILO transactions.

Con Edison NY has also identified International Energy Partners as a consultant for purposes of locating international non-leasing investments. (Ex. C). Thus, Con Edison NY has identified the relevant consultants. Con Edison NY's objection is to the second part of the Interrogatory, which requests "all documents" relating to international investments. Since CED was formed to make international investments, this Interrogatory could reach virtually all of CED's activity.

To the extent that Interrogatory No. 14 is not limited to LILO investments, it is extremely overbroad. The United States states – incorrectly – that Con Edison NY has not "explained how the requests might be narrowed." This is not true. Con Edison NY explained how Interrogatory No. 14 was overbroad and how it might be narrowed, in a letter to the United States dated December 21, 2006:

> Con Edison continues to believe that Interrogatory No. 14 is overbroad. Con Edison is—to state the obvious—an energy company. Its entire business involves investment in energy infrastructure, and thus Interrogatory No. 14 in effect requests information regarding virtually all of Con Edison's business operations over an unlimited time span. The United States has not narrowed the Interrogatory either by reference to a specific time span or a specific entity, such as Consolidated Edison Development. In response to this overbroad interrogatory, Con Edison has provided, as described above, extensive information regarding the other infrastructure investments considered by Con Edison Development. As described in its Complaint, this material provides information regarding Con Edison's plans to operate in a deregulated environment.
>
> Con Edison is willing to work with the United States in order to narrow the scope of Interrogatory No. 14. Absent the United States' cooperation in this matter, however, it is difficult for Con Edison to know how to proceed, as the United States' request that Con Edison provide all material regarding all infrastructure investments over an unlimited time span is clearly overbroad.

(Ex. H).

The United States has never narrowed or clarified Interrogatory No. 14 in response to Con Edison NY's concerns. One of the problems with Interrogatory No. 14 is that it is not limited to CED, but also includes Con Edison NY, which reviewed international investments in addition to those reviewed by CED.

In addition, to the extent Interrogatory No. 14 was intended to request information on non-LILO investments, the United States' claim that Con Edison NY has "ignored" its requests is not correct. Con Edison NY has provided information on its consultants for non-leasing

investments and the investments reviewed, also as described in the letter dated December 21, 2006:

> As for non-leasing investments, Con Edison previously identified International Energy Partners as an outside consultant which helped to locate infrastructure investments. International Energy Partners was responsible for locating the Genor investment, which was Con Edison Development's first non-leasing infrastructure investment. We have previously provided you with extensive material regarding International Energy Partners. *See* PF004426-44. This material identified potential infrastructure investments, including the Genor project, and described the merits of those projects.
>
> In addition, Con Edison has provided extensive information regarding its plans for other non-leasing investments. This material includes, but is not limited to:
>
> - all Minutes of Board of Trustee meetings in 1996 through 1998, *see, e.g.*, PF005950-53;
> - extensive and detailed business plans, highlighting potential investments, *see, e.g.*, PF6438-89;
> - reports to the Board of Trustees and other status reports, *see, e.g.*, PF6295-300; and
> - numerous presentations to the Board of Trustees, *see, e.g.*, PF4223-43.
>
> Two other early infrastructure investments highlighted in these materials were the Ada and Carson projects. *See, e.g.*, PF6295-300. Both of these investments were located by Delta Power Company, LLC.

(Ex. H).

Con Edison NY has also provided presentation materials from International Energy Partners highlighting potential international energy infrastructure investments. (Ex. I). In short, Con Edison NY has identified its "outside consultants" and has identified documents setting forth the opportunities presented.

Con Edison NY's objection to this Interrogatory relates to the requirement to identify "all documents" for these other non-leasing transactions. CED gave some level of review or

consideration to dozens of non-leasing investments, but in many cases the review of such projects was cursory and minimal. Providing all documents relating to all other international infrastructure investments considered by Con Edison NY would be extremely burdensome, particularly since Interrogatory No. 14 is not limited by any time frame. An Interrogatory which requests "all" information on a particular subject is overbroad and does not give sufficient notice of the information requested. *See City of Wichita, Kansas v. Aero Holdings, Inc.*, 2000 WL 33170895, *3 (D. Kan.). The United States has declined Con Edison NY's requests to narrow its request. In addition, as stated above, the United States has not made clear why this information regarding *all* international *non-leasing* transactions is relevant to the taxation of the EZH lease.

It is difficult to imagine how *all non-leasing* investments Con Edison NY reviewed, but did not enter into, could be relevant to the taxation of the EZH lease. To the extent that this information is considered relevant, however, Con Edison NY requests that Interrogatory No. 14 be limited in scope from a broad request for "all" documents over an unlimited time span.

### F. Interrogatory No. 16 – Reasons for a Trust

Interrogatory No. 16 provides as follows:

> **16. State the basis for your decision to form a trust to enter into the Lease Transaction.**

Con Edison NY has given a full and complete response to Interrogatory No. 16.

As Con Edison NY has explained, the use of ownership trusts is a standard and customary practice in the leasing industry. *See* P. Nevitt and F. Fabazzi, *Project Financing*, p. 149 (7th ed.). Con Edison NY did not have a specific reason for using an ownership trust, other than that the use of such trusts is standard practice.

Con Edison NY's responses on this issue have not been inconsistent. Con Edison NY's response that the use of a trust was "based upon the advice of counsel" is completely consistent

with its response that the use of ownership trusts is standard and customary in the leasing industry, and simply reflects that counsel's advice was likely based on customary practice. There is nothing inconsistent in these responses.

Con Edison NY has not revealed any substantive advice provided by counsel regarding the reasons for using a trust, and thus has not waived any privilege. There are no documents, either privileged or non-privileged, explaining Con Edison NY's reasons for using a trust.

Finally, Con Edison NY has pointed out, in the interest of completeness, that the decision to use a trust was not Con Edison's alone, since EZH (and its counsel) may have preferred this structure as well. Con Edison NY obviously cannot speak for EZH on this matter.

## II. CON EDISON NY HAS NOT IMPROPERLY RELIED ON RCFC 33(d)

The United States claims that Con Edison NY has incorrectly relied on RCFC 33(d) and specifically references Interrogatories Numbers 1, 2, 3, 7, 12, and 14 in this regard. Separate responses for each Interrogatory are set forth below. Contrary to the United States claims, Con Edison NY has provided specific responses to each Interrogatory, has directed the United States' attention to specific documents, and has not relied solely on RCFC 33(d).

The United States relies on *S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574 (M.D. N.C. 2002), but that case is distinguishable in several important respects. First, the requesting party in that case had "greatly narrowed their interrogatory requests," which was an "important" consideration in the court's decision. *Id.* at 577 n.4, 578. The United States has not done so here. Second, *Elfindepan* involved contention interrogatories, which cannot be answered by production of business records under Rule 33(d). *Id.* at 577. Third, the documents in question were not business records, as required by Rule 33(d). *Id.* at 577-78.

Interrogatory No. 1

Interrogatory No. 1 provides as follows:

**1. Identify all individuals who have knowledge of the Lease Transaction, including each person's involvement in the promotion, recommendation, planning, approval, or implementation of any of the leases, and the nature and substance of the facts known (or believed to be known) by each person.**

Interrogatory No. 1 requested the identity of all individuals with knowledge of Con Edison NY's lease transaction with EZH, and also (a) their involvement in the transaction and (b) the facts known by each person. While this Interrogatory is broad and represents an impermissible compound Interrogatory, Con Edison NY has attempted to identify all relevant individuals. Con Edison NY has not relied on Rule 33(d), but has named the relevant individuals and their roles in the EZH transaction.

In its initial response to Interrogatory No. 1, Con Edison NY identified current and former employees of Con Edison NY with knowledge of the transaction, as well as the advisors retained by Con Edison NY. Con Edison NY also described the role of each individual in the transaction. (Ex. C). The response to Interrogatory No. 1 named over 25 individuals and their roles in the EZH lease.

In addition, Con Edison NY also referenced a list of individuals provided by the United States on October 13, 2006 as a supplement to the United States' Rule 26(a) disclosures. In its Second Supplement to Interrogatory No. 2, Con Edison NY identified the role of each person on this list. Since many of the persons on this list are third parties, and not Con Edison NY's consultants or employees, Con Edison NY's knowledge of their role in the transaction is more limited. While Con Edison NY did refer to RCFC Rule 33(d), it also "provide[d] a summary of the nature of each individual's involvement in the in the Lease Transaction and the general substance of the facts known by each." This summary contained 14 pages and referenced more than 60 individuals. (Ex. E).

Thus, while Con Edison NY did reference RCFC 33(d) it did provide, as part of its response to Interrogatory No. 1, a specific list of the relevant individuals and the facts known by each of them and thus answered Interrogatory No. 1. Con Edison NY has thus provided a specific answer to Interrogatory No. 1.

Interrogatory No. 2

Interrogatory No. 2 provides as follows:

> **2. Identify all other LILO transactions or shelter transactions presented to, considered, reviewed or analyzed by the Plaintiff in 1996, 1997 or 1998, and identify all documents in connection with your consideration, review or analysis.**

Interrogatory No. 2 is described in detail above, and concerns other leasing transactions Con Edison NY did not enter into.

In its First Supplement to Interrogatory No. 2, Con Edison NY directed the United States' attention to the CED Board of Director Minutes for 1996-1998 in order to determine the transactions considered by Con Edison NY. (Ex. D). As described above in the discussion with reference to Interrogatory No. 2, based on the documents provided by Con Edison NY, the United States has compiled a list of transactions considered by Con Edison NY. Since the United States has been able to compile a list of the relevant transactions based on the documents produced and identified by Con Edison NY, the provisions of RCFC 33(d) have been met. The burden of compiling this list from the specific documents identified by Con Edison NY was the same for the United States as it was for Con Edison NY.

Interrogatory No. 3

Interrogatory No. 3 provides as follows:

> **3. Describe how the rent obligation and various option prices described in paragraphs 63, 64, 68 and 69 of the Complaint were negotiated, calculated and allocated.**

As described above in the discussion relating to Interrogatory No. 3, Con Edison NY has specifically directed the United States' attention to the document that underlies its response to Interrogatory No. 3. (Ex. G). In addition, Con Edison NY has not relied solely on RCFC 33(d), but has provided a specific response to Interrogatory No. 3, and has invited the United States to make a more specific request, which it has not done. (Ex. H). Thus, the provisions of Rule 33(d) have been met.

Interrogatory No. 7

Interrogatory No. 7 provides as follows:

> **7. Identify any studies, analyses, forecasts, projections or other due diligence performed or prepared by any individual or entity in connection with the Lease Transaction, including the individuals or entities that performed such study or analysis, and all documents that mentions, describes or evidences such study or analysis.**

Interrogatory No. 7 is extremely broad and requests all "studies, analyses, forecasts, projections or other due diligence performed or prepared by any individual or entity in connection with the Lease Transaction." It also requests "all documents that mention, describe, or evidence such studies or analysis." Thus, Interrogatory No. 7 does not ask a specific question, but rather is a document request. This Interrogatory would encompass virtually every document leading up to the consummation of the lease with EZH, since the overwhelming majority of such documents would reflect the "due diligence" process. In the face of such a broadly worded interrogatory, Con Edison NY is entitled to rely on Rule 33(d). *See United States v. Rachel*, 289 F. Supp. 688, 693 (D. Md. 2003).

In fact, this is *exactly* the type of request for which Rule 33(d) was implemented:

> Rule 33(d) was intended to be used in the situation where an interrogatory makes broad inquiries and numerous documents must be consulted to ascertain facts, such as identities, quantities, data, action, results, etc.

*S.E.C v. Elfindepan*, 206 F.R.D. at 577.

Since Interrogatory No. 7 does not ask a specific question, but instead asks for a broad category of documents, Con Edison NY responded by providing the documents which had been requested. This was an appropriate response to a broad request for documents. *Id.*

In response to Interrogatory No. 7, Con Edison NY also stated that the reports of its outside advisors (referenced in response to Interrogatory No. 1) had been provided as part of the Rule 26(a) disclosures. Thus, Con Edison NY has identified the "studies and analyses" it relied on. The United States has not previously indicated that it has been unable to identify the reports provided by these advisors.

Interrogatory No. 12

Interrogatory No. 12 provides as follows:

> **12. If Plaintiff executed a tax indemnity agreement, set forth the terms of each such agreement, explaining the reasons for entering the agreement.**

Con Edison NY does not understand the reference to Interrogatory No. 12, as Con Edison NY has never referenced RCFC 33(d) with respect to Interrogatory No. 12. Con Edison NY, however, has identified the tax indemnity agreement itself as responsive to this request.

Interrogatory No. 14

Interrogatory No. 14 provides as follows:

> **14. Identify all outside consultants you communicated with to locate potential international energy infrastructure investment opportunities (including energy facilities), including in your response the opportunities that were presented to you and all documents that you reviewed or were provided in connection therewith.**

Con Edison NY has identified the consultants it retained for purposes of locating both leasing and non-leasing international investments. Thus, it has provided a specific response to Interrogatory No. 14.

As stated above in reference to the discussion regarding Interrogatory No. 14, Con Edison NY believes that Interrogatory No. 14 is overbroad to the extent it requires information and production of all documents concerning non-leasing investments not at issue in this case. Rule 33(d) was intended to be used in response to such broad requests. *S.E.C. v. Elfindepan*, 206 F.R.D. at 577.

Con Edison NY has, however, identified its consultants for these non-leasing investments and has directed the United States to specific documents regarding the non-leasing investments it reviewed. See Exs. H, I. These documents identify some of the transactions reviewed by CED. As described above, Con Edison NY has requested that the United States narrow its requests, but the United States has declined to do so. It is difficult to imagine how *all non-leasing* transactions which CED did not actually complete could provide relevant information regarding the EZH lease. To the extent that this information is considered relevant, however, Con Edison NY requests that Interrogatory No. 14 be limited in scope from a broad request for "all" documents over an unlimited time span.

To the extent Interrogatory No. 14 applies to leasing investments, it is substantially overlapping with Interrogatory No. 7, as well as No. 15, since all three relate to communications about leasing investments. As described above, a large portion of the documents which Con Edison NY has produced would be responsive to Interrogatory No. 7, as well as Nos. 14 and 15, since Interrogatories Nos. 7 and 14 request "*all* documents." This would further complicate any attempt to identify all specific documents which relate to each Interrogatory, and would make any such attempt extremely burdensome. Rule 33(d) was intended to be used for such "broad inquiries." *S.E.C. v. Elfindepan*, 206 F.R.D. at 577.

## CONCLUSION

Con Edison NY respectfully requests that the Second Motion to Compel be denied.

Dated: April 27, 2007

/s/ Thomas C. Durham
Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff

CERTIFICATE OF SERVICE

I, Thomas C. Durham, hereby certify that on this 27th day of April, 2007, I electronically filed the foregoing Plaintiff's Memorandum in Response to Defendant's Second Motion to Compel using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF system, including counsel for the United States of America identified below:

David N. Geier
U.S. Department of Justice
Tax Division, Room 7919
555 Fourth Street, N.W.
Washington, D.C. 20001

/s/ Thomas C. Durham

Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,** | ) | |
| **Plaintiff,** | ) | **No. 06-305 T** |
| **v.** | ) | **Judge Marian Blank Horn** |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**DECLARATION OF THOMAS C. DURHAM IN SUPPORT OF PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S SECOND MOTION TO COMPEL**

I, Thomas C. Durham, hereby declare and certify pursuant to 28 U.S.C. § 1746 as follows:

1. I am a member of the bar of the Court of Federal Claims and the Attorney of Record for Consolidated Edison Company of New York, Inc. ("Con Edison NY") in the above-captioned proceeding. I submit this Declaration in Support of Plaintiff's Memorandum in Opposition to Defendant's Second Motion to Compel.

2. I am familiar with the documents produced by the Plaintiff in the above-captioned case, as well as the documents produced by the Plaintiff to the Internal Revenue Service ("IRS") during the IRS's audit of the Plaintiff's lease investment with N.V. Electriciteitsbedrijf Zuid-Holland ("EZH") in 1997, the proper tax treatment of which is at issue in this proceeding.

3. A true and correct copy of certain materials prepared by Consolidated Edison Development, Inc. regarding leasing dated October 27 and October 29, 1997, are attached hereto as Exhibit A. (Page 1)

4. A true and correct copy of "Lease Screening Criteria," dated July 21, 1997, is attached hereto as Exhibit B. (Page 8)

5. A true and correct copy of Plaintiff's Responses to United States' First Set of Interrogatories, dated November 2, 2006, is attached hereto as Exhibit C. (Page 10)

6. A true and correct copy of Plaintiff's First Supplement to Responses to United States' First Set of Interrogatories, dated December 13, 2006, is attached hereto as Exhibit D. (Page 33)

7. A true and correct copy of Plaintiff's Second Supplement to Responses to United States' First Set of Interrogatories, dated January 2, 2007, is attached hereto as Exhibit E. (Page 39)

8. A true and correct copy of Plaintiff's Third Supplement to Responses to United States' First Set of Interrogatories, dated March 15, 2007, is attached hereto as Exhibit F. (Page 69)

9. A true and correct copy of a letter from Consolidated Edison Development, Inc. to N.V. Electriciteitsbedrijf Zuid-Holland, dated October 21, 1997, is attached hereto as Exhibit G. (Page 74)

10. A true and correct copy of a letter from Thomas C. Durham to David N. Geier, dated December 21, 2006, is attached hereto as Exhibit H. (Page 81)

11. A true and correct copy of a document regarding International Energy Partners, Inc. is attached hereto as Exhibit I. (Page 90)

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: April 27, 2007

/s/ Thomas C. Durham
Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff

CERTIFICATE OF SERVICE

I, Thomas C. Durham, hereby certify that on this 27th day of April, 2007, I electronically filed the foregoing Declaration of Thomas C. Durham in Support of Plaintiff's Memorandum in Opposition to Defendant's Second Motion to Compel using the CM/ECF system, which will send notification of such filing to counsel of record in this matter who are registered on the CM/ECF system, including counsel for the United States of America identified below:

David N. Geier
U.S. Department of Justice
Tax Division, Room 7919
555 Fourth Street, N.W.
Washington, D.C. 20001

/s/ Thomas C. Durham
Thomas C. Durham
MAYER, BROWN, ROWE & MAW LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 701-7216
Fax: (312) 706-9187
tdurham@mayerbrownrowe.com

Attorney for Plaintiff