# EXHIBIT A

Date: October 27, 1997

To: Mary Jane McCartney
Joan Freilich
Paul Kinkel

From: Brian DePlautt

Re: Leasing Update
EZH Transaction

Attached please find a copy of the Investment Recommendation and Board of Directors resolution covering the investment in the EZH RoCa3 Project.

This package is being sent to you in preparation for the CEDI Board of Directors meeting scheduled for October 29, 1997.

Please contact me if there are any questions or problems. Thank you.

cc: Kevin Burke
Peter Irwin
Chuck Muoio

ConEdison*Development*

# NETHERLANDS

# Investment Recommendation

## Investment in a leasehold interest in the EZH RoCa3 Power Plant

October 29, 1997

CE 003365

## 1. Introduction

The project consists of the acquisition of a $150mm undivided leasehold interest, and the subsequent leaseback of a portion of that leasehold interest, in a portion of the recently constructed n.v. Electriciteitsbedrijf Zuid-Holland ("EZH") RoCa3 power station (the "Plant") located near Berkel, in the southern portion of The Netherlands near the city of Rotterdam.

The RoCa3 station under consideration is a one unit gas fired, combined cycle power plant which utilizes a General Electric PG 9171-E combustion turbine, an ABB steam turbine, and a Stork Ketels heat recovery steam generator and CO2 boiler. The plant achieved commercial operation in June of 1996 and has a net electrical capacity of 220 MW, a thermal capacity equivalent to 200 MW and a CO2 production capacity of 7kg/s. The Plant has a net cost of between $250mm and $300mm.

The project will be structured as a Section 467 triple net-lease "lease-leaseback" of an undivided interest in the Plant. Under the contemplated transaction Consolidated Edison Development, Inc, or an affiliate (together "CEDI") would purchase a leasehold interest in the Plant for 44 years and then lease the leasehold interest back to EZH for 20 years. At the end of this 20 year lease EZH would have the right to purchase the Plant at a pre-agreed price. If EZH did not purchase the Plant at that time, CEDI would then have the right to "put" a lease back to EZH, in effect, forcing EZH to re-lease the Plant for an additional 17 years. At the end of this "put" renewal lease CEDI could either lease the plant to a third party for 7 years or put the plant into storage.

The obligations of EZH to make payments for CEDI's benefit under the various agreements will be secured by combinations of: (a) letters of credit and (b) trust accounts containing sufficient US Treasury Securities to defease the outstanding obligations. The obligations of EZH to make payments for the lender banks benefit under the various agreements will be secured by the pledge of bank deposits containing sufficient funds to defease the outstanding debt obligations.

CEDI will participate in the transaction as an investor in the undivided leasehold interest. It is anticipated that the equity investment required of CEDI to effect control of the $150mm leasehold interest will be $43mm +/(-) 10%. Banc One Leasing Corporation ("BOLC") will, concurrent with the CEDI negotiation, be negotiating to obtain an undivided interest in the Plant with a value up to $150mm. The CEDI investment in the RoCa3 facility is anticipated to yield a minimum of 12% during the initial 20 year term of the sublease. Additional information is contained in the Briefing Memorandum dated 10-23-97 which is incorporated herein by reference.

## 2. Proposed Investment And Recommendation

CEDI recommends that its Board approve the negotiation of investment documents and the subsequent investment by CEDI, or an affiliate of CEDI, for the purchase of an undivided leasehold interest in the EZH RoCa3 Power Plant with a value of $150mm, such approval authorizing CEDI to invest or commit to invest an amount not to exceed $US 47.4 million (the "Total Investment") as further described below.

| | $US mm |
|---|---|
| Anticipated direct equity investment: | 38.923 |
| Anticipated transaction fee | 4.125 |
| Anticipated investment | 43.048 |
| Contingent additional direct investment to accommodate potential changes in the transaction: | 4.300 |
| Total Investment | 47.348. |

## 3. Conditions to Board approval:

a. CEDI is seeking the above authorization from its Board contingent upon the base case proforma indicating that the Total Investment of CEDI will have an after tax yield of between 10% and 12%.
b. The total amount invested and committed to the Project shall not exceed $47.4 million and the investment and commitment shall, after taking account of defeasance structures, have the economic result of being non recourse to CEDI. Should additional direct investment be required by the lenders for the permanent financing, which would cause CEDI's aggregate direct investment to exceed $US 47.3 million, CEDI will be required to seek separate Board approval.
c. The project will utilize acceptable technology for the plant. A satisfactory Engineering report regarding the condition of the plant shall be required in order for CEDI to close on the Project.
d. The project will utilize satisfactory environmental analysis in determining the potential environmental liability that may accrue as a result of any investment in the plant. A satisfactory Environmental report regarding the condition of the plant shall be required in order for CEDI to close on the plant.
e. CEDI will **not** register for political risk insurance for its equity investment with the Overseas Private Investment Corporation ("OPIC"), or with the Multilateral Investment Guarantee Agency ("MIGA").
f. CEDI shall obtain appropriate and industry standard legal and tax opinions regarding the enforceability of the various leasing and related agreements contemplated in the transaction.

## 4. Proposed Board of Directors Resolution

**The Board of Directors of**

**Consolidated Edison Development, Inc.**

Whereas, Consolidated Edison Development, Inc. or a wholly owned subsidiary (together "CEDI") has under consideration the investment in a project to (i) acquire an undivided leasehold interest (or the undivided facility interest), in the RoCa3 Power Station, a gas fired combined cycle electric, thermal and CO2 generation plant located in the southern portion of the Netherlands (the "Plant"), currenty owned by n.v. Elektricteitsbedrijf Zuid-Holland ("EZH"), and (ii) the subsequent lease-back of the Plant to EZH (the "Project").

Whereas, the Board of Directors of CEDI has received detailed briefings and written materials on the Project from CEDI's management including memos, briefings or materials on September 25, 1997 and October 23, 1997 which memos, briefings and materials included information on the facilities, potential framework for the structure of the contemplated transaction, the power market in the Netherlands, financing, environmental matters and other issues;

Now therefore, after considering the memos, briefings and materials, the Board of Directors of CEDI adopts the following resolution by unanimous written consent, as permitted by the New York Business Corporation Law and CEDI's By-laws.

"Resolved that either CEDI or a wholly owned subsidiary, is hereby authorized to participate and invest in the Project and the officers of CEDI are hereby authorized to take all actions, in the opinion of the officer taking the action, that may be necessary or appropriate, including, without limitation, arranging for the engagement of advisors, commitments for investments, the making of investments up to the Total Investment and the negotiation of any documents as may be necessary, to effectuate the investment and participation in the Project on the following conditions:

1. The total amount invested and committed to the Project shall not exceed $47.4 million and that the investment and commitment shall, after taking account of defeasance structures, have the economic result of being non recourse to CEDI; and

2. Based on the economic model developed for the project, the Project's yield on investment to CEDI, after United States taxes, is reasonably estimated, in the opinion of the management of CEDI, to be not less than 10%.

**CE 003368**

Dated: October 29, 1997

The Board of Directors of CEDI

____________________________
Mary Jane McCartney

____________________________
Joan Freilich

____________________________
Paul Kinkel

# EXHIBIT B

# Gramercy Development, Inc.

## Lease Screening Criteria

| | | | |
|---|---|---|---|
| (a) | Equity size: | (i) | $30 mm (+/- 20%) |
| (b) | Asset type: | (i) | Electric power plant |
| | | (ii) | Electric, steam, gas or water treatment, transmission or distribution facilities |
| (c) | Structure: | (i) | Pickle — cross-border sale/leaseback |
| | | (ii) | Section 178 leasehold — leasing the leasehold interest (Lease In-Lease Out); some risk |
| | Overseas Foreign Sales Corp | (iii) | OFSC |
| | | (iv) | High tech lease |
| (d) | Region/country: | (i) | Europe |
| | | (ii) | Australia |
| | | (iii) | United States |
| (e) | Lessee benefit: | (i) | 4.0%-5.0% |
| (f) | After tax MISF: multiple investment sinking fund | (i) | 9.0% - 11.0% |
| (g) | Deal Counsel: | (i) | Hunton & Williams |
| | | (ii) | Sherman & Sterling |
| (h) | Deal papers: | (i) | Existing from a prior deal |
| | | (ii) | New, but negotiated in conjunction with an experienced co-investor |
| (i) | Credit support: | (i) | L/C |
| | | (ii) | A+ rated obligor |

7/21/97

Joan: needs write-up on leasing concepts

# EXHIBIT C

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES, | ) | |
| Plaintiff, | ) | Case No.: 06-305 T |
| v. | ) | Hon. Marian Blank Horn |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSES TO**
**UNITED STATES' FIRST SET OF INTERROGATORIES**

Pursuant to Rule of Court of Federal Claims ("RCFC") 33, Plaintiff, Consolidated Edison Company of New York, Inc. & Subsidiaries ("Con Edison"), provides the following responses to the United States' First Set of Interrogatories, subject to the objections and limitations specified.

Plaintiff is continuing to review the matters subject to this proceeding and reserves the right to supplement and/or amend its responses as necessary.

**GENERAL OBJECTIONS**

1. Con Edison objects to the United States' First Set of Interrogatories to the extent that the Interrogatories call for the disclosure of information that is subject to any claim of privilege or protection or that was prepared in anticipation of litigation. This includes without limitation, the attorney-client privilege or the work-product protection. The inadvertent disclosure by Con Edison of any information protected by the attorney-client privilege, the work-product protection or any other privilege shall not constitute a waiver of the applicable privilege or protection as to that information or any other related information.

2. Con Edison objects to the United States' First Set of Interrogatories to the extent that the United States purports to impose any requirement or discovery obligation other than or beyond those set forth in the RCFC or other applicable rules.

3. Con Edison objects to the United States' First Set of Interrogatories to the extent that the Interrogatories call for information or documents already known to be in the United States' possession.

4. Con Edison objects to the United States' First Set of Interrogatories to the extent that the Interrogatories seek immaterial and/or irrelevant information. By providing answers or producing documents, Con Edison does not concede that the information therein is material and/or relevant to any claims or defenses, or even that such information is reasonably calculated to lead to the discovery of admissible evidence.

5. By providing answers or producing documents in response to the United States' First Set of Interrogatories, Con Edison does not waive any of its objections and expressly reserves its right to object to the admissibility of the information therein.

6. Con Edison objects to the United States' Definitions in its First Set of Interrogatories to the extent that the Definitions define words to have something other than their ordinary meaning or employ grammar, syntax, and usage different from ordinary English grammar, syntax, and usage. Con Edison will not speculate as to the meaning of vague language within the First Set of Interrogatories and will assume that the United States has written the questions they intend to ask.

7. Con Edison objects to certain Interrogatories as overly broad, unduly burdensome, and seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Such Interrogatories are specifically identified.

Con Edison hereby incorporates each of the foregoing General Objections into each of the following responses to the United States' First Set of Interrogatories, and provides each response subject to and without waiving these General Objections.

**RESPONSES TO INTERROGATORIES**

**INTERROGATORY NO. 1:** Identify all individuals who have knowledge of the Lease Transaction, including each person's involvement in the promotion, recommendation, planning, approval, or implementation of any of the leases, and the nature and substance of the facts known (or believed to be known) by each person.

**RESPONSE:** Con Edison objects to Interrogatory No. 1 as overbroad and unduly burdensome. Con Edison is not aware of all individuals that have knowledge of the Lease Transaction. The Lease Transaction involved multiple entities, and Con Edison cannot determine all individuals at each entity who had knowledge regarding the Lease Transaction. Further, Con Edison cannot determine all of its current and former employees who had knowledge of the Lease Transaction.

Con Edison also objects to the Interrogatory as immaterial and irrelevant. The fact that an individual has knowledge of the Lease Transaction does not mean that the individual has discoverable information regarding the transaction.

Con Edison identified the current employees of Con Edison whom Con Edison may rely upon to support its claims and/or defenses in the instant proceeding in its Rule 26(a) disclosures. Subject to and without waiving its objections, Con Edison now identifies the nature of each of the identified individual's involvement and the general substance of the facts known by each.

Ms. Freilich was a member of the board of directors of Consolidated Edison Development, Inc. ("Con Edison Development") and together with other board members was

responsible for reviewing the decision to enter into the Lease Transaction. The facts known to Ms. Freilich relate to her review of the transaction.

Mr. DePlautt was a Vice President of Con Edison Development and was responsible for implementation of the Lease Transaction, through advisors retained by Con Edison Development. The facts known to Mr. DePlautt relate to the implementation and review of the Lease Transaction.

Mr. Burke was a Vice President of Consolidated Edison Co. of New York, Inc. and was responsible for developing Consolidated Edison Co. of New York, Inc.'s corporate goals for its unregulated subsidiaries. The facts known to Mr. Burke relate to Con Edison's plans to operate in a deregulated environment.

Mr. Muoio was President of Con Edison Development and was responsible for reviewing the decision to enter into the Lease Transaction. The facts known to Mr. Muoio relate to his review of the Lease Transaction.

Mr. Tai was a member of Consolidated Edison Co. of New York, Inc.'s Corporate Planning Department and has information relating to the deregulation of Con Edison's business and its entry into unregulated businesses.

Con Edison further identifies the following current employees of Con Edison who may have discoverable information regarding the Lease Transaction and the nature of each individual's involvement and the general substance of the facts known by each.

Andrew W. Scher
Consolidated Edison Co. of New York, Inc.
4 Irving Place
New York, New York 10003
Phone: 212-460-6209

Mr. Scher was the corporate secretary to Consolidated Edison Leasing, Inc. and provided legal advice in connection with the Lease Transaction. The facts known to Mr. Scher include legal advice provided to Con Edison, which is protected by the attorney-client privilege.

Mary Jane McCartney
Consolidated Edison Co. of New York, Inc.
4 Irving Place
New York, New York 10003
Phone: 212-460-6500

Ms. McCartney was a member of the board of directors of Con Edison Development and together with other board members was responsible for reviewing the decision to enter into the Lease Transaction. The facts known to Ms. McCartney relate to her review of the Lease Transaction.

Harry Morrison
Phone: 845-223-3289

Mr. Morrison is retired. He was responsible for inspecting the RoCa3 Facility on behalf of Con Edison.

Peter Irwin
Consolidated Edison Co. of New York, Inc.
4 Irving Place
New York, New York 10003
Phone: 212-460-4757

Mr. Irwin was the corporate secretary of Con Edison Development. The facts known to Mr. Irwin relate to the review of the Lease Transaction.

Con Edison also identifies the following individuals associated with unrelated entities, retained as advisors by Con Edison, who may have discoverable information regarding the Lease Transaction and the nature of each individual's involvement and the general substance of the facts known by each. Except as otherwise stated below, Con Edison's most recent information

concerning the addresses of the individuals below appears on their reports, which have been included as part of Plaintiff's Rule 26(a) disclosure.

Robert Holtzman
Crestview Capital Advisors Corporation
7946 Sitio Redondo, Suite 200
Carlsbad, California 92009
Phone: 760-944-9994

Con Edison retained Mr. Holtzman, through Cornerstone Financial Advisors L.P., to provide advice regarding leasing transactions in general and the structure, economics, and implementation of the Lease Transaction. The facts known to Mr. Holtzman relate to the structure, economics, and implementation of the Lease Transaction.

Richard K. Ellsworth, George P. Renock, and Steven Liu of Deloitte & Touche LLP prepared a valuation of the RoCa3 Facility. Mr. Ellsworth's current address is:

Deloitte Financial Advisory Services
2 World Financial Center
New York, NY 10281
(212) 436-2067

Richard R. Radini, Vice President, Generation Services, and Gerald F. Foley, Luis C. Gonzalez, and Anthony DeCristofaro of Duke Energy & Services provided an engineering valuation of the RoCa3 Facility.

Aidan O'Mahony
Standard & Poor's
Garden House
16 Finsbury Circus
EC2M 7BP
London, England
Phone: 44 0 171 826 3800

Mr. O'Mahony provided an evaluation of the credit of South Holland Electric.

Aarnout M. Snouck Hurgronje
Credit Suisse Financial Products
One Cabot Square
E14 40J
London, England
Phone: 44 0 171 888 2000

Credit Suisse provided opinions regarding the commercially reasonable interest rate for certain of the interest bearing instruments included in the Operative Documents.

Andrew D. Harding
J&H Marsh & McLennan of Illinois, Inc.
500 West Monroe Street
Chicago, Illinois 60661
Phone: 312-627-6655

Mr. Harding performed insurance due diligence with respect to the RoCa3 Facility.

Hans Nieuwenheis and Peter van Kernebeek of Tauw Milieu bv provided a due diligence, safety, and health report concerning the RoCa3 Facility.

William E. Flowers
J.J. Stevenson III, Esq.
Shearman & Sterling
599 Lexington Avenue
New York, New York 10022
Phone: 212-848-4000

Shearman & Sterling provided legal advice with respect to the Lease Transaction. Mr. Flowers is no longer at Shearman & Sterling.

Ben Neuhausen
Arthur Andersen LLP
33 West Monroe Street
Chicago, Illinois 60606

James M. Dewey
Price Waterhouse LLP
One Mony Plaza
Syracuse, New York 13202

Mr. Heuhausen and Mr. Dewey reviewed the accounting implications of the Lease Transaction.

Bart Meesters
Ebel Magnin
Loeff Claeys Verbeke
Apollolan 15
P.O. Box 75088
1070 AB Amsterdam
The Netherlands
Phone: 31 20 57 41 200

Loeff Claeys Verbeke provided Con Edison with legal advice.

Thomas O. Verhoeven
Oppenhoff & Rädler
712 Fifth Avenue, 30th Floor
New York, New York 10019
Phone: 212-801-3410

Oppenhoff & Rädler provided Con Edison with legal advice.

As for third parties not retained as advisors by Con Edison, the Defendant's letter of October 13, 2006 contains a list of persons named in the Operative Documents and other relevant documents. We expect that the persons named in that letter may have information regarding their respective institution's role in the Lease Transaction, but since these persons are not employees or agents of Con Edison, Con Edison does not have complete information regarding their knowledge of the facts.

**INTERROGATORY NO. 2:** Identify all other LILO transactions or shelter transactions presented to, considered, reviewed or analyzed by the Plaintiff in 1996, 1997 or 1998, and identify all documents in connection with your consideration, review or analysis.

**RESPONSE:** Con Edison objects to Interrogatory No. 2 as overbroad and unduly burdensome. The United States defined "shelter transaction" as "any transaction … for which the possibility of, or potential for, a tax deduction or tax loss was either analyzed [sic] reviewed,

considered or discussed." *See* Definition E. This definition encompasses each and every transaction Con Edison considered during 1996 through 1998. The United States fails to account for the fact that any corporation, including Con Edison, routinely reviews and considers the possible federal, state, and local tax effects of all prospective transactions. Thus, the possibility that a particular transaction may produce a tax deduction or loss is a routine part of Con Edison's business analyses. It would be a tremendous burden for Con Edison to identify and produce documentation regarding each and every business transaction which the corporation or its subsidiaries considered during the three-year period identified.

Con Edison further objects to Interrogatory No. 2 as immaterial and irrelevant. A general survey of all the business transactions Con Edison considered during 1996 through 1998 is not relevant to the determination of the proper tax treatment of the Lease Transaction.

Subject to and without waiving its objections, Con Edison participated in a lease-in, lease-out transaction with Nuon Gasnetwerken II B.V. (the "NUON Transaction") on May 18, 1999. This was a leasing transaction involving multiple unrelated parties. It would be unduly burdensome for Con Edison to produce all documents associated with its consideration, review, and analysis of the NUON Transaction, particularly since it has no effect on the tax years before the court. Con Edison estimates that there are thousands of pages of documents regarding the NUON Transaction.

Further, an analysis of the NUON Transaction is not relevant to the determination of the proper tax treatment of the Lease Transaction. In addition, Con Edison has already produced extensive documentation of the NUON Transaction to the Internal Revenue Service in connection with its audit of Con Edison for the taxable years ending December 31, 1999 through and including December 31, 2001.

To the extent not identified in Plaintiff's Rule 26(a) disclosure, other lease-in, lease-out transactions considered by Con Edison will be identified in documents produced in response to the United States' First Request for Production. These transactions are not relevant to the determination of the proper tax treatment of the Lease Transaction.

**INTERROGATORY NO. 3:** Describe how the rent obligation and various option prices described in paragraphs 63, 64, 68 and 69 of the Complaint were negotiated, calculated and allocated.

**RESPONSE:** The terms of the Lease Transaction were negotiated to optimize the economic returns to each party. In particular, Con Edison negotiated the terms of the transaction to provide a yield for financial accounting purposes consistent with its investment objectives.

The parties' negotiations were constrained by factors such as the useful life of the property in question and the fair market value of the leasehold interest acquired by Con Edison. In negotiating the specific terms of the transaction, the parties utilized computer software which optimizes the economic return to each party, taking such constraints into account.

The terms of the Lease Transaction were also constrained by the requirements of section 467 of the Internal Revenue Code. The allocations of rental income and deductions for tax purposes were designed to comply with section 467.

**INTERROGATORY NO. 4:** Describe the risks, if any, as you understand them, to each of the Lease Transaction Participants for engaging the Lease Transaction, and explain each and every step that was taken to reduce or mitigate those risks and your assessment or analysis of your true exposure in the Lease Transaction.

**RESPONSE:** Con Edison notes that Interrogatory No. 4 requests that Con Edison "[d]escribe the risks" to the Lease Transaction Participants as Con Edison understands such

risks. Con Edison cannot be expected to provide a full account of the risks that each Lease Participant considered nor the steps taken by each to mitigate those risks. This response is based solely upon Con Edison's understanding and should be interpreted as such.

Subject to the above statement, Con Edison identifies the following risks which it encountered in the Lease Transaction:

**Residual Value Risk**. Con Edison is exposed to the risk (both positive and negative) of fluctuations in the value of the RoCa3 Facility after the Sublease Basic Term and the Sublease Renewal Term, if any. Con Edison took the following steps to partially mitigate this risk. First, the parties negotiated a Sublease Renewal Option which allows Con Edison to extend the term of the Sublease. This Renewal Option, however, is for less than the term of the Lease so it does not eliminate residual value risk.

Second, Con Edison undertook a due diligence review of the RoCa3 Facility, its management, and the Netherlands energy market in order to ensure, to the extent possible, that the facility was likely to maintain its value. As part of this review, Con Edison hired consultants (identified in response to Interrogatory 1) to review the plant and its operations. Con Edison's own employees also inspected the plant.

**Credit Risk**. Con Edison is subject to the risk that the other participants to the Lease Transaction (including but not limited to the Lease Participants as defined) will be unable to meet their obligations as they become due. In that event, Con Edison would also become subject to the risk that it would not be able to satisfy its obligations owed to Hollandsche.

As is customary in large financial transactions and in leveraged leasing transactions specifically, Con Edison has obtained collateral to partially mitigate its exposure to credit risk.

This collateral includes the Loan Deposit as set forth in the Sublease Deposit, Pledge, and Repledge Agreement.

**<u>Default Risk</u>**. Con Edison is subject to the risk that South Holland Electric will default on its obligations under the Sublease. This risk is partially mitigated by Con Edison's remedies under the Sublease, including but not limited to its ability to take possession of its interest in the Facility.

**<u>Political Risk</u>**. Con Edison was subject to the risks of operating in a foreign country. In order to partially mitigate this risk, Con Edison examined the political environment in the Netherlands before making its investment.

**<u>Operational Risk</u>**. Con Edison's interest in the property is subject to the risk of the property's operation. Con Edison partially mitigated this risk by including provisions in the Operative Documents regarding the maintenance, operations, and insurance regarding the property. Con Edison also partially mitigated these risks by conducting a due diligence review of the plant's operations.

**<u>Legal Risk, Including Tax Risk</u>**. Con Edison mitigated these risks by seeking opinions from qualified and reputable legal counsel.

Since the remaining Lease Participants are unrelated third parties, Con Edison is not able to provide a complete assessment of the risks faced by each of these parties or the steps these parties took to mitigate their respective risks. Without waiving its objection on this basis, Con Edison identifies the following risks which are apparent on the face of the Operative Documents.

**<u>Default Risk.</u>** South Holland Electric has incurred the risk that it would lose physical possession of the RoCa3 Facility if it defaults on its obligations under the Sublease or if Con Edison defaults on its obligations.

**Residual Value Risk.** South Holland Electric has incurred the risk that, at the Sublease Purchase Option date, the Sublease Purchase Option Price could exceed the fair market value of the RoCa3 Facility. This fact presents both positive and negative risk, in the sense that South Holland Electric can transfer physical possession of the RoCa3 Facility to Con Edison for the remaining portion of the Lease if the RoCa3 Facility has declined in value.

**Currency Risk.** South Holland Electric's obligations under the Lease are required to be paid in U.S. dollars. Since U.S. dollars are not South Holland Electric's functional currency, South Holland Electric is exposed to the possibility that currency fluctuations will significantly increase the cost of meeting its obligations. South Holland Electric has partially mitigated these risks by entering into the Loan Deposit but is also subject to credit risk with respect to the holder of the Loan Deposit.

**Credit Risk.** South Holland Electric is exposed to the risk that the other participants to the Lease Transaction (including but not limited to the Lease Participants) will not be able to meet their obligations under the Operative Documents as they become due.

Hollandsche is also exposed to credit risk. As a result of being exposed to credit risk, the risks faced by the other parties (including, but not limited to, default risk) also affect Hollandsche. As is customary in financial transactions, Hollandsche partially mitigated this risk by obtaining collateral.

**INTERROGATORY NO. 5:** State the basis for your contention that you expected a pre-tax economic profit of at least $60 million from the Lease Transaction and that the yield for accounting and financial reporting purposes would be in excess of 12%, including in your answer all due diligence you performed prior to reaching these conclusions and identifying all documents that supports [sic] or tends [sic] to support your contention.

**RESPONSE:** The relevant provisions of the Operative Documents provide that Con Edison will receive a pre-tax profit in excess of $60 million if South Holland Electric exercises the Sublease Purchase Option. The relevant provisions of the Operative Documents also provide that if South Holland Electric does not exercise the Sublease Purchase Option, and Con Edison chooses to exercise its Sublease Renewal Option, Con Edison will receive a pre-tax profit in excess of $101 million, not including any additional amounts it may receive after the end of the Sublease Renewal Option term and before the expiration of the Lease Term. These projections assume that the parties comply with their obligations as set forth in the Operative Documents.

Pursuant to the rules applicable to accounting for leveraged leases, the Lease Transaction was expected to produce a yield in excess of 12% for financial reporting purposes. Con Edison reviewed the rules relating to leveraged lease accounting with Arthur Andersen.

The due diligence performed in reaching these conclusions included a review of the terms of the Operative Documents, reviews of pricing runs regarding accounting for the Lease Transaction, and consultations with accountants.

The documents supporting Con Edison's position were produced as part of its Rule 26(a) disclosures on September 25, 2006, and were also included in Defendant's Rule 26(a) disclosure. Bates #US04788-4865 sets forth the calculations used by Con Edison for financial reporting purposes, as well as the projections for the Sublease Renewal Option. Bates #US04866-4909 sets forth the calculations for the Sublease Purchase Option.

**INTERROGATORY NO. 6:** Describe how the idea for the Lease Transaction came to the attention of the Plaintiff, including the source of the idea, any presentations that were made to or attended by Plaintiff or Plaintiff's representatives (including the names of individuals who were

present), and the identify of any outside tax and or [sic] business advisors who consulted with Plaintiff prior to entering into the Lease Transaction.

**RESPONSE:** As a result of the deregulation of its electric utility business, Con Edison requested, and the Public Service Commission granted, permission for Con Edison to make investments in unregulated subsidiaries. Con Edison expected that the unregulated subsidiaries would make profitable investments, taking advantage of Con Edison's expertise.

Con Edison Development developed a business plan to engage in the acquisition, development, and management of infrastructure on a world-wide basis. As part of this plan, Con Edison Development contacted Cornerstone Financial Advisors L.P. to seek assistance in locating, reviewing, and implementing leasing investments consistent with Con Edison Development's business plan. After consultations with Cornerstone concerning the structure and economics of leasing investments, Con Edison Development determined that an investment in the RoCa3 Facility would be consistent with its business plan.

Con Edison retained advisors to conduct due diligence before engaging in the Lease Transaction. These advisors are identified in the response to Interrogatory 1.

**INTERROGATORY NO. 7:** Identify any studies, analyses, forecasts, projections or other due diligence performed or prepared by any individual or entity in connection with the Lease Transaction, including the individuals or entities that performed each study or analysis, and all documents that mentions [sic], describes [sic] or evidences [sic] such study or analysis.

**RESPONSE:** The studies prepared by outside advisors are identified in response to Interrogatory 1 and have been provided as part of Plaintiff's Rule 26(a) disclosures or will be produced in response to the United States' First Request for Production, with the exception of legal opinions which are being withheld pursuant to the attorney-client privilege.

Con Edison also relied upon internal reports and memoranda, all of which have been provided as part of Plaintiff's Rule 26 disclosure.

Con Edison will produce, to the extent not previously produced in its Rule 26(a) disclosures and to the extent not privileged, the documents which mention, describe or evidence the aforementioned studies as part of its response to the United States' First Request for Production.

**INTERROGATORY NO. 8:** Describe how and why each Lease Transaction Participant was selected.

**RESPONSE:** Con Edison selected South Holland Electric due to the quality of the RoCa3 Facility, the Facility's relationship to Con Edison Development's business plan, and Con Edison's review of the operations of South Holland Electric and the Netherlands energy market.

Wilmington Trust Company is a Delaware banking corporation which is in the business of providing the type of trust services required under the terms of the Operative Documents.

Hollandsche is a financial institution which is engaged in the business of providing financial services and has experience in lending with respect to complex financial transactions such as the Lease Transaction.

**INTERROGATORY NO. 9:** Set forth with particularity the income and expenses generated to date and projected into the future in connection with the Lease Transaction, including in your response any items of income and expenses that you believe will result from the exercise of the lease renewal option, purchase option, or other options contained in the Lease Transaction and provide any factual or other support you reviewed or relied upon in reaching your conclusions.

**RESPONSE:** The requested information is set forth in the pricing runs produced in Plaintiff's Rule 26(a) disclosure and was also included in Defendant's Rule 26(a) disclosure. See response to Interrogatory No. 5.

**INTERROGATORY NO. 10:** For the years 1997 to the present, describe how Plaintiff reported the Lease Transaction for financial, regulatory and tax accounting, including in your answer the factual and legal basis for such treatment and a reconciliation you performed of the differences, if any.

**RESPONSE:** For financial accounting purposes, Con Edison reported the lease as a leveraged lease pursuant to the provisions of Statement of Financial Accounting Standards No. 13.

For tax purposes, Con Edison reported rental income, rental deductions, interest expense, and amortization of transaction expense based upon the accrual method of accounting, taking into account the relevant provisions of the Operative Documents and the provisions of section 467 of the Internal Revenue Code. The Lease Transaction is part of Con Edison's unregulated business, and therefore is generally not taken into account for regulatory purposes such as ratemaking.

**INTERROGATORY NO. 11:** Identify any foreign or domestic laws or regulations, contracts, agreements, or other restrictions that could possibly inhibit the exercise of any option contained in the Lease Transaction.

**RESPONSE:** Con Edison is not aware of any foreign or domestic laws or regulations, contracts, agreements, or other restrictions that could possibly inhibit the exercise of any option contained in the Lease Transaction.

**INTERROGATORY NO. 12:** If Plaintiff executed a tax indemnity agreement, set forth the terms of each such agreement, explaining the reasons for entering the agreement.

**RESPONSE:** A copy of the Tax Indemnity Agreement was provided as part of Plaintiff's Rule 26(a) disclosure. The Tax Indemnity Agreement was entered into to address the matters set forth therein. Plaintiff objects to this Interrogatory to the extent it seeks legal advice concerning the reasons for entering into the Tax Indemnity Agreement.

**INTERROGATORY NO. 13:** State the basis for your contention that, beginning in March 1993, the New York Public Service Commission took a number of steps to develop a competitive electric industry in the state of New York, setting forth all the steps and identify all documents upon which you relied in making this contention.

**RESPONSE:** The Public Service Commission's actions are a matter of public record. *See, e.g.*, *Energy Association of New York State v. Public Service Commission of the State of New York*, 174 P.U.R. 4th 406, 653 N.Y.S.2d 502 (1996). Documents relating to the deregulation of Con Edison's electric utility business were provided by Con Edison in its Rule 26(a) disclosures.

**INTERROGATORY NO. 14:** Identify all outside consultants you communicated with to locate potential international energy infrastructure investment opportunities (including energy facilities), including in your response the opportunities that were presented to you and all documents that you reviewed or were provided in connection therewith.

**RESPONSE:** Con Edison objects to Interrogatory No. 14 as overbroad and unduly burdensome. Con Edison communicated with numerous outside consultants to locate potential international energy infrastructure investments. It would be unduly burdensome to request that Con Edison produce all materials received from or provided to such consultants.

Con Edison further objects to the Interrogatory as immaterial and irrelevant. Con Edison's review of other international energy transactions is not relevant to the determination of the proper tax treatment of the Lease Transaction.

Without waiving its objection, Con Edison identifies Cornerstone Financial Advisors L.P. as the outside consultant with which it communicated regarding the Lease Transaction. Con Edison also had an agreement with International Energy Partners related to investment opportunities in infrastructure investments.

**INTERROGATORY NO. 15:** Identify all individuals and entities, including third parties and employees, officers and members of the Board of Directors of Plaintiff, with whom you communicated about the Lease Transaction prior to entering into the transaction, setting forth the contents of the communications and identify the documents mentioning, discussing, referring to or constituting the communications.

**RESPONSE:** Con Edison objects to Interrogatory No. 15 as overbroad and unduly burdensome. It is not possible for Con Edison to identify all individuals with whom it communicated or to set forth the contents of all such communications, many of which were of a routine administrative nature. The Lease Transaction was a business transaction and, as such, subject to normal business review procedures. Employees of unrelated entities were also involved in reviewing the Lease Transaction.

Con Edison further objects to the Interrogatory as immaterial and irrelevant. The routine business communications of Con Edison employees and the communications of third-parties of which Con Edison was not aware are not relevant to a determination of the proper tax treatment of the Lease Transaction.

Subject to and without waiving its objections, Con Edison states that it has disclosed relevant individuals of whom it is aware in response to Interrogatory No. 1. Subject to and without waiving its objections, relevant documents will be disclosed in response to the United States' First Request for Production.

**INTERROGATORY NO. 16:** State the basis for your decision to form a trust to enter into the Lease Transaction.

**RESPONSE:** The use of ownership trusts is a standard and customary practice in the leveraged leasing industry. Con Edison objects on the grounds of attorney-client privilege to the extent that this Interrogatory requests legal advice provided to Con Edison concerning the legal reasons for forming a trust.

Dated: November 2, 2006

As to Objections:

Thomas C. Durham

THOMAS C. DURHAM
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7216

DAVID F. ABBOTT
Mayer, Brown, Rowe & Maw LLP
1675 Broadway
New York, New York 10019-5820
Telephone: (212) 506-2642

NICOLE M. BIELAWSKI
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3452

**DECLARATION**

I, hereby declare, under penalties of perjury, that Plaintiff's foregoing Responses to the United States' First Set of Interrogatories are true and complete to the best of my knowledge.

Andrew Scher
Assistant General Counsel
Consolidated Edison Company of New York, Inc.

**CERTIFICATE OF SERVICE**

I, Thomas C. Durham, hereby certify that on this 2nd day of November, 2006, I caused the foregoing Plaintiff's Responses to the United States's First Set of Interrogatories to be served upon the United States of America by electronic email and overnight delivery, to the following:

David N. Geier
U.S. Department of Justice
Tax Division, Room 7919
555 Fourth Street, N.W.
Washington, D.C. 20001

THOMAS C. DURHAM
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7216

# EXHIBIT D

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC. & SUBSIDIARIES,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | ) | Case No.: 06-305 T<br><br>Hon. Marian Blank Horn |

**PLAINTIFF'S FIRST SUPPLEMENT TO RESPONSES TO UNITED STATES' FIRST SET OF INTERROGATORIES**

Pursuant to Rule of Court of Federal Claims ("RCFC") 33, Plaintiff, Consolidated Edison Company of New York, Inc. & Subsidiaries ("Con Edison"), provides the following supplement to its Responses to the United States' First Set of Interrogatories. This supplement is provided subject to the general objections and limitations set forth in Plaintiff's Responses to United States' First Set of Interrogatories.

Plaintiff is continuing to review the matters subject to this proceeding and reserves the right to supplement and/or amend its responses as necessary.

**FIRST SUPPLEMENTAL RESPONSE**

**REVISED INTERROGATORY NO. 2:** Identify all other LILO transactions or shelter transactions presented to, considered, reviewed or analyzed by the Plaintiff in 1996, 1997 or 1998, and identify all documents in connection with your consideration, review or analysis.

For the purpose of Revised Interrogatory No. 2, the term "shelter transaction" has been defined, pursuant to the United States' correspondence of November 8, 2006, as "certain listed transactions" identified on the attachment to such correspondence.

**RESPONSE:**

Con Edison objects to Interrogatory No. 2 as immaterial and irrelevant. Information regarding other business transactions Con Edison considered during 1996 through 1998 is not relevant to the determination of the proper tax treatment of the Lease Transaction. Con Edison further objects to Interrogatory No. 2 as overly broad and unduly burdensome. It is impossible for current representatives of Con Edison to certify under oath what transactions were "considered" or "reviewed" by any employee of the company approximately ten years ago.

Subject to and without waiving its objections, Con Edison has not participated in any other shelter transaction, as defined by the United States' correspondence of November 8, 2006, other than the NUON transaction previously identified in its response to Interrogatory No. 2.

Subject to and without waiving its objections, Con Edison limits the scope of Interrogatory No. 2 to transactions substantively evaluated and presented to the Board of Trustees of Con Edison (and Consolidated Edison, Inc. for 1998). Con Edison and Consolidated Edison, Inc. did not substantively evaluate and present to the Board of Trustees (or its equivalent at any subsidiary), during 1996 through 1998, any shelter transactions, as defined by the United States' correspondence of November 8, 2006, other than certain leasing transactions presented to Con Edison Development. Con Edison Development has produced all available Board of Director Minutes for 1996 through 1998 which discuss such transactions. Con Edison will supplement its response to Interrogatory No. 2 if any additional transactions are identified.

**INTERROGATORY NO. 16**: State the basis for your decision to form a trust to enter into the Lease Transaction.

**RESPONSE**:

Con Edison incorporates its original response to Interrogatory No. 16. Con Edison further objects to Interrogatory No. 16 on the basis that it assumes the decision to form a trust was Con Edison's decision. As stated in the original response to Interrogatory No. 16, the use of ownership trusts is standard and customary in leveraged leases. Furthermore, while Con Edison has no specific knowledge of South Holland Electric's reasons, if any, for preferring an ownership trust, Con Edison understands that lessees often prefer this structure.

Dated: December 13, 2006

Respectfully submitted by:

THOMAS C. DURHAM
Attorney of Record
Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 701-7216

By: Nicole M. Bielawski
NICOLE M. BIELAWSKI
1909 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3452

DAVID F. ABBOTT
Mayer, Brown, Rowe & Maw LLP
1675 Broadway
New York, New York 10019-5820
Telephone: (212) 506-2642

**DECLARATION**

I, hereby declare, under penalties of perjury, that Plaintiff's foregoing First Supplement to Responses to the United States' First Set of Interrogatories is true and complete to the best of my knowledge.

Andrew Scher
Assistant General Counsel
Consolidated Edison Company of New York, Inc.

**CERTIFICATE OF SERVICE**

I, Nicole M. Bielawski, hereby certify that on this 13th day of December, 2006, I caused the foregoing Plaintiff's First Supplement to Responses to the United States' First Set of Interrogatories to be served upon the United States of America by courier, to the following:

David N. Geier
U.S. Department of Justice
Tax Division, Room 7919
555 Fourth Street, N.W.
Washington, D.C. 20001

Nicole M. Bielawski

NICOLE M. BIELAWSKI
Mayer, Brown, Rowe & Maw LLP
1909 K Street, N.W.
Washington, D.C. 20006-1101
Telephone: (202) 263-3452