**No. 06-305 T**
**(Judge Marian Blank Horn)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CONSOLIDATED EDISON COMPANY**
**OF NEW YORK, INC. & SUBSIDIARIES**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL, SECOND MOTION TO COMPEL AND MOTION FOR ISSUANCE OF LETTERS OF REQUEST**

The United States, by and through undersigned counsel, hereby submits this Reply in support of its Motion to Compel, Second Motion to Compel and Motion for Issuance of Letters of Request.

**Procedural Background**

On April 3, 2007, the United States filed a Motion to Compel seeking a determination that Plaintiff had waived privileges. On April 4, 2007, the United States filed its Second Motion to Compel. This motion sought full and complete responses to interrogatories and request for production. On April 5, 2007, the United States filed a Motion for Issuance of Letters of

Request. On April 27, 2007, Plaintiff filed responses to each of the motions. For the sake of brevity, the United States submits this single reply in support of these motions.

**Argument**

**I. Motion to Compel (Privilege)**

Plaintiff now concedes that certain documents produced to the IRS during audit "waived the attorney-client privilege over all documents concerning the same subject matter."[1] (Resp. at 1). This waiver, according to Plaintiff's Response and the privilege log attached thereto (Resp., Ex. A), extends to all documents and subject matters claimed privileged but nevertheless produced during discovery. Plaintiff also concedes that no privileges attach to the Sherman & Sterling final LILO Opinion (Resp., Ex. B). (Resp. at 4). Up to this point, Plaintiff had maintained that this LILO Opinion had not been disclosed to third parties. Plaintiff now acknowledges that a copy was provided to its accountant, Mitchell and Titus,[2] and accountant/advisor, Pricewaterhouse Coopers.[3]

---

[1] For the reasons explained in our opening brief, Plaintiff's various productions made in response to discovery requests were not inadvertent. As a result, Plaintiff has waived privileges as to the subject matters discussed in those documents.

[2] It is interesting that Plaintiff discovered this fact only after Mitchell and Titus agreed to produce documents in response to the United States' subpoena.

[3] Plaintiff's claim that Defendant was not willing to try to resolve this without Court intervention is simply not true. (*See* Motion to Compel, Exs. B-1 through B-7). Defendant made numerous attempts before filing this Motion, but as late as a March 12, 2007, communication, Plaintiff was not willing to come off of its position that there was no subject matter waiver as to any documents.

Given Plaintiff's concessions, it contends that there are only three documents at issue: two legal opinions written by Shearman & Sterling and a single in-house memorandum prepared by Andrew Scher.[4]

First, with regard to the Scher memorandum, Plaintiff waived work-product by failing to timely assert it. *Carey-Canada, Inc. v. Aetna Cas. & Sur. Co.*, 118 F.R.D. 242, 248 (D.D.C. 1987) (party that failed to initially raise work product could not do so to protect the document when its claim of attorney client privilege failed). Plaintiff only raised work product after the Government informed it that they had waived the attorney client privilege. (*Compare* Motion to Compel, Ex. A-1 *with* A-2).

Second, as to the merits, Plaintiff cites cases that do not support its position. For example, Plaintiff relies on *United States v. Adlman*, 68 F.3d 1495, 1502 (2d Cir. 1995) to argue its position that the Shearman & Sterling opinions constitute work product. (Resp. at 11). In fact, the Circuit Court stated "[o]ur vacating the district court's ruling *should not* be understood to imply that work-product protection is applicable – only that the particular reason for denying it was invalid." *Id.* (emphasis supplied). Similarly, Plaintiff ignores that it is relying solely on the arguments of counsel, rather than affidavits such as those submitted in the cases to support their burden of explaining why the documents were privileged. *See id.* at 1498 ("The other Sequa affiants corroborate Adlman's version of the events, each attesting to Sequa's reliance on Adlman for legal advice"); *United States v. Roxworthy*, 457 F.3d 590, 592 (6th Cir. 2006)

---

[4] Contrary to Plaintiff's argument, the United States has not conceded that two documents not discussed in its Motion to Compel "relate to a different subject matter" and are therefore not discoverable. (Resp. at 1, n.1). The United States cannot evaluate the merits of Plaintiff's privilege claim as to these unseen documents. If they discuss the subject matters on which Plaintiff has waived privileges, they should be produced.

("Roxworthy introduced additional affidavits clarifying that the memoranda . . . were created because Yum anticipated litigation . . . ."). In contrast, Plaintiff relies solely upon unsupported argument of counsel and therefore has not met its burden. *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) ("This burden can be met only by an evidentiary showing based on competent evidence . . . and cannot be discharged by mere conclusory or *ipse dixit* assertions.) (citations omitted).

In fact, the two Shearman & Sterling opinions remaining at issue were utilized in generating the final opinion, which is merely a formalization of that advice. (*See* Resp. at 4 and Resp., Ex. B at 5). Further, the opinions at issue were provided to Plaintiff, and were prepared for business purposes rather than in anticipation of litigation. As demonstrated by Plaintiff's own documents, the issues discussed therein were not only important for gaining board approval of the transaction (*See* Ex. 1 at 3 to Sergi Decl.), but were in fact a requirement. (*See* 2nd Resp., Ex. A at ¶ 3.f). Moreover, as admitted by Plaintiff in its Response, at page 4, the final opinion was utilized in preparing Plaintiff's tax returns.[5] Further, a review of the transaction documents reveals that obtaining tax opinions from counsel, acceptable to Plaintiff, was a contractual condition precedent to the closing of the transaction. (Ex. 2 to Sergi Decl., §§ 3(b)(vii), 6(vi)). Thus, the documents are not entitled to work product protection. *See First Pacific Networks,*

[5] As discussed thoroughly in the United States' initial Motion, contrary to Plaintiff's conclusory assertions, these opinions were put at issue in Complaint and in their interrogatory responses. So Plaintiff's claim that it has not used the opinions as a "sword and shield" is incorrect, especially in light of the fact that Plaintiff has chosen now to concede that there has been a waiver on the final opinion, which was based on the tax opinion and tax change letter, but refuses to produce the other opinion letters, which could contain information refuting that contained in the final opinion. (Resp. at 16). *See In re EchoStar Communications Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 2006) (noting a party should not be permitted to disclose favorable advice while asserting work product to shield unfavorable advice).

*Inc. v. Atlantic Mut. Ins. Co.*, 163 F.R.D. 574, 582 (N.D. Cal. 1995) (opinion letters produced as a result of a contractual obligation are not produced "in anticipation of litigation"). At the very least, the Court should examine these documents in camera to determine if the work product privilege applies, and to what portions, if any, it applies.

**II. Second Motion to Compel (Interrogatories and Documents)**

Since receiving Plaintiff's responses, the United States has repeatedly asked for additional information about other leasing transactions because it believes the information provided was not complete. Indeed, the day before Plaintiff filed its Response to our Motion to Compel, the United States received approximately 5,000 pages of information from Plaintiff.[6] Plaintiff audaciously states in its Response that "[t]he United States' claim that Con Edison NY is withholding information regarding other leasing transactions is puzzling. . ." (2nd Resp. at 7).

Nevertheless, it appears that Plaintiff has still not come clean. While Plaintiff claims that it "has provided the United States with all responsive documents relating to the EZH transaction, other than documents which [it] has identified as privileged . . ." (2nd Resp. at 2), it concedes in a brief filed the very same day, that it has additional documents "that were not disclosed to either the IRS or the department of justice and that [it] *will* produce in unredacted form." (Resp. at 1) (emphasis supplied).[7]

---

[6]Although Plaintiff has stated that it was no longer asserting a privilege with respect to the documents related to the other transactions it considered (Resp. at 8), several of the documents relating to these transactions contain redactions.

[7] Plaintiff makes no attempt to explain, why these documents were not included in the earlier document productions or privilege logs.

As explained in our Second Motion, the information we continue to seek is relevant in determining both the objective and subjective prongs of the economic substance test.

Plaintiff's Second Response, at page 5, chastises the government for issuing third-party subpoenas for information that Plaintiff earlier failed to produce in discovery. According to Plaintiff's view of party discovery, the Government should not pursue alternatives when a party fails to diligently respond to discovery. If Plaintiff had responsive information in its possession–in this case the lease screening criteria–it should have been produced in November 2006. When Plaintiff delivers responsive documents long after they were due, and on the eve of filing its response to a Motion to Compel, it is in no position to complain about the Government's interim third-party discovery efforts.

Plaintiff's Second Response, at page 8, states, "with respect to the NUON transaction, this transaction was completed in 1999" and therefore was not responsive to Interrogatory No. 2. Plaintiff misstates the interrogatory, which requests information about transactions that were "considered, reviewed or analyzed by the Plaintiff in 1996, 1997 or 1998." (*See* 2nd Motion to Compel, Ex. A-1). As demonstrated by Plaintiff's own documents, the transaction was "considered, reviewed and analyzed" in 1998 and "completed" in January 1999. (*See, e.g.*, Ex. 3 to Sergi Decl.). The NUON transaction is responsive.[8]

Plaintiff's Second Response, at page 9, asserts that Interrogatory No. 3, seeking information about the negotiation, calculation, and allocation of specific rent obligations and

[8] This is not the first time Plaintiff has attempted to reword an interrogatory to avoid production. *See, e.g.,* Second Response at 13 ("Tax Indemnity Agreement") (in which Plaintiff did not state its reasons for entering into an agreement although requested to do so) and 17 ("Reasons for a Trust") (same).

various options (specifically referenced in the Complaint), "is a broad, open-ended question which calls for a narrative response." This request is nothing more than an effort to learn the basis for Plaintiff's own allegations made in its Complaint.[9]

Plaintiff's Second Response, at page 14, asserts that the United States intended to limit Interrogatory No. 14, which requests information about consultants utilized to "locate potential international energy infrastructures" (described in Plaintiff's Complaint), to only LILO shelter transactions. In making this argument, Plaintiff is less than candid with the Court. Plaintiff's counsel contacted Government counsel, who clarified in a phone conversation and an email dated April 12, 2007 that, in accordance with the express terms of the interrogatory, the request was not limited to LILO transactions. (Ex. 4 to Sergi Decl.). Plaintiff also claims that this request is not relevant and is overbroad. However, the interrogatory tracks the language of Plaintiff's Complaint (*Id*. (citing Comp. ¶ 39)),[10] and Plaintiff alleges that it stopped pursuing international energy investments by early 2000. (Comp. ¶ 43). Having alleged these matters, there is no basis for Plaintiff's argument that "the United States has not made clear why this

---

[9] Moreover, Plaintiff attempts to refute the government's assertion that Plaintiff's response to this interrogatory was inconsistent. Plaintiff argues that the terms "bid" and "negotiated" are synonyms. (2nd Resp. at 11). While refuted by the dictionary, Plaintiff's self-serving argument is refuted by its own documents which explain the difference in the context of this transaction. (Ex. 5 to Sergi Decl.). Moreover, despite its after-the-fact characterizations of how this transaction came to be, Plaintiff's documents clarify that this transaction was neither a negotiation nor a bid, but rather the terms and conditions were "pre-defined." (Ex. 6 at § II.C.3 to Sergi Decl.).

[10] In fact, in its Response regarding privileges filed on the same date, Plaintiff reiterated the importance of this information. Plaintiff explained "[it] explored varied investments in energy, infrastructure, and leasing suitable to [diversify its energy business into key domestic and international energy markets.]. The leasing transaction at issue . . . is one of many international transactions [it] considered and one of several it pursued." (Resp. at 2).

information regarding all international non-leasing transactions is relevant to the taxation of the EZH lease." (2nd Resp. at 17).

**III. Motion for Issuance of Letters of Requests**

Plaintiff objects to the United States' motion on the basis on delay. Before letters of request can be issued, a movant should try to obtain the evidence from domestic sources. *See Leasco Data Processing Equipment Corp. v. Maxwell*, 63 F.R.D. 94, 96 (S.D.N.Y. 1973). The Government requested this information from the Plaintiff and third parties prior to filing its motion. Plaintiff moved to quash these subpoenas. Several third parties, after conducting a search of their records in the United States, informed the government that it would be necessary for the Government to seek the information from their respective international counterparts.[11] The United States then proceeded promptly with its motion.

<u>Conclusion</u>

For the reasons expressed above, this court should enter an Order as follows:

1. Plaintiff has waived all privileges with respect to the documents identified in its Motion to Compel;

2. Plaintiff's production of documents constitutes a subject matter waiver;

3. Plaintiff's must fully answer the Interrogatory Nos. 2, 3, 7, 12, 14, and 16, and Document Request Nos. 1 and 2; and

4. Whatever additional relief the Court deems appropriate.

[11]In fact, through these communications with these third-parties, Defendant was able to ascertain additional locations where responsive documents are held just shortly before filing the Motion for Issuance of Letters of Request.

Respectfully submitted,

s/ David N. Geier

DAVID N. GEIER
Attorney of Record
U.S. Department of Justice, Tax Division
Post Office Box 26
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-3448
Facsimile: (202) 307-0054

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section
JOSEPH A. SERGI
JAMES E. WEAVER
ADAM R. SMART
Trial Attorneys

s/ Steven I. Frahm
Of Counsel

May 2, 2007