**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CONSOLIDATED EDISON COMPANY OF NEW YORK, INC & SUBSIDIARIES, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-305 T<br>Judge Marian Blank Horn |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM REGARDING PROBABLE EVIDENTIARY DISPUTES THAT WILL ARISE WITH RESPECT TO THE GOVERNMENT'S SPOLIATION OF EVIDENCE CLAIM**

Plaintiffs, Consolidated Edison Company of New York, Inc. & Subsidiaries ("Con Ed"), respectfully submit this memorandum regarding objections that are expected to arise during the examination of Mr. Andrew Scher, which is scheduled to be part of the government's case-in-chief. Rather than make these objections for the first time during the relevant testimony, we are submitting this memorandum to provide the Court sufficient time to fully consider the legal rules related to this testimony, as well as the "law of the case" effect of one of this Court's earlier rulings in this lawsuit.

**A. Questions Regarding Allegedly Improper Document Preservation Prior To 2005 Are Irrelevant Because Con Ed Was Not Required To Take Affirmative Steps To Preserve Potentially Relevant Evidence Until October Of That Year**

**1.** With respect to its spoliation claim, the government does not appear to contend that any Con Ed employee or official affirmatively shredded (or otherwise destroyed) physical documents, or that they specifically deleted email messages that were believed to be relevant to potential litigation regarding the EZH transaction. Nor is there evidence that any such affirmative conduct occurred. Instead, the government complains about alleged sins of omission.

Specifically, the government assumes (as reflected in its opening statement, Oct. 17, 2007 Tr. 100-01) that in either 1997, 2000, or 2001, Con Ed and CED must have violated a purported duty to preserve material evidence by failing to implement a hold order to preserve all documents and email related to the 1997 EZH transaction as evidence for litigation—and by replacing CED's then outsourced email system in late 2000 without taking additional steps to retain back-up tapes (or otherwise preserve the data) from the earlier email system.

The government's spoliation theory is fundamentally flawed because Con Ed ***did not*** have a duty to preserve evidence until late 2005, when the IRS audit and appeals process was complete, the IRS issued a Notice of Proposed Adjustment, and a lawsuit regarding the tax treatment for the EZH transaction became likely—a "real possibility." *Energy Capital Corp. v. United States*, 45 Fed. Cl. 481, 485 (2000). Indeed, the Court's previous ruling that plaintiffs did not reasonably anticipate litigation in 1997—which resulted in Con Ed's inability to sustain the work product protection with respect to several documents—forecloses the government's potential argument that Con Ed (or CED) anticipated litigation such that it had a duty to preserve material evidence.

**2.** Whether a party anticipated litigation at a given point in time requires an objective reasonableness inquiry. *See AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 445 (2007) ("party asserting work product privilege must set forth objective facts to support its claim"). During the June 6, 2007 telephonic discovery hearing in this case, the Court held that Con Ed could not maintain its assertion of work product protection with respect to the Sherman & Sterling memoranda, and Mr. Scher's October 1997 memorandum, all of which were created in late 1997. Tr. 29-30, 32-34. Con Ed's work product assertion was supported by Mr. Scher's

May 10, 2007 declaration, in which he explained his *subjective* understanding of "anticipation of litigation":

> Con Ed NY's federal tax returns for each of the 20 tax years preceding the year of the EZH transaction had been audited by the IRS[, and thus Con Ed] had ample reason to believe that any contemplated lease-leaseback transaction it entered into was likely to be challenged on audit by the IRS and might result in litigation.

Pls. May 11, 2007 Notice of Compliance (Dkt. No. 31), Ex. A ¶ 5. Although the Court addressed the "state of mind" of Con Ed's executives,[1] the Court ultimately determined that Mr. Scher's subjective understanding—*i.e.*, that the Company would likely be subjected to an "audit by the IRS that *might result in litigation*" (emphasis added)—did not satisfy the *objective* requirement of reasonable anticipation of litigation. June 6 Tr. at 29-30, 32-34. In short, Mr. Scher's belief that litigation might be possible following the conclusion of the Service's lengthy audit and appeals process was not enough: "an IRS audit contemplation *does not trigger* necessarily a contemplation of litigation." *Id.* at 29 (emphasis added). The Court further explained that the limited precedent in this area "basically says an anticipated audit isn't enough to get you the work product privilege even if you expect that to happen." *Id.* at 29-30.

Neither the initiation of the audit nor the conduct of the IRS audit materially changed Con Ed's position with respect to potential litigation. Many large companies, including Con Ed, are audited every year by the IRS. *See* Scher Decl. ¶ 5. Those audits invariably involve numerous informal procedures such as information document requests (IDRs), analysis by IRS officials, meetings related to potential compromise of audit-related disputes, and appeals—all of which are part of the standard operating procedures of the IRS that are used with large

[1] June 6, 2007 Tr. at 33 (responding to a clarification request regarding "the relevance of the documents [] as to showing state of mind," the Court explained: "I think it shows the facts that were important at the time and the facts as they were understood at the time").

companies. Although litigation after an audit is always a possibility, the facts that Con Ed's tax return for a given year (and a specific transaction in that year) was being audited, and that the Company was subjected to such administrative procedures during the audit, would ***not*** indicate to a reasonable, objective observer that post-audit litigation was any more likely than before the audit began. As a general matter, most companies' disagreements with the IRS are resolved during the audit and appeals process, and that is true with respect to virtually all of Con Ed's disputes over the years. Accordingly, as the Court has already ruled that Con Ed did not reasonably anticipate litigation in 1997 prior to the initiation of the audit—and that Mr. Scher's subjective understanding that litigation "might result" after an IRS challenge was insufficient under the objective "anticipation of litigation" standard—the same rationale would apply during the audit and informal IRS appeals, until the conclusion of those processes in 2005.

With respect to the 1997 tax year and the EZH transaction, Con Ed was either being audited or was pursuing an appeal within the Service's process until late 2005. At that time, the Company learned that, although it had always resolved disputes with the IRS in the audit/appeals process before, it would not be able to resolve the disagreement concerning the EZH transaction in a satisfactory manner with the Service. Thus, in late 2005, the potential of paying the taxes and filing a lawsuit against the government was no longer a "remote possibility" but was actively considered by Con Ed officials. In *Energy Capital*, this Court explained that the "anticipation of litigation" standard "requires a more immediate showing than the remote possibility of litigation"—litigation must be likely. 45 Fed. Cl. at 485 (quoting *Occidental Chem. Corp. v. OHM Remediation Servs. Corp.*, 175 F.R.D. 431, 434 (W.D.N.Y.1997)). This Court has further recognized that some specific "[l]itigation must at least be a real possibility at the time" to satisfy the anticipation of litigation standard. *Id.* Thus, applying the reasoning announced in the

Court's June 6 work-product decision, it was only in late 2005, when the audit proceedings related to Con Ed's 1997 tax year were concluded, that events "trigger[ed] necessarily [the] contemplation of litigation" with respect to the EZH transaction.

**3.** Because the same "anticipation of litigation" standard controls both the work product and document preservation inquiries, the Court's determination that Con Ed could not have anticipated litigation for purposes of work product protection in late 1997 ***precludes*** a determination that the Company had an obligation to preserve evidence at that time. In the converse situation, this Court has recognized that "[i]t would be incongruous for the Court to find that Defendant had a duty to preserve documents for discovery because of impending litigation, yet could not assert the work product doctrine to protect documents prepared in anticipation of that litigation." *AAB Joint Venture*, 75 Fed. Cl. at 445. The Court's ruling that, in 1997, Con Ed foresaw a probable audit in 1997, but that its documents did not reflect the requisite "anticipation of litigation" under the objective standard, is the law of the case. Accordingly, Con Ed's obligation to preserve evidence for potential litigation did not accrue at that time, and must have arisen at a later time. For the reasons explained above, that obligation arose in 2005.

**4.** Prior to and in the years following the EZH transaction, Con Ed officials stored a large volume of documents—including transaction documents, drafts, memoranda, copies of email, faxes, and other materials—in its CED transaction-related files, its executives' individual, business-related files, and on the computer hard drives of Con Ed's and CED's executives and employees. When these materials and documents related to other transactions were produced during discovery pursuant to the Court's orders, they included approximately 490,000 pages of information, including Mr. Scher's personal files, which were produced after the June 6 ruling.

All of this material was provided to the government; indeed, the defense has, to date, focused its presentation largely on documents that were produced from Con Ed's files.

The government's questions during depositions, pre-trial filings, and its opening statement make clear that its spoliation claim will focus on whether Con Ed should have implemented additional procedures to retain potentially relevant evidence. For instance, the government's statements and questions have related to whether electronic mail may have been routinely deleted from its server beginning in 1997; whether the Company should have taken additional steps to collect back-up tapes (or otherwise preserve electronic data) when CED changed its email from an outside vendor in late 2000; and whether additional steps should have been taken during 2001 to preserve potentially relevant documents when Con Ed responded to the IRS's IDRs. Oct. 17, 2001 Tr. at 100-01. To the extent questions of this nature are posed at trial, they lack foundation, are irrelevant, and are inconsistent with this Court's previous ruling. More fundamentally, such questions would allow the government to have it both ways, and would be manifestly unfair to Con Ed and Mr. Scher, because (among other reasons) all of Mr. Scher's files and mental impressions regarding the EZH and other LILO transactions considered by the Company have been provided to the government. The government should not be permitted to obtain this material on the basis that Mr. Scher lacked the requisite anticipation of litigation (and thus did not create work product protected material), while, in the same lawsuit, be allowed to benefit from an argument that Mr. Scher did anticipate litigation in 1997, 2000, or 2001, and thus should have issued a hold order such that additional, alleged documents would have been preserved.

As demonstrated above, Con Ed did not have a legal duty to preserve documents for future litigation until late 2005. Accordingly, questions regarding additional steps that might have been taken to preserve electronically stored information should not be permitted.

**B. The Government Was Not Entitled To Obtain Discovery Of Electronically Stored Information Containing Embedded Data**

Based on its opening statement, the government also apparently will attempt to demonstrate that Con Ed improperly failed to preserve certain electronic documents in a manner that would allow production of embedded data from those documents. Specifically, the government asked whether purportedly missing electronic documents

> might show the unedited thoughts of Con Ed personnel and . . . provide answers to questions such as: Why was the noneconomic factor analysis taken out of certain documents? What was the answer to the query about the strategic ground cover in the white paper if Con Ed never intended to go into the Netherlands? . . . Who, in fact, made those red line comments to plaintiff's own internal presentation [the leasing white paper]?

October 17 Tr. at 102. The government thus raises questions—and accuses Con Ed of spoliation—on the basis that it did not obtain data embedded in the computer files on which the original electronic documents were stored.

Embedded data consist of "draft language, editorial comments, and other deleted matter" that are stored "in an electronic file but [are] not . . . apparent to the reader."[2] The government will presumably attempt to show that, if retained, embedded data could have provided the source of some of the comments that could not be ascertained by asking witnesses for their

---

[2] Electronic Discovery Amendments to the Fed. R. Civ. P., cmt. to 26(f). The new e-discovery rules have not yet been adopted by this Court, but the definitions of terms cannot be seriously disputed, and the new federal rules—and developing best practices discussed below—constitute highly persuasive authority. Although the same rules generally apply, it should be noted (for clarity) that embedded data is distinct from frequently referenced "metadata," which is stored information "describing the history, tracking, or management of an electronic file" and is also "not usually apparent to the reader viewing a hard copy or a screen image." *Id.*

recollections, or the government will contend that this data could have provided information regarding why certain statements which appeared in early drafts of internal documents were later removed. Even if Con Ed had been required to retain the embedded data for litigation—and, as explained above, it was not—the government's attack is flawed, as defendant failed to establish a right to obtain such information. That said, numerous copies of these drafts were provided during discovery, and as part of a Rule 30(b)(6) deposition, defendant was able to determine who made certain comments in various drafts; it was not entitled to additional information.

The government did not specifically seek, and failed to make the showing necessary to obtain, embedded data for the documents at issue (or any other documents). As many courts have recognized, "[e]merging standards of electronic discovery appear to articulate a general presumption against the production of metadata" and similar embedded data. *Wyeth v. Impax Labs, Inc.*, No. Civ. A. 06-222-JJF, 2006 WL 3091331, at *2 (D. Del. Oct. 26, 2006) (not reported). Generally, a responding party must only produce the native format of such electronic documents, which permits analysis of embedded and metadata, *after* a requesting party specifically seeks such production and "demonstrate[s] a particularized need for the native format." *Wyeth*, 2006 WL 3091331, at *2. The government made no such request or showing with respect to any of Con Ed's documents, which were produced in the default standard of image files (*e.g.*, TIFF files). *See id.*

Although this Court has not yet adopted the new federal e-discovery rules (as noted above, *see* note 2), that judicial decision does not affect the proper outcome regarding any claims the government may make with respect to embedded data in this case. The Federal Rules Advisory Committee did not adopt proposals to mandate any particular form of production and did not take a position on the need to produce metadata, instead "emphasiz[ing] the need to

discuss this topic early to attempt to reach agreement." *The Sedona Principles (2d): Best Practices Recommendations For Addressing Electronic Document Production* at 8 (June 2007) (*see* http://www.thesedonaconference.org/content/miscFiles/TSC_PRINCP_2nd_ed_607.pdf). As there is no specific mandate to produce embedded data, the government would have needed to make a specific request for metadata and embedded data, and demonstrate a particularized need, ***during discovery*** to squarely present this issue. Defendant failed to do so. Accordingly, there is no foundation for questions regarding potentially embedded data, and an examination regarding the preservation of such data would be irrelevant and should not be permitted.

## CONCLUSION

For the reasons set forth above, Con Ed respectfully requests that the Court rule that potential examination regarding an alleged pre-2005 obligation to preserve material evidence or with respect to potential embedded data is not allowed, as it lacks foundation and/or is irrelevant.

Respectfully submitted,

s/ David F. Abbott

DAVID F. ABBOTT
MAYER BROWN LLP
1675 Broadway
New York, NY 10019-5820
Tel (during trial): (202) 280-2421
Fax (during trial): (202) 347-0404

Of Counsel:

MARCIA G. MADSEN
LUKE LEVASSEUR
MAYER BROWN LLP
Washington, D.C.
*Counsel for Plaintiff*
November 5, 2007