**No. 06-305 T**
**(Judge Marian Blank Horn)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CONSOLIDATED EDISON COMPANY**
**OF NEW YORK, INC. & SUBSIDIARIES**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

# REPLY IN SUPPORT OF THE UNITED STATES' SPOLIATION OF EVIDENCE CLAIM

**RICHARD T. MORRISON**
***Assistant Attorney General***

**DAVID GUSTAFSON**
**STEVEN I. FRAHM**
**DAVID N. GEIER**
**JOSEPH A. SERGI**
**ADAM R. SMART**
**KAREN M. GROEN**
***Attorneys***
***Tax Division***
***Department of Justice***
***Washington, D.C. 20044***
**(202) 616-3448 (telephone)**
**(202) 307-0054 (facsimile)**

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A. Plaintiff Is Bound by its Prior Representations . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*(i) Andrew Scher's substantial involvement in the tax shelter transaction*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*(ii) Plaintiff's odd and unintuitive notion that references to "litigation" did not encompass court proceedings*. . . . . . . . . . . . . . 4

B. The Court Has Not Already Ruled Regarding "Anticipation of Litigation" . . . . . 6

C. Revenue Ruling 99-14, Announcing that LILOs would be Challenged, is Relevant to whether Litigation was Anticipated . . . . . . . . . . . . . . . .6

D. Plaintiff's Claim of "Mistake" at this Late Stage Lacks Credibility. . . . . . . . . . . . 7

E. Documents Were Destroyed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

F. A Finding of Bad Faith is Not Necessary to Establish a Spoliation Claim. . . . . . 10

*(i) legal standard*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*(ii) Plaintiff is culpable for the loss of records*. . . . . . . . . . . . . . . . . . . . . 11

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AAB Joint Venture v. United States*, 75 Fed. Cl. 432, 445 (2007). . . . . . . . . . . . . . . . . . . . . . . . . 2

*Columbia First Bank FSB v. United States*, 54 Fed. Cl. 693 (2002). . . . . . . . . . . . . . . . . . . . . . .10

*United Med. Supply Co., Inc. v. United States*, 77 Fed. Cl. 257 (2007). . . . . . . . . . . . . . . . . . . . 10

*Vick v. Texas Employment Comm'n*, 514 F.2d 734 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . .10

## REVENUE RULINGS

Rev. Rul. 99-14 (Mar 11, 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1,6

**06-305 T**
**(Judge Marian Blank Horn)**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CONSOLIDATED EDISON COMPANY**
**OF NEW YORK, INC. & SUBSIDIARIES**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

**REPLY IN SUPPORT OF THE UNITED STATES' SPOLIATION OF EVIDENCE CLAIM**

In further support of its spoliation of evidence claim pertaining to the November 2000 destruction of emails,[1] the United States submits this reply.

[1]Plaintiff argues that the United States has narrowed the scope of its spoliation claim because "it could not deliver on the promises made in its opening." (Pl. Mem. at 5) (emphasis added. To the contrary, the United States' claim has from the beginning been limited to the destruction of emails and associated attachments during the November 2000 email changeover. (Tr. 100-01). Indeed, Plaintiff's lead counsel conceded as much in argument to the Court. (Tr. 4412-13) ("pursuant to Mr. Sergi's own opening remarks, we believe that the spoliation claim relates to potential destruction of e-mails on or prior to 2000") (emphasis added).

Likewise, the United States limited its discussion of temporal matters to those periods prior to November 2000, since, if the duty to preserve did not arise prior to that time, it is unnecessary for the Court to determine the date on which the duty did arise. In its effort to show the duty arose much later, Plaintiff argues that it did not anticipate litigation until 2004 (Pl. Mem. at 12), notwithstanding its earlier representations in this litigation that documents created in 2003 were prepared "long after the IRS had made it clear that it intended to litigate LILO cases." (Exhibit August 2, 2007 correspondence, attached hereto as Reply Ex. 1). Plaintiff's reference to the IRS' intention to litigate LILO cases was to its 1999 ruling [Revenue Ruling 99-14].

## ARGUMENT

### A. Plaintiff Is Bound by its Prior Representations

As we explained in our initial memorandum (Gov. Initial Mem. at 7), the threshold for a litigant to have a duty to preserve evidence arises before litigation is "anticipated" for purposes of work product protection. *AAB Joint Venture v. United States,* 75 Fed. Cl. 432, 445 (2007) (finding a duty to preserve evidence but denying work product protection). Plaintiff's attempt to eliminate this distinction, and make its duty to preserve evidence dependent on whether litigation was anticipated for work product purposes, is unpersuasive. Plaintiff ignores that this Court held that there was an affirmative duty in that case to preserve evidence even though in denying work product protection it determined that the possibility of litigation was remote. *Id.* Plaintiff's claim that the Court "did not rule that a 'remote' possibility of litigation was sufficient to establish a duty to preserve documents" ignores that the Court in *AAB Joint Venture* did hold that a duty to preserve evidence existed. *Id.*

In fact, Plaintiff appears now to be asking the Court to impose an even higher standard for the duty to preserve evidence than is needed to provide work product protection. Plaintiff argues throughout its spoliation memorandum that litigation must be more than anticipated; it must be "inevitable." (Pl. Mem. at 14, 16). Plaintiff appears to be arguing that parties cannot anticipate litigation when they engage in good faith settlement discussions. (*Id.* at 15-16). However, this Court recognized that "anticipation of litigation does not mean that there cannot be a resolution on an administrative level." (Tr. 3325). Of course, settlement discussions can continue up to the steps of the courthouse, notwithstanding that the parties have prepared for,

and “anticipate” litigation. The rule Plaintiff appears to be advocating – that so long as there are settlement discussions, a party is free to destroy evidence relevant to litigation – cannot exist.

In retreating from its prior representations to this Court that litigation was anticipated (JX 1318; Memorandum in Response to Defendant’s Motion to Compel at 10-11 (Docket No. 26, hereinafter “Pl. Response”)), Plaintiff now argues: (1) Mr. Scher lacked sufficient involvement in the transaction to evaluate litigation potential; and (2) that Plaintiff’s and Mr. Scher’s prior references to “litigation” did not refer to courtroom litigation. (Pl. Mem. at 4-5). Each of these arguments is deeply flawed.

*(i) Andrew Scher’s substantial involvement in the tax shelter transaction*

Early in Plaintiff’s review of the “tax advantaged transaction” at issue here, Mr. Scher met in early October 1997 with Mr. Muoio, President of Consolidated Edison Development, Inc. (“CED”), to discuss the merits of the transaction and other tax advantaged leasing opportunities. (Pl. Mem. at 4; Tr. 4148-52; JX 1231). Mr. Scher is a tax attorney and holds an LL.M (Taxation) from New York University. (Tr. 3987). During trial, Mr. Scher conceded that he met with Mr. Muoio, because he has a Masters in Taxation and “to see where he could fit in with respect to all these transactions.” (Tr. 4150). Mr. Scher’s work prior to joining CED involved practical experience with leasing transactions. (Tr. 3997).

Shortly before the transaction was presented to Consolidated Edison Company of New York’s (“CECONY”) board of trustees (JX 153 and 354; Tr. 831-36), CECONY’s General Counsel, Peter O’Shea, directed Mr. Scher to provide more “detail about” the transaction. (Tr. 4199-200 and 4272). Responding to that request, Mr. Scher drafted a memorandum (JX 390) describing the transaction, its tax benefits, and his concerns regarding the structure of the

transaction and its tax implications. (JX 390; Tr. 4166, 4197, 4208, 4210-11, 4271-73). Consequently, although Plaintiff argues that Mr. Scher was not formally assigned until early November 1997 (Tr. 4279-80; Ex. 1150), he was involved earlier in the process.

Plaintiff's claim (Pl. Mem. at 5) that Mr. Scher was not a "leasing expert" is misleading. Mr. Scher is both an experienced tax attorney and had practical experience with leases. Without question, he was able to understand and analyze the tax implications of the transaction. (JX 390). Mr. Scher, as legal liaison between CED and CECONY (JX 1150; Tr. 854, 3995-96, 3998), was intimately familiar with the transaction. In fact, Mr. Scher acknowledged that as part of the transaction "there were some negotiations by me." (Tr. 3997). There is no merit to Plaintiff's effort to downplay Mr. Scher's role in the transaction.[2]

*(ii) Plaintiff's odd and unintuitive notion that references to "litigation" did not encompass court proceedings*

When it entered into the EZH LILO Transaction, Plaintiff was well aware of potential challenges to its claimed tax consequences. (JX 390 and 1318 at ¶ 10). Plaintiff represented to the Court that it had ample reason to believe that entry into any LILO transaction might lead to litigation. (JX 1318 at ¶ 5). Indeed Plaintiff believed that litigation was "<u>extremely</u> <u>likely</u>." (Pl. Response at 10-11) (emphasis added).

Plaintiff now seeks to avoid its earlier representations by claiming that courtroom litigation was not what Plaintiff claimed was anticipated when it argued for the application of the work product privilege and it was not what attorney Mr. Scher referred to when he used the word

---

[2]Plaintiff also designated Mr. Scher under RCFC 30(b)(6) as the person most knowledgeable to testify in deposition for Plaintiff about the transaction.

"litigation" in his affidavit.[3] According to Plaintiff, the "litigation" it anticipated and expected when it sought work product protection was the IRS' audit, and not court proceedings. (Pl. Response at 16-17). Plaintiff's claim, however, is contradicted by its earlier argument in favor of work product protection that "the EZH investment [ . . .] was certain to lead to IRS audit and extremely likely to result in litigation." (Pl. Mem. at 17; Pl. Resp. at 10-11) (emphasis added). Plaintiff's use of "and" between "audit" and "litigation" confirms its intention that litigation include court proceedings.[4] Plaintiff's intention that litigation includes court proceedings was repeated in the next sentence of its Response addressing work product protection: "Although each of the three documents at issue addresses a different legal issue, each document was created to prepare for the anticipated IRS audit and subsequent tax refund litigation."[5] (Pl. Response at 10). While Plaintiff claims that the United States is misusing Mr. Scher's affidavit which Plaintiff submitted to supports it work product claims, Mr. Scher nevertheless stated in that

---

[3]Plaintiff's characterization of Mr. Scher's affidavit as a legal submission is curious. (Pl. Mem. at 16). The affidavit is a recitation of facts relating to the time period in question and was made under the penalties of perjury. Further, Plaintiff's contention that its Response is "legal argument" (*id.* at 16) ignores that it includes numerous affirmative representations made by counsel pursuant to RCFC 11, in an effort to convince this Court to deny the Government's discovery motion. Mr. Scher testified that he was responsible for reviewing the submission. (Tr. 4030). Mr. Scher was present at oral argument (via telephone) and could have corrected any misstatements made by counsel at the hearing.

[4]Plaintiff argues that this sentence must be read "in context" of a definition of litigation that *includes* agency proceedings. (Pl. Mem. at 17). Such a definition, however, does not create the context Plaintiff is seeking in which its reference to litigation *excludes* court proceedings. If one were to accept Plaintiff's "context," its statement should be read to express the view that "the EZH investment [. . .] was certain to lead to IRS audit and extremely likely to result in [audit]."

[5]The same distinction between audit and subsequent tax refund litigation is highlighted in paragraphs 5 and 14 of Mr. Scher's affidavit in which he uses each term to mean something different. (JX 1318 at 18959).

affidavit (and his subsequent testimony at trial) that entry into any LILO transaction might lead to litigation following the administrative process. (Pl. Mem. at 17; JX 1318 ¶ 5; Tr. 4286-87). Therefore, Plaintiff and Mr. Scher have both understood the difference between an audit and litigation in a federal court and referred clearly to the two distinct concepts. Plaintiff's argument that it first understood that litigation was not restricted to an audit only after the Court issued its June 2007 Order is specious.

### B. The Court Has Not Already Ruled Regarding "Anticipation of Litigation"

This Court expressly stated that the Government is not precluded from contending that Plaintiff anticipated litigation in 1997 or at any other time. (Tr. 3974-77). As the Court explained, when it rejected Plaintiff's work product claim, it did so based on a review of three specific documents, but it was not issuing a ruling on the broader question whether there was an anticipation of litigation in 1997. (Tr. 3974-75). Despite this ruling, Plaintiff argues that "the Government's attempt to constrain plaintiff from relying on the Court's June 2007 ruling cannot be reconciled with judicial estoppel principles." (Pl. Mem. at 19). Since, as the Court explained, it made no general ruling regarding anticipation of litigation, there is no basis for Plaintiff's claim that judicial estoppel prevents its consideration now.

### C. Revenue Ruling 99-14, Announcing that LILOs would be Challenged, is Relevant to whether Litigation was Anticipated

Plaintiff argues that the issuance of Revenue Ruling 99-14, which announced that LILOs like Plaintiff's would not be respected for federal income tax purposes, did not lead Plaintiff to anticipate litigation with the IRS. According to Plaintiff (Pl. Mem. at 20), that is so because Mr. Scher's and Plaintiff's legal analysis concluded that Revenue Ruling 99-14 was incorrect. Whatever Plaintiff's and Mr. Scher's actual views regarding the IRS' position, it was plain that

the IRS' formal, public announcement meant that Plaintiff was heading for a dispute. At that point, especially considering Plaintiff's purported view that the IRS was wrong, litigation could be "anticipated."

Plaintiff's accusation that the Government is equating a Revenue Ruling with a "Designation for Litigation" of an issue (Pl. Mem. at 21) presents a straw man. When an issue has been designated for litigation, litigation is certain (unless the taxpayer concedes). When a taxpayer has claimed tax benefits that a Revenue Ruling concludes are improper, the chances of avoiding a dispute with the IRS are remote, and the grounds for any settlement have been significantly limited. We are not claiming that litigation was a certainty in 1999. We do maintain, however, that when, as here, the taxpayer contends that a Revenue Ruling is wrong as a matter of law, there is a sharply defined, very real dispute, and it is therefore reasonable to anticipate litigation.

### D. Plaintiff's Claim of "Mistake" at this Late Stage Lacks Credibility

In a further effort to avoid its own prior claims that litigation was anticipated, Plaintiff now opportunistically claims that it was just a simple "mistake" when it claimed work product with respect to a March 1999 memorandum. (Pl. Mem. at 22). This self-serving change of position is particularly strained, because Plaintiff did not claim that litigation was anticipated, and that work product protection applied, without considerable effort and thought. Plaintiff's privilege log was the subject of a discovery motion and a request for more time to conduct discovery. Plaintiff's counsel also made assurances that this privilege log had been carefully reviewed numerous times. (*See* August 7, 2007 correspondence attached hereto as Reply Ex. 2).

Plaintiff's claim of mistake is further discredited, because the document was first listed on a privilege log *after* the Court's June Order (Docket No. 38) which rejected Plaintiff's specific claims of work product as to three documents. While Plaintiff argues that its work product claim was not "corrected" on its privilege log, the item had never appeared on a privilege log prior to the Court's Order. Similarly, Plaintiff asserts work product with respect to June 1999 memoranda concerning other leasing transactions. (Exhibit 1 to Government's Initial Memorandum, at p. 34) (Docket No. 93). Presumably Plaintiff will again assert a "mistake."

In light of Plaintiff's prior subject matter waiver of attorney-client privilege as to the EZH transaction and that the document discussed relates to the EZH transaction, the Court should accept Plaintiff's invitation and carefully scrutinize this document to assess the *bona fides* of the assertion of a new privilege.

**E. Documents Were Destroyed**

Plaintiff alleges that the record in this case does not support that it destroyed any documents. To the contrary, Plaintiff's own employee, Mr. Newberry, testified that emails were destroyed unless specifically designated and saved. (JX 1335, 19511-12). Plaintiff designated Mr. Newberry (for CED) and Mr. Walsh (for CECONY) to testify on its behalf regarding the retention and destruction of emails, as expressed in the Government's notice of Plaintiff's RCFC 30(b)(6) deposition:

> Circumstances surrounding the existence or destruction of emails received or sent by Consolidated Edison personnel prior to 2000 related to CED or any LILO transactions considered by Plaintiffs, including but not limited to, the number of destroyed emails, existence of back up files, and email archival policies of Plaintiff.

Mr. Newberry was not able to affirm that all records had been preserved.

To refute its own testimony on deposition, Plaintiff argues facts not in the record. For example, Plaintiff asserts that emails were saved "[b]y using a specific command with which persons using that Linux-based system would have been familiar." (Pl. Mem. at 6). Support for this "familiarity" is not in the record and Plaintiff offers no record cite. Next, although Plaintiff argues that employees were instructed on how to preserve emails, this, too, is not supported by a citation to the record. (*See* JX 1335, 19517-18). Plaintiff also argues that because there exists a statutory requirement to preserve records (26 U.S.C. § 6001), it must have complied. (Pl. Mem. at 7). Again, there is no citation to the record to support this naked conclusion from counsel. In fact, it was not until May 2001 that Mr. Scher even began collecting information about the EZH LILO Transaction. (*Id*. at 7). Prior to that time no instruction was given to preserve records.[6]

Plaintiff's long explanation regarding Mr. Scher's search for records in 2001 (Pl. Mem. at 6-8) misses the point. First, Mr. Muoio's emails would not have survived the changeover. (*See* Gov. Initial Memorandum at 4, n.1; JX 1335 at 19511-12). In addition, Mr. Scher's effort in 2001 to preserve records did not include Mr. Muoio. Mr. Scher's instructions were only to those individuals "still in the employ of the Con Edison corporate family" at that time.[7] (JX 1319). Mr. Scher did not testify that he received documents from Mr. Muoio. (Tr. at 4307-09).

---

[6]Plaintiff argues that the Government cannot rely on Mr. Walsh because "he was not in a position to receive such email." (Pl. Mem. at 26). As described above, Mr. Walsh was the witness Plaintiff designated to speak about this topic on its behalf. In fact, Mr. Scher conceded that no order to preserve records was issued. (Tr. at 4012-13, 4067).

[7]Further, the fact that Mr. Scher obtained the EZH Transaction file does not resolve this issue, because Mr. Muoio left his emails on his hard drive, and noted this EZH Transaction file was a separate and distinct file. (Tr. 2007-08).

**F. A Finding of Bad Faith is Not Necessary to Establish a Spoliation Claim**

*(i) legal standard*

Plaintiff argues that a bad faith finding is part of the Government's *prima facie* case for spoliation. (Pl. Mem. at 23). Under this Court's most recent decision on spoliation, *United Medical Supply Co. v. United States*, 77 Fed. Cl. 257, 267-71 (2007), the Court determined that an adverse inference may be obtained without a showing of bad faith, thereby rejecting the line of cases requiring such a showing. (Gov. Initial Memorandum at 6-7).

The destruction of emails in this case was the result of a complete failure to ensure that emails pertaining to the EZH LILO Transaction were preserved during the changeover to a new email system. Plaintiff relies upon *Vick v. Texas Employment Comm'n*, 514 F.2d 734 (5th Cir. 1975) to characterize the destruction of records in this case as a part of its "ordinary course of business" and therefore permissible. Unlike *Vick*, the changeover here did not involve the routine destruction of documents pursuant to an established document retention policy. Instead, the changeover was a one-time, unique procedure. Plaintiff was aware that emails would be destroyed and took inadequate steps to preserve emails related to the EZH LILO Transaction – a transaction it knew would receive IRS scrutiny.

Similarly Plaintiff's reliance upon *Columbia First Bank FSB v. United States*, 54 Fed. Cl. 693 (2002), is misplaced. In that case, the party took timely precautions to sequester relevant documents and labeled them appropriately. Through inadvertence, those records were lost. Here, the records were not timely located or assembled. The records were destroyed, because Plaintiff did not take appropriate steps to preserve them.

*(ii) Plaintiff is culpable for the loss of records*

Plaintiff's conduct in failing to secure records warrants a finding of spoliation and an adverse inference that these records would have been favorable to the Government's case. Absent that, Plaintiff's conduct warrants a prohibition on its reliance on records not produced in support of its burden of proof on its *prima facie* case.

Plaintiff argues that Mr. Scher, the individual charged with preserving records, was unaware of the email changeover. (Pl. Mem. at 27). This cannot be true. Mr. Scher was an officer of CED and attended board meetings, and he also was also Plaintiff's legal representative to CED. (*See* JX 1304; JX 181; JX 191) As such, he would certainly have been, or should have been, aware of the impact of the email changeover on Plaintiff's legal obligations. Mr. Scher implausibly claims that although he is an attorney, he did not understand the duty to preserve evidence, because he was not also a litigator. (Tr. 4013, 4015-17, 4043). Even if this were true, Plaintiff's decision to place him in charge of gathering and preserving evidence was grossly negligent, if not reckless.

## CONCLUSION

Plaintiff's failure to preserve records warrants a sanction in the form of an adverse inference that the information destroyed, if available, would have been favorable to the United States and harmful to Consolidated Edison. In the alternative, the United States requests that the

Court prohibit Plaintiff from relying on testimony of witnesses and making arguments which refer to these destroyed records or information that they would have contained.

Respectfully submitted,

s/ David N. Geier
DAVID N. GEIER
Attorney of Record
U.S. Department of Justice, Tax Division
Post Office Box 26
Washington, D.C. 20044
Telephone: (202) 616-3448
Facsimile: (202) 307-0054

RICHARD T. MORRISON
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

JOSEPH A. SERGI
ADAM R. SMART
KAREN M. GROEN
Trial Attorneys

s/ Steven I. Frahm
STEVEN I. FRAHM
Assistant Chief, Court of Federal Claims Section
Of Counsel

January 11, 2007