Case 1:05-cv-00350-MBH Document 86-2 Filed 02/12/2008 Page 1 of 9

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

---

Fifth Third Bancorp & Subsidiaries,
Plaintiff

vs

Case No. 1:05-cv-350-TSH
(Hogan, M. J.)

United States of America,
Defendant

---

## ORDER

---

This matter is before the Court on Defendant's summary judgment motion (Doc. 43), Plaintiff's memorandum in opposition (Doc. 45), and defendant's reply. (Doc. 54). Also before the Court is the brief in opposition to defendant's summary judgment motion filed by *Amicus Curiae* Equipment Leasing Finance Association. (Doc. 49).

### Plaintiff's Claims

Plaintiff initiated this action with the filing of a complaint on May 19, 2005, seeking a tax refund for the taxable year 1997 pursuant to 26 U.S.C. § 7422. (Doc. 1). Plaintiff contends that it is entitled to a refund of $4,060,381.00 in taxes, plus interest, for deductions it claimed on its consolidated federal income tax return for Tax Year 1997, which the Government disregarded following an audit of Plaintiff's tax return for that year. Plaintiff alleges that in 1997, Fifth Third Leasing Company, a wholly owned subsidiary of Fifth Third Bancorp, entered into certain lease transactions involving the lease and leaseback of passenger railcars for public transit systems in Boston, Massachusetts, Paris, France, and Gelsenkirchen, Germany, which entitled Plaintiff to certain tax deductions for amortization of rent payments, amortization of transaction fees, and interest payments made on the loans associated

with the lease transactions. The Government disputed Plaintiff's entitlement to these deductions, and during an audit of Plaintiff's 1997 tax return, the Government disallowed the deductions at issue in this case. Plaintiff unsuccessfully appealed the IRS audit determination, and subsequently paid the additional tax liability as assessed by the Government pursuant to the IRS's proposed adjustment. Plaintiff now seeks a refund of the adjusted taxes, plus interest.

**Defendant's Motion**

Defendant moves the Court for summary judgment on Plaintiff's claim for a refund of taxes paid pursuant to the Government's adjustment of Plaintiff's 1997 tax return. Defendant contends that summary judgment in its favor is appropriate because the substance of the lease transactions does not comport with the form of a lease-leaseback chosen by Plaintiff and the Transit Authorities, and therefore, the Government is entitled to recharacterize the transactions and assess taxes in accordance with the actual substance of the transactions in question. Defendant contends that summary judgment in its favor is proper based solely and exclusively on the substance-over-form doctrine and an analysis of the operative transaction documents. According to Defendant, the documents show that at most, Plaintiff has obtained a future interest in the railcars, not current leasehold interests as of 1997, the year for which Plaintiff sought certain tax deductions based on the lease-leaseback arrangements. In addition, Defendant contends that the circular and reciprocal nature of the loans initiated to fund the lease transactions are such that Plaintiff did not incur any genuine indebtedness for which it is entitled to deduct interest expenses associated with those loans.

Not surprisingly, Plaintiff opposes Defendant's motion, arguing that genuine issues of fact exist concerning the substance of the transactions, and the genuineness of the debt incurred to fund the lease agreements, which preclude summary judgment in Defendant's favor. Specifically, Plaintiff contends that under the lease transactions, Plaintiff acquired genuine attributes of traditional lessor status, and stood to gain substantial pre-tax profits which demonstrate the transactions had economic substance, and thereby obtained valid property interests for federal income tax purposes for tax year 1997. Plaintiff also argues that its conspicuous and thorough compliance with accounting standards for leveraged leasing demonstrates the validity of its leasehold interests and its intention to enter into valid lease-leaseback agreements with permissible income tax advantages. Plaintiff further

contends that the Government's future interest theory conflicts with prevailing Supreme Court precedent and"true lease" case law. In addition, Plaintiff argues that because the lease-leasebacks were secured in part by valid third-party loans, there is no basis to collapse or disregard the financing agreements as wholly circular and thus Plaintiff is entitled to deduct interest payments made in connection with the loans.

Defendant counters that Plaintiff's economic substance argument is inapposite to the substance-over-form analysis applicable to this case. Defendant contends that the transaction documents demonstrate that as of 1997, the mutual and reciprocal nature of the leasehold interests at issue created nothing more than a future interest in the subject railcars. Defendant contends that Plaintiff does not have a current leasehold interest in the railcars because it does not have the benefits and burdens of ownership traditionally associated with a valid leasehold interest. Specifically, Defendant contends that under the operative documents Plaintiff has no exposure to market or credit risk, no committed equity or debt capital investment, and no stake in the risks and rewards of ownership concomitant to an ownership interest in the property as of 1997.

**Applicable Law & Analysis**

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary

judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.)

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The Government moves for summary judgment based "solely upon the well-established principle that a transaction's substance, not its form, determines its treatment for federal income tax purposes." (Doc. 54, Defendant's Reply memorandum, p. vi). According to the Government, the Court's analysis should be limited to a review of the operative documents governing the three lease transactions at issue in this case, and "related internal bank memoranda." (Id., p. 4). The Government contends that a review of these documents demonstrates that Fifth Third did not acquire a valid leasehold interest in each Transit Authority's railcars, and that the loans associated with these transactions did not constitute purposeful borrowing on the part of Fifth Third. The Government argues that because of the mutual and reciprocal nature of the leasehold interests exchanged, and Fifth Third's failure to attain and retain the benefits and burdens of ownership normally associated with a such a leasehold interest, Fifth Third attained nothing more than a contingent future interest in the railcars. Consequently, the Government was entitled to recharacterize

the transactions under the substance-over-form doctrine and deny the claimed deductions. In addition, the Government argues that because its motion is limited to a "substance-over-form" argument, an analysis of whether the transactions had economic substance or a determination of whether they were sham transactions is inapposite to resolution of the current motion.

An income tax deduction is a matter of legislative grace and the burden of demonstrating entitlement to a claimed deduction rests squarely with the taxpayer. *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943). Nevertheless, a taxpayer retains the legal right "to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits." *Gregory v. Helvering*, 293 U.S. 465, 469 (1935). *See also Gregory v. Helvering,* 69 F.2d 809, 810 (2d Cir. 1934)(L. Hand, J.)(A taxpayer may "so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the treasury; there is not even a patriotic duty to increase one's own taxes.") Thus, the *Gregory* Court observed that "the question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended." 293 U.S. at 469.

The Internal Revenue Code assesses taxes based on economic reality, by focusing on a transaction's true purpose, not merely its formal or ostensible purpose. *Commissioner v. Court Holding Co.*, 324 U.S. 331, 334 (1945). As the Supreme Court has long recognized, "taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed- the actual benefit for which the tax is paid." *Frank Lyon Co. v. U.S.,* 435 U.S. 561, 572 (1978)(quoting *Corliss vs. Bowers*, 281 U.S. 376, 378 (1930)). Put another way,

> What tax statutes do not intend is that taxpayers cast transactions in forms so as to come within their provisions when in fact there is no substance behind the use of the forms, when the transaction is but a sham, or when the economic reality of the transaction does not comport with the form.

*Davis v. Comm'r*, 585 F.2d 807, 811-12 (6th Cir. 1978)(citing *Gregory, supra*, 293 U.S. at 469).

The substance-over-form doctrine, economic substance doctrine, and sham

transaction inquiry are closely related, if not overlapping judicial doctrines, whose common premise is that the substantive realities of a transaction determine its tax consequences. *Aeroquip-Vickers, Inc. v. Comm'r*, 347 F.3d 173, 182 (6th Cir. 2004). Under the substance-over-form doctrine, upon which the Government relies, the Court must look to the objective economic realities of a transaction rather than to the particular form the parties have employed. *Frank Lyon*, 435 U.S. at 573. However, it is not always clear which doctrine is most appropriate to the review of a particular case. *Id.* Only upon consideration of the entire transaction can the trial court determine the proper factual category in which a transaction belongs. *Kluener v. Comm'r*, 154 F.3d 630, 634 (6th Cir. 1998). To do so, a court must view the transaction as a whole, and each step from the commencement of negotiations to the consummation of the transaction, is relevant. *Id.* (citing *Court Holding, supra*, 324 U.S. at 334). *See also Rink v. Comm'r*, 47 F. 3d 168, 172 (6th Cir. 1995)(court must look to the whole scenario, including an overview of the entire course of dealings).

With respect to leases, the Supreme Court held in *Frank Lyon*,

> Where there is a genuine multi-party transaction with economic substance which is compelled or encouraged by business or regulatory realities, is imbued with tax-independent considerations, and is not shaped solely by tax avoidance features that have meaningless labels attached, the Government should honor the rights and duties effectuated by the parties. Expressed another way, so long as the lessor retains significant and genuine attributes of the traditional lessor status, the form of the transaction adopted by the parties governs for tax purposes. <u>What those attributes are in any particular case will necessarily depend upon its facts</u>.

*Frank Lyon*, 435 U.S. at 583-84. (Emphasis added).

In this case, the Government argues not only that the doctrines are clearly distinct, but that the elements that inform a courts' economic substance argument or sham transaction analysis are inapposite to the question of "whether the transactions provide the taxpayer with a substantive basis that supports the tax benefit claimed." (Doc. 54, Reply Memo., p. 10) Despite the Government's citation to case law from the Tenth Circuit in support of its contention that the substance-over-form doctrine is clearly distinct and separate, see *Rogers v. U.S.*, 281 F.3d 1108 (10th Cir. 2002), case

law in the Sixth Circuit contradicts, or at least calls into question, such a bright line rule. *See Aeroquip-Vickers, supra.* In this Court's view, the Court cannot adopt such a narrow interpretation of the substance-over-form doctrine, nor limit itself exclusively to the operative documents as urged by Defendant.

The Sixth Circuit has held that the substance-over-form analysis is not a broad legal doctrine designed to distinguish between legitimate and illegitimate transactions, to be employed by the Government whenever it feels that a taxpayer is taking advantage of the tax laws to produce a favorable result for himself. *Humana, Inc. v. Comm'r*, 881 F.2d 247, 254 (6th Cir. 1989). Therefore, the court generally cannot disregard a transaction in the name of economic reality and substance over form absent a finding of sham or lack of business purpose under the relevant tax statute. *Id.* at 255(citing *Clougherty Packing Co. v. Cmm'r,* 84 T.C. 948 (1985), *aff'd*, 811 F.2d 1297 (9th Cir. 1987)); *Gregory, supra*, 293 U.S at 469; *Higgins v. Smith*, 308 U.S. 473, 477 (1940)). To determine whether a transaction is a sham the Court must look to whether the transaction has any practicable economic effects other than the creation of income tax losses. *Dow Chemical Co. v. U.S.*, 435 F.3d 594, 599 (6th Cir. 2006)(citing *Rose v. Comm'r*, 868 F.2d 851, 853 (6th Cir. 1989)). If the transaction has economic substance, the question then becomes whether the taxpayer was motivated by profit to participate in the transaction. *Id.* The Court only conducts this second inquiry once it determines that the transaction was bona fide and not a sham.

On the other hand, the mere fact that a taxpayer can articulate some legitimate business purpose allegedly motivating the form of a transaction, or point to some economic effect resulting from the transaction, does not mean that the Court is precluded from focusing on the end result of the transaction to avoid elevating form over substance and thereby ignoring the economic reality of the transaction. *Aeroquip-Vickers, supra*, 347 F.3d at 183. "This evaluation of the practicability or utility of the stated nontax purpose and the rationality of the means used to achieve that nontax purpose are to be evaluated in accordance with commercial practices in the relevant industry." *Consolidated, Inc. v. Comm'r*, T.C. Memo 2005-16, 2005 WL 209952, at *21 (U.S. Tax Ct. Jan. 31, 2005). Similarly, "[d]e minimus or inconsequential pretax profits relative to a taxpayer's artificially and grossly inflated claim of potential tax benefits may be insufficient to imbue an otherwise economically questionable transaction with economic substance." *Id.*

Thus, the Court must consider whether the transactions had economic substance,

including significant pre-tax profit, and if so, whether the transactions were motivated, at least in part, by tax-independent considerations, as well as whether Plaintiff retained significant and genuine attributes of the traditional lessor status. There are clearly genuine issues of fact which remain regarding these issues which necessarily preclude summary judgment. Plaintiff has presented evidence raising a factual dispute concerning the pre-tax profit generated by the lease transactions and the benefits and burdens of ownership/lessor status placed on Plaintiff as a result of the transactions. Whether Plaintiff's pretax profit is de minimus, indicating a lack of economic substance, or significant enough to support a finding of economic substance is an issue that must be decide on the facts at trial and cannot be resolved at this stage of the litigation.

The Government cites this Court to *BB&T v. U.S.*, 2007 WL 37798 (M.D. N.C. Jan. 4, 2007), in support of its contention that the mutual and reciprocal nature of the leaseholds exchanged and the circular financing arrangements dictate that the Court collapse the transactions and find that in substance Plaintiff did not retain the benefits or bear the burdens of lessor status and is therefore not entitled to the claimed deductions. While the reasoning in BB&T may be persuasive, especially in light of the dearth of published case law dealing directly with LILO transactions, in this Court's view the BB&T decision is distinguishable if for no other reason than the BB&T court ruled based on a stipulated record. In this case, there is no such stipulated record. Rather, genuine issues of fact exist which preclude a finding at this time that the mutual and reciprocal obligations in the transactions are such that "nothing" in effect happened with respect to the parties' interests in the railcars. Nor can the Court conclude that the loans do not constitute genuine indebtedness because of the offsetting payment obligations. The Government's argument on this point is based in large measure on the assumption that at the end of the sublease term, the transit authorities are forced to either purchase the remaining lease term from Fifth Third, or re-enter a lease agreement. The Government contends that because of the defeased loans that support either of these options, there is no investment risk for Fifth Third and that in any event all payments run in a circular pattern between the lenders and the parties. However, there exists an issue of fact as to whether this scenario is predetermined. As Plaintiff points out, there exists an option to lease the railcars to third parties at the end of the sublease term. Defendant's conclusion that such an option is so unlikely as to be a non-option may eventually be bourne out by the evidence. But on the record before the Court at this time, the Court cannot so conclude.

**IT IS THEREFORE ORDERED THAT:** Defendant's summary judgment motion be denied and this case shall proceed to jury trial on March 28, 2008.

Timothy S. Hogan
United States Magistrate Judge